UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:08-cv-00069-CKK ) |
| ELAINE L. CHAO, | ) ) ) |
| Defendant. | ) ) |

_____)

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") hereby moves for summary judgment pursuant to Fed.R.Civ.P. 56 and requests that the Court to enter a judgment holding unlawful and setting aside the final rule entitled "Labor Organization Officer and Employee Report, Form LM-30" and issued by defendant Secretary of Labor on July 2, 2007, 72 Fed. Reg. 36106 (amending 29 C.F.R. Part 404).

This motion is supported by a Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and by a Statement of Material Facts as to Which There is No Genuine Dispute.

As developed in plaintiff's Memorandum of Points and Authorities, summary judgment is appropriate here because plaintiff challenges the rule on legal grounds and

1

there are no disputed facts.  In this regard, plaintiff contends that the 2007 Form LM-30

rule is invalid and should be vacated on the ground that it is not consistent with § 202 of

the Labor Management Reporting and Disclosure Act which governs what union officers

and employees are required to report on that form.  In addition, plaintiff contends that one

aspect of the rule was adopted without compliance with the Administrative Procedures

Act's notice and comment procedures and that  another aspect of the rule is not supported

by a reasoned explanation and is thus arbitrary and capricious.

Respectfully submitted,


/s/_____
JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

/s/_____
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR          )
AND CONGRESS OF INDUSTRIAL            )
ORGANIZATIONS,                       )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )          Civil Action No. 1:08-cv-00069-CKK
                                     )
ELAINE L. CHAO,                      )
                                     )
                    Defendant.       )
_____)


STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO DISPUTE IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


1.  Plaintiff American Federation of Labor and Congress of Industrial

Organizations ("AFL-CIO") is a federation of national and international labor

organizations.  Complaint ¶ 4.

2.  Defendant Elaine L. Chao is the United States Secretary of Labor

("Secretary").  *See* http://www.dol.gov/_sec/aboutosec/chao.htm.

3.  On July 2, 2007, the Secretary published in the Federal Register a final rule

entitled "Labor Organization Officer and Employee Report, Form LM-30." 72 Fed. Reg.

36106.  A copy of that final rule is available at:

http://www.dol.gov/esa/regs/compliance/olms/RevisedLM-30FinalRule07-3155.pdf and

is attached as Exhibit 1.

1

4. Plaintiff AFL-CIO is a "labor organization" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. §§ 401 *et seq.* Plaintiff's officers and employees are therefore subject to the labor organization officer and employee reporting requirements established by the final rule. Complaint ¶ 5.

5. Plaintiff AFL-CIO's member national and international labor unions and many of those unions' affiliated local unions are "labor organizations" within the meaning of the LMRDA. These labor organizations' officers and employees are therefore subject to the labor organization officer and employee reporting requirements established by the final rule. Complaint ¶ 6.

6. Exhibit 2 is a copy of the Department of Labor Form LM-30 Labor Organization Officer Employee Report that was in effect from 1963 through the end of 2007 (for union officers/employees who file their federal tax returns on a calendar year basis). This version of Form LM-30 is available at:

http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-30p.pdf. Exhibit 3 is a copy of the Instructions for that Form LM-30. These Instructions are available at:

http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-30_Instructions.pdf.

7. Exhibit 4 is a copy of the Secretary's August 19, 2005 Notice of Proposed Rulemaking entitled "Labor Organization Officer and Employee Reports; Proposed Rules" and published at 70 Fed. Reg. 51166.

8. Exhibit 5 is a copy of document entitled "Revised Form LM-30 – Labor Organization Officer and Employee Report; Frequently Asked Questions." This

document was first posted on the website of the Department of Labor's Office of Labor-

Management Standards on October 2, 2007.  This document is available at:

http://www.dol.gov/esa/regs/compliance/olms/RevisedLM30_FAQ.htm.

     9.  Exhibit 6 is a copy of the Department of Labor Form LM-10 Employer Report

which is available at: http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-

10p.pdf.  Exhibit 7 is a copy of the Instructions for the Form LM-10 which are available

at: http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/LM-10 instructions.pdf.

     10.  Exhibit 8 are excerpts from the *LMRDA Interpretative Manual* issued by the

Department of Labor Office of Labor-Management Standards.

                               Respectfully submitted,


                               */s/*_____
                               JONATHAN P. HIATT
                               (D.C. Bar # 427856)
                               JAMES B. COPPESS
                               (D.C. Bar # 347427)
                               DEBORAH GREENFIELD
                               (D.C. Bar #  358317)
                               815 Sixteenth Street, NW
                               Washington, DC  20006
                               (202) 637-5337


                               */s/*_____
                               LEON DAYAN
                               (D.C. Bar # 444144)
                               LAURENCE GOLD
                               (D.C. Bar # 116020)
                               805 Fifteenth Street, NW
                               Washington, DC 20005
                               (202) 842-2600


                               *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR | ) |
| AND CONGRESS OF INDUSTRIAL | ) |
| ORGANIZATIONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:08-cv-00069-CKK |
| | ) |
| ELAINE L. CHAO, | ) |
| | ) |
| Defendant. | ) |

_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

LAURENCE GOLD
(D.C. Bar # 116020)
LEON DAYAN
(D.C. Bar # 444144)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

STATUTORY PROVISIONS ....................................................................................... 2

STATEMENT ............................................................................................................... 2

ARGUMENT ................................................................................................................ 5

I.   THE STRUCTURE AND PURPOSE OF LMRDA § 202 AND THE
     SECRETARY'S AUTHORITY TO PRESCRIBE REPORTING FORMS
     UNDER THAT STATUTE ..................................................................... 6

II.  THE SECRETARY'S 2007 REVISIONS TO THE FORM LM-30 ARE IN
     CRITICAL RESPECTS CONTRARY TO LAW ....................................... 9

     A.   The Form LM-30 Coverage to Shop Stewards and the Requirement
          that Shop Stewards and Other Union Representatives Report the
          Portion of Their Regularly Pay and Benefits Attributable to Periods
          During Which They Engage in Representational Activities ............. 9

          1.   Treating Shop Stewards as "Employees of a Labor
               Organization" .................................................................. 11

          2.   "Payments and Other Benefits Received as a Bona Fide
               Employee" ....................................................................... 15

     B.   Bona Fide Loans to Union Officer/Employees from "Businesses"
          Covered By LMRDA § 202(a)(3) & (4) ......................................... 19

          1.   LMRDA § 202(a)(3) & (4) Cannot be Read to Require
               Reporting Bona Fide Loans to Union Officers/Employees
               from Covered "Businesses" .............................................. 19

          2.   The Secretary's Revisions of the Form LM-30 to Require
               Reporting "Bona Fide Loans" from "Businesses" Were
               Made Without Notice and Comment in Violation of the
               APA ................................................................................ 23

i

TABLE OF CONTENTS (Continued)

C.    The Requirement to Report on Receipts from Charities, Other Labor Organizations and Union-Trusts that are Not "Employers" Within the Meaning of LMRDA § 202 ...................................................... 25

    1.    LMRDA § 202(a)(6) Is Not a Catch-All Provision Requiring Reporting on Any Situation the Secretary Deems to Have the Potential to Pose a Conflict of Interest .......... 25

    2.    No Explanation for Exempting Union-Sponsored Credit Unions from the Reporting Exemption for Bona Fide Loans ................................................................................ 32

III.    THE PROPER REMEDY ...................................................... 34

CONCLUSION .............................................................................. 35

STATUTORY APPENDIX ............................................................. 36

ii

TABLE OF AUTHORITIES

CASES                                                                       Page

*Action on Smoking and Health v. CAB*, 713 F.2d 795 (D.C. Cir. 1983) ......................... 35

\* *AFL-CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) ................................................. 8, 9, 35

*American Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ..................... 34

*BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046
    (2d Cir. 1986) ................................................................................................... 18

\* *Communications Workers v. Bell Atlantic Network Services, Inc.*, 670 F.Supp. 416
    (D.D.C. 1987) ........................................................................................... 10, 17, 18

\* *Dean v. American Fed. of Government Employees, Local 476*, 509 F.Supp.2d 39
    (D.D.C. 2007) ..................................................................................................... 13, 14

*Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71 (8th Cir. 1990) ................. 13

*International Harvester Co.*, 1 War Labor Rep. 112 (1942) ........................................ 9, 10

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*,
    463 U.S. 29 (1983) ............................................................................................... 32

*NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849 (5th Cir. 1986) ..................................... 18

*Ventimiglia v. United States*, 242 F.2d 620 (4th Cir. 1957) ........................................... 30


STATUTES

5 U.S.C. § 553(b) ....................................................................................................... 23, 24

5 U.S.C. § 702 ................................................................................................................. 1

_____

\*  Authorities chiefly relied upon are marked with an asterisk.

TABLE OF AUTHORITIES (Continued)

5 U.S.C. § 704 ................................................................................................................ 1

5 U.S.C. § 706(2)(A) ...................................................................................................... 34

5 U.S.C. § 706(2)(A)(2) .................................................................................................. 32

29 U.S.C. § 158(a)(2) ...................................................................................................... 9

29 U.S.C. § 402(q) .......................................................................................................... 14

29 U.S.C. § 402(n) .......................................................................................................... 11

29 U.S.C. § 432 ............................................................................................................... 2

29 U.S.C. § 432(a) .......................................................................................................... 11

29 U.S.C. § 432(a)(1) ................................................................................................. 7, 15

29 U.S.C. § 432(a)(2) ...................................................................................................... 7

29 U.S.C. § 432(a)(3) ................................................................................................. 8, 21

29 U.S.C. § 432(a)(4) ................................................................................................. 8, 21

29 U.S.C. § 432(a)(5) .............................................................................................. 7, 8, 15

29 U.S.C. § 432(a)(6) ................................................................................................. 8, 25

29 U.S.C. § 433(a)(1) ...................................................................................................... 18

29 U.S.C. § 438 ............................................................................................................... 8

29 U.S.C. § 501(a) .......................................................................................................... 14

29 U.S.C. § 501(b) .......................................................................................................... 14

29 U.S.C. § 502(a) .......................................................................................................... 14

TABLE OF AUTHORITIES (Continued)

29 U.S.C. § 529 ................................................................................................... 14

29 U.S.C. § 657(a) .............................................................................................. 11

29 U.S.C. § 657(e) .............................................................................................. 11

45 U.S.C. § 152 Fourth ......................................................................................... 9


REGULATORY MATERIALS

"Labor Organization Officer and Employee Report, Form LM-30," 72 Fed. Reg. 36106
  (July 2, 2,007) ........................................................................................... passim

"Labor Organization Officer and Employee Reports; Proposed Rules," 70 Fed. Reg.
  51166 (August 29, 2005) ............................................................................... 24

U.S. Department of Labor, *LMRDA Interpretative Manual* § 248.005 ........................... 25


MISCELLANEOUS

National Credit Union Administration, *Examiners Guide*, available at
  http://ncua.gov/GuidesManuals/examiners_guide/examguide.html ............................ 34

NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of
  1959* ........................................................................................................ passim

U.S. Department of Labor, *Collective Bargaining Clauses: Company Pat for Time Spent
  on Union Business*, Bulletin No. 1266 (Oct. 1959) ......................................... 14

U.S. Department of Labor, *Legislative History of the Labor-Management Reporting and
  Disclosure Act of 1959, Titles I-IV* ................................................................ 28

Wendell Fountain, *The Credit Union World: Theory, Process, Practice* 208
  (2007) .................................................................................................... 32, 33

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

This is an action for review of agency rulemaking under the Administrative

Procedure Act ("APA").  Plaintiff American Federation of Labor and Congress of

Industrial Organizations ("AFL-CIO"), a federation of national and international labor

organizations, asks this Court to enter summary judgment holding unlawful and setting

aside the final rule entitled "Labor Organization Officer and Employee Report, Form

LM-30" and issued by defendant Secretary of Labor on July 2, 2007, 72 Fed. Reg. 36106

(amending 29 C.F.R. Part 404).

This Court has authority under APA § 10(a) & (c) to review the defendant

Secretary of Labor's issuance of a final rule.  5 U.S.C. §§ 702 and 704.  The AFL-CIO

and its member unions are "labor organizations" within the meaning of the Labor

Management Reporting and Disclosure Act ("LMRDA"), and the officers and employees

of the AFL-CIO and of its member unions and their local affiliates are subject to the

challenged rule.  The AFL-CIO thus has standing to seek review of the rule on behalf of

itself and its member unions.  5 U.S.C. § 702.

Summary judgment is appropriate here because plaintiff challenges the rule on

legal grounds and there are no disputed facts.  In this regard, plaintiff contends that the

2007 Form LM-30 rule is invalid and should be vacated on the ground that it is

inconsistent with LMRDA § 202 which governs what union officers and employees are

required to report on that form.  In addition, plaintiff contends that one aspect of the rule

was adopted without compliance with the Administrative Procedures Act's notice and

comment procedures and that another aspect of the rule is not supported by the reasoned

explanation the APA requires and is thus arbitrary and capricious.

STATUTORY PROVISIONS

The relevant provisions of the following statutes are set forth in the Statutory

Appendix to this Memorandum: the Labor-Management Reporting and Disclosure Act of

1959, as amended ("LMRDA"), 29 U.S.C. §§ 401 *et seq.* (Sections 2(n), 202, 203, &

208); the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C.

§§ 141 *et seq.* (Section 302);  and the Administrative Procedure Act of 1946, as amended

("APA"), 5 U.S.C. §§ 551 *et seq.* (Sections 4(b) & 10(e)).

STATEMENT

LMRDA § 202(a) provides that "[e]very officer of a labor organization and every

employee of a labor organization . . . shall file with the Secretary a signed report listing

and describing for his preceding year" specified financial interests, receipts and

transactions that Congress found create potential conflicts of interest.  29 U.S.C. § 432.

As the Secretary recognized in issuing the final rule, the point of LMRDA § 202 is to

"require disclosure of any personal gain which an officer or employee may be securing at

the expense of the union members" by "hold[ing] a questionable interest or . . .

engag[ing] in a questionable transaction."  72 Fed. Reg. at 36112(2) (citation and

quotation marks omitted).[1]  In essence, "what must be reported are holdings of interest in

---

[1]  In citations to the Federal Register, the number in parentheses indicates the
relevant column on the cited page.

or the receipt of economic benefits from employers who deal or might deal with such union official's union, or holdings in or benefits from enterprises which do business with such union official's union." *Id*. at 36112(3) (citation omitted; indented in original).

For the first fifty years of the LMRDA, the Secretary of Labor required that union officers and employees do their § 202 reporting on a simple two-page form, known as the "Form LM-30," elaborated through a straightforward five-page set of instructions. Exhibit 2 ("Original Form LM-30"). Then, on July 2, 2007, the Secretary published a final rule substantially revising the Form LM-30, increasing the form from two pages to nine pages and extending the instructions to twenty-two pages, in the process vastly expanding *both* the number of individuals expected to file *and* the range of transactions and receipts to be reported. *See* "Labor Organization Officer and Employee Report, Form LM-30," 72 Fed. Reg. 36106, 36160-90.[2] On October 2, 2007, the Department of Labor added to those instructions by posting on its website answers to 88 Frequently Asked Questions that substantially modified the reporting requirements as stated in the July 2007 rule. Exhibit 5 ("Form LM-30 FAQs").[3]

---

[2] Citations to the revised Form LM-30 and its Instructions are to the Federal Register pages announcing the 2007 final rule.

[3] On December 20, 2007, the Office of Management and Budget assigned a control number to the revised Form LM-30, thereby allowing the form to go into effect under the Paperwork Reduction Act. The revised Form LM-30 covers interests held and payments or financial benefits received on or after January 1, 2008. Reports using the revised Form LM-30 will be due on March 31, 2009.

This lawsuit challenges the following five aspects of the 2007 modifications to the Form LM-30 that have no predicate in the reporting regime Congress provided for in LMRDA § 202:

(i) the expansion of the § 202 term "employees of a labor organization" to include shop stewards and other on-the-job union representatives – who are on their regular employer's payroll but *not* on their union's payroll – whom their employers allow to perform union representational functions during their regular work time, such as meeting with employer representatives over contractual grievances or participating in shop floor safety inspections, without having their regular pay docked;

(ii) the treatment of a union representative's continued receipt of regular pay or benefits from his regular employer for time spent performing union representational functions as outside the category of payments "received as a bona fide employee of such employer" that are exempt from reporting under LMRDA § 202(a)(1) & (5);

(iii) the treatment of "bona fide loans" – i.e., loans from a national or state bank, credit union, savings or loan association or other bona fide financial institution that are based on the financial institution's own neutral criteria and made on terms unrelated to the borrower's status as a labor organization officer or employee – as reportable under LMRDA § 202(a)(3) & (4) if the financial institution: (a) deals with the borrower's labor organization or a trust in which that labor organization is

8

interested, or (b) does a substantial part of its business with employers whose

employees the labor organization represents or seeks to represent;

(iv) the treatment of entities, including trusts, charities and other labor

organizations, whose employees are not of a type that the union

officer/employee's labor organization could be expected to seek to represent as

"employers" covered by § 202(a)(6); and

(v) the treatment of "bona fide loans" from a credit union – i.e., loans that are

based on the credit union's own neutral criteria and made on terms unrelated to the

borrower's status as a labor organization officer or employee – as reportable under

LMRDA § 202(a)(6) if the credit union is a trust in which the union

officer/employee's labor organization is interested.

LMRDA § 202 does not provide for – and does not authorize the Secretary to

provide for – these five Form LM-30 reporting requirements.  In addition, the

requirement  to report "bona fide loans" from businesses that deal with the filer's union

or with union-represented employers (point (iii) above) was adopted by the Secretary

without complying with the APA notice and comment procedures, and the requirement to

report "bona fide loans" from union-sponsored credit unions (point (v) above) was

adopted without providing the reasoned explanation for that requirement mandated by the

APA.

## ARGUMENT

The Secretary of Labor's Form LM-30 reporting requirements must be faithful to

the reporting regime Congress spelled out in LMRDA § 202.  In the argument that

9

follows, we therefore begin with a brief overview of LMRDA § 202 and the reporting requirements that statutory provision imposes on union officers and employees. We then turn to the particular aspects of the Secretary's 2007 revisions to the Form LM-30 that we challenge as contrary to law. Finally, we discuss the appropriate relief for the Secretary's actions in revising the Form LM-30 in a manner that is contrary to law.

I.  THE STRUCTURE AND PURPOSE OF LMRDA § 202 AND THE SECRETARY'S AUTHORITY TO PRESCRIBE REPORTING FORMS UNDER THAT STATUTE.

LMRDA § 202 is Congress's response to the problem posed by union officers and employees "[p]laying both sides of the street, using union office for personal financial advantage, [and engaging in] undercover deals, and other conflicts of interest [that] corrupt, and thereby undermine and weaken the labor movement." S. Rep. No. 187, 86th Cong., 1st Sess. 14 (April 14, 1959), reprinted in NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959*, vol. 1, p. 410 (cited as "[vol.] Leg. Hist. [page]"). The Senate report described that response as follows:

> "The committee bill attacks the problem by requiring union officers and employees to file reports with the Secretary of Labor disclosing to union members and the general public any investments or transactions in which their personal financial interests may conflict with their duties to the members. The bill requires only the disclosure of conflicts of interest as defined therein. The other investments of union officials and their other sources of income are left private because they are not matters of public concern. No union officer or employee is obliged to file a report unless he holds a questionable interest in or has engaged in

a questionable transaction.  The bill is drawn broadly enough, however, to require

disclosure of any personal gain which an officer or employee may be securing at

the expense of the union members."  Sen. Rep. No. 187, pp. 14-15; 1 Leg. Hist

410-411.

As Professor Archibald Cox, who took a leading role in drafting the conflict-of-interest

reporting provision, explained, "The conflicts of interest which the bill requires a union

official to disclose are, with minor exceptions, the very same conflicts of interest which

the [AFL-CIO] codes of ethical practice declare incompatible with the essential ethical

practices of the trade union movement." Hearings on S. 505 before the Subcommittee on

Labor of the Senate Committee on Labor and Public Welfare, 86th Cong., 1st Sess., p.

123 (1959) (hereafter "1959 Sen. Hearings").  *See* 72 Fed. Reg. at 36129 (noting Cox's

"pivotal role in drafting the legislation").

In statutory terms, LMRDA § 202(a) carefully delineates "six specified

transactions" which must be reported on the ground that they "might constitute a conflict

of interest."  2 Leg. Hist. 1259(3) (Sen. Kennedy).  *See also id*. at 1283(2) ("6 classes of

'conflict of interest' transactions or holdings") & 1825(3) ("six specific types of business

transactions between a union official and an employer which constitute a conflict-of-

interest transaction").

Subsections (a)(1), (2) and (5) cover the core "labor relations" conflict-of-interest

situations by requiring union officers/employees to report financial interests in, receipts

from or transactions with "employers" where the officer/employee's union "represents or

is actively seeking to represent" the employer's employees.  29 U.S.C. § 432(a)(1), (2) &

11

(5).  To complete the coverage of "labor relations" conflict-of-interest situations, subsection (a)(6) requires reports of payments to union officers/employees from "employers" who operate in the same labor market as other employers whose employees the union represents. 29 U.S.C. § 432(a)(6).

Subsections (a)(3) and (4) cover "commercial" conflict-of-interest situations by requiring union officers and employees to report financial interests in or receipts from "businesses" which sell or lease goods or services to or engage in like commercial transactions with the filer's union or with employers whose employees the union represents. 29 U.S.C. § 432(a)(3) & (4).

LMRDA § 208 grants the Secretary the authority to "prescrib[e] the form and publication of reports required to be filed under [§ 202]."  29 U.S.C. § 438.[4]  Thus, the Secretary's prescription of the report form must faithfully implement the reporting requirements spelled out in the provisions of § 202.  In other words, the Secretary's Form LM-30 reporting regime must be "based on a permissible construction of [§ 202] in light of its language, structure, and purpose." *AFL-CIO v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005) (citations and quotation marks omitted). As we now demonstrate, in all the following respects the Secretary's 2007 changes to the Form LM-30 and its instructions

---

[4]    LMRDA § 208 also grants the Secretary the authority to issue "such other reasonable rules and regulations . . . as he may find necessary to prevent the circumvention or evasion of such reporting requirements."  29 U.S.C. § 438.  The Secretary has *not* claimed the reporting requirements challenged in this lawsuit are "necessary to prevent the circumvention or evasion of [the LMRDA § 202] reporting requirements."

are not "based" on the carefully delimited conflict-of-interest reporting requirements

enacted by Congress in § 202 and thus "exceed[] the Secretary's authority." *Id.* at 391.

II.  THE SECRETARY'S 2007 REVISIONS TO THE FORM LM-30 ARE IN
CRITICAL RESPECTS CONTRARY TO LAW.

A.  The Form LM-30 Coverage of Shop Stewards and the Requirement that Shop
Stewards and Other Union Representatives Report the Portion of Their Regular
Pay and Benefits Attributable to Periods During Which They Engage in
Representational Activities.

As the Secretary correctly observes, "the practice whereby a union official

employed by an employer would receive his or her regular compensation while engaged

in contract administration on behalf of the union was commonplace at the time the

LMRDA was enacted."  72 Fed. Reg. at 36126(2).  The practice of allowing employees

to engage in union representational activities, such as meeting on grievances, during their

regular work time without loss of their regular pay has long been expressly permitted by

both the National Labor Relations Act and the Railway Labor Act.  *See* 29 U.S.C. §

158(a)(2) ("an employer shall not be prohibited from permitting employees to confer with

him during working hours without loss of time or pay"); 45 U.S.C. § 152 Fourth

("nothing in this Act shall be construed to prohibit a carrier from permitting . . . local

representatives of employees from conferring with management during working hours

without loss of time").   During World War II, moreover, the War Labor Board routinely

ordered that collective bargaining agreements provide that "[u]nion representatives who

are employees shall not lose pay during the time spent in handling grievances within the

plant," on the understanding that this encouraged "the practice of quickly investigating

and promptly disposing of grievances."  *International Harvester Co*., 1 War Labor Rep.

112, 114 & 122 (1942).  And, from that time on, collective bargaining agreements have commonly provided that employees may take a leave of absence from active employment to carry out union representational activities while continuing to receive their regular pay or regular benefits from the employer during that period of leave.  *See Communications Workers v. Bell Atlantic Network Services, Inc.*, 670 F.Supp. 416 (D.D.C. 1987).

Against that background, the original Form LM-30 – i.e., the form prescribed by the Secretary shortly after the enactment of the LMRDA and in force continuously ever since – recognized that the portion of an employee's regular pay and benefits attributable to time spent during his regular work time on union representational activities is "not reportable."  72 Fed. Reg. at 36124(3).  In contrast, the revised Form LM-30 adopted in 2007 treats such pay and benefits as reportable.  *Id*. at 36142.  To reach that result, the Secretary first had to expand the LM-30 universe of "employees of a labor organization" to include individuals, such as shop stewards, who are on their employer's payroll but not on their union's payroll, who are allowed by their employers to perform representational tasks during their regular work time with no loss in their regular pay and benefits.  *Id*. at 36144.  In addition, the Secretary had to remove from § 202's reporting exception for pay "received as a bona fide employee" the portion of an employee's regular pay and benefits that is attributable to the portion of his regular work time spent on union representational activities or to periods of union leave.  *Id*. at 36142.  Neither of those distinct but related steps is legally tenable.

1.  Treating Shop Stewards as "Employees of a Labor Organization."

LMRDA § 202(a)'s reporting requirements apply to two classes of individuals: i) "officer[s] of a labor organization," and ii) "employee[s] of a labor organization." 29 U.S.C. § 432(a).[5]  The revised Form LM-30 instructions provide that "[a]n individual who is paid *by the employer* to perform union work, either under a 'union-leave' or 'no-docking' policy, is an employee of the union for reporting purposes if the individual performs services for, and under the control of, the union." 72 Fed. Reg. at 36144(1) (emphasis added).  The instructions make clear that this includes individuals whose "employer permits [them] to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay." *Id*. at 36142(2).  The instructions specify that, "[f]or purposes of Form LM-30, stewards" who are allowed by their employer to process grievances during their regular work time without loss of their regular pay "are considered employees of the labor organization." *Id*. at 36144(1).[6]

Treating individuals, such as shop stewards, who are *not* on their union's payroll, as "employees of a labor organization" sweeps tens of thousands of rank and file union

_____

[5]  The statutory term "officer" encompasses only persons who perform "executive functions," such as the union's "president, vice president, secretary, treasurer" and "any member of its executive board or similar governing body" and does not encompass "shop stewards." 29 U.S.C. § 402(n).

[6]  We use the term "shop stewards" as short-hand for those employees who are permitted by their employers to perform on-the-job union representation.  However, the revised Form LM-30 would apply to a myriad of union representatives in addition to shop stewards, including, for example, employee representatives accompanying inspectors from the Occupational Safety and Heath Administration.  *See* 29 U.S.C. § 657 (a) & (e) (mandating that "authorized employee representatives" shall be allowed to accompany OSHA inspectors "during regular working hours").

members within the Form LM-30 universe.  Once treated as "employees of a labor

organization" for Form LM-30 purposes, these individuals are obliged to report not only

the amount of their regular pay and benefits attributable the portion of their regular work

time spent on union representational activities but all other interests and receipts that are

covered by the Form LM-30.[7]

The Secretary cites no legal authority in support of the proposition that shop

stewards who are not on their labor organization's payroll can nevertheless be treated as

"employees of a labor organization" on the ground that their employers allow them to

engage in union representational activities, such as grievance handling, during their

regularly scheduled work time without any loss of their regular pay or benefits.  72 Fed.

Reg. at 36144.  That is hardly surprising, for the proposition flies in the face of the well-

---

[7]  The Secretary has attempted to ameliorate the impact of covering shop stewards by issuing the following after-the-fact guidance that creates reporting exceptions that do not even purport to have a basis in § 202:

> "A union steward who receives 250 or fewer hours of union-leave or no-docking payments from the employer pursuant to a bona fide collective bargaining agreement will not be required to file a Form LM-30.  A union steward who receives 250 or fewer hours of union-leave or no-docking payments from the employer that are not paid pursuant to a bona fide collective bargaining agreement will be required to only report those union leave/no docking payments on Form LM-30."  Form LM-30 FAQ 43.

Given the Secretary's position that shop stewards are properly treated as "employees of a labor organization," it is difficult to discern the statutory basis for setting up a tiered reporting structure that frees some stewards – those who spend fewer than 250 work hours on grievance handling under an express no-docking agreement –  from *any* LM-30 reporting obligation and allows other stewards – those who spend fewer than 250 work hours on grievance handling pursuant to a practice that is not memorialized in the written agreement – to report *only* the value of their paid worktime (but not other clearly reportable receipts, such as the employer loans covered by subsection (a)(2)).

established rule that "[c]ompensation by the putative employer to the putative employee

. . . is an essential condition to the existence of an employer-employee relationship."

*Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990).  This

Court recently applied that rule in holding that shop stewards who are not on their

union's payroll cannot be deemed union employees for purposes of determining whether

the union is covered by Title VII of the Civil Rights Act. *Dean v. American Fed. of*

*Government Employees, Local 476*, 509 F.Supp.2d 39 (D.D.C. 2007).

In *Dean*, this Court held that shop stewards who are not on their union's payroll

and who are allowed by their employer to use a portion of their regularly scheduled work

time without any loss of their regular pay "for handling grievances and other complaints,

attending meetings, and other representational functions" are *not* employees of their local

union. 509 F.Supp.2d at 47.  In so ruling, the Court rejected the argument that the local

union's "stewards should be considered the local's 'employees' because they are paid by

[their employer] for doing union work under [the collective bargaining] contract."  *Id*. at

53.  The Court found that "the fact that the Local does not compensate its officers and

stewards conclusively demonstrates that they are not employees" of the local union, *id*. at

54, reasoning as follows:

> "Central to the meaning of the words employer and employee . . . is the idea of
>
> compensation in exchange for services: an employer is someone who pays,
>
> directly or indirectly, wages or a salary or other compensation to the person who
>
> provides services  – that person being the employee. Compensation is an essential
>
> condition to the existence of an employer-employee relationship. Without

compensation, no combination of other factors will suffice to establish the

relationship." *Ibid.* (citations, quotation marks and brackets omitted).

The holding in *Dean* squarely refutes the Secretary's basis for extending the Form LM-30

reporting requirement to shop stewards who are not on their union's payroll.

There is nothing in the text of the LMRDA that gives any indication whatsoever

that Congress used the term "employee of a labor organization" in § 202 in any but its

normal sense of a "person" to whom the labor organization pays "compensation in

exchange for services." *Dean*, 509 F.Supp.2d at 54. Indeed, the LMRDA's overall

structure and its legislative history makes it quite plain that the § 202(a) term "employee

of a labor organization" is not used in some eccentric sense that would include "shop

stewards" who are not on their union's payroll.

As the Secretary has observed, the LMRDA Congress was well aware that the

labor relations system it was regulating included "shop stewards" who were allowed by

their employers to handle grievances during their regular work time without any loss of

their regular pay. 72 Fed. Reg. at 36126(2). *See* U.S. Dep't of Labor, *Collective

Bargaining Clauses: Company Pay for Time Spent on Union Business*, Bulletin No.

1266, Table 1, p. 3 (October 1959). And, where it was relevant to its regulatory purpose,

Congress made express reference to "shop stewards" in the text of the LMRDA. *See* 29

U.S.C. §§ 402(q), 501(a) & (b), 502(a) & 529. Against that background, it is highly

significant that LMRDA § 202 does *not* impose its reporting obligations on "shop

stewards" either in terms or through some specially-crafted definition of "employee of a

labor organization."

In sum, individuals who are on their employer's payroll but not on their union's payroll do not become "employees of a labor organization" within the meaning of LMRDA § 202 by virtue of being allowed by their employers to devote portions of their regular work time to union representational activities with no loss of their regular pay. The Secretary's revised Form LM-30 treating such individuals as "employees of a labor organization" is therefore contrary to law.

2. "Payments and Other Benefits Received as a Bona Fide Employee."

LMRDA § 202(a)(1) & (5) requires labor organization officers and employees to report payments that he or his spouse or minor child received from an employer whose employees the labor organization represents or is actively seeking to represent, "*except payments and other benefits received as a bona fide employee of such employer*." 29 U.S.C. § 432(a)(1) & (5) (emphasis added).

From the first, the Secretary has recognized that the phrase "payments and other benefits received as a bona fide employee of [the] employer" includes "payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization." Original Form LM-30 Instructions Part A exclusion (iv) to Items 6 and 7, pp. 3-4 (Exhibit 3).

Repudiating that well-established position, the revised Form LM-30 provides that "[c]ompensation received under a 'union-leave,' or 'no-docking policy' – i.e., a policy where "the employer continues the pay and benefits of an individual who works full time for a union" or "permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay" – "is not received as a bona fide employee of the employer making the payment."  72 Fed. Reg. at 36178.   And on that basis, the revised Form LM-30 requires union officers/employees to report the portion of their regular compensation that is attributable to time their employers allow them to spend on representational activities.  *Ibid*.[8]

The Secretary's revised Form LM-30 reporting requirements regarding compensation received pursuant to employer "union leave" and "no docking" policies cannot be squared with the unequivocal statutory exemption from § 202 reporting for "payments and other benefits received as a bona fide employee."  In the first place, an employee who is on an employer's payroll because he was employed to perform services for the employer in return for compensation is a "bona fide employee of such employer." And, the regular pay and benefits that employee receives from his employer are received by virtue of the fact that the employee is a "bona fide employee of such employer" with an established rate of periodic compensation.  This is so even when the employee receives his regular pay and benefits for a period during which the employee is released

---

[8]  The Secretary has indicated that, to comply with this reporting requirement, all such union officers/employees, including the shop stewards she erroneously classifies as union employees, must "keep[] a log of the amount of time expended" on representational activities, such as grievance handling, to calculate the portion of their regular pay and benefits that is attributable to that time.  72 Fed. Reg. at 36127(2).

by his employer from performing active service for the employer.  It is beyond dispute, for example, that pay and benefits that continue at their regular rate during such periods of employer-granted leave as leave for illness or jury duty are pay and benefits received from the employer by virtue of the recipient's status as "a bona fide employee of such employer."  And, the same is true of pay and benefits that continue at their regular rate during portions of the employee's regular work time when he is allowed by the employer to engage in union representation and during periods of union leave.

The Secretary's entire rationale for her position is that the statutory term "payments . . . received as a bona fide employee" is limited to "payment[s] for activities performed on the payer-employer's behalf."  72 Fed. Reg. at 36126(3).  But this flies in the face of the statutory language.  Subsections (a)(1) and (5) exempt from reporting *all* "payments and other benefits received as a bona fide employee," and not, as the Secretary would have it, only "payments for activities performed on the payer-employer's behalf."  That is as it has to be, for on the Secretary's view, employer payments to employees at their regular rate during periods of sick leave or jury duty would *not* be "payments . . . received as a bona fide employee of such employer," and such payments are clearly not reportable.

The Secretary's rationale is squarely rejected by a line of cases construing LMRA § 302(c)(1), which permits "employer payments to union officials where payment is made 'by reason of' service as an employee."  *Bell Atlantic*, 670 F.Supp. at 422.  These cases hold that all "compensation occasioned by the fact that the employee has performed or will perform work for the employer" – including compensation that "is not payment

directly for that work" – is compensation received "by reason of his service as an employee of such employer." *Id*. at 422, quoting *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046, 1049 (2d Cir. 1986).[9] As these courts have observed, "an employer's payment to [an employee who is also a union official], pursuant to a no-docking provision in a collective bargaining agreement, for time off to permit him to tend to union duties . . . is not . . . different in kind from the employer's granting of such benefits as sick leave, military leave, or jury leave to its employees." *Id*. at 423, quoting *BASF Wyandotte*, 791 F.2d at 1049. These cases are particularly on point with regard to the proper reading of the LMRDA § 202(a)(1) & (5) reporting exception, for the courts' conclusion that LMRA § 302(c)(1) permits employers to make "no docking" and "union leave" payments to employees who are also union officials rests on the determination that such payments during an employer-granted period of leave from active service are payments to a "bona fide employee." *BASF Wyandotte*, 791 F.2d at 1050; *NLRB v. BASF Wyandotte Corp*., 798 F.2d 849, 856 n. 4 (5th Cir. 1986).

---

[9]    The Secretary acknowledges that "[m]ost courts that have considered the question have found that . . . section 302(c)(1) . . . allow[s] an employer to grant a bona fide employee who is a union official paid time off in order that he may attend to union duties." 72 Fed. Reg. at 36126(2) (citation and quotation marks omitted). The Secretary herself has adopted this interpretation of LMRA § 302(c) in defining the employer reporting requirements under LMRDA § 203(a). That provision generally requires employers to report payments to union officials but exempts "payments of the kind referred to in section 302(c) of the Labor Management Reporting Act, 1947, as amended." 29 U.S.C. § 433(a)(1). The Secretary has determined that union-leave and no-docking payments to union officials come within this exemption from employer reporting under LMRDA § 203(a). *See* LM-10 Instructions Part A, Item 8 a, p. 3 (Exhibit 7).

In sum, the pay and benefits that an employee continues to receive at his regular rate for periods his employer allows him to spend on union representational activities are "payments and other benefits received as a bona fide employee of such employer" that are exempt from reporting under LMRDA § 202(a)(1) & (5). The revised Form LM-30's requirement that such pay and benefits be reported is thus contrary to law.

B.  Bona Fide Loans to Union Officer/Employees from "Businesses" Covered By LMRDA § 202(a)(3) & (4).

1.  LMRDA § 202(a)(3) & (4) Cannot be Read to Require Reporting Bona Fide Loans to Union Officers/Employees from Covered "Businesses."

The revised Form LM-30 adopted by the Secretary in 2007 imposes on union officers/employees a requirement to report "bona fide loans" – defined as loans that "are based upon the financial institution's own criteria and made on terms unrelated to the official's status in the labor organization" – where:

the lending "financial institution is 1) a business that buys from, sells or otherwise deals with your labor organization, 2) a business that buys from, sells or otherwise deals with a trust in which your labor organization is interested, or 3) a business a substantial part of which (10% or more) consists of buying from, selling to or otherwise dealing with an employer whose employees your labor organization represents or is actively seeking to represent." Form LM-30 FAQs 70 & 71.

*See* 72 Fed. Reg. at 36161 (Item 7) (asking whether the union officer/employee "made loans to or received loans from, a business") & 36183(1) (instruction for Item 7).[10]  For

---

[10] The Secretary has advised that "[i]f a labor organization official does not know the amount of business dealings between [a financial institution] and [union-represented]

each such loan, the union officer/employee must "[i]dentify the terms and conditions of the loan [and] include the dollar value of the remaining obligation, if any, as of the end of the fiscal year." 72 Fed. Reg. at 36184. Officers of national and intermediate labor organizations must also report on bona fide loans from financial institutions that deal with affiliated local unions. Form LM-30 FAQ 27.

As the Secretary herself observes, "[l]oans [made in] the regular course of business with a bona fide financial institution are among the most common financial transactions undertaken by individuals." 72 Fed. Reg. at 36118(2). Nonetheless, the revised Form LM-30 requires union officers/employees to report the "terms and conditions," including the outstanding balance, of: a home mortgage loan procured by the officer/employee on the open market and on terms available to any consumer; a student loan procured by her son through his college financial aid office; credit extended by an automobile manufacturer on the purchase of her family automobile; and many other personal loans and financial transactions having nothing to do with her union post. What is more, the officer/employee must continue to report on each such loan as long as there is any "remaining obligation." The only condition is that the lending institution must do some minimal business with either the union or a union trust fund or some substantial business with employers of union-represented employees.

---

employer[s], the official should request such information in writing from the [financial institution]." Form LM-30 FAQ 63. "If the [financial institution] refuses to provide the information, the official should contact OLMS [the Department of Labor section responsible for Form LM-30 reports] for assistance," and "[i]n the meanwhile, the official should make a good faith estimate, based on the information reasonably available, whether the 10% threshold has been met." *Ibid*.

It is too plain for argument that such loans are not "incompatible with the essential ethical practices of the trade union movement," 1959 Sen. Hearings 123, and thus are not among the "questionable transaction[s]" that LMRDA § 202 is intended to expose, S. Rep. No. 187, p. 15, 1 Leg. Hist. 411. To the contrary, bona fide home mortgages and student loans from bona fide financial institutions are precisely the sort of "private" financial matter that Congress stated it did *not* intend to expose by enacting LMRDA § 202. *Ibid.*[11]

It is, therefore, not surprising that LMRDA § 202(a)(3) & (4) – which covers union officer/employee "interests" in and receipts from "businesses" that deal with the officer/employee's labor organization or with employers whose employees that labor organization represents or seeks to represent – provides *no* predicate for the Secretary's requirement to report "bona fide loans." 29 U.S.C. § 432(a)(3) & (4). Subsections (a)(3) and (4) do not state any requirement that union officers/employees report "loans" from the covered "businesses." Rather, what those subsections state is that union officers/employees must report any financial "interest" held in or "any income or any other benefit with monetary value" derived from, each such "business." 29 U.S.C. § 432(a)(3) & (4). And, a person who receives a "bona fide loan" from a financial institution does *not* thereby gain a financial "interest" in, nor does he derive any "income" or "benefit with monetary value" from, the lending institution. The granting of

---

[11]   Indeed, without any explanation, the Secretary has announced that "the Department is not requiring union officials to report credit card transactions (including unpaid balances)" under the "bona fide loans" reporting requirement. Form LM-30 FAQ 70.

a "bona fide loan" is an arm's length commercial transaction in which the lender provides the loaned funds for the borrower's use and the borrower compensates the lender for the full monetary value of that use.  A bona fide loan from a financial institution thus no more grants the borrower "income" or "other benefit with monetary value" than would the lease of an automobile at market rates.

A comparison of subsection (a)(1) and subsection (a)(2) – covering "employers" whose employees a union officer/employee's labor organization represents or seeks to represent – confirms that the phrase "any income or any other benefit with monetary value" does *not* encompass "bona fide loans."  Subsection (a)(1) – like subsections (a)(3) and (4) which apply to "business" interests and receipts – uses the phrase "any income or any other benefit with monetary value" to describe the reportable receipts from a covered "employer." Subsection (a)(2) then adds a requirement to report "any . . . loan" from such an employer.  The (a)(2) requirement to report "any . . . loan" from a covered "employer" would be redundant if employer loans, including "bona fide loans," were already covered by the (a)(1) requirement to report "any income or any other benefit with monetary value" from such an employer.[12]  Significantly, there is no "loan" reporting requirement

---

[12]    The LMRDA amendments to § 302 of the Labor Management Relations Act further confirm this point.  Prior to the 1959 amendments, LMRA § 302 made it "unlawful for any employer to pay or deliver . . . any money or other thing of value to any representative of his employees." 2 Leg. Hist. 1885 (indicating LMRDA changes to LMRA § 302).  The 1959 amendments added the word "lend," making it "unlawful for any employer to pay, *lend*, or deliver . . . any money or other thing of value." *Ibid.* (emphasis in original).  It thus could not be more clear that the 1959 Congress did *not* consider a bona fide loan to constitute the delivery of "money or other thing of value" to the borrower.

with respect to covered "businesses" similar to that stated in (a)(2) for covered "employers."

Given the critical textual difference between subsections (a)(1) & (2) and subsections (a)(3) & (4), for the first fifty years of the LMRDA the Secretary recognized in the original Form LM-30 that the LMRDA treats "employer" loans differently than "business" loans. The instructions to the original form made clear that "*any loan* to or from the [covered] employer" must be reported in Part A as one of the "transactions" with an employer whose employees the union officer/employee's labor organization represents or seeks to represent. Original Form LM-30 Instructions Item 7(b), p. 4 (emphasis added). In contrast, the instructions for Part B, where interests in and receipts from "businesses" are to be reported, did *not* provide for the reporting of "any loan to or from the [covered business]." *Id.* Item 12, p. 5 (incorporating by reference "Item 7(a) and (c)" from the instructions for Part A but *not* incorporating Item 7(b)).

The original Form LM-30 reflects the correct understanding that the LMRDA § 202(a)(3) & (4) requirement to report "any income or any other benefit with monetary value" from covered "businesses" does *not* entail a requirement to report "bona fide loans." The revised Form LM-30 requirement to report "bona fide loans" from covered "businesses" is thus contrary to law.

> 2. The Secretary's Revisions of the Form LM-30 to Require Reporting "Bona Fide Loans" from "Businesses" Were Made Without Notice and Comment in Violation of the APA.

In addition to exceeding the Secretary's statutory authority under LMRDA § 202(a)(3) & (4), the changes to the Form LM-30 regarding loans from "businesses" were

27

adopted without following the APA notice and comment procedures, 5 U.S.C. § 553(b), and without any explanation.

As we noted above, the original Form LM-30 drew a distinction between "employer" loans and "business" loans, by providing that "any . . . loan" from a union-represented "employer" be reported but not providing that any loan from a "business" be reported. *Compare* Original Form LM-30 Instructions Item 7, p. 4 *with id*. Item 12, p. 5. The Secretary's 2005 proposal to revise the Form LM-30 maintained this distinction by expressly providing that "loans from . . . an employer whose employees your union represents or is actively seeking to represent" are reportable under subsection (a)(2), while not similarly providing for the reporting of "loans" from the "businesses" covered by subsections (a)(3) & (4). *Compare* 70 Fed. Reg. 51166, 51188(1) (Aug. 19, 2005) *with id.* at 51189-91.

By contrast with the original Form LM-30 and with the Secretary's 2005 proposal to change that form, the revised Form LM-30 adopted by the Secretary's 2007 rule treats as reportable, without qualification, all "loans from[] a business" that deals with a union officer/employee's union or with a trust in which the union is interested or in substantial amount with employers whose employees the union represents or seeks to represent. 72 Fed. Reg. at 36161 (revised Form LM-30 Part A Item 7). *See also id*. at 36183 ("if you, your spouse, or minor child . . . received loans from[] a business . . . that meets any of the conditions listed"). In issuing the 2007 final rule, the Secretary did not even note, much less give any explanation for, her decision to change course by henceforth treating "any loans" from "businesses" as reportable under subsections (a)(3) & (4). By proceeding in

28

this way, the Secretary not only acted beyond her statutory authority under the LMRDA but also violated the APA's requirement for notice and comment rulemaking.

### C. The Requirement to Report on Receipts from Charities, Other Labor Organizations and Union-Trusts that are Not "Employers" Within the Meaning of LMRDA § 202.

#### 1. LMRDA § 202(a)(6) Is Not a Catch-All Provision Requiring Reporting on Any Situation the Secretary Deems to Have the Potential to Pose a Conflict of Interest.

LMRDA § 202(a)(6) requires reporting "any payment of money or other thing of value . . . received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer" except for payments of the type exempted from the prohibition contained in LMRA § 302(c).  29 U.S.C. § 432(a)(6).  Subsection (a)(6) thus completes the treatment of "labor relations" conflicts of interest begun in subsections (a)(1), (2) & (5) by requiring the reporting of payments to union officers/employees by employers who operate in the same labor market as other employers whose employees the union represents or is actively seeking to represent, i.e., payments by employers who are potential organizing targets of the union.  *See* U.S. Department of Labor, *LMRDA Interpretative Manual* § 248.005 ("A union officer must report under section 202(a)(6), if he receives any payment by way of dividends or otherwise from a firm which is competitive to one which has collective bargaining agreements with his own union.").  That is the only tenable reading of subsection (a)(6) that accords with its text, its statutory context, and its legislative history.

As the Secretary correctly recognizes, the term "any employer" as used in subsection (a)(6) does not mean "any entity that employs one or more employees."  As

she has explained, to so read (a)(6) would render "redundant . . . the previous five subsections" and would extend the reach of § 202(a) so far beyond the carefully delineated conflict-of-interest situations that "union officials would have to disclose virtually all their financial affairs" – clearly something that "Congress did not intend." 72 Fed. Reg. at 36129(2).

Nonetheless, the revised Form LM-30 – based on the Secretary's reading of § 202(a)(6) to cover any "such interests in or payments by employers" as "have the evident potential to pose a conflict between the official's own financial interests and the official's duty to his or her union," 72 Fed. Reg. at 36129(1) – provides that union officers/employees are to report payments from the following types of entity:

(i)  "an employer that is a trust in which the filer's labor organization is interested;"

(ii) "an employer that is a non-profit organization that receives or is actively and directly soliciting . . . money, donations, or contributions from the filer's labor organization;" or

(iii) "an employer that is a labor union that . . . has employees in the same occupation as those represented by the filer's union[,] claims jurisdiction over work that is also claimed by the filer's union[,] is a party to or will be affected by any proceeding in which the filer has voting authority or other ability to influence the outcome of the proceeding[,] or . . . has made a payment to the filer for the purpose of influencing the outcome of an internal union election."  *Id*. at 36128(2).

Section 202(a)(6) cannot be read to grant the Secretary a standardless authority to require that union officers/employees report on any payments the Secretary deems to have the "potential to pose a conflict," just so long as the payment comes from an entity that has one or more employees.

Two aspects of the statutory text indicate that subsection (a)(6) is a delimited "labor relations" conflict-of-interest provision that supplements the delimited  subsection (a)(1), (2) & (5) "labor relations" conflict-of-interest provisions and is not a catch-all provision.  First, § 202(a)(6) focuses on labor relations situations by singling out for coverage "any person who acts as a *labor relations* consultant to an employer" rather than "any person who acts as a consultant to an employer," the formulation that would have been used if the provision were intended to have a broader reach.  Second, § 202(a)(6) singles out for exception "payments of the kinds referred to in § 302(c) of the Labor Management Relations Act, 1947, as amended," and LMRA § 302 is a provision that delineates proper and improper employer payments to union officers/employees in the labor relations context.

The legislative evolution of the provision enacted as LMRDA § 202(a)(6) and the legislative explanation of that subsection as it was revised by the Senate Labor Committee confirm that the subsection is a delimited "labor relations" conflict-of-interest provision that supplements the subsection (a)(1), (2) & (5) "labor relations" conflict-of-interest provisions and not a more general catch-all provision.

LMRDA § 202(a) is based on § 102(a) in the 1958 Kennedy-Ives bill and § 102(a) in the 1959 Kennedy-Ervin bill.  Section 102(a)(6) of the Kennedy-Ives bill, as it was

31

reported by the Senate Labor Committee and as it passed the Senate in 1958, required the reporting of "any payment received directly or indirectly from any employer or any person who acts as a labor relations expert, adviser, or consultant to an employer pursuant to any agreement or arrangement by which the officer or employee is to influence or affect employees in the exercise of rights guaranteed by section 7 of the National Labor Relations Act, as amended, and the Railway Labor Act, as amended." S. 3974 § 102(a)(6), 85th Cong., 2d Sess. (1958) reprinted in U.S. Department of Labor, *Legislative History of the Labor-Management Reporting & Disclosure Act of 1959, Titles I-IV* ("LMRDA Leg. Hist."), p. 470. As the 1958 Senate Report explained, "The purpose of this paragraph, among other things, is to reach the union official who may receive a payment from an employer not to organize the employees." S. Rep. No.1684, 85th Cong., 2d Sess., p. 19 (1958); LMRDA Leg. Hist. 392.

This version of § 102(a)(6) – the version that received the most thorough consideration in the Senate – was clearly a "labor relations" conflict-of-interest provision aimed at payments to a union officer/employee by an employer whose employees the union would be apt to have an interest in organizing.

The wording of § 102(a)(6) in the Kennedy-Ervin bill introduced at the beginning of the 86th Congress was identical to the wording of that subsection in the 1958 bill. S. 505 § 102(a)(6) , 86th Cong., 1st Sess. (1959); 1 Leg. Hist. 37-38. Subsection 102(a)(6) of the 1959 bill was then reworked during the Senate Labor Committee deliberations at the suggestion of Senator Goldwater. S. Rep. No. 187, p. 90; 1 Leg. Hist. 486. As a

result of that amendment, § 102(a)(6) took the form in which it was ultimately enacted as LMRDA § 202(a)(6).

Senator Goldwater explained that the purpose of the change he requested was to make the employer payment's "objective" irrelevant to whether the payment was reportable.  2 Leg. Hist. 1846(1).   It is noteworthy in this regard that prior to that amendment, § 202(a)(6) was the only subpart of § 202 that did not define a reportable conflict-of-interest situation but rather made reporting turn on the purpose of the payment in question.

In suggesting that § 202(a)(6) be redrafted to follow the form of the other § 202(a) conflict-of-interest provisions, Senator Goldwater gave no indication that his purpose was to transform subsection (a)(6) from a delimited labor relations conflict-of-interest provision into a general catch-all not tied in any way to "labor relations" conflict-of-interest situations.  To the contrary, Senator Goldwater explained that the union officer/employee reporting requirements that emerged from the Senate Labor Committee in 1959 were directed only at financial interests or transactions with employers "which would constitute a conflict-of-interest," i.e., "holdings of interest in or the receipt of economic benefits from employers who deal or might deal with such union official's union." 2 Leg. Hist. 1846(1).

Not surprisingly, then, the 1959 Senate Report on § 102(a)(6) as amended by the Committee, like the 1958 Senate Report on § 102(a)(6) as originally drafted, described this provision as intended to "reach the union official who may receive a payment from an employer not to organize the employees."  S. Rep. No. 187, p. 16; 1 Leg. Hist. 412.

This description of § 102(a)(6)'s reach echoes the Report's earlier description of the bill's amendments to LMRA § 302 for the purpose of "clos[ing] the loopholes" revealed by the McClellan committee. S. Rep. No. 187, p. 13; 1 Leg. Hist. 409. The following portion of that description is pertinent:

> "*Ventimiglia v. United States* (242 F.2d 620 (4th Cir. 1957)), illustrates one inadequacy of the present law in respect of union representatives. The employer had a nonunion construction job underway when the business agent of the local roofers' union objected. Eventually, the business agent agreed to issue working permits to the nonunion employees in return for monthly payments of $100. The court set aside a conviction under section 302 on the ground that neither the roofers' union nor the business agent was technically a 'representative' of any of the employer's employees. The committee bill corrects this defect by adding a new subdivision proscribing payments to any labor organization, or any officer or employee, which is seeking to represent or would admit to membership any of the employees of the employer." *Ibid*.

The prohibition on employer payments to a labor organization that "seeks to represent . . . any of the employees of such employer" added to LMRA § 302(a) by the Kennedy-Ervin bill directly corresponds to the reporting requirement for employer payments to an officer or employee of a labor organization that "is actively seeking to represent" the employees of such employer in LMRDA § 202(a)(1), (2) & (5). And, by the same token, the prohibition on employer payments to a labor organization that "would admit to membership . . . any of the employees of such employer" added to LMRA §

302(a) corresponds to the reporting requirement for "any payment . . . from any employer or any person who acts as a labor relations consultant to an employer" in LMRDA § 202(a)(6).  Thus, as Senator Morse noted on the floor of the Senate, "Payments of the type described in section 202(a)(6) are also made criminal offenses under section 302(b) of the Taft Hartley Act, as amended."  2 Leg. Hist. 1415(2).  The correspondence between LMRA § 302 and LMRDA § 202(a)(6) is underscored by the fact that the latter expressly incorporates the exceptions of the former by "except[ing] payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended."

The foregoing makes it entirely clear that LMRDA § 202(a)(6) was intended to round out the "labor relations" conflict-of-interest reporting requirements of subsections (a)(1), (2) & (5) by requiring the reporting of payments to a union officer/employee by any employer whose employees the filer's union "would admit to membership," even if the union neither "represents" nor is "actively seeking to represent" those employees.  In other words, that subsection covers payments "from employers who . . . might deal with such union official's union," 2 Leg. Hist. 1846(1), including most particularly "a payment from an employer not to organize the employees," S. Rep. No. 187, p. 16, 1 Leg. Hist. 412.

The revised Form LM-30's treatment of entities, such as charities, other labor organizations and trusts, who are not potential organizing targets of the union officer/employee's labor organization is, therefore, contrary to law.

35

### 2. No Explanation for Exempting Union-Sponsored Credit Unions from the Reporting Exemption for Bona Fide Loans.

Part C of the original Form LM-30 – where payments covered by subsection (a)(6) are reported – contained an exception for "[b]ona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions." Original Form LM-30 Instructions, Part C, exception (ii), p. 5. Under the revised Form LM-30, this exception does not apply to bona fide loans from a financial institution that is "a 'trust in which your labor organization is interested.'" 72 Fed. Reg. at 36173(2). In other words, the revised Form LM-30 would require union officers/employees to report "bona fide loans" from any credit union which their union has sponsored in whole or in part.

As we just demonstrated, the Secretary lacks authority to require "trust" reporting under subsection (a)(6). But even assuming that the Secretary did have authority to treat "trusts," including union-sponsored credit unions, as "employers" covered by subsection (a)(6), the Secretary has failed to "articulate a satisfactory explanation for [her] action," *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983), in excluding union-sponsored credit unions from the "bona fide loan" exemption generally applicable to entities covered by that subsection. The Secretary's limitation of the "bona fide loan" exemption is, therefore, "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A)(2).

It is common for labor unions to set up credit unions for the purpose of allowing their members to pool their resources and thereby ensure access to credit. Indeed, "credit

unions originally gained a foothold in the U.S. through labor unions." Wendell Fountain, *The Credit Union World: Theory, Process, Practice* 208 (2007). Under the revised Form LM-30, union officers/employees would have to report all personal loans granted to them or to members of their immediate family by credit unions sponsored by their unions.

To justify this sweeping reporting requirement, the Secretary cites a single "situation where a credit union controlled by a local union made 61% of its loans to four of its loan officers, three of whom were officers of the local." 72 Fed. Reg. at 36118(3). The Secretary asserts that "[i]f the officials had been required to report these loans, the members would have learned that their credit union was making loans for reasons related to union status, not on a borrower's ability to repay the debt." *Ibid.* That justification fails to withstand scrutiny.

In the first place, the loans described in this example do *not* meet the Secretary's definition of "bona fide loans." The Secretary has defined "bona fide loans" as loans that "are based upon the financial institution's own criteria and *made on terms unrelated to the official's status in the labor organization*." Form LM-30 FAQ 70 (emphasis added). The loans in the example were supposedly made "for reasons *related to union status*." 72 Fed. Reg. at 36118(3) (emphasis added). Thus, on the Secretary's own terms, the example has nothing to do with the "bona fide loan" exception.

Second, reporting these loans on a Form LM-30 would have disclosed virtually nothing about the credit union's loan practices, much less its reasons for granting the loans. Each local union officer's Form LM-30 would disclose only the amount and terms of his individual loan. Even taken together, the Form LM-30 reports of these local

37

union officers would not have disclosed what portion of the credit union's loans went to them.  Nor would the reports have disclosed that the local union officers were also credit union loan officers.

Finally, the Secretary completely ignores the fact that credit unions are regulated entities and subject to inspections that are designed to ensure that loan officers do not abuse their positions in the manner suggested by the example.  Indeed, credit union examiners are specifically instructed to pay particular attention to "loans to insiders" – i.e., loans to credit union "officers, directors, committee members, employees, and members of their immediate families" – to ensure that such loans meet the applicable legal standards.  National Credit Union Administration, *Examiners Guide*, p. 10A-1, available at: http://ncua.gov/GuidesManuals/examiners_guide/examguide.html.

In sum, the "insider loan" problem cited by the Secretary fails to provide a reasoned explanation for her decision to exclude union-sponsored credit union loans from the "bona fide loan" exception to reporting payments covered by subsection (a)(6).

III.  THE PROPER REMEDY.

The Administrative Procedure Act provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious . . . or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  As we have shown above, the Secretary's adoption of the revised Form LM-30 was in excess of her authority under the LMRDA.  Accordingly, the appropriate remedy is to vacate the rule adopting the revised Form LM-30.  *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001).  That is the remedy found appropriate by the District of Columbia

Circuit when the court of appeals determined that the Secretary exceeded her authority by adopting the Form T-1 requiring general trust reporting by unions, and it is the appropriate remedy here.  *AFL-CIO v. Chao, supra*, 409 F.3d at 391.  Vacating the rule is a particularly appropriate remedy here, since vacatur would have "the effect of reinstating the rules previously in force," *Action on Smoking and Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983), thereby allowing LM-30 reporting to continue uninterrupted on the original form.

CONCLUSION

The 2007 Form LM-30 rule should be vacated.

Respectfully submitted,

*/s/*_____
JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

*/s/*_____
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

39

STATUTORY APPENDIX

LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959

**Sec. 3.  Definitions** (29 U.S.C. § 402)

For purposes of titles, I, II, III, IV, V (except section 505), and VI of this Act –

\*\*\*

(n)  "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

**Sec. 202. Report of Officers and Employees of Labor Organizations** (29 U.S.C. § 432)

(a) Filing; contents of report. Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

(1) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) any stock, bond, security, or other interest, legal or equitable,

which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) Report of certain bona fide investments. The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940 or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Exemption from filing requirement. Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

## Sec. 203. Report of Employers (29 U.S.C. § 433)

(a) Filing and contents of report of payments, loans, promises, agreements, or arrangements. Every employer who in any fiscal year made--

(1) any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except (A) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or

a2

other credit institution and (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended;

\*\*\*

### Sec. 208. Rules and Regulations (29 U.S.C. § 438)

The Secretary shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under this title and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion of such reporting requirements. \*\*\*

### LABOR MANAGEMENT RELATIONS ACT OF 1947

### Sec. 302.  Restrictions on Payments to Employee Representatives (29 U.S.C. § 186)

(a) Payment or lending, etc., of money by employer or agent to employees, representatives, or labor organizations. It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value--

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

\* \* \*

(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer;***

## ADMINISTRATIVE PROCEDURE ACT OF 1946

### Sec. 4.  Rule Making (5 U.S.C. § 553)

***

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.  The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.  When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**Sec. 10(e).  Scope of Review** (5 U.S.C. § 706)

  To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall –

***

  (2) hold unlawful and set aside agency action, findings, and conclusions found to be –

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

***

    (D) without observance of procedure required by law;

***

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

# Exhibit 1



**Monday,**
**July 2, 2007**

**Part II**

# Department of Labor

**Office of Labor–Management Standards**

**29 CFR Part 404**
**Labor Organization Officer and Employee**
**Report, Form LM–30; Final Rule**

# DEPARTMENT OF LABOR

## Office of Labor-Management Standards

### 29 CFR Part 404

### RIN 1215–AB49

### Labor Organization Officer and Employee Report, Form LM–30

**AGENCY:** Office of Labor-Management Standards, Employment Standards Administration, Department of Labor.

**ACTION:** Final rule.

**SUMMARY:** The Employment Standards Administration's ("ESA") Office of Labor-Management Standards ("OLMS") of the Department of Labor ("Department") publishes this Final Rule to revise the Form LM–30, Labor Organization Officer and Employee Report, its instructions, and related provisions in the Department's regulations. The Form LM–30 implements section 202 of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or "Act"), 29 U.S.C. 432, whose purpose is to require officers and employees of labor organizations to report specified financial transactions and holdings to effect public disclosure of any possible conflicts between their personal financial interests and their duty to the labor union and its members. This rule clarifies the Form LM–30 and its instructions by explaining key terms and providing examples of the financial matters that must be reported, eliminates or modifies administrative exceptions in the old Form LM–30 that impeded the full disclosure of financial matters that constitute conflicts, or potential conflicts, of interest, and improves the usability of the reports by union members and the public.

**DATES:** *Effective Date:* This rule will be effective August 16, 2007.

**FOR FURTHER INFORMATION CONTACT:** Kay H. Oshel, Director, Office of Policy, Reports, and Disclosure, Office of Labor-Management Standards, U.S. Department of Labor, 200 Constitution Avenue, NW., Room N–5609, Washington, DC 20210, *olms-public@dol.gov,* (202) 693–1233 (this is not a toll-free number). Individuals with hearing impairments may call 1–800–877–8339 (TTY/TDD).

**SUPPLEMENTARY INFORMATION:** An outline of this information and a note regarding the references to statutory provisions in this document follow:

**Table of Contents**
I. Background

A. Statutory Authority
B. Departmental Authorization
C. Background to and Overview of Rule
1. The Reasons for Today's Revisions of the Form LM–30
2. Legislative History
II. Discussion of Comments Received on Proposed Rule and Department's Response
A. Why the Changes to the Form Are Needed Now
B. Why the Department Is Not Presently Requiring Unions To Notify Their Officers and Employees ("Officials") About Their Annual Reporting Obligations
C. Why the De Minimis Exemption From Reporting Insubstantial Gifts and Other Financial Benefits Has Been Simplified and Subjected to a $250 Limit, With an Exclusion for Gifts Valued at $20 or Less and Certain Widely-Attended Gatherings
D. Why Reporting Exceptions Permitted Under the Old Rule Have Been Eliminated or Modified To Provide More Information to Union Members
1. Regular Course of Business Exception
2. Bona Fide Employee Exception for Transactions With an Employer Whose Employees the Official's Union Represents or Is Actively Seeking To Represent
3. Exception for Bona Fide Loans or Interest From a Banking Institution
4. Exceptions Relating to Stocks
5. Revision of Special Report Language
E. Why Union Officials, as a General Rule, Must Report Payments Received as Members of a Company's Board of Directors
F. Why Officers of International, National, and Intermediate Labor Unions, in Addition to Their Obligation to Report Payments and Other Financial Benefits Received From Businesses and Employers That Have a Direct Relationship With the Component of the Union to Which They are Elected or Appointed, Must Also Report Payments and Other Financial Benefits Received From Businesses and Employers Whose Relationship is With a Subordinate Body of Their Union
G. Why Union Officials Must Report Payments Under Union—Leave and No-Docking Practices Subject to an Exception for Payments of 250 Hours or Less Per Year Made in Accordance with a Collective Bargaining Agreement
H. What Payments and Other Financial Benefits, Received from an Employer or Business Whose Employees are not Represented by the Union and Which Does Not Conduct Business With the Official's Union, Must be Reported
I When is a Union "Actively Seeking To Represent" Employees, Thereby Triggering a Union Official's Obligation To Report Payments and Other Financial Benefits Received From the Employer That is the Subject of the Organizing Drive
J. How Union Officials Will Determine Whether an Entity From Which They Receive a Payment or Other Financial Benefit Does a "A Substantial Part" of its Business With an Employer Whose Employees are Represented by the Official's Union or the Union it is Actively Seeking to Represent
K. Why Payments and Other Financial Benefits Received From Section 3(l) Trusts and Service Providers to Such Trusts Must Be Reported
1. Alleged Procedural Shortcoming
2. Routine Exceptions
3. Relationship With Other Statutes
4. Trusts as Employers and Businesses
L. When Payments and Other Financial Benefits Received From a Union Other Than an Official's Own Union Must be Reported
M. How the Proposed Definitions Have Been Clarified To Ease a Filer's Completion of the Form LM–30
1. Definitions Adopted by Today's Rule
2. Other Issues Related to Definitions
N. Details Relating To Proposed and Revised Form and Instructions
1. Comparison of the "Old" and Proposed Forms
2. Comments on Proposed Form
3. Completion of the Revised Form
III. Regulatory Procedures
A. Executive Order 12866
B. Small Business Regulatory Enforcement Fairness Act
C. Unfunded Mandates Reform
D. Executive Order 13132 (Federalism)
E. Regulatory Flexibility Act
F. Paperwork Reduction Act
G. Executive Order 13045 (Protection of Children From Environmental Health Risks and Safety Risks)
H. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)
I. Executive Order 12630 (Governmental Actions and Interference With Constitutionally Protected Property Rights)
J. Executive Order 12988 (Civil Justice Reform)
K. Environmental Impact Assessment
L. Executive Order 13211 (Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use)
IV. Text of Final Rule
Appendix

**Note:** Throughout this document, the Department refers to various statutory provisions as "section ____." All such references, unless otherwise noted, are to Title 29 of the U.S. Code. Further, unless otherwise noted, all the sections are part of the Labor-Management Reporting and Disclosure Act of 1959, which is set forth in Chapter 11 of Title 29, 29 U.S.C. 401–531. Following is a list of the most frequently cited LMRDA provisions in this document with corresponding citations to the U.S. Code: section 3(l), 29 U.S.C. 402(l); 201, 29 U.S.C. 431; section 202, 29 U.S.C. 432; and section 203, 29 U.S.C. 433. The only other provision of the U.S. Code frequently referred to in the document by the section number in the public law in which it was enacted is "section 302(c)," a reference to a provision of the Labor Management Relations Act, as amended, 29 U.S.C. 141–188. A reference to

section 302(c), 29 U.S.C. 186(c), appears in the text of section 202(a)(6) of the LMRDA, 29 U.S.C. 432(a)(6).

## I. Background

### A. Statutory Authority

Section 208 of the LMRDA states in part:

The [Department] shall have authority to issue, amend and rescind rules and regulations prescribing the form and publication of reports required to be filed under this title and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion of such reporting requirements.

29 U.S.C. 438. Today's rule prescribes the disclosure form required to be filed by a union officer or employee if such an official, his or her spouse, or minor child hold an interest in or receive payments from certain entities. The reporting requirements are contained in section 202, which provides in its entirety:

§ 202. (a) Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year—

(1) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) Any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit

with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) Any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) Any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

### B. Departmental Authorization

Section 208 of the Act, 29 U.S.C. 438, provides that the Secretary of Labor shall have the authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under Title II of the Act and such other reasonable rules and regulations as she may find necessary to prevent the circumvention or evasion of the reporting requirements. Secretary's Order 4–2007, issued May 2, 2007, and published in the **Federal Register** on May 8, 2007 (72 FR 26159), contains the delegation of authority and assignment of responsibility of the Secretary's functions under the LMRDA to the Assistant Secretary for Employment Standards and permits the redelegation of such authority.

### C. Background to and Overview of Rule

In today's rule, the Department revises the Form LM–30, Labor

Organization Officer and Employee Report based on its review of public comments received in response to its Notice of Proposed Rulemaking ("NPRM"), 70 FR 51166 (Aug. 29, 2005). The Form LM–30 is used by officers and employees of labor organizations subject to the LMRDA. Section 202 of the Act requires public disclosure of certain financial interests held, income received, and transactions engaged in by labor organization officers and employees (generally referred to herein as "union officials" or "officials") and their spouses and minor children. Subject to exclusions, these interests, incomes, and transactions include:

1. Payments or benefits from, or interests in, an employer whose employees the filer's union represents or is actively seeking to represent;

2. Transactions involving interests in, or loans to or from, an employer whose employees the filer's union represents or is actively seeking to represent;

3. Interests in, income from, or transactions with a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent;

4. Interests in, income from, or transactions with a business that deals with the filer's union or a trust in which the filer's union is interested;

5. Transactions or arrangements with an employer whose employees the filer's union represents or is actively seeking to represent; and

6. Payments from an employer or labor relations consultant to an employer.

As sometimes used herein, the short-hand phrase "payments or other financial interests" or its equivalent is used to refer to the various payments, transactions, arrangements and other monetary and financial interests that must be reported. Payments, as a general rule, include gifts, gratuities, restaurant meals, and entertainment.

The Form LM–30 must be filed annually by a union officer or employee (other than those solely engaged in performing clerical or custodial duties) if the official, the official's spouse, or minor child (or children) receives a payment or other financial interest from a business or employer in connection with certain activities, identified in section 202. Section 202's disclosure obligations for union officials (as embodied in the Form LM–30) are an integral part of the Act's reporting structure. The Act requires annual reports by unions as "institutions" under section 201 (Forms LM–2, LM–3, and LM–4), by employers, who must

report payments to unions and their representatives under section 203 (Form LM–10), and by unions for trusts in which they have an interest ("section 3(l) trusts," a reference to section 3(l) of the Act defining such trusts) under sections 201 and 208 (Form T–1).

In the NPRM the Department invited comment with respect to the benefits of the proposed changes, the ease or difficulty with which union officials would be able to comply with these changes, and whether the changes would be meaningful, useful, and in accord with the LMRDA disclosure purposes. The initial 60-day comment period provided for in the NPRM was subsequently extended to January 26, 2006. 70 FR 61400 (Oct. 24, 2005). The Department received over 1,000 comments. Of these comments about 50 were unique; the rest were form letters. Almost 300 of the comments were from unions or union members, most of whom were critical of all or parts of the proposal; about 700 were from individuals who generally supported the proposal, about 25 were from business or trade organizations, who expressed diverse views on the proposal; about 10 were from law firms, on their own behalf or their clients, who mostly opposed the proposal; two were from benefit fund administrators, who opposed the proposal; and one was from an academic who reported on his limited study of the reactions of union officials to the proposed form and instructions from which he concluded these documents needed substantial improvement. Over 280 of the union commenters were from one local. In their form letters, they urged rejection of the rule "in its entirety." They characterized the proposed requirements as "frivolous." They asserted that the existing form was adequate to ensure "due diligence" by union officials, adding that the proposed union-leave and no-docking requirements would turn shop stewards into accountants because of the duty to "calculate their time." Of the individuals supporting the proposal, the Department received about 660 form letters. These individuals asserted that such reforms were long overdue, noting that under the current form it is difficult to determine when a report is required and that the proposed form's inclusion of clear definitions and examples would improve reporting.

The historically low filing rates during the years preceding the initiation of this rulemaking process demonstrated substantial non-compliance with the Act. The Department recognized that its own compliance assistance efforts in this area needed improvement and thus it has retargeted its resources to educate the affected community about the Form LM–30 reporting obligation and to increase its enforcement efforts. At the same time as the Department was working on the proposed rule, it announced an initiative to improve Form LM–30 compliance. As part of this effort, the Department substantially augmented its published guidance to Form LM–30 filers, primarily by posting information on OLMS Web pages and by further disseminating this information by notifying subscribers to its free, automated list serve. On April 25, 2005, the Department announced a special enforcement policy under which new Form LM–30 filers, absent extraordinary circumstances, would not have to submit reports for prior years, even if such reports should have been filed. Specifically, the Department advised the regulated community that it would not require a new filer to submit reports covering the same financial interest for any prior years absent extraordinary circumstances. To take advantage of this grace period, the new filer had to submit his or her initial report voluntarily during a "grace period," which ended August 15, 2005. With the substantial voluntary assistance of the AFL–CIO and other labor organizations to educate union officials about their reporting obligations, the Department experienced a large upsurge in the number of Form LM–30 filings over historical levels. To help union officials better understand their filing obligations, the Department proposed to change the instructions to the old form by defining and explaining key concepts and terms used by the statute and the form, and providing examples of situations where reporting is required. The Department also proposed to redesign the reporting format to better assist filers and improve the utility of the collected information to union members, the Department, and the general public. Following its review of the comments and taking into account the Department's recent Form LM–30 filing experience—as requested by some commenters, the Department remains convinced that this approach is sound and therefore today's rule preserves the overall approach outlined in the NPRM. At the same time, the comments were helpful in reconsidering some aspects of the rule and improving the content of the instructions and the form. The Department has revised the layout of the form. Instead of the subsection-by-subsection approach in the proposed form and instructions that parallels the structure of section 202 and its subsections (i.e., sections 202(a)(1) through 202(a)(6)), the rule organizes the form and instructions by the source of the reportable payment to a union official. Thus, the form lists the types of employer relationships that trigger a reporting requirement and the types of business relationships that trigger a reporting requirement. The instructions identify the types of payments and other financial interests that must be reported by a union official if received from an employer, differentiating between payments received from an employer whose employees the filer's union represents or is actively seeking to represent and those received from certain other employers. The instructions also identify the types of payments that must be reported if received from businesses that maintain business dealings with the official's union, a trust in which the official's union is interested, or certain employers. In the NPRM, the Department requested comment on whether labor organizations should be required to notify their officers and employees of their Form LM–30 reporting obligations. After review of the comments and the number of recent filers, the Department has decided to not require unions at this time to provide such notification to their officials.

In the NPRM, the Department proposed to revise its longstanding de minimis exception by adopting a quantitative standard of $25 as the amount that would trigger a reporting obligation. Numerous comments attacked the $25 threshold as unreasonably low, while other commenters argued that there should be no de minimis level at all. The Department adopts $250 as the amount above which a report is required and $20 as the amount above which payments or benefits must be counted when calculating whether the union official's $250 reporting threshold has been met. The rule also includes a limited exclusion for widely attended gatherings, allowing union officials to attend two such gatherings without incurring a reporting obligation provided the employer or business paying for the gathering spent $125 or less per attendee per gathering.

One provision of the Act, section 202(a)(6), may be read to impose a requirement on union officials to report payments from all employers. The Department's proposal to construe this obligation in this manner was opposed by most of the comments that discussed this point. In light of these comments, today's rule clarifies the scope of the reporting obligation under section 202(a)(6), identifying particular situations that pose a conflict of interest

that otherwise would not be captured by the other five subsections of section 202(a).

The Department also proposed to remove certain administrative exceptions that were available to filers under the old rule: Purchases and sales in the regular course of business at prices generally available to any employee of the employer; work performed and payments and benefits received as a bona fide employee of the employer; certain loans; and specified interests relating to stock ownership. The rule generally adopts the proposals as set forth in the NPRM to narrow the scope of these exceptions and thus makes reportable interests and payments that present previously unreported potential conflicts of interest.

The Department requested comment on whether to retain the distinction between securities traded on a registered national stock exchange and securities traded elsewhere, such as the NASDAQ stock market, notwithstanding the language in the Act limiting the exception to registered securities exchanges. *See* section 202(b) (ties exception to such exchanges registered under the Securities Exchange Act of 1934 and other enumerated statutes). After reviewing the comments, the Department retains its interpretation that it should not extend this limited exception to exchanges that have not been registered. The Department, however, notes that on July 15, 2006, the Securities and Exchange Commission (''SEC'') approved NASDAQ's application for registration as a national securities exchange, effective July 31, 2006.

Payments received by union officials from employers for work done on the union's behalf are reportable because such payments are not received as a bona fide employee of the employer making the payment. The Department explained in its proposal that union officials must report any payments for other than ''productive work'' for the employer, including union-leave and no-docking payments. Similarly, the proposed definition of ''labor organization employee'' clarified that an individual who is paid by an employer to perform union work is an employee of the union if he or she is under the control of the union, while so engaged. Today's rule adopts the proposed definition of ''bona fide employee'' and ''labor organization employee,'' making union-leave and no-docking payments reportable. However, today's rule stipulates that if such payments are made pursuant to a collective bargaining agreement and the payments are made

for 250 or fewer hours during the year then there is no reporting obligation.

The meaning given ''labor organization'' defines the scope of a union official's obligation to report interests in or payments by certain employers and businesses. Essentially the question presented by the Department's proposal is whether this obligation applies to only an official's immediate organization, *e.g.*, a local union or international union in which he or she holds office, or whether it extends to situations involving organizations affiliated with the immediate organization. For instance, is an international officer required to report payments received from a business that sells products or services to intermediate and local affiliates or from employers whose employees are represented by a subordinate union? Under today's rule, an international union officer must report such payments. The same obligation exists under the old rule. Today's rule further clarifies that the same reporting obligation applies to payments received by an intermediate union officer. The Department, however, does not impose a reporting obligation on local or intermediate union officials who receive payments from an entity that does business with a higher affiliated organization. The rule also excepts *employees* of international, national, and intermediate unions from this reporting requirement. Further, the reporting obligation on officers of national and intermediate unions does not extend to payments received as employment compensation by their spouse or minor child that otherwise would be reportable because of the payer's relationship with a subordinate union.

Although the Department's old rule applies to payments received from a section 3(l) trust and the Department proposed no departure from this rule, numerous comments were received arguing that the Form LM–30 reporting obligation has never been applied to payments by trusts to union officials. These commenters are mistaken. The Department always has maintained the position that payments from trusts and vendors to such trusts enjoy no special excepted status under the Act's reporting provisions. Some commenters argued that such reporting would only be duplicative of reporting already required by ERISA and could discourage union trustees from attending conferences designed to educate trustees about their duties as trustees. The Department believes that the concerns about burden and overlap with ERISA disclosure requirements are overstated.

In light of the comments, however, today's rule clarifies that a payment by a trust is treated no differently than other payments by an employer or a business to union officials.

Section 202(a)(3) imposes a limited reporting obligation on a union official who has an interest in or receives payments from a business that buys, sells, leases, or otherwise deals with the business of an employer if the latter's employees are represented by the official's union or it is actively seeking to represent these employees. The obligation attaches only if the vendor's dealings with the employer comprise a ''substantial part'' of the vendor's business. The Department proposed to define ''substantial'' as more than 5% of the vendor's business. Most of the comments criticized the threshold as too low. Today's rule sets the threshold at 10%.

In addition to some of the terms discussed above, the Department has clarified some of the proposed definitions. By clarifying these terms and the concepts that underlie the Act's reporting provisions, the rule ensures transparency in the personal financial affairs of union officials that may pose conflicts between the official's duty to their union and its members and the official's personal interests.

A number of comments were received from employer and industry associations. Most of these comments focused on the obligation of employers to file a Form LM–10 on certain payments made by employers or labor relations consultants to unions or union officials. Today's rule is specific to Form LM–30 filers. It does not amend the Department's current regulations or guidance specific to the Form LM–10. The Department, however, has carefully considered all the comments submitted by these groups and addresses them herein insofar as they address particular aspects of the Form LM–30 proposal. Form LM–10 Frequently Asked Questions (FAQs) on the OLMS Web site at *http://www.olms.dol.gov* informs the public that the Department will not enforce certain Form LM–10 reporting requirements until both the Form LM–30 rulemaking is completed and further written guidance is issued on the Form LM–10. This written guidance will be issued in revisions to the FAQs that will be announced through the OLMS list serve which can be subscribed to at *http://www.dol.gov/esa/aboutesa/org/olms/olms-mailinglist.htm.*

1. The Reasons for Today's Revisions of the Form LM–30

The Form LM–30 has remained essentially unchanged since 1963.

During this time, there have been many significant changes in the ways in which unions operate and conduct their financial affairs. Individuals too have more and varied financial interests than was the case forty years ago. As explained in the NPRM, many unions manage benefit plans for their members, maintain close business relationships with financial service providers such as insurance companies and investment firms, operate revenue-producing subsidiaries, and participate in foundations and charitable activities. The complexity of these financial practices, including business relationships with outside firms and vendors, increases the likelihood that union officials may have interests in, or receive income from, these businesses. As more labor organizations conduct their financial activities through sophisticated trusts, increased numbers of businesses have commercial relationships with such trusts, creating financial opportunities for union officers and employees who may operate, receive income from, or hold an interest in such businesses. In addition, employers also have fostered multi-faceted business interests, creating further opportunities for financial relationships between employers and union officers and employees. In this context, disclosure is critical to promoting good union governance, fostering ethical behavior, and deterring and detecting self-dealing.

As noted in the NPRM, on many occasions the Department has discovered during an audit or investigation that a union officer or employee received a reportable payment or other financial benefit but had failed to file the Form LM–30 as required. The Department identified several such situations in the NPRM, including the following:

• A local president owned 50% of a business that resurfaced the union's parking lot. Over two years, the business received $9,000 from the union.

• A union designated certain attorneys to represent injured members. Some of these attorneys, who were employers, furnished cash or items of value such as trips and golf clubs to union officials.

• A union hired the accounting firm of an employee's spouse. The firm received over $29,000 from the union over two years.

• An officer of a union, whose members worked at a theater, formed a business with two partners. He put his share of the business in his wife's name although he actually managed the business, which employed members of his local to work for the theater. He and

his wife received almost $75,000 in profits, expense reimbursements, and salary from the business.

• A union president owned the building in which the union rented office space.

• A union employee's spouse owned an advertising company that printed materials for the union and its funds. In one year, the company received over $245,000 as payment for her company's services.

• Four local officers formed a company that provided payroll services to the local as well as to theatrical companies that employed members of the local. Two other officers of the local received over $20,000 as employees of the company.

• The spouse of a union officer owned a company that provided cleaning and maintenance services to the union and a trust in which the union was interested. In one year, the company received over $94,000 from the union and the trust.

• A union officer's spouse owned a janitorial business that provided daily janitorial services to the union at $800 per month.

• A union officer was part-owner, along with his wife and daughter, of a copier supply company. He was an officer of several unions, including one that employed his daughter as a benefit representative and union trustee. All of the unions purchased office equipment and services from the family's company.

• During a campaign for a State government office, a business agent received contributions from employers who were covered by the union's collective bargaining agreement.

• A union employee owned a heating and air conditioning business that performed HVAC work for the union.

In these instances, compliance with the Form LM–30 requirements would have provided union members with valuable information concerning financial practices of their unions' officials. This information would have assisted union members in evaluating the efficacy of the work performed by union employees and the leadership provided by union officers. Furthermore, the information would have alerted them to potential conflicts of interests and guided them as to which actions or decisions of their officers and employees might require greater scrutiny in order to determine whether the conflicts had affected the union official's service to the union. Armed with this information, union members could express their concerns at membership meetings, *see* section 101(a), 29 U.S.C. 411(a), evaluate the use of union monies as reported on the

union's annual financial report, *see* section 201(b), 29 U.S.C. 431(b), cast more informed votes at internal union elections, *see* sections 401–403, 29 U.S.C. 481–483, employ union procedures for removal of officers guilty of serious misconduct, *see* section 401(h), 29 U.S.C. 481(h), and exercise their right to obtain judicial relief for violations of the official's fiduciary responsibilities. *See* section 501(b), 29 U.S.C. 501(b).

In other instances, as described in the NPRM, compliance with Form LM–30 requirements would have revealed criminal conduct. For example, the president of a national union had the sole authority to appoint or remove attorneys from a list of "Designated Legal Counsel." These attorneys represented injured union members who sought compensation from the railroad for on-the-job injuries. Rather than selecting attorneys on the basis of their skills, the president awarded the designation to attorneys who gave the union president cash or other things of value. In another instance, contractors were hired to make repairs and improvements to the offices of a local union. The contractors also performed work on the officers' homes. All the expenses of the work, including about $1.2 million for work on the officers' homes, was charged to and paid by the union. A third example involved a contractor, an investment firm that managed pension and investment accounts for unions. This company collapsed in September 2000, costing its clients about $355 million. The company's former chairman was indicted on counts of fraud, money laundering, witness tampering, and making illegal payments to union benefit plan trustees. As part of its scheme to buy the influence of pension fund trustees, who were union officers, the investment firm hired relatives of pension plan trustees as well as provided plan trustees with gifts including rifles, season tickets to sporting events, and fishing and hunting trips to various locations in the western U.S., Canada, Africa, Argentina and Mexico.

As the above incidents demonstrate, a statement made in 1986 continues to ring true: "The plunder of union resources remains an attractive [target for certain individuals and organizations]. * * * The most successful devices are the payment of excessive salaries and benefits to * * * union officials and the plunder of workers'' health and pension funds." President's Commission on Organized Crime, *Report to the President and Attorney General, The Edge: Organized Crime, Business, and Labor Unions*

(1986), at 12. Added transparency about a union official's conflicts of interest will help ensure that all union officials keep paramount the interests of their union and its members. Most union officials will never be tempted to subordinate their union's interests to their own financial interests; the rule will help them avoid the perception that their financial interests, left unreported through inadvertence or misunderstanding, may engender unfair suspicion. Others, though tempted, will be deterred from taking such action. See Archibald Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959*, 58 Mich.L.Rev. 819, 827 (1960) ("*Internal Affairs of Labor Unions*") ("The official whose fingers itch for a ''fast buck'' but who is not a criminal will be deterred by the fear of prosecution if he files no report and by fear of reprisal from the members if he does").

The Form LM–30 has been redesigned to facilitate full and accurate completion by the filer and review by members of the filer's union and the public. The instructions now contain useful definitions of key terms and concepts required to complete the form and numerous practical examples to assist filers in completing the form. Union officials will also better understand the disclosure obligations relating to actual or potential conflicts of interest and will be mindful of their duty to hold their union's interests above their own personal financial interests. Financial transparency, as noted above, also may deter fraud and self-dealing and facilitates discovery of such misconduct when it occurs. Transparency promotes the unions' own interests as democratic institutions. By these improvements, union members will obtain a more accurate picture of the personal financial interests of their union's officers and employees, as those interests may bear upon their actions on behalf of the union and its members. With this information, union members will be better able to understand any financial incentives or disincentives faced by their union's officers and employees and to make more informed choices about the leadership of their union and its management of its affairs. Through these actions, the Department advances the LMRDA's declared purpose "that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." Section 2(a). As such, today's rule will better achieve the purposes of the LMRDA than the old reporting regimen.

## 2. Legislative History

To better understand the purposes served by disclosure, a brief review of the history of the LMRDA's reporting and disclosure requirements for union officials is appropriate. As explained in the NPRM, at 70 FR 51166, the LMRDA was passed in 1959 by a bipartisan Congress that found: In labor and management fields:

[T]here have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives.

Section 2(a).

The legislation was the direct outgrowth of a Congressional investigation conducted by the Select Committee on Improper Activities in the Labor or Management Field, commonly known as the McClellan Committee, chaired by Senator John McClellan of Arkansas. In 1957, the committee began a highly publicized investigation of union racketeering and corruption; its findings of financial abuse, mismanagement of union funds, and unethical conduct provided much of the impetus for enactment of the LMRDA's remedial provisions. *See generally* Benjamin Aaron, *The Labor-Management Reporting and Disclosure Act of 1959*, 73 Harv. L. Rev. 851, 851–55 (1960). During the investigation, the committee uncovered a host of improper financial arrangements between officials of several international and local unions and employers (and labor consultants aligned with the employers) whose employees were represented by the unions in question or might be organized by them. Similar arrangements also were found to exist between union officials and the companies that handled matters relating to the administration of union benefit funds. *See generally, Interim Report of the Select Committee on Improper Activities in the Labor or Management Field*, S. Report No. 85–1417 (1957) ("*Interim Report*"). For examples of some of the improper arrangements directly or indirectly involving officials of these unions, *see Interim Report*, pp. 42–86, 122–30, 150–57, 222–55, 376–420, 441–50. *See also* Robert F. Kennedy, *The Enemy Within* (1960) (discussing the committee's investigation).

The statute was designed to remedy these various ills through a set of

integrated provisions aimed at union governance and management. These included a "bill of rights" for union members, which provides for equal voting rights, freedom of speech and assembly, and other basic safeguards for union democracy, *see* sections 101–105 of the LMRDA, 29 U.S.C. 411–415, financial reporting and disclosure requirements for unions, union officers and employees, employers, labor relations consultants, and surety companies, *see* sections 201–206 and 211 of the LMRDA, 29 U.S.C. 431–436, 441; detailed procedural, substantive, and reporting requirements relating to union trusteeships, *see* sections 301–306 of the LMRDA, 29 U.S.C. 461–466; detailed procedural requirements for the conduct of elections of union officers, *see* sections 401–403 of the LMRDA, 29 U.S.C. 481–483, safeguards for unions, including bonding requirements, the establishment of fiduciary responsibilities for union officials and other representatives; and criminal penalties for embezzlement from a union, for loans over $2,000 by a union to officers or employees, for a union's employment of certain convicted felons or permitting them to hold union office, and for payments to employees for prohibited purposes by an employer or labor relations consultant, *see* sections 501–504 of the LMRDA, 29 U.S.C. 501–504; and prohibitions against retaliation for exercising protected rights, *see* sections 601–611 of the LMRDA, 29 U.S.C. 521–531.

The reporting requirement for union officials operates in tandem with the Act's establishment of a fiduciary duty for union officials and representatives. Section 501, 29 U.S.C. 501. Congress addressed conflicts of interest in both sections 202 and 501(a) of the Act. The latter section provides in part:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization * * *.

Both provisions address the potential and actual conflict between a union representative's personal interests and his or her duty to the union and its

members. *See* Theodore Clark, Jr., *The Fiduciary Duties of Union Officials under Section 501 of the LMRDA,* 52 Minn. L. Rev. 437, 458–60 (1962).

The McClellan Committee hearings disclosed a history of self-dealing by certain union officials, often at the expense of their union's membership. Then Senator John F. Kennedy was the chief sponsor of the Senate bill, S. 505, which served as the foundation for the LMRDA. In introducing the bill for the Senate's consideration, Senator Kennedy expressed concerns about the involvement of union officials in matters that blurred their personal interests and their union's interests, which concerns would be remedied by the legislation. Senator Kennedy used the experience of the Teamsters union, as revealed by the investigation of the McClellan Committee, to underscore the purposes to be achieved by the Act:

First. It will no longer be possible for the dues of Teamster members to be * * * used by [the union's] officers to build their own personal financial empires without the knowledge of the members themselves—or without investigation by the press and public authorities.

Second. [A union official] would be required to disclose all his business dealings with insurance agents handling the union's welfare funds, his private arrangements with employers, his hidden partnerships in business ventures foisted upon his members, and all other possible conflicts of interest.

\* \* \* \* \*

Sixth. [Union officials] will find future collusion with employers vastly restricted—with no more loans from employer groups, no more attacks on rival unions through middlemen * * *, and no more secrecy shrouding the use of union funds to bail out a collaborating employer.

105 Cong. Rec. S817 (daily ed. Jan. 20, 1959), *reprinted in 2 NLRB Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 (''Leg. History''),* at 969.

The improper dealings by the Teamsters officials, to which Senator Kennedy refers, are detailed in the *Interim Report,* at *e.g.,* 48, 59–60, 64–86, 222–54, 443–50. These dealings, like those identified by officials of other unions in the *Interim Report,* included actions undertaken by national officers, or others acting at their behest, involving matters affecting not only the national union's operation but also matters of importance to local and intermediate bodies of their union. *See e.g., Interim Report,* at 4–7, 46–49, 51, 55, 59–60, 63, 69, 74, 81, 87, 122–25, 128, 130, 179, 186–87, 224, 228, 230–40, 244, 250, 252, 264–66, 268, 281, 284–85, 295, 297, 300, 444–48. *See also The Enemy Within,* at 97, 99, 104–05, 106, 221–24.

As explained in the Senate Committee Report, S. Rep. No. 187 (1959) (''Senate Report''), at 15, *reprinted in 1 Leg. History,* at 411: ''The hearings before the McClellan committee brought to light a number of instances in which union officials gained personal profit from a business which dealt with the very same employer with whom they engaged in collective bargaining on behalf of the union.'' *Id.* The committee endorsed the concern expressed in the AFL–CIO's Ethical Practices Code that the union official ''may be given special favors or contracts by the employer in return for less than a discharge of his obligations as a trade-union leader.'' *Id.*

In explaining the purpose of the disclosure rules for union officers and employees, the *Senate Report* presented ''three reasons for relying upon the milder sanction of reporting and disclosure [relative to establishing criminal penalties] to eliminate improper conflicts of interest,'' which we summarize as follows:

• Disclosure discourages questionable practices. ''The searchlight of publicity is a strong deterrent.'' Disclosure rules should be tried before more severe methods are employed.

• Disclosure aids union governance. Reporting and publication will enable unions ''to better regulate their own affairs. The members may vote out of office any individual whose personal financial interests conflict with his duties to members,'' and reporting and disclosure would facilitate legal action by members against ''officers who violate their duty of loyalty to the members.''

• Disclosure creates a record. The reports will furnish a ''sound factual basis for further action in the event that other legislation is required.''

*Senate Report,* at 16, *reprinted in 1 Leg. History,* at 412.

The Report further stated: ''No union officer or employee is obliged to file a report unless he holds a questionable interest or has engaged in a questionable transaction. The bill is drawn broadly enough, however, to require disclosure of any personal gain which an officer or employee may be securing at the expense of the union members.'' *Senate Report,* at 14–15, *reprinted in 1 Leg. History,* at 410–11. The House Committee Report, H.R. Rep. No. 741 (1959) (''House Report''), at 11, *reprinted in 1 Leg. History,* at 769, conveyed the same message. Both the Senate and House Reports recognize that a reportable interest is not necessarily an illegal practice. As the *House Report* stated:

In some instances matters to be reported are not illegal and may not be improper but may serve to disclose conflicts of interest. Even in such instances, disclosure will enable the persons whose rights are affected, the public, and the Government, to determine whether the arrangements or activities are justifiable, ethical, and legal.

*House Report,* at 4, *reprinted in 1 Leg. History,* at 762. *See Senate Report,* at 38, *reprinted in 1 Leg. History,* at 434 (''By requiring reports * * *, the committee is not to be construed as necessarily condemning the matters to be reported if they are not specifically declared to be improper or made illegal under other provisions of the bill or other laws''). ''Reports are required as to matters which should be public knowledge so that their propriety can be explored in the light of known facts and conditions.'' *Id.* As stated by Senator Barry Goldwater after the LMRDA had been passed:

Briefly, what must be reported are holdings of interest in or the receipt of economic benefits from employers who deal or might deal with such union official's union, or holdings in or benefits from enterprises which do business with such union official's union.

105 Cong. Rec. A8512 (daily ed. Oct. 2, 1959), *reprinted in 2 Leg. History,* at 1846.

Conflict of interest standards, including disclosure obligations of individuals and entities occupying positions of trust, are well grounded in U.S. law. As stated in the *House Report,* repeating almost verbatim the same point in the *Senate Report:*

For centuries the law of fiduciaries has forbidden any person in a position of trust subject to such law to hold interests or enter into transactions in which self-interest may conflict with complete loyalty to those whom he serves. * * * The same principle * * * should be equally applicable to union officers and employees [quoting the AFL– CIO's Ethical Practices Code: ''[A] basic ethical principle in the conduct of union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a worker's representative.''

*Senate Report,* at 11, *reprinted in 1 Leg. History,* at 769. *See generally Restatement* (*Second*) *of Trusts* (1959) §§ 170, 173; *Restatement* (*Second*) *of Agency* (1958) §§ 381, 387–98.

Section 202 is an effort, in part, to make effective the disclosure requirements associated with the fiduciary standards applied to union officials in Title V of the LMRDA, a duty that includes an obligation to report potential conflicts of interest. Both Titles II and V of the Act represent an effort to codify various requirements

contained in an extensive code of ethics voluntarily adopted by the AFL–CIO in 1957 and applied to its affiliated unions and officials. *See Senate Report*, at 12–16, *reprinted in 1 Leg. History*, at 408–12; *House Report*, at 9–12, *reprinted in 1 Leg. History*, at 767–70. *See also Internal Affairs of Labor Unions*, 58 Mich. L. Rev. at 824–29. The following excerpts from this code demonstrate the similarities between a union official's fiduciary duty and the disclosure requirements of section 202.

[A] basic ethical principle in the conduct of trade union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a workers' representative.

[U]nion officers and agents should not be prohibited from investing their personal funds in their own way in the American free enterprise system so long as they are scrupulously careful to avoid any actual or potential conflict of interest.

In a sense, a trade union official holds a position comparable to that of a public servant. Like a public servant, he has a high fiduciary duty not only to serve the members of his union honestly and faithfully, but also to avoid personal economic interest which may conflict or appear to conflict with the full performance of his responsibility to those whom he serves.

There is nothing in the essential ethical principles of the trade union movement which should prevent a trade union official, at any level, from investing personal funds in the publicly traded securities of corporate enterprises unrelated to the industry or area in which the official has a particular trade union responsibility.

[These principles] apply not only where the investments are made by union officials, but also where third persons are used as blinds or covers to conceal the financial interests of union officials.

*Ethical Practices Code IV: Investments and Business Interests of Union*, 105 Cong. Rec. *16379 (daily ed. Sept. 3, 1959), *reprinted in 2 Leg. History*, at 1408. *See also Ethical Practices Code II: Health and Welfare Funds, id.*, 2 *Leg. History*, at 1406–07.

The Department intends by today's rule to better achieve the purposes of the LMRDA, as reflected by its legislative history.

## II. Discussion of Comments Received on Proposed Rule and Department's Response

### A. Why the Changes To the Form Are Needed Now

Several commenters recommended that the Department should evaluate its recent compliance experience with Form LM–30 reports submitted by union officials using the old form before considering any changes to the form. One commenter stated that there is no problem with the old form. Another asserted that the affected community has spent a "huge amount of time getting up to speed on the present form," arguing that the proposed form is more confusing than the current form because it requires filers to identify for each reportable interest the particular statutory provision to which it relates.

A labor educator, noting the upsurge in Form LM–30 filings about the time of the comment period on the proposed rule, suggested that the Department should postpone any changes until it completed a thorough analysis of these submissions. Although this commenter acknowledged that the old form presents some challenges to a filer's easy understanding of the reporting requirements, he asserted that the proposed form poses greater opportunity for mistake and confusion. Two commenters argued: "[R]adically changing the form at the same time as the Department provides comprehensive guidance on what is considered reportable [on the old form] will only impede the efforts to encourage accurate and full reporting."

The old Form LM–30 posed substantial challenges to filers. As discussed in the NPRM and as demonstrated by comments on the proposal, filers have been unsure about the kinds of payments that trigger the need to file a Form LM–30. *See* 70 FR 51172–73, 51175. Keeping the status quo would leave in place exceptions that permit union officials to avoid disclosing payments that would otherwise be reportable under the statute, denying union members information about their officials' interests in and payments by employers and businesses that raise conflict of interest questions. Deferring the final rule for an exhaustive analysis of all the Form LM–30 filings during the April through mid-August 2006 "grace period," numbering about 13,000 would cause undue delay with little additional gain. The Department's preliminary and ongoing review of these filings demonstrates that the old form is unclear and that today's rule will rectify many of the problems observed in those filings.

One commenter recommended that the Department, well in advance of the filing deadline, "should grant a reasonable extension for filing and/or make any aspects of the final rule that are more restrictive than the current rule prospective only. DOL should only apply any changes prospectively, and it should provide a reasonable opportunity for necessary recordkeeping and related efforts to facilitate accurate reports and compliance." Another commenter argued that no new requirements should be imposed on service providers until rulemaking on the Form LM–10 is completed. Another commenter argued that no changes in reporting should occur any sooner than a filer's fiscal year that begins after the final rule takes effect.

DOL is applying these changes prospectively only. This final rule will apply to fiscal years beginning on or after _____, 2007. Therefore, no report subject to today's rule will be due until at least _____, 2008. There is ample time from publication of this final rule until _____, 2008 for all filers to obtain any information they need to comply with the filing requirements.

### B. Why the Department Is Not Presently Requiring Unions to Notify Their Officers and Employees ("Officials") About Their Annual Reporting Obligations

In the NPRM, the Department requested comments on whether the Department should require unions to provide notice of the filing requirements to their officers and employees. The NPRM discussed possible notification options. Under one option, unions would be required to notify their officers and employees of their Form LM–30 obligations within 30 days of their installation into office or hire, respectively. Unions would be required to provide initial notification within 60 days of the enactment of the regulation, and annually thereafter to all officers and employees. Under the proposal, a union could meet this requirement by providing a copy of the Form LM–30 and its instructions. E-mail notification might be considered. As an alternative, a general notice, provided in a union publication addressed to each officer and employee, might be adequate for this purpose.

A number of comments were received on the notification question. Commenters were divided on the question. Some commenters strongly supported mandatory notification, pointing to low numbers of past filers as evidence that notification is essential. No union commenter supported the proposal. Commenters were divided as to whether the Department has authority to require notification under sections 105 or 208 of the LMRDA. One commenter asserted that the Department lacks authority to issue a notification requirement under section 105, arguing that this provision does not allow imposition of a detailed code of union conduct. Another commenter used section 105 to illustrate its position that Congress knew how to establish a notification requirement, arguing that its

failure to so provide in section 202 evinces the intention to excuse unions from any obligation to provide such notice. Another commenter argued to the contrary, stating that mandatory notification is consistent with section 105 which states, "[e]very labor organization shall inform its members concerning the provisions of this Act." While acknowledging that section 208 arguably permits a notification requirement, a commenter argued that the Department must first demonstrate that such a rule is necessary to prevent the circumvention or evasion of the reporting obligation. It argued that "circumvention" and "evasion" connote a willful disregard of the filing obligation, actions that require as a premise that the filer already is aware of the filing obligation.

A commenter argued that the Department should impose a broader notification requirement on unions. Unions should be required, in its view, to provide notice to both officials *and* their members about both the filing obligations of union officials and the union's own reporting obligations to file a Form LM–2, 3 or 4. Another commenter viewed notification as a "first-step in the right direction." It stated a preference for a system whereby the Department would provide annual reminders about Form LM–30; each union would be required to file with the Department the names and addresses of all its officers and employees. On the other hand, several commenters argued that reliance on voluntary efforts would better achieve the goal of informing officials about their filing obligation. One of these commenters stated that voluntary education works better than mandatory notification given that unions have a variety of governance structures and that they operate, in effect, in different industries calling for different approaches. Another commenter suggested that DOL "work informally" to obtain compliance. This commenter explained that under the old regulation, unions take various steps to inform their officials about Form LM–30 requirements, such as by holding meetings or providing written notices. The commenter argued that the choice of a method to inform union members should be left to the union. Several commenters argued that notification was unnecessary in light of new Department guidance, pointing to the rise in filings to support its claim.

The Department believes it possesses the authority to impose a notification requirement. However, the Department has concluded, based on its review of the comments and the recent experience with Form LM–30 filers, that a

mandatory notification requirement is unnecessary on the present record to effectuate the disclosure purpose served by section 202 of the Act. After unions and their counsel became aware of the Department's increased emphasis in securing compliance with section 202, many contacted their officers and employees to inform or at least remind them of their obligation to file a Form LM–30 if they engaged in any of the activities identified by the form and its instructions. While in previous years less than 100 forms were typically filed each year, during the 2005 grace period contemporaneous with this rulemaking, 13,326 reports were filed. During FY 2006, 4,348 Form LM–30 reports were filed. Given the historic increases in Form LM–30s during the grace period with stepped up Departmental compliance assistance and voluntary efforts by major unions to educate affiliates and officials, there is currently not a sufficient record to conclude that a mandatory requirement is needed.

The Department applauds the voluntary efforts by the AFL–CIO and other unions to apprise union officials about their Form LM–30 reporting obligations. However, insufficient time has passed to conclude that union officials, without receiving regular notice by their union of these obligations, will remain aware of these obligations. If future compliance figures indicate that new union officials are uninformed about their Form LM–30 filing obligations or that others appear to have forgotten their obligations, the Department may then reassess the need for imposing a notification requirement.

*C. Why the De Minimis Exemption From Reporting Insubstantial Gifts and Other Financial Benefits Has Been Simplified and Subjected to a $250 Limit, With an Exclusion for Gifts Valued at $20 or Less and Certain Widely-Attended Gatherings*

Section 202(a) of the LMRDA calls for disclosure of "any" stock, bond or other interest, "any" income, "any" loan, and "any" payment or other thing of value received by a union official, his or her spouse, or minor child[ren] from employers and businesses as defined in sections 202(a)(1) through 202(a)(6). While this inclusive language may be read to require a report on any such payments regardless of amount, the Department always has excepted from reporting payments of insubstantial or de minimis value. Thus, the old instructions to the Form LM–30 inform filers: "You do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances or terms unrelated

to the recipient's status in a labor organization." This exemption applies by its terms to all reports due under section 202. The *LMRDA Interpretative Manual* ("LMRDA Manual"), as revised in March 2005, states that anything with a value of $25 or less will be considered de minimis and therefore not reportable if it is given on an "infrequent or sporadic" basis under circumstances unrelated to the recipient's status in a labor organization. *LMRDA Manual*, § 241.700.

The Department sought comments on the de minimis exception generally and specifically on whether the $25 threshold is appropriate, whether the burden is reasonable, and whether reporting of all transactions should be required without regard to their value. 70 FR 51175. In November 2005, following a review of Form LM–30 reports filed during the Department's grace period, which revealed the reporting of numerous payments that union members and the public would regard as trivial, and based on comments from union representatives that the threshold was too low, the Department issued guidance advising that "gifts, gratuities or loans with a value of $250 or less" would be considered insubstantial for the purposes of Form LM–30 reporting.

In the NPRM, the Department noted the inclusive language used by Congress in defining the scope of the reporting obligation and the absence of any general substantiality test for the LMRDA's reporting provisions. *See* section 202(a)(3); 29 U.S.C. 432(a) (limiting reports specific to certain "substantial" dealings). The Department also noted that exceptions based on insubstantiality are commonly read into statutes that do not expressly contain them and that the financial disclosure reports for certain Federal government employees contain a de minimis exemption.

The Department in today's rule retains a de minimis exemption. Under this exemption, payments or gifts totaling $250 or less from any one source during the reporting year need not be reported. In addition, the Department decides that payments or gifts valued at $20 or less need not be included in determining whether the $250 threshold has been met. The Department has concluded that a dollar-specific test for de minimis payments is preferable to one that requires filers to make a fact-specific determination of what is "insubstantial" or "unrelated to the filer's status in a labor organization" or "sporadic and occasional." The Department also has crafted a limited reporting exclusion for a union official's

attendance at "widely attended gatherings." If during the year, an officer or employee attends one or two widely-attended gatherings for which an employer has spent $125 or less per attendee per gathering, the officer or employee has no Form LM–30 obligation with regard to tracking or disclosing these events. A gathering will be considered "widely attended" if it is expected that a large number of persons will attend and that attendees will include both union officials and a substantial number of individuals with no relationship to a union or its section 3(l) trust.

The Department received numerous comments on the de minimis question, mostly in favor of retaining the exemption and the adoption of a quantitative threshold substantially higher than the $25 figure discussed in the NPRM. Particular comments are discussed below.

A few commenters argued that no de minimis level should be adopted at all. One commenter stated that full disclosure was appropriate because it allowed a union's members to decide whether a gift to a union official presented a negligible conflict of interest or not. The Department acknowledges that there would be some benefit in eliminating the exception; this change would allow individual union members to determine whether a particular payment poses a conflict of interest and more importantly could lead to further inquiry about a union official's actions. As stated in the NPRM, there is no statutory requirement for a de minimis level. *See Environmental Defense Fund, Inc.* v. *EPA,* 82 F.3d 451, 466 (D.C. Cir. 1996). Nonetheless, abandoning a de minimis threshold altogether would be a sharp departure from the Department's historical practice. Moreover, as further discussed below, the Department believes that elimination of the de minimis exception would only marginally increase meaningful transparency. Furthermore, the absence of a specific de minimis exception in section 202 is not determinative; exceptions based on insubstantiality are commonly read into statutes that do not expressly contain them, and this practice demonstrates their practical value. *See Wisconsin Dept. of Revenue* v. *William Wrigley, Jr., Co.,* 505 U.S. 214, 231 (1992). For these reasons, the Department retains the de minimis exception.

Many commenters noted the difficulty of applying the vague de minimis standard in the old instructions and the historical absence of helpful guidance in applying the exception. Several

requested the Department to provide at least an illustrative dollar figure and to explain the meaning it attributes to the terms "unrelated to the filer's status in a labor organization" and "sporadic and occasional." Some specifically requested the Department to provide additional examples so that filers could better understand the de minimis exception. Others argued for a test that was solely tied to the dollar value of any gift or payment.

As acknowledged in the NPRM, the qualitative aspects of the rule have proved difficult to apply. Based on its consideration of the comments and further review of this question, the Department has concluded that the purposes of section 202 can best be achieved by modifying the test so that the value of the payment or gift is the sole consideration affecting its disclosure. Additional conditions for claiming the exception would often present filers with the burden and expense of undertaking a fact-specific inquiry even though the amount of the gift or payment, as recognized by the dollar threshold, is insubstantial.

Some commenters favored replacing or at least supplementing the de minimis rule with the creation of broad exceptions to the various reporting requirements. These commenters requested exceptions for what they viewed as routine activities necessary for conducting business. Thus, exceptions, among others, were proposed for the following: any expenses related to an employee benefit plan including educational benefits, receptions and meals, routine business functions and luncheons, all marketing expenses, marketing and entertainment expenses provided equally to union and management trustees, and any promotional or branded good containing a company name or logo. Most of these comments were from employers or industry associations that anticipate that union officials will rely on the vendors to keep track of any gifts or payments so that they can readily determine whether they have incurred a reporting obligation. Another commenter suggested that no report should be required for any gratuity that would be considered a "business expense" by the IRS. One commenter characterized the rule as "incredibly burdensome" and an "unprecedented imposition" on service providers to trusts. Another commenter suggested, in effect, that the Department should adopt the rules and exceptions provided under the disclosure rules for Federal employees in place of the Department's proposed de minimis rule.

Several comments expressed concern about the need to report educational

materials and seminars provided union trustees by vendors offering or providing services to welfare and pension plans. These commenters argued that even a high de minimis level would have a chilling effect because union trustees would refuse the materials or decline to attend a seminar in order to avoid the recordkeeping and reporting burden or the perception by union members that the trustee's attendance would be inappropriate. One commenter suggested that no report should be required for educational resources provided to union officials, so long as the sponsoring organization retained a statement of the educational purpose of the resource, a list of its total expenses relating to the otherwise reportable event, and if a seminar, the list of attendees.

The Department declines to create any suggested broad category of exceptions. Creating the broad exceptions suggested would frustrate the purpose of the statute to make transparent possible conflicts and would deny union members the ability to evaluate any concerns they might have about the possibility that a union official might put his or her own interests above those of the union and its members. Educational seminars and resources may benefit trustees to pension or welfare plans and the workers whom the plan is meant to benefit. The same event, however, may well include gifts, meals, travel, lodging and entertainment provided by service providers, or potential service providers, to these plans. By requiring reporting, the Department need not attempt the highly difficult task of crafting a rule that will identify the questionable payments. Rather, union members and the public can evaluate the situation on a case-by-case basis, and make their own decisions on the choices made by their officials. Furthermore, these commenters fail to recognize that the Secretary's authority to fashion a de minimis exception is a limited one. The LMRDA does not confer on the Secretary the authority to except from reporting matters which Congress has evinced no intention to withhold from disclosure and the de minimis principle, as evidenced by its name, only applies to matters of relative insignificance. Although the disclosure rules for Federal employees provide an alternative system for reporting financial interests that may pose a conflict with an individual's duties, that system was designed to meet the special needs and interests of Federal employment and the various laws that govern such employment. The

**36116** **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

Department has borrowed some ideas from the disclosure rules for Federal employees but to adopt the Federal disclosure rules wholesale would be impracticable.

Most of the commenters advocated a dollar threshold substantially higher than the $25 figure mentioned in the NPRM; many urged a figure higher than $250. These commenters and others requested the Department to exclude from the aggregate amount "hospitality gifts" of nominal value, variously defined by particular commenters. Several commenters urged the Department to adopt a two-tier approach similar to Federal conflict of interest disclosure requirements for Office of Government Ethics (OGE) Form 450 and Form SF 278. In general, these commenters recommended that gifts totaling $250 or less from any one source need not be reported and that "insubstantial" gifts (ranging from $75 to $250) should not be included in determining whether the $250 threshold has been met. Otherwise, many commenters argued, the recordkeeping burden would be unreasonable because union officials would have to track every cup of coffee and every lunch to determine whether and when the $250 level was met. The general rule for employees covered by the Federal disclosure rules is that they are prohibited from accepting any gift because of their government position. Examples of prohibited gifts are those that come from persons or firms that have contracts, grants, or other business with the employee's agency, or are seeking such contracts, grants or other business. These employees are also prohibited from accepting gifts from entities that are either regulated by the employee's agency or may be affected by the performance of the employee's duties. An exception in the general rule applies to unsolicited non-cash gifts of $20 or less up to a maximum of $50 per year from a single source. 5 CFR 2635.204(a).

The Department believes that, by setting the threshold at $250 and providing that payments or gifts valued at $20 or less need not be included in determining whether the $250 threshold has been met, it has achieved the appropriate balance between ensuring transparency of potential conflicts and minimizing the reporting burden. This two-tier approach has precedent in the Federal employee disclosure regime. By excluding expenses of $20 or less from the $250 computation, the Department substantially reduces the burden associated with aggregating gifts or payments from a particular employer or business. There will be no need to keep

records of coffee and pastry service, modest lunches, or similar "hospitality gifts."

Some commenters expressed the concern that requiring large numbers of reports on relatively small amounts of payments "buries" from view reports of greater value. The Department believes this fear is unfounded, especially in light of the $250 aggregate threshold established by today's rule. Even at a much lower figure, the number of reports of interest to a particular union member would constitute only a small fraction of the total number of reports filed and these reports could easily be culled electronically from the other reports.

The Department does not find persuasive the comments urging that payments higher than $20 should be excluded from the $250 reporting threshold. While there may be merit to some arguments urging a somewhat higher or lower amount, a $20 initial threshold minimizes reporting burden and ensures disclosure of financial relationships that may pose a conflict of interest. The Department, however, rejects the suggestion that items valued substantially more than $20 should go unreported. While in the Department's view, a single gift of $75 or even $100 is unlikely to be a matter of substantial concern to some members, even a few gifts of this magnitude would be of concern to most members. And almost every member would be concerned if a union official received several gifts of such value. By setting the amount at $100, for example, a union official could receive a respectable set of golf clubs, gloves, shoes, and other golfing attire through a series of $100 gifts without filing a Form LM–30. Most union members and members of the public, the Department believes, would view the gift of a complete set of clubs or other serial or packaged gifts as posing a potential conflict of interest between the union duties of the recipient and matters affecting the donor of the gifts.

The purpose of the de minimis exception is to minimize reporting burden. A filer may not use the exception to hide the receipt of a series of payments or gifts that are purposely set at $20 or less to avoid reaching the $250 reporting threshold. For example, a filer would have to report his or her receipt of individual tickets worth $20 or less to all of a professional baseball team's home games that are provided before each game rather than given as a complete package at the start of the season. The Department is sensitive to the concern that by setting the de minimis level at $250 today's rule could lead to the unintended consequence that

some union officials will choose not to attend some widely-attended gatherings of value to them and their union's members. However, the Department also believes that reporting attendance at legitimate educational gatherings will also benefit the filer by showing their union members that the filer is taking steps to learn and advance the skills needed for their position. As stated above, the Department's authority to fashion a de minimis exception is constrained by the language of section 202. In the Department's view, however, the Department is within the bounds of its discretion to craft a limited reporting exception for such gatherings. Thus, the Department concludes that no union official need report their attendance at one or two such gatherings annually provided the expense incurred by the employer or business holding the gathering is $125 or less per expected attendee. The Department believes this change meets the concern of some commenters that union officials and trustees would be discouraged from attending educational seminars related to their union or trustee duties if they were required to report such activities. The Department considered, but rejected as impractical and perhaps beyond the Department's authority, a broader qualitative exception for meetings. None of the comments provided a ready basis for distinguishing between the purposes of various meetings that would reduce the reporting burden without impeding the disclosure of information relevant to assessing the potential conflict of interest from the value of attendance at several meetings or a single meeting of significant economic value to a union official present at the meeting.

*D. Why Reporting Exceptions Permitted Under the Old Rule Have Been Eliminated or Modified To Provide More Information to Union Members*

In the NPRM, the Department proposed the elimination of regulatory exceptions from the reporting requirements of section 202. One of these exceptions relates to the reporting by union officials of payments received under "union-leave" and "no-docking" policies; this exception is discussed separately. Although each exception is based on statutory language excepting the reporting of specific interests in or payments from an employer, the old Form LM–30 and its instructions apply these specific exceptions more generally to other matters that otherwise would have to be reported. As discussed in the NPRM, by administratively enlarging exceptions to reporting, the Department deprived union members of information

to which they were entitled under particular provisions of section 202. 70 FR 51175–78. The Department also proposed to eliminate a provision in its regulations, 29 CFR 404.4, which now states that the Department may require a union official to file a special report in situations where the administrative exceptions departed from the language of the statute. 70 FR 51178.

Under today's rule, as discussed below, the Department generally has adopted the proposals set forth in the NPRM to narrow the scope of these exceptions in order to better adhere to the statutory design. The Department also has eliminated the "special reports" language as unnecessary given the Department's express statutory mandate to conduct investigations under the Act.

### 1. Regular Course of Business Exception

Section 202(a)(5) of the LMRDA requires union officials to report any "business transaction or arrangement" with an employer whose employees the union represents or is actively seeking to represent. This section excepts from reporting two categories of transactions and arrangements: (1) Payments and benefits received as a bona fide employee of an employer whose employees the official's union represents or is actively seeking to represent; and (2) *"purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer."* (Emphasis added). Sections 202(a)(1) and 202(a)(2) require union officers and employees to report payments from an employer. These sections do not contain this "employee discount in the regular course of business" exception, but the prior instructions applied it to financial matters covered by these subsections.

The Department adopts its proposal to limit the exception to financial matters reportable under section 202(a)(5). Thus, this exception will no longer apply to matters reportable under sections 202(a)(1) or 202(a)(2). It will not be applicable to (1) Holdings in an employer whose employees the union represents or is actively seeking to represent, (2) transactions in such holdings, (3) loans to or from such employer, and (4) income or any other benefit with monetary value (including reimbursed expenses) received from such an employer.

The Department received a few comments specific to this issue. One commenter supported the proposal to remove the exception, while two others objected to the proposal. One commenter based its support of the

Department's proposal in the statutory language, noting that the "regular course of business/employee discount" exception is found only in section 202(a)(5) and not in sections 202(a)(1) and 202(a)(2). Therefore, this commenter contended, "the current instructions create an exception for transactions under the latter two subsections that Congress did not envision." Numerous commenters objected generally to reporting related to the routine conduct of business, especially in connection with business conducted between section 3(l) trusts and service providers, including financial institutions. For example, one commenter asserted that the Department should not focus on "routine business transactions conducted at arms length," but rather on those transactions that may be evidence of a potential conflict of interest.

One commenter offered a general argument against reporting of what it considers to be routine business transactions, including payments or loans to union officials. The commenter argued, in effect, that the proviso in section 202(a)(6), excepting reporting on "payments of the kinds referred to in section 302(c) of the Labor Management Relations Act," should be applied broadly to all the subsections of section 202(a). Thus, this commenter argues implicitly that section 302(c) of the Labor Management Relations Act excepts from the section's criminal prohibition the payment of money or other thing of value "with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business." 29 U.S.C. 186(c)(3). This commenter apparently believes that Congress also intended to exclude such payments from any reporting by union officials, notwithstanding the absence of such exception from subsections (a)(1)–(5) of section 202.

The Department disagrees that Congress intended the section 302(c) proviso in section 202(a)(6) to supplant the specific reporting obligations prescribed by the other five subsections of section 202(a), several which have unique exceptions narrowly applicable to the types of payments for which reports must be filed. The Department concludes that this construction is contrary to the plain language of the Act, and would render superfluous specific exclusions Congress crafted for particular types of payments. It would make no sense for Congress to craft a disclosure-specific statute with explicit reporting obligations and explicit exceptions and, at the same time, undo

those specific provisions by a vague reference to another statute.

Union members have an interest in knowing of such holdings, transactions in holdings, loans, and income so they can evaluate whether each is significant enough, or of such a nature, to constitute a conflict of interest. The statutory exemption for payments and other benefits received as a bona fide employee of the employer is sufficient to exempt all the ordinary payments received as part of an employment relationship; the exemption in the current form, the Department finds, may provide a means to exclude other items that present conflicts of interest for union officials. For example, a union officer who receives income from the employer of union members for contract work could, at least arguably, avoid disclosing the payment by relying on this exemption. A union employee who purchases certain types of ownership interests could avoid disclosing the holding by relying on this exemption. A union official with an employer as a client has a conflict between personal interests and union loyalties, as does an official with an ownership interest in the employer. The change is consistent with the plain language of the statute, which applies this exception only to financial matters reportable under section 202(a)(5), not to section 202(a)(1) or 202(a)(2). The elimination of this exemption will result in more detailed and transparent reporting of financial information that union members may find helpful in determining whether their union's officers and employees are subject to financial pressures inconsistent with their responsibilities to the union and its members.

### 2. Bona Fide Employee Exception for Transactions With an Employer Whose Employees the Official's Union Represents or Is Actively Seeking To Represent

Sections 202(a)(1) and 202(a)(5) include language that specifically excepts "payments and other benefits received as a bona fide employee of such employer" from reporting. Under the old Form LM–30 and the instructions, however, this exception also was applied to matters for which reports were required under section 202(a)(2). Section 202(a)(2) requires union officials to report: (1) Transactions in holdings in an employer whose employees the union represents or is actively seeking to represent, and (2) loans to or from such an employer. Section 202(a)(2) does not include the "bona fide employee" exception.

**36118**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

The Department proposed to limit this exception only to reports due under sections 202(a)(1) and 202(a)(5), thereby eliminating the old exception for reports (on payments other than loans) due under section 202(a)(2). *See* 70 FR 51176–78, 51188. The Department received only one comment on this issue. It supported the proposal. Today's rule adopts the proposal, which is consistent with the plain language of the statute. A union official's decision to purchase or divest holdings in the employer could be of significant importance to union members and its reporting would prevent a possible conflict from escaping the scrutiny of members. As noted in the proposal, sales and purchases of an ownership interest in the employer are unlikely to constitute payments received as a bona fide employee; by eliminating this exception, a union official must now, for example, report payments made to officials as stock options where the employer buys back such options.

3. Exception for Bona Fide Loans or Interest From a Banking Institution

Section 202(a)(6) requires union officials to report "any payment of money or other thing of value (including reimbursed expenses)" received from "any employer" or any labor relations consultant to an employer. Under the old Form LM–30 and its instructions, the following are excepted from reporting: "[B]ona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions." *See* Part C (ii) of the instructions to the old form. The Department proposed to eliminate the exemption.

Upon review of the comments, the Department *retains* the general exception but limits its scope because the Department has determined that the exception is too broad. Under the final rule, this exception will not apply to "national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions that constitute a 'trust in which your labor organization is interested'."

The Department received two comments in support of the proposal to eliminate this exception *in toto*. One commenter argued that the exception in the Form LM–30 instructions had no statutory basis, and that its existence tended to shield transactions that should be reported. The Department received four comments opposed to this proposal. These commenters stated that the elimination of this exception would burden union officers and employees,

employers, and the Department; interfere with the privacy of the employees as well as the financial institutions by revealing confidential information; and fail to advance the goal of disclosing potential conflicts of interest. One commenter argued that the Department's proposal to eliminate the exception was an "unwarranted intrusion on privacy," while providing only minimal benefit to union members. This commenter questioned why the public should be made aware of a "bona fide mortgage" from a financial institution unrelated to the union and given on terms generally offered to the public. Most mortgages along with other encumbrances on property must be recorded with a government office, typically at the county level, to be effective. These filings are publicly available and as such the insinuation that the Department is now making public information that was secret is unfounded. Further, the vast majority of these loans will be made on neutral criteria not related to the filer's status with a labor organization and as such will not be reportable. The rare instance where the filer's status with the labor organization is a criterion for issuance of the loan is exactly the type of situation where a possible conflict of interest exists. As such, reporting on transactions of this type is warranted.

Another commenter recommended that the Department only require reporting of loans made to employees in whole or in part due to their union status. The commenter expressed concern over the volume and diversity of new transactions that would come under the scope of the new Form LM–30, such as payroll advances, and the burdensome recordkeeping requirements that would accompany the elimination of this exception. One commenter argued that the "overwhelming majority" of the estimated 206,000 union officers and employees would now have to report under the new Form LM–30.

The Department has concluded that the exception as drawn in the instructions to the old Form LM–30 is too broad. While there is a strong argument that elimination of the exception would best serve the disclosure purposes of the Act, the total burden associated with requiring reports on payments received from all financial institutions would be considerable. Loans, interest, and dividends earned during the regular course of business with a bona fide financial institution are among the most common financial transactions undertaken by individuals. For example, without this exception, a union official would have to report each

mortgage or other bank loan received from any financial institution in competition with a financial institution that deals with the official's union. A union official would first have to identify all the financial transactions with the official, his or her spouse or minor children and then look at the corresponding institutions to see whether they do business with the official's union, or compete with those that deal with the official's union. In the Department's view, the burden would outweigh the value of the additional information disclosed.

The current exception has kept improper transactions from being disclosed. As noted in the NPRM, the Department only belatedly became aware of a situation where a credit union controlled by a local union made 61% of its loans to four of its loan officers, three of whom were officers of the local. 70 FR 51177. If the officials had been required to report these loans, the members would have learned that their credit union was making loans for reasons related to union status, not on a borrower's ability to repay the debt, which posed a risk to the credit union by failing to spread the lending risk more broadly. In short, the members would have been able to determine whether the officials had placed their own personal interests above the union's interest in the credit union that it ostensibly controlled. By eliminating the exception for institutions that are trusts, valuable information regarding potential conflicts of interest will be publicly disclosed.

While the Department recognizes that an official's interest in preserving the confidentiality of such information may be considerable; nonetheless, this interest is outweighed by the need for union members and the public to know of transactions between union officials and related organizations. Thus, here the balance tips in favor of disclosure in the limited situations proposed by today's rule.

This exception applies, and has always applied, only to reports due under section 202(a)(6). Where the financial institution is an employer whose employees the filer's union represents or is actively seeking to represent, the exception would not apply. Nor would it apply where the financial institution is a business that buys, sells, leases or otherwise deals with the union, a trust in which the union is interested, or in substantial part with the employer of the union members.

One commenter "strongly" disagreed with the proposal, arguing that it would impose a reporting obligation on union

officials, even though financial institutions are expressly relieved from reporting such loans by section 203(a)(1) of the Act. Section 203(a)(1) specifically exempts "payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution." The commenter pointed out the potential "reporting inequities" of the Department's proposal and argued that the inconsistent reporting obligation would make comparative analysis of Forms LM–10 and LM–30 impossible. The Department acknowledges that by modifying the exception, union officials will be required to report on matters about which the financial institutions themselves have no LMRDA reporting responsibility. However, the commenter overlooked the limited scope of the divergence. Section 203(a)(1)'s exception for "credit institutions" does not extend to any payments or loans made by such institutions to persuade or otherwise interfere with employee collective bargaining or representation rights. *See* 29 U.S.C. 203(a)(2) and (3). Furthermore, strong policy reasons exist for requiring union officials to report their arrangements with financial institutions in the limited circumstances required by today's rule.

4. Exceptions Relating to Stocks

The Department invited comments about whether to remove or retain the administratively created exception related to the reporting of holdings, transactions or receipts of income from securities that do not meet the registration requirements of the Act, are of insubstantial value, and occur under terms unrelated to an employee's status in a labor organization. The old rule states: "For purposes of this exclusion, holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial." 70 FR 51176.

On a related issue, the Department sought comments on whether to retain the distinction between, on the one hand, securities traded on a registered national stock exchange and, on the other hand, securities that while traded on a high volume exchange, are not traded on a *registered* national exchange (as was the case with NASDAQ until recently). 70 FR 51177. Section 202(b) provides that a union official is not required "to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940, or in securities of

a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom." The NPRM listed all of the stock exchanges currently registered under the Securities and Exchange Act of 1934: "The American Stock Exchange, Chicago Board Options Stock Exchange, International Securities Exchange, National Stock Exchange (formerly the Cincinnati Stock Exchange), New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange." The proposal noted that NASDAQ was not registered as a national securities exchange.

Two commenters favored the complete elimination of the insubstantiality exception for securities not meeting the registration requirements. One of these commenters argued that the insubstantiality exception flies in the face of clear statutory intent to require the reporting of all stock transactions apart from bona fide investments in securities traded on a national securities exchange. The other commenter argued that union members, not this Department, should determine what is and is not insubstantial. One commenter also supported the exception for small holdings of unregistered securities as long as the holdings are too small to give rise to a controlling interest. Focusing on the comprehensibility of the exceptions to "end-user" union officials and members, another commenter stated that the "$1,000/100" and "publicly-traded securities" exceptions are specific and easily understood. By contrast, all of the union commenters, along with a labor educator, favored the exception and supported its broadening.

The Department believes that the $1,000/$100 exception is warranted, and therefore it is *retained* in today's rule. Where the value of securities and any interest thereon is less than these threshold amounts, there is little risk of potential conflict between an official's personal interests and his or her duties to the union. Moreover, any such risk is outweighed by the burden associated with such reporting. Thus, for these and the reasons already expressed more generally herein on the application of the de minimis principle to the reporting obligation, today's rule retains this limited reporting exception.

One commenter objected to maintaining the exception for stock traded on other than a registered, national stock exchange on the ground that the statute does not provide for such an exception. Another commenter argued that there should be no

exceptions for transactions involving the stock of the employer, regardless of whether the stock is traded on a registered securities exchange. This commenter expressed concern about the potential for insider trading by union officials who have knowledge about the position of the company that the rank and file members do not have. In support of his position, the commenter provides an example in which members of a union executive board sell stock options in a national exchange or private exchange shortly before authorizing a strike against the company that issued the stock.

Other commenters argued that the existing exception for securities traded on a registered, national stock exchange should be continued and extended to cover stock transactions for shares traded on NASDAQ. All of the union commenters, along with a labor educator, favored the exception and supported broadening it. A commenter supported maintaining the exception for stock that is held in a company unrelated to the filer's labor organization because, in its view, there is no potential for a conflict of interest. In support of their position, they argued that the LMRDA's legislative history demonstrates that Congress did not want to burden officials with reporting holdings of publicly traded or regulated stocks "because of the unlikelihood that such holdings will amount to a substantial or controlling interest * * * in the company in question. The argument follows that because NASDAQ securities are publicly regulated and publicly traded, they fall within the purview of what Congress sought to exempt from reporting under section 202(b). One commenter illustrated its position with the different reporting requirements that would apply if a union official owned both Gateway and Dell stock: the Dell stock (traded on NASDAQ) would be reported, whereas the Gateway stock (traded on the NYSE) would not be reported. According to this commenter, there is no conflict of interest in either instance, and accordingly neither transaction should be reported. Another commenter noted that when the LMRDA was enacted in 1959, the shares of large corporations were exclusively traded on registered exchanges. It explains that now, however, the shares of many of those same large corporations are traded on the NASDAQ and that shares traded on NASDAQ are subject to Federal registration requirements.

The Department *retains* the rule set forth in the instructions to the old rule, continuing the obligation of union officials to report transactions with any

exchange unless and until they meet the requirements embodied in section 202(b). As a pure matter of policy, the argument for adding securities traded on a highly regulated, albeit "unregistered," market to the general exception for stock traded on a registered, national stock exchange may have merit. However, such argument founders on the plain language used by Congress to craft the exception for securities traded on a registered exchange as provided in the statute. By conditioning a reporting exception on registration, Congress obviously considered whether unregistered stocks should be similarly exempted and decided against it. Similarly, the statutory language prevents the Department from adopting a rule, as suggested by one commenter, to require officials to report their holdings in such securities that he or she has purchased in a company where employees the official's union represents or is actively seeking to represent.

Although the commenters have demonstrated that the exception crafted by Congress, differentiating between certain kinds of stock depending upon how they are traded, may lead to some perceived anomalies, they do not show that this reporting obligation will impose any undue burden on filers. Furthermore, on July 15, 2006, the SEC approved NASDAQ's application for registration as a national securities exchange, effective July 31, 2006. In announcing its decision, the SEC stated that the "vast majority" of the companies listed on NASDAQ have previously registered their securities under the Exchange Act. Press Release, SEC (July 31, 2006), available at *http://www.sec.gov/news/press/2006/2006–127.htm* (last visited on Nov. 21, 2006). Thus, under today's rule, the exception provided by section 202(b) applies to registered stocks traded on NASDAQ; and the instructions have been revised to reflect this change. As some of the commenters suggested, the distinction between highly regulated stocks that are traded on a national, but unregistered exchange, and those traded on a registered national exchange is not immediately apparent to many filers, particularly insofar as NASDAQ-traded securities were concerned. The Department believes that its proposed definition of "publicly-traded securities" (albeit something of a misnomer in that registration of a national exchange, not "public trading," is the distinguishing characteristic for reporting purposes) accurately set forth the statutory reporting obligation. At the same time, however, the change in the

registration status of NASDAQ has largely eliminated the need for a lengthy discussion of this point in the instructions. For this reason, the final instructions more closely follow the abbreviated discussion of this point in the current instructions, without the need for a separate definition of "publicly-traded securities" or an equivalent term.

### 5. Revision of Special Report Language

As noted, the old Form LM–30 administratively excepts union officials from reporting various matters that otherwise would have to be reported under the particular subsections of section 202(a). A special report was intended to be used to obtain such information about such unreported matters upon demand of the Department. *See* 29 CFR 404.4. The Department proposed to delete the special report provision.

At the time the Form LM–30 was created, the Department apparently believed that more complete reporting, consistent with the reporting requirements of section 202, could be realized through an ad hoc special report that could be selectively required by the Department. *See* 29 CFR 404.4. As discussed in the NPRM, these reports would allow the Department to require the disclosure of the information that was exempted from disclosure by operation of the administrative exceptions. No procedures were established, however, to identify the circumstances for which a special report would be required; and apparently the Department has never requested a union official to provide a special report. As noted in the NPRM, the elimination of the special report provision does not diminish the Department's authority to assess each Form LM–30 report for sufficiency, require amended reports, and to commence investigations where it is necessary to determine whether any person has or is about to violate any provision of the Act. 29 U.S.C. 440, 521.

### E. Why Union Officials, as a General Rule, Must Report Payments Received as Members of a Company's Board of Directors

If a union official serves as a director for an employer and receives compensation or reimbursement for attendance at meetings, the official must report such payments. Such payments may not have been reported on the old Form LM–30 because of an official's reliance on an earlier opinion by the Department on this issue. In the NPRM, the proposed instructions provided the following example of a transaction to be reported under section 202(a)(4):

You are a national union president and a trustee of a jointly administered health care trust that insures union members through an insurance company. Premiums for coverage are paid by the trust to the insurance company. You are a member of the board of directors of the health insurance company, which pays you an annual fee and reimburses expenses for your attendance at board meetings. * * * As the insurance company is doing business with a trust in which your union is interested, you must report your annual fee and reimbursed expenses under this subsection. The dealings between the health insurance company and the trust must also be reported.

70 FR 51215.

The Department only received one comment on this point. The commenter opposed the proposal, arguing that the Department should confirm its 1986 opinion that directors' fees paid to union officers serving on a corporate board need not be reported "so long as the corporation pays the union officer/director at the same rate it pays the other directors, for the same services." The opposition was based on the commenter's broader premise that Congress intended to generally except any payments to union officials that are made in the regular course of business. The Department disagrees.

In the commenter's view, the old Form LM–30, in effect, applies language in section 202(a)(5)—excepting from reporting certain transactions involving the "purchases and sales of goods or services in the regular course of business at prices generally available to any employee of [the] employer" who sold the goods or service—to modify generally the reporting obligations under section 202. The commenter argued that the instructions to the old Form LM–30 also apply, in effect, language in section 202(a)(6)—excepting from reporting certain payments "of the kinds referred to in section 302(c) of the Labor Management Relations Act"—to modify generally the reporting obligations of section 202. The commenter, in essence, asserts that the instructions to the old form, like the 1986 opinion on directors' fees, which draws on similar language in section 302(c), properly effectuate the intent of Congress and therefore should be preserved. The commenter further asserts that there is no justification for additional recordkeeping and reporting if the union representatives are being treated the same as their fellow directors on a corporate board.

The Department disagrees with this commenter's opposition to this reporting requirement. The commenter's reference to the 1986 opinion on directors' fees refers to a letter by a senior Department official responding to

a request for an opinion concerning directors' fees paid to union officers serving on a corporate board. The official concluded that "so long as the corporation pays the union officer/ director at the same rate that it pays the other directors, for the same services," the payments are not reportable. The opinion letter reversed a 1983 determination by another senior Department official that the fees must be reported. After again carefully reviewing this question and the example discussed above in the NPRM, the Department concludes that the NPRM correctly illustrated a payment that is required under section 202(a)(4) (a business dealing directly or indirectly with an official's union) and section 404.2 of the Department's regulations on reporting by union officials (a business dealing with a section 3(l) trust that involves the official's union).

If a union official serves on an employer's board of directors and receives a fee, the employer has made a payment to a union official. Such payments are typically not of the kind referred to in section 302(c) because the exception concerning compensation to employees is not applicable unless the director is employed by the company on whose board he or she sits, an atypical status for a corporate director. Further, directors' fees are not an article or commodity, and it is questionable whether such payments for these types of personal services can be said to have a prevailing market price. Significantly, these payments raise potential questions of a conflict of interest, due to the employer's role in selecting the directors and setting the amount of the fee. A union member has an interest in knowing whether decisions made by his or her union officials may have been affected by the official's competing personal financial interest. The commenter's contention that no report should be filed where union-affiliated directors receive the same compensation as non-union directors is not persuasive. The LMRDA's reach extends only to regulating the conduct of union officials, not to setting general standards of corporate governance.

Thus, under today's rule, no separate reporting exception is made for directors' fees. A union official must report his or her receipt of directors' fees when made by an employer whose employees the payment recipient's union represents or is actively seeking to represent. Sections 202(a)(1), (2) and (5). Such fees will also be reportable when made by a business, a substantial part of which consists of buying, selling, or otherwise dealing with an employer whose employees the payment

recipient's union represents or is actively seeking to represent, or any part of which consists of buying, selling, or otherwise dealing with the recipient's union, or a trust in which the recipient's union is interested. Section 202(a)(4). Finally, as discussed in greater detail, the official must report his or her receipt of directors' fees from an employer defined by this rule under 202(a)(6) including an employer in competition with an employer whose employees the payment recipient's union represents or is actively seeking to represent.

*F. Why Officers of International, National, and Intermediate Labor Unions, in Addition to Their Obligation to Report Payments and Other Financial Benefits Received From Businesses and Employers That Have a Direct Relationship With the Component of the Union to Which They are Elected or Appointed, Must Also Report Payments and Other Financial Benefits Received From Businesses and Employers Whose Relationship Is With a Subordinate Body of Their Union*

In the NPRM, the Department proposed to clarify the obligation of a union official to report his or her interests in and payments (and those of the official's spouse and minor children) from employers and businesses that have a relationship with the official's union, albeit at a different hierarchical level than the level at which the official serves as an officer or employee. Under sections 202(a)(1) through (a)(5), union officers and employees must report payments from, holdings in, or transactions with: (1) An employer whose employees the filer's labor organization represents or is actively seeking to represent; (2) a business a substantial part of which consists of dealing with an employer whose employees the filer's labor organization represents or is actively seeking to represent; or (3) a business that deals with the filer's labor organization or a trust in which the filer's labor organization is interested. The scope of the reporting obligation thus depends on what organization constitutes the filer's "labor organization." As explained in the NPRM, many labor organizations consist of a three-tier hierarchy, such as a local labor organization, an intermediate body, and a national or international labor organization. 70 FR 51182. The NPRM explained that the Department's proposal clarifies the reach of the disclosure obligation to include conflicts that arise between a union official and his or her responsibility to both the immediate unit of the union that he or she serves and any of its

parent or subordinate bodies. The NPRM noted that the *LMRDA Manual* provides that an officer at the highest tier of a three-tier labor organization must report payments from businesses that deal with employers whose employees are represented by a subordinate union local. "An international union officer must report his income from [a] business [that has dealings with an employer whose employees a local union represents] even though he is not an officer of the local which represents the employees of the business, and even though his duties as an international officer do not include representation activities." *LMRDA Manual*, § 241.100. The proposed rulemaking noted that members of an LMRDA-covered labor organization would have an interest in knowing if a subordinate labor organization purchases goods or services from a business entity owned by a higher level labor organization officer because local union personnel may choose to deal with this business entity out of fear of alienating the higher level officer. 70 FR 51183.

The old instructions are silent about the obligation of an officer or employee to report interests or income from businesses that have a relationship with parent or subordinate labor organizations of the filer's immediate union body, *i.e.*, the particular component of the official's union in which he or she holds office or is employed. *See* 29 U.S.C. 432(a)(4). In the same way, the instructions are silent as to whether labor unions affiliated with that of the union officer or employee are encompassed by the phrase "an employer whose employees *such labor organization represents or is actively seeking to represent*." *See* 29 U.S.C. 202(a)(1), (2), (5) (emphasis added). The Department proposed to establish a rule requiring a union official to report payments he or she received from a business or employer that had a relationship with any component of the overall union hierarchy to which the official belongs or whose employees any components of that union represent or are actively seeking to represent. To accomplish this result, the Department proposed to define "labor organization," for purposes of Form LM–30 reporting as "the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office, during the reporting period, and any parent or subordinate labor organization of the filer's labor organization." 70 FR 51174.

Commenters were divided on the proposal, with most opposed to what

they viewed as an expanded reporting obligation. Representative of the comments favoring the proposal is the following: Union members deserve to know whether union officers or employees "receive benefits from businesses whose employees are represented by, or are actively seeking to be represented by, a parent or subordinate union, to form an opinion about whether a conflict of interests exists." Representative of the opposing viewpoint is the following: Union officers do not have the resources to "trace the repercussions of each potentially reportable interest * * * up or down the organizational hierarchy and throughout the national marketplace." As discussed below, the Department has decided to modify the reporting obligation by excluding local officials from reporting financial interests in businesses and employers that are involved with higher level components of their union's hierarchy and clarifying and reducing the reporting obligation of officials of national, international, and intermediate level unions. Thus, the Department has narrowed the reporting obligation from that proposed in the NPRM by adopting the existing "top-down" approach. *See LMRDA Manual,* § 241.100.

The Department adopts a revised definition of "labor organization," which reads in the instructions as follows:

Labor organization means the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office, during the reporting period, and, in the case of a national or international union officer or an intermediate union officer, any subordinate labor organization of the officer's labor organization. Item 6 of the Form LM–30 identifies the relationships between employers and "your labor organization" or "your union" that trigger a reporting requirement. Item 7 of the Form LM–30 identifies the direct and indirect relationships between a business (such as a goods vendor or a service provider) and "your labor organization" that trigger a reporting requirement. The terms "your labor organization" and "your union" mean:

a. *For officers and employees of a local labor organization.*

Your local labor organization.

b. *For officers of an international or national labor organization.*

Your national or international labor organization and all of its affiliated intermediate bodies and all of its affiliated local labor organizations.

*But note:* A national or international union officer does not have to report, payments from, or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

c. *For employees of a national or international labor organization.*

Your national or international labor organization.

d. *For officers of intermediate bodies.*

Your intermediate body and all of its affiliated local labor organizations.

*But note:* An officer of an intermediate body does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

e. *For employees of an intermediate body.*

Your intermediate body.

The first sentence of the definition is also adopted as part of the definitions section of the Department's regulations (to be codified as 29 CFR 404.1(f)). A summary of the principal comments on this issue and the Department's response to the comments follows.

Some commenters expressed a belief that the proposed definition is not supported by the statutory definition of "labor organization" at section 3(i). Instead, they argued that the term "labor organization" refers to the immediate labor organization of the filer, exclusive of any parent and subordinate unions. A commenter claimed support for its argument in the legislative history of the LMRDA, specifically the *Senate Report,* which discusses the conflict of interest that develops when a union officer is involved in collective bargaining with a business in which he or she has a financial interest. *Id.,* at 15, *reprinted in 1 Leg. History,* at 411. Some commenters argued that interests and payments that would be reported under the Department's proposal do not present conflicts of interest; one commenter explained that transactions involving parent and subordinate organizations are not reportable because the union officer is not bargaining on behalf of those organizations.

The Department is not persuaded that the language of the statute compels, or even that it can be best read to support, the conclusion that Congress intended to confine a union official's reporting obligation solely to the entity of a national or international union to which a particular union official is elected, appointed, or hired. As defined by the Act:

"Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms and conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a state or local central body.

Section 3(i); 29 U.S.C. 402(i). This definition, broad in scope, does not answer the question posed by the Department's proposal. Section 3(i) serves mostly a functional purpose, to distinguish labor organizations from other groups or associations to which employees may belong by focusing on the organization's purpose and activities to collectively represent the employees in their dealings with employers about matters affecting various aspects of its members' employment. Section 3(j) of the Act, 29 U.S.C. 402(j), albeit focused on the nexus between an organization and its effect on interstate commerce, is more helpful in discerning whether Congress proceeded upon a general premise that it was creating rights and obligations that would be specific to only a particular component of a larger organization, *i.e.,* legislating on a separate, component-by-component basis. If Congress had that intent, the Act should provide precise boundaries between entities that otherwise are often combined in everyday usage. The statute, however, does not contain such precision. Congress instead took an approach, consistent with the common understanding of the term "labor organization" and its flexible usage in which the existence and overlapping responsibilities of entities that constitute or comprise a labor organization are inferred unless otherwise indicated. Thus, Congress understood that a union engages in representation through various means, including certification, or through the employer's "recognition or acting as the representative of employees." *Id.* This section also recognizes that the term "labor organization" includes a "local or subordinate body" to such an organization and a higher body of which it is part. See sections 3(j)(1) through 3(j)(5).

As section 3(j) recognizes, the term "labor organization" requires a flexible meaning, depending upon the particular context in which it is used. For example, while section 101 of the Act establishes a bill of rights conferring on "every member" of a labor organization "equal rights and privileges within such organization," it obviously does not

create for every member of a national "labor organization," the same rights as members of a particular component of the organization in voting for that component's officers, but it does confer such rights insofar as they are exercised within the "larger organization." In contrast, section 104 takes a different approach; in imposing on a "labor organization" the duty to provide copies of collective bargaining agreements, it distinguishes between the particular duty "in the case of a local labor organization" and the duty "in the case of a labor organization other than a local labor organization." This approach obviously contrasts with the approach taken by Congress in crafting the reporting obligation to file labor organization annual financial reports in section 201 of the Act. Although the filing obligation is cast in terms of "each labor organization," the context makes clear that the obligation applies to the financial affairs of a particular component of a labor organization. With respect to section 202, the context does not make clear whether the obligation is limited to a particular component of the union or not. Each of the particular requirements may be applied to an official's "immediate labor organization" or the "larger labor organization" to which the official belongs. As discussed below, the Department believes that this ambiguity, based on its review of the statute's legislative history and public policy considerations, should be resolved in favor of disclosure. At the same time, as discussed below, the Department has taken into account the burden which such a reporting obligation may entail and has crafted a rule that achieves a balance between disclosure and undue burden.

Although some commenters apparently would argue that the language in section 202 evinces an intention to restrict the reporting obligation to the official's immediate union, this contention begs the question of what was intended by the referent, "such labor organization," as used in that section. As explained above, the structure of the LMRDA does not compel nor even strongly suggest that intention. The Department believes that the disclosure purposes of the Act are best met by giving the term "labor organization" its broader reach in applying the reporting obligation. As discussed above, section 3(j) recognizes that representation of employees is exercised in different ways, not merely through a union component that holds "certified" status. Moreover, as the statute's legislative history and the

Department's own experience bear out, national and international unions often exercise authority that affects subordinate bodies (and their members) in their relationship with employers even though a subordinate union holds the certification or recognition with the employer and may have retained formal authority over such matters. Given the broad reach of the term labor organization section 202's use of the term "such" in combination with "labor organization" does not qualify or restrict the reporting obligation.

The argument, in effect, that Congress intended to restrict a union official's reporting obligation to the particular component of the union he or she serves as an officer or employee also is belied by the legislative history of the LMRDA. As discussed in greater detail herein, the genesis of the LMRDA's reporting provisions was the conflicts of interest between the personal financial interests of national and international union officials and their duty to promote the interest of all the members of their union. The hearings of the McClellan Committee revealed numerous instances whereby such officials took actions to advance the interests of employers with whom they had obtained financial benefits or the officials' own personal financial interests, overriding local officials and the interests of these locals. *See Interim Report*, at 4–5, 69–70, 73–74, 85–86, 122–28, 130–31, 228, 230, 240–41, 250, 252, 262, 265–66, 298, 441–45; *The Enemy Within*, at 26, 94, 97–98, 104–06, 219–20. At the same time, the hearing did not show a reciprocal pattern whereby local officials were able to interject themselves into matters handled at higher levels of their union to advance the interests of an employer with whom the local official had a financial relationship.

Apart from the question of legal authority, several commenters expressed concern about the wisdom of the Department's proposal, suggesting that the information sought by the Department did not pose a conflict of interest and that, even if it did, the burden of reporting outweighed any benefit from obtaining the information. For example, a commenter asserted that filers will be confused by the requirements and many individuals will unintentionally fail to report transactions because "they lack knowledge of any connection between the employer involved and the newly expanded 'labor organization' of which the individual is considered to be an officer or employee."

The Department believes that union members have an interest in knowing if

an international, national, or intermediate union officer receives payments and benefits from, or holds an ownership interest in, a business that deals with subordinate labor organizations or trusts in which these labor organizations are interested. The national or international officer could use his or her position to influence subordinate labor organizations to utilize the services of that business. Moreover, his or her financial interests in those businesses create the same potential for putting the official's personal financial interests above his or her duties to the union and its members. The proposed instructions include several examples of situations that would create a tension between a union official's duty to the "larger union" which the official serves and his or her own personal finances. *See* 70 FR 51189–91. Union members are entitled to this information in order to determine if their interests are best served where a union official has such financial ties. Without such disclosure, it is unlikely that a union member would be able to determine whether such payments reflected a "cut" of the union's funds that were advanced for a particular purchase or to disguise a payment for services rendered by the official in favor of an employer whose employees are represented by or may be the target of organizing by a subordinate union of the official's union. Such reporting also prevents circumvention or evasion of the Act's other reporting obligations. Requiring union officials to report such payments not only allows members to "follow the money" that otherwise would be identified in the union's Form LM-2, but also increases the likelihood that the employer making the payment also will comply with its own obligations under section 203 of the Act.

The concern about the conflicts between the personal financial interests of national and international officials and the interests of the union's members at all levels of the union underlies the Department's interpretation in the *LMRDA Manual*, at § 241.100, quoted above. After carefully considering the comments received on this point and reevaluating the legislative history, the Department has decided to impose the reporting obligation only on union officers who have dealings with businesses and employers that deal with components of the union *subordinate* to the level of the union which the official serves as an officer. In reaching this decision, the Department recognized that a much greater probability exists that an official with a position higher in the union hierarchy would be able to

wield influence on matters affecting a subordinate entity than the reverse situation, and that officials in higher positions are more readily able to obtain the information needed to meet this obligation than someone lower placed in the union hierarchy. For similar reasons, the Department has determined to limit the reporting obligation to the national or international union's *officers*; under today's rule, *employees* of the national or international union are not required to report payments or other financial interests that solely relate to subordinate entities of the international. Although section 202 would allow such reporting, the Department believes that potential conflicts are much more likely to arise where a payment or other financial interest is received by a union officer rather than by an employee. Furthermore, given the typically much larger number of employees than officers in national and international unions, the overall reporting burden of the rule is minimized by excepting employees from this particular reporting obligation. To further reduce the overall reporting burden, the Department has decided to except from reporting payments or other financial interests received, as a bona fide employee, by an officer's *spouse* or *minor child* in connection with dealings relating to subordinate components of the officer's union—payments that if made to the officer would be reportable. In this way, the rule also represents a reduction in burden from the prior rule, which required officers of international unions to report all payments to their spouses and minor children from vendors to subordinate locals.

As noted, the cited interpretation in the Department's *LMRDA Manual* only refers to officers of an international union (and by extension to national unions); however, the same concerns that require such officers to report possible conflicts involving subordinate components of the union counsel for requiring intermediate union officers to report possible conflicts involving locals or members that the intermediate union oversees. The same potential for conflicts and manipulation exists as to the relationship between intermediate union officers and businesses and employers dealing with local labor organizations. For example, local union personnel may choose to deal with a business entity owned or controlled in whole or in part by an intermediate or national or international union officer out of fear of alienating the higher level officer. 70 FR 51183.

Some commenters expressed concern that the Department's proposal would impose a substantial burden on union officials, requiring them to identify the "spider web like" connections between the various components of their union and the businesses and employers who are represented by any of the components or who any of the components is actively seeking to represent. As a general rule, local officials need only report payments from and other financial interests in businesses that sell products or services to the local or the local's section 3(l) trusts and employers whose employees are represented by the local or it is actively seeking to represent. The only other payments or interests that they must report are those from "other employers" that involve identified conflicts of interest. Thus, for reporting purposes, the local official need only identify those entities which he or she holds an interest in or receives a payment from and the relationship between these entities and the official's local.

The burden is potentially greater for an officer of an international, national, or intermediate labor organization, but so too, as evidenced by the McClellan Committee hearings discussed above, is the potential for a conflict between the officer's personal finances and his or her duty both to the component of the union in which he or she serves and its subordinate bodies. In the Department's view, when officers have an ownership interest in a business, they should either have personal knowledge of whether the business deals with subordinate labor organizations or the ability to obtain this information from the business. While the information may be more difficult to obtain where the officer is an employee of the entity in question, rather than an owner, any burden is outweighed by the benefit to union members of obtaining reports of their official's conflicts of interests.

### G. Why Union Officials Must Report Payments Under Union-Leave and No-Docking Practices Subject to an Exception for Payments of 250 Hours or Less Per Year Made in Accordance With a Collective Bargaining Agreement

The Department proposed to require union officials to report payments received from employers for activities engaged in by the officials on the union's behalf. The most common payments by employers to individuals for conducting union business are made pursuant to "union-leave" or "no-docking" policies established in collective bargaining agreements or by customary practice. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals to devote portions of their day or work week to union business, such as processing grievances, with no loss of pay. The Department proposed that an officer or employee would have to report any payments for other than "productive work," including union-leave and no-docking payments. The Department explained in its proposed definition of bona fide employee that these payments are not received as a bona fide employee of the employer; rather, they are received as a representative or employee of the union.

Under the instructions to the old Form LM–30, such payments are not reportable if they are: "(a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization." See instructions, Part A, exception (iv); *see also LMRDA Manual* § 248.005. This section of the Manual, as noted in the NPRM, discusses the situation where a union officer "is excused from his regular work to handle grievances and [is] paid his regular wages while handling grievances." The Manual states: "Such a situation will not normally require reports from the union officer * * * on the theory that the employee officer is being paid for work performed of value to the employer who is interested in seeing to it that grievances are immediately adjusted." *LMRDA Manual,* § 248.005. See 70 FR 51181.

In the NPRM, the Department explained that the exception for payments made to a bona fide employee is required by statute, but that the statute is silent on the scope of the exception and specifically its applicability to "union-leave," "no-docking," and similar payments. The Department explained that under its proposal "to be exempt from reporting, payments and other benefits received as a bona fide employee of the employer must be attributable to work performed for, and subject to the control of, the employer."

The Department also stated that the *LMRDA Manual* improperly focused on whether the employer feels the money is well-spent; the correct issue is whether or not the official is a bona fide employee of the payer-employer during the time for which payment was made. In making its proposal, the Department

endorsed the statement: "Union-leave," and "no-docking" payments may pose a conflict of interest since there are "union negotiators who may agree to reduced benefits for the employees in exchange for financial support for the union." *Caterpillar* v. *UAW*, 107 F.3d 1052, 1060 (3d Cir. 1997) (Mansmann, J., dissenting). The Department noted its view that such payments should be disclosed to union members to enable them to evaluate the effect such payments might have on an official's performance of his or her duties to the union.

The Department adopts a revised definition of "bona fide employee," as set forth in the next paragraph. Under today's rule, payments to a union officer or employee under a union-leave or no-docking arrangements set forth in a collective bargaining agreement are exempt from reporting unless payment is for greater than 250 hours of union work during the filer's fiscal year. Payments for union work totaling greater than 250 hours over the course of the filer's fiscal year are reportable as are any payments that are not made pursuant to arrangements set forth in a collective bargaining agreement.

The revised definition of "bona fide employee" reads:

*Bona fide employee* is an individual who performs work for, and subject to the control of, the employer.

**Note:** A payment received as a bona fide employee includes wages and employment benefits received for work performed for, and subject to the control of, the employer making the payment, as well as compensation for work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law.

Compensation received under a "union-leave," or "no-docking" policy is not received as a bona fide employee of the employer making the payment. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay. Such payments are received as an employee of the union *and thus, such payment must be reported by the union officer or employee unless they (1) totaled 250 or fewer hours during the filer's fiscal year and (2) were paid pursuant to a bona fide collective bargaining agreement. If a filer must report payments for union-leave or no-docking arrangements, the filer must enter the actual amount of compensation received for each hour of union work. If union-leave/no-docking payments are received from multiple employers, each such payment is to be considered separately to determine if the 250*

hour threshold has been met. *For purposes of Form LM–30, stewards receiving union-leave/ no-docking payments from an employer or lost time payments from a labor organization are considered employees of the labor organization.*

The filer will report, separately, for each such employer the total payments received from the employer during the filer's fiscal year for the work performed on the union's behalf. The filer must also calculate the hourly monetary value of any fringe benefits received, and include this figure in the total.

The Department sought comments about any problems (or their absence) that have arisen by not requiring the reporting of payments received for union-leave, no-docking, and similar situations where a union official was paid for unproductive time, and whether or not there should be quantitative and/or qualitative distinctions in the disclosure obligation. Numerous comments, mostly opposed to the Department's proposal, were received on this question.

A few commenters favored the Department's proposed definition of bona fide employee and the reporting of payments received by a filer in union-leave or no-docking situations. One commenter maintained that any payments made by an employer as part of no-docking or union-leave arrangements could result in union officials agreeing to trade off contract provisions that might benefit the entire bargaining unit in exchange for privileges that would benefit only union officials. Another commenter stated that union members may be unaware of such payments. His statement was based on his knowledge that one of his union's officers received payment from the employer for union-related work and that such payment was not provided for in the collective bargaining agreement. He stated that other members of his union did not know that the official received these payments from the employer.

A large majority of the comments argued in favor of retaining the no-docking and union-leave exception. One commenter argued that the Department was abandoning a "long-standing position without adequate justification." This commenter cited a lack of statutory authority or legislative history of Congressional intent to require union officials to report such payments, adding that any benefit from such disclosure was outweighed by the increased burden on filers. One commenter cited the Senate subcommittee hearings on the LMRDA to support its position that bargained no-docking and union-leave provisions

were "not forbidden by the AFL–CIO Code of ethical practices." *Hearings on Union Financial and Administrative Practices and Procedures before the Subcommittee on Labor and Public Welfare* (1958) ("*1958 Senate Hearings*"), at 349. Many of these commenters stressed the "long-standing nature" of such practices by employers, and they particularly emphasized how "commonplace" it is to find these provisions in collective bargaining agreements. One commenter asserted that at the time the LMRDA was enacted, just over half of all collective bargaining agreements involving manufacturers contained no-docking provisions. Several comments focused upon the Labor Management Relations Act and its interaction with the LMRDA, and argued that national labor policy is to encourage collective bargaining and a "productive and harmonious workplace." They noted that no-docking and union-leave provisions have been found lawful by the courts when they are part of a collective bargaining agreement. Some commenters maintained that sections 202(a)(1) and 202(a)(5) are parallel to section 302 of the Labor Management Relations Act because each is concerned with the same kind of employer payments to union officials. They further argued that because section 302 has been interpreted by the courts to provide that "payments pursuant to union-leave or no-docking arrangements are payments 'by reason of' an officer or employee's service as an employee of an employer," sections 202(a)(1) and 202(a)(5) should be similarly interpreted to allow for the time union officers spend on union-related work to be considered the work of bona fide employees. *See Caterpillar, Inc.,* 107 F.3d at 1052.

Another commenter suggested that work performed under no-docking and union-leave scenarios is indirectly, if not directly, performed for the employer, and further stated that such pay by an employer is analogous to other employee benefits such as sick leave, military leave, jury leave, and similar fringe benefits. Many commentators argued that union-leave, no-docking, and similar payments are usually made under the terms of a collective bargaining agreement and that such payments are usually tied to the same rate of pay that the union representative would receive under the agreement for time worked at his or her trade. One commentator argued, in effect, that there was no conflict because the union would pay for the representative's time if it was not provided for under the parties'

negotiated agreement. Many argued that there is nothing private or secretive about such payments because the terms of the payments are disclosed by reading the negotiated agreement and that union members know that their representatives are paid for the time involved in contract administration. Many commenters explained that union stewards and other union representatives perform valuable tasks for the union and the employer; they expressed the concern that by imposing a reporting obligation on such payments future attempts to establish or continue these roles would "be chilled" which, in turn, could lead to "a breakdown in labor-management relations." A few commenters were concerned that if the Department's proposal was adopted employees would be less likely to volunteer for such positions and that union officials would be less likely to engage in workplace activities that are mutually beneficial to employers and unions.

Some comments suggested that requiring reporting of payments included in collective bargaining agreements would burden employers. In this regard, a commenter stated that if the Department's proposal is adopted in the final rule, unions will "inevitably want to negotiate a practice pursuant to which employers track and code any no-docking time on pay records of union officers and employees." Another commented that the filing of "numerous pointless reports" would defeat the purpose of uncovering conflicts of interest.

Two commenters offered possible alternative arrangements to the existing exception. One recommended that if the Department established a reporting obligation it should not require reports for activities that are less than two hours in length. This commenter explained that thirty minutes or less is usually required to resolve a question under a parties' agreement and that meetings only rarely extend beyond two hours. By modifying the proposal in this way, it argued, the reporting burden would be minimal. The second commenter recommended that no reports be required of any payments unless they totaled $10,000 per year, an amount, it suggested, approximates about one-quarter of a union steward's annual pay.

The LMRDA does not specifically address either the legality of payments made under union-leave or no-docking arrangements or the obligation, if any, for union officials to report such payments under section 202 of the Act. None of the commenters have identified any legislative history that would shed any light on this specific question, and

the Department's own research has uncovered none. As noted in the comments, the practice whereby a union official employed by an employer would receive his or her regular compensation while engaged in contract administration on behalf of the union was commonplace at the time the LMRDA was enacted. Contrary to the view of some that the absence of any discussion in the legislative history about this common practice evinces an intention to foreclose the reporting of such payments, the Department believes that this silence suggests that Congress simply did not consider such practices to be prohibited under the LMRDA or the Labor Management Relations Act and it did not express a view one way or another on the question of reportability. Moreover, the logic of the "intention by silence" argument would require the exclusion of a myriad of payments and other financial benefits received by union officials, such as "featherbedding" or "no show" payments, that were not explicitly identified by the language of section 202 or its legislative history, notwithstanding their inclusion under any reasonable reading of the section's language.

The Department has reviewed the case law that has developed from employer challenges to the legality of employer payments to union officials for work performed on the union's behalf. Most courts that have considered the question have found that such payments are not subject to criminal sanctions. For example, one court has stated that: "we see nothing in the language or logic of section 302(c)(1) [of the Labor Management Relations Act] to suggest that Congress did not intend to allow an employer to grant a bona fide employee who is a union official paid time off in order that he may attend to union duties." *BASF Wyandotte Corp.* v. *Local 237, International Chemical Workers Union, Local 227,* 791 F.2d 1046, 1050 (2d Cir. 1986). *See also NLRB* v. *BASF Wyandotte Corp.,* 798 F.2d 849 (5th Cir. 1986) *quoting* H.R.Rep. No. 245, 80th Cong., 1st Sess. 28–29 (1947), "At the time of enactment of § 302, Congress was well aware that "[e]mployers generally * * * allow representatives of the union, without losing pay, to confer not only with the employer but as well with employees, and to transact other union business in the plant." *See Caterpillar, Inc.* v. *United Auto Workers,* 107 F.3d 1052, 1056 (3d Cir. 1997) ("By paying production workers for the part-time hours when they leave their regular duties, the company is paying for

services not actually rendered for it, since those employees are already receiving their regular hourly wages and benefits for their production line work. Yet, no-docking arrangements have been consistently upheld by the courts as not in violation of § 302"). *See also Herrera* v. *United Auto Workers,* 73 F.3d 1056 (10th Cir. 1996) (adopting the reasoning of *Herrera* v. *United Auto Workers,* 858 F. Supp. 1529, 1546 (D. Kan. 1994)); *NLRB* v. *BASF Wyandotte Corp.,* 798 at 855–57. At the same time, however, the courts have signaled that they may be less inclined to treat payments for union-leave as beyond criminal sanction. *See Toth* v. *USX Corp.,* 883 F.2d 1297, 1305; *NLRB* v. *BASF Wyandotte Corp.,* 798 F.2d at 856 n. 4; *BASF Wyandotte Corp.* v. *Local 227,* 791 F.2d at 1050. None of the cases, however, address the different, but immediate, question of whether such payments, without regard to their lawfulness, should be excepted from reporting under section 202 of the Act.

The Department believes it significant that Congress in enacting the LMRDA uses the term "bona fide employee" only in section 202. Elsewhere it simply uses the term "employee" to designate a duty or obligation. See, *e.g.,* section 203(a), 203(e), section 502(a), section 503, section 609. Thus, the Department concludes that Congress intended to limit the exception to individuals who, in fact, are receiving payment for activities performed on the payer-employer's behalf. The Department's reading also is consistent with the meaning generally given "employee" under the common law, where "control" over an individual's work is the essential component of this status. *See, e.g., Nationwide Mut. Ins. Co.* v. *Darden,* 503 U.S. 318, 322–24 (1992).

The position adopted by the Department better comports with the language of the statute, and its inferred intended application, as discussed above, than an alternative reading that would interpret the term "bona fide employee" to include payments made by an employer for work performed on behalf of the union. Members have an interest in knowing the amount paid to union officers or employees by the employer for time spent on union business. This information would be significant for members in assessing the effectiveness of union officers and employees and in evaluating candidates for union office. For example, during collective bargaining negotiations, an official who enjoys union-leave or no-docking payments may agree, or feel pressure to agree, to reduced benefits for employees in exchange for increases in his or her employer payments as a

union representative. Similarly, where the continuation of the no-docking or union-leave practice in the agreement becomes a possible issue in negotiations, the official might be motivated, for personal reasons and contrary to the union's best interest, to maintain what the official views as a meaningful and beneficial diversion from work at his or her trade. It also is conceivable that a union official may feel pressure to forego the zealous pursuit of a grievance on behalf of a union member for fear of alienating the employer and jeopardizing the continued availability of these payments. In such instances, the union official's personal financial interests pose a clear conflict with the official's duty to the union and its members.

The Department received a number of comments indicating that union members already know that some of their union officials are paid by their employer for union-related activities. At the same time, other comments indicated that such information is not as common or as complete as suggested. Other comments received by the Department indicate that some payments occur without members' knowledge and that members have incomplete information about the amount of such payments. The Department agrees that many union members are aware that some of their officials receive employer payments for union-related activities, especially where such payments are expressly provided for in a collective bargaining agreement, but it seems doubtful that such members are aware of the magnitude of such payments and other members are likely unaware that this practice exists. As noted by one commenter, it is unlikely that members will be aware of such payments where the collective bargaining agreement is silent about the practice Reporting such payments will allow union members to assess whether this arrangement could tempt a union official to put his personal interests in maintaining the arrangement above his or her duty to the union. A union official may well prefer to spend his or her time engaged in contract administration duties than, for example, performing manual work on a construction site or the shop floor, or processing insurance claims.

The Department recognizes that a reporting requirement may impose some burden on union officials and employers that have "union-leave" and "no-docking" practices. The Department acknowledges that payments by employers to union representatives often will benefit both union members and employers. Thus, the Department

has considered carefully the comments suggesting that its reporting proposal would interfere with the effectiveness of such arrangements.

The Department concludes that its proposal will not have a significant effect on labor-management relations practices. No commenter claimed that any single employer, never mind employers generally, authorizes payments to union officials without accounting at least informally for the time expended by such individuals in conducting union business. Employers no doubt have a wide range of practices in tracking such payments, with varying levels of scrutiny, but the rule adopted requires no special procedures or expense, and nothing any more burdensome than keeping a log of the amount of time expended and compensation received while on union business paid by the employer. Moreover, by excepting any reporting where payments approved under a collective bargaining agreement do not exceed payment for over 250 hours, union officials can work for over 30 days with nothing to report. Additionally, the Department finds unpersuasive the comments that a reporting requirement will significantly impede the ability of unions to obtain members willing to perform the jobs of stewards or other union positions in which they receive compensation from their employer for union-related activities. As noted, the Department is not imposing any specific method of recordkeeping or accounting on union officials to comply with the disclosure obligation. Moreover, this practice will supplement the existing obligation of a union to report "lost time payments" it makes to officials and other members, either identified by a particular member (if he or she is paid more than $10,000 per annum by the union) or otherwise in aggregated form. *See* section 201(b)(3).

The Department took into consideration the various concerns about the effect of its proposal in arriving at the reporting threshold of 250 hours per year. Although union officers and employees will need to keep records to determine whether the 250-hour threshold is exceeded, there is no reporting burden for those who do not exceed this threshold. Further, the recordkeeping time needed to determine whether the threshold is exceeded consists of nothing more than keeping track of the time one spends performing union work, and the amount paid, with no need, for example, to consult with third parties or obtain records maintained by others. The threshold of 250 hours per year will help separate

those who perform a significant amount of union work from those who do not. For example, a union officer who spends only four hours per week, or less than an hour per day, on union business would not have to report no-docking payments, because his union activities would correspond to 200 hours per year (subtracting two weeks for vacation), fewer than the 250-hour threshold. On the other hand, a steward, who is also a union officer or employee, who works 2 hours per day on union business must report the payments he or she receives. In a five-day work week this would convert to 10 hours of union work per week and 500 hours per year (subtracting two weeks for vacation). Here, the value of the officer's union-related work exceeds the 250-hour threshold and is reportable. The Department believes this approach to be better than one that would trigger a report if a particular meeting lasted longer than a prescribed amount of time or if an official's pay for union-related activities exceeded a particular dollar value, such as the $10,000 suggested by one commenter. (Based on the commenter's estimate of a typical steward's annual pay, the 250-hour rule requires less reporting than a flat $10,000 threshold.) The former would depend upon establishing an average for the amount of time taken to resolve a particular contract administration issue, a difficult task even if the data necessary to establish such a benchmark existed and an impossible task on the current rulemaking record. The latter would impose a burden on higher paid union officials without distinguishing between the amount of time they perform work for which they were hired and work for the union.

A commenter requested the Department to require union officials to report any "super-seniority" protection they receive by virtue of their union office. Some collective bargaining agreements provide layoff and similar benefits to union officials allowing them to continue on the employer's payroll, ahead of other more senior employees, in order to provide continued representation of union members. The Department believes that this request, in part, is beyond the scope of the Department's proposal, which, by its terms, is only concerned with employer payments for work performed on a union's behalf. Super-seniority, as commonly understood, allows a union official to remain on the employer's payroll for "production purposes," not merely to receive payment for work undertaken on the union's behalf. A union official who receives pay from his

nominal employer for union activities is subject to the general requirements set forth above without regard to the official's super-seniority status.

*H. What Payments and Other Financial Benefits, Received From an Employer or Business Whose Employees Are Not Represented by the Union and Which Does not Conduct Business With the Official's Union, Must Be Reported*

In the NPRM, the Department described section 202(a)(6) as a "catch-all" for interests held in or payments to a union official (or his or her spouse or minor child) by an employer that would not otherwise be reportable under subsections 202(a)(1) through 202(a)(5). 70 FR 51192. Under the proposal, any such interest in or payment by any employer would have to be reported, except for those "payments of the kind referred to in section 302(c) of the Labor Management Relations Act," the exception expressly provided in section 202(a)(6).

The NPRM thus proposed as a general rule that any payments by any employer to any union official would have to be reported except for payments expressly excepted under section 302(c) of the Labor Management Relations Act. A union official would have to report the payment without regard to whether a collective bargaining or other direct relationship existed between the official's union and the employer in question. In addition, the proposal identified some particular payments that would have to be reported: payments not to organize employees, to influence employees in any way with respect to their rights to organize, to take any action with respect to the status of employees or others as members of a labor organization, and to take any action with respect to bargaining or dealing with employers whose employees your organization represents or is actively seeking to represent. See 70 FR 51192.

In the NPRM, the Department invited comments on this proposal as a general matter and more particularly whether section 202(a)(6) limits the reporting obligation to only payments that present an actual conflict of interest, whether such an interpretation is a permissible reading of the statute, and, if so, how the instructions could be written to implement this interpretation, without granting impermissible discretion to the filer to determine which financial matters are reportable. The Department also requested comments regarding the reporting of ordinary payments of wages and salaries of the spouse and/or minor children of the officer/employee because section 202(a)(6) could be read

to require a union official to report all employment compensation paid by any employer to his or her spouse or minor child.

After its review of the comments, the Department adopts a rule that is narrower than the proposal. Under today's rule, where a payment or financial interest is not reportable under subsections (a)(1) through (a)(5) of section 202, it is reportable as follows. A report must be filed for any payment of money or other thing of value (including reimbursed expenses) from (1) An employer that is in competition with an employer whose employees the filer's labor organization represents or is actively seeking to represent; (2) an employer that is a trust in which the filer's labor organization is interested as defined in section 3(l) of the LMRDA; (3) an employer that is a non-profit organization that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations, or contributions from the filer's labor organization; (4) an employer that is a labor union that (a) Has employees represented by the filer's union, (b) has employees in the same occupation as those represented by the filer's union; (c) claims jurisdiction over work that is also claimed by the filer's union; (d) is a party to or will be affected by any proceeding in which the filer has voting authority or other ability to influence the outcome of the proceeding; or (e) has made a payment to the filer for the purpose of influencing the outcome of an internal union election; or (5) an employer whose interests are in actual or potential conflict with the interests of the filer's union or the filer's duties to his or her union. This rule recognizes that it is impossible to specifically identify all potential conflict-of-interest payments.

Today's rule also adopts the rule set forth in the NPRM and the instructions to the old Form LM–30, at Part C, requiring a report for any payment from any employer or a labor relations consultant to any union official for the following purposes:

• Not to organize employees;
• To influence employees in any way with respect to their rights to organize;
• To take any action with respect to the status of employees or others as members of a labor organization;
• To take any action with respect to bargaining or dealing with employers whose employees your organization represents or is actively seeking to represent.

Today's rule adds to this list the following: "To influence the outcome of an internal union election."

The discussion below addresses the principal comments submitted on this issue and the Department's response to those comments.

No comments were received on the Department's proposal to require reporting in the circumstances identified in the bulleted points above. As noted, these situations are included in the instructions to the old form and are retained. The additional point requiring disclosure where a union official receives a payment "to influence the outcome of an internal union election" has been added to clarify a point already encompassed by "take any action with respect to the status of employees * * * as members of a labor organization."

Two commenters supported an expansive reading of section 202(a)(6) to require a union official to report any and all interests in or payments from any employer. They argued that only by strictly limiting exceptions could the Department achieve the Act's goal of full disclosure. A third commenter asserted that only an expansive reading of section 202(a)(6) would provide union members and the public with the information necessary for them to determine whether an interest in or payment by an employer could pose a conflict of interest. This commenter stated that Congress did not intend section 202(a)(6) to be given such a limited reading and that even if such a gloss was added to the statutory language filers would likely be unable to "honestly, fairly, and accurately" determine whether a conflict exists.

Several commenters expressed a contrary point of view. They asserted that unless section 202(a)(6) was narrowly applied, the Department would be creating a "general reporting" mandate, something that Congress intended to avoid in crafting section 202 of the Act. As stated in one comment (citing to *Senate Report*, at 15, *reprinted in 1 Leg. History*, at 411): "The bill requires only the disclosure of conflicts as defined therein. The other investments of union officials and their sources of income are left private because they are not matters of public concern." The same commenter saw evidence of a narrow construction from a statement in the *House Report* that section 202(a)(6) was intended to reach both "the union official who may receive a payment from an employer not to organize the employees," *and* payments that may conflict with the official's "fiduciary duties as a worker's representative." Other commenters relied on statements by Senator Goldwater as support for a narrow reading of section 202(a)(6). See 105

Cong. Rec. A5812 (daily ed. Oct. 2, 1959), *reprinted in 2 Leg. History,* at 1846) (the reporting requirements were directed at those transactions "which would constitute a conflict of interest," such as "holdings or interest in or the receipt of economic benefits from employers who deal or might deal with such union official's union").

One commenter cited to testimony by Professor Archibald Cox before the Senate subcommittee that was considering this legislation: "The bill is narrowly drawn to meet a specific evil. It requires only the disclosure of conflicts of interest. The other investments of union officials and their other sources of income are left private because they are not matters of public concern." *See Senate Report,* at 15, *reprinted in 1 Leg. History,* at 411. Cox was a Harvard law professor who played a pivotal role in drafting the legislation that ultimately became the LMRDA. Professor Cox also noted that the Kennedy bill that presaged the LMRDA was based, in part, upon the Ethical Practices Code formulated by the AFL–CIO. Professor Cox stated that an officer who followed this Code would have "virtually nothing to disclose to the public." *Hearings on S. 505 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare* (1959) (*"1959 Senate Hearings"*), at 123.

A few commenters conceded that the statute does not refer to "conflicts of interest," but noted that forty years of Department enforcement have limited this section to conflict of interest situations. In this connection, they cited *LMRDA Manual* § 248.005 that states, in part: "[Section] 202(a)(6) is designed for those situations which pose conflict of interest problems which are not covered in the previous five sections of 202." Other commenters argued that the inclusion of "labor relations consultant" and the reference to section 302(c) of the Labor Management Relations Act evince an intention to tie the reporting obligation to matters that directly involve labor-management activities. Two comments expressed opposition to the reporting of ordinary payments of wages and salaries to the spouse and/or minor children of the officer/employee.

The Department is persuaded that section 202(a)(6) is best read to require reporting by union officials only where such interests in or payments by employers have the evident potential to pose a conflict between the official's own financial interests and the official's duty to his or her union and which would not otherwise be captured by the other provisions of section 202(a). While the language of the statute can be read more broadly, the Department believes

that a better reading is one which avoids redundant reporting of matters already included in the previous five subsections but ensures that all significant transactions and other payments to the official, his or her spouse, or minor children that may impact upon the responsibilities of a union official to the union he or she represents are reported. The Department believes that its construction of section 202(a)(6) hews to the accepted premise that Congress did not intend that union officials would have to disclose virtually all their financial affairs, while also ensuring that members receive information about situations other than those identified in sections 202(a)(1) through 202(a)(5) that may pose potential conflicts of interest for union officials. The Department's construction reasonably targets employers that could influence the conduct of union officers and employees and requires the disclosure of an official's financial information only in those situations.

Four of the first five subsections of section 202(a) have as their focus transactions and interests, on the one hand, between a union official (or indirectly through his or her spouse or minor child) and, on the other, the official's own union or an employer whose employees the union represents or seeks to represent. The other subsection (section 202(a)(3)) has a similar focus, but requires reporting on interests and payments involving a business that conducts a substantial part of its business with an employer whose employees the union represents or seeks to represent.

The Department believes that the focus of these provisions is instructive in discerning the scope of the reporting obligation encapsulated by section 202(a)(6). In each instance, the object of the reporting is the official's union status and an employer whose employees the union represents or seeks to represent. From this, the Department infers that section 202(a)(6) also has as its object the relationship between the official's union and a particular employer that could pose a conflict between the official's own personal interests and the obligation his or her union holds to employees it represents or is actively seeking to represent, or who provide a suitable target for representation. Thus, from this vantage section 202(a)(6) can be seen to target payments by or interests held in an employer only when the employer has a direct interest in the relationship between the official's union and an employer whose employees the union represents or would seek to represent. And by its terms, section 202(a)(6) only

captures payments by "employers." Thus, the Department cannot require a union official to report payments under section 202(a)(6) from an individual or an entity that is not an "employer."

A relationship between, on the one hand, a union official and, on the other hand, a section 3(l) trust, labor organization, and not-for-profit organization, including charities, along with "competitors" to employers whose employees the union represents or would seek to represent, may trigger a reporting obligation under today's rule. These entities usually are "employers," but sometimes not. A union official is under no obligation to report these payments unless they are received from an employer. As noted, section 202(a)(6) excepts "payments of the kinds referred to in section 302(c) of the Labor Management Relations Act." These payments notably include payments received as compensation for services as a current or former employee of the employer making the payment and *as a general rule* payments made to or received from a trust fund set up for the sole and exclusive benefit of employees and their dependents. *See* sections 302(c)(1) and (5) (note that the latter contains several provisions that could affect reportability in some specific circumstances). As implied by the section 302(c) proviso to section 202(a)(6), Congress presumed that a payment that arises from a bona fide employment relationship between an employer and its employee typically will be above board with little potential to pose a conflict between the union official's personal interests and the official's duty to his or her union. For the same reasons, a union official is not required under today's rule to report payments received by the official's spouse or minor child as regular compensation from their employer or as a benefit under the arrangements permitted under section 302(c).

Thus, under this interpretation of section 202(a)(6), a union official would have to report a payment received from an employer that competes with a company whose employees are represented by the official's union unless it was received by the official as regular compensation for his current or past employment. For example, if a union official receives a benefit such as a paid vacation or a gift of golf clubs from an employer that competes with an employer whose employees the official's union represents or is actively seeking to represent, the official must report the benefit. In this example, the union official would have to disclose the gift, even if the official is an employee of the donor, except in the unlikely event that

such benefit is part of the official's regular compensation as an employee of the donor. In this situation, the union official faces an obvious potential conflict between his personal finances and the duties he or she owes to the union and its members. Where, for example, the union's negotiations will set the going wage rate for particular work within the relevant market, an official may be more attuned to concerns about rising labor costs if he or she is receiving payments from a company whose operations are less efficient than those of the represented employer. Similarly, a union official may be less vigilant in challenging a represented employer's decision to withdraw employer-paid dental coverage if he or she holds an interest in or receives payments from a vendor that would provide alternative coverage sponsored by the official's union.

Similarly, a union official must report a payment he or she receives from a trust that is an employer unless it is a "payment[ ] of the kind referred to in section 302(c) of the Labor Management Relations Act." As just discussed, a union official will not have to report compensation received as an employee of a trust or as a general rule payments received as a beneficiary of the trust. Any "special payments" or gifts, however, will have to be reported unless they are insubstantial as defined in today's rule.

Under today's rule, a union official will have to report a payment or other financial interest he or she receives from a not-for-profit employer that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations, or contributions from the official's union. The potential conflict arises because such a payment could influence the official's activities in approving or overseeing the union's contribution to the charity.

The remaining situations for which a report will be required relating to an employer (other than one whose relationship is described by sections 202(a)(1) through 202(a)(5)) involve payments received by a union official from a union-employer (other than his or her own) where the official's personal financial situation poses a plain conflict with his or her duties to the union in which the official serves as an officer or employee. Payments must be reported where the payment received by the union official is made by a union-employer that

• Has employees represented by the official's union, e.g., the official's union represents the support and professional staff at the headquarters of a national or

international union, or it actively seeks to represent;

• Has employees in the same occupation as those represented by the official's union;

• Claims jurisdiction over work that is also claimed by the official's union;

• Is a party to or will be affected by any proceeding in which the official has voting authority or other ability to influence the outcome of the proceeding;

• Has made the payment to the filer for the purpose of influencing the outcome of an internal union election.

In each of these situations, a payment could serve as an inducement to receive favorable treatment from a union whose interests are clearly adverse to the official's own union—either in their labor-management relationship, as actual or potential competitors for the same members or work for such members, or actual or potential protagonists on disputes or other inter-union matters. In the first situation, any payment could serve as an inducement to agree to lower negotiated wages for the members of the official's own union. In the second and third situations, the two unions are "competitors" for the same or potential members and the work they perform, thus placing them in an adversarial position. In the fourth situation, the payment could reflect an inducement for favorable treatment in the proceeding at the expense of the official's own union that may have an interest adverse to the party making the payment. In the last situation, the union official, either directly or indirectly, has received a personal benefit (gaining money to advance the official's own political agenda within his or her own organization) that could serve as an inducement to advance the interests of the party making the payment at the expense of the interests of the official's own union.

The Department has attempted to clarify the form by describing these situations that present actual or potential conflicts of interest. Union officials who receive payments in these situations can know, without ambiguity, of the need to file Form LM–30. It is impossible, however, to delineate with precision all potential conflict-of-interest payments. For that reason, the Department has chosen to retain its rule that, under section 202(a)(6), all payments from employers whose interests are in actual or potential conflict with the interests of a filer's labor organization or a filer's duties to his or her labor organization must be reported.

## I. When Is a Union "Actively Seeking To Represent" Employees, Thereby Triggering a Union Official's Obligation To Report Payments and Other Financial Benefits Received From the Employer That Is the Subject of the Organizing Drive

The term "actively seeking to represent" appears several times in section 202; this term does not appear elsewhere in the LMRDA. The old instructions do not define this term. In the NPRM, the Department proposed to define "actively seeking to represent" to mean that a labor organization has taken steps during the filer's fiscal year to become the bargaining representative of the employees of an employer, including but not limited to:

• Sending an organizer to an employer's facility;

• Placing an individual in a position as an employee of an employer that is the subject of an organizing drive and paying that individual subsidies to assist in the union's organizing activities;

• Circulating a petition for representation among employees;

• Soliciting employees to sign membership cards;

• Handing out leaflets;

• Picketing; or

• Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of its employees); or otherwise committing labor or financial resources to seek representation of employees working for the employer.

Comments were invited as to the merit and clarity of the listed activities and whether other examples would be helpful. 70 FR 51180. Comments were sought as to whether it is appropriate to trigger the reporting obligation on the decision to organize an employer's workforce distinct from taking the first concrete step to organize. After review and consideration of the comments, the Department has concluded that the definition should be modified to clarify that a report need only be filed when the active steps have occurred during the filer's fiscal year. As discussed below, this clarification partly addresses the concern of some commenters that such reporting may disclose prematurely a union's efforts to organize an employer. The Department has also modified the definition to clarify that leafleting and picketing by a union, though presumptive evidence of actively seeking to represent employees of an employer whose operations are

targeted by the union, will not trigger the reporting obligation with respect to the targeted employer if the union's activity is entirely without any organizational object. Otherwise, the definition of ''actively seeking to represent'' is identical to that proposed.

As noted in the NPRM, the proposed definition, in large part, is based on a statement from the legislative history. *See Senate Report,* at 15, *reprinted in 1 Leg. History,* at 411 (The phrase ''actively seeking to represent'' denotes ''more than that the union hopes some day to become the bargaining representative of a group of employees or claims jurisdiction to organize them. It requires specific organizational activities such as sending organizers into a community, handing out leaflets, picketing, or demanding recognition and bargaining rights''). *House Report,* at 11; *reprinted in 1 Leg. History,* at 769. As noted in the NPRM, the Department believes that the term ''actively seeking to represent'' is intended to distinguish between situations where a union has taken concrete steps to organize and those where the union merely has an interest in organizing employees of the employer in question. For example, a union may wish to represent employees of a certain employer, and may even have finalized an organizing plan, but has not yet begun to implement the plan. The Department explained that in such circumstances the union is not yet actively seeking to represent employees of this employer.

Commenters argued that the Department's proposal would improperly impede a union's organizing efforts. One commenter stated that Congress intended to limit this term to only those instances where the union had instituted some kind of organizational activity, either sending organizers into the plants or picketing or distributing leaflets within the plant. The Department disagrees with the suggestion that its proposal departs from the legislative history. The Department's proposal is consistent with the illustrations provided in the Houses and Senate reports on the LMRDA, as quoted in the NPRM. These reports explicitly recognize that this reporting obligation is not solely triggered by in-plant activity. Among the illustrated situations that would trigger a reporting obligation is where a union ''send[s] organizers out into the community.'' In context, it is plain that this term refers to a community in the sense of the geographic area within which an employer's facilities are located, not a limited application to employees comprising a community delimited by the employer's facilities.

Some commenters expressed concern about the difficulty of applying the general requirement to report payments that arise after a union ''otherwise commits labor or financial resources to seek representation of employees working for a particular employer.'' They also argue that this proviso may go beyond the asserted limitation intended by Congress in describing this aspect of the reporting obligation to ''specific organizational activities.'' The Department recognizes that this factor lacks the specificity of the other factors used to describe the reach of the term ''actively seeking to represent.'' Its wording, however, is deliberate in order to capture the general purpose of the test and reduce any prospect that a filer would read the list of factors as exhaustive. At the same time, this factor was designed to distinguish between general union strategizing or planning, which would not be reportable, and concrete activities that have been directed at a particular employer. In this connection, one commenter raised a concern that the test proposed by the Department failed to clearly indicate whether a decision by the union to undertake organizing activity in the future triggers the reporting obligation or whether the concrete, future action triggers the reporting requirement. The instructions have been clarified to make plain that the former does not trigger the reporting obligation.

Another commenter asserts that the Department should establish ''a bright line rule'' where the Department would define ''actively seeking to represent'' as (1) Having a pending election petition before the NLRB during the reporting period at issue, *or* (2) demanding voluntary recognition from the employer during the reporting period involved. The Department disagrees that the bright line suggested above would be beneficial. The suggested rule is unnecessarily narrow and would fail to effectuate the clearly expressed intention to include other concrete steps that evidence ''actively seeking to represent,'' including leafleting and picketing, as identified in the House and Senate reports discussed in the NPRM.

Commenters suggest that payments and activities relating to ''area standards'' picketing should not be considered as steps taken to actively represent an employer's workers. Instead, these commenters asserted leafleting and picketing often are used in area pay and benefit standards disputes, serving as just a preliminary step to determine whether or not to initiate an organizing campaign. Therefore, according to the commenter, such steps should not trigger a reporting

obligation. The Department believes that there is a reasonable basis for treating leafleting and picketing by a union as evidence that a union is ''actively seeking to represent'' the employees of the targeted employer and for triggering a reporting obligation where there are other indicia of a union's effort to ''actively seeking to represent'' such employees. In this regard, the Department notes that there is no evidence that Congress intended a limited application of the reporting obligation to situations where the leafleting or picketing is solely undertaken for the object of organizing an employer's workforce. Moreover, although the commenter suggests otherwise, it is the Department's view that in many instances informational or standards picketing reflects a union's first concrete steps to organize an employer and, as such, is an action within the intended reach of ''actively seeking to represent.'' At the same time, the Department recognizes that there are instances where such picketing or leafleting is wholly unrelated to organizational or representational objectives. For example, if a union pickets a sporting goods retailer solely for the purpose of alerting the public that the retailer is selling goods that are made by children working in oppressive conditions in violation of accepted international labor standards, the picketing in these circumstances would not meet the ''actively seeking to represent'' standard. The revised Form LM–30 instructions in today's rule alert filers to this distinction.

A commenter endorses the inclusion of ''requesting an employer to enter into a neutrality agreement'' in the proposed definition as a concrete example of ''actively seeking to represent'' an employer's employees. It asserted that neutrality agreements have become the preferred method of organizing employees. No comments were received suggesting that entry into a neutrality agreement does not reflect an active step to represent the employer's employees. Thus, the Department will continue to recognize the execution of such agreements as evidence that a union is actively seeking to represent the employees of the employer with whom the agreement was reached.

Some commenters expressed the concern that exposing a union's use of ''salts'' in an organizing campaign would make the employer aware of the campaign and hinder organizing efforts and might target the official, his or her spouse, or minor child for dismissal by the employer if any of them are working as the ''salt.'' As reflected in the Department's proposal, the term ''salt''

refers to an individual who applies for a position with an employer that is the subject of an organizing drive intending to surreptitiously work on the "inside" in support of the union's organizing activities and as it directs.

The Department recognizes that some organizing activities are initiated without notice to the public or an employer, but there would appear to be few situations, where the disclosure of a reported interest on the Form LM–30 would be the first open acknowledgment of the union's active efforts to represent employees. In response to the concern that the disclosure of a reportable interest would alert an employer to the presence of a "salt" in the employer's workforce, the Department notes that payments from the employer for whom the salt performs the manufacturing or other work for which he was hired are payments to a bona fide employee; as such, these payments would not be reportable. Likewise, any payments by the union to the salt as an employee of the union also would not be reportable on the Form LM–30. The Department recognizes that there may be some instances, however, where an official would have to file a Form LM–30 because of the employment of salts by a particular employer. For example, if a union official owns a cleaning service that does substantial business with a company in which the official's union has placed "salts," the union official would have to file a report, disclosing payments from the company to the official's cleaning service. Although this report if it came to the attention of the target employer would disclose the union's objective to organize its employees, if and when the employer becomes aware of such information, the employer likely would already have learned of the union's campaign. There would ordinarily be a substantial delay between the salt activity and the report's filing. Form LM–30s are filed annually and are due 90 days after the end of the filer's fiscal year. Thus, the definition of actively seeking to represent is not expected to significantly compromise the use of salts in organizing.

The Department acknowledges, however, that the timely submission of the Form LM–30, in some instances, may put at risk the secrecy of a union's organizing campaign and the relationship that gives rise to the reporting obligation. For this reason, the Department has carefully considered whether it would be appropriate to take steps to minimize the risks from such disclosure.

In crafting the Form LM–2, the Department, sensitive to union concerns about the premature disclosure of their organizing tactics, established reporting categories and itemization rules designed to minimize similar risks, while at the same time adhering to the requirements of section 202 of the Act, 29 U.S.C. 431. *See* 68 FR 58395–97. Although, for example, the Department chose to allow the disaggregated reporting of some organizing expenditures, it rejected the option to shield from disclosure all expenditures related to "salts." The Department recognized that section 201(b)(3) expressly provided that unions annually report the "salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer and also to each employee who * * * received more than $10,000 in the aggregate from such labor organization and any other labor organization affiliated with it or with which it is affiliated * * *." 29 U.S.C. 431(b)(3). Thus, as recognized in the preamble to the Form LM–2: "[I]f a "salt" is paid $10,000 or more per year as an employee of the union, the union is obliged by statute to list him by name on the Form LM–2 and to report the amount of his compensation." The statutory language added support to the policy determination in the Form LM–2 context that "salt" information was necessary for union members to be properly informed about their union's finances. In contrast, the same policy reasons did not, in the Department's view, compel that a union itemize organizational expenses (other than these payments to union officials). The Department reasoned that even without such itemization, the particular information would be available to union members upon request pursuant to section 201(c), 29 U.S.C. 431(c). See 68 FR 58397; see also 68 FR 58386–87. Thus, the Department decided to allow Form LM–2 filers the option to report such payments without itemization, recognizing that the information relating to these expenditures would be made available to union members under section 202(c) of the LMRDA.

With regard to the immediate Form LM–30 reporting issue, the Department is guided by the language of section 202(a)(1), (2) & (5) of the LMRDA, requiring union officials to disclose specified conflicts of interest, including "any income or other benefit with monetary value * * * derived * * * from an employer whose employees such labor organization * * * is actively seeking to represent." 29 U.S.C. 432(a)(1), (2) & (5). In the Department's view, this language evinces a particular concern by Congress about conflicts that arise while a union is actively seeking to represent employees. The same concern is the basis for the Department's determination, as a matter of policy, that such payments pose serious questions regarding conflicted loyalties (including the possibility of collusion in some instances). As such this information is particularly important to union members, the Department, and the public. The need for transparency, thus outweighs, in the Department's view, any risk to a union's covert organizing activities by requiring the disclosure of any interests, transactions, and payment that arise while the filer's union is actively seeking to represent the targeted employees. Further, the statute authorizing the Form LM–30, 29 U.S.C. 432, contains no provision that would mitigate the lack of transparency caused by crafting a filing exemption for payments that would disclose the use of salts in organizing. Unlike the statute authorizing the Form LM–2, 29 U.S.C. 431, there is no statutory provision for union members to obtain records from union officers and employees necessary to verify the Form LM–30.

Two commenters argued that the proposed definition poses particular difficulties for a local official who may be unaware of organizing activities undertaken by his or her international union or an international official that is unaware of a local's efforts to organize a particular employer. Similarly, several officers from large construction unions felt that the reporting requirement was too broad since it would be difficult for officers and employees to know about all instances of picketing, billing and other initial organizing efforts that go on in a single reporting year. The Department recognizes that the expanded scope of reporting may pose some difficulties for particular union officials. In consideration of this concern, as reflected in the comments summarized above, the Department has narrowed the scope of the reporting obligation for local and intermediate officers from that proposed in the NPRM. They do not have to report on matters affecting higher levels within their union. Officers of a national or international union, however, remain responsible for reporting activities affected by picketing or leafleting by subordinate units of their organization. Further, union officers and employees voluntarily receive reportable payments from or hold reportable interests in employers. The union officer or employee is perfectly free to refrain from taking such payments or holding such interests. If there is a fear that an organizing campaign could possibly be

exposed by filing a Form LM–30 the union officer or employees does not have to take the payment or hold the reportable interest.

One commenter recommended that the Department clarify that payments from employers not to organize an employer, *i.e.*, attempts at "labor peace," should be reported. Another suggested that neutrality agreements "are especially ripe for sweetheart deals" where union officers and union employees can benefit at the expense of bargaining unit employees as, without reporting requirements for these instances, "it is nearly impossible" for workers to learn what gifts an employer has given a union or the union's officials during an organizing drive. Apart from the asserted vulnerability of neutrality agreements to manipulation by employers and union officials, these commenters express a concern oft repeated in the comments that union officials should be required to report all payments they receive from employers. As discussed herein, Congress did not intend to impose such a sweeping obligation. Moreover, the Department is confident that today's final rule requires the disclosure of any payments that would impede the collective bargaining or internal union rights of a union's members.

*J. How Union Officials Will Determine Whether an Entity From Which They Receive a Payment or Other Financial Benefit Does a "A Substantial Part" of its Business With an Employer Whose Employees Are Represented by the Official's Union or the Union It Is Actively Seeking To Represent*

Section 202(a)(3) requires union officials to report any interests in and payments from, "any business a *substantial part* of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent" (emphasis added). The old rule does not define "substantial part." The Department proposed to define this term as 5% or more of the business's annual receipts. The Department requested comments on various aspects of this proposal, including whether a percentage threshold should be imposed, whether the percentage threshold should be higher or lower than 5%, whether a percentage of receipts is the appropriate consideration, and whether union officials with holdings in, or income from, a business would be able to determine the percentage of the business's income that comes from

dealings with the employer. 70 FR 51186.

The Department did not receive many comments on this proposal. Most of the comments, as discussed below, either opposed the quantification of "substantial" or suggested that it be set at an amount higher than 5%. After review of the comments, the Department has determined that 10% or more of a business's annual receipts will be considered "a substantial part" of its business.

Two commenters recommended that the Department not define "substantial part" in quantitative terms. A labor educator stated that his study participants characterized the 5% threshold as too low; he also stated that the participants were concerned about the potential difficulty of obtaining information about the percentage of business a vendor conducts with a particular employer. Another commenter expressed the same concern, noting that information about a vendor's receipts is generally not publicly available and employers would be reluctant to provide such confidential information. The same commenter expressed the view that a 5% threshold likely would be too low for a union officer to be aware of a vendor-employer relationship that required reporting. Two commenters suggested that that the Department should define "substantial part" as a "sufficient magnitude of business that its loss would materially affect the financial well-being of the business enterprise in question." While this statement may be helpful as a capsule view of the purpose underlying this particular reporting obligation, the statement does not provide filers a ready gauge to determine when a report must be filed. Further, such an approach would make relevant facts that would be difficult for union officials to ascertain. For a precarious business with overwhelming debt to service, the loss of 2% of revenue could be devastating. A different business, in an environment in which demand outstrips its production capacity, the loss of clients constituting a much higher percentage of its business may not be as much of a concern. It is difficult to imagine how a union official could learn the facts necessary to determine whether the loss of a client would materially affect the business enterprise. Thus, in the Department's view, the questions posed by its proposal are (1) What volume of business, expressed as a percentage of the vendor's annual receipts, is necessary to achieve the proper balance between insubstantial dealings and those that pose a risk of a conflict of interest, and thus, trigger the reporting

obligation; and (2) whether a filer will be able, without undue burden, to obtain information needed to make the threshold determination.

In the NPRM, the Department explained that "substantial part," as used in section 202(a)(3) and the instructions, refers to the magnitude of the business transacted between any business in which a union official holds an interest or receives payment from (referred to herein as "the vendor") and the employer whose employees the filer's labor organization represents or is actively seeking to represent, as a percentage of all business transacted by the business. 70 FR 51186. The purpose of the "substantial part" language is to relieve union officials from having to report income or transactions that do not have potential conflict-of-interest implications. In the NPRM, the Department expressed its view that an official who has an interest in, or receives income from, a vendor that receives 5% or more of its income from the employer of the union members may well face a conflict. The Department explained that a business with 5% of its receipts from a single client would have the opportunity and inclination to make demands or offer inducements to retain that business. In negotiations with the union, the employer could use its relationship with the business as a bargaining tool, either threatening to end the relationship or promising to provide additional business opportunities.

The Department is not persuaded that there is any benefit in leaving the term "substantial part" undefined. The Department acknowledges that, in other contexts, statutes and regulations leave "substantial" undefined or use qualitative factors to give content to the term, *e.g.*, 18 U.S.C. 1093 (defining substantial as "such numerical significance," the loss of which would destroy the "group as a viable entity"). For reporting purposes, however, the utility of a less subjective approach is obvious. A definition that pegs "substantial" to the volume of business conducted by a vendor with a particular entity as a percentage of all business provides a ready, easy to understand gauge to determine a union official's reporting obligation.

One commenter asserted that the 5% threshold represents a significant departure from the Department's earlier interpretation of "substantial part." In support of this assertion, the commenter cited to a provision in the LMRDA Interpretative Manual (*"LMRDA Manual"*), which provides as follows:

245.200  Substantiality of Dealing

Union Officers A and B of a local union are co-owners of a building corporation. The corporation, through intermediaries who are regular meat wholesalers, sold meat to employers who bargain with the local union. In 1962, some 80% of the corporation's business of approximately $100,000 was with such employers. Both A and B owe reports for the year 1962 * * *, since both the interest and the income are ''derived from any business a *substantial* part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent.''

*LMRDA Manual* § 245.200. (Emphasis in original). The commenter reads this provision to establish 80% as the threshold for reporting about a union official's interest in or payments from a vendor. He suggested that the Department should adopt the same quantitative threshold in the final rule. Noting his concerns about the difficulty a potential filer would face in obtaining information about the measure of a vendor's dealings with a target employer, he further proposed that no report need be filed unless the filer possesses actual knowledge that the vendor performs 80% or more its business for the target employer.

The Department rejects the suggestion that the above-quoted section of the *LMRDA Manual* can be fairly read to establish a reporting threshold. The Manual indicates only that an officer who receives a payment from a business that receives 80% of its receipts from the employer of the union members must file a report. It does not state that receipts of less than 80% from the employer would be unreportable. The 80% figure in the example reflects a rather obvious situation where a substantial business relationship exists thus requiring a report. The illustration provides no assistance in determining the minimum volume of business that would trigger the reporting obligation. Similarly, the Department finds no merit to the suggestion that a reporting obligation attaches only where a union official possesses actual knowledge that the vendor's volume of business with a relevant employer was greater than the reporting threshold. The folly of this approach is obvious where the reporting threshold is set at 80%; it would allow a union official to avoid a conspicuous reporting obligation and provide an incentive for a union official to remain willfully ignorant of the business relationship between a vendor in which he or she holds an interest or from which he or she receives a payment and an employer whose employees the

official's union represents or is actively seeking to represent.

The Department does, however, accept the proposition that increasing the threshold decreases the burden on filers by reducing the number of reportable transactions. For that reason, the Department is persuaded that an upward adjustment is appropriate. As noted, the purposes served by section 202(a)(3) require a reporting threshold that balances the burden associated with reporting insubstantial matters and the benefit served by the disclosure of any potential conflicts between a union official's personal finances and the duties owed by him or her to the union and its members. To the extent there is some uncertainty as to where best to strike the balance, the Department believes that a lower threshold best ensures that disclosure will serve a prophylactic purpose. Based on the comments and a reassessment of the potential difficulties posed to filers in obtaining information from a vendor, the Department has decided to double the reporting threshold to 10%. The Department believes that setting the threshold level at 10% will achieve the balance required by the statute.

The Department recognizes that some union officials with a reportable interest or payment may encounter difficulty in obtaining information about the amount of business a vendor conducts with the employer whose employees are represented by the official's union. The Department, however, believes that the burden is overstated, especially where the union official holds an ownership or operating interest in the vendor. In those instances, there should be little trouble in obtaining the needed information. In instances where the union official is an employee of the vendor or receives an occasional payment, some problems are more likely to arise. In such instances, the union official should request such information in writing from the vendor. If the vendor refuses to provide the information, the official should contact the Department for assistance in obtaining the information. In the meanwhile, the union official should make a good faith estimate, based on the information reasonably available, whether the 10% threshold has been met. If such estimate exceeds the 10% threshold, then the union official should file the report and explain that the vendor failed to provide requested information. If the estimate yields a figure less than 10%, no report is required, but the union official should retain the written request for information he or she presented to the vendor and any work sheet used to arrive at the less than 10% figure. If an

investigation is conducted, there is no risk of prosecution absent unusual circumstances calling into doubt the legitimacy of the good faith estimate.

*K. Why Payments and Other Financial Benefits Received From Section 3(l) Trusts and Service Providers to Such Trusts Must be Reported*

Numerous unions, law firms, and organizations representing financial service providers submitted comments urging the Department to modify or eliminate aspects of its proposed rule as it would affect a union official's obligation to report payments and other financial benefits received from section 3(l) trusts. In the NPRM, the Department stated that it had received compliance inquiries about whether payments from a union to a trust in which the union is interested constitute ''dealing[s]'' between the trust and the union under section 202(a)(4).

In the NPRM, the Department also invited comment on whether trusts set up by unions to provide benefits to their members, such as pension or welfare plans, constitute ''employers'' under section 202(a)(6) or ''business[es]'' under section 202(a)(3) and section 202(a)(4) so that payments from such organizations to union officials would be reportable. 70 FR 51182. Several commenters expressed the view that the Department was improperly extending the reporting obligation to payments received from service providers to trusts. In a similar vein, several commenters suggested that the Department was improperly requiring reports by labor union officials serving as employees or representatives of trusts on matters for which reporting already is required by ERISA. As part of their concerns, several commenters objected to the proposal on procedural grounds. In essence, they asserted that service providers and other potential Form LM–10 filers will be bound by the Department's final Form LM–30 rule, denying them the full opportunity for notice and comment.

A summary of the principal comments on these various points concerning a union official's obligation to report payments and other financial benefits received from section 3(l) trusts and the interplay between ERISA and the LMRDA and the Department's response to these comments follows. The Department first briefly addresses the contention that the Department's proposal is procedurally flawed because it prescribes rules that must be followed by employers under section 203 of the Act without providing that community the full opportunity for notice and comment. The Department next

discusses the concern that requiring union officials to report their interests in or payments by trusts as employers or vendors providing services to those trusts represents a departure from the Department's asserted longstanding policy excepting reports about payments by trusts and their vendors and the contention that the Department's position is contrary to ERISA or, at the least, impedes that Act's proper administration. The Department, in the final paragraphs of this section, discusses the issue whether trusts and other not-for-profit entities constitute businesses, followed by the separate, yet related question, whether trusts and other not-for-profit entities constitute ''employers.''

1. Alleged Procedural Shortcoming

Today's rule is specific to Form LM–30 filers. It does not amend or modify in any way the Department's current rules specific to the Form LM–10. Any interpretation or guidance issued on the Form LM–10 remains in effect unless later changed by the Department. Any interpretation, guidance or amendment to Form LM–10 will conform to legal requirements appropriate to the nature of any such changes, including notice and comment rulemaking where required. Thus, the Department finds that any concerns that the Department's proposal is procedurally flawed are misplaced.

2. Routine Exceptions

Many commenters urged the Department to not ''extend'' the reporting requirements to include payments to union officials by trusts or their service providers. Several asserted that the Department had never required union officials (or employers under Form LM–10) to report such payments. Numerous commenters objected generally to any reporting of gifts associated with the routine conduct of business, especially in connection with marketing by service providers to gain and maintain business with union-related trusts. Some objected generally, on the ground that Congress never intended that routine business expenses would be the subject of reporting. Some commenters offered a variation of this argument, asserting that Congress intended a general reporting exception for payments made in the regular course of business. A common theme in the comments is the claim that the affected community has understood that the LMRDA focuses solely on financial transactions involving unions and employers whose employees are represented by a union or a union has targeted for representation. In their

view, the statute does not impose reporting obligations on financial institutions or service provider activities that have no connection to the union's labor-management relationship. A variant of the theme, unique to financial institutions, is that no reporting obligation exists for union officials who receive payments from financial institutions. Their position is based on the language of section 203, which excepts financial institutions from reporting ''payments or loans'' made to union officials. This issue is discussed below.

The suggestion that the Department is imposing a new reporting obligation on union officials for payments received by them from service providers to trusts is incorrect. A union official's obligation to report such payments has been plainly stated for over forty years in instructions to the Form LM–30. Indeed, the old Form LM–30 includes the explicit statement that ''every [union official] must file a detailed report describing certain financial transactions engaged in, and interests held by, the [official] or his/her spouse or minor child [including] * * * legal and equitable interests in, transactions with, and economic benefits from certain businesses * * * which deal[ ] with the union or a trust in which the [union] is interested.'' Instructions, Part III. The first Form LM–30 promulgated by the Department required filers to disclose ''An interest in or derived income or economic benefit with monetary value from a business * * * any part of which consists of buying from or selling or leasing directly or indirectly to, or otherwise dealing with your labor organization or with *a trust in which your labor organization is interested.*'' *See* BNA, *Daily Labor Report,* No. 192: A–6, E–1 (Oct. 2, 1963). (Emphasis added). Similarly, the *LMRDA Manual* specifically identifies payments from insurance companies to union officials as matters reportable on Form LM–30. As there stated: ''A union officer, who is an employee of an insurance company from which the union welfare fund procures insurance, is required to report that money which he receives as an employee of the insurance company, inasmuch as he derives income from a business which sells to or otherwise deals with a labor organization of which he is an officer.'' *LMRDA Manual* § 246.600.

The commenters cite no authority for their broad claim that the Department's position is a departure from a longstanding policy, nor do they provide a well-reasoned argument for how the statute would permit the Department the discretion to except

from reporting payments from employers and businesses that have such extensive and ongoing activities with unions and section 3(l) trusts. Given the continuity in the Department's interpretation, a more accurate characterization might be the longstanding inattention to reporting such payments received from trusts and their service providers. Many unions and their section 3(l) trusts manage benefit plans for their members, maintaining close business relationships with financial service providers such as insurance companies and investment firms. As discussed in greater detail herein, contemporary business and financial practices increase the prospect that union officials may receive payments from or hold financial interests in these businesses. Given these practices, the Department believes that disclosure is critical to promoting good union governance and fostering ethical behavior. Thus, the Department disagrees, on both legal and policy grounds, with the notion that payments from service providers or financial institutions should be excepted from reporting. Such payments carry with them a particular potential for conflict and as such warrant particular scrutiny by union members and the public.

The asserted historical grounds for excepting payments by service providers and financial institutions from reporting are unpersuasive. The legislative history establishes that Congress intended that union officials report any gifts or payments from employers seeking to profit from their relationship with a union or its officials. Congress understood that the bill that became the LMRDA ''is drawn broadly enough * * * to require disclosure of any personal gain which an officer or employee may be securing at the expense of the union members.'' *Senate. Report, at 15, reprinted in 1 Leg. History,* at 411. As stated by Professor Cox, ''the basic theory [underlying the Act's conflict of interest provisions] is [that all] payments made by employers to labor organizations or union officials are prima facie questionable. Some may be justified. The bill does not forbid the payments. [The bill] simply requires that they be covered by public reports so that the employees affected and the public may know what has occurred.'' *1959 Senate Hearings,* at 127. The legislative history illustrates how Congress believed the LMRDA would operate. The principal focus of the McClellan Committee was on the activities of the Teamsters Union and the conduct of three of its highest ranking officials: Dave Beck, Frank

Brewster, and Jimmy Hoffa. Each official engaged in unlawful activities that could not have been accomplished without the complicity of banks and insurance companies. Banks and insurance companies were used by these officials, often to the mutual benefit of the officials and the commercial entities, to carry out such activities and to otherwise provide unlawful gain to the officials. As explained by Senator Kennedy: "Mr. Hoffa would be required to disclose all of his business dealings with insurance agents handling the union's welfare funds, his private arrangements with employers, his hidden partnerships in business ventures foisted upon his members, and all other possible conflicts of interest." 105 Cong. Rec. S817 (daily ed. Jan. 20, 1959), *reprinted in 2 Leg. History*, at 969.

The AFL–CIO Ethical Practices Codes, which served as the foundation for the LMRDA conflict of interest reporting provisions, contained a specific code for union "health and welfare funds." *See* 105 Cong. Rec.*16379 (daily ed. Sept. 3, 1959) *reprinted in 2 Leg. History*, at 1406–07. It expressly stated: "No union official who already receives full-time pay from his union shall receive fees or salaries of any kind from a fund established for the provision of a health, welfare, and retirement program. Where a salaried union official serves as employee representative or trustee * * * such service * * *should not [be considered] an extra function requiring further compensation from the welfare fund." *2 Leg. History*, at 1406. Of particular import, it states: "No union official, employee, or other person acting as agent or representative of a union, who exercises responsibilities or influence in the administration of welfare programs or in the placement of insurance contracts, should have any compromising personal ties, direct or indirect, with outside agencies such as insurance carriers, brokers, or consultants doing business with the welfare plan. Such ties cannot be reconciled with the duty of a union official to be guided solely by the best interests of the membership in any transaction with such agencies. Any agency official found to have such ties to his own [substantial] personal advantage or to have accepted fees, inducements, benefits, or favors of any kind from any such outside agency, should be removed [from office]." *Id.* Where Congress, in effect, established a disclosure regime in section 202 for matters addressed by the AFL–CIO Ethical Practices Codes, it would make no sense to exclude reports on activities

specifically identified as improper in those codes. Against this backdrop, the argument that the legislative history supports the contention that the Department's view of reporting is both novel and unintended by Congress fails.

While most commenters appeared to recognize the obvious potential of circumvention and evasion of the Act's reporting requirements if union officials did not report any payments they received from trusts, some argued that the relationship between the official's union and the trust did not allow for that possibility. The commenters appear to argue that because the relationship between a section 3(l) trust and a participating union should be symbiotic, there is no conflict of interest presented by such payments and thus no circumvention or evasion is possible. This argument overlooks that the focus of section 202 is conflict between a union official's personal financial interests and the duties he or she owes to the union and its members, one that exists without regard to the often congruent interests of a trust and its participating unions. Moreover, this argument overlooks that the money a participating union pays into a trust, either directly from the union or indirectly by an employer on the union's behalf, is money that otherwise would be maintained in the union's own account and, as such, any proceeds paid to a union official would be disclosed in reports filed by the union. Without requiring a union official to report payments he or she receives from a trust, an official would be able to circumvent and evade the disclosure that would have occurred if the funds had remained in the union's coffers. By requiring a union official to report payments from the trust, the Department is simply "following the money," ensuring that disclosure of such payments cannot be avoided. Further, since the union official's obligation to submit a Form LM–30 overlaps with the congruent responsibility of a union to disclose payments received by the official from a section 3(l) trust if certain conditions are met, the prospect that one party may report the payment increases the risk that a failure by the other party to report the payment will be detected. Thus, the reporting obligation helps check the evasion of reporting under the Act and, in some instances, may deter the primary conduct that would trigger the reporting obligation.

As noted above, some financial institutions have argued that section 203(a)(1) excepts "payments or loans made by any national or State bank, credit union, insurance company,

savings and loan association or other credit institution * * *." These commenters assert that all payments received by union officials from banks, including lunches and dinners to meet with clients, and marketing and promotional expenses incurred to keep or to secure business, among other expenses, are excepted from reporting.

The Department disagrees. Section 203(a)(1) cannot be read as a limitation on a union official's obligation to report interests in or payments from any particular segment of employers. In both sections 202 and 203, Congress set forth specific, distinct rules including distinct exceptions to those rules, particular, on the one hand, to union officials and, on the other hand, to employers. Neither the statute nor its legislative history evinces an intention to create a completely uniform system of reports for all filers, union officials and employers alike, and neither infers that an exception unique to a particular provision was intended as a general exception to other reporting requirements. As discussed herein the Department acknowledges that its interpretation requires union officials to report a loan or payment made by a financial institution, but that the financial institution is not required to file a report. Although generally the Act establishes a reciprocal reporting obligation on union officials and employers—both the payer and the payee report on a covered payment—in this instance, the language of the two sections calls for a different result. Although today's rule does not interpret section 203(a), the Department notes that Congress may have held the belief that banks would be constrained to report these payments under laws regulating financial institutions and wished to avoid redundant reporting. The Department takes no position in today's rule on the separate question as to whether the breadth of the exception provided financial institutions from reporting obligations under section 203 is as expansive as suggested by some commenters.

The *LMRDA Manual* specifically identifies payments from financial institutions to union officials as matters reportable on Form LM–30: "If a credit union grants loans to a labor union, a report would be required from an officer of that labor union who is also an employee of the credit union." *LMRDA Manual* § 246.800. Further, a 1961 "Guide for Employer Reporting" issued by the Department provides the following examples of reportable payments (italics in original):

A. Loans made to union representatives *not employed by you, unless* made in the regular course of business as a bank or other credit institution.

B. Loans to employees, who are also union representatives, on terms more favorable than those available to other employees, *unless* made in the regular course of business as a bank or other credit institution.

C. Loans to labor organizations, *unless* made in the regular course of business as a bank or other credit institution.

Although today's rule does not affect any current reporting obligation of any Form LM–10 filers, the language quoted belies any suggestion that the Department is imposing a novel reporting obligation on Form LM–30 filers by requiring them to report the receipt of such payments.

The LMRDA is a reporting statute directed at unions, union officials, and employers and businesses whose interests intersect with each other's interests; as such, it is obviously not intended to broadly regulate the affairs of financial institutions. The fact that financial institutions are regulated by government agencies other than this Department and that these institutions may be required to disclose information under those laws does not mean that the disclosure purposes of the LMRDA conflict with those laws or that those laws supersede the LMRDA's reporting provisions. The purpose of LMRDA reporting is to give union members information about financial transactions between union officials and employers. Reporting under securities and other laws serves other purposes; while some of these purposes may complement the LMRDA's disclosure provisions, none supplant the purpose of the LMRDA to provide relevant, readily available information to union members, the public, and the Department about potential conflicts between the financial circumstances of a union official, his or her spouse, or minor child and the official's duty to the union and its members.

As noted, many commenters took the tack that even if the Department possessed the authority to require union officials to report payments received from trusts and vendors, it would be bad policy to do so. One commenter opined that the Form LM–30 reporting requirements will deter union trustees from attending educational or other conferences that may be required for the union trustee to properly discharge his or her duties under ERISA's standard of care and to be informed about the services available to the trusts from the financial services community. One commenter points out that "anything that makes it more difficult or risky to

obtain the knowledge and experience needed to be a fiduciary * * * is contrary to the interests of union members.'' Several commenters expressed concern that publishing information for only union officers gives union members the impression they can influence an employee benefits plan's operation as part of the governance of union affairs, which is contrary to ERISA's requirement that a fiduciary act independent of union affairs. Other commenters stated that it was unfair to single out union officials for disclosing payments from a trust since management officials associated with the trust receiving the same payments have no reporting obligation.

In the Department's experience, union members are savvy enough to ascertain whether a union official's payments from or interests in a business pose conflicts of interest and to realize that trustees may need to obtain education and training to properly fulfill their roles as trustees. Thus, the Department believes that the concerns over reporting such matters are overstated and that reporting will not impede trustees in attending educational and training seminars. The Department believes that union members already understand or will understand with minimal explanation that an official's role as a trustee is distinct from his position with the union and requires that the official act in the best interests of the trust and its beneficiaries; as such, the official cannot put his personal political concerns or his union office or employment ahead of his fiduciary obligation to the trust. At the same time, the disclosure of such payments to the union official allows the union's members to determine whether the payments may tempt the official to put his or her own financial interests above the official's duties to the union, duties distinct from those owed by the official to the trust. The Department disagrees that it is unfairly singling out union-appointed trustees for reporting payments while allowing their management counterparts to refrain from doing so. Section 202 extends to reports by union officials, but not to all individuals who have a role in section 3(l) trusts. Thus, the Department is not able to consider such an extension to management trustees, whether or not it might have merit. The Department also believes that union members will understand this principle and not view the act of reporting by union officials as evidence of culpable conduct or the absence of reports by management trustees as proof of conduct beyond reproach. At the same time, however, by

requiring union officials to report such payments, union members may determine for themselves whether some payments are excessive or unnecessary or arise in circumstances where the payments invite scrutiny to determine whether the official's personal benefits from the arrangement have impeded or may impede the official's duty to the union.

One commenter argued that firms are concerned that if Form LM–30 filers must report payments and gifts from vendors to a section 3(l) trust, these filers will demand that the firms assume the burden to keep records of such payments. The Department acknowledges that this may create a customer relations challenge to some vendors, but, just as the decision to make a payment, or accept a payment, is voluntary, so too is any decision by a vendor to keep "gift records" for a union official. The vendor may freely choose to demur from assuming such a burden, just as it may choose to change its practice of making gifts to union officials. The Form LM–30 reporting and recordkeeping obligations remain squarely on the union official who holds an interest or receives a payment for which reporting is required.

One commenter suggests that the Department should change its proposal to include a general exception for reporting payments associated with an *unsuccessful* effort to obtain new or further business. Two commenters would exclude reporting where any payments were made to both union and management appointed trustees. One commenter, acknowledging that marketing benefits were provided by all service providers seeking new business, argues that the Department should provide guidance as to where to draw the line between routine matters and payments intended as bribes.

The commenter who would except from reporting any unsuccessful efforts to garner business by courting a union official acknowledged that union members have a legitimate interest in knowing whether the businesses that are buying from or selling to their union are also engaged in private transactions with union officers or employees. But in his view, where no transaction actually takes place between the business and the union, a union member would have no interest in the payment. In the commenter's view, up until an actual transaction occurs, the business should not be considered to be "dealing with" the labor organization. The logic behind this position is not apparent. Other comments disagree. A commenter explained that such payments to a union official should be reportable to

the extent that the business was "dealing with" the union or employer by attempting to convince the union or employer to enter into commercial relations with a competitor. This view also has support in the legislative history. In an analysis of section 202(a), Senator Goldwater states, "Briefly, what must be reported are holdings of interest in or the receipt of economic benefits from employers who deal *or might deal* with such union official's union." 62 Cong. Rec. 19,759 (1959), *reprinted in* 1 DOL, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959* (emphasis added). Furthermore, to the extent the commenter may be suggesting that many payments would be picked up if a business relationship is later consummated, the commenter fails to recognize that unless payments from potential vendors are reported in the fiscal year in which they occur, a union officer could avoid disclosure by simply accepting payments in one fiscal year and awarding the union business to the vendor in a later year.

One commenter pointed out that the proposed rulemaking has no examples related to trust funds reimbursing union officers. Such examples have been added to the instructions.

### 3. Relationship With Other Statutes

Although the Department notes that it did not receive a comment stating that any of its Form LM–30 proposals conflicts with an obligation under ERISA, many commenters oppose reporting on some or all of the trust-related activities because the same matters are subject to ERISA and other Federal reporting requirements relating to security and business taxes. A typical comment was that ERISA already regulates transactions that would be reported on Form LM–30. This commenter also argued that the IRS already oversees business expenses under the tax laws; it similarly argues that the IRS also oversees payments by tax exempt organizations that are made for improper private benefit. 26 U.S.C. 501(c).

Two commenters submit that the LMRDA was never intended to regulate multiemployer plans. They asserted that the Welfare and Pension Plans Disclosure Act ("WPPDA"), P.L. 85–836 (1958), which predated the LMRDA, was enacted for this purpose. They assert that the WPPDA implemented reporting and disclosure requirements for pension plans similar to the LMRDA's requirements for unions. When WPPDA proved inadequate to regulate trusts, Congress passed ERISA,

which exceeded and expanded WPPDA's requirements.

There is no merit to the implicit claim that ERISA was intended to supplant the LMRDA insofar as payments to union officials are concerned. Section 514 of ERISA states: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States [with exceptions not here pertinent] or any rule or regulation issued under any such law." 29 U.S.C. 1144(d). The WPPDA contained a similar provision, undermining any attempt to use that statute to constrain the Department's authority under the LMRDA. *See* Pub. L. 85–836, § 10(b) (1958) (this act does not exempt any person from any duty under any present or future law affecting the administration of employee welfare or pension benefit plans). In the Department's view, the LMRDA and the ERISA serve complementary purposes, particularly insofar as their disclosure provisions overlap. There also is an evident similarity between the duty union officials owe to their union and the duty trust officials owe to their trust. Today's rule is not intended as an interpretation of ERISA and it should not be construed as such. It does not alter any statutory or regulatory obligations that now exist under that statute.

The Department has determined that Form LM–30 reporting and recordkeeping requirements do not interfere with or unnecessarily duplicate ERISA financial disclosure requirements. Thus, the Department is requiring union officials to report certain payments they receive from trusts, notwithstanding any ERISA reporting requirements that may apply to trusts. On many occasions, the Department has discovered during an audit or investigation that a union officer or employee was engaged in a reportable situation with a trust but had not filed the required Form LM–30 until the Department became involved. For example, the spouse of a union officer owned a company that provided cleaning and maintenance services to the union and its trust. In one year, the company received over $94,000 from the union and the trust. Although this information might or might not be reported on a Form 5500, depending on the surrounding circumstances, this information can be disseminated more readily to union members on the Form LM–30 than through the Form 5500 alone. The Form LM–30, since its inception more than 45 years ago, has been the source for union members to learn of potential conflicts of interest

between union officers and employees and vendors to their union's trusts.

Contrary to an implicit premise underlying many of the comments that the ERISA and the LMRDA are co-extensive insofar as union-related trusts are concerned, ERISA applies to only a subset of the section 3(l) trusts. Some section 3(l) trusts are not covered at all by ERISA. ERISA covers only pension and "employee welfare benefit plans." 29 U.S.C. 1002. While there is considerable overlap between section 3(l) trusts and ERISA "employee welfare benefit plans," some funds in which unions participate fall outside ERISA coverage, including strike funds, recreation plans, hiring hall arrangements, and unfunded scholarship programs. 29 CFR 2510.3–1. Other section 3(l) trusts that are subject to ERISA are not required to file the Form 5500 or file only abbreviated schedules. *See* 29 CFR 2520.104–20 welfare (plans with fewer than 100 participants); 29 CFR 2520.104–26 (unfunded dues financed welfare plans); 29 CFR 2520.104–27 (unfunded dues financed pension plans). *See also* Reporting and Disclosure Guide for Employee Benefit Plans, U.S. Department of Labor (reprinted 2004), available at *http://www.dol.gov/ebsa/pdf/rdguide.pdf.*

The Department received several comments that raise concerns with asserted duplicative reporting that would exist if union officials had to report payments received from trusts or vendors and that the burden to keep track of such payments likely would fall upon the trusts and vendors. Most of the commenters expressing concerns about these matters asserted that party-in-interest transactions (which they argue encompass all potential conflict of interest disclosures that may arise under the LMRDA), are already covered by ERISA reporting and auditing requirements. Some commenters submit that because ERISA identified those transactions which Congress determined were conflicts of interest, ERISA should be the standard against which all transactions involving administered plans are judged.

Among the suggestions on this point, the commenters requested the Department to except union officials from reporting a payment from a trust if the trust files a Form 5500. The commenters appear to argue that no payments associated with a union-related trust covered by ERISA need be reported by Form LM–30 or Form LM–10 filers if the trust files a Form 5500. Two commenters pointed out that, in a prior rulemaking, the Department recognized the merit of Form 5500 for

purposes of trust disclosure. These commenters apparently refer to the Form T–1 rule that was published in 2003 as part of the "Form LM–2 rulemaking." *See* 68 FR 58374, 58524–25 (Oct. 9, 2003). This same exception is contained in the Form T–1 final rule published in the **Federal Register**, at 71 FR 57716 (Sept. 29, 2006). Several commenters recommended as an alternative that the Department expand Schedule C on Form 5500 to list by company all payments, loans, or gratuities from service providers to trustees and add a schedule that lists all trustees who served during the year and their expenses, similar to the Form LM–2.

As noted by many commenters, the Department has previously recognized the merit of filing a timely and complete Form 5500 in lieu of a Form T–1. The Form 5500 as a "surrogate Form T–1," however, only partially overlaps with the Form LM–30, and is therefore not a reliable substitute for the Form LM–30. The alternative suggested also presents problems. Expanding the Form 5500 would require all covered entities, not just those engaged in reportable transactions with labor union officers and employees to shoulder an LMRDA-driven higher reporting burden. The LMRDA addresses disclosure for labor organizations and labor organization officers and employees; it does not impose general disclosure requirements on the larger ERISA reporting universe. As such the Department's efforts here in clarifying the Form LM–30 better fulfill the full reporting mandate of the LMRDA without imposing additional burden on those entities and persons outside the scope of the LMRDA.

Practical concerns also could impede the use of the Form 5500 to capture some of the information subject to today's rule. Form 5500s are not required to be filed until seven months after the close of a plan's fiscal year, and extensions are freely available, and there is a substantial lag time between the submission of a Form 5500 and its availability for public review. Thus, there now exists no way for a union member to timely access such information, unless it is obtained via Form LM–30. By collecting such information pertinent to a section 3(l) trust, including payments by the trust to union officials, and making it available at a single site, however, union members are afforded the means to properly oversee their union's operations and monitor any potential conflicts between an official's personal monetary interests and the official's duty to the union. Moreover, even if these problems could be overcome,

there would be no disclosure relating to those section 3(l) trusts that are not subject to ERISA.

As noted, a few commenters suggested that the purposes served by the reporting requirements for payments made in the routine course of business are already met by the IRS rules on business expenses. The Department disagrees. The IRS rules on "business expenses" are not designed to disclose potential conflicts of interest; section 202 is precisely designed for this purpose. *See* IRS Publication 535. Many of the expenditures that qualify as "business expenses" for IRS purposes would potentially create a conflict of interest for union officers and employees. For instance, entertainment expenses incurred in seeking new business may be deductible in part under IRS rules. Further, the IRS considers certain below market loans and transfers of property as "business expenses." Such a loan or property transfer made to a union officer or employee is exactly the type of payment the LMRDA was designed to disclose. Moreover, the commenters offer no explanation how this approach would benefit union members who typically would never have access to such tax filings or the underlying expense documentation. Without such access, the prophylactic purposes served by disclosure cannot be achieved. As such, the Department rejects this approach.

### 4. Trusts as Employers and Businesses

As noted above, the NPRM sought comment on whether a section 3(l) trust may constitute an "employer" under section 202(a)(6) or a "business" under sections 202(a)(3) and 202(a)(4) so that payments from such organizations to union officials would be reportable. 70 FR 51182. After considering the comments received on this point, the Department has concluded that a section 3(l) trust or other not-for-profit organization with employees must be treated as an "employer" under the Act, but that they should not be treated as a "business" under the Act.

As noted above, commenters were divided on the question whether a trust or other not-for-profit entity, including a labor organization, should be treated as an "employer" for reporting purposes. One commenter argued that trusts should not be regarded as "employers" because Congress only intended reporting to "reach the union officials who may receive payment from an employer not to organize the employees," *citing Senate Report*, at 16. According to the commenter, trust funds in which the union is interested do not fall into this category. Another

commenter argued: "although some large trust funds happen to have employees—many do not—the statute was intended to cover employers whose potential relationship with a union raises the risk of a conflict of interest in some sense relevant to the union's function as a collective bargaining representative." One commenter argued that "while [section 203] is precise in its applicability only to an employer whose employees are either represented by or a target of a union, Congress chose to use the additional terms 'businesses' and 'trust' rather than "employer" in [section 202] dealing with the reporting obligation of a union official. Nothing in the statute reflects a Congressional intent to subsume these broader terms within the subset of employers subject to [section 203]."

Other commenters stated that a trust should not be considered an employer because any union officials involved with such funds do not negotiate with such funds or their representatives, but rather serve as trustees or shared employees in providing benefits or enforcing collective bargaining agreements. Another commenter agreed, noting that any improper payment from a trust to a union officer who is acting as a trustee would be considered a fiduciary breach of the trustee and not a breach of the officer's responsibilities to the union.

Several commenters argued that treating a trust as an employer adds further administrative burdens on trust funds, which are already subject to numerous reporting and regulatory requirements. One commenter pointed out that some Taft-Hartley trusts are self-administered, in which case the trust itself may be an employer, while other trusts employ third-party administrators to administer the trust, denying employer status to the trust. He implicitly suggests that given what he characterizes as an artificial distinction between third-party and self-administered trusts Congress could not have intended that payments by any trust would be covered. This commenter, like several others, further contended that trusts are not "businesses" for purposes of the Act.

The LMRDA expressly defines "employer" in broad terms. Included in that definition, at section 3(e) of the Act, are employers that are "with respect to employees engaged in an industry affecting commerce, *an employer within the meaning of any law of the United States relating to the employment of any employees* or which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or

**36140**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

conditions of work * * *.'' 29 U.S.C. 402(e) (emphasis added). The statute contains no indication that Congress intended a narrower application of that term in any of the Act's provisions. Indeed, the breadth of the term is illustrated not only by the italicized language of section 3(e) but by the careful parsing of the remaining language in the provision to except governmental entities from the Act's application. See 29 U.S.C. 402(e) (the Act's sole exceptions for entities is for the "United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.") For these reasons, the Department is persuaded to give "employer" its full and natural construction, thus bringing within its reach any entity, including any section 3(l) trust and service providers to such trusts, that is an "employer."

Commenters were divided on the question whether trusts and other not-for-profit entities constitute businesses within the meaning of the LMRDA. One commenter noted that leaving trusts outside the reporting requirements would minimize transparency and undermine the intent of the reforms. This commenter alleged that union officials have long utilized "off the books" accounting procedures for these programs. Most commenters, however, asserted that trusts do not constitute "businesses." One commenter argued that interpreting a trust in which a labor organization is interested as a "business" is incongruous with the Department's establishment of a reporting obligation by union officials who hold interests in or receive payments from "businesses that deal with a trust in which the labor organization is interested." In this commenter's view, it would make no sense to consider the trust as a "business" at the same time as payments by either the labor organization or the trust to a union official must be reported by the official. In effect, the commenter argues that the union and the trust operate as one for reporting purposes and thus dealings by the trust with the union cannot be viewed as business dealings for reporting purposes.

Other commenters argued that since trusts do not operate with a profit motive, they cannot be considered "businesses." Several commenters echoed the sentiment that an entity can be a "business" only if it is a commercial enterprise carried on for profit; they infer support for this argument from their understanding of the term as guided by the language in sections 202(a)(3) and 202(a)(4), which

equates "business" with the terms "buying," "selling," "leasing," and so forth. They argued that the phrase "otherwise dealing with" takes its meaning from these terms, citing to the Act's legislative history (*Senate Report*, at 90, *reprinted in 1 Leg. History*, at 486). If Congress had intended to cover entities that have non-business dealings with a labor organization, they argue, it would have drafted sections 202(a)(3) and 202(a)(4) to include "any entity," not simply "a business."

The LMRDA does not define "business," leaving the Department to apply the term's ordinary meaning unless the context in which it is used indicates that Congress intended a unique or special meaning. *See Brower* v. *Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001). The *American Heritage Dictionary* (2000) defines "business," in part, as "Commercial, industrial, or professional dealings" and "Volume or amount of commercial trade" and "commercial dealings." Under *Black's Law Dictionary (8th ed. 2004)*, a "business" is generally defined as "a commercial enterprise carried on for profit." *Black's* illustrates the term's usage to distinguish between "commercial enterprises" and non-businesses, using academia as an example of the latter. Moreover, the IRS case law interpreting "trade or business," has consistently held that a profit motive is a basic criterion of a "business." *Nickeson* v. *Commissioner*, 962 F.2d 973 (10th Cir. 1992). Based on these interpretations, the Department believes it appropriate to treat trusts and other not-for-profit entities as distinct from entities treated as businesses for Form LM–30 purposes.

### L. When Payments and Other Financial Benefits Received From a Union Other Than an Official's Own Union Must Be Reported

In the NPRM, the Department asked for comment on the question whether "labor organizations" constitute "businesses" under sections 202(a)(3) and 202(a)(4), or constitute "employers" under section 202(a)(6). The Department received only a few comments on this question. Today's rule clarifies that a "labor organization" that has employees is an "employer" for purposes of Form LM–30. As just discussed, there is no indication that Congress intended to except any entities other than government agencies from the application of the Act's provisions if they occupy the status of "employer" under any law of the United States. The Department reaches this conclusion for essentially the same reasons as discussed above in connection with the

status of trusts and other not-for-profit entities.

One commenter asserts that Congress intended that businesses would consist only of entities that are likely organizing targets of a union. Another commenter states that the Department "should continue its current practice of not requiring payments to a union official or employee from affiliated unions (including multi-trade councils such as building trades or metal trades councils) to be reported on the LM–30."

Two commenters argued that "labor organizations" are not "businesses" because the latter term refers only to "commercial enterprises that engage in commercial transactions with unions or unionized employers." However, they add: "To the extent a labor organization has employees who are represented by another union, payments from the labor organization to officials of the union representing its employees would be reportable under [sections] 202(a)(1) & (5)." Each of these sections provides that a union official should report payments from an employer whose employees the official's union represents or is actively seeking to represent. Another asserted that "[t]he risk of a union official obtaining special favors from an affiliated labor organization or labor-management committee in return for his or her not discharging his [or her] obligations as a union leader is simply not present."

The Department has decided that for reporting purposes a union may constitute an "employer" under section 202, if the union meets the statutory definition of the term. 29 U.S.C. 402(c). The Department's reasoning is basically the same as discussed above in connection with the "employer" question posed with regard to trusts and other not-for-profit entities. Additionally, the Department rejects the proposition that "labor organization" and "employer" are mutually exclusive terms for all purposes of the Act. This proposition is inconsistent with the settled view that a "labor organization" that is also an "employer" will be held to the same obligation as other employers unless Congress otherwise provides. As noted, the Act provides that the term "employer" is to be given the same application for all its purposes. If a "labor organization" cannot be an "employer," then the various prohibitions relating to employer interference in union elections would be unavailable where employees of a union are themselves represented by an autonomous staff union. There is no evidence that Congress intended to deny LMRDA rights to these workers simply because their employer is a labor

organization. This Department's longstanding position to treat unions as employers vis-a-vis staff unions is congruent with the similar treatment accorded such relationships under the Labor Management Relations Act. *See National Education Ass'n,* 206 N.L.R.B. 893 (1973).

However, in the rule today, the Department clarifies when a payment from a labor organization would be reportable under section 202(a)(6). No reports will be required where the payment is received from a union that is affiliated with the union which the officer or employee serves as an officer or employee; *i.e.,* locals, intermediate bodies, and their parent national or international union. To use a fictitious example, an officer or employee of Local 1, National Union of Reporters (''NUR''), would not report a payment received from either the New England Council, NUR, Local 2, NUR, or the NUR, even if they were employers. Similarly, no payment from the local to an NUR national officer would be reported. Any such payment already will be reported on the payer union's Form LM–2, LM–3, or LM–4, albeit sometimes aggregated with other payments. Moreover, in instances where the union's payment(s) to a particular official exceed $5,000, alone or in the aggregate over a one-year period, the reporting union's payments will specifically identify the payee official on the Form LM–2. However, a union officer or employee unaffiliated with the union that makes the payment must report the payment if the payer-union is an employer. For example, an officer or employee of a regional council of multi-trade unions that receives a payment from NUR or one of its locals would have to report the payment if the NUR entity is an employer.

The Department has created a reporting rule for unions: A union official will have to report payments from a labor union other than his or her own if that union (1) Has employees represented by the official's union; (2) has employees in the same occupation as those represented by the official's union; (3) claims jurisdiction over work that is also claimed by the official's union; (4) is a party to or will be affected by any proceeding in which the official has voting authority or other ability to influence the outcome of the proceeding; or (5) has made a payment to the filer for the purpose of influencing the outcome of an internal union election. This rule, coupled with the general provisions relating to section 202(a)(6), will capture for reporting any payments that could reasonably be perceived as presenting a conflict with the official's duty to their own union

and its members. Readers are cautioned that the obligation to report or not report payments in the situations described above does not affect the legality of such payments under the election provisions of the LMRDA or other laws, such as the Labor Management Relations Act, which may regulate such matters.

## M. How the Proposed Definitions Have Been Clarified To Ease a Filer's Completion of the Form LM–30

As explained in the NPRM, the old regulations and instructions for the Form LM–30 failed to define or incompletely defined several terms whose meaning must be properly understood for a union official to correctly complete the Form LM–30. The Department therefore proposed several new or revised definitions. The terms defined included: *Actively seeking to represent, arrangement, benefit with monetary value, bona fide employee, bona fide investment, dealing, directly or indirectly, filer/ reporting person/you, income, labor organization, labor organization employee, labor organization officer, legal or equitable interest, minor child, payer, publicly-traded securities, substantial part,* and *trust in which a labor organization is interested.* All of the proposed definitions with the exception of ''publicly-traded securities'' have been adopted, some in revised form, in today's rule. As discussed earlier in the preamble, the Department has determined that it is unnecessary to include a definition for ''publicly-traded securities'' or an equivalent term in the rule. Comments were received on only some of the definitions. To assist filers, however, all the definitions, as adopted by today's rule, are set out below in italics. Where comments have been received on a proposed definition, the comments are summarized and the Department's responses are discussed below. A number of the terms already have been discussed in this preamble.

### 1. Definitions Adopted by Today's Rule

*Actively seeking to represent means that a labor organization has taken steps during the filer's fiscal year to become the bargaining representative of the employees of an employer, including but not limited to:*

- *Sending an organizer to an employer's facility;*
- *Placing an individual in a position as an employee of an employer that is the subject of an organizing drive and paying that individual subsidies to assist in the union's organizing activities;*

- *Circulating a petition for representation among employees;*
- *Soliciting employees to sign membership cards;*
- *Handing out leaflets;*
- *Picketing; or*
- *Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of its employees), or otherwise committing labor or financial resources to seek representation of employees working for the employer.*

*Where a filer's union has taken any of the foregoing steps, the filer is required to report a payment or interest received, or transaction conducted, during that reporting period.*

**Note:** *Leafleting or picketing, such as purely ''informational'' or ''area standards'' picketing, that is wholly without the object of organizing the employees of a targeted employer will not alone trigger a reporting obligation. For example, if a union pickets a sporting goods retailer solely for the purpose of alerting the public that the retailer is selling goods that are made by children working in oppressive conditions in violation of accepted international standards, the picketing would not meet the ''actively seeking to represent'' standard.*

As discussed, the definition was modified by the addition of the note to inform filers that leafleting or picketing wholly without the object of organizing the employees of a targeted employer will not trigger a reporting obligation and make plain that a report need only be filed where a union official receives a payment during the year in which the official's union takes a concrete step to actively represent the employees of an employer that transacts business with the union or other businesses for which reports are required because of their relationship to such employer.

*Arrangement means any agreement or understanding, tacit or express, or any plan or undertaking, commercial or personal, by which the filer, spouse, or minor child will obtain a benefit, directly or indirectly, with an actual or potential monetary value.*

**Note:** The term ''arrangement'' is very broad and covers both personal and business transactions, including an unwritten understanding. For example, if during the reporting period an employer's representative offered a union officer a job with the employer, the officer must report the offer unless he or she rejected it. A standing job offer must be reported because it carries the potential of monetary value to the filer. Another example of a situation requiring a report is when an employer provided insider information about a stock or other investment opportunity, unless the filer rejected the advice and took no steps to act on it.

No comments were received on the proposed definition. This definition is adopted as proposed. As discussed in the NPRM, the term encompasses both personal and business transactions, including an unwritten understanding. For example, if an employer's representative during the reporting period solicits a union officer to accept a job with the employer, the filer must report the solicitation, unless the filer rejects the offer. A standing job offer must be reported because it carries the potential of monetary value to the filer. Another example of a situation requiring a report would be one in which a covered employer provides insider information about a stock or other investment opportunity, unless the filer rejects the advice and takes no steps to act on it.

*Benefit with monetary value means anything of value, tangible or intangible. It includes any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind. You do not need to report pension, health, or other benefit payments from a trust to you, your spouse, or minor child that are provided pursuant to a written specific agreement covering such payments.*

This definition has been revised by adding the new third sentence in the instructions to clarify that benefits received by a union official, his or her spouse, or minor child as a participant in a trust or benefit plan will generally not be reportable on Form LM–30. The same definition, with only a slight change in the wording of the third sentence, is adopted as section 404.1(a) of the Department's regulations (to be codified as 29 CFR 404.1(a)).

A commenter voiced support for the Department's proposed definition of this term and the related definitions proposed for "*benefit with monetary value,*" "*income,*" and "*directly or indirectly,*" arguing that the Department has broadly construed these terms to capture anything of value received by the filer, his or her spouse, or minor child, including any payment or benefit held or received by a third party for their benefit. This commenter noted that the proposed definition is properly drawn from disclosure rules applicable to Federal employees. Another commenter criticized the proposal because it appears to include pension benefits that an officer receives from a jointly administered trust as a result of prior service for an employer participating in the trust. The commenter argues that the statute does

not require disclosure of such payments and that an officer's receipt of such payments does not present a conflict of interest. The commenter recommends the Department either amend the definition or modify the instructions to clarify that such payments do not have to be reported under any of the sections. The Department agrees that benefits received as an employee of an employer, such as pension benefits, are generally not reportable. This point is clarified by the new third sentence added to the definition.

*Bona fide employee is an individual who performs work for, and subject to the control of, the employer.*

**Note:** *A payment received as a bona fide employee includes wages and employment benefits received for work performed for, and subject to the control of, the employer making the payment, as well as compensation for work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law.*

*Compensation received under a "union-leave," or "no-docking" policy is not received as a bona fide employee of the employer making the payment. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay. Such payments are received as an employee of the union and thus, such payment must be reported by the union officer or employee unless they (1) totaled 250 or fewer hours during the filer's fiscal year and (2) were paid pursuant to a bona fide collective bargaining agreement. If a filer must report payments for union-leave or no-docking arrangements, the filer must enter the actual amount of compensation received for each hour of union work. If union-leave/ no-docking payments are received from multiple employers, each should be considered separately to determine if the 250-hour threshold has been met. For purposes of Form LM–30, stewards receiving union-leave/no-docking payments from an employer or lost time payments from a labor organization are considered employees of the labor organization.*

Any individual working at the control and direction of a labor organization will be an employee of the organization. A union steward or union official while acting on behalf of the union is not acting as a bona fide employee of the employer whose employees are represented by the steward's union. Of particular import, however, today's rule, as discussed herein, modifies the proposed instruction to except from reporting on the Form LM–30 compensation received from an employer for whom the official works

for the time he or she is engaged in certain union activities provided it is made pursuant to a collective bargaining agreement and the compensation reflects payment for union activities of 250 hours or less during the reporting year.

*Bona fide investment means personal assets of an individual held to generate profit not acquired by improper means or as a gift from (1) an employer, (2) a business that deals with the filer's union or a trust in which the filer's union is interested, (3) a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent, or (4) a labor relations consultant to an employer.*

No comments were received on this proposal. The primary purpose of this definition is to alert filers that stock or other securities received as a gift will not constitute a "bona fide investment," under the provision that exempts from reporting bona fide investments in securities when the gift is received from specified employers, businesses, or labor relations consultants. The only changes from the NPRM are the numbering of the different sources of reportable payments and the elimination of the cross-reference to the term "publicly-traded securities."

*Dealing means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade, including solicitation for business.*

**Note:** *The term "traffic or trade" includes not only financial transactions that have occurred but also the act of soliciting such business. Thus, for example, potential vendors or service providers attempting to win business with a union will be considered to be "dealing" with the union to the same extent as vendors who are already doing business with the union. Potential vendors must engage in the active and direct solicitation of business (other than by mass mail, telephone bank, or mass media). A business that passively advertises its services generally and would provide services consumed by, for example, a union would not meet this test. The potential vendor must be actively seeking the commercial relationship. Under certain circumstances, the payment itself will be evidence of the solicitation of business, such as a potential vendor who treats a union official to a golf outing and dinner to discuss the vendor's products.*

The definition of this term has been revised slightly from the proposal by adding the phrase "including solicitation for business" and adding the explanatory note to the instructions. The same definition, but without the note, is adopted as section 404.1(b) of

the Department's regulations (to be codified as 29 CFR 404.1(b))

Most of the comments on the proposed term have been discussed already in connection with the meaning to be given the terms "employer" and "business." *See* discussion herein. The new phrase and note were added to make clear that payments to union officials must be reported even if they do not lead to a consummated business transaction. The Department notes, as discussed herein, that some commentators suggested that the term "dealing" should only encompass payments made to union officials in connection with marketing efforts that lead to a completed business transaction. For the reasons discussed herein the Department is not persuaded that there is anything in the language of section 202 or its legislative history to suggest that either "routine marketing expenses" or the subset of those that do not lead to a business agreement should be excepted from the reporting obligation.

The Department believes that the definition it adopts for "dealing" is consistent with the intended meaning given it by Congress. Neither its use in the statute nor the legislative history of the Act's "dealing" provisions suggest that the term should be given a unique meaning. As defined today, the term accords with the meaning given the term in the *American Heritage Dictionary* and *Black's Law Dictionary*. In the *American Heritage Dictionary* "deal" is defined, in part, as "[t]o sell" and "[t]o do business; trade." In *Black's*, "deal" is defined as "an act of buying and selling" such as "the purchase and exchange of something for profit."

*Directly or indirectly means by any course, avenue, or method. Directly encompasses holdings and transactions in which the filer, spouse, or minor child receives a payment or other benefit without the intervention or involvement of another party. Indirectly includes any payment or benefit which is intended for the filer, spouse, or minor child or on whose behalf a transaction or arrangement is undertaken, even though the interest is held by a third party, or was received through a third party, including instances in which the third party is acting on the behalf, or at the behest, of an employer or business and the interest would have to be reported if made directly to the filer, his or her spouse, or minor child . The following examples show the difference between "direct" and "indirect":*

*You are employed by XYZ Widgets and also serve as the president of the local union representing XYZ Widgets employees. In a recent conversation with the XYZ Widgets human resources manager, you mention that you are placing your 15 year-old daughter in a private school. XYZ Widgets sends you a check for $1,000 with a note saying "Good luck with the new school!" You have received a direct benefit.*

*You are employed by XYZ Widgets and also serve as the president of the local union representing XYZ Widgets employees. In a recent conversation with the XYZ Widgets human resources manager, you mention that you are placing your daughter in a private school. You receive a letter from your daughter's new school stating that she has received a $1,000 scholarship through a donation by XYZ Widgets. You have received an indirect benefit.*

The definition of this term, as discussed above, has been revised from the proposal by including two examples. The examples have been added in response to a comment by a labor educator who suggested that the Department should include some examples to demonstrate the difference between "direct" and "indirect." As noted in the NPRM, the purpose of the definition is to clarify that filers must disclose any benefits received by them (or their spouse or minor child) from a third party where the third party is acting on the behalf, or at the behest, of an employer or business where the benefit would have to be reported if made by the employer or business directly to the filer (or his or her spouse or minor child). Benefits received from an employee, agent, or representative of an employer or business, or other entity acting on behalf of the employer or business should be considered received from the employer or business. Payments to a third party to be held for the use or benefit of the filer are also reportable. The definition is deliberately drawn broadly, consistent with the legislative history, "to require disclosure of any personal gain which an officer or employee may be securing at the expense of union members." As also noted in the NPRM, the legislative history draws from the AFL–CIO Ethical Practices Code: "The ethical principles apply not only where the investments are made by union officials, but also where third parties are used as blinds or covers to conceal the financial interests of union officials."

*Filer/Reporting Person/You mean any officer or employee of a labor organization who is required to file Form LM–30.*

**Note:** *These terms are used synonymously and interchangeably throughout the instructions, and, when referring to reportable interests, income, or transactions, these terms include interests, income, or transactions involving the union officer's or employee's spouse or minor child.*

No comments were received on the proposed definition. This definition is adopted as proposed.

*Income means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards.*

The Department adopts the definition of "income," as proposed, both in the instructions and as section 404.1(e) of the Department's regulations (to be codified at 29 CFR 404.1(e)).

*Labor organization, means the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office, during the reporting period, and, in the case of a national or international union officer or an intermediate union officer, any subordinate labor organization of the officer's labor organization. Item 6 of the Form LM–30 identifies the relationships between employers and "your labor organization" or "your union" that trigger a reporting requirement. Item 7 of the Form LM–30 identifies the direct and indirect relationships between a business (such as a goods vendor or a service provider) and "your labor organization" that trigger a reporting requirement. The terms "your labor organization" and "your union" mean:*

a. *For officers and employees of a local labor organization.*
Your local labor organization.
b. *For officers of an international or national labor organization*
Your national or international labor organization and all of its affiliated intermediate bodies and all of its affiliated local labor organizations.
*But note:* A national or international union officer does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.
c. *For employees of a national or international labor organization.*
Your national or international labor organization.
d. *For officers of intermediate bodies.*
Your intermediate body and all of its affiliated local labor organizations.
*But note:* An officer of an intermediate body does not have to report payments from

or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

e. *For employees of an intermediate body.* Your intermediate body.

As discussed at length herein, the definition of "labor organization" for purposes of completing Form LM–30 has been modified from that proposed, narrowing its scope consistent with the Department's existing "top down" approach and limiting the obligation of officers of local and intermediate unions. The first sentence of the quoted material is adopted as section 404.1(f) of the Department's regulations (to be codified at 29 CFR 404.1(f)).

*Labor organization employee means any individual (other than an individual performing exclusively custodial or clerical services) employed by a labor organization within the meaning of any law of the United States relating to the employment of employees.*

**Note:** *An individual who is paid by the employer to perform union work, either under a "union-leave" or "no-docking" policy, is an employee of the union for reporting purposes if the individual performs services for, and under the control of, the union. See definition of "bona fide employee."*

*For purposes of Form LM–30, stewards receiving union-leave/no-docking payments from an employer or lost time payments from a labor organization are considered employees of the labor organization.*

Numerous comments were received about the wisdom of requiring union officials to report payments they received under union-leave or no-docking policies. As discussed above in today's rule, the Department adopts a limited reporting obligation for such payments. Concerns regarding the reporting burden of labor organization employees under the "union-leave" and "no-docking requirements" are addressed separately in this final rule. In addition to comments on that aspect of the proposed definition, the Department also received comments inquiring about the application of the definition to union stewards.

One commenter, a labor educator, stated that his study's participants found the definition for "labor organization employee" to be confusing. He explained that many participants viewed the proposed definition as a major shift from existing practice as a number of individuals, including stewards, bargaining committee members, and volunteer organizers,

would now have reportable transactions when doing union work such as serving on a negotiating committee, serving as an arbitration witness, or organizing. The commenter identified as a specific problem the definition's failure to address how a filer should report the receipt of payments where he or she has multiple employers, each with a different practice or language with respect to lost wages and to the payment of benefits to part-time union officers, stewards, negotiating committee members, and so forth.

In general, where a union steward receives union-leave/no-docking payments from an employer or lost time payments from the union, the steward will be regarded as an employee of the labor organization as the individual has received compensation for performance of services for the union. The Department recognizes that some stewards and other representatives have multiple employers, each with a different practice or language with respect to lost wages and payment of benefits of part-time union officers, stewards, or negotiating committee members. Thus, each employer is considered separately for reporting purposes.

Finally, unlike the proposed definition, today's rule does not outline the factors that distinguish between the status of individuals working for a union as independent contractors and those working as employees of the union. As explained in the NPRM, independent contractors of the union are not required to file a Form LM–30. In the Department's view, the inclusion of these factors in the definition of "labor organization employee" added unnecessary length and possible confusion to the definition. If needed, the Department will provided guidance, separate from the instructions, to assist individuals unsure of their status as employees or independent contractors. The same definition, but without the note, modifies section 404.1(g) of the Department's regulations (to be codified at 29 CFR 404.1(g))

*Labor organization officer means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body. An officer is (1) a person identified as an officer by the constitution and bylaws of the labor organization; (2) any person authorized to perform the functions of president, vice president, secretary, or treasurer; (3) any person who in fact has executive or policy-making authority or*

*responsibility; and (4) a member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.*

**Note:** *Under this definition, an officer includes a trustee appointed by the national or international union to administer a local union in trusteeship. If you are a trustee elected or appointed by the local union to audit and/or hold the assets of the union, you may or may not be a union officer, depending on your union's constitution and other factors. If you serve in your union in any capacity and you are unsure if your position is an officer position, you are likely an officer of a labor organization if any one of the following applies:*

• *Your union's constitution or bylaws refers to your position as an officer of the union;*

• *Your union's constitution or bylaws states that your position has the authority to make executive decisions for the union or that you are authorized to perform the functions of president, vice-president, secretary, treasurer, or other constitutionally designated officer;*

• *Your union's annual Form LM–2 or Form LM–3 lists your position as an officer of the union;*

• *In your position, you serve on your union's executive board or similar governing body.*

This definition adopted in today's rule has been revised from that proposed by adding the above note in the instructions. The same definition, but without the note, is adopted as a modification of the existing definition at section 404.1(b) of the Department's regulations (to be codified as redesignated at 29 CFR 404.1(h)). As explained in the NPRM, the definition, as proposed, tracks the definition of "officer" at section 3(n) of the LMRDA, 29 U.S.C. 402(n), and adds a new second sentence to the old regulation's definition, 29 CFR 404.1(b). The *LMRDA Manual* applies the definition to trustees appointed to oversee a labor organization. *See LMRDA Manual,* 241.200.

One commenter agreed with the Department's view that the group of union officials subject to section 202's reporting requirements only partially overlaps with the larger group of individuals subject to the Act's Title V fiduciary duties. See 29 U.S.C. 501(a) ("officers, agents, shop stewards, and other representatives"). The commenter noted that nevertheless the overlap was substantial. A labor educator stated that participants in his study group found the definition unclear, adding that the explanatory notes to the definition were unhelpful. He mentioned that some participants were unsure whether "trustee" applied to the positions in some local unions which hold auditing

and other responsibilities over the local's assets or to an individual appointed by the national or international union to administer a local's affairs, or both. The commenter explained that local union trustees do not see themselves as union officers and are not de facto or de jure members of the executive board. The commenter also explained that participants were unsure whether stewards would be considered union officers. The Department has concluded that the proposed definition, along with the addition of the note, clarifies that the term ''trustee,'' as used in this definition, does not apply to those with auditing responsibility in the union. This definition also provides a test for determining whether any individual is a union officer.

*Legal or equitable interest means any property or benefit, tangible or intangible, that has an actual or potential monetary value for the filer, spouse, or minor child without regard to whether the filer, spouse, or minor child holds possession or title to the interest. See definition of income and benefit with monetary value. For example:*

• *You are an officer of a union. You and your spouse jointly own an accounting business that provides tax services to a number of clients, including your union. You hold a legal interest in the company providing services to your union.*

• *You are an officer of a union. You form a tax preparation business with two partners and put your share of the business in your wife's name. The business prepares tax returns and LM reports for your union. You hold an equitable interest in the business that deals with your union.*

This definition has been modified from that proposed by adding the examples set forth in the above bullets. This change was suggested by the labor educator whose study participants had difficulty understanding the meaning of the term.

*Minor child, means a son, daughter, stepson, or stepdaughter less than 21 years of age.*

This definition is adopted as proposed as part of the instructions and as section 404.1(i) of the Department's regulations (to be codified at 29 CFR 404.1(i)). As the Department noted in the NPRM, the old instructions, like the LMRDA, are silent about the age at which a child reaches his or her majority. As explained in the NPRM, state law definitions for the legal concept of childhood and age of majority differ from state to state but also may differ widely from legal context to legal context within the same

state. In the Department's view, there is a need for a uniform, nationwide meaning of ''minor child'' under the LMRDA and without such a uniform definition the objective of the LMRDA will be frustrated. Both filers and union members who view filed reports require a known and easily applied single standard regarding when reports are required, and what a disclosure or its absence represents.

The Department only received a few comments about the proposed definition of ''minor child.'' One commenter noted that the Department should exclude from its definition a ''child who has married and moved away from the parental home.'' Another suggested that 18 should be the cut off age unless the child is still claimed as a dependent for Federal income tax purposes. The Department agrees that the commenters offer valid alternatives to the Department's proposal. Nevertheless, the Department believes that the proposed definition solely tied to a child's age offers the advantage of simplicity and ease of application, particularly because a child's status may remain in a state of flux during his or her late teens and early twenties. In 1959 when the LMRDA was enacted, it was well established that at common law the age at which a person reached his or her majority in the states was twenty-one years. See, *e.g.*, 5 Samuel Williston and Richard A. Lord, *A Treatise on the Law of Contracts* § 9:3 n.15 (4th ed. 1993 & Supp. 1999). As explained in the NPRM, the Department believes that in 1959 when Congress used the term ''minor child'' in section 202(a), it intended a uniform Federal standard to apply and referred to the general common law meaning at that time, *i.e.*, twenty-one years. The Department also believes that twenty-one is more suitable than an earlier age to distinguish between a child's relative dependence upon, and independence from, the finances of a parent. For these reasons, the Department adopts the definition of ''minor'' as proposed.

*Substantial part means 10% or more. Where a business's receipts from an employer whose employees the filer's labor organization represents or is actively seeking to represent constitute 10% or more of its annual receipts, a substantial part of the business consists of dealing with this employer.*

As discussed herein, this term has been changed by increasing the reporting threshold from 5% to 10% in order to ease the burden on a filer to determine the percentage of a vendor's business that consists of dealing with an employer whose employees the official's

union represents or is actively seeking to represent.

*Trust in which a labor organization is interested means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries. The term ''section 3(l) trust'' is used in the instructions as a shorthand reference to such trusts.*

No comments were received on the Department's proposed definition of this term. This definition is provided by section 3(l) of the LMRDA. 29 U.S.C. 402(l). The only change is the inclusion of the second sentence to make plain that the term ''section 3(l) trust '' is a shorthand reference to ''trust in which a labor organization is interested.'' The same definition is adopted as section 404.1(j) of the Department's regulations (to be codified at 29 CFR 404.1(j)).

2. Other Issues Related to Definitions

A commenter suggested the inclusion of a definition for ''transaction,'' another term used in the Form LM–30 instructions. The Department believes that the term has a plain meaning that applies across various contexts and therefore its inclusion in the instructions is unnecessary.

The Department had proposed to use the term ''*payer*'' to describe the employer, business, or labor relations consultant that is the source of a reported payment on the Form LM–30. As explained in the NPRM, the Department recognized that the term was imperfect, because in common parlance a business in which a filer holds an interest would not ordinarily be considered a ''payer'' of the filer. Upon further consideration, the Department has determined that the use of the term, defined specifically for Form LM–30 reporting, is unnecessary and potentially confusing. For these reasons, the Department has withdrawn the proposed definition. For similar reasons, as discussed above, the Department has withdrawn the proposed definition of ''publicly-traded securities.''

*N. Details Relating To Proposed and Revised Form and Instructions*

As explained in the NPRM, the broad purpose of Form LM–30 is to disclose payments and other financial interests of a union official that may pose a conflict between those personal interests and his or her duty to the

union and its members. 70 FR 51166. In the NPRM, the Department identified the difficulty in developing a self-explanatory form to accomplish this result. While the old Form LM–30 has a deceptively simple design, it fails to fully capture information that Congress wanted disclosed. Filers often failed to complete the form and, when they did file, they seldom provided the detail called for in the instructions.

1. Comparison of the "Old" and Proposed Forms

Items 1–4 of the old Form LM–30 remained on the proposed form with only minor changes. Item 3 was modified to require an e-mail address of the filer. Item 4 of the proposed form combined Items 4 and 5 of the old form and it also required filers to report whether they held their position in the union at the end of the reporting period. Item 5 on the proposed form was the signature box, which was otherwise the same as the old form.

The proposed Form LM–30 included a Payer Detail Page to provide an itemized list of all payments, by payer. The proposed form included three schedules, and it organized the reportable matters by tables instead of the narrative boxes on the old form. The old form also displays reportable information in a three section format: Part A, Part B, and Part C. The filer must report payments from employers in Part A, Items 6, 7a, and 7b; from businesses in Part B, Items 8–12; and from other employers and labor relations consultants in Part C, Items 13–14.

The proposed form contained various continuation pages for information supplementing required entries on other pages or otherwise as overflow space. Some of these pages existed in a different format in the old form and some were new pages.

The NPRM noted that the diversity of financial transactions made reportable by section 202 of the Act requires detailed instructions. The NPRM invited comments as to the layout of the instructions, their clarity, and suggestions about how to better explain the reporting obligations. The NPRM also noted that the first heading of the proposed instructions, "Why File," was largely unchanged from the old form: it addressed the basic reporting obligations.

2. Comments on Proposed Form

In an attempt to better inform potential filers about the purposes served by the Form LM–30, the proposed form included an expanded discussion of the LMRDA, placing the official's reporting obligation in the context of the other rights and obligations established by the Act. The proposed form also clarified that no form need be filed unless the filer, his or her spouse, or minor child held a covered interest, received a covered payment, or engaged in a covered transaction or arrangement during the reporting period.

The NPRM also requested comments about the layout and clarity of the form, including: "Would the form benefit from adding additional text and, if so, what additions are recommended? Does the form have an intuitive feel to it? Does the form request information in logical progression? How can the form be improved?" The next paragraph discusses the general comments received on the proposed form and the Department's response. The following paragraphs summarize comments received on particular aspects of the proposed form and the Department's response to those comments. Comments and responses are grouped by the numbered items and schedules of the proposed form.

*General Comments:* Several commenters applauded the inclusion of definitions and examples; some commenters, however, expressed concern about some of the definitions and argued that some of the examples were incorrect. As discussed, the Department has clarified some of the definitions, modified some of the examples, and added others where requested. These changes are discussed in other sections of this document.

One commenter stated that the proposed form is more confusing to filers and the public than the old form, adding burden but no compensating benefit. The commenter recommended that the Department should "leave well enough alone" and that instead of revising the form it should provide guidance that would "clarify[  ] and simplify[  ] the reporting requirement itself." The Department disagrees with this recommendation. As noted in the NPRM, flaws in the form itself and the instructions to the form provided impetus for the proposed rule. Further, as discussed throughout this document, many of the modifications to the form correspond to changes/clarifications in the reporting requirements themselves. Although under the revised form a filer no longer needs to record the statutory subsection under which a payment or other financial interest is received, the Department has nevertheless conformed the form to the reporting requirements of section 202 and the limited exceptions to such requirements. Finally, much of the asserted confusion will clear when filers familiarize themselves with the revised form and instructions and avail themselves of the compliance assistance readily available from this Department.

A labor educator stated that several of his study participants found the language in the instructions to be too "legalistic." He suggested that the Department should wait to see what problems arose in connection with the historic upsurge in Form LM–30 filings, particularly in light of his observation that the biggest problem may actually be "false positives" and not "false negatives" (i.e., individuals who have nothing to report are nonetheless filing reports). The commenter's point about the old form is valid. However, the revised form and instructions will resolve this problem.

*Item 2—Period Covered:* One individual suggested that the instructions should make clear that the filer's fiscal year should be the fiscal year used by his union in filing its Form LM–2, and another expressed confusion about whether reports should be based on the official's fiscal year or his union's fiscal year. The Department cannot dictate to a filer his or her fiscal year. The language of the statute states: "[the filer] shall file with the Secretary a signed report listing and describing for *his* preceding fiscal year * * *." 29 U.S.C. 432(a). The instructions as proposed appear to leave some ambiguity as to what fiscal year should be utilized by the filer. As such, the Department has added language to Part IX of the revised instructions indicating that the fiscal year is that of the filer, which may differ from the fiscal year utilized by the filer's union for filing its annual financial report, Form LM–2, LM–3, or LM–4.

*Item 3(I)—Contact Information of Reporting Person: E-mail Address:* One commenter expressed support for the added contact information required by Item 3. Other commenters voiced opposition to the addition of the filer's e-mail address. The concern over e-mail addresses was that they are private and that their disclosure may lead to harassing e-mail, spam, unwanted solicitation, and viruses. Further, the commenters argued that the reporting of a filer's office telephone number eliminates the need for the e-mail address.

Although several commenters voiced concerns over the required inclusion of a filer's e-mail address, none explained how this would violate the Privacy Act. No violation of such Act is apparent; there does not appear to be any greater privacy interest in a personal e-mail address than in a personal mailing address or phone number and such

information has long been required by Form LM–30 filers without any challenge on privacy grounds. The old Form LM–30 requires the address of the filer and the telephone number where the filer conducts official business, although a private, unlisted telephone number is not required to be reported.

At the same time, the Department is sensitive to a filer's concerns that by disclosing his or her e-mail address, the official may become the target of unsolicited e-mails or otherwise impeded in the use and enjoyment of his or her e-mail account. For this reason, the Department has decided that the filer has the option to disclose or not disclose his or her e-mail address.

*Summary:* The Department received one comment supporting the addition of a summary schedule to Form LM–30. Other commenters opposed this schedule, asserting that the summary adds unnecessary burden, without adding any "significant value," and creates confusion due to the lack of a readily apparent relationship between the payer and employer/union on the summary. One commenter noted that summarizing all payments in this manner leads to the conclusion that the total value is a "payment" when not all of the interests, such as share holdings, can be characterized as such.

This summary enables viewers to quickly ascertain the payments and interests held in employers and businesses that may constitute a potential conflict of interest. This function is the essence of Form LM–30, and thus the summary is a significant improvement over the old form. The comments express concern over the confusion that would ensue from aggregating different types of interests and payments, and the Department has addressed this concern with the creation of the categories of "income or other payments" and "assets" on the summary section of the form.

*Part B—Schedule 1: Employer or Business Identifying Information:* One commenter voiced general support for the new schedules and applauded the new contact information. Other commenters expressed opposition to the changes, in particular the business ID number and incorporation information. One commenter argued that the new payer identifying information was "unduly burdensome," requiring filers to conduct extensive research to compile such information, and with little value to the members and other viewers. Another stated that only the payer telephone number was justified, along with the payer name and address and the transactional information. Further, a union commented that it will

be extremely difficult for a filer to locate payer information such as the state of incorporation/registration and state business ID number.

This schedule will no longer combine data from all "payers" regardless of its classification as an employer, labor relations consultant, or business. The latter terms appear in the Act, unlike "payer," and the Department has restructured Part II of the instructions to detail the reporting requirements with these distinctions in mind.

The Department has also eliminated Items K and L (State of Incorporation/ Registration and State Business ID number) of Schedule 1, as proposed. The commenters' assertions that the inclusion of the business ID number and incorporation information will add significant burden to the reporting requirements appear valid. A filer must report all transactions in an accurate and clear manner, as well as provide basic contact and reference information; the filer should not also be required to perform research on the employer or business for information beyond what is needed to meet the statutory requirements. Further, viewers of these forms may be able to acquire such information on their own initiative if it is of interest to them; they will have the employer's or business' name and contact information to assist them in obtaining any desired additional information.

*Part B—Schedule 2:* A labor educator presented some specific suggestions for this Schedule. He suggested that the form spell out the coding "O/E/S/C" under Item B, Schedule 2, *i.e.*, "officer," "employee," "spouse," and "[minor] child." Two other commenters expressed a similar concern. The Department has modified the form to meet these concerns.

This commenter also suggested that the Department could use the Itemization Sheets and Schedules 15–19 in the Form LM–2, with a standardized itemization sheet for all reportable transactions that roll-up into a single-summary sheet. The itemization sheets for Schedules 15–19 of the Form LM–2 are not appropriate or necessary for purposes of the Form LM–30. A filer using the electronic Form LM–30 will be able to create as many copies of Schedules 2 and 4 and of the additional information schedule as needed to complete the form.

*Instructions—Categories A1–A6:* The most critical comments concerned the subsection-by-subsection layout of the proposed form. One commenter described it in hyperbolic terms, as "requiring an encyclopedic knowledge of the Act." Others simply suggested it

was more difficult than necessary. The Department believed that the subsection-by-subsection approach had the value of showing the filer, by reference to the statutory language, exactly what he or she must report. While the Department continues to believe that this approach has value and may have been preferable for use by some filers, the Department is persuaded that this approach may lead to the perception that the Form LM–30 is unnecessarily difficult to complete.

Two commenters asserted that the proposed form, unlike the old form, "fail[s] to collect interests and transactions into coherent categories. The proposed format, dependent on a complicated coding system, adds unnecessary complexity for filers." Another commenter, a labor educator, generally opposed the use of the "codes" A1–A6, because in his view it is possible to have more than one code for a payment. He also stated that he had found that potential filers had difficulty synchronizing the sections of the form with the instructions. For example, he stated that filers had to continually "flip back and forth" from the instructions to the form. He believes that this diminishes the effectiveness of the instructions.

The Department has carefully considered the concerns expressed about the subsection-by-subsection approach of the proposed form. In place of this approach, the Department has decided instead to organize the form in a way that requests each filer to identify by employer and business the reportable interest, payment, loan, or transaction, and to identify whether it was held by or involved the filer, his or her spouse, or minor child. This approach, similar to the approach used in the old form, adopts the targeted approach used by Congress to identify the types of relationships from which a conflict between a filer's personal interests and his or her duty to the union arises. Moreover, the classification of each payer as an employer, labor consultant, or business provides necessary context for a member or other viewer to properly analyze the potential conflict. Except for this change, the revised definitions and examples, the addition of some new examples, and the enlarged exception for reporting insubstantial payments, there have been no significant changes to the proposed form or instructions.

The Department has also reduced the necessity to "flip back and forth" from the instructions to the form by putting more instructions and examples on the form itself (following the example of SF–278 required of Federal employees),

and by providing cross references, by page number of the instructions, for the definition of any terms needed to complete a particular section of the form. Also, to help alleviate this problem, the revised form utilizes Items 6 and 7 to add clarity for both the filer and the reviewer of the form by listing the conditions under which arrangements, transactions, income or other payments, interests, and loans must be reported. These items help the filer, in particular, by focusing him or her on the pertinent provision in the instructions.

*Instructions Part II—Who must file and what must be reported:* One commenter suggested that the "Do I have to file the LM–30" section of the instructions should be revised to allow an individual to more easily identify himself or herself as a Form LM–30 filer. The Department has addressed this concern by removing the A1–A6 categories, restructuring Part II of the instructions around the reporting requirements, exceptions, and examples of payments from employers and businesses; by revising some of the definitions; and by adding page citations to the cross-references. Another commenter acknowledged that the proposed form assisted potential filers by highlighting that no union official needs to file unless there has been reportable activity. The revised form contains the same statement.

A commenter noted that the definition of "substantial" should include the word "employer" and not "labor organization" at the end of the second sentence of the definition. The Department has corrected this error by indicating that the end of the second sentence of that definition should read "employer" and not "labor organization," as "substantial part" is found in the language of 202(a)(3) (a business that deals with the employer) and not in 202(a)(4) (a business that deals with a labor organization).

*Instructions—Examples and Definitions:* A commenter opposed some of the examples, suggesting that they are unreal "lawyer" hypotheticals, better used to establish the bounds of the Department's authority than to provide practical assistance to filers. Another commenter stated that fewer, better examples should be developed. He provided information to support his view that the definitions were confusing. He also suggested that the form should be redesigned to eliminate the need for filers to refer to different places in the instructions in order to complete the form, and that the instructions should include a section that brings together all the transaction criteria in each of the six subsection categories. Another commenter characterized the revised instructions as an improvement over the old ones, describing the examples as "particularly useful."

Many of the specific comments directed at examples have already been addressed in other sections of the preamble. The Department believes that these examples address typical reporting scenarios that will guide filers in their effort to comply with the reporting requirements. Nevertheless, the Department has carefully reviewed all the examples, and in several cases has added or modified language in an effort to clarify or simplify the guidance presented in them. Other examples, although reflecting a correct statement of a filer's obligations (with the exception of example 1, at 70 FR 51217, which omitted a key fact), have been eliminated as redundant.

Commenters expressed concern about the absence of examples involving transactions between, on the one hand, union officials and on the other section 3(l) trusts or service providers to such trusts. The Department has added Example 3 under "(2) Payments of Money or Other Thing of Value from Certain Other Employers or a Labor Relations Consultant to Such an Employer" in Part II of the instructions, which relates to payments to a union official from a trust in which that official's union is interested. Further, Part II of the instructions, "Reportable Payments and Interests from Businesses," contains Examples 15 and 17, which each deals with payments to a union official from service providers to trusts.

*Instructions—General Stylistic Comments:* An individual offered several specific recommendations in regard to the instructions. He proposed that the Department utilize a single column rather than the double columns in the proposed form; the "Note on Definitions" should be indented below each definition; and the examples should be placed within graphic text boxes. He also suggested that the Department should either include a discussion of the Act's legislative history in the instructions or separately publish such information to assist filers in understanding what is to be reported on the form.

The Department has made several minor changes that add some clarity to the instructions. As to changing the two-column format, the Department disagrees. All the old Form LM instructions utilize two columns, and no other commenter expressed concern over this format. The Department believes that it is easier for readers to process information in a two-column format than by alternative presentation.

The examples already stand out as they are numbered in bold type, so boxes around them are not needed. The Department has also consolidated many of the examples, based on its departure from the A1–A6 format in the proposed form. The Department has indented the "Note on the Definitions" sections to aid the filer; created a new part of the instructions for definitions (Part III); numbered the definitions; and cited them with page number references in Part II of the instructions.

The Department disagrees with the suggestion that the instructions should include a discussion of the Act's legislative history. The instructions are intended to be straightforward and directed solely at the completion of the form. A discussion of legislative history, the language of the statute, and legal and policy questions would add additional, unnecessary length to the instructions. A filer desiring additional background information of this nature can easily obtain it by reviewing this preamble, the preamble to the proposed rule as published in the **Federal Register**, or through the Department's own Web site and other governmental and publicly-accessible electronic information portals.

The Department acknowledges that the revised form, like the proposed form, may "feel less intuitive" than the old form; however, it believes that the revised form will better meet the goals of the LMRDA than the old form. Moreover, to address the concerns of the commenters, the Department has made several changes to the form to facilitate its completion and use by union members and the general public.

3. Completion of the Revised Form

The first seven items on the revised Form LM–30, as published in today's rule, provide basic information about the filer and his or her labor union; the number of employers and labor relations consultants and the number of businesses with which the filer engaged in reportable activity; and the total reported income and the total reported assets of the filer involving those employers, labor relations consultants, and/or businesses. Item 8 is for the signature, date, and telephone number of the filer. Items 1–8 have been designated as Part A of Form LM–30 for ease of reference.

Both the proposed and revised forms provide a plain notice to filers that they should carefully review the instructions to the form before completing it. The revised form contains the notice on the

first page: "You are not required to file this report unless you * * * have received a payment, engaged in any transactions or arrangements, or held an interest of the types described in * * * the instructions." The revised instructions include, on the second page, a discussion of the reporting exception for insubstantial payments and gifts to enable potential filers to more quickly determine whether they have a reporting obligation. To simplify the form's completion, the instructions identify particular terms that must be understood for completing particular items. Page references are provided for these terms, which are now defined near the end of the instructions. By relocating the terms, a filer is able to more quickly start completing the form and focus only on those terms that affect the filer's circumstances.

The remainder of the form consists of Schedules 1 through 4 and is designated as Part B. The filer must complete a separate Part B in accordance with the instructions for each of the employers, labor relations consultants, or businesses with which the filer engaged in reportable activity.

*Item 1—File Number:* No changes were proposed for this item, which is included in the old and revised forms.

*Item 2—Period Covered:* No changes were proposed for this item, which is included in the old and revised forms.

*Item 3—Contact Information of Reporting Person:* The addition of the filer's e-mail address was proposed. However, the Department has decided to allow filers the option to disclose or not disclose his or her e-mail address.

*Item 4—Labor Organization Identifying Information:* Both the proposed form and today's form combine two items of the old form. Items 4F, 4G, and 4H on the revised form ask for information about the filer's position in the union, whether it is an officer or employee position, and whether the filer held this position at the end of the reporting period. As noted in the NPRM, it is important as an enforcement matter to know whether the filer can still be reached at the union, and whether the filer may need to file Form LM–30 the following year.

*Item 5—Summary:* The revised form adopted the concept of a summary schedule of reported payments and interests contained in the proposed form, but the proposed summary has been simplified in response to comments. The revised summary (now Item 5) shows total reported income or other payments and total reported assets. The summary no longer requires the filer to list each individual payer (employers, businesses, and labor relations consultants) and give a total value of all dealings with that payer as had been proposed. As discussed herein in greater detail, the aggregation of all types of dealings such as payments, share holdings, loans, and so forth was determined to be confusing. Instead, the filer now totals the amounts in Schedule 2, Item F, Column (1) (value of income or other payments) of all the Part Bs and enters the total in Item 5A. The filer likewise totals the amounts in Schedule 2, Item F, Column (2) (value of asset) of all the Part Bs and enters the total in Item 5B.

*Items 6 and 7—Employer Relationships and Business Relationships:* To simplify reporting, Item 6 on the revised form identifies the relationships between, on the one hand, a filer's union and, on the other hand, an employer or a labor relations consultant to an employer that will trigger a reporting requirement. Its counterpart, Item 7, identifies the types of relationships, direct and indirect, between a business and the filer's union that will trigger a reporting requirement. These relationships are culled from the provisions of sections 202(a)(1) through 202(a)(5), supplemented by particular relationships that trigger a report under section 202(a)(6). Filers no longer have to extract these relationships from the statutory language. If the filer has received a payment from or held an interest in such an employer or business, the language on the form directs the filer to review Part II of the instructions to determine whether or not any of the exemptions apply to the filer's situation. Items 6(a) and 7(a) each contain a box for the filer to indicate whether or not he or she had any of the listed relationships. If the filer answers "Yes" to Item 6(a) or 7(a), Items 6(b) and 7(b) ask for the number of employers (and consultants) or the number of businesses with which the filer had a listed relationship. Items 6 and 7 clarify for both the filer and the reviewer of the form the entities from which payments and interests must be reported.

*Item 8—Signature:* The signature box has been renumbered as Item 8, but it has not otherwise changed from the old or proposed forms.

*Part B:* The "Payer Detail Page" from the proposed form is now called Part B and has four schedules. Schedules 1 and 2 will be completed for both employers and businesses. Schedule 3 will be completed for employers only and Schedule 4 will be completed for businesses only, so only three schedules will be completed on each Part B, just as in the NPRM. Instructions and examples have been added to the schedules on the form to enable the filer to more easily complete the form. A separate Part B must be completed for each employer, business, or labor relations consultant from which the filer received a reportable payment or in which he or she had a reportable interest.

*Part B—Schedule 1: Employer or Business Identifying Information:* All filers must complete this schedule. The schedule's title has been changed from the proposed form's "Payer Identifying Information." The proposed form combined three items on the old form (Items 6, 8, and 13) that helped identify the source of a payment or the specific interest held by the filer, his or her spouse, or minor child. The proposed form also required the filer to provide contact information for each "payer," including the telephone number, Web site address, state of incorporation or registration, and state business identification number. As noted in the NPRM, the additional contact information would make it easier for a person reviewing the report to identify the payer. The filer also would have to indicate whether he or she was associated with the payer at the end of the reporting period, information that would be helpful to the Department in determining whether the filer may be required to file a report the following year, thereby allowing the Department to conduct effective compliance assistance. The revised form no longer requests the filer to provide for each payer the state of incorporation/ registration or state business identification number. The Department has determined that filers may not have this information at hand and that asking them to obtain such information would impose an unnecessary burden. The Department has retained new items such as the entity's telephone number (Item I) and Web site address (Item J). The schedule also requires the information that would be found in the old form. The Department has also preserved the proposed form's requirement for the filers to indicate whether the union official (or spouse or minor child) had a continuing relationship with the employer, business, or labor relations consultant at the end of the reporting period.

*Part B—Schedule 2: Interests in, Payments From, Loans to or From, and Transactions or Arrangements with Employer or Business and Payments from a Labor Relations Consultant:* All filers must complete this schedule. This schedule replaces and renames Schedule 2 on the "Payer Detail Page" of the proposed form. The term "payer," as noted in the NPRM, was an awkward phrase; it is no longer needed in the

revised form. The proposed form required filers to identify reportable interests, payments, loans, transactions, and arrangements by the specific provisions of section 202 of the LMRDA.

As in the proposed form, the revised Schedule 2 requires the reporting of the date of each reportable payment and interest and whether it was received or held by the filer, his or her spouse, or his or her minor child; this information was not always reported on the old form. Language on this schedule clarifies the information that must be reported, the format in which the information must be reported, and references the instructions for further review of filing criteria. The layout of the schedule itself remains largely unchanged from the proposal, which in turn is derived from Items 7, 12, and 14 of the old form. The most significant change in the revised form's Schedule 2 is the deletion of Item C of the proposed form, which required the filer to indicate the subsection of section 202 of the LMRDA (A1–A6) that required the disclosure of each reported payment or interest. As explained in greater detail elsewhere in this preamble, this requirement was deleted in response to comments. Item C ''Description of Interest, Payment, Loan, Transaction, or Arrangement'' on the revised form is identical to Item D on the proposed form. Item D, ''Value'' on the revised form (Item E on the proposed form), has been divided to include separate columns for ''Value of Income or Other Payments'' and ''Value of Asset.'' The instructions for this item in Part IX clarify what must be reported in each column of Item D. The filer must add the data in the income column and in the asset column, and record these totals in Item F.

*Part B—Schedule 3: Employer's Relationship with Your Labor Organization:* This schedule must be completed only by filers who are completing Part B for payments from, or interests in, an employer (or a labor relations consultant to an employer). It replaces Schedule 3 from the proposed form, ''Payer's Dealings with Union(s), Trust(s), or Employer(s)'' with respect to employers. This schedule, unlike the old or proposed forms, provides a checklist of relationships between the filer's union and employers and businesses that will trigger a reportable interest. The relationships are culled from the language of sections 202(a)(1) through (a)(5) and from the Department's interpretation of section 202(a)(6).

In Item A the filer will check the appropriate box(s) describing the relationship between the employer and the filer's labor organization. This will clarify the exact nature of the relationship for both the filer and the reviewer of the form. Item B of the schedule asks for a detailed description of the dealings between the two entities. Item B(1) requests a dollar value of the transactions between the entities. If the employer's relationship with the filer's labor organization is based on the labor organization's representation of the employer's employees or actively seeking to represent the employees or if the relationship cannot otherwise be readily assigned a monetary value, the filer should enter ''N/A.'' The need for this schedule derives from the changes in the Department's interpretation and implementation of section 202(a)(6) as discussed elsewhere in this preamble.

Together with Schedule 4 that compiles similar information for reportable interests that arise from business relationships with a filer's union, this schedule, like the proposed Schedule 2, combines and simplifies information that is now collected in multiple items of the old form. Both the proposed form and the revision in today's rule asks filers to provide for each reportable matter the source of the payment or the specific interest, its recipient or holder (filer, spouse, or minor child), a description of the reportable matter, and its value. The schedule, as revised, also includes examples of reportable items, which should assist filers in determining the manner and detail in which reportable items should be identified and described.

*Part B—Schedule 4: Business's Dealings with Union(s), Trust(s), or Employer(s):* This schedule must be completed only by filers who are completing Part B for payments from, or interests in, a business that deals with the filer's labor organization, a trust in which the filer's labor organization is interested, or an employer whose employees the filer's labor organization represents or is actively seeking to represent. This schedule replaces the proposed Schedule 3, ''Payer's Dealings with Unions(s), Trusts(s), or Employer(s),'' with respect to businesses. The new Schedule 4 largely resembles its predecessor Schedule 3 in the proposed form, which combined and simplified information reported in Items 9, 10, and 11 of the old form. Item B now reads ''Union/Trust/Employer,'' rather than ''U/T/E.'' Filers are no longer required to compute and enter a total on the form for the value reported.

As noted above, this schedule, combined with Schedule 3 that compiles similar information for reportable interests and payments from employers, asks filers to identify for each reportable matter the source of the payment or the specific interest, its recipient or holder (filer, spouse, or minor child), a description of the reportable matter, and its value. Although the proposed form asked the filer to designate for each reportable matter the subsection under which the report was triggered, the revised form does not ask for such information. The schedule, as revised, also includes examples of reportable items, which should assist filers in determining the manner and detail in which reportable items should be identified and described.

*Labor Organizations in Which the Reporting Person is an Officer or Employee—Continuation Page:* This page is a continuation of, and is identical to, Item 4 on the revised Form LM–30. It is for use by a filer who is an officer or employee of more than one labor organization.

*Additional Information Schedule:* This schedule is identical in both the proposed and revised forms. It allows filers to provide additional information or explanations about other items in the form. This is similar to additional information items found on other OLMS forms, but the old Form LM–30 does not contain such an item.

*Summary Schedule Continuation Page:* The Department has eliminated this continuation page that was part of the proposed form, as the revisions to Item 5, the Summary, have removed the necessity for it.

*Schedule 2 Continuation Page:* The Department has retained a continuation page for the new Schedule 2.

*Schedule 4 Continuation Page:* The Department has added a continuation page for the new Schedule 4.

*Instructions Part I, Why File:* This part of the instructions is largely unchanged from the old and proposed forms.

*Instructions Part II, Who Must File and What Must Be Reported and Part III, Definitions:* Part II of the instructions has been amended in several significant ways from the proposed form. The Department has abandoned the layout of the instructions in the ''A1–A6'' format, and it has adopted an arrangement in which the instructions guide the filer according to the reporting requirements for payments from and interests in employers (and labor relations consultants) and businesses. Further, the Department has removed the definitions from Part II of the instructions, numbered them, and placed them in a new Part III. The reporting requirements in Part II cite the number and page of each of the definitions in Part III. Finally, the

Department has modified some of the definitions as earlier discussed in the preamble.

*Instructions Part IV, When to File:* This part has been renumbered from the old form, but no substantive changes have been made.

*Instructions Part V, Where to File:* This part has been renumbered from the old form, but no substantive changes have been made.

*Instructions Part VI, Public Disclosure:* This part has been renumbered from the old form and updated information, including the Internet Public Disclosure Room, has been added.

*Instructions Part VII, Officer or Employee Responsibilities and Penalties:* This part has been renumbered from the old form, but it is identical to the proposed form.

*Instructions Part VIII, Recordkeeping:* This part has been renumbered from the old form and a reference has been added to retaining electronic documents. A similarly worded statement is adopted as section 404.7 of the Department's regulations (to be codified at 29 CFR 404.7)). This represents a clarification of existing recordkeeping requirements, and is not intended as any change in the law governing the maintenance and retention of records.

*Instructions Part IX, Completing Form LM–30:* The Department has modified this part of the instructions, the former Part VIII of the proposed instructions, to correspond to the changes made to the revised Form LM–30.

### III. Regulatory Procedures

*A. Executive Order 12866*

This final rule has been drafted and reviewed in accordance with Executive Order 12866. The Department has determined that this rule is not an "economically significant" regulatory action under section 3(f)(1) of Executive Order 12866. Because compliance with the rule can be achieved at a reasonable cost to covered union officers and employees, the rule is not likely to meet the 3(f)(1) definition of having an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or state, local or tribal governments or communities. As a result, the Department has concluded that a full economic impact and cost/benefit analysis is not required for the rule under Section 6(a)(3) of the Order. However, the Department determined because of its importance to the public that this final rule is a significant

regulatory action under the Executive Order and therefore, it was reviewed by the Office of Management and Budget.

The burden imposed by the revision of the Form LM–30 is addressed in the Paperwork Reduction Act section, below.

The Department believes that increased transparency for union officers and employees will provide substantial benefits to union members and the union itself, as well as to outside academic researchers, members of the public, and other stakeholders. Transparency promotes the unions' own interests as democratic institutions. By these improvements, union members will obtain a more accurate picture of the personal financial interests of their union's officers and employees, as those interests may bear upon their actions on behalf of the union and its members. With this information, union members will be better able to understand any financial incentives or disincentives faced by their union's officers and employees and to make more informed choices about the leadership of their union and its management of its affairs. Through these actions, the Department effectuates the reporting obligation established by section 202 of the LMRDA and advances the Act's declared purpose "that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." Section 2(a) of the LMRDA, 29 U.S.C. 401.

*B. Small Business Regulatory Enforcement Fairness Act*

For similar reasons as those discussed in section A, the Department has concluded that this final rule is not a "major" rule under the Small Business Regulatory Enforcement Fairness Act of 1996 (5 U.S.C. 801 *et seq.*). It will not likely result in (1) An annual effect on the economy of $100 million or more; (2) a major increase in costs or prices for consumers, individual industries, Federal, State or local government agencies, or geographic regions; or (3) significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic or export markets.

*C. Unfunded Mandates Reform*

For purposes of the Unfunded Mandates Reform Act of 1995, this rule does not include a Federal mandate that might result in increased expenditures by State, local, and tribal governments,

or increased expenditures by the private sector of more than $100 million (adjusted for inflation) in any one year.

*D. Executive Order 13132 (Federalism)*

The Department has reviewed this rule in accordance with Executive Order 13132 regarding federalism and has determined that the rule does not have "federalism implications." The economic effects of the rule are not substantial and the rule does not have "substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government."

*E. Regulatory Flexibility Act*

The Regulatory Flexibility Act of 1980, 5 U.S.C. 601–612, requires agencies to prepare regulatory flexibility analyses, and to develop alternatives wherever possible, in drafting regulations that will have a significant impact on a substantial number of small entities, including "small businesses," "small organizations," and "small governmental jurisdictions." Today's rule revises the reporting obligations of union officers and employees, who, as individuals, do not constitute small business entities. Accordingly, the final rule will not have a significant economic impact on a substantial number of small business entities. Therefore, under the Regulatory Flexibility Act, 5 U.S.C. 605(b), a regulatory flexibility analysis is not required.

*F. Paperwork Reduction Act*

This statement is prepared in accordance with the Paperwork Reduction Act of 1995, 44 U.S.C. 3501 ("PRA"). *See* 5 CFR 1320.9. As discussed in the preamble to this final rule and the analysis that follows below, the rule implements an information collection that meets the requirements of the PRA in that: (1) The information collection has practical utility to labor organizations, their members, other members of the public, and the Department; (2) the rule does not require the collection of information that is duplicative of other reasonably accessible information to the extent practicable; (3) the provisions reduce to the extent practicable and appropriate the burden on union officials who must provide the information; (4) the form, instructions, and explanatory information in the eamble are written in plain language that will be understandable by reporting officials; (5) the disclosure requirements are implemented in ways consistent and

compatible, to the maximum extent practicable, with the existing reporting and recordkeeping practices of union officials who must comply with them; (6) the preamble and the instructions to the Form LM–30 inform union officials of the reasons that the information will be collected, the way in which it will be used, the Department's estimate of the average burden of compliance, which is mandatory for officials with reportable interests, the fact that all information collected will be made public, and the fact that officials need not respond unless the form displays a currently valid OMB control number; (7) the Department has achieved its plans for the efficient and effective management and use of the information to be collected, to enhance its utility to the Department and to the public; (8) the Department has explained why the method of collecting information is "appropriate to the purpose for which the information is to be collected"; and (9) the changes implemented by this rule make extensive, appropriate use of information technology "to reduce burden and improve data quality, agency efficiency and responsiveness to the public." *See* 5 CFR 1320.9; 44 U.S.C. 3506(c).

As discussed throughout the preamble, today's rule provides various benefits to unions, union members, this Department, and the public. The information has obvious utility for these groups, among other reasons, by ensuring more complete compliance by labor union officials with the LMRDA's reporting obligations. The rule provides for the collection of information in a way that is compatible with electronic reporting and the dissemination of this information to the interested community of users. In so doing, it better achieves the public disclosure purposes served by the Act's reporting provisions than the existing rule.

Although the effectiveness of today's rule depends, in large part, on a set of instructions for the Form LM–30 that is longer than the instructions for the old form, the additional length is largely the result of the inclusion of numerous definitions and examples, designed to assist filers in understanding their reporting obligations. The absence of this information in the instructions to the old form was a significant impediment to compliance by filers and the utility of reported data. The inclusion of this information in today's rule benefits filers and the public; any additional time required to read the instructions is a small burden in comparison to the knowledge provided filers and the predicted gains in the

numbers and completeness of the forms submitted to the Department.

The final rule more closely resembles the format of the old form than the form proposed by the Department. Unlike the proposed form, the form embodied in today's rule may be completed without need for the filer to identify the statutory provision that triggers a reportable interest. This change eliminates a concern by many commenters that the proposed form imposed unnecessary burdens on filers. Various other changes have been made to the form that was proposed and its accompanying instructions. The Department has achieved its goal of designing a rule that meets the disclosure purposes intended by Congress—the complete and meaningful reporting of information about actual or potential conflicts of interest between a union official's personal financial interests and the official's duty to his or her union and its members. Moreover, this goal has been achieved without imposing any unnecessary burden on union officials. While the Department believes that the form and instructions provide ready answers to typical questions that may rise in completing the form, the Department has a robust compliance assistance program in place to assist filers in timely and correctly fulfilling their reporting obligations.

Most of the information collected by the form is unavailable in any other public document; to the extent there may be some overlap with reports required by fiduciaries under other laws, the duplication, albeit minimal, is unavoidable. The rule's recordkeeping requirements are identical to the old rule with the exception of the requirement that filers preserve any electronic information used to complete the form. This requirement is consistent with contemporary recordkeeping standards and elicited no unfavorable comment.

The Department's NPRM in this rulemaking contained initial Regulatory Flexibility Act and PRA analyses, which were submitted to and reviewed by OMB. Based upon careful consideration of the comments and the changes made to the Department's proposal in this final rule, the Department has made significant adjustments to its burden estimates. The costs to the Department for administering the reporting requirements of the LMRDA also were adjusted.

Pursuant to the PRA, the information collection requirements contained in this final rule have been submitted to OMB for approval. Within 30 days of the date of publication of this final rule, you may direct comments by fax (202–

395–6974) to: Desk Officer for the Department of Labor/ESA, Office of Management and Budget.

*Summary:* This final rule modifies the public financial disclosure reports that section 202 of the LMRDA requires to be filed by labor union officers and employees for each fiscal year in which they have certain holdings, receive certain payments or income, or engage in certain financial transactions or arrangements. The revised paperwork requirements are necessary to reduce the errors and deficiencies in the reports, raise the number of union officials that comply with the reporting requirements, and increase the transparency of the financial practices of such officials. More accurate reports and increased transparency will allow union members to view the information needed by them to monitor their union's affairs and to make informed choices about the leadership of their union and its direction. Such improvements promote the unions' own interests as democratic institutions and the interests of the public and the government. Financial disclosure deters fraud and self-dealing, and facilitates the discovery of such misconduct when it does occur. Increased compliance will be achieved by clarifying the form and instructions, offering numerous examples to guide filers, deleting or limiting exceptions that allowed some financial matters that posed conflicts of interest to go unreported, and organizing the information in a more useful format. For a more detailed discussion of the purposes served, and benefits achieved, by the changes to the Form LM–30, its instructions, and related Department regulations, see the discussion above at Section I.C.1.

The revised Form LM–30 and instructions that will implement the new reporting requirements are published as an appendix to today's final rule. The electronic versions of the revised Form LM–30 and instructions are now available on the OLMS Web site at *http://www.olms.dol.gov.*

*Background:* The Form LM–30 is used by officials of labor unions to comply with the Act's requirement that such a union official annually disclose specified payments or other financial benefits received by the official, his or her spouse, or minor children from employers and businesses where such payments or other financial benefits pose actual or potential conflicts between an official's personal financial interests and the interests of the official's union and its members. Subject to specified exceptions, the interests, incomes, transactions, and arrangements subject to reporting

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36153**

comprise: (1) Payments or benefits from, or interests in, an employer whose employees the filer's union represents or is actively seeking to represent; (2) transactions involving interests in, or loans to or from, an employer whose employees the filer's union represents or is actively seeking to represent; (3) interests in, income from, or transactions with a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent; (4) interests in, income from, or transactions with a business that deals with the filer's union or a trust in which the filer's union is interested; (5) transactions or arrangements with an employer whose employees the filer's union represents or is actively seeking to represent; and (6) payments from an employer or labor relations consultant. *See* section 202(a)(1)–(6).

Overview of Changes to Form LM–30 and Summary of the Need for the Rule: The revised Form LM–30 and instructions define terms used in the form, provide examples to assist the filer in identifying reportable financial events, and remove or limit certain exceptions that allowed financial matters of interest to union members to go unreported under the current reporting scheme. A detailed discussion of the proposed and revised forms and instructions is set forth at Section II.N. herein.

*Estimated Universe of Filers:* The Department initially estimated that it would receive 2,046 Form LM–30 reports per year as a result of the final rule. This figure was based on the then current estimated filing rate of 0.03% of all union officers and employees plus an expected increase in the Form LM–30 filing rate to 1% as a result of the proposal. *See* 70 FR 51199. For the final rule, a revised estimate, based on the public comment and the number of Form LM–30s filed with the Department during fiscal year 2006 has been used. During fiscal year 2006, the Department received 4,348 Form LM–30 reports, 882 of which did not contain information on any transaction or interest, i.e., blank reports, resulting in a total of 3,466 valid Form LM–30 reports filed during fiscal year 2006.[1] As explained in the following paragraphs, the Department considered key aspects of the final rule and assessed the impact of the revised reporting provisions by estimating the relative frequency that such provisions

would result in filings. In making these estimates, the Department relied upon information it has previously used in determining paperwork estimates: the number of unions filing annual financial reports (21,792) and the number of officials (204,634) serving these unions.[2] *See* 70 FR 51171. Applying this methodology as discussed below, the Department estimates that under today's rule, it will receive 3,450 additional Form LM–30 reports. Thus, the Department estimates that a total of 6,916 revised Form LM–30 reports will be filed annually.

In the NPRM, the Department estimated that the clarification of the Form LM–30, the defined terms, the addition of examples that illustrate reportable and nonreportable transactions, and the removal of administrative filing exemptions would increase the number of individuals who file the Form LM–30. *See* 70 FR 51199. Using the best data available, the Department estimated that there are 204,634 union officers and employees. Further, based on the Department's receipt of approximately 61 reports annually (the annual average for fiscal years 2001–2005), the Department estimated a current filing rate of 0.03% (61/204,634 × 100 = 0.03%). Due to the proposed reforms, as well as increased compliance assistance and enforcement initiatives, the Department estimated that the filing rate would increase to approximately 1%, or 2,046 reports filed annually. The NPRM estimate was based on the opinion of some stakeholders that relatively few union officers and employees would be engaged in covered transactions. *Id.* The Department acknowledged the considerable uncertainty in this estimate and requested comment on the number of reports that should be filed under the old requirements and that may be filed as a result of the new requirements. *Id.* The comments received on the proposed rule have proven only marginally helpful in predicting how today's rule will affect the future number of Forms LM–30 filed annually.

*Review of Public Comments on the Estimated Universe of Filers and Resulting Changes:*

One commenter questioned the Department's estimate of the proposed universe of filers, arguing that the Department does not have relevant historic data on which to base its estimates, but is rather basing its expectations on the limited study discussed in the NPRM. Both for the proposed rule and today's rule, the Department has forecast the number of expected filers as accurately as possible based on available data. The Department has revised its initial estimates of the number of expected filers by using data on the number of reports filed with OLMS during fiscal year 2006. During that time, the Department received 4,348 Form LM–30 reports, 882 of which were blank. As demonstrated below, the Department has adjusted its estimated universe of filers based on this figure and input received from commenters.

A number of commenters argued that the proposed universe of filers and the corresponding reporting and recordkeeping burdens, as discussed in the NPRM, were too low given that the proposed de minimis exception, *i.e.*, the threshold below which a payment would not be reportable, was limited to payments of $25 or less. Commenters suggested that a de minimis level set at that amount would lead to a much higher incidence of filings than anticipated by the Department. One commenter pointed out that a $250 de minimis level, especially with a two-tiered approach, would result in a reduced compliance burden. In response to comments received on this point, the Department has replaced the proposed $25 de minimis test with a two-tiered approach. Under this approach, a filer must report aggregated payments or other financial benefits received from a single source that exceed $250. Payments of $20 or less are excluded from this computation. Further, union officials will not have to report hospitality benefits received while attending certain widely attended gatherings. As noted herein at Section II.C of the preamble, after the comment period for this rule closed, the Department issued guidance alerting filers, in effect, that they need report only payments that exceeded $250. This guidance was posted on the OLMS Web site on November 7, 2005 and disseminated through the OLMS e-mail listserv. Consequently, the Department has had a full year to gauge the impact of a $250 filing threshold. Not surprisingly, as a result of the implementation of the $250 de minimis

---

[1] Through increased compliance assistance efforts explaining that a report need only be filed to report certain transactions and that filing blank forms is unnecessary, the Department intends to eliminate or minimize the filing of blank reports.

[2] Both figures have been obtained from the Department's Electronic Labor Organization Reporting System database ("eLORS"), which stores and automatically culls certain information, such as union officer and employee salaries, from annual reports submitted by labor organizations. The total number of labor organizations has been used in the Department's submission to OMB for continuing PRA approval of OLMS forms. This information is based on FY 2005 data. The number of union officials was based on a query of applicable data in the eLORS system. This same figure was used in the NPRM's PRA analysis. *See* 70 FR 51199.

approach, there have been fewer filers reporting payments between $25 and $250. Thus, contrary to the suggestion of some commenters, no upward adjustment to the recordkeeping and reporting burden need be made for reasons associated with the de minimis level, as proposed. Moreover, the $250 threshold and the exclusion of payments of $20 or less from this threshold will lead to fewer filings than expected by commenters.

In the NPRM, the Department proposed that union officials must report all payments received from any employer or vendor with a relationship with any level of his or her union or with any trust in which any level of his or her union is interested. This would require, for example, that a local union president report payments received from a vendor that does business with the official's parent or intermediate union. The rule proposed to achieve this result by defining the term ''labor organization'' broadly. Several commenters submitted that the ramifications of implementing the proposed definition of ''labor organization'' could lead to requiring filers to account for transactions vastly exceeding the estimated burden in the NPRM. One of these commenters presented a hypothetical scenario that would result in a union official having to account for possible transactions with over 10,000 employers or businesses for not only himself or herself, but for a spouse and minor children as well.

This comment appeared to be premised on the belief that all businesses and employers associated with any entity within a union's hierarchy will need to be tracked by the officer or employee. This is not the case. The union official does not need to research and maintain records with all involved businesses or employers, but only those with whom he or she is in a reportable relationship or from which he or she has received a reportable payment. The maximum burden on an officer or employee, in this regard, is to check the identity of these employers and businesses. Further, some commenters submitted that compliance burdens would be substantially lessened by modifying the proposed definition of ''labor organization'' to eliminate the language ''and any parent or subordinate labor organization of the filer's labor organization.'' In response to comments received on this issue, the final rule has reduced the reporting obligations from that proposed. The rule requires that a local union official track and report payments from only businesses that deal with their local union, trusts of their local union, and

employers represented by, or actively being organized by, their local union. This tracks the reporting obligations under the old rule, and does not increase the reporting burden based on a broader definition of ''labor organization.'' See discussion at Section II.F of the preamble.

*Officers* of international unions and intermediate unions (but not employees) will also have to report any payments they receive from (1) An employer whose employees any subordinate labor union represents or is actively seeking to represent; (2) a business that buys from, sells to, or otherwise deals with any subordinate labor union; and (3) a business that buys from, sells to, or otherwise deals with a trust in which any subordinate labor union is interested, such as a pension or welfare plan or training fund. Employees of national, international, and intermediate labor unions do not have to track and report payments resulting from actions involving subordinate levels of the union.

As for the reporting impact of this provision, the Department estimates a slight increase in the number of reports. The largest portion of this increase is most likely to come from officers of intermediate labor unions. For these officers, the rule is new. Since 1962 international officers have been required to report on Form LM–30 income from businesses dealing with subordinate unions of that international. Therefore, increased filing under this provision by officers of international unions will be attributable to increased compliance assistance and enforcement efforts, and not to the final rule.

Many of the same commenters asserted that the NPRM did not address compliance costs and time for businesses to enact internal controls, which could entail substantial costs. Employers, including service providers, have been under the same reporting requirements since 1963 and no changes are being made to these requirements. Employer reporting requirements are governed by section 203 of the LMRDA. This rulemaking adjusts union officer and employee reporting under section 202 of the LMRDA. Therefore, not only is there no need to raise PRA estimates for employer recordkeeping, such estimates are not within the scope of this rulemaking.

One commenter submits that compliance burdens will be substantially lessened by determining that trusts are not ''businesses'' or ''employers.'' As explained in the preamble, trusts with employees are considered to be employers. The Department's views on whether the

LMRDA requires disclosure of payments from trusts to union officials have evolved over time. In correspondence issued in 1967, a high ranking Department official responded to an inquiry concerning whether reporting is required of officers of labor unions who receive payments from union and employer established pension and welfare plans. The letter concluded that no report was required. On June 27, 2005, OLMS placed on its Web site a document titled ''Trusts and Form LM–30 and Form LM–10.'' In this guidance, OLMS indicated that payments from trusts to union officers and employees are reportable on Form LM–30 if the trust is an employer or business. As part of this rulemaking, the Department sought comments on whether a trust is, or can constitute, an ''employer'' or a ''business,'' making such payments reportable on the Form LM–30. These comments, and the determination that a trust or similar entity with employees is an employer for purposes of the Act, are addressed in depth in the preamble at section II.K.

No commenters provided estimates for the number of trusts that constitute ''employers'' and make reportable payments. Although the comments provided some anecdotal information particular to some unions, no information was provided that would allow the Department to estimate the total number of trusts that would be employers and none that would allow an estimate of the numbers of union officials now receiving payments from such entities. For example, one international union stated that there are ''380 Local or Council * * * Pension, Annuity, Health and Welfare, and training trusts in the U.S.'' Another commenter identified four trusts it co-sponsored. Another international union indicated that ''although some large trust funds happen to have employees, many do not.'' Finally, yet another international union explained that it and its affiliated district councils and local unions participate in ''numerous benefit funds.'' There is no basis to believe that other unions have trusts in the same proportion as theses unions. Moreover, no information was received that would enable an estimate as to what fraction of these trusts have employees or the number of union officials to whom reportable payments are made.

Payments received by an officer or employee of a labor union from the employer of the union's members for work performed by the union officer or union employee for the union will now be reportable unless they are made pursuant to a collective bargaining

agreement and total 250 hours or less per year. For the proposition that such provisions are common, a federation of labor organizations submitted a study, Major Collective Bargaining Agreements: Employer Pay and Leave for Union Business, U.S. Dept. of Labor, Bureau of Labor Statistics (October 1980) ("*BLS Study*"). Notwithstanding the significant period of time that has passed since the study's publication, it represents the most recent compilation of data on the union-leave/no-docking question. Furthermore, more recent papers on this issue focus on public sector unions, which, as previously noted, are generally not subject to the LMRDA, and thus such information is not readily transferable to the particular circumstances addressed by today's rule. The *BLS Study* (at pages indicated in parentheses) provides the following information:

• Of 1,765 agreements reviewed, 803, or 45 percent, granted pay for grievance time (6)

• Of 430 sample agreements examined in detail, 206 established pay for at least some grievance work (6)

• Of 206 sample clauses, 188 limited pay to either specific union representatives or to a fixed number of representatives (7)

• A substantial number of the 206 sample pay clauses limited the amount of paid time available for grievance activity by type of activity or eligible personnel (7) or by the amount of time one could spend on union work (7–9)

• Of the 1,765 agreements in the study, arbitration provisions appeared in 95 percent, but pay to union representatives for time spent appeared in only 3% (11)

• Of 1,765 agreements, 139 established time off with pay for union negotiators (7.8%) (12)

• Of 618 safety and health committee provisions reviewed, 281 referred to paid time for the activity (45%) (13)

• Of 1,765 agreements, 93 referred to training related to union business; half of these provide company pay (93/2 = 46.5) (46.5/1,765 = 2.6%) (17)

While it is clear from the *BLS Study* that the collective bargaining agreements under review contained a high number of union-leave/no-docking provisions, neither the study nor the comments provide a basis for estimating how many of these agreements will result in the filing of a Form LM–30.

The study demonstrates that 45% of these collective bargaining agreements grant union leave in at least one category (as outlined, 45% of provisions provided union leave for grievances and health and safety). However, a substantial but unspecified number of

the clauses reviewed in 1980 by BLS limited the amount of paid time available (*Id.*, at 7–9). The *BLS Study*, however, does not discuss provisions representative of such limitations or otherwise indicate typical limits on the amount of time allowed for these purposes. As there was no information in the study or from commenters pertaining to the average amount of time that an individual would be engaged in union-leave or no-docking activity, the Department has no benchmark to gauge the number of filers that will submit reports under today's rule, *i.e.*, those who receive employer compensation for more than 250 hours of union activity under a collective bargaining agreement or who receive compensation, in any amount, for such activity, where it is not authorized by such agreement. It is the Department's belief that with this reporting threshold only a small fraction of union officials receiving such payments will have to file reports. Such officials likely will be serving in local or intermediate union positions; again, however, the Department lacks data to predict a percentage of such officials that receive such compensation or the smaller number that will receive compensation in excess of 250 hours.

Similarly, as discussed in the preamble, union members who receive payments from an employer for work performed on behalf of the union will now be considered union employees for Form LM–30 reporting purposes. A federation of labor organizations submitted that 100,000 union stewards out of 5.5 million members belonging to affiliated unions currently receive union-leave or no-docking payments. This comment appears to have overstated the number of affected stewards as it included unions representing state and local government employees that are not subject to the LMRDA. Another federation of labor organizations, while not directly commenting on the potential universe of filers, stated that this provision could result in "tens of thousands" of reports. Further, while both federations submit that there are many stewards who receive payments for union activity, the Department is unable to deduce from these comments how many stewards would already be subject to Form LM–30 reporting requirements because they currently meet the definition of union officer or employee. Therefore, the Department is unable to use information provided in these comments to derive an estimate of the number of individuals who will now be union employees because they receive union-leave or no-docking payments, much less how many

of these payments are made outside of a collective bargaining agreement or total more than 250 hours per year.

As discussed in the preamble, certain exceptions are no longer applicable to all provisions of the revised Form LM–30; specifically, the "bona fide employee" exception for reports due under section 202(a)(2) and the "employee discount-regular course of business" exception for reports due under sections 202(a)(1) and (2). Based on the low number of comments received on the removal of these exceptions, which are addressed above, and the absence of any comments estimating the number of reports this change would result in, the Department does not foresee a substantial increase resulting from the removal of these exceptions. As explained in the preamble, sales and purchases of ownership interest in the employer, in particular, are unlikely to constitute payments received as a bona fide employee and thus the exception in the current form for reports filed under section 202(a)(1) is all but superfluous in the context of ownership interests. *See* Section II. D.2. Bona fide employees typically do not routinely engage in transactions involving holdings or loans that could be characterized as a payment or benefit received as a bona fide employee of the employer, and, as a result, the filing burden will not be onerous. The lack of comments objecting to this change seems to support these points.

Similarly, only three comments were received on the proposed removal of the "employee discount-regular course of business" exception, for reports due under sections 202(a)(1) and (2), one of which was supportive of the removal. As discussed earlier in the preamble, section 202(a)(5) of the LMRDA requires union officers and employees to report any "business transaction or arrangement" with an employer whose employees the union represents or is actively seeking to represent. This section exempts from reporting two categories of transactions and arrangements: (1) Payments and benefits received as a bona fide employee of an employer whose employees are represented by the official's union or the union actively seeks to represent; and (2) "purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer." The current instructions apply this "employee discount—regular course of business" exception to the requirement that union officers and employees report (1) Holdings, (2) transactions in holdings, (3) loans, and (4) income or

**36156**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

any other benefit with monetary value (including reimbursed expenses). In so doing, the instructions exempt from reporting certain matters that otherwise would be reported under section 202(a)(1) or 202(a)(2). These sections do not contain this ''regular course of business'' exception, but the prior instructions made it applicable. Again, given the lack of comments regarding these changes, the Department anticipates only a slight increase in the number of reports received as a result of this revision.

In summary, as discussed previously, in the NPRM the Department estimated a then current filing rate of .03% based on the receipt of 61 Form LM–30 reports (the average for fiscal years 2001 to 2004) per 204,634 union officers and employees. Due to the proposed reforms as well as increased compliance assistance and enforcement initiatives, the Department estimated that the filing rate would increase to approximately 1%, or 2,046 reports filed annually. Subsequent to the NPRM, the Department engaged in increased compliance assistance and enforcement, and the number of valid reports received in fiscal year 2006 reached 3,466. This results in an estimated current filing rate of 1.69% (3,466 / 204,634 × 100 = 1.69%).

Taking the concerns of commenters into account in regard to the implementation of substantive reporting requirements which were not previously applicable, specifically union-leave/no-docking, expanded obligations for intermediate officers, removal of the two administrative exceptions, reporting by union stewards paid by employers for union work, and considering trusts, labor organizations, and other groups as employers in certain circumstances, the Department estimates that the Form LM–30 filing rate will increase to as much as 3.38%, or 6,916 reports filed annually, double the current filing rate. It is worth noting that the implementation of the $20 tiered *de minimis* threshold, under which no transaction, including aggregated transactions (subject only to the exception for a tacit or express agreement for the transfer of money, as discussed in section II.C of the preamble), militates against an even

higher estimated number of overall filers.

*Review of Public Comments Regarding the Hour and Cost Burden Estimates for the Revised Form and Resulting Changes:*

In the NPRM, the Department proposed five minutes as the estimated amount of time for filers to report the employer's or business's name, address, name of contact at the employer or business, telephone number, Web site address, State of incorporation or registration, State business ID number, and whether the filer had an association with the business, employer, or labor relations consultant at the end of the reporting period. A number of commenters submitted that it would be especially burdensome, and possibly needless, to obtain the State of incorporation and State employer identification number. As such, these commenters suggested that the time allotted to gather the required information on an employer or business was insufficient. One commenter submitted that providing a telephone number and Web site address would not add any substantial reporting burden. Based on comments received on this issue, the Department has removed the requirement that filers report an employer's or business's State of incorporation and State employer identification number. With these items removed, there is no need to provide for corresponding additional recordkeeping and reporting time.

One commenter submitted that 90 minutes for completion of the Form LM–30 is not an accurate estimate. Another submitted that allowing 45 minutes for reading the instructions is insufficient time as the filer must refer back to earlier provisions in the instructions and the instructions have increased from 9 pages to 17. While this commenter argued that the proposed burden hour estimates were too low for the proposed requirements, no alternative burden hour estimates were submitted for any area of the rulemaking. The Department has changed the Form LM–30 from the NPRM proposal to add more instructions to the form itself. Because the form itself will be clearer, the amount of time a filer must spend studying the separate instructions will

be reduced. Prior to this final rule, Form LM–30 was estimated to take filers roughly 30 minutes while the proposed revised form was estimated to require 90 minutes for completion, which is a 300% increase in the allotted time.

One commenter submitted that expanding the form to provide for six categories instead of three would add compliance burdens that are not accounted for in the NPRM. The Department has not implemented this proposed change; the six categories have been eliminated from the form itself. Rather, the Form LM–30 will utilize one schedule, Schedule 2, to detail ''interests in, payments from, loans to or from, and transactions or arrangements with an employer or business and payments from a labor relations consultant.'' No new information is required as a result of the format change; instead of reporting information in one of three categories, filers will report the same information in one schedule, but with greater clarity as to the nature of the transaction. Therefore, there is no corresponding additional burden.

It is also worth noting the implementation of the $20 tiered *de minimis* threshold, under which records need not be maintained for holdings or transactions, including aggregated transactions, of $20 and under. While this provision did not appear in the NPRM, commenters, as discussed above, nearly universally suggested that a tiered *de minimis* threshold would reduce the recordkeeping burden, or alternatively, prevent the need for increased recordkeeping estimates. The Department agrees with the latter opinion.

The following table describes the information sought by the revised form and instructions and the amount of time estimated for completion of each item of information. The time estimates include the additional time burdens associated with the Department's curtailment of administrative exceptions, and the implementation of the revised definitions.[3]

---

[3] These figures assume that a filer will choose to use an electronic form, which provides greater efficiency than completion by hand. The Department estimates that a filer who chooses to file by hand will need about ten additional minutes to complete the form.

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36157**

| Burden description | Time |
|---|---|
| Maintaining and gathering records ................................................................................................................................ | 20 minutes. |
| Reading the instructions to determine whether filer must complete the form ................................................................ | 15 minutes.[4] |
| Additional reading of the instructions to determine how to complete the form ............................................................... | 40 minutes.[5] |
| Reporting filer's file number in Item 1 .......................................................................................................................... | 30 seconds. |
| Reporting filer's fiscal year in Item 2 ........................................................................................................................... | 30 seconds. |
| Reporting filer's name, address, and contact information in Item 3 (A–I) ...................................................................... | 2 minutes. |
| Reporting name, file number, and address of filer's union or unions as well as filer's current position in the union in Item 4 (A–H) | 2 minutes. |
| Adding the total value of all assets and the value of all income or other payments in all Schedules 2 (as described below) and reporting the two totals in Item 5, Summary. | 2 minutes. |
| Indicating whether there was a reportable involvement with an employer or labor relations consultant during the fiscal year, and if so, recording the number of employer(s) and consultant(s), in Item 6. | 2 minutes. |
| Indicating whether there was a reportable involvement with a business during the fiscal year, and if so, recording the number of businesses in Item 7. | 2 minutes. |
| Reporting name and address of the employer or business which the filer received a payment from or held an interest in, providing the contact name, telephone number, Web site address, and whether filer has an association with the business, employer, or labor relations consultant at the end of the reporting period in Schedule 1. | 5 minutes. |
| Reporting the nature and value of interests in, payments from, loans to or from, and transactions with an employer or business and payments from a labor relations consultant (includes date, whether the party to the transaction is a union officer or employee or spouse or minor child thereof, and a description and value of the interest or payment) in Schedule 2. | 5 minutes. |
| Completing *either* Schedule 3 if an employer or labor relations consultant is reported in Schedule 1, providing details of the employer's relationship with the filer's labor union; *or* Schedule 4 if a business is reported in Schedule 1, providing details regarding the entity the business dealt with (union, trust, or employer) and a description of those dealings. | 8 minutes. |
| Filer's signature, date and telephone number in Item 8 .................................................................................................. | 1 minute. |
| Checking responses ....................................................................................................................................................... | 5 minutes. |
| Total Burden Hour Estimate Per Filer ............................................................................................................................ | 120 minutes. |

The recordkeeping estimate of 20 minutes reflects that the majority of financial books and records required to complete the report are those that filers would maintain in the normal course of conducting business, personal, and union affairs, and thus should only take five minutes to maintain and gather. The other 15 minutes have been estimated to be necessary to maintain and gather the books and records that would not ordinarily be maintained, including those concerning the dealings between a business and the filer's union, a trust in which the filer's union is interested, or an employer whose employees the union represents or is actively seeking to represent. The estimated times are for the average filer: the Department assumes that an individual who partially owns or receives income from a company will know that company's Web address. Where a filer does not have a web

address immediately accessible, the Department estimates that a filer will need to obtain this information either by telephone or Internet search; however if a union officer receives a gift like sporting event tickets, the gift is likely an effort to obtain business, therefore, the giver will likely make his or her business known to the recipient through a business card, e-mail, etc.

The resulting annualized reporting and recordkeeping burden for all Form LM–30 filings is 829,920 minutes (6,916 × 120) or 13,832 hours (829,920/60).

While annual salary information for labor union officers and employees is available on annual financial reports filed with the Department (Forms LM–2, LM–3, and LM–4), hourly rates are not reported. Further, officers and employees receiving less than $10,000 do not appear on every form; therefore, only the roughest estimates could be made using these forms to determine the average hourly rate for covered officers and employees. Instead, the Department used the $22.34 mean hourly earnings of those engaged in white collar occupations as defined and published in the National Compensation Survey: *Occupational Wages in the United States* (July 2004, Bureau of Labor Statistics, U.S. Department of Labor, August 2005). Using this figure, the Department estimates that the annual reporting and recordkeeping cost burden for all filers will be $309,007 (10,374 × $22.34), or $44.68 per filer ($309,007/6,916).

In addition, the Department estimates that all union officers and employees will spend 15 minutes reading the

revised form and instructions to determine whether they are required to file a report and 25 minutes reviewing any applicable receipts and determining that aggregated payments from an employer or business did not exceed the $250 *de minimis* threshold. By deducting the 6,916 estimated filers whose preliminary review of the form has already been counted from the estimated 204,634 union officers and employees, 197,718 officers and employees remain who will review the form and their records but determine that they are not required to file a report. The annual reporting and recordkeeping hour burden for these officers and employees will be 5,931,540 minutes (30 × 197,718) or 98,859 hours (5,931,540/60). Using the $22.34 hourly wage, the Department estimates that the annual reporting and recordkeeping cost burden for non-filing union officers and employees will be $2,208,510 (98,859 × $22.34), or $11.17 per non-filing union officer or employee ($2,208,510/197,718).

The resulting total annual reporting and recordkeeping hour burden for both filers and those who review the form and determine that a report need not be filed will be 112,691 hours (13,832 (hours for filers) + 98,859 (hours for non-filers)). The total annual reporting and recordkeeping cost burden will be $2,517,517 (112.69 × $22.34).

*Federal Costs Associated with the Rule:*

The estimated annualized Federal cost of the Form LM–30 is $1,025,837. This represents estimated operational expenses such as equipment, overhead,

---

[4] This estimate is for all filers, including first time filers and subsequent filers. While the Department considered reducing this estimate by about one-third for filers submitting reports in subsequent years following a first-time filing, the nature of Form LM–30 reporting militated against such a decision. Where the Department has previously made reductions for subsequent year filings, it generally applied to organizational reporting and not individual reporting. LMRDA organizational reporting, such as the Form LM–2 or Form LM–3, is a required annual event whereas an individual may not necessarily engage in Form LM–30 reportable transactions on an annual basis. Where an organization files required annual reports, a certain amount of "institutional memory" is present which may not be applicable to a filer who is only required to file a report when certain criteria are met.

[5] *See* preceding note 4.

and printing as well as salaries and benefits for the OLMS staff in the National Office and field offices who are involved with reporting and disclosure activities. These estimates include time devoted to: (a) Receipt and processing of reports; (b) disclosing reports to the public; (c) obtaining delinquent reports; (d) obtaining amended reports if reports are determined to be deficient; (e) auditing reports; and (f) providing compliance assistance training on recordkeeping and reporting requirements.

### G. Executive Order 13045 (Protection of Children From Environmental Health Risks and Safety Risks)

In accordance with Executive Order 13045, the Department has evaluated the environmental safety and health effects of the final rule on children. The Department has determined that the final rule will have no effect on children.

### H. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)

The Department has reviewed this final rule in accordance with Executive Order 13175, and has determined that it does not have ''tribal implications.'' The rule does not ''have substantial direct effects on one or more Indian tribes, on the relationship between the Federal government and Indian tribes, or on the distribution of power and responsibilities between the Federal government and Indian tribes.''

### I. Executive Order 12630 (Governmental Actions and Interference With Constitutionally Protected Property Rights)

This final rule is not subject to Executive Order 12630, Governmental Actions and Interference with Constitutionally Protected Property Rights, because it does not involve implementation of a policy with takings implications.

### J. Executive Order 12988 (Civil Justice Reform)

This regulation has been drafted and reviewed in accordance with Executive Order 12988, Civil Justice Reform, and will not unduly burden the Federal court system. The regulation has been written so as to minimize litigation and provide a clear legal standard for affected conduct, and has been reviewed carefully to eliminate drafting errors and ambiguities.

### K. Environmental Impact Assessment

The Department has reviewed the final rule in accordance with the requirements of the National Environmental Policy Act (''NEPA'') of 1969 (42 U.S.C. 4321 *et seq.*), the regulations of the Council on Environmental Quality (40 U.S.C. part 1500), and the Department's NEPA procedures (29 CFR part 11). The final rule will not have a significant impact on the quality of the human environment, and, thus, the Department has not conducted an environmental assessment or an environmental impact statement.

### L. Executive Order 13211 (Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use)

This final rule is not subject to Executive Order 13211, because it will not have a significant adverse effect on the supply, distribution, or use of energy.

### List of Subjects in 29 CFR Part 404

Labor union officer and employees, Recordkeeping and reporting.

### IV. Text of Final Rule

■ In consideration of the foregoing, the Office of Labor-Management Standards, Employment Standards Administration, Department of Labor hereby amends part 404 of title 29 of the Code of Federal Regulations as set forth below.

## PART 404—LABOR ORGANIZATION OFFICER AND EMPLOYEE REPORTS

■ 1. The authority citation for part 404 is revised to read as follows:

**Authority:** Secs. 202, 207, 208, 73 Stat. 525, 529 (29 U.S.C. 432, 437, 438); Secretary's Order No. 4–2001, 66 FR 29656 (May 31, 2001).

### § 404.1 [Amended]

■ 2. Section 404.1 is amended by:
■ a. Redesignating existing paragraph (b) as new paragraph (h) and adding the phrase ''An officer is:'' at the end thereof;
■ b. Adding new paragraphs (h)(1) through (h)(4) to read as set forth below;
■ c. Adding a new paragraph (b) to read as set forth below;
■ d. Redesignating existing paragraph (c) as new paragraph (g) and adding the phrase ''within the meaning of any law of the United States relating to the employment of employees'' to the end of newly designated paragraph (g);
■ e. Redesignating existing paragraph (d) as new paragraph (c);
■ f. Redesignating existing paragraph (a) as new paragraph (d);
■ g. Adding a new paragraph (a) to read as set forth below;
■ h. Adding new paragraphs (e), (f), (i) and (j) to read as set forth below.

The additions and revision read as follows:

### § 404.1   Definitions.

(a) Benefit with monetary value means anything of value, tangible or intangible, including any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind. For reporting purposes, the following are excepted: pension, health, or other benefit payments from a trust that are provided pursuant to a written specific agreement covering such payments.

(b) Dealing means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade, including solicitation of business.

\*      \*      \*      \*      \*

(e) Income means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards.

(f) Labor organization means the local, intermediate, or national or international labor organization that employed the filer of the Form LM–30, or in which the filer held office, during the reporting period, and, in the case of a national or international union officer or an intermediate union officer, any subordinate labor organization of the officer's labor organization.

\*      \*      \*      \*      \*

(h) \*   \*   \*

(1) A person identified as an officer by the constitution and bylaws of the labor organization;

(2) Any person authorized to perform the functions of president, vice president, secretary, or treasurer;

(3) Any person who in fact has executive or policy-making authority or responsibility; and

(4) A member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

(i) Minor child means a son, daughter, stepson, or stepdaughter under 21 years of age.

(j) Trust in which a labor organization is interested means a trust or other fund or organization:

(1) Which was created or established by a labor organization, or one or more

of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and

(2) A primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

### § 404.4   [Removed and reserved]

■ 3. Section 404.4 is removed and reserved.

### § 404.7   [Amended]

■ 4. Section 404.7 is revised to read as follows:

### § 404.7   Maintenance and retention of records.

Every person required to file any report under this part shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Office of Labor-Management Standards may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, financial and investment statements, contracts, correspondence, and applicable resolutions, in their original electronic and paper formats, and any electronic programs by which they are maintained, available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.

Signed at Washington, DC, this 22nd day of June, 2007.

**Victoria A. Lipnic,**

*Assistant Secretary for Employment Standards.*

Signed at Washington, DC, this 22nd day of June, 2007.

**Don Todd,**

*Deputy Assistant Secretary for Labor-Management Programs.*

**Note:** The following appendix will not appear in the Code of Federal Regulations:

### Appendix—Form LM–30 and Instructions

BILLING CODE 4510–CP–P

U.S. Department of Labor
Employment Standards Administration
Office of Labor-Management Standards
Washington, DC 20210

Form Approved
Office of Management
and Budget
No. 1215-0188
Expires xx-xx-xxxx

# FORM LM-30 LABOR ORGANIZATION
## OFFICER AND EMPLOYEE ANNUAL REPORT

This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

PLEASE READ THE INSTRUCTIONS CAREFULLY, ESPECIALLY PART IX (PAGES 14 - 18), BEFORE PREPARING THIS REPORT. YOU ARE NOT REQUIRED TO FILE THIS REPORT UNLESS YOU, YOUR SPOUSE, OR MINOR CHILD HAVE RECEIVED A PAYMENT, ENGAGED IN ANY TRANSACTIONS OR ARRANGEMENTS OR HELD AN INTEREST OF THE TYPES DESCRIBED IN PART II OF THE INSTRUCTIONS (PAGES 1 - 9).

## PART A

For Official Use Only

E

1. LM-30 FILE NUMBER: U - _____

2. PERIOD COVERED:

FROM: Month/Day/Year (mm/dd/yyyy) __ / __ / __

THROUGH: Month/Day/Year (mm/dd/yyyy) __ / __ / __

3. CONTACT INFORMATION OF REPORTING PERSON:

A. FIRST NAME

B. MIDDLE NAME

C. LAST NAME

D. MAILING ADDRESS (LINE 1)

E. MAILING ADDRESS (LINE 2)

F. CITY

G. STATE

H. ZIP CODE

I. EMAIL ADDRESS (optional)

4. LABOR ORGANIZATION IDENTIFYING INFORMATION:

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY

STATE

ZIP CODE

E. FILE NUMBER

F. OFFICER ☐    EMPLOYEE ☐

G. YOUR OFFICER POSITION OR JOB TITLE

H. DID YOU HOLD THIS POSITION OR JOB TITLE AT THE END OF THE REPORTING PERIOD?

YES ☐    NO ☐

5. SUMMARY (FROM ATTACHED PART B)

A. TOTAL REPORTED INCOME OR OTHER PAYMENTS (total from Schedule 2, Item F, Column (1) of each Part B)    $

B. TOTAL REPORTED ASSETS (total from Schedule 2, Item F, Column (2) of each Part B)    $

THE UNDERSIGNED DECLARES, UNDER PENALTY OF PERJURY AND OTHER APPLICABLE PENALTIES OF LAW, THAT ALL OF THE INFORMATION SUBMITTED IN THIS REPORT (INCLUDING THE INFORMATION CONTAINED IN ANY ACCOMPANYING DOCUMENTS) HAS BEEN EXAMINED BY THE SIGNATORY AND IS, TO THE BEST OF THE UNDERSIGNED'S KNOWLEDGE AND BELIEF, TRUE, CORRECT AND COMPLETE.

8. SIGNED _____    ON __ / __ / __    _____
                                    Date (mm/dd/yyyy)    Telephone Number

Form LM-30 (Revised 2007)

LM-30 File Number U –

# EMPLOYER or BUSINESS RELATIONSHIPS

## 6. EMPLOYER RELATIONSHIPS

Generally, you must complete Schedules 1, 2, and 3 of Part B, as fully explained in the instructions, if you, your spouse, or minor child had an arrangement or engaged in a transaction with, or held an interest in, or received income or other payment from (including any reimbursed expenses), or made loans to or received loans from, an employer or a labor relations consultant to an employer that meets any of the following conditions:

- An employer whose employees your labor organization represents or is actively seeking to represent; or
- An employer in competition with an employer whose employees your labor organization represents or is actively seeking to represent; or
- An employer that is a trust in which your labor organization is interested as defined in section 3(l) of the LMRDA; or
- An employer that is a non-profit organization that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations or contributions from your labor organization; or
- An employer that is a labor organization that (1) has employees your union represents or is actively seeking to represent, (2) has employees in the same occupation as those represented by your union; (3) claims jurisdiction over work that is also claimed by your union; (4) is a party to or will be affected by any proceeding in which you have voting authority or other ability to influence the outcome of the proceeding; or (5) has made a payment to you for the purpose of influencing the outcome of an internal union election; or
- An employer that has made a payment to you for any of the following purposes: (1) not to organize employees; (2) to influence employees in any way with respect to their rights to organize; (3) to take any action with respect to the status of employees or others as members of a labor organization; (4) to take any action with respect to bargaining or dealing with employers whose employees your organization represents or is actively seeking to represent; or (5) to influence the outcome of an internal union election; or
- An employer whose interests are in actual or potential conflict with the interests of your labor organization or your duties to your labor organization.

Before proceeding, review Part II of the instructions (pages 1-9) to determine if any reporting exceptions apply to your situation. If the above conditions exist and none of the exceptions apply, then you must complete a separate Part B for each employer or labor relations consultant to an employer.

**a. DO YOU HAVE ANY OF THESE RELATIONSHIPS WITH EMPLOYERS OR LABOR RELATIONS CONSULTANTS?**    YES ☐    NO ☐

b. If yes, record the number of employers and consultants: _____

## 7. BUSINESS RELATIONSHIPS

Generally, you must complete Schedules 1, 2, and 4 of Part B, as fully explained in the instructions, if you, your spouse, or minor child had an arrangement or engaged in a transaction with, or held an interest in, or received income or other payment from (including any reimbursed expenses), or made loans to or received loans from, a business, such as a goods vendor or service provider, that meets any of the following conditions:

- A substantial part of its business consists of buying or selling or otherwise dealing with an employer whose employees your labor organization represents or is actively seeking to represent; or
- Any part of its business consists of buying or selling or otherwise dealing with your labor organization; or
- Any part of its business consists of buying or selling or otherwise dealing with a trust in which your labor organization is interested.

Before proceeding, review Part II of the instructions (pages 1-9) to determine if any reporting exceptions apply to your situation. If the above conditions exist and none of the exceptions apply, then you must complete a separate Part B for each business.

**a. DO YOU HAVE ANY OF THESE RELATIONSHIPS WITH A BUSINESS?**    YES ☐    NO ☐

b. If yes, record the number of businesses: _____

## If you answer "No" to both Item 6a and Item 7a, you are not required to file Form LM-30.

Form LM-30 (Revised 2007)

LM-30 File Number: U - _____

No: _____ of _____

# PART B

## SCHEDULE 1 - EMPLOYER OR BUSINESS IDENTIFYING INFORMATION (all filers must complete)

Provide the following information regarding the employer, labor relations consultant, or business that met the conditions identified in Item 6 or Item 7.
(If more than one employer, labor relations consultant to an employer, or business met the conditions identified in Item 6 or Item 7, you must complete a separate Part B for each one.)

| A. LEGAL NAME OF EMPLOYER, BUSINESS OR LABOR RELATIONS CONSULTANT | ☐ Employer  ☐ Labor Relations Consultant  ☐ Business | I. TELEPHONE NUMBER |
|---|---|---|

| B. CONTACT FIRST NAME | C. CONTACT MIDDLE NAME | D. CONTACT LAST NAME | |
|---|---|---|---|

| E. MAILING ADDRESS (LINE 1) | MAILING ADDRESS (LINE 2) | J. WEB SITE ADDRESS |
|---|---|---|

| F. CITY | G. STATE | H. ZIP CODE | K. DID YOU, YOUR SPOUSE, OR MINOR CHILD HAVE A RELATIONSHIP WITH THE EMPLOYER, BUSINESS OR LABOR RELATIONS CONSULTANT AT THE END OF THE REPORTING PERIOD?  YES ☐   NO ☐ |
|---|---|---|---|

## SCHEDULE 2 - FILER'S INTERESTS IN, PAYMENTS FROM, LOANS TO OR FROM, AND TRANSACTIONS OR ARRANGEMENTS WITH EMPLOYER OR BUSINESS AND PAYMENTS FROM A LABOR RELATIONS CONSULTANT (all filers must complete)

Provide the information required below about interests in, payments from, loans to or from, and transactions or arrangements with the employer or business consultant to an employer or the business identified in Schedule 1. Review Part II of the instructions (pages 1-9) to determine the reportability of a particular payment or interest and the applicability of any reporting exceptions. Include the date of the reportable matter (typically the date of receipt or date of arrangement or transaction), the recipient (you, your spouse, or minor child), a description of the matter, and its value.

| A. DATE | B. OFFICER, EMPLOYEE, SPOUSE, MINOR CHILD | C. DESCRIPTION OF INTEREST, PAYMENT, LOAN, TRANSACTION, OR ARRANGEMENT | D. | |
|---|---|---|---|---|
| | | | (1) VALUE OF INCOME OR OTHER PAYMENTS | (2) VALUE OF ASSET |
| Employer Example 02/03/2007 | Employee | I received 298 hours of union leave payments from my employer for time spent handling grievances | $4,200 | |
| Business Example 12/31/2007 | Spouse | My husband owns 100% of Cleaning Services, Inc. which clean my local's offices | | $100,000 |
| Business Example 10/15/2007 | Officer | Golfing weekend received from XYZ Inc. which is seeking to become a service provider for my union's pension plan | $500 | |
| | | E. TOTAL FROM SCHEDULE 2 CONTINUATION PAGES (IF ANY) | | |
| | | F. TOTAL OF COLUMNS D(1) AND D(2) | | |

Form LM-30 (Revised 2007)

LM-30 File Number: U - _____

No: _____ of _____

## PART B

### SCHEDULE 3 - EMPLOYER'S RELATIONSHIP WITH YOUR LABOR ORGANIZATION (Complete for employers only, that is, if you answered "yes" to Item 6a on page 2.)

Under Part A, check the box (and letter, where appropriate) that correctly describes the nature of the employer's relationship with your labor organization. Under Part B, provide details describing the relationship. If you received a reportable payment from a labor relations consultant to an employer, answer these questions with respect to the employer.

**A. EMPLOYER'S RELATIONSHIP**

1. ☐ The employer employs employees that your labor organization represents or is actively seeking to represent.

2. ☐ The employer is in competition with an employer whose employees your union represents or is actively seeking to represent.

3. ☐ The employer is a trust in which your labor organization is interested as defined in section 3(l) of the LMRDA.

4. ☐ The employer is a non-profit organization that receives or is actively and directly soliciting (other than by direct mail, telephone bank, or mass media) money, donations or contributions from your labor organization.

5. ☐ The employer is a labor union that:

    a. ____ has employees your union represents or is actively seeking to represent;

    b. ____ has employees in the same occupation as those represented by your union;

    c. ____ claims jurisdiction over work that is also claimed by your union;

    d. ____ is a party to or will be affected by any proceeding in which you have voting authority or other ability to influence the outcome of the proceeding; or

    e. ____ has made a payment to you for the purpose of influencing the outcome of an internal union election.

6. ☐ The employer has made payments to you for any of the following purposes:

    a. ____ not to organize employees;

    b. ____ to influence employees in any way with respect to their right to organize;

    c. ____ to take any action with respect to the status of employees or others as members of a labor organization;

    d. ____ to take any action with respect to bargaining or dealing with employers whose employees your organization represents or is actively seeking to represent; or

    e. ____ to influence the outcome of an internal union election.

7. ☐ The employer's interests are in actual or potential conflict with the interests of your labor organization or your duties to your labor organization.

**B. PROVIDE DETAILS OF THE EMPLOYER'S RELATIONSHIP WITH YOUR LABOR ORGANIZATION AND SET FORTH THE DOLLAR VALUE OF ANY PAYMENTS OR OTHER TRANSACTIONS BETWEEN THE EMPLOYER AND THE LABOR ORGANIZATION. IF THERE ARE NO PAYMENTS OR TRANSACTIONS WITH A MONETARY VALUE, OR IF YOU DO NOT KNOW AND CANNOT ESTIMATE THE VALUE, ENTER N/A AND EXPLAIN IN THE ADDITIONAL INFORMATION SCHEDULE.**

(For example, if you checked Box 7, the description might read "Local Union ABC paid annual premiums to HealthCare PrePaid, Inc., a not-for-profit health insurance company in return for insurance coverage for members of Local Union ABC.")

**B(1). Value (if applicable)**

$ 125,000

Form LM-30 (Revised 2007)

LM-30 File Number: U - _____

No: _____ of _____

## PART B

## SCHEDULE 4 - BUSINESS'S DEALINGS WITH UNION(S), TRUST(S), OR EMPLOYER(S) (Complete for businesses only, that is, if you answered "yes" to Item 7a on page 2.)

Enter the legal name of the entity with which the business deals in Column (A). Indicate whether the entity is a union, trust, or employer in Column (B). Enter its file number, if known, in Column (C). Describe in detail the nature of the dealings between the entity and the business in Column (D). Enter the value of such dealings between the entity and the business in Column (E). If the exact value is not known and cannot be estimated, enter "N/A" and explain the situation in the Additional Information Schedule.

| A. NAME OF UNION, TRUST OR EMPLOYER | B. UNION/TRUST/ EMPLOYER | C. FILE NUMBER | D. DESCRIPTION OF DEALINGS | E. VALUE |
|---|---|---|---|---|
| Example - Local XYZ | Union | 345-678 | Cleaning Services, Inc. contracted with Local XYZ to clean its office space once per month | $960 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form LM-30 (Revised 2007)

LM-30 File Number: U - _____

## ITEM 4 CONTINUATION PAGE

## LABOR ORGANIZATIONS IN WHICH THE REPORTING PERSON IS AN OFFICER OR EMPLOYEE

### 4. LABOR ORGANIZATION IDENTIFYING INFORMATION:

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY    STATE    ZIP CODE

E. FILE NUMBER

F. OFFICER ☐    EMPLOYEE ☐

G. YOUR OFFICER POSITION OR JOB TITLE

H. DID YOU HOLD THIS POSITION OR JOB TITLE AT THE END OF THE REPORTING PERIOD?    YES ☐    NO ☐

### 4. LABOR ORGANIZATION IDENTIFYING INFORMATION:

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY    STATE    ZIP CODE

E. FILE NUMBER

F. OFFICER ☐    EMPLOYEE ☐

G. YOUR OFFICER POSITION OR JOB TITLE

H. DID YOU HOLD THIS POSITION OR JOB TITLE AT THE END OF THE REPORTING PERIOD?    YES ☐    NO ☐

### 4. LABOR ORGANIZATION IDENTIFYING INFORMATION:

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY    STATE    ZIP CODE

E. FILE NUMBER

F. OFFICER ☐    EMPLOYEE ☐

G. YOUR OFFICER POSITION OR JOB TITLE

H. DID YOU HOLD THIS POSITION OR JOB TITLE AT THE END OF THE REPORTING PERIOD?    YES ☐    NO ☐

### 4. LABOR ORGANIZATION IDENTIFYING INFORMATION:

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY    STATE    ZIP CODE

E. FILE NUMBER

F. OFFICER ☐    EMPLOYEE ☐

G. YOUR OFFICER POSITION OR JOB TITLE

H. DID YOU HOLD THIS POSITION OR JOB TITLE AT THE END OF THE REPORTING PERIOD?    YES ☐    NO ☐

Form LM-30 (Revised 2007)

LM-30 File Number: U -  _____

No: _____ of _____

## PART B

## SCHEDULE 2 CONTINUATION PAGE

### SCHEDULE 2 - FILER'S INTERESTS IN, PAYMENTS FROM, LOANS TO OR FROM, AND TRANSACTIONS WITH EMPLOYER OR BUSINESS AND PAYMENTS FROM A LABOR RELATIONS CONSULTANT (all filers must complete)

Provide the information required below about interests in, payments from, loans to or from, and transactions or arrangements with the employer or labor relations consultant to an employer or the business identified in Schedule 1. Review Part II of the instructions (pages 1-9) to determine the reportability of a particular payment or interest and the applicability of any reporting exceptions. Include the date of the reportable matter (typically the date of receipt or date of arrangement or transaction), the recipient (you, your spouse, or minor child), a description of the matter, and its value.

| A. DATE | B. OFFICER, EMPLOYEE, SPOUSE, MINOR CHILD | C. DESCRIPTION OF INTEREST, PAYMENT, LOAN, TRANSACTION, OR ARRANGEMENT | D. (1) VALUE OF INCOME OR OTHER PAYMENTS | (2) VALUE OF ASSET |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | E. TOTAL OF COLUMNS D(1) and D(2) FOR THIS PAGE | |

Form LM-30 (Revised 2007)

Federal Register / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    36167

LM-30 File Number: U - _____

No: _____ of _____

## PART B

## SCHEDULE 4 CONTINUATION PAGE

**SCHEDULE 4 - BUSINESS'S DEALINGS WITH UNION(S), TRUST(S), OR EMPLOYER(S) - CONTINUATION PAGE** (Complete for businesses only, that is, if you answered "yes" to Item 7a.)

Enter the legal name of the entity with which the business deals in Column (A); Indicate whether the entity is a union, trust, or employer in Column (B); Enter its file number, if known, in Column (C); Describe in detail the nature of the dealings between the entity and the business in Column (D); Enter the value of such dealings between the entity and the business in Column (E). If the exact value is not known and cannot be estimated, enter "N/A" and explain the situation in the Additional Information Schedule.

| A.<br>NAME OF UNION, TRUST OR EMPLOYER | B.<br>UNION/TRUST/<br>EMPLOYER | C.<br>FILE<br>NUMBER | D.<br>DESCRIPTION OF DEALINGS | E.<br>VALUE |
|---|---|---|---|---|
| Example - Local XYZ | Union | 345-678 | Cleaning Servicers, Inc. contracted with Local XYZ to clean its office space once per month | $960 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form LM-30 (Revised 2007)

LM-30 File Number U - _____

## ADDITIONAL INFORMATION SCHEDULE

| A. SCHEDULE/ITEM | B. ADDITIONAL INFORMATION |
|---|---|
|  |  |

Form LM-30 (Revised 2006)

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations     **36169**

Public reporting burden for this collection of information is estimated to average 120 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. Reporting of this information is mandatory and is required by the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA). The information will be used to facilitate public disclosure of reportable transactions as defined and required by the LMRDA. Failure to furnish the requested information or providing fraudulent information will result in civil and/or criminal enforcement action pursuant to the LMRDA and other applicable statutes. As this is public information, there are no assurances of confidentiality. If you have any comments regarding this estimate or any other aspect of this information collection, including suggestions for reducing this burden, please send them to the U.S. Department of Labor, Employment Standards Administration, Office of Labor-Management Standards, Division of Interpretations and Standards, Room N-5609, 200 Constitution Avenue, NW, Washington, DC 20210.

# FORM LM-30
# LABOR ORGANIZATION OFFICER AND EMPLOYEE REPORT

## GENERAL INSTRUCTIONS

## I. WHY FILE

The Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA or Act), requires public disclosure of certain financial transactions and financial interests of labor organization officers and employees and their spouses and minor children. *See* 29 C.F.R. 404.1-404.9 (reports by officers and employees of labor organizations). The purpose of disclosure, among other things, is to publicly identify an actual or potential conflict between the personal financial interests of a union officer or employee (sometimes referred to as a *filer* in these instructions) and his or her obligations to the union and its members. *Labor organization, labor organization officer, labor organization employee,* and other important terms are defined in Part III of these instructions (pages 9-13).

The LMRDA establishes basic rights of union members, including equal voting rights, freedom of speech and assembly, and other essential safeguards for union democracy, among other protections; establishes financial reporting and disclosure requirements for unions, union officers and employees, employers, and labor relations consultants; regulates union trusteeships; details procedural requirements for the conduct of union officer elections; and establishes a fiduciary duty on union officers, employees, and other representatives.

Pursuant to Section 202 of the LMRDA, and subject to certain exceptions, every labor organization officer or employee (other than an employee performing exclusively clerical or custodial services), who has, directly or indirectly, held any legal or equitable interest in, received any payments from, or engaged in any transactions or arrangements (including loans) with certain employers or businesses or labor relations consultants during the officer or employee's fiscal year must file a detailed report with the Secretary of Labor (Secretary). *See* Part II of these instructions for a detailed discussion of the types of financial matters that

must be reported. You are not required to file a report unless you or your spouse or minor child held a reportable interest, received a reportable payment, or engaged in a reportable transaction or arrangement during the reporting period. As discussed in Part II, you are not required to report insubstantial payments or gifts, as there defined.

The Department's Office of Labor-Management Standards (OLMS) has developed a comprehensive program to assist with LMRDA compliance, including the completion of the Form LM-30. Much of the information is available on the OLMS Web site: www.olms.dol.gov. For additional contact information, see the final page of these instructions.

The reporting requirements of the LMRDA and of the regulations and forms issued under the Act relate only to the public disclosure of specified transactions and interests. The reporting requirements do not address whether such transactions and interests are lawful or unlawful. The fact that a particular transaction or interest is or is not required to be reported is not indicative of whether it is or is not subject to any legal restriction; this must be determined by provisions of law other than those prescribing the reports. Failure to file a required report may subject an individual to civil or criminal penalties, or both. *See* Part VII of these instructions at page 13.

## II. WHO MUST FILE AND WHAT MUST BE REPORTED

As described in more detail below, you must file Form LM-30 if at any time during your past fiscal year:

   (1) You were an officer or employee of a labor organization (other than an employee performing exclusively clerical or custodial services) as defined by the LMRDA, and

   (2) You or your spouse or your minor child, directly or indirectly, held any legal or equitable interest, received any payments, or engaged in any transactions or arrangements (including loans) of the types described in these instructions.

*See* pages 19 to 21 of these instructions for the text of Section 202 and other relevant provisions of the LMRDA and the Labor Management Relations Act (LMRA).

**Minor child.**  Interests held by, payments received by, and transactions and arrangements involving a *minor child* must be reported until the child turns 21.  If the child reaches the age of 21 during the fiscal year, disclosable matters must be reported for that portion of the fiscal year before the child's 21st birthday.  If you are divorced during your fiscal year, disclosable interests and transactions for your spouse must be reported for that portion of the fiscal year prior to your divorce.

**Insubstantial payments and gifts.**  You do not have to report any payments or gifts totaling $250 or less from any one source and payments or gifts valued at $20 or less do not need to be included in determining whether the $250 threshold has been met.  For example, if you receive from an employer two gifts worth $20 each and two restaurant meals worth $150 each, you need only keep records of the restaurant meals, and report your receipt of this $300 value.  However, a filer may not use the exception to hide the receipt of a series of payments or gifts purposely set at $20 or less to avoid reaching the $250 reporting threshold.  For example, a filer would have to report his or her receipt of individual tickets worth $20 or less to all of a professional baseball team's home games that are provided before each game rather than given as a complete package at the start of the season.

**Widely-attended gatherings**.  You also do not have to report the benefits, such as food and entertainment, you received while in attendance at one or two widely-attended receptions, meetings or gatherings in a single fiscal year for which an employer or business has spent $125 or less per attendee per gathering.  You do not have to include the value of those gatherings in determining whether the $250 threshold has been met for the employer or business providing the meeting or gathering.  However, if you attend three or more such widely-attended gatherings provided by an employer or business, you must count the value of all such events.

A gathering is widely attended if a large number of persons are in attendance and the attendees include union officers and employees and a substantial number of individuals with no relationship to a union or a section 3(l) trust of the union (*see* definition of *trust in which a labor organization is interested* at D16 on page 13).  For a gathering to qualify as widely attended, those individuals with a relationship to a union must be treated the same as others when the employer or business advertises or distributes invitations for the event and must be treated alike at the event.

## Getting Started

If you are an officer or employee of a labor organization (other than an employee performing exclusively clerical or custodial services) as defined by the LMRDA, review the following descriptions of the types of interests, payments, transactions, and arrangements that you must report on Form LM-30. Each description is followed by a list of specific exceptions to that reporting requirement and examples illustrating the requirement. (Please note that the exceptions and examples below apply only to the specific type of transaction where they are listed.)

### *Reportable Interests in, Payments from, and Transactions and Arrangements with Employers*

#### *(1) An Employer Whose Employees Your Labor Organization Represents or is Actively Seeking to Represent*

You must complete Form LM-30 if you or your spouse or your minor child, directly or indirectly:

- held a stock, bond, security, or other interest, legal or equitable, in such an employer; or
- derived any income or any other benefit with monetary value (including reimbursed expenses) from such an employer; or
- received a loan from, or made a loan to, such an employer; or
- engaged in any other business transaction or arrangement with such an employer that was not a purchase or sale of goods or services in the regular course of business at prices generally available to any employee of the employer.

*See* definitions of *labor organization* at D10 on page 11; *actively seeking to represent* at D1 on page 9; *directly or indirectly* at D7 on page 11; *legal or equitable interest* at D13 on page 13; *income* at D9 on page 11; *benefit with monetary value* at D3 on page 10; *arrangement* at D2 on page 10.

All terms in italics are defined in Part III of these instructions (pages 9-13).

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36171**

*Exceptions to the Above Reporting Requirements Relating to an Employer Whose Employees Your Labor Organization Represents or is Actively Seeking to Represent*

You are not required to report:

- Payments or gifts totaling $250 or less from any one source (payments or gifts valued at $20 or less do not need to be included in determining whether the $250 threshold has been met, but a series of payments or gifts designed to circumvent the $20 threshold must be reported).

  In calculating whether the $250 threshold has been met for a particular employer or business, you do not have to include payments or gifts, such as food and entertainment, received while in attendance at one or two widely-attended receptions, meetings or gatherings in a single fiscal year for which an employer or business has spent $125 or less per attendee per gathering.

- Holdings of, transactions in, or income from, bona fide investments in (1) securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934 (including the American Stock Exchange, Boston Stock Exchange, Chicago Board Options Exchange, Chicago Stock Exchange, International Securities Exchange, NASDAQ, National Stock Exchange ,New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange); (2) shares in an investment company registered under the Investment Company Act of 1940, or (3) securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935,

- Holdings of, transactions in, or income from, bona fide investments in securities other than those described in the preceding bullet that are of insubstantial value or amount and occur under terms unrelated to your status in a labor organization.  Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial.

- Payments and benefits received as a bona fide employee of the employer. This exception does not apply to loans or to transactions involving interests in the employer. For example, if the employer has a program in which bona fide employees may sell their stock in the company, this exception would not apply. *See* definition of *bona fide employee* at D4 on page 10.

### Examples

**Example 1**

You are a union officer and truck driver who is paid for ten days, or 80 hours, of work by the employer, every two weeks even though you drive a truck nine days, or 72 hours, and spend the tenth day of the pay period (8 hours) handling union member grievances or other union-related work.  If this arrangement is *not* set forth in a collective bargaining agreement, you must report all of the income and benefits received from the employer for union work.  If the arrangement is set forth in a bona fide collective bargaining agreement, you do not have to report because such payments are only reportable if you receive more than 250 hours of union-leave/no-docking payments per year.   *See* definition of *bona fide employee* at D4 on page 10 and *labor organization employee* at D11 on page 12.

**Example 2**

You are an officer of a union that represents Widget Company employees. To help prepare for your retirement, you purchase 5,000 shares of Widget Company stock that is traded on NASDAQ, a registered national stock exchange.  You need not report the shares under the exception for bona fide investments in such securities.

**Example 3**

You are an officer of a union that represents Cident Company employees. Your wife owns 5,000 shares of Cident Company stock that Cident's CEO gave her on Mother's Day two years ago.  This stock is traded on the NYSE, a registered national stock exchange.  You must report the holding of the shares.  Because it was received as a gift, the exception for bona fide investments in such securities does not apply.

**Example 4**

You are a full-time officer of a union that represents employees of several different

*All terms in italics are defined in Part III of these instructions (pages 9-13).*

**36172**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

employers. One of the employers pays your expenses on a trip with management officials to a plant in another part of the country to view new equipment that the employer is considering purchasing. You must report the travel expenses.

**Example 5**
You are an employee of a union that represents actors. You own a production company whose employees are represented by your union. You must report your interests in the production company.

**Example 6**
You are an employee of a union and your spouse works as a producer for a dinner theater that employs actors represented by your union. Your spouse works 40 to 50 hours a week producing shows and is paid a yearly salary. You do not have to report this salary because the payments are received by your spouse as a bona fide employee of the theater company. *See* definition of *bona fide employee* at D4 on page 10.

**Example 7**
You are a union officer and you receive payments under an ERISA-qualified pension plan. The payments relate to your past employment with an employer whose employees your union represents. These payments are received as a bona fide employee of the employer, thus you do not have to report these payments. *See* definition of *bona fide employee* at D4 on page 10.

**Example 8**
You are a union officer and after the beginning of the fiscal year, your employer gives you stock options permitting you to purchase stock at a preferred rate in a new business enterprise your employer is launching. Three weeks before the end of your fiscal year, you exercise the options to purchase the stock and then immediately sell it to realize a gain of $25,000. These transactions must be reported.

**Example 9**
You are a union employee and your minor child receives 100 shares of stock as a high school graduation gift from an employer whose employees your union represents. She immediately sells it to assist with college expenses. Both transactions, the gift and the sale, must be reported.

**Example 10**
You are a union officer, and you hold an ownership interest in the business of an employer whose

employees your union represents and for whom you work. You own this interest pursuant to an investment plan in which all employees participate under the same terms. This is a payment or benefit received as a bona fide employee and the interest is not reportable. In this fiscal year, you sell this interest to the employer. The sales transaction is reportable.

**Example 11**
You are a union officer and your spouse receives a loan from an employer whose employees your union represents. The loan must be reported.

**Example 12**
You are a union employee. Your spouse is a partner of a package delivery company. The company receives a loan from Easy Credit Limited that was arranged with the assistance of an employer whose employees your union is actively seeking to represent. The loan and the arrangement for assistance must be reported.

**Example 13**
You are an officer of an international union affiliated with a local union that represents employees at an automobile plant. The employer permits you to participate in an executive purchase plan under which management executives are permitted to purchase vehicles produced by the employer at a discount and at a low interest rate. The transaction must be reported.

**Example 14**
You are an employee of a union that represents employees at Acme Warehouse. At your request, Acme allows your neighbor to store his company's inventory at a rate below the customary storage rate. Your neighbor, in turn, shows his gratitude by allowing you to use his luxury box at a sporting event. You must report this arrangement. *See* definition of *arrangement* at D2 on page 10.

**Example 15**
You are an officer of an international union and are a member of the board of directors of an employer whose employees your union represents. You receive directors' fees and reimbursed expenses. You must report these payments.

**Example 16**
You are a union steward and worked 300 hours on union business during the year and received your

All terms in italics are defined in Part III of these instructions (pages 9-13).

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36173**

regular income and benefits from your employer in accordance with the no-docking provision in the collective bargaining agreement. You must report all the income and benefits you received from the employer for the work performed on the union's behalf.

## (2) Payments of Money or Other Thing of Value from Certain Other Employers or a Labor Relations Consultant to Such an Employer

You must file Form LM-30 if you or your spouse or your minor child received, directly or indirectly, any payment of money or other thing of value (including reimbursed expenses) from an employer or a labor relations consultant to an employer that:

- is in competition with an employer whose employees your labor organization represents or is actively seeking to represent; or
- is a *trust in which your labor organization is interested*, as defined in section 3(l) of the LMRDA (*see* definition at D16 on page 13); or
- is a not-for-profit organization that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations, or contributions from your labor organization; or
- is a labor union that (1) has employees your union represents or is actively seeking to represent, (2) has employees in the same occupation as those represented by your union; (3) claims jurisdiction over work that is also claimed by your union; (4) is a party to or will be affected by any proceeding in which you have voting authority or other ability to influence the outcome of the proceeding; or (5) has made a payment to you for the purpose of influencing the outcome of an internal union election; or
- has interests in actual or potential conflict with the interests of your labor organization or your duties to your labor organization.

## Exceptions to the Reporting Requirements Relating to Certain Other Employers or a Labor Relations Consultant to Such an Employer

You are not required to report:

- Bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions, if such loans, interest or dividends are based upon

the financial institution's own criteria and made on terms unrelated to your status in a labor organization. This exception does not apply to national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions that constitute a "trust in which your labor organization is interested."

- Pension, health, or other benefit payments to you, your spouse, or minor child from a trust that are provided pursuant to a written specific agreement covering such payments.

- Any payments from your labor organization or from a labor organization affiliated with your labor organization.

- Payments of the kinds referred to in Labor Management Relations Act (LMRA) Section 302(c), as summarized below and set forth in full on pages 20-21, and payments your spouse or minor children receive as compensation for, or by reason of, their service to their employer:

  (1) any money or other thing of value payable by an employer to
  a) an employee acting openly for the employer in matters of labor relations or personnel administration, or
  b) any officer or employee of a labor organization who also is an employee or former employee of such employer, as compensation for or by reason of, his service as an employee of such employer;
  (2) money or other thing of value payable in satisfaction of a judgment, arbitral award, settlement or release of any claim in the absence of fraud or duress;
  (3) with respect to the sale or purchase of an item at the prevailing market price in the regular course of business;
  (4) with respect to deductions in payment of labor union dues from wages by written assignment;
  (5) with respect to money or other thing of value paid to a trust fund established by the representative of an employer's employees for the sole benefit of these employees, their families and dependents for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide the foregoing, or

All terms in italics are defined in Part III of these instructions (pages 9-13).

unemployment benefits or life insurance, disability and sickness insurance, or accident insurance;

(6) with respect to money or other thing of value paid by any employer to a trust fund established by the representative of the employer's employees for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs;

(7) with respect to money or other thing of value paid by any employer to an individual or pooled trust fund for providing scholarships for the benefit of employees, families, and dependents, child care centers, or financial assistance for employee housing;

(8) with respect to money or other thing of value paid by any employer to a trust for defraying the costs of legal services; or

(9) with respect to money or other thing of value paid by any employer to a labor-management committee.

- Payments or gifts totaling $250 or less from any one source (payments or gifts valued at $20 or less do not need to be included in determining whether the $250 threshold has been met, but a series of payments or gifts designed to circumvent the $20 threshold must be reported).

  In calculating whether the $250 threshold has been met for a particular employer or business, you do not have to include payments or gifts, such as food and entertainment, received while in attendance at one or two widely-attended receptions, meetings or gatherings in a single fiscal year for which an employer or business has spent $125 or less per attendee per gathering.

### *Examples*

**Example 1**
You are a union officer representing employees of TriWireFire, Inc., an employer in the telecommunications industry. An employer, WhyWire, Inc., which markets services in competition with TriWireFire, gives you a gift of a ski trip worth more than $250. You must report the trip and its value.

**Example 2**
You are a union officer and you receive payments pursuant to the terms of an ERISA qualified pension plan. You do not have to report these payments.

**Example 3**
You are a local union president and a trustee of a trust in which your labor organization is

interested. You must reports payments from the trust, including reimbursed expenses, for your service as a trustee, except in the unusual situation where you as a trustee are also considered an employee of the trust.

**Example 4**

You are an employee of a union. Each year your union holds an annual workers' summer school at a private university whose space and services are rented by the union. You go to the summer school as an instructor and bring your wife and two minor children. At no extra charge to you, the university provides accommodations for you, your wife, and minor children, rather than the single room typically provided instructors. The use of the additional space and its fair market value must be reported.

**Example 5**
You are an officer of Local Union ABC. You receive a gift of high-end consumer electronics from a sales representative of HealthCare PrePaid, Inc., a not-for-profit health insurance company. Local Union ABC pays $125,000 annually in premiums to this health insurance company in return for its extending insurance coverage to the union members. You must report the value of the consumer electronics.

### (3) *Payments from any Employer or a Labor Relations Consultant to any Employer for the Following Purposes:*

- Not to organize employees;
- To influence employees in any way with respect to their right to organize;
- To take any action with respect to the status of employees or others as members of a labor organization;
- To take any action with respect to bargaining or dealing with employers whose employees your labor organization represents or is actively seeking to represent; or
- To influence the outcome of an internal union election.

There are no exceptions to reporting these types of payments.

### *Examples*

**Example 1**

You are an officer of a national union. Your spouse is hired as a senior executive of an employer on the understanding that your union will not seek to organize that employer. Your spouse receives a salary, medical, disability, and life insurance, use of a company car, and a paid membership to a private club. You must report the salary and the monetary value of the other benefits your spouse receives from the employer.

**Example 2**

You are a local union president. An employer outside of the jurisdiction of your local hires your 20-year old daughter for a summer job on the understanding that you will seek to have your members go on strike against an employer who is one of its competitors. You must report the payments your daughter receives from this employer.

## Reportable Payments and Interests from Businesses

You must complete Form LM-30 if you, your spouse, or your minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from a business (for example, a vendor or a service provider) that meets any of the following conditions:

- a substantial part of its business consists of buying or selling or otherwise dealing with an employer whose employees your labor organization represents or is actively seeking to represent (*substantial part* is defined as 10% or more at D15 on page 13); or
- any part of its business consists of buying or selling or otherwise dealing with your labor organization; or
- any part of its business consists of buying or selling or otherwise dealing with a trust in which your labor organization is interested.

**Special Note:** A "business" here is a vendor of goods or provider of services. A payment from a business may be reportable whether or not the business employs employees or otherwise meets the definition of "employer."

## Exceptions to Reportable Payments and Interests from Businesses

You are not required to report:

- Holdings of, transactions in, or income from, bona fide investments in (1) securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934 (including the American Stock Exchange, Boston Stock Exchange, Chicago Board Options Exchange, Chicago Stock Exchange, International Securities Exchange, NASDAQ, National Stock Exchange ,New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange); (2) shares in an investment company registered under the Investment Company Act of 1940, or (3) securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935,

- Holdings of, transactions in, or income from, bona fide investments in securities other than those described in the preceding bullet that are of insubstantial value or amount and occur under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial.

- Payments or gifts totaling $250 or less from any one source (payments or gifts valued at $20 or less do not need to be included in determining whether the $250 threshold has been met, but a series of payments or gifts designed to circumvent the $20 threshold must be reported.)

  In calculating whether the $250 threshold has been met for a particular employer or business, you do not have to include the benefits, such as food and entertainment, received while in attendance at one or two widely-attended receptions, meetings or gatherings in a single fiscal year for which the employer or business spent $125 or less per attendee per gathering.

*See* the definitions of *dealing* below at D6 on page 11, *labor organization* at D10 on page 11, and *substantial part* at D15 on page 13.

All terms in italics are defined in Part III of these instructions (pages 9-13).

36176    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

## Examples

**Example 1**

You are a union officer. You own a small machine parts business from which you receive $50,000 in annual income. The employer of the employees your union represents purchased a large quantity of machine parts from your business. The employer's purchases represented 10% of the total receipts of your machine parts business that year. You must report your interest in the machine parts business, the $50,000 in income you received from the business.

**Example 2**

You are an officer of an international union. Your wife owns an accounting firm that pays her an annual salary. Last year, 20% of the receipts of her firm were from an employer whose employees are represented by a local union that is subordinate to your international union. You must report your wife's interest in the accounting firm, her salary from the firm, and the dealings between her business and the employer.

**Example 3**

You are a union officer and part owner of a copier supply company. Your union represents employees of employers A, B, and C. Last year 3% of the company's receipts were from employer A, 2% were from employer B, and 4% were from employer C. You do not have to report because less than 10% of the company's receipts were from employers whose employees your union represents.

**Example 4**

You are a union officer and a trustee to a plan established to provide benefits for the union members. An investment firm seeking to provide financial services to the plan hosts you on a week-long golfing trip in the Outer Banks of North Carolina. You must report the value of the trip, as well as the nature of the relationship sought by the investment firm with the plan.

**Example 5**

You are an officer of an international union and you receive sporting event season tickets, and multiple restaurant meals, from an attorney who appears on, or wishes to appear on, a list of "designated legal counsel." The union uses this list to recommend lawyers to the union

members for representation in workers' compensation or other matters. You must report the value of the gifts and the nature of the relationship between the lawyer and the union.

**Example 6**

You are an employee of a union that has a collective bargaining agreement with trade show contractors. You were a seasonal employee of a company that received 15% of its receipts last year from leasing fork lifts to these contractors. You must report your income received from the company and the dealings between the company and the contractors.

**Example 7**

You are an officer of a district council. Your spouse owns and operates a small catering business, which provides her an annual salary and reimburses her for business-related expenses. Your council purchases catering services from your spouse's business during the fiscal year. You must report your spouse's ownership interest in the catering business, the salary and reimbursed expenses that she received from the business, and its dealings with the union.

**Example 8**

You are a business manager of a local union. You work on a contract basis for a plumbing supply company that sold tools and other supplies to the union and its training funds. You must report the payments you received from the plumbing supply company, and the company's dealings with the union and the training funds.

**Example 9**

You are an officer of a national union. You and your spouse own a printing company that prints the union newsletters for a local union of the same national union. You must report your and your spouse's ownership interest in the printing company and the company's dealings with the local.

**Example 10**

You are an officer of a joint board and run a snow plowing business that provides you with an annual income of $20,000. A subordinate local contracted with the business to plow the parking lot of its meeting hall. You must report your

All terms in italics are defined in Part III of these instructions (pages 9-13).

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations     **36177**

interest in the snow plowing business, the $20,000 in income and the business's dealings with the local.

**Example 11**
You are an employee of a national union. Your wife works for a travel agency that handles all the travel arrangements for the national union. Your wife receives income from the travel agency. You must report your wife's income from the travel agency and the dealings between the travel agency and the union.

**Example 12**
You are the president of a local union and your 19-year old son works for a business that produces customized t-shirts, caps, and jackets. Your local union buys logo items from this business. You must report your son's income received from this business and the dealings between the business and the union.

**Example 13**
You are a business representative of a local union that represents shipyard workers. You and two other business representatives own a company that does medical testing of local members, which is paid for by a health benefit plan that is a trust in which your local is interested. The company also provides medical insurance coverage for you and your spouse. You must report your interest in the medical testing company, the medical coverage for you and your spouse, and the dealings between the testing company and the health benefit plan.

**Example 14**
You are the president of a local union and own a building, which has numerous tenants, including your local. Your ownership interest and income received from the operation of the building and the dealings between you and the union must be reported.

**Example 15**
You are a national union president and a trustee of a jointly administered health care trust that insures union members through a health insurance company. Premiums for insurance coverage of union members are paid by the trust to the health insurance company. You are a member of the board of directors of the health insurance company, which pays you annual directors' fees and reimburses expenses for your attendance at board meetings. (To comply with other legal

requirements, you recuse yourself from all decisions by the trust concerning the health insurance company.) As the health insurance company is doing business with a trust in which your union is interested, you must report your annual directors' fees and reimbursed expenses. The dealings between the health insurance company and the trust must also be reported.

**Example 16**
You are an officer of a national union and your spouse works as an associate for a law firm that represents a local union that is affiliated with your national union. You are not required to report payments and other financial benefits received by your spouse as a bona fide employee of a business or employer involved with a lower level of your labor organization. However, if the firm represents the national union, you must report your spouse's income and the firm's dealings with the national union.

**Example 17**
You are a union officer and director of a registered investment company that offers investment opportunities to unions or trusts in which unions are interested. Your union has invested several thousand dollars in fixed income or equity funds managed by the company. You receive no gratuities, compensation, or reimbursement for your duties as a director, but you are insured against personal liability for your actions as a director under a policy paid for by the investment company. You must report the payment, and the dealings between the investment company and the union.

## III. DEFINITIONS

For purposes of completing Form LM-30, the following definitions apply:

**D1.** *Actively seeking to represent* means that a labor organization has taken steps during the filer's fiscal year to become the bargaining representative of the employees of an employer, including but not limited to:

- Sending organizers to an employer's facility;
- Placing an individual in a position as an employee of an employer that is the subject of an organizing drive and paying that

All terms in italics are defined in Part III of these instructions (pages 9–13).

individual subsidies to assist in the union's organizing activities;

- Circulating a petition for representation among employees;
- Soliciting employees to sign membership cards;
- Handing out leaflets;
- Picketing; or
- Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of its employees), or otherwise committing labor or financial resources to seek representation of employees working for the employer.

Where a filer's union has taken any of the foregoing steps, the filer is required to report a payment or interest received, or transaction conducted, during that reporting period.

> Note:  Leafleting or picketing, such as purely "informational" or "area standards" picketing, that is wholly without the object of organizing the employees of a targeted employer will not alone trigger a reporting obligation.  For example, if a union pickets a sporting goods retailer solely for the purpose of alerting the public that the retailer is selling goods that are made by children working in oppressive conditions in violation of accepted international standards, the picketing would not meet the "actively seeking to represent" standard.

**D2.**  *Arrangement* means any agreement or understanding, tacit or express, or any plan or undertaking, commercial or personal, by which the filer, spouse, or minor child will obtain a benefit, directly or indirectly, with an actual or potential monetary value.

> Note:  The term "arrangement" is very broad and covers both personal and business transactions, including an unwritten understanding.  For example, if during the reporting period an employer's representative offered a union officer a job with the employer, the officer must report the offer unless he or she rejected it.  A standing job offer must be reported because it carries the potential of monetary value to the filer.  Another example of a situation requiring a report is when an employer provided insider information about a stock or other investment opportunity, unless the filer rejected the advice and took no steps to act on it.

**D3.**  *Benefit with monetary value* means anything of value, tangible or intangible.  It includes any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind.  You do not need to report pension, health, or other benefit payments from a trust to you, your spouse, or minor child that are provided pursuant to a written specific agreement covering such payments.

**D4.**  *Bona fide employee* is an individual who performs work for, and subject to the control of, the employer.

> Note:  A payment received as a bona fide employee includes wages and employment benefits received for work performed for, and subject to the control of, the employer making the payment, as well as compensation for work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law.

> Compensation received under a "union-leave," or "no-docking" policy is not received as a bona fide employee of the employer making the payment.  Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union.  Under a no-docking policy, the employer permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay.  Such payments are received as an employee of the union and thus, such payment must be reported by the union officer or employee unless they (1) totaled 250 or fewer hours during the filer's fiscal year and (2) were paid pursuant to a bona fide collective bargaining agreement.  If a filer must report payments for union-leave or no-docking arrangements, the filer must enter the actual amount of compensation received for each hour of union work.  If union-leave/no-docking payments are received from multiple employers, each such payment is to be considered separately to determine if the 250-hour threshold has been met.  For purposes of Form LM-30, stewards receiving union-leave/no-docking payments from an employer or lost time payments from a labor organization are considered employees of the labor organization.

All terms in italics are defined in Part III of these instructions (pages 9–13).

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36179**

**D5.** *Bona fide investment* means personal assets of an individual held to generate profit that were not acquired by improper means or as a gift from any of the following: (1) an employer, (2) a business that deals with the filer's union or a trust in which the filer's union is interested, (3) a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent, or (4) a labor relations consultant to an employer.

**D6.** *Dealing* means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade, including solicitation for business.

> Note: The term "traffic or trade" includes not only financial transactions that have occurred but also the act of soliciting such business. Thus, for example, potential vendors or service providers attempting to win business with a union will be considered to be "dealing" with the union to the same extent as vendors who are already doing business with the union. Potential vendors must engage in the active and direct solicitation of business (other than by mass mail, telephone bank, or mass media). A business that passively advertises its services generally and would provide services consumed by, for example, a union would not meet this test. The potential vendor must be actively seeking the commercial relationship. Under certain circumstances, the payment itself will be evidence of the solicitation of business, such as a potential vendor who treats a union official to a golf outing and dinner to discuss the vendor's products.

**D7.** *Directly or indirectly* means by any course, avenue, or method. *Directly* encompasses holdings and transactions in which the filer, spouse, or minor child receives a payment or other benefit without the intervention or involvement of another party. *Indirectly* includes any payment or benefit which is intended for the filer, spouse, or minor child or on whose behalf a transaction or arrangement is undertaken, even though the interest is held by a third party, or was received through a third party.

> Note: Filers must disclose any benefits received by them (or their spouse or minor child) from a third party where the third party is acting on behalf, or at the behest, of an employer or business that would have to report the benefit if they provided it directly to the filer (or their spouse or minor child). The following examples show the difference between "direct" and "indirect":

- You are employed by XYZ Widgets and also serve as the president of the local union representing XYZ Widgets employees. In a recent conversation with the XYZ Widgets human resources manager, you mention that you are placing your 15 year-old daughter in a private school. The XYZ Widget Company sends you a check for $1,000 with a note saying "Good luck with the new school!" You have received a direct benefit.

- You are employed by XYZ Widgets and also serve as the president of the local union representing XYZ Widgets employees. In a recent conversation with the XYZ Widgets human resources manager, you mention that you are placing your daughter in a private school. You receive a letter from your daughter's new school stating that she has received a $1,000 scholarship through a donation by the XYZ Widget Company. You have received an indirect benefit.

**D8.** *Filer/Reporting Person/You* mean any officer or employee of a labor organization who is required to file Form LM-30.

> Note: These terms are used synonymously and interchangeably throughout the instructions and when referring to reportable interests, income, arrangements or transactions these terms include interests, income, arrangements or transactions involving the union officer's or employee's spouse or minor child.

**D9.** *Income* means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards. *See benefit with monetary value* at D3 above at page 10.

**D10.** *Labor organization* means the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office, during the reporting period, and, in the case of a national or international union officer or

**36180**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

an intermediate union officer, any subordinate labor organization of the officer's labor organization. Item 6 of Form LM-30 identifies the relationships between employers and "your labor organization" or "your union" that trigger a reporting requirement. Item 7 of the Form LM-30 identifies the direct and indirect relationships between a business (such as a goods vendor or a service provider) and "your labor organization" that trigger a reporting requirement. The terms "your labor organization" and "your union" mean:

a. For *officers and employees* of a local labor organization

Your local labor organization.

b. For *officers* of an international or national labor organization

Your national or international labor organization and all of its affiliated intermediate bodies and all of its affiliated local labor organizations

**But note:** A national or international union officer does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

c. For *employees* of a national or international labor organization

Your national or international labor organization.

d. For *officers* of intermediate bodies

Your intermediate body and all of its affiliated local labor organizations.

**But note:** An officer of an intermediate body does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

e. For *employees* of an intermediate body

Your intermediate body.

**D11.** *Labor organization employee* means any individual (other than an individual performing exclusively custodial or clerical services) employed by a labor organization within the meaning of any law of the United States relating to the employment of employees.

Note: An individual who is paid by the employer to perform union work, either under a "union-leave" or "no-docking" policy, is an employee of the union for reporting purposes if the individual performs services for, and under the control of, the union.

For purposes of Form LM-30, stewards receiving union-leave/no-docking payments from an employer or lost time payments from a labor organization are considered employees of the labor organization.

**D12.** *Labor organization officer* means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body. An officer is (1) a person identified as an officer by the constitution and bylaws of the labor organization; (2) any person authorized to perform the functions of president, vice president, secretary, or treasurer; (3) any person who in fact has executive or policy-making authority or responsibility; and (4) a member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

Note: Under this definition, an officer includes a trustee appointed by the national or international union to administer a local union in trusteeship. If you are a trustee elected or appointed by the local union to audit and/or hold the assets of the union, you may or may not be a union officer, depending on your union's constitution and other factors. If you serve in your union in any capacity and you are unsure if your position is an officer position, you are likely an officer of a labor organization if any one of the following applies:

- Your union's constitution or bylaws refers to your position as an officer of

*All terms in italics are defined in Part III of these instructions (pages 9-13).*

the union

- Your union's constitution or bylaws states that your position has the authority to make executive decisions for the union or that you are authorized to perform the functions of president, vice president, secretary, treasurer, or other constitutionally designated officer
- Your union's annual Form LM-2 or Form LM-3 lists your position as an officer of the union
- In your position, you serve on your union's executive board or similar governing body

**D13.** *Legal or equitable interest* means any property or benefit, tangible or intangible, which has an actual or potential monetary value for the filer, spouse, or minor child without regard to whether the filer, spouse, or minor child holds possession or title to the interest. *See* definition of *income* at D9 above on page 11 and *benefit with monetary value* at D3 on page 10.

For example:

- You are an officer of a union. You and your spouse jointly own an accounting business that provides tax services to a number of clients, including your union. You hold a legal interest in the company providing services to your union.
- You are an officer of a union. You form a tax preparation business with two partners and put your share of the business in your wife's name. The business prepares tax returns and LM reports for your union. You hold an equitable interest in a business that deals with your union.

**D14.** *Minor child* means a son, daughter, stepson, or stepdaughter less than 21 years of age.

**D15.** *Substantial part* means 10% or more. Where a business's receipts from an employer(s) whose employees the filer's labor organization represents or is actively seeking to represent constitute 10% or more of its annual receipts, a substantial part of the business consists of dealing with this employer(s).

**D16.** *Trust in which a labor organization is interested* means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries. The term "section 3(l) trust" is used in the instructions as a shorthand reference to such trusts.

There are additional selected LMRDA definitions at the end of these instructions.

## IV. WHEN TO FILE

You must file Form LM-30 within 90 days after the end of your fiscal year. If, however, you were an officer or employee for only a portion of your fiscal year, you may limit your report to that portion of the fiscal year.

## V. WHERE TO FILE

You must mail the completed Form LM-30 to the following address:

U.S. Department of Labor
Employment Standards Administration
Office of Labor-Management Standards
200 Constitution Avenue, NW, Room N-5616
Washington, DC 20210

## VI. PUBLIC DISCLOSURE

Pursuant to the LMRDA, the U.S. Department of Labor is required to make all submitted reports available for public inspection. Union officer and employee reports for the year 2000 and later may be viewed and downloaded from the Office of Labor-Management Standards (OLMS) Web site at http://www.union-reports.dol.gov. Copies of reports can also be ordered at the same Web site. Form LM-30 reports may also be examined at, and copies purchased from, the OLMS Public Disclosure Room at:

U.S. Department of Labor
Room N-1519
200 Constitution Avenue, NW
Washington, DC 20210

## VII. OFFICER OR EMPLOYEE RESPONSIBILITIES AND PENALTIES

The labor organization officer or employee required to file Form LM-30 must sign the completed report and is personally responsible for its filing and accuracy. Under the LMRDA, this individual is subject to criminal penalties for willful failure to file a required report and/or for false reporting. False reporting includes making any false statement or misrepresentation of a material fact while knowing it to be false, or for knowingly failing to disclose a material fact in a required report or in the information required to be contained in it or in any information required to be submitted with it.

All terms in italics are defined in Part III of these instructions (pages 9-13).

The reporting labor organization officer or employee is also subject to civil prosecution for violations of the filing requirements. Section 210 of the LMRDA (29 U.S.C. 440) provides that "whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate."

The officers and employees responsible for filing Form LM-30 are also subject to criminal penalties for false reporting and perjury under Sections 1001 of Title 18, 1746 of Title 28, and 1621 of Title 18 of the United States Code.

You, your spouse, and minor child and any individuals or entities associated with the reportable interests and transactions may be required to provide additional information to the Department concerning reported or reportable interests.

# VIII. RECORDKEEPING

The labor organization officer or employee required to file Form LM-30 is responsible for maintaining records on the matters required to be reported that will provide in sufficient detail the necessary basic information and data from which the documents may be verified, explained or clarified, and checked for accuracy and completeness. These records shall include vouchers, worksheets, receipts, financial and investment statements, contracts, correspondence, and applicable resolutions, in their original electronic and paper formats, and any electronic programs by which they are maintained. Records must be kept available for examination for a period of not less than five years after the filing of the Form LM-30.

# IX. COMPLETING FORM LM-30

*Read the instructions carefully*

*OLMS encourages all filers to complete Form LM-30 electronically. Form LM-30 is available on the OLMS Web site at www.olms.dol.gov. You can complete the form electronically or print a copy and complete it manually. If you do not have access to the Internet, you can obtain a blank form from the nearest OLMS field office listed at the end of these instructions, from the OLMS National Office at 202-693-0124, or by calling the DOL toll-free help desk at 1-866-487-2365.*

**Information Entry.** If you are not completing the report electronically, entries should be typed or clearly printed in black ink. Do not use a pencil or any other color ink.

**Entering Dollars.** In all items dealing with monetary values, report amounts in dollars only; do not enter

cents. Round cents to the nearest dollar. Enter a single "0" in the space for reporting dollars if you have nothing to report.

**Continuation Pages.** If you are completing this report in paper format and there is not enough space to report all the required information and amounts, print and use the continuation pages available online or from the sources listed above. Enter the requested identifying information at the top of each continuation page.

## Form LM-30 PART A

1. **LM-30 FILE NUMBER** — Enter the five-digit file number that OLMS assigned you if you have previously filed Form LM-30. If you have never filed Form LM-30, leave Item 1 blank. OLMS will notify you of your assigned file number, which should be used on all future reports.

2. **PERIOD COVERED**--Enter the beginning and ending dates of your fiscal year. Your fiscal year will normally be identical to the dates for which you file Federal income tax returns. Your report should never cover more than a 12-month period. For example, if your 12-month fiscal year begins on January 1 and ends on December 31, do not enter a date beyond the 12-month period, such as January 1 to January 1; this is an invalid date entry. Note that your fiscal year may differ from the fiscal year utilized by your union for filing its annual financial report, Form LM-2, LM-3, or LM-4.

3. **CONTACT INFORMATION OF REPORTING PERSON** — Enter the following contact information:
   **A – C.** Your full name (first, middle, last name).
   **D – H.** Your complete address where mail should be sent including any building and room number.
   **I.** Your email address. If you do not have an email address or choose not to provide it leave this space blank. Otherwise, enter your email address in the space provided.

4. **LABOR ORGANIZATION IDENTIFYING INFORMATION** —
   **A — D.** Enter the full name of your labor organization including local number, if any. Enter the complete business address of the labor organization where mail should be sent including any building and room number.
   **E.** Enter your labor organization's OLMS file number. If you cannot obtain the file number, go to http://www.unionreports.dol.gov or contact the

*All terms in italics are defined in Part III of these instructions (pages 9-13).*

**Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36183**

nearest OLMS field office listed at the end of these instructions.

**F.** Specify your status in the labor organization by checking the appropriate box indicating whether you are an officer or an employee.

**G.** State your official position or job title with the labor organization. Official titles include, but are not limited to, president, vice president, secretary, treasurer. Job titles include, but are not limited to, business agent, bookkeeper, office secretary, shop steward.

**H.** Check "Yes" if you were an officer or employee of the labor organization at the end of the reporting period. Check "No" if you were no longer an officer or employee.

5. **SUMMARY** —The summary must be completed after you have first completed each Part B that you are required to file as discussed below.
   **A.** Enter the total combined value of all income or other payments reported in Schedule 2, Item F, Column (1) of each Part B.
   **B.** Enter the total combined value of all assets reported in Schedule 2, Item F, Column (2) of each Part B.

6. **Employer Relationships** – Review the seven types of employers listed in Item 6 on the form and the discussion of the reporting requirements and specific exemptions in Part II of these instructions, pages 1 – 9. Check "yes" in Item 6a if you, your spouse, or minor child had an arrangement or engaged in a transaction with, or held an interest in, or received income or other payment from (including any reimbursed expenses), or made loans to or received loans from, an employer or a labor relations consultant to an employer that meets any of the conditions listed. Check "no" in Item 6a if there are none of the listed relationships to report. If you check "yes" enter the number of employers and consultants with which you have reportable dealings in Item 6b.

7. **Business Relationships** – Review the three types of business relationships listed in Item 7 on the form and the discussion of the reporting requirements and specific exemptions in Part II of these instructions, pages 1 – 9. Check "yes" in Item 7a if you, your spouse, or minor child had an arrangement or engaged in a transaction with, or held an interest in, or received income or other payment from (including any reimbursed expenses), or made loans to or received loans from, a business, such as a goods vendor or service provider, that meets any of the conditions listed. Check "no" in Item 7a if there are none of the listed relationships to report. If you check "yes" enter the number of businesses with which you have reportable dealings in Item 7b.

If the answer to both Item 6a and Item 7a is "no," you are not required to file Form LM-30.

8. **SIGNATURE** — Sign and date the Form LM-30 after you have completed the required number of Part Bs as explained below. Enter the telephone number you use to conduct official business. You do not have to report a private unlisted telephone number.

# PART B

You must complete a Part B for each employer (and each labor relations consultant to an employer) and for each business from which you received a reportable payment, loan, or interest (such as stock), or in which you held a reportable interest, or with whom you engaged in a reportable transaction or arrangement, as described in Part II of these instructions. At the top left of each Part B enter your file number. Number each Part B consecutively in the top right corner and indicate the total number being filed. The form does not require the reporting of any personally identifiable information relating to you, your spouse, or your minor child, except as explicitly noted. Do *not* include information such as social security or loan numbers.

For your guidance, Schedules 2, 3, and 4 in Part B contain examples of the types of information that should be reported.

Before completing a Part B, carefully read Part II of these instructions, including the employer and business reporting descriptions, the exceptions, the related examples, and the definitions. (*See also, LMRDA Section 202 (a)(1)-(a)(6) [29 USC 432(a)(1)-(a)(6)],* which is printed at the end of these instructions*).*

## Schedule 1
### *Employer or Business Identifying Information (All Filers Must Complete)*

**A.** **Legal Name of Employer, Business or Labor Relations Consultant.** Enter the legal name of the employer, business, or labor relations consultant including any alias, trade name, or "Doing Business As" designation, if applicable. This is the entity from which you, your spouse, or your minor child received a reportable payment or loan, or in which you held a reportable interest, or with whom you engaged in a reportable transaction or arrangement.

All terms in italics are defined in Part III of these instructions (pages 9-13).

Check the appropriate box for employer, business, or labor relations consultant.

**B-D. Contact Name.** Enter the full name (first, middle, last name) of the contact person at the employer, business, or labor relations consultant to whom mail should be sent.

**E-H. Mailing Address.** Enter the complete address where mail to the employer, business, or labor relations consultant should be sent including any building and room number.

**I.     Telephone Number.** Enter the work telephone number of the contact person, including the area code.

**J.     Web Site Address.** Enter the Web site address of the employer, business, or labor relations consultant. If the employer, business, or labor relations consultant does not have a Web site, enter "none."

**K.     Continuing Relationship with Employer, Business, or Labor Relations Consultant at End of Reporting Period.** Indicate whether a continuing business or financial relationship existed between you (or your spouse or your minor child) and the employer, business, or labor relations consultant at the end of the reporting period. For example, if you reported salary from a business that sells services to your union, and you were still working for the business at the end of the reporting period, check "yes." If, for example, the employer was one with whom you have no continuing relationship, check "no."

# Schedule 2
# *Filer's Interests In, Payments From, Loans to or From, and Transactions or Arrangements with Employer or Business and Payments from a Labor Relations Consultant (All Filers Must Complete)*

**A.     Date.** Enter the date each payment or loan was received, or each transaction was completed. If the reportable event is an arrangement, enter the date the arrangement was made. The date of interests or other holdings should be the date of receipt of the interest.

**B.     Officer, Employee, Spouse, or Minor Child.** Indicate whether the payment, loan, transaction, arrangement or interest was paid to, engaged in, or held by, the officer, employee, spouse or minor child.

**C.     Description of Interest, Payment, Loan, Transaction or Arrangement.** Give a detailed description of the interest, payment, loan, transaction, or arrangement.

*Interest.* For each interest held, identify the nature of the interest (*for example*, common stock, preferred stock, bonds, options, etc.) Give the total number of shares or other units held during the fiscal year. State the total cost of the acquired interest, and the manner by which you (or your spouse or your minor child) acquired the interest (*for example*, employee stock purchase plan, purchase on an over-the-counter market, gift, etc.) If the interest was disposed of during the fiscal year, describe the manner by which you (or your spouse or minor child) disposed of the interest (*for example*, sale on market, gift, exchange, etc.)

*Payment or Income.* Identify the nature of the payment, income, or benefit of monetary value (*for example*, continuing use of an automobile for personal purposes, gift of a computer, payments for services).

*Loan.* Identify the terms and conditions of the loan. Include the dollar value of the remaining obligation, if any, as of the end of the fiscal year (*for example*, unpaid balance of a loan, rentals due under the lease, amount due under a contract, etc.).

*Transaction.* Identify the nature of the transaction, the property involved (for example, stock, bonds, rental of property located at X address), the terms and conditions of the transaction (*for example*, discount purchase of goods, sale and lease back one year, etc), and names and addresses of intermediate parties involved in any indirect transactions.

*Arrangement.* Identify the nature of the arrangement and provide sufficient detail to identify the date, persons involved, and information as to conditions, if any, of the arrangement and the anticipated date on which the benefit will be obtained.

*Other Thing of Value.* Describe the item of value in Item C and indicate its value in Item D.

Describe in detail the nature of the purchases, sales, leases, or other dealings listed. Your report will be deficient if you provide unclear or nonspecific descriptions. If you need additional space to describe the business dealings, use the Additional Information Schedule.

All terms in italics are defined in Part III of these instructions (pages 9-13).

**D. Value.** If the description in Item C is of income or other payments, enter its monetary value in Column (1). If the description in Item C is of an asset, enter its monetary value in Column (2). Income or other payments, as used here, includes, among other things, salary, bonuses, benefits with monetary value (including reimbursed expenses), gifts, loans, payments of money and other things of value, as well as business transactions and arrangements. *See benefits with monetary value* at D3 on page 10 and *income* at D9 on page 11. Assets include, among other things, stocks, bonds, securities, and other interests and holdings, legal or equitable. *See legal or equitable interest* at D13 on page 13.

Enter the exact value if known or easily obtainable; otherwise, enter a good faith estimate of the fair market value and explain the basis for the estimate on the Additional Information Schedule. The fair market value may be determined by:

- The purchase price
- Recent appraisal
- Assessed value for tax purposes, adjusted to reflect market value if the assessed value is computed at less than 100% of the market value
- The year-end book value of stock that is not publicly traded, the year-end exchange rate of corporate stock, or the face value of corporate bonds or comparable securities
- The net worth of a business partnership or business venture
- The equity value of an individually-owned business or any other recognized indication of value (such as the sale price on the stock exchange at the time of the report or, for transactions, the sale price on the stock exchange at the time of the sale).

If the exact value is not known and cannot be estimated, enter "N/A" and explain the situation on the Additional Information Schedule.

**E. Total from Continuation Pages.** Enter the total value of income or other payments and the total value of assets from the continuation pages, if any.

**F. Total Valuation of Income or Other Payments and Assets.** Enter the total value of income or other payments and the total value of assets derived from the employer or business.

## Schedule 3
*Employer's Relationship with Your Labor Organization (Complete for employers only, that is, if you answered "yes" to Item 6a on page 2)*

**A. Employer's Relationship with Labor Organization.** Check the box (and letter, as appropriate) that describes the nature of the employer's relationship with your labor organization.

**B. Details of the Employer's Relationship with Labor Organization.** Provide a detailed description of the relationship between the employer and your labor organization. For example, if you checked Box 4, the description might read: "The XYZ Charity received a donation from Local ABC in June 2005" or Local ABC pays "Health Care PrePaid, Inc., a not-for-profit entity, to provide insurance coverage to its members." Or if you checked Box 5a, the description might read: "The employees of National Union DEF are represented by my union, National Union DEF Staff Union. The two entities are parties to a collective bargaining agreement that is in effect from October 1, 2005 to September 30, 2009." Your report will be deficient if you provide unclear or nonspecific descriptions. If you need additional space to describe the business dealings, use the Additional Information Schedule.

**B(1). Value.** Enter the monetary value of the relationship described in Item B, if applicable. For example, as for the premium payments paid by the labor organization to HealthCare PrePaid, Inc., as described in Item B, record the $125,000 in premium payments in the space provided. If there are no payments or transactions with a monetary value, or if you do not know and cannot estimate the value, enter N/A and explain in the Additional Information Schedule.

## Schedule 4
*Business's Dealings with Union(s), Trust(s), or Employer(s) (Complete for businesses only, that is, if you answered "yes" to Item 7a on page 2)*

**A. Name of Union, Trust, or Employer.** If the business has engaged in buying from, selling or leasing to, or otherwise dealing with your union, with a trust in which your union is interested, or in substantial part with an employer whose employees your union represents or is actively seeking to represent, enter the legal name of each such union, trust, or employer.

All terms in italics are defined in Part III of these instructions (pages 9-13).

**36186**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

B. **Union, Trust, or Employer.** Indicate whether the entity listed in Item A is a union, trust, or employer.

C. **File Number.** If the union, trust, or employer has filed reports with OLMS, enter its file number, if known. If you do not have a file number for the union, trust, or employer, enter its complete address in the Additional Information Schedule.

D. **Description of Dealings.** Describe in detail the nature of the purchases, sales, leases, or other dealings between the business and the union, trust, or employer listed in Item A. For example, if the business and Union A arranged a payroll service in the amount of $45,000 for union members, you might describe the dealing as follows: "One payment for payroll services for Union A members." You report will be deficient if you provide unclear or nonspecific descriptions. If you need additional space to describe the business dealings, use the Additional Information Schedule.

E. Value. Enter the exact value of the purchase, sale, lease, or other dealings between the business and the union, trust, or employer listed in Item A, if known or easily obtainable; otherwise, enter a good faith estimate of the fair market value and explain the basis for the estimate in the Additional Information Schedule. The fair market value may be determined by:
- The purchase price
- Recent appraisal
- Assessed value for tax purposes, adjusted to reflect market value if the assessed value is computed at less than 100% of the market value
- The year-end book value of stock that is not publicly traded, the year-end exchange rate of corporate stock, or the face value of corporate bonds or comparable securities
- The net worth of a business partnership or business venture
- The equity value of an individually-owned business or any other recognized indication of value (such as the sale price on the stock exchange at the time of the report or, for transactions, the sale price on the stock exchange at the time of the sale).

If the exact value is not known and cannot be estimated, enter "N/A" and explain the situation in the Additional Information Schedule.

## Additional Information Schedule

A. **Schedule/Item.** Enter the schedule or item to which the additional information applies.

B. **Additional Information.** Enter the additional information for the schedule or item listed in Column A.

*All terms in italics are defined in Part III of these instructions (pages 9-13).*

*Federal Register* / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations    **36187**

# SELECTED SECTIONS AND DEFINITIONS FROM THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA) AND THE LABOR MANAGEMENT RELATIONS ACT, 1947, AS AMENDED (LMRA)

**LMRDA § 3  [29 U.S.C. §402].  Definitions**

For the purposes of titles I, II, III, IV, V (except section 505), and VI of this Act-

(a) "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

(b) "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

(c) "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, as amended, or the Railway Labor Act, as amended.

(d) "Person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Code, or receivers.

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) "Employee" means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act.

(g) "Labor dispute" includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(h) "Trusteeship" means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws.

(i) "Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it -

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body.

(k) "Secret ballot" means the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.

(l) "Trust in which a labor organization is interested" means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or

All terms in italics are defined in Part III of these instructions (pages 9-13).

more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

(m) "Labor relations consultant" means any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities.

(n) "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.[ …]

**LMRDA § 202 [29 U.S.C. §432]. Report of Officers and Employees of Labor Organizations**

**(a) Filing; contents of report**

Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

**(1)** any stock, bond, **security**, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;
**(2)** any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;
**(3)** any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;
**(4)** any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;
**(5)** any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of

business at prices generally available to any employee of such employer; and
**(6)** any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in Section 186(c) of this title.

**(b) Report of certain bona fide investments**

The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) of this section shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934 [15 U.S.C. §78a et seq.], in shares in an investment company registered under the Investment Company Act of 1940 [15 U.S.C. 80a-1et seq.], or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935 [15 U.S.C.A. §79 et seq.], or to report any income derived therefrom.

**(c) Exemption from filing requirement**

Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) of this section unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

**LMRA §302(c) [29 USCS § 186(c)]. Exceptions.**

The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital

All terms in italics are defined in Part III of these instructions (pages 9-13).

care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (7) with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, (B) child care centers for preschool and school age dependents of employees, or (C) financial assistance for employee housing: Provided, That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: Provided further, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (8) with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their families, and dependents for counsel or plan of their choice: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: Provided further, That no such legal services shall be furnished: (A) to initiate any proceedings directed (i) against any such employer or its officers or agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under the National Labor Relations Act, as amended [29 USCS §§ 151-158, 159-169], or this Act; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor-Management Reporting and Disclosure Act of 1959; or (9) with respect to money or other things of value paid by an employer to a plant, area or industrywide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978. )

**LMRDA § 501 [29 U.S.C. 501]. Fiduciary responsibility of officers of labor organizations**

**(a) Duties of officers; exculpatory provisions and resolutions void**

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

**(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses**

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

**(c) Embezzlement of assets; penalty**

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

All terms in italics are defined in Part III of these instructions (pages 9-13).

**36190**    **Federal Register** / Vol. 72, No. 126 / Monday, July 2, 2007 / Rules and Regulations

*If You Need Assistance*

The Office of Labor-Management Standards has field offices located in the following cities to assist you if you have any questions concerning LMRDA reporting requirements.

| | | |
|---|---|---|
| Atlanta, GA | Grand Rapids, MI | New Haven, CT |
| Baltimore, MD | Guaynabo, PR | New Orleans, LA |
| Birmingham, AL | Honolulu, HI | New York, NY |
| Boston, MA | Houston, TX | Newark (Iselin), NJ |
| Buffalo, NY | Kansas City, MO | Philadelphia, PA |
| Chicago, IL | Las Vegas, NV | Pittsburgh, PA |
| Cincinnati, OH | Los Angeles, CA | St. Louis, MO |
| Cleveland, OH | Miami (Ft. Lauderdale), FL | San Francisco, CA |
| Dallas, TX | Milwaukee, WI | Seattle, WA |
| Denver, CO | Minneapolis, MN | Tampa, FL |
| Detroit, MI | Nashville, TN | Washington, DC |

Consult local telephone directory listings under United States Government, Labor Department, Office of Labor- Management Standards, for the address and telephone number of the nearest field office. Copies of labor organization annual financial reports, employer reports, labor relations consultant reports, and union officer and employee reports filed for the year 2000 and after can be viewed and printed at http://www.unionreports.dol.gov.

Copies of reports for the year 1999 and earlier can be ordered through the Web site. Information about OLMS, including key personnel and telephone numbers, compliance assistance materials, the text of the LMRDA, and related Federal Register and Code of Federal Regulations (CFR) documents, is also available on the Internet at: http://www.olms.dol.gov.

For questions on Form LM-30 and/or the instructions, call the Department of Labor's toll-free number at: 1-866-4-USA-DOL (1-866-487-2365) or email olms-public@dol.gov.

If you would like to receive via email periodic updates from the Office of Labor-Management Standards, including information about the LM forms, enforcement results, and compliance assistance programs, you may subscribe to the OLMS Mailing List from the OLMS Web site: http://www.olms.dol.gov.

All terms in italics are defined in Part III of these instructions (pages 9-13).

[FR Doc. 07–3155 Filed 6–29–07; 8:45 am]
**BILLING CODE 4510–CP–C**

# Exhibit 2

U.S. Department of Labor
Office of Labor-Management
Standards
Washington, DC 20210

# FORM LM-30
# LABOR ORGANIZATION OFFICER AND
# EMPLOYEE REPORT

Form approved
Office of Management
and Budget
No. 1215-0188
Expires 11-30-2009

This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C 439 or 440.

For Official Use Only

E

**READ THE INSTRUCTIONS CAREFULLY BEFORE PREPARING THIS REPORT.**

| 1. File Number **U** - | 2. Fiscal Year Covered From: _/_ _/_    Through: _/_ _/_ |
|---|---|

**3. Name and address of person filing.**

Name

P.O. Box, Bldg., Room No., if any

Street

City

State          ZIP Code + 4

**4. Name, file number, and address of labor organization.**

Name

Labor Organization File Number

P.O. Box, Building and Room Number, if any

Street

City

State          ZIP Code + 4

**5. Position in labor organization.**

Enter appropriate data below if, during the past fiscal year, you or your spouse or minor child directly or indirectly had any of the following interests
(except as specified in the exclusions set forth in the instructions):

A. Held an interest in, engaged in transactions (including loans) with, or derived income or other economic benefit of
monetary value **from an employer whose employees your organization represents** or is actively seeking to represent.

**6. Name and address of Employer (including trade name, if any).**

Name

Trade Name, if any:

P.O. Box, Bldg., Room No., if any

Street

City

State          ZIP Code + 4

**7.a. Nature of Interest, Transaction, or Income.**

**7.b. Amount.**

### Signature

**15. Signature and verification.** The undersigned declares, under penalty of Perjury and other applicable penalties of the law, that all of the information submitted in this report (including the information contained in any accompanying documents), has been examined by the signatory and is, to the best of the undersigned's knowledge and belief, true, correct, and complete. (See the section on penalties in the instructions.)

Signed _____  On _____  _____
                              Date                Telephone Number

| Name of Person Filing | File Number **U-** |
|---|---|

**B.** Held an interest in or derived income or economic benefit with monetary value **from a business** (1) a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with the business of an employer whose employees your labor organization represents or is actively seeking to represent, or (2) any part of which consists of buying from or selling or leasing directly or indirectly to, or otherwise dealing with your labor organization or with a trust in which your labor organization is interested.

| 8. Name and address of Business (including trade name, if any). | 9. Business deals with: |
|---|---|
| Name | |
| | a. Labor Organization |
| Trade Name, if any: | |
| | b. Trust |
| P.O. Box, Bldg., Room No., if any | |
| | c. Employer |
| Street | |
| City | |
| State            ZIP Code + 4 | |

| 10. If 9.b. or 9.c. is checked give trust or employer's name. | 11.a. Nature of such dealing. |
|---|---|
| Name | |
| Trade Name, if any: | |
| P.O. Box, Bldg., Room No., if any | |
| Street | 11.b. Approximate dollar value of such dealing. |
| City | 12.a. Nature of interest held or income received. |
| State            ZIP Code + 4 | |
| | 12.b. Amount. |

**C. Received from any employer** (other than an employer covered under parts A and B above) or from any labor relations consultant to an employer any payment of money or other thing of value.

| 13.a. Name and address of Employer or Labor Relations Consultant (including trade name, if any). | 14.a. Nature of payment. |
|---|---|
| Name | |
| Trade Name, if any: | |
| P.O. Box, Bldg., Room No., if any | |
| Street | |
| City | |
| State            ZIP Code + 4 | |
| 13.b. Is the Business an Employer        or Consultant        ? | 14.b. Amount of payment. |

Form LM-30 (2003)

# Exhibit 3

Public reporting burden for this collection of information is estimated to average 35 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. Reporting of this information is mandatory and is required by the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), for the purpose of public disclosure. As this is public information, there are no assurances of confidentiality. If you have any comments regarding this estimate or any other aspect of this information collection, including suggestions for reducing this burden, please send them to the U.S. Department of Labor, Employment Standards Administration, Office of Labor-Management Standards, Division of Interpretations and Standards, Room N-5605, 200 Constitution Avenue, NW, Washington, DC 20210.

**DO NOT SEND YOUR COMPLETED FORM LM-30 TO THE ABOVE ADDRESS.**

# INSTRUCTIONS FOR FORM LM-30
# LABOR ORGANIZATION OFFICER AND EMPLOYEE REPORT

## GENERAL INSTRUCTIONS

### I. WHY FILE

The Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), requires public disclosure of certain financial transactions and financial interests of labor organization officers and employees and their spouses and minor children.  Pursuant to section 202 of the LMRDA, every labor organization officer or employee (other than an employee performing clerical or custodial services exclusively) who has engaged in any such transaction or has any such interest during the fiscal year must file a detailed report with the Secretary of Labor.  The Secretary, under the authority of the LMRDA, has prescribed the filing of the Labor Organization Officer and Employee Report, Form LM-30, for officers and employees of labor organizations to satisfy this reporting requirement.

The reporting requirements of the LMRDA and of the regulations and forms issued under the Act only relate to the disclosure of specified financial transactions and interests.  The reporting requirements do not address whether such economic interests are lawful or unlawful.  The fact that a particular financial transaction or interest is or is not required to be reported is not indicative of whether it is or is not subject to any legal prohibition; this must be tested by provisions of law other than those prescribing the reports.

### II. WHO MUST FILE

Any officer or employee of a labor organization (other than an employee performing clerical or custodial services exclusively), as defined by the LMRDA, must file Form LM-30 **if**, during the past fiscal year, the officer or employee, or his/her spouse or minor child, either directly or indirectly, held any legal or equitable interest or engaged in any transactions (including loans) of the type described in Section 202 of the LMRDA.

**NOTE:** *Selected definitions from the LMRDA follow these instructions.*

### III. WHAT MUST BE REPORTED

The types of financial transactions and interests which must be reported are set forth in Form LM-30.  The LMRDA states that every officer or employee of a labor organization must file a detailed report with the Secretary of Labor listing and describing certain financial transactions engaged in, and interests held by, the officer or employee or his/her spouse or minor child:  (1) legal and equitable interests in, transactions with, and economic benefits from an employer whose employees his/her union represents or seeks to represent: (2) legal and equitable interests in, transactions with, and economic benefits from certain businesses which deal with the business of the employer whose employees the union represents or seeks to represent, or which deals with the union or a trust in which the labor organization is interested; and (3)  certain income and other economic benefits received from any employer or labor relations consultant.

**Special Reports.** In addition to this report, the Secretary may require officers and employees subject to the LMRDA to submit special reports on relevant information, including but not necessarily confined to reports on the matters referred to under the exclusions in Part A, subsections ii and iv, and Part C, subsections ii and iii.

### IV. WHO MUST SIGN THE REPORT

The labor organization officer or employee must sign the completed Form LM-30.

### V. WHEN TO FILE

Each labor organization officer or employee, as defined in the LMRDA, if he/she or his/her spouse or minor child has held any of the interests or engaged in any of the transactions set forth in this form and the instructions must file Form LM-30 *within 90 days* after the end of his/or her fiscal year. If, however, you were an officer or employee for only a portion of the fiscal year, you may limit this report to that portion of the fiscal year.

## VI. WHERE TO FILE

The completed Form LM-30 and any additional pages must be mailed to the following address:

> U.S. Department of Labor
> Employment Standards Administration
> Office of Labor-Management Standards
> 200 Constitution Avenue, NW, Room N-5616
> Washington, DC 20210

## VII. PUBLIC DISCLOSURE

Pursuant to the LMRDA, the U.S. Department of Labor is required to make all submitted reports available for public inspection. You may examine the Form LM-30 reports at, and purchase copies from, the OLMS Public Disclosure Room at the address listed in Section VI, or at the OLMS field office in whose jurisdiction the reporting officer or employee is located. At the end of these instructions is a list of OLMS field offices.

## VIII. OFFICER AND EMPLOYEE RESPONSIBILITIES AND PENALTIES

The labor organization officer or employee required to sign Form LM-30 is personally responsible for its filing and accuracy. Under the LMRDA, this individual is subject to criminal penalties for willful failure to file a required report and/or for false reporting. False reporting includes making any false statement or misrepresentation of a material fact while knowing it to be false, or for knowingly failing to disclose a material fact in a required report or in the information required to be contained in it or in any information required to be submitted with it.

The reporting labor organization officer or employee required to sign Form LM-30 is also subject to civil prosecution for violations of filing requirements. Section 210 of the LMRDA provides that, "whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate."

## IX. RECORDKEEPING

The individual required to file Form LM-30 is responsible for maintaining records which must provide in sufficient

detail the information and data necessary to verify the accuracy and completeness of the report. You must retain the records for at least 5 years after the date the report is filed. You must retain any record necessary to verify, explain, or clarify the report including, but not limited to, vouchers, worksheets, receipts, and applicable resolutions.

## X. COMPLETING FORM LM-30

*Read the instructions carefully before completing Form LM-30.*

**Information Entry.** Entries on the report should be typed or clearly printed in black ink. Do not use a pencil or any other color ink.

**Entering Dollars.** In all Items dealing with monetary values, report amounts in dollars only; do not enter cents. Round cents to the nearest dollar. Enter a single "0" in the boxes for reporting dollars if you have nothing to report.

**Additional Pages.** If you need additional space to complete an Item, include the additional information on a separate letter-size (8.5 x 11) page(s), indicating the number of the item to which the information applies. Print clearly at the top of each attached page the following information: (1) full name of the reporting labor organization officer or employee, (2) his/her 5-digit file number as reported in Item 1, if available; and (3) the ending date of the reporting period as reported in Item 2. All attachments must be labeled sequentially 1 of __, 2 of __, etc.

# INFORMATION ITEMS 1 - 5

**1. FILE NUMBER**—Enter the five-digit file number assigned by OLMS for the reporting officer or employee. Officers or employees who filed an LM-30 prior to October 2003 received four-digit file numbers. OLMS has now expanded file numbers to five digits. Place a zero in front of your old four-digit file number to meet the new format requirement. For example, if your old file number was 1234, enter 01234 in Item 1 of this year's report. If you have never previously filed the Form LM-30, leave Item 1 blank.

**2. FISCAL YEAR**— Enter the beginning and ending dates of the fiscal year covered in this report. This will normally be the same date as the end of the year for which the person filing this report files his/her Federal income tax return. This LM-30 must not cover *more* than a 12-month period. For example, if the reporting person's 12-month fiscal year begins on January 1 and ends on December 31, do not enter a date beyond the 12-month period, such as January 1 to January 1; this is an invalid date entry.

**3. NAME AND MAILING ADDRESS OF PERSON FILING**—Enter the full name of the reporting officer or employee and the complete address where mail should be sent and received, including any building and room number.

**4. NAME AND ADDRESS OF LABOR ORGANIZATION**—Enter the full name of the labor organization (including local number, if any) of which the reporting individual is an officer or employee, the labor organization's file number, and the complete business address of the labor organization where mail should be sent and received, including any building and room number. If you can not obtain the file number of the labor organization, contact the nearest OLMS field office listed at the end of these instructions.

**5. POSITION IN LABOR ORGANIZATION**—Enter your position in the labor organization. For example, if you are an officer of the labor organization, state your official title.

## GENERAL INSTRUCTIONS FOR REPORTABLE TRANSACTIONS AND INTERESTS PARTS A, B, AND C

***NOTE:*** *The union officer or employee must report only if, during the past fiscal year, he/she or his spouse or minor child, directly or indirectly: (1) held an interest; (2) engaged in a transaction; or (3) received income, payment or other economic benefit with monetary value covered by the Act. You do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances or terms unrelated to the recipient's status in a labor organization, or anything excluded in the specific instructions in Parts A, B, or C below.*

*If more than one employer, business, trust in which your labor organization is interested, or labor relations consultant is involved in the answers to the same Part A, B, and/or C of Form LM-30, complete a separate Part A, B, or C for each employer, business, trust, and/or labor relations consultant. For example, if you (or your spouse or minor child) held stock in three (3) businesses which have lease agreements with your labor organization, then you must submit three Part Bs (one part B for each business) with this report. Do not submit separate LM-30 reports; only attach separate part As, Bs, or Cs to this report.*

*Similarly, if more than one interest, transaction, or income or other benefit is involved in the answers to the same Part A, B, and/or C of Form LM-30, complete a separate Part A, B, or C for each such interest, transaction, or income or other benefit. For example, if you received income and a loan from a business which has a lease agreement with your labor organization,* *then you must submit two Part Bs (one part B for each transaction) with this report. Do not submit separate LM-30 reports; only attach separate Part As, Bs, or Cs to this report.*

## PART A (ITEMS 6 AND 7)

Complete Part A if you (1) held an interest in, (2) engaged in transactions (including loans) with, or (3) derived income or other economic benefit of monetary value from, an employer whose employees your organization represents or is actively seeking to represent. Complete a separate Part A for each such employer and for each such interest, transaction, or item of income or other economic benefit connected with that employer.

However, Part A excludes, and you are not required to answer Items 6 or 7, with respect to the following:

(i) **Holdings of, transactions in, or income from,** bona fide investments in securities traded on a securities exchanged registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940, or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935;

(ii) **Holding of, transactions in, or income from**, securities not listed or registered as described under the exclusion above, provided any such holding, or transaction, or receipt of income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. For purposes of this exclusion, holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial;

(iii) **Transactions** involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer. This does not apply to transactions involving stocks, bonds, securities or loans, for example;

(iv) **Payments and benefits** received as a bona fide employee of the employer for past or present services, including wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan; and payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) required by law or a

bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization.

**6. NAME AND ADDRESS OF EMPLOYER**—Enter the name and address of the employer (including trade or commercial name, if any, such as d/b/a or "doing business as" name) with whom the interest, transaction, or economic benefit was connected.

**7. NATURE AND AMOUNT OF INTEREST, TRANSACTION OR INCOME**— Provide full information as to the nature and amount of each interest, transaction, or item of income or other economic benefit which is not excluded from reporting. Enter in **Item 7.a.** the nature of the interest, transaction, or item of income or other economic benefit in the detail set forth below. Enter in **Item 7.b.** the amount involved in each interest, transaction, or item of income or other economic benefit in the detail set forth below, and the date(s) any income or other economic benefit was received.

   (a)  **Interests held or transactions in stocks, bonds, securities**, or other equitable or legal interests:

For each such interest and transaction, identify the nature of the interest held (for example, common stock, preferred stock, bonds, options, etc.) and give the total number of shares or other units held during the fiscal year. If the interest was acquired during the fiscal year or if this is your first report, give an approximate date or dates of acquisition, total cost to you, and manner of acquisition (for example, employee stock purchase plan, purchase on market, gift, etc.). If the interest was disposed of during the fiscal year, give an approximate date, total amount received by you and the manner of disposition (for example, sale on market, gift, exchange, etc.). In each case, identify the other party or parties to the transaction.

   (b)  **Other transactions** involving (1) any loan to or from the employer; (2) any business transaction or arrangement (for example, purchases and sales of goods and services not excluded under (iii) above; rentals, credit arrangements, franchises, or contracts, etc.):

For each such transaction, identify the nature of the transaction and the property involved (for example, loan of money from employer, rental of loft building,

located at X street, Y City, Z State, to employer, etc.) and state:

   (1)  the total dollar amount you paid or received during the fiscal year (for example, amount of a loan, rent, sale, etc.);

   (2)  the dollar value of remaining obligation, if any, by the end of the fiscal year (for example, unpaid balance of a loan, rentals due pursuant to a lease, amount due under a contract, etc.);

   (3)  the date transaction was entered into and the date it was terminated, if any;

   (4)  the terms and conditions of the transaction (for example, unsecured loan under employer loan plan payable over one year, discount purchases of goods, sale and lease back one year, etc.);

   (5)  names and addresses of intermediate parties involved in any indirect transactions (for example, loans made to you in the name of another, etc.).

   (c)  **income or payment** or other economic benefit with monetary value (including reimbursed expenses).

For each such item of income or other economic benefit, identify the nature of the income or benefit (for example, continuing use of automobile for personal purposes, gift of refrigerator, payment for services not excluded above, etc.). State the amount or value of the income or benefit and the date you, your spouse, or minor child derived it.

### PART B (ITEMS 8 – 12)

Complete Part B if you held an interest in or derived income or other economic benefit with monetary value, including reimbursed expenses, from a business (1) a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with the business of an employer whose employees your labor organization represents or is actively seeking to represent, or (2) any part of which consists of buying from or selling or leasing directly or indirectly to, or otherwise dealing with your labor organization or with a trust in which your labor organization is interested. Complete a separate Part B for each such business and for each such interest or item of income or benefit connected with that business.

However, Part B excludes, and you are not required to answer Items 8 - 12, with respect to the exclusions set forth in (i) and (ii) in the instruction under Part A above.

**8. NAME AND ADDRESS OF BUSINESS**—Enter the name and address of the business (including trade or commercial name, if any, such as "d/b/a" or doing business as name ) the interest, transaction or economic benefit was connected.

**9 AND 10. WITH WHOM THE BUSINESS DEALS**—Select the appropriate box describing the type of organization with which the business (referred to in Item 8) dealt. If you select 9.b. or c, enter the full name of each employer or trust in Item 10.

**11.a. NATURE OF DEALINGS**—Enter the nature of the dealing(s), during the fiscal year covered in this report, between the business and the organization indicated in Items 9 and 10, if this information is ascertainable by you.

**11.b. VALUE OF DEALINGS**—Enter the approximate dollar value of the dealing(s), during the fiscal year covered in this report, between the business and the organization indicated in Items 9 and 10, if this information is ascertainable by you.

**12.a. NATURE OF INTEREST HELD OR INCOME RECEIVED**—Enter the nature of each interest held or income or other economic benefit covered by Part B, including the applicable information set forth in the instructions to Item 7(a) and (c) above.

**12.b. AMOUNT OF INTEREST HELD OR INCOME RECEIVED**--Enter the approximate dollar amount of each interest held or income or other economic benefit covered by Part B, including the applicable information set forth in the instructions to Item 7(a) and (c) above.

## PART C (ITEMS 13 AND 14)

Complete Part C if you received from any employer (other than an employer covered under Parts A and B above), or from any labor relations consultant to an employer, any payment of money or other thing of value. Complete a separate Part C for each such employer and labor relations consultant and for each such payment.

However, Part C excludes, and you are not required to answer Items 13 and 14, with respect to:

(i)    Payments of the kind referred to in Section 302(c) of the Labor Management Relations Act of 1947, as amended (LMRA). The text of Section 302 (c) of the LMRA is set forth below.

(ii)    Bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions.

(iii)    Interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a labor organization **and** the issuer of such securities is not an enterprise in competition with the employer whose employees your labor organization represents or actively seeks to represent.

Regardless of the exclusions above, information that must be reported under Part C includes the following payments (from any employer not covered by Parts A or B or from any labor relations consultant to an employer): (1) not to organize employees; (2) to influence employees in any way with respect to their rights to organize; (3) to take any action with respect to the status of employees or others as members of a labor organization; and (4) to take any action with respect to bargaining or dealing with employers whose employees your organization represents or seeks to represent.

**13.a. NAME AND ADDRESS OF BUSINESS**—Enter the name and address of the employer or labor relations consultant (including trade or commercial name, if any, such as d/b/a or "doing business as" name), from whom the payment in Part C was received.

**13.b. TYPE OF BUSINESS**—Select the appropriate box indicating whether the entity which made the payment is an employer or labor relations consultant.

**14.a. NATURE OF PAYMENT**—For each payment under Part C not excluded above, identify the nature of the income or benefit (for example, continuing use of automobile for personal purposes, gift of refrigerator, payment for services not excluded above, etc.). List the date you received the income or benefit.

**14.b. AMOUNT OF PAYMENT**—State the amount or value of the income or benefit.

## SIGNATURE

**15. SIGNATURE**—The completed Form LM-30 which is filed with OLMS must be signed by the reporting person (officer or employee of the labor organization). Enter the telephone number used by the signatory to conduct official business. You do not have to report a private unlisted telephone number.

# SELECTED DEFINITIONS FROM THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA)

SEC. 3. For the purposes of titles I, II, III, IV, V (except section 505), and VI of this Act-

(a) "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

(b) "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

(c) "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, as amended, or the Railway Labor Act, as amended.

(d) "Person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Code, or receivers.

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce

(1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or

(2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) "Employee" means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act.

(g) "Labor dispute" includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(h) Not applicable.

(i) "Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it--:

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees or an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2) ; or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization,

which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body.

(k) Not applicable.

(l) Not applicable.

(m) "Labor relations consultant" means any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities.

(n) "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

(o) Not applicable.

(p) Not applicable.

(q) "Officer, agent, shop steward, or other representative," when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried non-supervisory professional staff, stenographic, and service personnel.

## NATIONAL LABOR RELATIONS ACT, AS AMENDED

Section 8. "(c) The expressing of any views, argument, or opinion or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

## RELATED PROVISIONS OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA)

### Report of Officers and Employees of Labor Organizations

SEC. 202. (a) Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

(1) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

## SECTION 302(c) OF THE LABOR MANAGEMENT RELATIONS ACT, 1947, AS AMENDED

"(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, which-ever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event of the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such dead-lock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of pro-viding pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; or (6) with respect to money or other thing of value paid by any employer to a trust fund established by such a representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (7) with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, or (B) child care centers for preschool and school age dependents of employees: Provided, That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: Provided further, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (8) with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their

families, and dependents for counsel or plan of their choice: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: Provided further, That no such legal services shall be furnished: (A) to initiate any proceeding directed (i) against any such employer or its officers or agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under the National Labor Relations Act, as amended, or this Act; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor-Management Reporting and Disclosure Act of 1959; or (9) with respect to money or other things of value paid by an employer to a plant, area or industry-wide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978."

### If You Need Assistance

The Office of Labor-Management Standards has field offices located in the following cities to assist you if you have any questions concerning LMRDA and CSRA reporting requirements.

Atlanta, GA
Birmingham, AL
Boston, MA
Buffalo, NY
Chicago, IL
Cincinnati, OH
Cleveland, OH
Dallas, TX
Denver, CO
Detroit, MI
Grand Rapids, MI
Guaynabo, PR
Honolulu, HI
Houston, TX
Kansas City, MO
Los Angeles, CA
Miami (Ft. Lauderdale), FL
Milwaukee, WI
Minneapolis, MN
Nashville, TN
New Haven, CT
New Orleans, LA
New York, NY
Newark (Iselin), NJ
Philadelphia, PA
Pittsburgh, PA
St. Louis, MO
San Francisco, CA
Seattle, WA
Tampa, FL

Washington, DC

Consult local telephone directory listings under United States Government, Labor Department, Office of Labor-Management Standards, for the address and telephone number of the nearest field office.

Copies of labor organization annual financial reports, employer reports, and labor relations consultant reports filed for the year 2000 and after can be viewed and printed at http://www.union-reports.dol.gov. Copies of reports for the year 1999 and earlier can be ordered through the website.

Information about OLMS, including key personnel and telephone numbers, compliance assistance materials, the text of the LMRDA, and related Federal Register and Code of Federal Regulations (CFR) documents, is also available on the Internet at:

**http://www.olms.dol.gov**

# Exhibit 4



**Monday,**
**August 29, 2005**

Part III

# Department of Labor

### Office of Labor-Management Standards

**29 CFR Part 404**
**Labor Organization Officer and Employee**
**Reports; Proposed Rules**

**DEPARTMENT OF LABOR**

**Office of Labor-Management Standards**

**29 CFR Part 404**

**RIN 1215–AB49**

**Labor Organization Officer and Employee Reports**

**AGENCY:** Office of Labor-Management Standards, Employment Standards Administration, Department of Labor.

**ACTION:** Notice of proposed rulemaking; request for comments.

**SUMMARY:** The Employment Standards Administration (ESA) of the Department of Labor (Department) is proposing to revise the Form LM–30 and its instructions. The Form LM–30 implements section 202 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or Act), 29 U.S.C. 432, whose purpose is to require officers and employees of labor organizations to publicly disclose possible conflicts between their personal financial interests and their duty to the labor union and its members. The proposed rule would clarify the Form LM–30, and its instructions, by explaining key terms and providing examples of the financial matters that must be reported, eliminate exemptions in the current Form LM–30 that permit filers to not report financial matters that would otherwise be required to be reported under the Act, and improve the usability of the reports by union members and the public. The Department invites general and specific comment on any aspect of the rule; it also invites comment on specific points, as noted throughout the text of this preamble.

**DATES:** Comments must be received on or before October 28, 2005.

**ADDRESSES:** You may submit comments, identified by RIN 1215–AB49, by any of the following methods:

*Federal eRulemaking Portal: http://www.regulations.gov.*

*E-mail: OLMS–REG–1215–AB49@dol.gov.*

*FAX:* (202) 693–1340. To assure access to the FAX equipment, only comments of five or fewer pages will be accepted via FAX transmittal, unless arrangements are made prior to faxing, by calling the number below and scheduling a time for FAX receipt by the Office of Labor-Management Standards (OLMS).

*Mail:* Mailed comments should be sent to Kay Oshel, Director of the Office of Policy, Reports and Disclosure Office of Labor-Management Standards, U.S.

Department of Labor, 200 Constitution Avenue NW., Room N–5605, Washington, DC 20210. Because the Department continues to experience delays in U.S. mail delivery due to the ongoing concerns involving toxic contamination, you should take this into consideration when preparing to meet the deadline for submitting comments.

OLMS recommends that you confirm receipt of your comment by contacting (202) 693–0123 (this is not a toll-free number). Individuals with hearing impairments may call (800) 877–8339 (TTY/TDD).

Comments will be available for public inspection during normal business hours at the above address.

**FOR FURTHER INFORMATION CONTACT:** For further information contact Kay H. Oshel, Director of the Office of Policy, Reports and Disclosure, at: Kay H. Oshel, U.S. Department of Labor, Employment Standards Administration, Office of Labor-Management Standards, 200 Constitution Avenue NW., Room N–5605, Washington, DC 20210, *olms-public@dol.gov*, (202) 693–1233 (this is not a toll-free number), (800) 877–8339 (TTY/TDD).

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Form LM–30 is used by officers and employees of labor organizations subject to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or Act). The Act requires public disclosure of certain financial interests held, income received, and transactions engaged in by labor organization officers and employees and their spouses and minor children. Subject to certain exclusions, these interests, incomes, and transactions include: (1) Payments or benefits from, or interests in, an employer whose employees the filer's union represents or is actively seeking to represent; (2) transactions involving interests in, or loans to or from, an employer whose employees the filer's union represents or is actively seeking to represent; (3) interests in, income from, or transactions with a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent; (4) interests in, income from, or transactions with a business that deals with the filer's union or a trust in which the filer's union is interested; (5) transactions or arrangements with an employer whose employees the filer's union represents or is actively seeking to represent; and (6) payments from an employer or labor relations consultant.

The Form LM–30, which implements in part the financial disclosure provisions of Title II of the LMRDA, has remained essentially unchanged in the more than 40 years since 1963, when the Labor Department first approved the form LM–30. Over the past several years, the Department has engaged in a process to improve the administration of the LMRDA, including the design and usefulness of the financial reports required by the Act. In the course of this process, a number of problems were identified with Form LM–30. This proposed rule would address these problems by

• Clarifying the instructions by explaining the key terms used in the Act and instructions, and by providing examples of the financial matters that must be reported under each subsection of the Act;

• Eliminating exemptions that permit filers to not report financial matters that would otherwise be required to be reported under the Act, and which present the potential of conflicts of interests for union officers and employees;

• Improving disclosure by creating a summary table on the front page of the report, supported by schedules, for disclosing (1) The filer's interests, payments, loans, transactions or arrangements, (2) the other party to these financial practices, and (3) the dealings, if any, between the party and the filer's labor organization or the employer whose employees the filer's labor organization represents or actively seeks to represent.

The Department invites comment on this proposed rule with respect to the benefits of these changes, the ease or difficulty with which labor organization officers and employees will be able to comply with these changes, and whether the changes will be meaningful, useful, and in accordance with the purposes of the LMRDA, which are to disclose to union members and the public information about certain financial interests of union officials. Interested parties and the public are invited to draw upon their experience with similar conflict and disclosure standards in other settings such as government employment, accounting, corporate governance, legal and judicial practice, medicine, and journalism. The Department invites general and specific comment on any aspect of the rule; it also invites comment on specific points, as noted throughout the text of this preamble.

*A. Financial Transparency*

This proposed rule seeks to revise the Form LM–30, the form used by labor

organization officers and employees to file the annual financial reports required by section 202 of the LMRDA, 29 U.S.C. 432. The rulemaking continues the Department's efforts over the past four years to improve voluntary compliance with, and enforcement of, the LMRDA. In response to requests from union members, members of Congress, public interest groups, and others, the Department:

• Launched a new disclosure web site (*http://www.union-reports.dol.gov*), where individuals may view union financial reports and conduct data searches;

• Added reports filed by labor union officers and employees, employers, and labor relations consultants (Forms LM–10, LM–20, LM–21, and LM–30) to the disclosure web site;

• Modernized the annual financial disclosure report (Form LM–2) filed by the largest union organizations (see 68 FR 58374, Oct. 9, 2003);

• Raised the filing threshold for Form LM–2, thereby increasing the number of labor organizations that may file a simplified version of the annual financial disclosure report;

• Enhanced compliance assistance programs for filers; and

• Increased the investigative resources of OLMS field offices to facilitate enforcement of the Act.

The Secretary also created a new annual financial disclosure report (Form T–1) for use by the largest labor organizations to report on the financial operations of certain trusts in which they are interested (see 68 FR 58374, Oct. 9, 2003), but the requirement that union file this information report was vacated by the District of Columbia Circuit on appeal. See *American Federation of Labor and Congress of Indus. Organizations* v. *Chao*, 409 F. 3d 377 (D.C. Cir. May 31, 2005), petition for rehearing and rehearing en banc filed July 15, 2005. The goal of these initiatives, like this proposal, has been to achieve more detailed and transparent reporting of the financial information that Congress, in enacting the LMRDA, intended to be made public for the benefit of union members and the public. Such transparency allows union members to obtain information needed by them to monitor their union's affairs and to make informed choices about the leadership of their union and its direction. At the same time, this transparency promotes the unions' own interests as democratic institutions and the interests of the public and the government. Financial transparency also deters fraud and self-dealing, and facilitates the discovery of such misconduct when it does occur. In these

ways, the Department's reforms advance the LMRDA's declared purpose "that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." LMRDA § 2(a), 29 U.S.C. 401(a).

### B. The History of the LMRDA

In enacting the LMRDA in 1959, a bipartisan Congress expressed the conclusion that in the labor and management fields "there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." LMRDA § 2(a), 29 U.S.C. 401(a).

The legislation was the direct outgrowth of a Congressional investigation conducted by the Select Committee on Improper Activities in the Labor or Management Field, commonly known as the McClellan Committee, chaired by Senator John McClellan of Arkansas. In 1957, the committee began a highly publicized investigation of union racketeering and corruption; and its findings of financial abuse, mismanagement of union funds, and unethical conduct provided much of the impetus for enactment of the LMRDA's remedial provisions. See generally Benjamin Aaron, *The Labor-Management Reporting and Disclosure Act of 1959*, 73 Harv. L. Rev. 851, 851–55 (1960). During the investigation, the committee uncovered a host of improper financial arrangements between officials of several international and local unions and employers (and labor consultants aligned with the employers) whose employees were represented by the unions in question or might be organized by them. Similar arrangements also were found to exist between union officials and the companies that handled matters relating to the administration of union benefit funds. See generally Interim Report of the Select Committee on Improper Activities in the Labor or Management Field, S. Report No. 85–1417 (1957) ("Interim Report of the McClellan Committee"). For examples of some of the improper arrangements directly or indirectly involving officials of these unions, see pp. 42–86, 122–30, 150–57, 222–55, 376–420, 441–50. See *also*

Robert F. Kennedy, *The Enemy Within* (1960) (discussing the committee's investigation).

The statute was designed to remedy these various ills through a set of integrated provisions aimed at union governance and management. These include a "bill of rights" for union members, which provides for equal voting rights, freedom of speech and assembly, and other basic safeguards for union democracy, see LMRDA §§ 101–105, 29 U.S.C. 411–415; financial reporting and disclosure requirements for unions, union officers and employees, employers, labor relations consultants, and surety companies, see LMRDA §§ 201–206, 211, 29 U.S.C. 431–436, 441; detailed procedural, substantive, and reporting requirements relating to union trusteeships, see LMRDA §§ 301–306, 29 U.S.C. 461–466; detailed procedural requirements for the conduct of elections of union officers, see LMRDA §§ 401–403, 29 U.S.C. 481–483; safeguards for unions, including bonding requirements, the establishment of fiduciary responsibilities for union officials and other representatives, criminal penalties for embezzlement from a union, loans by a union to officers or employees, employment by a union of certain convicted felons, and payments to employees for prohibited purposes by an employer or labor relations consultant, see LMRDA §§ 501–505, 29 U.S.C. 501–505; and prohibitions against extortionate picketing and retaliation for exercising protected rights, see LMRDA §§ 601–611, 29 U.S.C. 521–531.

The reporting requirement for officers and employees operates in tandem with the Act's establishment of a fiduciary duty for union officials and representatives. 29 U.S.C. 501. Congress addressed conflicts of interest in both section 202 and section 501(a) of the Act. 29 U.S.C. 432, 501(a). The latter provides in part:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the

organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. 501(a). Both provisions address the potential and actual conflict between a union representative's personal interests and his or her duty to the union and its members. See Theodore Clark, Jr., *The Fiduciary Duties of Union Officials under Section 501 of the LMRDA*, 52 Minn. L. Rev. 437, 458–60 (1962).

The need for the officer and employee disclosure provisions was not seriously debated during the consideration of the LMRDA legislation. The McClellan Committee hearings disclosed a history of self-dealing by certain union officials, often at the expense of their union's membership. Then Senator John F. Kennedy was the chief sponsor of the Senate bill, S. 505, which served as the foundation for the LMRDA. In introducing the bill for the Senate's consideration, Senator Kennedy addressed concerns about the involvement of union officials in matters that blurred their personal interests and their union's interests, which would be remedied by the legislation. Senator Kennedy used the experience of the Teamsters union, as revealed by the investigation of the McClellan Committee, to underscore the purposes to be achieved by the Act:

First. It will no longer be possible for the dues of Teamster members to be paid out to hoodlums posing as business agents, or be invested in improper or risky racetrack or real estate deals, or to be used by [the union's] officers to build their own personal financial empires without the knowledge of the members themselves—or without investigation by the press and public authorities.

Second. [A union official] would be required to disclose all his business dealings with insurance agents handling the union's welfare funds, his private arrangements with employers, his hidden partnerships in business ventures foisted upon his members, and all other possible conflicts of interest.

\*    \*    \*    \*    \*    \*    \*

Sixth. [Union officials] will find future collusion with employers vastly restricted—with no more loans from employer groups, no more attacks on rival unions through middlemen \* \* \*, and no more secrecy shrouding the use of union funds to bail out a collaborating employer.

105 Cong. Rec. S817 (daily ed. Jan. 20, 1959), reprinted in 2 NLRB Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 ("Leg. History"), at 969. The improper dealings by the Teamster officials, to which Senator Kennedy refers, are detailed in the Interim Report of the McClellan Committee, at, *e.g.*, 48, 59–

60, 64–86, 222–54, 443–50. These dealings, like those identified by officials of other unions in the Interim Report, included actions undertaken by national officers, or others acting at their behest, involving matters affecting not only the national union's operation but also matters of importance to local and intermediate bodies of their union. See *e.g.*, Interim Report, at 4–7, 46–49, 51, 55, 59–60, 63, 69, 74, 81, 87, 122–25, 128, 130, 179, 186–87, 224, 228, 230–40, 244, 250, 252, 284–85, 295, 297, 300, 444–48, 264–66, 268, 281. See also *The Enemy Within*, at 97, 99, 104–05, 106, 221–24.

The Senate Committee Report provided an overview of section 202 of the LMRDA:

[This section] requires a union officer or employee to disclose any securities or other interest which he has in a business whose employees his labor union represents or "seeks to represent" in collective bargaining. When a prominent union official has an interest in the business with which the union is bargaining, he sits on both sides of the table. He is under temptation to negotiate a soft contract or to refrain from enforcing working rules so as to increase the company's profits. This is unfair to both union members and competing businesses.

S. Rep. No. 187 ("Senate Report") (1959), at 15, reprinted in 2 Leg. History, at 411. As explained in the Senate Report: "The hearings before the McClellan committee brought to light a number of instances in which union officials gained personal profit from a business which dealt with the very same employer with whom they engaged in collective bargaining on behalf of the union." *Id.* The committee endorsed the concern expressed in the AFL–CIO's ethical practices code that the union official "may be given special favors or contracts by the employer in return for less than a discharge of his obligations as a trade-union leader." *Id.*

In explaining the purpose of the disclosure rules for union officers and employees, the Senate Report presented "three reasons for relying upon the milder sanction of reporting and disclosure [relative to establishing criminal penalties] to eliminate improper conflicts of interest," which can be summarized as follows:

• Disclosure discourages questionable practices. "The searchlight of publicity is a strong deterrent." Disclosure rules should be tried before more severe methods are employed.

• Disclosure aids union governance. Reporting and publication will enable unions "to better regulate their own affairs. The members may vote out of office any individual whose personal financial interests conflict with his

duties to members," and reporting and disclosure would facilitate legal action by members against "officers who violate their duty of loyalty to the members."

• Disclosure creates a record. The reports will furnish a "sound factual basis for further action in the event that other legislation is required."

Senate Report, at 16, reprinted in 1 Leg. History, at 412. The Report further stated:

The committee bill attacks the problem [of conflicts of interest] by requiring union officers and employees to file reports with the Secretary of Labor disclosing to union members and the general public any investments or transactions in which their personal financial interests may conflict with their duties to the members. The bill requires only the disclosure of conflicts of interest as defined therein. The other investments of union officials and their sources of income are not matters of public concern. No union officer or employee is obliged to file a report unless he holds a questionable interest in or has engaged in a questionable transaction. The bill is drawn broadly enough, however, to require disclosure of any personal gain which an officer or employee may be securing at the expense of the union members.

Senate Report, at 14–15, reprinted in 1 Leg. History, at 410–11. The House Committee Report ("House Report"), H.R. Rep. No. 741 (1959), at 11, reprinted in 1 Leg. History, at 769, conveyed the same message. Both the Senate and House Reports recognize that a reportable interest is not necessarily an illegal practice. As the House Report stated:

In some instances matters to be reported are not illegal and may not be improper but may serve to disclose conflicts of interest. Even in such instances, disclosure will enable the persons whose rights are affected, the public, and the Government, to determine whether the arrangements or activities are justifiable, ethical, and legal.

House Report, at 4, reprinted in 1 Leg. History, at 762. See Senate Report, at 38, reprinted in 1 Leg. History, at 434 ("By requiring reports \* \* \*, the committee is not to be construed as necessarily condemning the matters to be reported if they are not specifically declared to be improper or made illegal under other provisions of the bill or other laws."). "Reports are required as to matters which should be public knowledge so that their propriety can be explored in the light of known facts and conditions." *Id.* As stated by Senator Barry Goldwater after the Act had been passed:

Briefly, what must be reported are holdings of interest in or the receipt of economic benefits from employers who deal or might deal with such union official's union, or

holdings in or benefits from enterprises which do business with such union official's union.

105 Cong. Rec. A8512 (daily ed. Oct. 2, 1959), reprinted in 2 Leg. History, at 1846.

Conflict of interest standards, including disclosure obligations of individuals and entities occupying positions of trust, are well grounded in U.S. law. As stated in the House Report, repeating almost verbatim the same point in the Senate Report:

For centuries the law of fiduciaries has forbidden any person in a position of trust subject to such law to hold interests or enter into transactions in which self-interest may conflict with complete loyalty to those whom he serves. Such a person may not deal with himself, or acquire adverse interests, or make any personal profit as a result of his position. The same principle has long been applied to trustees, to agents, and to bank directors. It should be equally applicable to union officers and employees [quoting the AFL–CIO's ethical practices code]: "[A] basic ethical principle in the conduct of union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a worker's representative."

Senate Report, at 11, reprinted in 1 Leg. History, at 769. See generally Restatement (Second) of Trusts (1959) §§ 170, 173; Restatement (Second) of Agency (1958) §§ 381, 387–98.

Section 202 is an effort, in part, to make effective the disclosure requirements associated with the fiduciary standards applied to union officials in Title V of the LMRDA, which, in turn, reflect the requirements of the extensive code voluntarily adopted by the AFL–CIO in 1957 and applied to its affiliated unions and officials. See Senate Report, at 12–16, reprinted in 1 Leg. History, at 408–12; House Report, at 9–12, reprinted in 1 Leg. History, at 767–70. See also Archibald Cox, *Internal Affairs of Labor Unions under the Labor Reform Act of 1959*, 58 Mich. L. Rev. 819, 824–29 (1960). The following excerpts from this code demonstrate the nexus between the voluntary code and the disclosure requirements of section 202.

[A] basic ethical principle in the conduct of trade union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a workers' representative.

\*      \*      \*      \*      \*

[U]nion officers and agents should not be prohibited from investing their personal funds in their own way in the American free enterprise system so long as they are

scrupulously careful to avoid any actual or potential conflict of interest.

\*      \*      \*      \*      \*

In a sense, a trade union official holds a position comparable to that of a public servant. Like a public servant, he has a high fiduciary duty not only to serve the members of his union honestly and faithfully, but also to avoid personal economic interest which may conflict or appear to conflict with the full performance of his responsibility to those whom he serves.

\*      \*      \*      \*      \*

There is nothing in the essential ethical principles of the trade union movement which should prevent a trade union official, at any level, from investing personal funds in the publicly traded securities of corporate enterprises unrelated to the industry or area in which the official has a particular trade union responsibility.

\*      \*      \*      \*      \*

The policies \* \* \* apply to: (a) all officers of the AFL–CIO and all officers of national and international unions affiliated with the AFL–CIO, (b) all elected or appointed staff representatives and business agents of such organizations, and (c) all officers of subordinate bodies of such organizations who have any degree of discretion or responsibility in the negotiation of collective bargaining agreements or their administration.

\*      \*      \*      \*      \*

[These principles] apply not only where the investments are made by union officials, but also where third persons are used as blinds or covers to conceal the financial interests of union officials.

Ethical Practices Code IV: Investments and business interests of union officials ("AFL–CIO Ethical Practices Code"), 105 Cong. Rec.\*16379 (daily ed. Sept. 3, 1959), reprinted in 2 Leg. History, at 1408.

The Department intends by the proposals set forth herein to better achieve the purposes of the LMRDA, as demonstrated by the legislative history. To that end, and by this reform, the Department will increase compliance with the financial disclosure requirements in the Act, clarify the form and instructions by use of examples and defined terms, remove counterproductive exemptions to the filing requirements, and organize the information in a more useful format.

*C. Statutory Language*

Section 202 provides in its entirety:

SEC. 202. (a) Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year—

(1) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit

with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) Any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) Any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) Any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) Any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a

report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

29 U.S.C. 432.

*D. Increases in Sophistication and Complexity of Financial Practices*

The Form LM–30 has remained essentially unchanged since 1963, when the Department first approved the Form LM–30. See 28 FR 14384 (Dec. 27, 1963). During this time the operations of unions have changed and financial matters affecting institutions and individuals have become more sophisticated. While the same statutory disclosure standard applies now as it did when the Act took effect, the financial activities of individuals and organizations have increased exponentially in scope, complexity and interdependence over the past four decades.

For example, many unions manage benefit plans for their members, maintain close business relationships with financial service providers such as insurance companies and investment firms, operate revenue-producing subsidiaries, and participate in foundations and charitable activities. The complexity of union financial practices, including business relationships with outside firms and vendors, increases the likelihood that union officers and employees may have interests in, or receive income from, these businesses. As more labor organizations conduct their financial activities through sophisticated trusts, increased numbers of businesses have commercial relationships with such trusts, creating financial opportunities for union officers and employees who may operate, receive income from, or hold an interest in such businesses. In addition, employers also have fostered multi-faceted business interests, creating further opportunities for financial relationships between employers and union officers and employees. In this context, disclosure is critical to promoting good union governance, fostering ethical behavior, and deterring and detecting self-dealing.

Moreover, present-day concerns about the intersection of personal interest and professional responsibilities are no longer associated only with traditional trustees, but are matters of central importance to the securities industry, corporate governance, and, among other professional groups, lawyers, physicians, accountants, researchers, journalists, and government employees.

The Department believes that the purposes of the Act could be better

accomplished by promoting increased compliance with the financial disclosure requirements in the Act, clarifying the form and instructions by use of examples and defined terms, removing counterproductive exemptions to the filing requirements, and organizing the information in a more useful format. By improving the form and promoting compliance with reporting requirements, union members will obtain a more accurate picture of the personal financial interests of their union's officers and employees, as those interests may bear upon their actions on behalf of the union and its members. Publicly available information concerning potential conflicts of union officials allows union members to better understand any financial incentives or disincentives faced by their union's officers and employees, and to make informed choices about the leadership of their union and its management of the union. Additional disclosure promotes the unions' own interests as democratic institutions responsive to the concerns of union members, and deters, as well as facilitates the discovery of, fraud and self-dealing.

*E. The Current Form LM–30*

The Department initiated its enforcement of the section 202 reporting requirements within months of the enactment of the LMRDA in 1959, and a regulation making the Form LM–30 effective was published in 1963. See 28 FR 14384 (Dec. 27, 1963).

The current Form LM–30 consists of four sections: a section for identifying data about the filer, and Parts A through C. (The current form and instructions are available at www.olms.dol.gov.) Part A of the form seeks transactions that would be reportable under sections 202(a)(1), (a)(2), and (a)(5). See 29 U.S.C. 432(a)(1), (2), (5). Part A thus generally requires reporting of holdings in, transactions and arrangements with, and income and loans from the employer whose employees the filer's labor organization represents or actively seeks to represent. Part B attempts to implement sections 202(a)(3), and (a)(4). See 29 U.S.C. 432(a)(3), (4). Part B thus generally captures holdings in and income from businesses that deal either with the labor organization, a trust in which the labor organization is interested, or the employer whose employees the filer's labor organization represents or actively seeks to represent. Part C attempts to implement section 202(a)(6). See 29 U.S.C. 432(a)(6). Part C thus generally requires reporting of payments of money or other things of value from employers and labor relations consultants.

Specifically, the first section gathers basic information about the filer, including the name of the organization in which the filer is an officer or employee, the filer's position with the organization, and the fiscal year covered by the report.

In the "General Instructions" filers are informed: "You do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances or terms unrelated to the recipient's status in a labor organization, or anything excluded in the specific instructions in Parts A, B, or C below."

Part A instructs the filer: "Complete [this part] if you (1) held an interest in, (2) engaged in transactions (including loans) with, or (3) derived income or other economic benefit of monetary value from, an employer whose employees your organization represents or is actively seeking to represent. Complete a separate Part A for each such employer and for each such interest, transaction, or item of income or other economic benefit connected with that employer." For each such interest, transaction, or income, the filer is requested to disclose its nature, value, and date of receipt. With regard to the nature of a discloseable transaction, the instructions provide as examples: "Continuing use of automobile for personal purposes, gift of refrigerator, payment for services." Additional examples provided include: "Loan of money from employer, rental of loft building, located at X street, Y city, Z State, to employer." The instructions provide additional information for reporting interests in, and transactions involving, stocks, bonds, securities, options and similar interests.

After identifying the matters that have to be reported, the instructions advise the potential filer that he or she should not report holdings of, transactions in, or income from bona fide investments in registered securities; holdings of, transactions in, or income from other securities if they are of "insubstantial value or amount" (defined as holdings or transactions of $1,000 or less and income of $100 or less in any one security) and occur under terms unrelated to the filer's status in the labor organization; transactions involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer; and "payments and benefits received as a bona fide employee of the employer for past or present services, including wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other

benefit plan; and payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization.''

Part B instructs the filer to report ''an interest in or * * * income or other economic benefit with monetary value, including reimbursed expenses, from a business (1) a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with the business of an employer whose employees your labor organization represents or is actively seeking to represent, or (2) any part of which consists of buying from or selling or leasing directly or indirectly to, or otherwise dealing with your labor organization or a trust in which your labor organization is interested.'' Filers are instructed that they are not required to report any of the interests or income identified in two exceptions to Part A (holdings in, transactions in, and income from bona fide investments in registered securities and insubstantial holdings in, transactions in, and income from other securities). The filer must identify the name and address of the business involved, describe the type of organization the business deals with (employer, labor organization, trust), enter the nature of the dealings between the two parties and the value of these dealings, enter the interest held or income received by the filer, and the dollar amount of such income or interest.

In Part C, the filer is advised to ''Complete Part C if you received from any employer (other than an employer covered under Parts A and B above), or from any labor relations consultant to an employer, any payment of money or other thing of value.'' The instructions identify the following as items that are not required to be reported: (1) Payments of the kind referred to in section 302(c) of the Labor Management Relations Act (LMRA); (2) bona fide loans, interest or dividends from banks, other bona fide credit institutions, and insurance companies; and (3) interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status

in a labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees the filer's labor organization represents or actively seeks to represent. The instructions then advise that notwithstanding the exceptions, the filer must report any payments ''(1) not to organize employees; (2) to influence employees in any way with respect to their rights to organize; (3) to take any action with respect to the status of employees or others as members of a labor organization; and (4) to take any action with respect to bargaining or dealing with employers whose employees [the filer's] organization represents or seeks to represent.'' For each interest or transaction to be reported under Part C, filers must identify the name of the employer or labor relations consultant and the nature and amount of the payment.

The LMRA section 302(c) exclusions are not explained in the instructions. Instead, the instructions provide a full-page quotation of that section. As a general rule, the section 302(c) exclusions make the following payments non-reportable: (1) Any money or other thing of value payable by an employer to (a) an employee whose established duties include acting openly for the employer in matters of labor relations or personnel administration, or (b) any officer or employee of a labor organization who also is an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) money or other thing of value payable in satisfaction of a judgment, arbitral award, settlement or release of any claim in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to deductions from wages in payment of dues in a labor organization by written assignment; (5) with respect to money or other thing of value paid to a trust fund established by the representative of an employer's employees for the sole benefit of these employees, their families and dependents to pay for medical care, pensions, compensation for occupational injury, unemployment benefits, life insurance, disability insurance or accident insurance; (6) with respect to money or other thing of value paid by any employer to a trust fund established by the representative of the employer's employees for the purpose of pooled vacation, holiday, severance or similar benefits, or apprenticeship or training programs; (7)

with respect to money or other thing of value paid by any employer to an individual or pooled trust fund for the purpose of (a) educational scholarships for the benefit of employees, families, and dependents, (b) child care centers, or (c) employee housing; (8) with respect to money or other thing of value paid by any employer to a trust for defraying the costs of legal services; or (9) with respect to money or other thing of value paid by any employer to a labor management committee.

## F. Number of Current Form LM–30's Filed

Prior to initiating this rulemaking, the Department sought to determine the number of Form LM–30s filed, and the number of union officers and employees. The following table represents all reports filed in fiscal years 2001 through 2004:

| Fiscal year | Number of reports filed |
|---|---|
| 2001 | 59 |
| 2002 | 49 |
| 2003 | 41 |
| 2004 | 95 |
| Total | 244 |

Next, the Department attempted to identify the universe of people who are potentially subject to the reporting requirements by calculating the number of union officers and employees. The only source reasonably available to the Department was reports filed on Forms LM–2, LM–3 and LM–4. These reports are filed by labor organizations to disclose their financial conditions and operations, as well as limited information concerning officers and employees. The following table sets forth the Form LM–30 data gleaned from the FY 2002 LM reports:

| Source of data | Number of officers or employees reported |
|---|---|
| LM–2 Officers | 66,749 |
| LM–2 Employees | 47,371 |
| LM–3 Officers | 86,808 |
| LM–4 Officers | 3,706 |
| Total | 204,634 |

Using these 2002 figures and the annual average of approximately 61 Form LM–30 filings for this 4-year period, the Department computed a filing rate for Form LM–30 of 0.03% ($61/204,634 \times 100 = 0.03\%$). The Form LM–2, used by the largest labor organizations, requires the filer to list all the union's officers and the employees

who received more than $10,000 in salary, allowances, and other direct and indirect disbursements from the union. Form LM–3, used by unions with under $200,000 in annual receipts (raised to $250,000 for fiscal years beginning July 1, 2004 and thereafter), requires the filer to list all the union's officers, but report employees who received more than $10,000 in salary, allowances, and other direct and indirect disbursements from the union only in the additional information item on the form. This information is not available in the OLMS disclosure database. Form LM–4 filers (unions with annual receipts of less than $10,000) do not report either officers or employees. Form LM–4 is signed by two officers of the union. Although an estimate, the 0.03 percentage can be used to gauge the filing rate in the absence of more precise figures.

Recently, OLMS evaluated a small number of union employees to determine how many may have been required to file Form LM–30, but failed to do so. Employees of unions with titles identifying them as legal professionals, mostly lawyers, legislative affairs specialists, and lobbyists, were culled from information derived from Form LM–2 reports filed in FY 2002. Legal professionals were selected because it is possible, using Internet-based data, to investigate links between these employees or their spouses and firms that do business with the union, thereby indicating a potentially reportable interest under section 202(a)(4). None of the 438 employees had filed Form LM–30. These 438 individuals' full names were used in Internet searches for information indicating that they had outside legal employment. The use of the surname, coupled with other Internet-based biographical data, on one or two occasions revealed that an official's spouse had such outside legal employment. Then, an Internet search of the name of the outside employer was conducted to determine whether the employer listed the union official's union as a client, or otherwise indicated that it provided services to the union official's union. OLMS contacted eight individuals who, based on the Internet research, appeared to have received, or whose spouse appeared to have received, payments from an employer that dealt with the individual's union. Through these contacts, OLMS sought additional information from them to determine whether the individuals should have filed the Form LM–30 based on a reportable interest under section 202(a)(4). Of these eight, six

completed and filed a Form LM–30 following the OLMS contact. Three of the six reports had to be returned to the filers for revisions or additional information. Review of the final amended reports determined that these six individuals had disclosed reportable interests. When asked, some filers did not give a reason for failing to earlier file the reports. Others said they had been unaware of the reporting requirements. Of the remaining two individuals, one had severed his relationship with the employer before becoming a union employee. In the final case, it was determined that the individual did not receive any benefits other than from the two unions that employed him. The filing rate for this group was 1.37% (6/438 × 100 = 1.37%). This filing rate is probably understated for the 438 employees because OLMS was able to research only potential section 202(a)(4) reporting situations. Others in the group may well have owed reports based on payments from, transactions with, or holdings in, employers or businesses that deal with an employer whose employees the labor organization represents or is actively seeking to represent.

Available data does not allow the Department to precisely measure the current filing rate of union officers and employees or predict what that rate would be if all individuals with reportable interests or transactions filed Form LM–30. The individuals covered by the informal inquiry discussed above may or may not be indicative of a typical union employee. Legal professionals may be more likely or less likely to engage in financial activities covered by the Form LM–30 than union employees in other professions. Further, the circumstances of these professionals may be different from those of union officers. As earlier mentioned, the number of estimated union officers and employees is necessarily understated, in that mid-size unions report in a readily available manner only officers, not employees, on their Form LM–3, small unions list only two signatory officers on their Form LM–4, and employees who receive $10,000 or less in a year are not reported on any of these forms. Certainly, the Department recognizes that not all union officers or employees have reportable interests or transactions. Nevertheless, it is clear that the identified employees had not filed Form LM–30 until they were contacted by OLMS, and half of them did not complete the report correctly on their first attempt. If union legal professionals had to be informed of their obligation to file the reports and failed to correctly

complete the report, it is reasonable to conclude, in the Department's view, that other employees are similarly unaware of their obligation to file and similarly confused by the form. The Department will continue to research the extent to which current Form LM–30 submissions are deficient, and requests comment on further data on this question.

On many other occasions, OLMS has discovered during an audit or investigation that a union officer or employee was engaged in a reportable situation but had not filed the required Form LM–30 until OLMS became involved. For example:

• A local president owned 50% of a business that resurfaced the union's parking lot. Over two years, the business received $9,000 from the union. See section 202(a)(4), 29 U.S.C. 432(a)(4).

• A union designated certain attorneys to represent injured members. Some of these attorneys, who were employers, furnished cash or items of value such as trips and golf clubs to union officials. See section 202(a)(6), 29 U.S.C. 432(a)(6).

• A union hired the accounting firm of an employee's spouse. The firm received over $29,000 from the union over two years. See section 202(a)(4), 29 U.S.C. 432(a)(4).

• An officer of a union, whose members worked at a theater, formed a business with two partners. He put his share of the business in his wife's name although he actually managed the business which employed members of his local to work for the theater. He and his wife received almost $75,000 in profits, expense reimbursements, and salary from the business. See section 202(a)(1), 29 U.S.C. 432(a)(1).

• A union president owned the building in which the union rented office space. See section 202(a)(4), 29 U.S.C. 432(a)(4).

• A union officer's spouse owned a janitorial business that provided daily janitorial services to the union at $800 per month. See section 202(a)(4), 29 U.S.C. 432(a)(4).

• A union employee's spouse owned an advertising company which printed materials for the union and its funds. In one year, the company received over $245,000 from the union and the funds. See section 202(a)(4), 29 U.S.C. 432(a)(4).

• Four local officers formed a company that provided payroll services to the local as well as to theatrical companies that employed members of the local. Two other officers of the local received over $20,000 as employees of the company. See section 202(a)(4), 29 U.S.C. 432(a)(4) (due to services provided to the local union); section

202(a)(3), 29 U.S.C. 432(a)(3) (due to services provided to the theatrical company employers).

• The spouse of a union officer owned a company that provided cleaning and maintenance services to the union and its trust. In one year, the company received over $94,000 from the union and the trust. See section 202(a)(4), 29 U.S.C. 432(a)(4)

• During a campaign for a state government office, a business agent received contributions from employers who were covered by the union's collective bargaining agreement. See section 202(a)(1), 29 U.S.C. 432(a)(1)

• A union officer was part-owner, along with his wife and daughter, of a copier supply company. He was the officer of several unions, including one which employed his daughter as a benefit representative and union trustee. All of the unions purchased office equipment and services from the family's company. See section 202(a)(4), 29 U.S.C. 432(a)(4)

• A union employee owned a heating and air conditioning business that performed HVAC work for the union. See section 202(a)(4), 29 U.S.C. 432(a)(4)

In these instances, compliance with the Form LM–30 requirements would have provided union members with valuable information concerning the finances of their unions' employees and officers. This would have assisted union members in evaluating the efficacy of the work performed by union employees and the leadership provided by union officers. The information would have alerted them to potential conflicts of interests, and guided them as to which actions or decisions of their officers and employees might require greater scrutiny, to determine whether the conflicts have affected the union official's service to the union. Armed with this information, union members could express their concerns at membership meetings, see 29 U.S.C. 411(a), cast a more informed vote at the next internal union election, see 29 U.S.C. 481–483, employ union procedures for removal of officers guilty of serious misconduct, see 29 U.S.C. 481(h), or exercise their right to obtain judicial relief for violations of the fiduciary responsibilities of union officials, see 29 U.S.C. 501(b).

In other instances, compliance with Form LM–30 requirements would have revealed criminal conduct. For example, the president of a national union had the sole authority to appoint or remove attorneys from a list of "Designated Legal Counsel." These attorneys represented injured union members who sought compensation from the railroad for on-the-job injuries. Rather

than selecting attorneys on the basis of their skills, the president awarded the designation to attorneys who paid the union president with cash or other things of value. In another instance, contractors were hired to make repairs and improvements to the offices of a local union. The contractors also performed work on the officers' homes. However, all the expenses of the work, including about $1.2 million for work on the officers' homes, was charged to and paid by the union. A third example involves a contractor, an investment firm that managed pension and investment accounts for unions. This company collapsed in September 2000, costing its clients about $355 million. The company's former chairman was indicted on counts of fraud, money laundering, witness tampering and making illegal payments to union benefit plan trustees. As part of its scheme to buy the influence of pension fund trustees, who were union officers, the investment firm hired relatives of pension trustees as well as provided plan trustees with gifts including rifles, season tickets to sporting events, and fishing and hunting trips to various locations in the western U.S., Canada, Africa, Argentina and Mexico.

OLMS expects that by clarifying the form and instructions, adding examples to the instructions, eliminating administrative exemptions, and providing extensive compliance assistance, the filing rate will increase. During the course of a meeting held under E.O. 12866, a stakeholder asserted that the Department receives few Form LM–30 reports because union officers and employees engage in few covered transactions. The Department invites comments concerning the number of union officers and employees, and the number of union officers and employees who have not filed a Form LM–30 but who have engaged in a transaction, or held an interest that required them to do so.

The Department seeks comments on whether to promulgate a regulation that requires labor organizations to notify their officers and employees of the annual reporting obligations under the LMRDA. No notification obligation currently exists under the Department's regulations, and the regulation proposed herein does not contain such a provision. Notification by labor organizations would, nevertheless, help ensure that officers and employees are aware of their reporting obligations under the LMRDA. An increase in awareness by union officers and employees could increase the number of reports filed each year, enabling union members and the public to learn more

about financial transactions in which the union's officers and employees are involved and, as needed, further inquire into the circumstances of these dealings to ensure that the interests of the members and the public are properly being served.

Under one option, each labor organization would be required to inform its officers and employees, excluding those employed solely in clerical or custodial positions, of their obligation to annually file a Form LM–30 if they, their spouse, or minor children, hold any interests, receive any payments, or engage in any transactions or arrangements covered by section 202 of the Act. *See* 29 U.S.C. 432. Notification would have to be in writing and inform officers and employees that, subject to certain exemptions, they must file a report with the Department if they have interests in, receive payments or income from, or engage in transactions or arrangements with (1) an employer whose employees the labor organization represents or actively seeks to represent, (2) a business that deals with the labor organization, or a trust in which the labor organization is interested, (3) a business a substantial part of which consists of dealing with the business of an employer whose employees the labor organization represents or is actively seeking to represent, (4) any employer, or (5) a labor relations consultant to an employer. The union would inform its officers and employees that if they have any questions concerning which financial matters are reportable and whether they are required to file a report, they should consult the Form LM–30 and its instructions, and the union would provide the web site address where the form and instructions may be found. Notification would be provided by the union to an officer within 30 days of installation into office and to an employee within 30 days of the date of hire. Initial notification would be provided to officers and employees within 60 days of the effective date of the regulation, and thereafter to each on an annual basis. A labor organization could meet this requirement by providing employees and officers with a copy of the Form LM–30 and its instructions. E-mail notification might be considered an acceptable means of informing officers and employees.

An alternative to providing a separate notice to each officer and employee would be to provide a general notice in a union publication that is addressed to every officer and employee.

The Federal government informs employees at the time of their hire and reminds them on a regular basis

thereafter about their various ethical responsibilities, including conflict of interest rules and disclosure requirements. *See* E.O. 12674 (Apr. 12, 1989), as modified by E.O. 12731 (Oct. 17, 1990). The Department seeks comments on whether a similar approach is taken by other organizations and professions. The public is asked to comment on other ways in which employers and professional associations educate their employees and association members about their obligation to disclose possible conflicts between their personal interests and the interests of their employer or clients.

The Department invites comments as to the need for and efficacy of a regulation that requires labor organizations to notify their officers and employees of the annual reporting obligations under the LMRDA. In this connection, it would be helpful to learn what steps are now being taken by labor organizations to inform their officers and employees about conflict-of-interest situations, including disclosure and reporting requirements to the union and its members. Is such information typically provided by an international or national union to all its affiliates? Is it typically contained in a national or international constitution or some other document, such as a handbook for officers and employees, or training materials? Do local and intermediate unions include such information in their constitutions or bylaws—or in other documents? What information is provided to union officials by trusts in which a union has an interest? Under what circumstances and how often have allegations of officer or employee conflicts of interests led to internal or judicial proceedings?

During the course of a meeting held under E.O. 12866, a stakeholder questioned the Department's authority to require labor organizations to notify their officers and employees of their disclosure obligations. The public is invited to comment on this issue.

### G. Deficiencies in the Reports Filed Using the Current Form LM–30

OLMS examined each of the 244 Form LM–30 reports filed during fiscal years 2001, 2002, 2003, and 2004 and determined that a majority of filers did not complete the form correctly. For example, although Part A is separate and distinct from Parts B and C, 100 filers erroneously filled out Part A in addition to the appropriate and intended disclosure of an interest, transaction, income, or arrangement in Part B or C. A total of 136 filers who completed Part B failed to indicate whether the business they had an

interest in, transaction with, or income from dealt with a labor organization, trust, or employer. A total of 117 of the filers who completed Part B provided no information or incomplete and insufficient information about the nature and approximate value of the dealings between the business and the employer, labor organization or trust. Further, 59 of the filers provided no information or inadequate information about the nature of the interest they held in, or the income they received from, the business.

In addition to the deficiencies described above, numerous other errors occurred that resulted in inadequate and incomplete disclosure. For example, most filers failed to answer one or more required questions. In three instances, children of an officer or employee filed Form LM–30 rather than the officer or employee. Six filers did not specify their position within the union, four filers failed to report the fiscal year that was covered by the report, two filers did not sign the form, and one form was signed by the union official's spouse. In Part A, 22 filers provided no information or inadequate information about the nature and amount of the interest in, transaction with, or income from an employer whose employees their union represented or was actively seeking to represent.

The Department believes that the errors discussed above can be reduced by clarifying the form and instructions, adding examples to the instructions, and providing extensive compliance assistance. This rulemaking, further, is part of an overall initiative that includes greater scrutiny of Form LM–30 reports, and union financial records, as well as increased enforcement. The Department believes that these efforts will further reduce the error rate. The Form LM–30 will be more useful to union members and the public when the reports that are filed are responsive to the questions asked, and can thus be meaningfully compared with the reports of other union officials. This will permit union members to understand the nature of the financial matter being reported, and its significance. This will allow union members to make informed decisions as to the leadership and management of their union. During the course of a meeting held under E.O. 12866, a stakeholder asserted that errors in filed reports could be reduced solely by increased compliance assistance by the Department. We will continue to research the extent to which current Form LM–30 submissions are deficient, and request comments on further data that may help the Department explore this question. The Department invites

comments concerning all methods that would reduce the number of errors made in completing Form LM–30.

### H. Significant Proposed Changes to the Form LM–30, and Request for Comments Concerning Filing Exemptions Created by the Department

#### 1. Definitions, Examples and Administrative Exemptions

*Definitions:* The proposal defines key terms. The current instructions do not explain terms that are essential to the form's completion. The revised instructions define: actively seeks to represent, arrangement, benefit with monetary value, bona fide employee, bona fide investment, dealing, directly or indirectly, filer/reporting person/you, income, labor organization, labor organization employee, labor organization officer, legal or equitable interest, minor child, payer, publicly traded securities, substantial part, and trust in which a labor organization is interested.

In defining the term "labor organization," the instructions clarify that an officer or employee of a local union must file reports when he or she engages in transactions with a business that deals with his or her affiliated national labor organization, or engages in transactions with an employer whose employees the national labor organization is actively seeking to represent. Similarly, an officer or employee of a national union must file reports when he or she engages in transactions with a business that deals with an affiliated subordinate labor organization, or engages in transactions with an employer whose employees a subordinate labor organization is actively seeking to represent. By the same token, when determining whether a report must be filed due to payments from, or interests held in, a business that deals with a trust in which a labor organization is interested, the term "labor organization" will retain this expanded meaning. Thus, for example, an officer of a local union must file reports when he or she engages in transactions with a business that deals with a trust in which his or her affiliated national labor organization is interested.

Similarly, in defining "bona fide employee," the revised Form LM–30 would require the reporting of payments received by union officers from an employer for work performed for the union. A typical example involves a "no docking" arrangement where an employer allows a union steward or union officer to resolve grievances, often on an "as-needed" basis, without a loss

of pay. In other instances, a union official is paid by an employer while working full time on union business.

A full discussion of the new definitions is provided below in the discussion of the instructions.

*Examples:* The proposal provides examples to help filers determine what must be reported under each subsection of section 202. These examples will provide illustrations of reportable and non-reportable interests, payments, income, transactions, and arrangements. A full discussion of the examples is provided below in the discussion of the instructions.

*Administrative Exemptions and Special Reports:* The proposed instructions also eliminate some exemptions in the current form. These exemptions permit filers to omit certain financial matters from disclosure that would otherwise be reportable if engaged in by the filer or the filer's spouse or minor child. These exemptions are discussed below, along with other exemptions that the Department does not propose to remove. Comments are invited on both the exemptions that the Department proposes to remove and the exemptions that are not proposed to be removed.

Under the existing instructions, filers are notified: "You do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances or terms unrelated to the recipient's status in a labor organization." The LMRDA Interpretative Manual ("LMRDA Manual"), revised in March 2005, states that "anything with a value of $25 or less will be considered 'de minimis' and therefore not reportable if it is given under circumstances unrelated to the recipient's status in a labor organization." LMRDA Manual, § 241.700.

The Department seeks comments regarding whether this exemption should be retained or removed. This exemption applies by its terms to all reports due under section 202. It does not provide guidance as to when a gift, gratuity, or loan is "unrelated to the recipient's status in the labor organization." The statute calls for disclosure of "any" stock, bond or other interest, "any" income, "any" loan, and "any" payment or other thing of value. See 29 U.S.C. 432(a)(1)–(6). This language could indicate that Congress did not intend to exempt certain gifts, gratuities, or loans based on their dollar value. Further, Congress imposed a substantiality test in section 202(a)(3) ("any business a substantial part of which consists of * * * dealing with the business of an employer"), but did

not do so, at least expressly, in describing the holdings, transactions, and income that is reportable under section 202. See 29 U.S.C. 432(a).

At the same time, exceptions based on insubstantiality are commonly read into statutes that do not expressly contain them. See *Wisconsin Dept. of Revenue* v. *William Wrigley, Jr., Co.,* 505 U.S. 214, 231 (1992) ("the venerable maxim *de minimis non curat lex* ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept."). Furthermore, other reporting and disclosure systems do not require reports of small value items. For the purposes of comparison, one may look to the treatment of gifts in the financial disclosure reports for certain Federal Government employees. Employees with general schedule positions of grade 15 and below whose duties may involve potential conflicts of interest must file Office of Government Ethics (OGE) Confidential Financial Disclosure Report 450 (OGE Form 450). The form has a range of standards for reporting different interests and transactions. Gifts totaling $285 or less from any one source need not be reported, and gifts valued at $114 or less need not be included in determining whether the $285 threshold has been exceeded. Federal employees in positions above GS–15 and in certain other positions of confidential or policymaking character must file a Public Financial Disclosure Report (SF 278). This form treats gifts in a manner similar to the OGE Form 450. Gifts totaling $260 or less from any one source need not be reported, and gifts valued at $104 or less need not be included in determining whether the $260 threshold has been exceeded. Similar to the current Form LM–30's requirement that a *de minimis* gift be reported if the gift is related to the filer's status in the union, under the government's disclosure regime, gifts to a filer's spouse or dependent child must be disclosed "to the extent the gift was not given to him or her totally independent of the relationship to you." See SF 278, p. 12; OGE 450, p5. Unlike the Form LM–30, government employees must report gifts from any source, unless a specific exemption applies, while union officers and employees must report gifts received only from certain businesses and employers. See SF 278, p. 12–13; OGE 450, p5. In one significant regard, government filers are permitted to exclude from their reports gifts of "hospitality (food, lodging and

entertainment) on the donor's personal or family premises." See SF 278, p. 12–13; OGE 450, p5.

Under the OGE Form 450, loans of $10,000 or less are not reportable, and there are four exceptions for loans exceeding the threshold, including mortgages on personal residences, and loans for personal automobiles, household furnishings, or appliances, where the loan does not exceed the purchase price. The loan reporting requirements of the SF 278 are very similar. A copy of both of these forms and instructions are available at the OGE Web site at: *http://www.usoge.gov.*

The Department seeks comment on whether the term "insubstantial" left without further explanation in the instructions could be applied to shield from disclosure some financial transactions that would be of interest to union members. The Department could augment the existing instructions to define "insubstantial value" so that filers are able to distinguish between reportable and non-reportable gifts, gratuities, or loans based on a clearly articulated standard, like that in the Interpretative Manual or those in the Federal employee disclosure forms. The Department seeks comment on whether the $25 threshold set out in the LMRDA Interpretative Manual is an appropriate one, whether the burden to report small interests and transactions is reasonable, and whether it would be preferable to require reporting of all transactions and allow union members to assess whether a particular holding or transaction is substantial enough to possibly present a conflict between private interest and union responsibilities. During the course of a meeting held under E.O. 12866, some stakeholders stated that the exemption for insubstantial transactions in the existing instructions should be clarified, and that the threshold for disclosure be increased. The public is invited to comment on all aspects of this issue.

Part A of the current instructions exempts from reporting

(ii) Holding of, transactions in, or income from, securities [that are not traded on a national securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940, or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935], provided any such holding, or transaction, or receipt of income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. For purposes of this exclusion, holdings or transactions involving $1,000 or less and receipt of income of $100

or less in any one security shall be considered insubstantial;

(iii) Transactions involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer.

(iv) Payments and benefits received as a bona fide employee of the employer for past or present services, including wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan; and payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization.

The Department does not propose to remove exemption (ii), but seeks comment on whether to remove or retain this exemption. This exception, which was created administratively, apparently was intended to discourage reporting of ''insubstantial'' matters unrelated to the filer's position in the union. In like fashion, the LMRDA Manual provides an example of the application of this exception and states that a $400 purchase of stock, traded over the counter by an employee (and thus otherwise reportable) of a company that supplies his union over $1 million annually in goods and services need not be reported where the market value of the stock is $1000 or less and the yearly income from the stock is $100 or less and the holdings and interest are unrelated to the individual's employment by the union. LMRDA Manual, § 246.700 (but also noting that the Department may always require a special report that disclosed the purchase).

As discussed above, exceptions based on insubstantiality are commonly applied. Further, there is precedent for a similar use of reporting thresholds. Under the SF 278, stocks, bonds and securities from one source need not be reported if they total $1,000 or less in value. Investment income of $200 or less need not be reported. Under the OGE Form 450, investments with a value greater than $1,000 or which produce more than $200 in income are reportable.

On the other hand, the exemption deals with unregistered securities, or securities sold through an unregistered exchange, which Congress considered reportable. See 29 U.S.C. 432(b). Further, unlike the federal disclosure forms, section 202 of the Act requires reporting only on financial matters that

were considered to be potential conflicts for union officers and employees by Congress and identified in the statute. Likewise, section 202 does not require reports of financial matters that do not pose this danger, no matter how large the value of the holding or transaction. In this context, an exemption based on insubstantiality or union status factors could arguably result in nondisclosure of transactions that present conflicts of interests for union officials and were identified by Congress as reportable, denying union members relevant information to evaluate their officers and employees not only at the time of union elections but throughout their tenure. The Department seeks comment on whether this exemption should be removed or retained.

Exemption (iii) is a statutory exemption for transactions involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer. The statutory language applies by its terms to financial matters reportable under section 202(a)(5), not to section 202(a)(1) or 202(a)(2). Section 202(a)(5) requires union officers and employees to report any ''business transaction or arrangement'' with an employer whose employees the union represents or is actively seeking to represent. It is for this reporting obligation alone that section 202 applies the exception for ''purchases and sales of goods and services in the regular course of business at prices generally available to any employee of such employer.''

Sections 202(a)(1) and (a)(2) require union officers and employees to report (1) holdings in an employer whose employees the union represents or is actively seeking to represent, (2) transactions in such holdings, (3) loans to or from such employers, and (4) income or any other benefit with monetary value (including reimbursed expenses) received from such an employer. Sections 202(a)(1) and (a)(2) do *not* include the ''regular-course-of-business'' exception.

The instructions for Part A of the current form combine the separate reporting obligations of sections 202(a)(1), (a)(2), (a)(5) into a single query. In so doing, the instructions also apply the statutory exceptions applicable to each obligation to the other obligations. Thus, the current form applies the ''regular-course-of-business'' exception to sections 202(a)(1) and (a)(2)'s requirement that union officers and employees report (1) holdings, (2) transactions in holdings, (3) loans, and (4) income or any other benefit with

monetary value (including reimbursed expenses).

The Department's proposal adheres to the statutory design and thus proposes to remove the exemption for reports due under section 202(a)(1) and 202(a)(2). The proposed form would thus eliminate the application of the ''regular course of business'' exception to reports, due under sections 202(a)(1) and (a)(2), of (1) holdings in an employer whose employees the union represents or is actively seeking to represent, (2) transactions in such holdings, (3) loans to or from such employers, and (4) income or any other benefit with monetary value (including reimbursed expenses) received from such an employer. Rather, the proposed form applies the ''regular-course-of-business'' exception only to reports, due under section 202(a)(5), of any ''business transaction or arrangement'' with an employer whose employees the union represents or is actively seeking to represent.

Union members have an interest in knowing of such holdings, transactions in holdings, loans, and income so they can evaluate whether each is significant enough, or of such a nature, to constitute a conflict of interest. The statutory exemption for payments and other benefits received as a bona fide employee of the employer is sufficient to exempt all the ordinary payments received as part of an employment relationship; the exemption in the current form, the Department believes, may provide a means to exclude other items that present conflicts of interest for union officials. For example, a union officer who receives income from the employer of union members for contract work could, at least arguably, avoid disclosing the payment by relying on this ''regular-course-of-business'' exemption. Also, it is conceivable that a union employee who purchases certain types of ownership interests could avoid disclosing the holding by relying on this exemption. A union official with an employer as a client has a conflict between personal interests and union loyalties, as does an official with an ownership interest in the employer. The change is consistent with the plain language of the statute, which applies the ''regular-course-of-business'' exception only to financial matters reportable under section 202(a)(5), not to section 202(a)(1) or 202(a)(2). The elimination of this exemption will result in more detailed and transparent reporting of financial information that union members may find helpful in determining whether their union's officers and employees are subject to financial pressures inconsistent with

their responsibilities to the union and the union members.

Similarly, the first part of exemption (iv) (up to the semicolon) (dealing with payments and benefits received as a bona fide employee of the employer) is created by statute. Under the statute, it applies to reports due under sections 202(a)(1) and 202(a)(5). Section 202(a)(1) requires union officers and employees to report (1) holdings in an employer whose employees the union represents or is actively seeking to represent, and (2) income or any other benefit with monetary value (including reimbursed expenses) from such an employer. As discussed above, section 202(a)(5) requires union officers and employees to report any "business transaction or arrangement" with such an employer. Sections 202(a)(1) and (a)(5) both contain an exception for "payments and other benefits received as a bona fide employee of such employer."

Section 202(a)(2) requires union officers and employees to report (1) transactions in holdings in an employer whose employees the union represents or is actively seeking to represent, and (2) loans to or from such an employer. Section 202(a) does *not* include the "bona fide employee" exception.

By combining these separate reporting obligations—sections 202(a)(1), (a)(2), (a)(5)—into a single query, the instructions for Part A of the current form also apply the statutory exceptions applicable to each obligation to all three obligations. Thus, the current form applies the "bona fide employee" exception to section 202(a)(2)'s requirement that union officers and employees to report (1) transactions in holdings, and (2) loans.

The proposed form applies the "bona fide employee" exception only to reports, due under sections 202(a)(1) and (a)(5), of (1) holdings in an employer whose employees the union represents or is actively seeking to represent, (2) income or any other benefit with monetary value (including reimbursed expenses) from such an employer, and (3) business transactions or arrangements with such an employer.

The proposed form would eliminate the application of the "bona fide employee" exception to reports, due under sections 202(a)(2), of (1) transactions in holdings in an employer whose employees the union represents or is actively seeking to represent, and (2) loans to or from such an employer.

Union members have an interest in knowing all transactions of union officers and employees involving transactions in ownership interests in, and loans to or from, the employer, so

they can evaluate whether such matters are significant enough, or of such a nature, to constitute a conflict of interest. Under the current form, a union officer could avoid reporting a loan received from the employer on the ground that the loan was a benefit received as a bona fide employee, despite the union members' legitimate interest in knowing whether the person who negotiates the terms and conditions of their employment is beholden to the employer. Removal of the exemption would thus provide union members with important information concerning the financial activities of their officers and employees. Further, sales and purchases of ownership interest in the employer are highly unlikely to constitute payments received as a bona fide employee, and, in any event, a union member would likely be interested to learn whether their union officers or employees availed themselves of the opportunity to purchase or divest in employer holdings. The exemption in the current form is all but superfluous in the context of ownership interests, and to the extent that it is not superfluous, it is counterproductive. The presence of a largely useless exemption can create confusion and complicate enforcement. Finally, the change is consistent with the plain language of the statute, which applies the "bona fide employee" exception only to financial matters reportable under sections 202(a)(1) and 202(a)(5), not to section 202(a)(2).

Following the statutory framework, the Department, therefore, proposes to eliminate this exemption for reports due under section 202(a)(2). Further, as discussed in greater detail in IV.B.2.b, below, the portion of the exemption that excludes payments for periods in which such employee engaged in activities other than productive work will also be removed.

Part B of the current instructions adopts exemption (ii) from Part A. This exemption was created by the Department, and, for the reasons discussed above, the Department seeks comment on whether the exemption should be retained, but does not propose to remove this exemption.

Part C of the current instructions contains the following exemptions:

(ii) Bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions.

(iii) Interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a

labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees your labor organization represents or actively seeks to represent.

The Department proposes to eliminate these two exemptions. Section 202(a)(6) requires union officers and employees to report "any payment of money or other thing of value (including reimbursed expenses)" received from "any employer" or any labor relations consultant to an employer.

Part C (Items 13 and 14) of the current form implements the statutory requirement for reporting payments received from an employer or a labor relations consultant to an employer. The first exemption permits union officers and employees to *not* report bona fide loans, interest or dividends from bona fide credit institutions. The proposed form would eliminate this exemption.

The exemption operates as a barrier to disclosure. In one case, a credit union controlled by a local union made 61% of the credit union's loans to four loan officers, three of whom were officers of the local. By eliminating this exemption, union officers and employees will be required to disclose such loans, interest payments, or dividends. Disclosure of these loans would have benefited the union members. The actions of these officials were not in the best interest of the credit union, or the labor organization that established it, because of the potential consequences of not spreading lending risk among multiple loan recipients and the granting of loans for reasons related to union status rather than ability to repay.

The exemption in the current form is not required by the statute, which is silent on this issue. Indeed, the exemption tracks one that Congress chose to include in reports of employers, but omitted from the reports of union officers and employees. Compare 29 U.S.C. 433(a) with 29 U.S.C. 432(a)(6). Further, this exemption leaves the filer to determine, without further guidance, whether a loan is bona fide.

Exemption (iii) of Part C will also be eliminated under the Department's proposal. This exemption is similar in certain respects to the statutory exemption of section 202(b), but unlike section 202(b), it exempts from reporting bonds and stocks that are not registered with the SEC or traded on a registered securities exchange. Further, section 202(a)(6), to which this exemption applies, already contains an exemption "with respect to the sale and purchase of an article or commodity at the prevailing market price in the

regular course of business.'' To the extent that the exemption in the current form excludes from reporting transactions that fail to meet the statutory section 202(a)(6) exemption, it sanctions nondisclosure of transactions at below-market prices made outside of the regular course of business—the most suspect transactions. Union members would have an interest in knowing whether a union official has received a benefit not available to others on similar terms, in order to evaluate where the union official's loyalties may lie and whether any divided loyalties could affect the official's ability to represent the union members. Further, this exemption invites abuse by permitting the filer to make an unguided determination on whether the bonds and stocks have been acquired under circumstances unrelated to the recipient's status in a labor organization. The exemption is not required by the statute, and its removal is consistent with it.

The exceptions described above are not required by the statutory language and despite their apparent design to simplify reporting, they have added a layer of complexity to the proper understanding of the section 202 reporting obligations. The exemptions are lengthy, and require study in addition to that needed to understand the reporting obligations. They are ambiguous, and may lead filers to believe that reportable transactions may be omitted from the form.

Exemptions (ii) and (iv) of Part A, and exemptions (ii) and (iii) of Part C were not expected to be invariably available. See 29 CFR 404.4. A special report was intended to be used to obtain such exempted information upon demand of the Department, although the special report provision has proved useless in practice, in part because the Department cannot know when important information has been omitted and that a special report would be revealing. See 29 CFR 404.4. The Department proposes to delete the special report provision. As mentioned above, at the time the Form LM–30 was created, the Department acted under the impression that more complete reporting could be realized through an ad hoc special report, and could be selectively required by the Secretary. See 29 CFR 404.4. These reports would allow the Secretary to require the disclosure of the information that was exempted from disclosure by operation of the four administrative exemptions discussed above. *Id.* No procedures were established, however, to govern the imposition of a special report; nor did the Department ever issue or seek a special report. The

special report regulation is an acknowledgement that one or more of the exemptions potentially permit the non-reporting of conflict-of-interest transactions, but leaves no realistic method by which the Department can identify these cases and require more detailed reporting. Further, in today's regulatory and statutory environment, which mandates numerous time consuming procedures and analyses before a reporting form may be issued or revised, the Department's ability to implement a special report for a particular set of union officers and employees is questionable.

In essence, the exemptions proposed to be eliminated render non-reportable transactions that by statute are subject to disclosure, a deficiency that has not been effectively eliminated through the use of a special report procedure. In addition to being not required by statute, the exemptions proposed to be removed necessarily reduce the information available to union members *to evaluate their union officials.* Instead of the Department determining in advance that entire categories of financial holdings or transactions should not be disclosed, the better course may be to require reporting so that union members may decide for themselves whether the financial matters are of concern. The resulting increased transparency will permit union members to obtain information needed by them to monitor their union's affairs and to make informed choices about the leadership of their union and its direction. At the same time this increased transparency will promote the unions' own interests as democratic institutions and the interests of the public and the government. The increased financial transparency will also deter fraud and self-dealing, and facilitate the discovery of such misconduct when it does occur.

2. Restructured Form

The broad purpose of the Form LM–30 is to disclose possible conflicts between the personal financial interests of a union officer or employee and his union. A union member or other person reviewing a report should be able to easily discern the financial interests of the filer. The current form is not arranged to quickly provide such information. The current form does not provide a summary of the data on the report. The viewer must examine all the Parts A, B, and C that are filed; review the payers in all Items 6, 8, and 13; and sum the amounts in all Items 7b, 12b, and 14b to obtain an overview of what has been reported. Union members reviewing the report of a filer with

multiple reportable transactions and interests from several sources would thus have to sort through numerous pages of the report to discern who had paid the filer and perform the math themselves.

To remedy this problem, the Department's proposal contains a summary information schedule that may satisfy the needs of many users of the report without need for greater detail. In the revised form, for convenience and ease of understanding, the term "payer" is used to describe the employer, business, or labor relations consultant that is financially involved with the filer. Using this terminology, a Payer Summary Schedule on the first page of the report shows the name of every payer from which the filer received money or in which the filer held an interest, and the total monetary value the filer derived from each payer. Each payer is numbered to correspond to the appropriate Payer Detail Page. Anyone interested in further information regarding the interests and transactions can skip directly to the appropriate detail page.

The proposed form will call for additional contact information about the filer and his or her labor organization, including the e-mail address of each filer, and the telephone number, web site address, state of incorporation or registration, and state business identification number of each payer. The purpose of this additional contact information is to allow those who view the report to accurately identify the filer and, more important, accurately identify and further research the business with which the filer has a financial relationship. Ambiguous information about the filer or the source of payments to the filer can negate the utility of the report, by denying members sufficient information to assess the conflict situation. Comments are solicited on the significance of this information to readers of the reports and whether a filer has reasonable access to this information.

A labor organization schedule will be added to the form allowing a filer to list the unions that the filer is employed by or an officer of, thus negating the need for filers to submit multiple reports. Continuation pages ease completion of the form, and facilitate search and retrieval.

The proposal also organizes all the reported financial interests and transactions into tables. This will allow a member or other user to perform an electronic search on the OLMS disclosure database. Upon promulgation of a final rule, this database will be

configured in a way that will facilitate such searches.

The Department seeks comments on the proposed notice requirement, clarification of the form, use of examples to guide filers, removal of the administrative exemptions, deletion of the special report procedures, and restructuring of the form.

### III. Authority

#### A. Legal Authority

The legal authority for the notice of proposed rulemaking is sections 202 and 208 of the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), 29 U.S.C. 432, 438.

#### B. Departmental Authorization

Section 208 of the LMRDA provides that the Secretary of Labor shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under Title II of the Act and such other reasonable rules and regulations as she may find necessary to prevent the circumvention or evasion of the reporting requirements. 29 U.S.C. 438. Secretary's Order 4–2001, issued May 24, 2001, and published in the **Federal Register** on May 31, 2001 (66 FR 29656), continued the delegation of authority and assignment of responsibility to the Assistant Secretary for Employment Standards in Secretary's Order 5–96 of those functions to be performed by the Secretary of Labor under the LMRDA.

### IV. Overview of the Regulations and Instructions

The discussion that follows describes the Department's proposal to revise its regulations implementing section 202(a) of the LMRDA, 29 CFR part 404, and the Form LM–30 and its accompanying instructions, which are incorporated into the regulations by reference. 29 CFR 404.3. The following discussion highlights the key elements of each subsection of section 202 and the significant changes between the proposed and current regulations, form, and instructions.

#### A. The Regulations

1. The proposal would amend section 404.4 of the regulations, 29 CFR 404.4, relating to special reports. This section provides that the Secretary may require the filer to file special reports on certain matters pertinent to an officer's or employee's holdings or interests covered by section 202, specifically including four categories of holdings, transactions, and payments that would be reportable but for four administrative exemptions. These include two

administrative exemptions to Part A. The first permits the filer to exclude holdings of, transactions in, or income from non-registered securities of insubstantial value that are unrelated to the filer's status in the labor organization. See Instructions, Part A, exclusion (ii). The second consists of an expansion of the statutory exclusion for payments and benefits received as a bona fide employee to include "payments for periods in which such employee engaged in activities other than productive work." See Instructions, Part A, exclusion (iv). They also include two administrative exemptions to Part C. The first specified Part C exemption excludes bona fide loans, interest, or dividends from banks, insurance companies and other bona fide credit institutions. See Instructions, Part C, exclusion (ii). The second concerns interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees the filer's labor organization represents or actively seeks to represent. See Instructions, Part C, exclusion (iii). Although the special report provision will be deleted, the Department notes that it maintains statutory authority to assess each report for sufficiency, require amended reports, and to commence investigations where it is necessary to determine whether any person has or is about to violate any provision of the Act. 29 U.S.C. 440, 521.

2. In addition, the Department proposes to amend 404.7, which requires the maintenance and preservation of records. The language has been revised to better identify some of the documents that must be retained and to address the fact that records now may be maintained in electronic format. The Department intends no substantive change in meaning, as the revised language merely clarifies and makes explicit the retention requirements that have always been imposed by the regulation and statute. See 29 CFR 404.7; 29 U.S.C. 436.

3. The Department proposes to amend section 404.1 to add definitions for the following terms: *Benefit with monetary value, dealing, income, labor organization, minor child,* and *trust in which a labor organization is interested.* See 29 CFR 404.1. In addition, the existing definitions for the terms "labor organization officer," and "labor organization employee" will be modified. These are terms that appear in

29 CFR 404, and it is thus appropriate to define the terms in the regulations themselves. The terms and their definitions will also appear in the instructions, as will other terms, discussed below, that appear only in the instructions. This approach is used in the existing regulations and instructions.

To be as effective as possible, a reporting and disclosure statute such as section 202(a) depends on a known and easily applied standard regarding what must be reported. Such a standard is important not only for union officials who must comply with the reporting requirements and for the administrative agency that enforces compliance, but also, because of the special objectives of the LMRDA, for union members and the general public who rely on disclosure and need to know what the disclosure or its absence represents.

#### B. The Instructions

The following discussion tracks the major sections of the proposed instructions. The proposed instructions, in turn, correspond roughly with the layout of the existing instructions. We identify the changes between the proposed and existing instructions; these changes also are reflected in the revised layout and design of the form itself. The proposed layout of the form is based on other updated OLMS financial disclosure reports and includes a summary schedule.

##### 1. General Changes

The myriad types of financial transactions made reportable by section 202 complicate the design of a "self-explanatory" form. The filer must rely on the instructions to accurately complete the form. We invite comments as to the layout of the instructions, their clarity, and suggestions about how to better explain the reporting obligations.

##### 2. Introductory Section of the Instructions

a. The first heading of the proposed instructions: "Why file" is identical to the current form. Like the current form it delineates the basic reporting obligations. However, the proposal adds more information to better place the filing obligation in the larger context of the LMRDA. We identify the elements of the statute and explain that the basic purpose of the section 202 report is to publicly identify any actual or apparent conflict between the personal financial interests of a filer, spouse, or minor child and the filer's obligation to the union and its members. The proposal also clarifies that no report need be filed unless the filer, spouse, or minor child

held a covered interest or engaged in a covered transaction during the reporting period.

b. The second heading of the proposed instructions is "Definitions." This is a new section of the instructions.

The terms defined include: *actively seeking to represent, arrangement, benefit with monetary value, bona fide employee, bona fide investment, dealing, directly or indirectly, filer/ reporting person/you, income, labor organization, labor organization employee, labor organization officer, legal or equitable interest, minor child, payer, publicly traded securities, substantial part,* and *trust in which a labor organization is interested.*

The meaning of many of these terms is left unclear by the current instructions. By defining and explaining the key terms used by section 202, a filer will better understand his or her reporting obligations, which, in turn, will improve the likelihood of filing and the accuracy of the reports. Providing information that should be disclosed, based on statutory requirements, will aid union members in assessing whether their union's officers and employees have entered into financial arrangements with employers, businesses, and others that could potentially compromise the officials' ability to act in the best interests of, and achieve the best results for, the union and its members.

*Actively seeking to represent*, as proposed, means that a labor organization has taken steps to become the bargaining representative of the employees of an employer, including but not limited to:

• Sending organizers to an employer's facility;

• Placing an individual in a position as an employee of an employer that is the subject of an organizing drive and paying that individual subsidies to assist in the union's organizing activities;

• Circulating a petition for representation among employees;

• Soliciting employees to sign membership cards;

• Handing out leaflets;

• Picketing; or

• Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of its employees), or otherwise committing labor or financial resources to seek representation of employees working for the employer.

This definition, in large part, is based on a statement from the legislative history. See Senate Report, at 15, reprinted in 1 Leg. History, at 411 (The phrase "actively seeking to represent" denotes "more than that the union hopes some day to become the bargaining representative of a group of employees or claims jurisdiction to organize them. It requires specific organizational activities such as sending organizers into a community, handing out leaflets, picketing, or demanding recognition and bargaining rights"); House Report, at 11; reprinted in 1 Leg. History, at 769. The examples are concrete actions commonly associated with attempts to organize a workforce. Comments are invited as to the merit and clarity of the enumerated activities and whether other examples would be helpful. In the Department's view, the term "actively seek to represent" seeks to distinguish between situations where a union has taken steps to organize and those where the union merely has an interest in organizing employees of the employer in question. For example, a union may wish to represent employees of a certain employer, and may even have finalized an organizing plan, but has not yet begun to implement the plan. Such a union is not actively seeking to represent employees of this employer. Comments are sought as to whether it is appropriate to trigger the reporting obligation on the decision to organize an employer's workforce distinct from taking the first concrete step to organize. The Department recognizes that some organizing activities are initiated without notice to the public or an employer, but there would appear to be few, if any, situations, where the disclosure of a reported interest on the Form LM–30 would be the first open acknowledgment of the union's active efforts to represent employees. Commenters are asked to address this assumption.

*Arrangement*, as proposed, means any agreement or understanding, tacit or express, or any plan or undertaking, commercial or personal, by which the filer, spouse, or minor child will obtain a benefit, directly or indirectly, with an actual or potential monetary value.

The term encompasses both personal and business transactions, including an unwritten understanding. For example, if an employer's representative during the reporting period solicits a union officer to accept a job with the employer, the filer must report the solicitation, unless the filer rejects the offer. A standing job offer must be reported because it carries the potential of monetary value to the filer. Another example of a situation requiring a report would be one in which a covered employer provides insider information about a stock or other investment opportunity, unless the filer rejects the advice and takes no steps to act on it.

Certain senior government officers and employees are required to file publicly available reports (SF 278) disclosing their financial interests as well as the interests of their spouse and dependent children. The SF 278 requires a filer to report "arrangements" including "(1) future employment; (2) a leave of absence during [the filer's] period of Government service; (3) continuation of payments by a former employer other than the United States Government; and (4) continuing participation in an employee welfare or benefit plan maintained by a former employer other than United States Government retirement benefits." The form notes that disclosure "includes any agreements or arrangements with a future employer entered into by a termination filer." SF 278, p. 15; See also OGE 450, p. 4.

In addition, senior government filers "must disclose any negotiations for future employment from the point you and a potential non-Federal employer have agreed to your future employment by that employer whether or not you have settled all of the terms, such as salary, title, benefits, and date employment is to begin." SF 278, p. 15.

*Benefit with monetary value*, as proposed, means anything of value, tangible or intangible, including any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind.

This definition is adopted from disclosure regulations applicable to federal employment. See 5 CFR 2634.105(h); 5 CFR 2634.302(b)(1).

*Bona fide employee*, as proposed, is an individual who performs work for, and subject to the control of, the employer.

In considering the meaning to be given *bona fide employee*, the Department considered the purposes of the LMRDA, and the following point in the AFL–CIO's Ethical Practices Code: "No responsible trade union official should accept kickbacks, under-the-table payments, gifts of other than nominal value, or any personal payment of any kind other than regular pay and benefits for work performed as an employee from an employer or business enterprise with which his union bargains collectively." AFL–CIO Ethical Practices Code, 105 Cong. Rec.*16379 (daily ed. Sept. 3, 1959), reprinted in 2 Leg. History, at 1408. The Department

has also considered the disclosure form (SF 278) required to be completed by senior government officials and employees. The instructions for the SF 278 require filers to report earned income, including "fees, salaries, commissions, compensation for personal services, retirement benefits, and honoraria," excluding "income from employment by the United States government." SF 278, p. 8. Finally, the Department recognizes that numerous federal agencies, including the Department, continue the pay of union representatives engaged in the conduct of union-management business. See Agreement between Local 12, AFGE, AFL–CIO and the U.S. Department of Labor, Article 45 (Effective March 20, 2005).

Under the proposed definition, to be exempt from reporting, payments and other benefits received as a bona fide employee of the employer must be attributable to work performed for, and subject to the control of, the employer. See *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 322–24 (1992). Such payments and other benefits are non-reportable, even if they represent compensation for such work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law. In contrast, compensation for work performed as an independent contractor does not constitute payments or benefits to a bona fide employee, even if the individual also serves as a bona fide employee while performing other work. Most fundamentally, compensation paid to an individual who is carried on the employer's payroll but who does not work (a "no-show employee") is not compensation to a bona fide employee.

By its terms, the proposed definition excludes payments for work performed for an individual other than the employer, or work performed outside the control of the employer. This definition will, thus, require reporting of at least two types of compensation that are currently excluded from reporting as "payments and other benefits received as a bona fide employee." See Instructions, Part A, exclusion (iv). These compensation types are "union leave" and "no docking" payments. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no

loss of pay. Continuation of pay in this context is not "payments or other benefits received as a bona fide employee" because the payments are not attributable to work performed for, and subject to the control of, the employer. Rather, the pay is for services performed for, and subject to the control of, the union. The payments are, therefore, reportable. See 29 U.S.C. 432(a)(1), (a)(5).

The current instructions treat as non-reportable payments for "activities other than productive work," depending in part on the collective bargaining agreement and the employer's practices. Specifically, exemption (iv) of Part A of the current form excludes "payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization." See Instructions, Part A, exemption (iv). The LMRDA Manual discusses the situation when a union officer "is excused from his regular work to handle grievances and [is] paid his regular wages while handling grievances." It states: "Such a situation will not normally require reports from the union officer * * * on the theory that the employee officer is being paid for work performed of value to the employer who is interested in seeing to it that grievances are immediately adjusted." LMRDA Manual, § 248.005.

The Department proposes to change this rule. Under the Department's proposed instructions, an officer or employee would have to report any payments for other than "productive work," including union-leave and no-docking payments. These payments are not received as a bona fide employee of the employer; they are received as a representative or employee of the union. The employer's perception that an employee's work for the union is valuable, a fact relied on by the LMRDA Manual, does not seem relevant. The question is whether the payment is received as a bona fide employee, not whether the employer considers the money well spent. The payments also represent a potential conflict of interest. Members have an interest in knowing how much union officers or employees are paid by the employer for time spent on union business. This information

would be significant for members in assessing the effectiveness of union officers and employees and in evaluating candidates for union office. For example, during collective bargaining negotiations, an officer who enjoys union-leave or no-docking payments may agree, or feel pressure to agree, to reduced benefits for employees in exchange for increases in his or her employer payments. Similarly, a union employee may feel pressure to not zealously pursue a grievance on behalf of a union member for fear of alienating the employer and jeopardizing his or her payments. The exemption in the current form is not required by statute, which is silent on this issue.

In discussing the legality of "no-docking" payments under the Labor Management Relations Act, one circuit judge wrote, "Congress was concerned about any form of payment that could upset the balance between labor and management. The payments at issue in this case do exactly that. They create a conflict of interest for union negotiators who may agree to reduced benefits for the employees in exchange for financial support for the union." See *Caterpillar* v. *United Auto Workers*, 107 F.3d 1052 (3rd Cir. 1997) (*en banc*) (emphasis in original) (Mansmann, J., dissenting), *cert. granted*, 521 U.S. 1152, *dismissed as moot*, 523 U.S. 1015 (1998). The Department finds this reasoning persuasive in the context of section 202 of the LMRDA, and the proposed interpretation to be more consistent with the language of the statute than the current approach. These payments present a potential for conflicts of interest. By exempting these payments from reporting, the Department has deprived union members of information they may need to make an informed judgment on whether their union officers and employees are subject to financial incentives that could hinder them in fulfilling the trust that has been placed in them. The Department acknowledges that this proposal is a departure from the Department's past practice and invites comment about the problems (or their absence) that have arisen by allowing such payments to go unreported. The Department also seeks comment about whether disclosure is always appropriate for "no docking" situations and, if not, suggestions as to whether quantitative (such as number of hours) or qualitative (such as discussing a grievance with a supervisor or management official) distinctions should affect the disclosure obligation.

*Bona fide investment*, as proposed, means personal assets of the filer held to generate profit not acquired by improper means or as a gift from an

employer, a business that deals with the filer's union or a trust in which the filer's union is interested, a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent, or a labor relations consultant to an employer. *See publicly traded securities.*

The primary purpose of this definition is to alert filers that stock or other securities received as a gift will not constitute a ''bona fide investment,'' under the provision that exempts from reporting bona fide investments in publicly traded securities when the gift is received from an employer, certain businesses, or a labor relations consultant. See discussion of *publicly traded securities*, below. A union officer or employee who receives a gift of publicly traded stock from an employer, for example, must therefore disclose the holding, unless another reporting exemption applies.

*Dealing*, as proposed, means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade.

In the course of providing compliance assistance to union officers and employees, OLMS has been asked if payments from a union to a trust in which the union is interested constitute ''dealing[s]'' between the trust and the union under section 202(a)(4) of the Act, which creates a reportable relationship when a union officer or employee receives a payment from a business engaged in ''buying from, selling or leasing to, or otherwise dealing with'' the union. OLMS has been asked whether dealings between a union and a union related trust exist when payments are made by an employer to the trust pursuant to a collective bargaining agreement negotiated by the union. In addition, the public has asked whether contributions by a union to a charitable, social, educational, or political organization constitute dealings between the union and the organization. The Department's current and proposed instructions do not speak explicitly to this issue, and the government's reporting system is not directly on point. See OGE 450, p. 14 (''If you receive food, transportation, lodging, and entertainment or a reimbursement of official travel expenses from a non-profit tax-exempt institution categorized by the IRS as one falling within the terms of 26 U.S.C. 501(c)(3), you must report the name of the organization, a brief description of the in-kind services or the reimbursement and the value.'') The Department seeks comments on these

issues, and the related issue of whether trusts and such organizations constitute, or can constitute, ''business[es]'' under sections 202(a)(3) and (a)(4), or ''employers'' under section 202(a)(6), so that payments from such organizations to union officials would be reportable. What activities or transactions between trusts and other organizations and the union would rise to the level of dealings? What factors, if any, should the Department consider when determining if trusts and other organizations are businesses or employers? Finally, commenters are asked to consider these questions in regard to labor organizations and labor management committees. Can these entities constitute businesses under sections 202(a)(3) and (a)(4), or constitute employers under section 202(a)(6), and, if so, what type of activities and transactions between such entities and the filer's union should be considered dealings?

*Directly or indirectly*, as proposed, means by any course, avenue, or method. *Directly* encompasses holdings and transactions in which the filer, spouse, or minor child receives a payment or other benefit without the intervention or involvement of another party. *Indirectly* includes any payment or benefit which is intended for the filer, spouse, or minor child or on whose behalf a transaction or arrangement is undertaken, even though the interest is held by a third party, or was received through a third party.

The purpose of this definition is to clarify that filers must disclose any benefits received by them (or their spouse or minor child) from a third party where the third party is acting on the behalf, or at the behest, of an employer or business where the benefit would have to be reported if made by it directly to the filers (or their spouse or minor child). Benefits received from an employee, agent, or representative of an employer or business, or other entity acting on behalf of the employer or business, should be considered to be received from the employer or business. Payments to a third party to be held for the use or benefit of the filer are also reportable. The definition is deliberately drawn broadly, consistent with the legislative history ''to require disclosure of any personal gain which an officer or employee may be securing at the expense of union members.'' Senate Report, at 15, reprinted in 1 Leg. History, at 411. See also AFL–CIO Ethical Practices Code, reprinted in 2 Leg. History, at 1406 (''[The ethical principles] apply not only where the investments are made by union officials, but also where third parties are used as

blinds or covers to conceal the financial interests of union officials'')

*Filer/Reporting Person/You*, as proposed, mean any officer or employee of a labor organization who is required to file Form LM–30. These terms are used synonymously and interchangeably throughout the instructions and, when referring to reportable interests, income, or transactions, these terms include interests, income, or transactions involving the union officer's or employee's spouse or minor child.

*Income*, as proposed, means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards.

This definition is designed to help filers identify the types of financial matters that are subject to the reporting requirements. The list is adopted from disclosure regulations applicable to federal employment. See 5 CFR 2634.105(j); 5 CFR 2634.302.

*Labor organization*, as proposed, means the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office, during the reporting period, and any parent or subordinate labor organization of the filer's labor organization.

Under sections 202(a)(1) through (a)(5), union officers and employees must report payments from, holdings in, or transactions with the following entities:

(1) An employer whose employees the filer's labor organization represents or is actively seeking to represent;

(2) A business a substantial part of which consists of dealing with an employer whose employees the filer's labor organization represents or is actively seeking to represent; or

(3) A business that deals with the filer's labor organization or a trust in which the filer's labor organization is interested.

The reporting obligation thus depends on what organization constitutes the filer's labor organization. Many labor organizations consist of a three-tier hierarchy, such as a local labor organization, an intermediate body, and a national or international labor organization.

The current instructions are silent about the obligation of an officer or employee to report, under section

202(a)(4), interests or income from businesses that deal with parent or subordinate labor organizations within the filer's labor organization. See 29 U.S.C. 432(a)(4). In the same way, the instructions are silent as to whether labor organizations affiliated with that of the union officer or employee are encompassed by the phrase "an employer whose employees such labor organization represents or is actively seeking to represent." See 29 U.S.C. 202(a)(1), (2), (5). For example, one reading of the statute would mean that payments by an employer to a union official would not be reportable if a different labor union within the same overall union hierarchy was the entity actively seeking to represent the employees of the employer. As currently written, a filer would have to contact the Department or obtain a copy of the LMRDA Manual to learn that the obligation extends beyond the immediate organization in which the filer is an officer or employee. As provided in the LMRDA Manual: "An international union officer must report his income from [a] business [that has dealings with an employer whose employees a local union represents] even though he is not an officer of the local which represents the employees of the business, and even though his duties as an international officer do not include representation activities." LMRDA Manual, § 241.100.

Union members have an interest in knowing benefits their officers or employees receive from businesses that deal with their parent or subordinate unions or with employers whose employees their parent or subordinate unions represent, or are actively seeking to represent, so they can evaluate whether these benefits are significant enough, or of such a nature, to constitute a conflict of interest. For example, union members have an interest in knowing if a spouse of a local union officer owns a travel agency that does business with the national union. Likewise, under the current instructions, and unless the filer was familiar with the interpretative manual, union members would not know if a president of a national labor organization owns a printing company that provides services to many of the national union's subordinate local labor organizations. Yet, employees of local unions may choose to patronize this printing company to seek favor with, or avoid alienating, the national president, despite less expensive services available elsewhere.

The statutory language itself is ambiguous on this point. However, as discussed above, Senator Kennedy's statement about how the Act would remedy the improper actions by certain high ranking international union officers evinces Congressional concern about the conflict posed by a union official's personal interests and the official's obligation to all the union's members and constituent units, not merely concern about matters relating solely to the particular tier of the union in which the filer serves as an officer or employee. As discussed above, the McClellan Committee's investigation disclosed a myriad of arrangements whereby union officials, whose personal interests were intertwined with those of employers and benefit providers, suborned the interests of their affiliated locals and their members to the officials' personal interests and the interests of the officials' financial benefactors. Confident that Congress would not have intended to ignore the serious problems identified by the McClellan Committee's investigation, the Department's proposal clarifies the reach of the disclosure obligation to include conflicts that arise between a union official and his responsibility to both the immediate unit of the union that he serves and any parent or subordinate unit of that unit.

*Labor organization employee*, as proposed, means any individual (other than an individual performing exclusively clerical or custodial services) employed by a labor organization within the meaning of any law of the United States relating to the employment of employees.

By statute, an employee "means an individual employed by an employer". 29 U.S.C. 402(f). An employer is broadly defined to include "an employer within the meaning of any law of the United States relating to the employment of employees." 29 U.S.C. 402(e). Under the common law, any individual working at the control and direction of a labor organization will be an employee of the organization. The common law contains various formulations and factors to be considered in determining the employment status of an individual. See *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. at 318, 322–24 (1992). The contractual relationship between an individual and the labor organization and the actual duties of the individual, not the labels "independent contractor" or "consultant," will determine whether an individual is a labor organization employee. A hired individual is an employee if the union has the right to control the manner and means by which the work product is accomplished. Among the other factors relevant to this inquiry are the skill required to perform the job; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the union and the individual; whether the union has the right to assign additional projects to the individual; the extent of the individual's discretion over when and how long to work; the method of payment; the individual's role in hiring and paying assistants; whether the work is part of the individual's regular business; the provision of employee benefits; and the tax treatment of the individual. *Id.*

Under this analysis, employees who work "in house," on more than an episodic basis, alongside other individuals employed by the union, typically are employees. For example, an accountant would be an employee of the labor organization if the labor organization determines the manner by which the accounting duties are performed, and the accountant is paid regularly by salary for his or her work activities. However, an accountant hired from a private firm for a fixed fee for a specific, non-recurring project likely would be an independent contractor. If the filer has any doubt about his or her status as an employee or independent contractor, the filer should consult a private attorney for legal advice or OLMS for further information.

Although unions are required to report on their financial disclosure forms employees who receive more than $10,000 a year, 29 U.S.C. 431(b), there is no similar earnings threshold for reporting by labor union employees. A labor organization employee who earns less than $10,000 is subject to the reporting requirements.

The source of payment is not dispositive of whether an individual is a labor organization employee. An individual who is paid by the employer to perform union work, either under a "union leave" or "no docking" policy, is an employee of the union if the individual performs services for, and under the control of, the union. See discussion above, under the definition of "bona fide employee." The mere fact that payment is made by the employer does not eliminate the individual's status as an employee of the union. Thus, individuals who receive payments from an employer, either under a "union leave" or "no docking" policy, for work performed for, and under the control of, the union must file a Form LM–30.

*Labor organization officer*, as proposed, means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing

body. An officer is (1) a person identified as an officer by the constitution and bylaws of the labor organization; (2) any person authorized to perform the functions of president, vice president, secretary, or treasurer; (3) any person who in fact has executive or policy-making authority or responsibility; and (4) a member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

An officer thus includes a trustee appointed to oversee the union. A steward may not be identified in the union constitution as an officer, but may perform executive duties, and thus be an officer.

This proposed definition tracks the definition of officer at section 3(n) of the LMRDA, 29 U.S.C. 402(n), and adds a new second sentence to the current regulation's definition, 29 CFR 404.1(b). The LMRDA Manual applies the definition to trustees appointed to oversee a labor organization. See LMRDA Manual, 241.200. Comments are invited as to whether the proposed definition of "officer" is clear and, if not, how it may be improved. Title V of the LMRDA, like section 202, establishes a conflict of interest standard for union officials that extends to officers and other "representatives" of the union. Commenters are requested to address the Department's determination that the reporting obligation does not reach all the union officials who are covered by the Act's application of fiduciary standards to union officials and representatives. 29 U.S.C. 501.

*Legal or equitable interest*, as proposed, means any property or benefit, tangible or intangible, that has an actual or potential monetary value for the filer, spouse, or minor child without regard to whether the filer, spouse, or minor child holds possession or title to the interest.

*Minor child*, as proposed, means a son, daughter, stepson, or stepdaughter less than 21 years of age.

The current instructions, like the LMRDA, are silent about the age at which a child reaches his or her majority. There is no federal statute that prescribes a definition of "minor child" that would have application to section 202(a) of the LMRDA. It is possible to construe the term "minor child" by reference to the law of the specific state where the action occurred, rather than construing the term to have a uniform, nationwide definition. State law definitions for the legal concept of childhood and age of majority differ from state to state but also may differ

widely from legal context to legal context within the same state. Moreover, the general rule as set forth in *Mississippi Band of Choctaw Indians* v. *Holyfield*, 490 U.S. 30 (1989), is "in the absence of a plain indication to the contrary, * * * Congress when it enacts a statute is not making the application of the federal act dependant on state law." Id. at 43, citing *Jerome* v. *United States*, 318 U.S. 101, 104 (1943).

There is a need for a uniform, nationwide meaning of "minor child" under the LMRDA and without such a uniform definition the objective of the LMRDA will be frustrated. In this connection, not only do state law definitions for the legal concept of childhood and age of majority differ from state to state but also may differ widely from legal context to legal context within the same state. Thus, the same state may have differing age limitations for contracting, driving, marriage, child support and custody, voting, abortion, responsibility for medical care, taxes, tort law, welfare, and numerous other contexts. See generally Elizabeth S. Scott, *The Legal Construction of Adolescence*, 29 Hofstra L. Rev. 547 (2000). Further, court decisions are not always in agreement regarding how to determine which state's law should apply in specific situations; i.e., a conclusion regarding a child's age of majority may differ depending upon whether the situs of the activity or property, the actors' residence, the actors' domicile, or some other factor is controlling. See generally 42 Am. Jur.2d Infants § 13, p. 21; 43 C.J.S. Infants § 109, pp. 372–73. Decisions regarding which state law would be applicable to the age of majority of a specific "minor child" may also be made more difficult because of the significant changes in structure, scope, and complexity that labor organizations have undergone in recent decades. Such uncertainty as to which state law to apply and whether a report would be required would certainly function as obstacles to efficient and effective compliance, enforcement, and use of reports. A union member may be an officer of a local union, an intermediate union, and an international union, each located in a different state. Further, a rule that made the filing requirements vary by state could make an interest reportable by one officer in one state non-reportable by a different officer in another state. Both filers and union members who view filed reports require a known and easily applied single standard regarding when reports are required, and what a disclosure or its absence represents.

In 1959 when the LMRDA was enacted, it was well established that at common law the age at which a person reached his or her majority in the states was twenty-one years. See, e.g., 5 Samuel Williston and Richard A. Lord, *A Treatise on the Law of Contracts* § 9:3 n.15 (4th ed. 1993 & Supp. 1999). The Department has concluded that in 1959 when Congress used the term "minor child" in section 202(a) of the Act, Congress intended a uniform federal standard to apply and referred to the general common law meaning at that time, which was a person who had not yet reached the age of twenty-one years. We also believe that twenty-one is more suitable than an earlier age to distinguish between a child's relative dependence upon, and independence from, the finances of a parent.

Although the Department is not aware of any federal statute or policy counseling against the proposed definition, the Department acknowledges that 18 often is considered a threshold age, and that this age is sometimes used in federal statutes and regulations, *e.g.,* 18 U.S.C. 25(a)(2) (crimes of violence using minors); 20 U.S.C. 1228c(d)(5) (disclosure requirements for federal education activities); 42 U.S.C. 619 (block grants for temporary assistance for needy families); 42 U.S.C. 1396r–1a(b)(1) (grants to states for medical assistance programs); 42 U.S.C. 5106g(1) (child abuse treatment and prevention program); 5 CFR 843.102 (administration of death benefits and employee refunds under federal retirement system); 34 CFR 263.3 (grant administration provision relating to professional development of certain educators allowing dependent allowance for care of children). Other statutes and regulations apply a state's (or tribe's) age of majority, *e.g.,* 38 CFR 1.464 (age of consent for certain medical treatment); 43 CFR 4.201 (testamentary interests of Native Americans). At the same time, other federal statutes and regulations, notably those with a focus on the financial dependency of an individual on his or her parents, apply a test that looks to both the individual's age and circumstances. See, *e.g.,* 5 U.S.C. 8441 (survivor annuities for Federal employees); 26 U.S.C. 152(c)(3) (Internal Revenue Code); 28 U.S.C. 376(a)(5) (survivor annuities for Federal judges); 38 CFR 3.57 (veterans' benefits); 20 CFR 645.120 (administration of welfare-to-work grants); 20 CFR 416.1101 (supplemental security income). The SF 278 public disclosure form for senior government officials and employees defines the term "dependent

child'' to mean a filer's ''son, daughter, stepson, or stepdaughter if such person is either: (1) Unmarried, under age 21, and living in your household, or (2) a 'dependent' of yours within the meaning of section 152 of the Internal Revenue Code of 1986.'' SF 278, p. 2. The OGE 450, the confidential financial disclosure reports used by certain government employees at or below the GS–15 grade level, uses the same definition. OGE 450, p. 1. The Department, therefore, invites comments as to the appropriate age, particular circumstances, or both when financial holdings of, or transactions by, a child should no longer be reportable.

*Payer*, as proposed, means:

(1) An employer whose employees the filer's labor organization represents or is actively seeking to represent;

(2) A business a substantial part of which consists of dealing with an employer whose employees the filer's labor organization represents or is actively seeking to represent;

(3) A business that deals with the filer's labor organization or a trust in which the labor organization is interested; or

(4) Any employer or any person who acts as a labor relations consultant to an employer.

The term *payer* is not used in the statute or the current form. In the revised form, the term ''payer'' is used to describe the employer, business, or labor relations consultant that is financially involved with the filer. The Department recognizes that the term is imperfect, in that in common parlance a business in which a filer holds an interest would not ordinarily be consider a ''payer'' of the filer. But the term, the Department believes, well describes an entity that provides income or other benefit, and adequately describes an entity that disburses the proceeds of a loan. It is thus used in the instructions as a shorthand description of the third party involved in a potential conflict-of-interest situation (as defined, ''payer'' combines the key elements of section 202) and allows the filer to report on a single schedule all the reportable holdings and transactions which the filer had with a particular individual or entity. The Department requests comments on whether the term ''payer'' is potentially confusing, in that some reportable events are not payments and the involved third party makes no disbursement, such as when a union officer holds an interest in the business of an employer. Comments are invited as to whether another word or short term would better describe the parties whose relationship to the filer triggers the reporting obligation.

*Publicly traded securities*, as proposed, means bona fide investments in (1) securities traded on a registered national securities exchange under the Securities Exchange Act of 1934, (2) in shares in an investment company registered under the Investment Company Act of 1940, or (3) in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, and income derived from such securities. The American Stock Exchange, Boston Stock Exchange, Chicago Board Options Exchange, Chicago Stock Exchange, International Securities Exchange, National Stock Exchange (formerly the Cincinnati Stock Exchange), New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange are registered with the Securities and Exchange Commission (SEC) under the Securities Exchange Act of 1934. The NASDAQ stock market is not a registered national securities exchange. As registration status may change, the filer should seek current information. Public investment companies comprise certain mutual funds, closed end funds, and unit investment trusts. Interstate public utility holding companies are engaged, through subsidiaries, in the electric utility business or in the retail distribution of natural or manufactured gas. A filer may determine whether an exchange is registered with the SEC by making inquiries with the exchange or by consulting the SEC. A list of registered exchanges is maintained by the SEC on its web site. A filer may determine whether an investment company or public utility holding company is registered with the SEC by making inquiries to the companies, checking any prospectus, or consulting the SEC. A list of registered public utility companies is maintained by the SEC on its web site.

The statute treats certain securities differently than other holdings or transactions that trigger a reportable interest. Many securities, including certain stocks and bonds, are excluded from the reporting requirements, even when a security represents an ownership interest in an employer of the employees represented by the labor organization or in a business that deals with such an employer or with the filer's labor organization, if the security constitutes a public traded security. Filers should also be aware that the security must also be a bona fide investment to be non-reportable. See discussion of *bona fide investment* above. Stock received as a gift, regardless of the exchange on which it is traded or its registration with the SEC, will not constitute a ''bona fide investment,'' under the provision that exempts from reporting bona fide investments in publicly traded securities when the gift is received from an employer, certain businesses, or a labor relations consultant. See discussion of bona fide investment, above. A union officer or employee who receives a gift of publicly traded stock from an employer, for example, must therefore disclose the holding, unless another exemption applies. A filer who is uncertain about whether a particular security must be reported should consult a securities specialist or OLMS. The SEC maintains a web site with general information about securities and how the public may contact the Commission for assistance: *http://www.sec.gov*.

The Senate Report addresses the ''publicly traded securities'' exclusion as follows:

[T]he reporting requirements contained in paragraphs (1) [through] (5) * * * shall not apply to publicly traded securities and other securities that are publicly regulated * * * [T]he committee believes that the holding of publicly traded or regulated stock can hardly lead to conflicts of interest because of the unlikelihood that such holdings will amount to a substantial or controlling interest. Existing public regulation of such securities held in such quantities provide sufficient safeguards of disclosure.

Senate Report, at 38, reprinted in 1 Leg. History, at 434. The House Report does not discuss an exclusion for publicly traded securities; however, the bill that was passed by the House contains the same exception for publicly traded securities as contained in both the Senate bill and the Act as passed. See H.R. 8400, reprinted in 1 Leg. History, at 619, 639, and 2 Leg. History, at 1691–92.

The publicly traded securities exception echoes a point in the AFL–CIO's ethical practices code:

The [restrictions on the holding of interests in a company that has substantial business with an employer whose employees are represented by the union or the latter's competitors] do not apply in the case of an investment in the publicly traded securities of widely held corporations which investment does not constitute a substantial enough holding to affect or influence the course of corporate decision.

AFL–CIO Ethical Practices Code, reprinted in 105 Cong. Rec. S16378 (daily ed. Sept. 3, 1959) and 2 Leg. History, at 1408.

The SF 278 instructions inform senior government employees to report the ''identity and category of valuation of any interest in property (real or personal) held by you, your spouse or dependent child in a trade or business,

or for investment or the production of income which has a fair market value which exceeds $1,000 as of the close of the reporting period. These interests include, but are not limited to, stocks, bonds, pension interests and annuities, futures contracts, mutual funds, IRA assets, tax shelters, beneficial interests in trusts, personal savings or other bank accounts, real estate, commercial crops, livestock, accounts or other funds receivable, and collectible items held for resale or investment.'' There is no exception for bona fide investments in publicly traded securities. SF 278, p. 6–7. The confidential form used by government employees of lower rank has comparable requirements, requiring reports of all assets that have a value greater than $1000 or that produce income over $200, although the filer need not report the value of the asset or the amount of income generated. OGE 450, p. 2.

The proposed instructions contain examples to highlight the differences among securities. The Department invites comments about its determination that a filer must report investments in securities that are traded on NASDAQ and any suggestions regarding the reporting of over-the-counter trades or similar transactions. Comments also are invited, as discussed above, as to whether some interests, income, and transactions in non-publicly traded securities should be exempt from reporting, provided any such interests, income and transactions are of insubstantial value or amount and occur under terms unrelated to the filer's status in a labor organization.

*Substantial part,* as proposed, means 5% or more. Where a business's receipts from an employer whose employees the filer's labor organization represents or is actively seeking to represent constitute 5% or more of its annual receipts, a substantial part of the business consists of dealing with this employer.

Substantial part, as used in section 202(a)(3) of the LMRDA and the instructions for (a)(3), refers to the magnitude of the business transacted between the business and the employer whose employees the filer's labor organization represents or is actively seeking to represent, as a percentage of all business transacted by the business. The threshold for substantiality is met when the business's receipts from the employer constitutes 5% or more of the annual receipts of the business. The purpose of section 202(a)(3)'s substantial-part provision is to relieve union officials from having to report income or transactions that do not have potential conflict-of-interest implications. An official who has an

interest in, or receives income from, a business that receives 5% or more of its income from the employer of the union members may well face a conflict. A business with 5% of its receipts from a single client will have the opportunity and inclination to make demands or offer inducements to retain that business. In negotiations with the union, the employer could use its relationship with the business as a bargaining tool, either threatening to end the relationship or promising to provide additional business opportunities. This presents the possibility that a union official may, for example, be coerced or have a financial incentive to accede to terms in negotiations with the employer of the union's members that the official would otherwise reject. These possibilities counsel the disclosure of these relationships between the business and the employer, and the extent of the officer or employee's interest in or income from the business. Disclosure of these relationships and financial interests and transactions will provide union members with important information about potential financial conflicts and will deter fraud and self-dealing, which can occur when an individual is subject to improper influence in the performance of official duties. This disclosure, like the other reforms proposed herein, will help union members ensure that their union officers and employees act on their behalf, and not give preferential treatment to any private business, employer, or individual.

In proposing the 5% threshold, the Department has considered thresholds established by or under other statutes and regulations, *e.g.,* 26 U.S.C. 72 (5% owners of an entity subject to different tax treatment under rules applicable to employee annuities and distributions); 5 CFR 550.143(c) (a substantial part of a tour of duty constitutes at least 25%); 20 CFR 416.211 (payment of a substantial part of an individual's care means more than 50% for the purposes of reducing supplemental security income payments); 20 CFR 628.405 (substantial part of labor market to be defined by state ''but shall not be less than 10% of the population of a labor market area''); 26 U.S.C. 501(c)(3) (''an organization shall be exempt from taxation if, among other things, it is organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.''); 26 CFR 1.501(c)(3)–1 (In

determining whether the prohibited activities of an organization are ''substantial,'' all the surrounding facts and circumstances, including the articles and activities of the organization, are to be considered); *Haswell* v. *U.S.,* 500 F.2d 1133, 1146 (Ct. Cl. 1974) (although finding percentage test inappropriate, court determines that where 20.5% of association's expenditures in 1967 were for political activities, and 19.27% of total expenditures in 1968 were for political activities, political activities were a substantial part of association's operations); *Seasongood* v. *Comm'r,* 227 F.2d 907, 912 (6th Cir. 1955) (where less than 5 percent of time and effort of organization was devoted to political activities these activities were not a substantial part of the organization's activities, and therefore contributions to the organization were tax deductible).

A larger number of statutes and regulations leave ''substantial'' undefined or provide a qualitative factor in establishing its reach, *e.g.,* 18 U.S.C. 1093 (defining substantial as ''such numerical significance,'' the loss of which would destroy ''group as a viable entity''). The Department acknowledges that none of the statutes or regulations compels 5% or any other percentage as the threshold for defining substantiality of business dealings under the LMRDA, but, we believe that 5%, or something close to that figure, represents the appropriate level of business activity that may pose conflict of interest concerns and should be disclosed. The Department also believes that it is better to set the threshold at the lower end of the range of reasonableness in order to alert filers of the need to monitor their conduct to avoid actual conflict of interest situations.

The Department seeks comments on whether a percentage threshold should be imposed, whether the percentage threshold should be higher or lower, whether a percentage of receipts is the appropriate consideration, whether union officials with holdings in, or income from, a business would be able to determine the percentage of the business's income that comes from dealings with the employer, and whether a dollar amount threshold could lawfully be imposed, and, if so, what figure would represent an appropriate dollar threshold.

*Trust in which a labor organization is interested,* as proposed, means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and

(2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

This definition is provided by section 3(l) of the LMRDA. 29 U.S.C. 402(l). The inclusion of the definition in the instructions is meant to assist filers who otherwise might not recognize that the LMRDA prescribes a specific meaning to the term.

c. The third heading of the proposed instructions is "Who Must File." It combines the second and third categories of the existing form. The proposal restates the short description of the reporting obligation in the current form, but the proposal differs from the existing instructions in two ways. First, the proposal no longer provides for a "Special Report." As discussed, the special report was designed to inform filers that the Secretary could require additional information from them, specifically including certain information that the Secretary, by crafting administrative exclusions, had removed from the reporting obligation. Due to its lack of utility, the Department proposes to eliminate the provision regarding "Special Reports."

Second, as discussed above, the proposed instructions inform the filer that reports must include information about a spouse and minor child even if his or her status changes during the fiscal year, for example, by divorce or a child reaching age 21.

3. The proposed instructions identify each subsection of section 202 by heading and explain the nature of the information that must be reported and any exceptions or exclusions under that particular subsection. Examples are provided to illustrate the application of each subsection.

The revised instructions define the transactions that must be reported under this subsection. The Department expects that a more straightforward approach with clear examples will help eliminate the errors in previously filed Form LM–30 reports, as discussed above, and increase compliance with the reporting requirements.

## Subsection 202(a)(1)

The proposed instructions state:

*[A1] Payments or Benefits From, or Holdings in, an Employer Whose Employees Your Union Represents or Is Actively Seeking To Represent*

You must complete Form LM–30 if you or your spouse or your minor child, directly or indirectly, held a stock, bond, security, or other interest, legal or equitable, in, or derived any income or any other benefit with monetary value (including reimbursed expenses) from, an employer whose

employees your labor organization represents or is actively seeking to represent.

**Exceptions**

You are not required to report:
• Payments and benefits received as a bona fide employee of the employer. See definition of *bona fide employee,* above.
• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. See definition of *publicly traded securities.*
• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. See definition of *publicly traded securities.*

*Discussion:* Under section 202(a)(1) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing for the filer's preceding fiscal year—"any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer." 29 U.S.C. 432(a)(1).

Three exclusions apply to reports under section 202(a)(1). The first is contained within 202(a)(1) and concerns payments received as a bona fide employee of the employer. See discussion of this exemption following the definition of *bona fide employee.*

A second exclusion is prescribed by section 202(b) for publicly traded securities held as a bona fide investment. See discussion of this exemption following the definition of *publicly traded securities.* A third exclusion concerns insubstantial holdings, transaction, and income relating to securities that are not publicly traded. See discussion at section I.H.1, above.

Insofar as section 202(a)(1) is concerned, the legislative history instructs:

Section [202(a)(1)] requires a union officer or employee to disclose any securities or other interest which he has in a business whose employees his labor union represents or "seeks to represent" in collective bargaining. When a prominent union official has an interest in the business with which the union is bargaining, he sits on both sides

of the table. He is under temptation to negotiate a soft contract or to refrain from enforcing working rules so as to increase the company's profits. This is unfair to both union members and competing businesses. The same danger exists when the union official is interested in a business which his union is "actively seeking to represent" for the purposes of collective bargaining.

Senate Report, at 15, reprinted in 1 Leg. History, at 411. The text of the House Report repeats these points, virtually verbatim. House Report, at 11, reprinted in 1 Leg. History, at 769.

To assist the filer, the instructions contain definitions of several terms used in this subsection, including *legal or equitable interests, directly or indirectly, benefit with monetary value, actively seeking to represent, bona fide employee, and publicly traded securities.* None of these key terms is explained in the current instructions.

As discussed in section I.H.2., the Department proposes to remove an exemption found in the current instructions: Part A, exemption (iii) (dealing with goods and services in the regular course of business). Exemption (iv) (dealing with payments received as a bona fide employee) has been changed, as discussed above in connection with the definition of *bona fide employee.*

The proposed instructions provide the following examples to help officers and employees identify interests and transactions that must be reported under this subsection.

### Example 1

You are a union officer and truck driver who is paid for five days of work by the employer, even though you only drive a truck one day a week and spend the rest of the week handling union member grievances or other union-related work. You must report the pay and benefits received from the employer for the time spent performing union work under this subsection.

### Example 2

You are an officer of a union that represents Widget Company employees. To help prepare for your retirement, you purchase 5,000 shares of Widget Company stock over the New York Stock Exchange or another registered stock exchange. You need not report the shares under this subsection, under the exception for bona fide investments in publicly traded securities.

### Example 3

You are an officer of a union that represents Widget Company employees. Your wife owns 5,000 shares of Widget Company stock that Widget's CEO gave

her on Mother's Day two years ago. This stock is traded on the New York Stock Exchange or another registered stock exchange. You must report the shares under this subsection because the holding of this interest is reportable regardless of when it was obtained and, as a gift, the exclusion for bona fide investments in publicly traded securities does not apply.

### Example 4

You are a full-time officer of a union that represents employees of several different employers. One of the employers pays your expenses on a trip with management officials to a plant in another part of the country to view some new equipment that the employer is considering purchasing. You must report the travel expenses under this subsection.

### Example 5

You are an employee of a union that represents actors. You own a production company whose employees are represented by your union. You must report your interests in the production company under this subsection.

### Example 6

You are an employee of union and your spouse works as a producer for a dinner theater that employs actors represented by your labor organization. She works 40 to 50 hours a week, producing shows and is paid a yearly salary. You do not have to report her earnings under this subsection because her payments are received as a bona fide employee of the theater company.

### Example 7

You are a union officer and you receive payments under an ERISA qualified pension plan. The payments relate to your past employment for an employer whose employees your labor organization represents. These payments are received as a bona fide employee of the employer, and you do not have to report these payments under this subsection.

The Department invites comments on this subsection and encourages commenters to propose additional examples that would help filers comply with the requirements of the Act.

### Subsection 202(a)(2)

The proposed instructions state:

*[A2] Transactions Involving Loans From and Holdings in an Employer Whose Employees Your Union Represents or Is Actively Seeking To Represent*

You must complete Form LM–30 if you or your spouse or your minor child, directly or indirectly, engaged in any transaction

involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees your labor organization represents or is actively seeking to represent.

### Exception

You are not required to report:

• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. See definition of publicly traded securities.

• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. See definition of publicly traded securities.

**Special Note:** [A2] covers situations where a union officer or employee or his or her spouse or minor child held an interest during the reporting year but sold, transferred or otherwise liquidated it prior to the end of the fiscal year. Such an interest must be reported under this subsection.

*Discussion:* Under section 202(a)(2) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing for the filer's preceding fiscal year—"any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent." 29 U.S.C. 432(a)(2).

The legislative history explains that this subsection is designed to capture transactions during the reporting period of any matters that would be covered if the holdings or other property remained at the close of the reporting period. In virtually identical language, the committee reports stated: "[S]ection [202(a)(2)] is ancillary to [section [202(a)(1)]. * * * Its chief purpose is to prevent dishonest persons from circumventing [202(a)(1)] by transferring securities out of their names on the date of their report but this provision also covers other transactions such as loans from the employer." Senate Report, at 15 (quoted), reprinted in 1 Leg. History, at 411; House Report, at 11; reprinted in 1 Leg. History, at 769.

The proposed instructions inform filers that the obligation to report loans includes any transaction in which a payer acted as a guarantor of a loan. See LMRDA Manual, §§ 244.170; 253.041. [A2] covers only loans to or from the employer whose employees his organization represents or is actively

seeking to represent. Loans from other employers are to be considered under [A6], discussed below.

As discussed in section I.H.2., above, the Department proposes to remove exemption (iii) (dealing with goods and services in the regular course of business). Similarly, the Department proposes to eliminate exemption (iv) (dealing with payments received as a bona fide employee), now contained in the current instructions, as to reports under this subsection.

The proposed instructions provide the following examples to help officers and employees identify interests and transactions that must be reported under this subsection.

### Example 1

You are a union officer and after the beginning of the fiscal year, you are allowed to participate in the purchase of stock options at a preferred rate for a new business enterprise launched by the employer. Three weeks before the end of your fiscal year, you exercise the options to purchase the stock and then immediately sell it to realize a gain of $25,000. This transaction must be reported under this subsection even though you no longer own the stock.

### Example 2

You are a union employee and your minor child receives 100 shares of stock as a high school graduation gift from an employer whose employees your union represents. She immediately sells it to assist with college expenses. Both transactions, the receipt and the sale, must be reported under this subsection.

### Example 3

You are a union officer, and like all employees of the employer whose members your union represents, you hold an ownership interest in the business of the employer. In this fiscal year, you sell this interest to the employer. Although the holding of this interest is not reportable under section 202(a)(1) because it is a benefit received as a bona fide employee, the sale of the interest is reportable under this subsection.

### Example 4

You are a union officer and your husband receives a loan from an employer whose employees your union represents. The loan must be reported under this subsection.

### Example 5

You are a union employee. Your wife is a partner of a package delivery company. The company receives a loan from Easy Credit Limited that was

arranged with the assistance of an employer whose employees are represented by your union. The loan must be reported under this subsection.

The Department invites comments on this subsection and encourages commenters to propose additional examples that would help filers comply with the requirements of the Act.

### Subsection 202(a)(3)

The proposed instructions state:

*[A3] Holdings in or Transactions With a Business that Deals with an Employer Whose Employees Your Union Represents or Is Actively Seeking To Represent*

You must complete Form LM–30 if you, your spouse or your minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees your labor organization represents or is actively seeking to represent.

**Exception**

You are not required to report:
• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. See definition of *publicly traded securities.*
• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. *See* definition of *publicly traded securities.*

*Discussion:* Under section 202(a)(3) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing for the filer's preceding fiscal year—"any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent." 29 U.S.C. 432(a)(3).

Apart from paraphrasing the language of section 203(a)(3), the committee reports noted only that the McClellan Committee hearings disclosed "a number of instances in which union officials gained personal profit from a business which dealt with the very same employer with whom they engaged in collective bargaining on behalf of the union." Senate Report, at 15 (quoted), reprinted in 1 Leg. History, at 411; see House Report, at 12 (virtually the same), reprinted in 1 Leg. History, at 770. The Senate and House committees each endorsed the concern expressed in the AFL–CIO's Ethical Practices Code that the union official "may be given special favors or contracts by the employer in return for less than a discharge of his obligations as a trade-union leader." Senate Report, at 15, reprinted in 1 Leg. History, at 411; House Report, at 12, reprinted in 1 Leg. History, at 770.

The proposed instructions explain the key terms of this provision, most of which have been discussed in connection with [A1] and [A2]. The term *substantial part* is unique to [A3]. As discussed above, in the definition of this term, where a business's receipts from an employer whose employees the filer's labor organization represents or is actively seeking to represent constitute 5% or more of its annual receipts, a substantial part of the business consists of dealing with this employer.

The interest in, or income derived from the business must be disclosed in full. A filer is not permitted to reduce the amount reported by, for example, a percentage proportionate to the amount of work performed by the business for the employer.

The proposed instructions provide the following examples to help officers and employees identify interests and transactions that must be reported under this subsection.

**Example 1**

You are a union officer. You own a small machine parts business. The employer of the employees your union represents purchased a large quantity of machine parts from your business. The employer's purchases represented 10% of the total receipts of your business that year. You must report, under this subsection, your interest in the machine parts business and the dealings between the business and the employer.

**Example 2**

You are an officer of an international union. Your wife owns an accounting firm and last year 20% of the receipts of her firm were from an employer whose employees are represented by a local union that is subordinate to your international union. You must report, under this subsection, your wife's interest in the accounting firm and the dealings between her business and the employer.

**Example 3**

You are a union officer and part owner of a copier supply company. Your union represents employees of employers A, B, and C. Last year 3% of the company's receipts were from employer A, 2% were from employer B, and 4% were from employer C. You must report under this subsection because a total of 9% of the company's receipts was from employers whose employees your labor organization represents. You must report your interests in the copier supply company, and its dealings with each of the employers.

**Example 4**

You are the business manager of a local union that represents stage technicians. You have a business supplying lighting and other equipment to companies putting on shows and conventions within the jurisdiction of your local. These companies employ members of your union, and 5% or more of your business is derived from these companies. You must report, under this subsection, your interest in your business and its dealings with the companies that hire the union members.

**Example 5**

You are the president of a union that represents employees of a trucking company. In addition to his full time job, your spouse moonlighted part-time last year and earned $9,000 cleaning business offices on Sundays. Once a month, the trucking company paid your spouse $80 to clean its office space, for an annual total of $960, about 10% of his company's business. You must report the $9,000 in income under this subsection, as well as the dealings between the cleaning business and the trucking company.

**Example 6**

You are an employee of a union that has a collective bargaining agreement with trade show contractors. You were also a seasonal employee of a company that received 5% of its receipts last year from leasing fork lifts to these contractors. You must report, under this subsection, your income or other benefits with monetary value (including reimbursed expenses) received from the company and the dealings between the company and the contractors.

**Example 7**

You are the treasurer of a union that has a collective bargaining agreement with trade show contractors. You are the owner of a company that gets 100% of its income from providing laborers to those contractors for handling empty

**51190**    **Federal Register** / Vol. 70, No. 166 / Monday, August 29, 2005 / Proposed Rules

crates. You must report, under this subsection, your ownership interest in the company and its dealing with the trade show contractors.

**Example 8**

You are a union employee. Your wife is an employee of a law firm that received 10% of its income last year from an employer whose employees your union represents. You must report, under this subsection, your wife's income or other benefits with monetary value (including reimbursed expenses) received from the law firm, and the dealing between the law firm and the employer.

The Department invites comments on this subsection and encourages comments proposing additional examples that would help filers comply with the requirements of the Act. The Department specifically requests comments on the threshold set to establish a "substantial part" of a company's business.

**Subsection 202(a)(4)**

The proposed instructions state:

*[A4] Holdings in or Transactions With a Business That Deals With Your Union or a Trust in Which Your Union Is Interested*

You must complete Form LM–30 if you or your spouse or your minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from, a business any part of which consists of buying from, selling or leasing to, or otherwise dealing with, your labor organization or a trust in which your labor organization is interested.

**Exception**

You are not required to report:
• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. See definition of *publicly traded securities.*
• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. See definition of *publicly traded securities.*

*Discussion:* Under section 202(a)(4) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing their preceding fiscal year—"any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which

he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization."

The committee reports use nearly identical language to explain this subsection:

Section [202(a)(4)] requires a union officer or employee to report any interests which he has in, or income which he derives from, a business which buys from, sells or leases to, or otherwise deals with, a labor organization.

Senate Report, at 15, reprinted in 1 Leg. History, at 411; House Report, at 12 (virtually verbatim), reprinted in 1 Leg. History, at 770. As an illustration of the practice, the committees described a situation where an "officer of a local union charged with purchasing supplies or services might be tempted to favor a firm in which he owned a dominant interest." Senate Report, at 16, reprinted in 1 Leg. History, at 412; House Report, at 12 (virtually verbatim), reprinted in 1 Leg. History, at 770.

The committee reports provide as an additional illustration, a situation in which "an officer charged with placing the union's insurance would be tempted to place it through a firm of insurance brokers in which he owned an interest." *Id.*

The breadth of this subsection was described by Senator Goldwater as "cover[ing] every conflict-of-interest situation." Senate Report, at 90, reprinted in 1 Leg. History, at 486. This subsection uses no terms that have not been earlier discussed. Its chief difference from the other subsections is that its focus is on interests or income derived from a business that deals with the filer's labor organization.

As in the current form, the Department proposes to retain the requirement that transactions with businesses that deal with trusts in which the filer's labor organization is interested are reportable. See Instructions, Part B.

The interest in, or income derived from the business must be disclosed in full. A filer is not permitted to reduce the amount reported by, for example, a percentage proportionate to the amount of work performed by the business for the employer.

The proposed instructions provide the following examples to help officers and employees identify interests and transactions that must be reported under this subsection.

**Example 1**

You are an officer of a district council. Your spouse owns and operates a small

catering business. Your union purchases catering services from your spouse's business during the fiscal year. You must report, under this subsection, your spouse's ownership interest in the catering business, and its dealings with the union.

**Example 2**

You are a union officer. You work part time for a business that did maintenance work on the heating and air conditioning system at the union hall. You must report, under this subsection, the income and other benefits with monetary value (including reimbursed expenses) received from the maintenance business, and its dealings with the union.

**Example 3**

You are a business manager of a local union. You work on a contract basis for a plumbing supply company that sold tools and other supplies to the union and its training funds. You must report your income and other benefits with monetary value (including reimbursed expenses) received from the plumbing supply company under this subsection, and the dealings between the supply company, the union, and the training funds.

**Example 4**

You are an officer of a national union. You and your husband own a printing company that prints the union newsletters for a local union of the same national union. You must report, under this subsection, your and your husband's ownership interest in the printing company and its dealing with the union.

**Example 5**

You are an officer of a joint board and run a snow plowing business. The joint board is subordinate to an international union. The international union contracted with the business to plow the parking lot of its headquarters. You must report your interest in the snow plowing business under this subsection, in addition to the business's interest with the international union.

**Example 6**

You are the president of a local union and a partner in a company that was hired to resurface the union's parking lot. You must report, under this subsection, your interest in the business and its dealings with the union.

**Example 7**

You are an employee of a national union. Your wife works for a travel agency that handles all the travel

arrangements by officers and employees of the national union. In addition to your wife's employment compensation from the travel agency, she also receives rebates from hotels for bookings made for the union. You must report your wife's income and other benefits with monetary value (including reimbursed expenses) received from that business, and the value of the rebates she received under this subsection, as well as the dealings between the travel agency and the union.

### Example 8

You are the president of a local union and your 19-year old son works for a business that produces customized t-shirts, caps, and jackets. Your local union buys logo items from his business. You must report your son's income and other benefits with monetary value (including reimbursed expenses) received from this business under this subsection, and the dealing between the business and the union.

### Example 9

You are a business representative of a local union that represents shipyard workers. You and two other business representatives own a company that does medical testing of local members, which is paid for by a health benefit plan that is a trust in which your local is interested. You must report your interest in the medical testing company under this subsection, and the dealings between the testing company and the health benefit plan.

### Example 10

You are an employee of a union. Each year your union holds an annual workers' summer school at a private university whose space and services are rented by the union. You go to the summer school as an instructor and bring your wife and two minor children. At no extra charge to you, the university provides accommodations for you, your wife and minor children, rather than the single room typically provided instructors. The use of the additional space and its fair market value must be reported under this subsection, in addition to the dealings between the university and the union.

### Example 11

You are the president of a local union and own a building, which has numerous tenants, including your local. The ownership and income received from the operation of the building and the dealings between you and the union must be reported under this subsection.

### Example 12

You are a national union president and a trustee of a jointly administered health care trust that insures union members through an insurance company. Premiums for coverage are paid by the trust to the insurance company. You are a member of the board of directors of the health insurance company, which pays you an annual fee and reimburses expenses for your attendance at board meetings. In your capacity as a trustee of the health care trust, you recuse yourself from all decisions concerning the health insurance company. As the insurance company is doing business with a trust in which your union is interested, you must report your annual fee and reimbursed expenses under this subsection. The dealings between the health insurance company and the trust must also be reported.

### Example 13

You are an employee of a national union and your husband works for a law firm that represents a local union that is affiliated with your national union. You must report, under this subsection, your husband's income and other benefits with monetary value (including reimbursed expenses) received from the law firm, and the dealings between the law firm and the local union.

### Example 14

You are a national union president and director of a registered investment company that offers investment opportunities to unions or trusts in which unions are interested. Your union has invested several thousand dollars in fixed income or equity funds managed by the company. You receive no gratuities, compensation, or reimbursement for your duties as a director, but you are insured against personal liability for your actions as a director under a policy paid for by the company. The investment company paid for this insurance coverage. You must report the payment under this subsection, and the dealings between the investment company and the union.

The Department invites comments on this subsection and encourages commenters to propose additional examples that would help filers comply with the requirements of the Act.

### Subsection 202 (a)(5)

The proposed instructions state:

*[A5] Transactions or Arrangements With an Employer Whose Employees Your Union Represents or Is Actively Seeking To Represent*

You must complete Form LM–30 if you or your spouse or your minor child had any direct or indirect business transaction or arrangement with any employer whose employees your labor organization represents or is actively seeking to represent.

**Exceptions**

You are not required to report:
• Payments and benefits received as a bona fide employee of the employer. See definition of *bona fide employee.*
• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. See definition of *publicly traded securities.*
• Purchases and sales of goods or services at prices generally available to any employee of the employer.
• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. See definition of *publicly traded securities.*

**Special Note:** You must report special discounts, special rates and other special treatment that you or your spouse or your minor child receives from an employer whose employees your labor organization represents or is actively seeking to represent. See definitions of *labor organization* and *actively seeking to represent.* A filer who purchases an item at a reduced price generally available to employees of the employer must nevertheless report the discount, and may not claim the exemption, unless the filer is an employee of the employer providing the discount.

*Discussion:* Under section 202(a)(5) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing for the filer's preceding fiscal year—"any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer."

The Senate and House Reports explained this provision in nearly identical language:

[This subsection] requires a union official to disclose any business transaction with an employer with whom his organization deals.

The aim of this subsection is to prevent loans, under-the-table payments, special discounts, and other personal allowances which might influence a union official in the conduct of an organizational campaign or collective bargaining with the employer. The testimony before the McClellan committee demonstrates the need to compel disclosure. Normal transactions such as the payment of wages and the purchase and sale of goods or services at prices available to employees generally are excepted.

Senate Report, at 12 (quoted), reprinted in 1 Leg. History, at 412; House Report, at 12 (virtually verbatim), reprinted in 1 Leg. History, at 770. The only difference between the reports is that the House tied the exception to a product's availability "on the open market" in place of the Senate's qualification of the rule as "generally." Id. The LMRDA Manual addresses (a)(5) as follows:

Section 205(a)(5) is designed to pick up any direct or indirect business transactions between the union officer (or his wife or minor child) and the employer whose employees the union officer's organization represents. There are two very important statutory exceptions, namely payments of bona fide wages to the union officer for regular work performed, and purchases and sales in the regular course of business at prices generally available to any employee of the employer.

LMRDA Manual, § 247.300. The LMRDA Manual continues: Where a union official "is a regular employee on the assembly line," he does not need to report a 20% discount on a new automobile that is available to any regular employee, but if the official is not a regular employee he must report the purchase. Id. Under the current instructions, however, the "regular course of business" exception appears to apply generally, without regard to whether the individual obtaining the discount is an employee of the employer providing the discount. Instructions, Part A, exclusion (iii). The proposed instructions clarify that the only individuals who may avoid reporting employee discounts are employees of the employer.

[A5] covers only business transactions with the employer whose employees the filer's organization represents or is actively seeking to represent. Payments of money or other things of value are to be considered under section [A6], discussed below.

As discussed in section I.H.2., above, exemption (iv) (dealing with payments received as a bona fide employee) has been modified, as discussed following the definition of bona fide employee.

The proposed instructions provide the following examples to help officers and employees identify interests and

transactions that must be reported under this subsection.

## Example 1

You are an officer of an international union affiliated with a local union that represents employees at an automobile plant. The employer permits you to participate in an executive purchase plan under which management executives are permitted to purchase vehicles produced by the employer at a discount and at a lower interest rate. The transaction must be reported under this subsection.

## Example 2

You are an employee of a union that represents employees at Acme Warehouse. At your request, Acme allows your neighbor to store his company's inventory at a rate below the customary storage rate. Your neighbor, in turn, shows his gratitude by allowing you to use his luxury box at a sporting event. You must report this arrangement.

The Department invites comments on its interpretation of this subsection and encourages commenters to propose additional examples that would help filers comply with the requirements of the Act.

## Subsection 202(a)(6)

The proposed instruction states:

*[A6] Payments of Money or Other Thing of Value From Any Employer or Labor Relations Consultant*

You must file Form LM–30 if you or your spouse or your minor child received, directly or indirectly, any payment of money or other thing of value (including reimbursed expenses) from any employer or any labor relations consultant to an employer.

The types of payments that must be reported under this subsection include any payment from an employer or a labor relations consultant to an employer for the following purposes:

• Not to organize employees
• To influence employees in any way with respect to their rights to organize
• To take any action with respect to the status of employees or others as members of a labor organization; and
• To take any action with respect to bargaining or dealing with employers whose employees your organization represents or seeks to represent.

**Special Note:** If you received a payment or other thing of value, including reimbursed expenses, from an employer whose employees your union represents or actively seeks to represent, or a business that consists in substantial part of dealing with such an employer, or a business that has any dealings with your union, the payment should be reported under sections [A1]–[A5]. Section 202(a)(6) covers payments and other things of value, including reimbursed expenses, from

businesses and employers that are not covered by the more specific provisions of sections 202(a)(1)–(5). Thus, for example, if a transaction concerns a payment to you from the employer whose employees your labor organization represents or actively seeks to represent, or a business that deals with such an employer or your labor organization, the payment should be reported under the appropriate subsection in section 202(a)(1)–(5).

### Exception

You are not required to report:
• Payments of the kinds referred to in LMRA section 302(c), summarized below:

*Discussion:* Under section 202(a)(6) of the LMRDA, officers and employees of a labor organization shall file with the Secretary a signed report listing and describing for the filer's preceding fiscal year—"any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 186(c) of this title," 29 U.S.C. 186(c) (also known as section 302 of the Labor Management Relations Act, 1947).

The committee reports described subsection (a)(6) in identical language as follows:

Section [202(a)(6)] requires a union official to disclose any payment received from an employer or from any person who acts as a labor relations consultant for an employer except payments permitted by section 302 of the Labor-Management Relations Act of 1947, as amended. The purpose of this paragraph, among other things, is to reach the union official who may receive a payment from an employer not to organize [its] employees.

Senate Report, at 16, reprinted in 1 Leg. History, at 412; House Report, at 12 (virtually verbatim), reprinted in 1 Leg. History, at 770. As described by the LMRDA Manual, the subsection is designed to capture "situations that pose conflict of interest problems which are not covered in the previous five sections of 202." LMRDA Manual, § 248.005. By way of example, it continues: "A union officer must report under section 202(a)(6), if he receives any payment by way of dividends or otherwise from a firm which is competitive to one which has collective bargaining agreements with his own union." Id.

Subsection (a)(6) has been interpreted consistent with its description as a "catch-all" for transactions with employers not reportable under subsections (a)(1) through (a)(5). Language unique to section (a)(6) is found in the exception it provides for "payments of the kinds referred to in

section 302(c) of the Labor Management Relations Act, 1947, as amended.'' Section 302(c) contains a number of categories with exceptions and provisos that limit their general availability.

In explaining the reference to 302(c), the Senate Report stated:

[T]he general ban in section 302 upon employer payments to unions is not to apply to money deducted from the wages of employees pursuant to a collective bargaining agreement in the form of periodic payments to a union in lieu of membership dues, not to employer payments to trust funds for pooled vacation, holiday, severance or similar benefits, or apprentice or other employee training programs.

Senate Report, at 44 (discussing comparable language addressing an employer's reporting obligation), reprinted in Leg. History, at 440; compare House Report, at 35 (no discussion beyond noting exception of ''payments of the kinds referred to in section 302(c)''), reprinted in 1 Leg. History, at 793.

The current instructions do not attempt to characterize the categories or assist the filer in applying them to his or her completion of the Form LM–30. Instead, the current instructions simply set out the entire text of section 302(c), verbatim.

The Department's proposed instructions describe the types of payments that, as a general rule, need not be reported under section (a)(6):

• (1) Any money or other thing of value payable by an employer to

—(a) An employee acting openly for the employer in matters of labor relations or personnel administration, or

—(b) Any officer or employee of a labor organization who also is an employee or former employee of such employer, as compensation for or by reason of, his service as an employee of such employer;

• (2) Money or other thing of value payable in satisfaction of a judgment, arbitral award, settlement or release of any claim in the absence of fraud or duress;

• (3) With respect to the sale or purchase of an item at the prevailing market price in the regular course of business;

• (4) With respect to deductions in payment of labor union dues from wages by written assignment;

• (5) With respect to money or other thing of value paid to a trust fund established by the representative of an employer's employees for the sole benefit of these employees, their families and dependents for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance;

• (6) With respect to money or other thing of value paid by any employer to a trust fund established by the representative of the

employer's employees for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs;

• (7) With respect to money or other thing of value paid by any employer to an individual or pooled trust fund for providing scholarships for the benefit of employees, families, and dependents, child care centers, or financial assistance for employee housing;

• (8) With respect to money or other thing of value paid by any employer to a trust for defraying the costs of legal services; or

• (9) With respect to money or other thing of value paid by any employer to a labor-management committee.

Under the proposed instructions, filers are cautioned that this exception applies *only* to the holdings and transactions reportable under section 202(a)(6).

As discussed in section I.H.2., above, the current instructions provide for two additional exemptions that will not appear in the revised instructions. Filers need not report ''bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions,'' and ''(i)nterest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees your labor organization represents or actively seeks to represent.'' See Instructions, Part C, exemptions (ii) and (iii). The Department invites comments on the elimination of these exemptions, and the effect of such action. The Department seeks comments on whether the exceptions being deleted are duplicated, in any part, within the section 302(c) exceptions. Further, the Department seeks comments on whether the section 302(c) exceptions exclude from reporting ordinary payments of wages or salary of a filer's spouse or minor child when the wages or salary are paid by an employer whose employees the filer's labor organization does not represent and is not actively seeking to represent. Finally, the Department seeks comment on whether section 202(a)(6) limits the reporting obligation to only payments that present an actual conflict of interest, whether such an interpretation is a permissible reading of the statute, and, if so, how the instructions could be written to implement this interpretation, without granting impermissible discretion in the filer to determine which financial matters are reportable. LMRDA Interpretative Manual, § 248.005.

The proposed instructions provide the following examples to help officers and employees identify interests and transactions that must be reported under this subsection.

**Example 1**

You are a union officer and an attorney. Employers whose employees your labor organization does not represent or actively seek to represent often hire your law firm. One of those employers gives you a special gift of a three-week all-expense-paid trip to France as a reward for winning a major lawsuit. You must report the trip and its value under this subsection.

**Example 2**

You are a union officer and you receive payments under an ERISA qualified pension plan. The payments relate to your employment for an employer whose employees your labor organization does not represent or actively seek to represent. You do not have to report these payments.

**Example 3**

You are an officer of a national union. Your spouse is hired as a senior executive of an employer on the understanding that your union will not seek to organize that employer. You must report all the income and benefits your spouse receives from the employer under this subsection.

**Example 4**

You are a local union president. An employer outside of the jurisdiction of your local offers your 20-year-old daughter a paid summer internship on the understanding that you will seek to have your members go on strike against an employer who is one of their competitors. You must report all the benefits your daughter receives as part of the internship under this subsection.

The Department invites comments on its interpretation of this subsection and encourages commenters to propose additional examples that would help filers comply with the requirements of the Act.

*C. Completion of the Form*

The myriad types of financial transactions made reportable by section 202 complicate the design of a ''self-explanatory'' form. The filer must rely on the instructions to accurately complete the form. We invite comments addressing the layout and clarity of the form. Would the form benefit from adding additional text and, if so, what additions are recommended? Does the form have an intuitive feel to it? Does the form request information in logical

progression? How can the form be improved?

*Item 1—LM–30 Filer Number:* No changes are proposed for this item.

*Item 2—Period Covered:* No changes are proposed for this item.

*Item 3—Contact Information of Reporting Person:* Requires filers to provide their email address if they have one. This entry would not have been possible in 1963 when the existing regulation was drafted. Today, an email address is an important part of a person's contact information.

*Item 4—Labor Organization Identifying Information:* Combines Items 4 and 5 of the existing Form LM–30. It also requires filers to report whether they held their position in the union at the end of the reporting period. As an enforcement and compliance assistance matter, it is important to know whether the filer can still be reached at the union, and whether the filer may need to file Form LM–30 the following year.

*Item 5—Signed:* No changes are proposed for this item.

*Payer Summary Schedule:* As stated above, this schedule was created to provide a single place on the first page of the report where the filer's total transactions, benefits, and interests are reported. This schedule also allows a person reviewing the report to skip directly to a payer of interest. This schedule contains information that could be derived from the existing Form LM–30 but not in one place.

**Payer Detail Page**

*Schedule 1—Payer Identifying Information:* Combines Items 6, 8, and 13 of the existing Form LM–30. It also requires reporting of the telephone number, web site address, state of incorporation or registration, and state business identification number of each payer. This additional contact information will make it easier for a person reviewing the report to identify the payer. Finally, it requires the filer to indicate whether he or she was associated with the payer at the end of the reporting period. As an enforcement and compliance assistance matter, the Department needs to know whether the filer may be required to file a report the following year. In addition, union members have an interest in knowing whether the filer has severed his or her relationship with the payer or whether the relationship still exists, as they may wish to raise the matter within the union if the relationship still exists.

*Schedule 2—Filer's Interest in, Payments or Loans From, or Transactions or Arrangements with the Payer:* Combines Items 7, 12, and 14 of the existing Form LM–30. The schedule

requires filers to list their interests, payments, loans, transactions, or arrangements. The schedule also requires reporting of the date and recipient of each reportable interest, payment, loan, transaction, or arrangement, which may or may not have been included by filers under the existing regulation. Finally, a column was created for filers to indicate the subsection(s) that requires the disclosure of each transaction, benefit, or interest. This function was partially accomplished in the existing regulation by the division of the form into Parts A, B, and C. The Department believes that this schedule with discrete columns and rows replacing narrative boxes will alleviate confusion on the part of filers and people reviewing the reports.

*Schedule 3—Payer's Dealings with Union, Trust, or Employer:* Combines and simplifies information reported in Items 9, 10, and 11 of the existing Form LM–30. For instance, filers no longer need to report the full address of a trust or employer; only a file number or zip code is required.

The current instructions provide little information to the filer about how to report the value of particular holdings or transactions. To remedy this omission, the revised instructions provide a comprehensive list of ways in which the value of an interest or transaction must be reported. The filer is told that he or she must report the exact value of an interest or transaction, if known or easily obtainable by the filer; otherwise, the filer is instructed to enter a good faith estimate of the fair market value and explain the basis for the estimate in the space provided on the form. The list is adopted from the regulations addressing the disclosure requirements of federal employees. See 5 CFR 2634.105(t).

The revised instructions identify for the filer different ways by which "fair market value" may be determined:

• The purchase price
• Recent appraisal
• Assessed value for tax purposes, adjusted to reflect market value if the assessed value is computed at less than 100% of that market value
• The year end book value of non-publicly traded stock, the year-end exchange rate of corporate stock, or the face value of corporate bonds or comparable securities
• The net worth of a business partnership or business venture
• The equity value of an individually-owned business or any other recognized indication of value (such as the sale price on the stock exchange at the time of the report or, for transactions, the sale

price on the stock exchange at the time of the sale).

Recently, a labor organization has asserted to the Department that the current Form LM–30 can require "the public disclosure of highly confidential and proprietary commercial information about arm's length business transactions between" companies owned by union officers and employers with whom the union has negotiated a collective bargaining agreement, and that if confidential information were subject to the reporting requirements, "it would have a potentially devastating impact on the [labor organization]." The public is asked to comment on whether Form LM–30 may require the disclosure of sensitive information, whether highly confidential and proprietary commercial information should be protected, and the potential harm to union members or the public, if any, from the nondisclosure of such information. See 68 FR 58386–88 (description of how union should handle confidential information when completing Form LM–2); SF 278, p. 16 (Public Financial Disclosure Report for senior government officials and employees) (excluding information to the extent that it is considered confidential as a result of a privileged relationship established by law).

**Continuation Pages**

*Labor Organizations in Which the Reporting Person is an Officer or Employee—Continuation Page:* This continuation page allows filers to report all of the unions in which they are employed. This schedule will ease the burden on filers who are employed by or are officers of multiple unions. These individuals will no longer need to file multiple reports.

*Payer Summary Schedule—Continuation Page:* This continuation page allows filers to report additional payers if the five lines provided on the first page are not sufficient. The existing Form LM–30 does not contain a summary schedule.

*Schedule 2—Filer's Interest in, Payments or Loans From, or Transactions or Arrangements with the Payer—Continuation Page:* This continuation page allows filers to report additional interests, payments, loans, transactions, or arrangements. This replaces the continuation pages for Parts A, B, and C on the existing Form LM–30.

*Schedule 3—Payer's Dealings with Union, Trust, or Employer—Continuation Page:* This continuation page allows filers to report additional dealings of a payer that would trigger a reporting requirement. This replaces the

continuation pages for Parts A, B, and C on the existing Form LM–30.

*Additional Information Schedule:* This schedule allows filers to provide additional information or explanations about other items in the form. For instance, filers who cannot assign a value to an item in Schedule 3 must enter N/A in Column E and explain the situation in this schedule. This is similar to additional information items found on other OLMS forms, but the existing Form LM–30 does not contain such an item.

**Regulatory Procedures**

*A. Executive Order 12866*

The proposed rule has been drafted and reviewed in accordance with Executive Order 12866, section 1(b), Principles of Regulation. The Department has determined that this proposed rule is not an "economically significant" regulatory action under section 3(f)(1) of Executive Order 12866. Based on a preliminary analysis of the data, the rule is not likely to: (1) Have an annual effect on the economy of $100 million; (2) create a serious inconsistency or otherwise interfere with an action taken or planned by another agency; or (3) materially alter the budgetary impact of entitlements, grants, user fees, or loan programs or the rights and obligations of recipients thereof. As a result, the Department has concluded that a full economic impact and cost/benefit analysis is not required for the rule under Section 6(a)(3) of the Order. However, because of its importance to the public the proposed is a significant regulatory action and was reviewed by the Office of Management and Budget.

The burden imposed by the revision of the Form LM–30 is addressed in the Paperwork Reduction Act section, below. The Paperwork Reduction Act section also describes what the Department believes are the substantial benefits of this rulemaking.

Prior to issuing this proposal, the Department sought the involvement of those individuals and organizations that will be affected by the Proposed Rule, including officers and employees of labor organizations that would be subject to the rule.

*B. Small Business Regulatory Enforcement Fairness Act*

For similar reasons, the Department has concluded that this proposed rule is not a "major" rule under the Small Business Regulatory Enforcement Fairness Act of 1996 (5 U.S.C. 801 *et seq.*). It will not likely result in (1) an annual effect on the economy of $100

million or more, (2) a major increase in costs or prices for consumers, individual industries, Federal, State or local government agencies, or geographic regions, or (3) significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic or export markets.

*C. Unfunded Mandates Reform*

For purposes of the Unfunded Mandates Reform Act of 1995, this rule does not include a Federal mandate that might result in increased expenditures by State, Local, and tribal governments, or increased expenditures by the private sector of more than $100 million in any one year.

*D. Executive Order 13132 (Federalism)*

The Department has reviewed this rule in accordance with Executive Order 13132 regarding federalism and has determined that the rule does not have federalism implications. Because the economic effects under the rule will not be substantial for the reasons noted above and because the rule has no direct effect on States or their relationship to the Federal government, the rule does not have "substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government."

*E. Regulatory Flexibility Act*

The Regulatory Flexibility Act of 1980, 5 U.S.C. 601–612, requires agencies to prepare regulatory flexibility analyses, and to develop alternatives wherever possible, in drafting regulations that will have a significant impact on a substantial number of small entities, including "small businesses," "small organizations," and "small governmental jurisdictions." The rule revises the reporting obligations of union officers and employees, who, as individuals, do not constitute small business entities. Accordingly, the Proposed Rule would not have a significant economic impact on a substantial number of small business entities. The Secretary has certified to the Chief Counsel for Advocacy of the Small Business Administration to that effect. Therefore, under the Regulatory Flexibility Act, 5 U.S.C. 605(b), a regulatory flexibility analysis is not required.

*F. Paperwork Reduction Act*

*Summary:* This proposed rule modifies the annual financial disclosure

report that section 202 of the Act requires to be filed by labor organization officers and employees who have certain holdings, receive certain payments or income, or engage in certain financial transactions or arrangements. The revised paperwork requirements are necessary to reduce the errors and deficiencies in the reports that are filed under section 202, and increase the transparency of the financial practices of union officers and employees, which the Act requires to be public information. More accurate reports and increased transparency will allow union members to view the information needed by them to monitor their union's affairs and to make informed choices about the leadership of their union and its direction. Accurate disclosure and increased transparency promotes the unions' own interests as democratic institutions and the interests of the public and the government. Financial disclosure deters fraud and self-dealing, and facilitates the discovery of such misconduct when it does occur. The revised financial disclosure form will promote increased compliance with the statute by clarifying the form and instructions, offering numerous examples to guide filers, deleting exemptions that permit filers to decline to disclose financial matters made reportable by the Act, and organizing the information in a more useful format.

Published at the end of this notice are the proposed Form LM–30 and instructions that will implement the new reporting requirements. The electronic versions of the current Form LM–30 and instructions are available for download from the Department's web site at *www.olms.dol.gov.* The proposed Form LM–30 and instructions will also be made available via the Internet. Pursuant to the Paperwork Reduction Act of 1995, the information collection requirements contained in this Notice of Proposed Rulemaking have been submitted to the Office of Management and Budget for approval.

*Background:* The Form LM–30 is used by officers and employees of labor organizations, as the LMRDA defines that term. See 29 U.S.C. 402(i). The Act requires public disclosure of certain financial interests held, income received, and transactions and arrangements engaged in by labor organization officers and employees, who must file the reports, and their spouses and minor children. Subject to certain exclusions, these interests, incomes, transactions, and arrangement comprise: (1) Payments or benefits from, or holdings in, an employer whose employees the filer's union represents

or is actively seeking to represent; (2) transactions involving holdings in an employer whose employees the filer's union represents or is actively seeking to represent; (3) holdings in, income from, or transactions with a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent; (4) holdings in, income from, or transactions with a business that deals with the filer's union or a trust in which the filer's union is interested; (5) transactions or arrangements with an employer whose employees filer's union represents or is actively seeking to represent; and (6) payments from an employer or labor relations consultant. See 29 U.S.C. 432.

*The Current Form:* The existing Form LM–30 consists of four sections. The first section calls for identifying data. This section gathers information about the filer, including the filer's name and address, the name and address of the labor organization in which the filer is an officer or employee, the filer's position with the organization, and the fiscal year covered by the report.

The second section, Part A of the current form, generally requires reporting of holdings in, transactions and arrangements with, and income and loans from the employer whose employees the filer's labor organization represents or actively seeks to represent. For each holding, transaction, arrangement, income, or loan, the filer is required to disclose its nature, value, and date of receipt.

Part A of the current form excludes certain financial matters from reporting. The instructions advise the potential filer that he or she should not report (i) holdings of, transactions in, or income from bona fide investments in registered securities; (ii) holdings of, transactions in, or income from other securities if they are of "insubstantial value or amount" (defined as holdings or transactions of $1,000 or less and income of $100 or less from any one security) and occur under terms unrelated to the filer's status in the labor organization; (iii) transactions involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer; and (iv) "payments and benefits received as a bona fide employee of the employer for past or present services, including wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan; and payments for periods in which such employee engaged in activities other than productive work, if

the payments for such period of time are: (a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization."

The third section of the current form, Part B, generally requires reporting of "an interest in or derived income or other economic benefit with monetary value, including reimbursed expenses, from a business (1) a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with the business of an employer whose employees your labor organization represents or is actively seeking to represent, or (2) any part of which consists of buying from or selling or leasing directly or indirectly to, or otherwise dealing with your labor organization or a trust in which your labor organization is interested." The filer must identify the name and address of the business involved, describe the type of organization the business deals with (employer, labor organization, trust), enter the nature of the dealings between these two parties and the value of these dealings, enter the interest held or income received by the filer, and the dollar amount of such income or interest.

Part B of the current form also excludes certain financial matters from reporting. Filers are instructed that they are not required to report any of the interests, transactions, or income identified in exclusions (i) and (ii) of Part A. As discussed, these non-reportable financial matters are (i) holdings in, transaction in, and income from bona fide investments in registered securities and (ii) insubstantial holdings in, transactions in, and income from other securities occurring under terms unrelated to the filer's status in the labor organization.

The fourth section of the current form, Part C, generally requires reporting of any payment of money or other thing of value received from any employer (other than an employer whose employees the filer's union represents or is actively seeking to represent) or from any labor relations consultant to an employer. For each interest or transaction to be reported under Part C, filers must identify the name of the employer or labor relations consultant and the nature and amount of the payment.

Part C of the current form also excludes certain financial matters from

reporting. The instructions identify the following as items that are not required to be reported: (i) Payments of the kind referred to in section 302(c) of the Labor Management Relations Act (LMRA); (ii) bona fide loans, interest or dividends from banks, other bona fide credit institutions, and insurance companies; and (iii) interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees the filer's labor organization represents or actively seeks to represent.

In the "General Instructions" filers are informed: "You do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances or terms unrelated to the recipient's status in a labor organization." This exclusion applies to financial matters reportable under Part A, B or C.

In the instructions to the current Form LM–30, the information collection burden is reported to average 35 minutes per response.

Overview of Changes to Form LM–30: The proposed Form LM–30 and instructions will define terms used in the form, provide examples to assist the filer in identifying reportable financial events, and will remove certain exclusions that permitted filers to avoid reporting certain financial matters.

The revised instructions define: *Actively seeking to represent, arrangement, benefit with monetary value, bona fide employee, bona fide investment, dealing, directly or indirectly, filer/reporting person/you, income, labor organization, labor organization employee, labor organization officer, legal or equitable interest, minor child, payer, publicly traded securities, substantial part,* and *trust in which a labor organization is interested.* These definitions clarify that certain holdings, payments, income, transactions or arrangements are reportable, and that others are non-reportable.

The definition of the term "labor organization" will clarify that when determining whether an employer is one "whose employees the filer's labor organization represents or actively seeks to represent," or whether a business is "dealing with [the filer's] labor organization," the term "labor organization" will not be limited to the particular local, intermediate, national or international labor organization that the filer serves as an officer or

**Federal Register** / Vol. 70, No. 166 / Monday, August 29, 2005 / Proposed Rules **51197**

employee, but rather will also include any parent or subordinate body of the filer's labor organization.

Similarly, in defining "bona fide employee," the revised Form LM–30 would require the reporting of payments received by union officers from an employer for work performed for the union. A typical example involves a "no docking" arrangement where an employer allows a union steward or other officer to resolve grievances, often on an occasional "as-needed" basis, without a loss of pay. In other instances, a union official is paid by an employer while working full time on union business. In a related area, the definition of "labor organization employee" clarifies that individuals who perform work for, and under the control of, the union must file a Form LM–30. Individuals who receive payments from an employer, either under a "union leave" or "no docking" policy, for work performed for, and under the control of, the union, will come under this definition, as may some workers previously denominated "independent contractors."

The definition of the term "minor child" would require union officers to report financial matters involving a child until the child reaches 21 years of age. The definition of the term "substantial part" would require reports of income from a business where a business's receipts from an employer whose employees the filer's labor organization represents or is actively seeking to represent constitute 5% or more of its annual receipts. The definition of "minor child," and the two other definitions discussed above, will likely increase the holdings, payments, income, transactions or arrangements that are reported.

The proposed instructions also eliminate some exemptions in the current form. These exemptions operate to make nondiscloseable financial matters that the statute requires to be reported. The elimination of these exemptions will thus tend to increase the holdings, payments, income, transactions or arrangements that will be reported.

Part A of the current instructions exempts from reporting:

(iii) Transactions involving purchases and sales of goods and services in the regular course of business at prices generally available to any employee of the employer.

(iv) Payments and benefits received as a bona fide employee of the employer for past or present services, including wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan; and payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) Required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization.

The Department proposes to limit the scope of exemption (iii) Exemption (iii) is a statutory exemption that applies by its terms to financial matters reportable under section 202(a)(5), not to section 202(a)(1) or 202(a)(2). See 29 U.S.C. 432(a)(1), (2), (5). The Department's proposal adheres to the statutory design and thus ends the exemption for reports due under section 202(a)(1) and 202(a)(2), but continues it for reports due under section 202(a)(5). Similarly, the first part of exemption (iv) (up to the semicolon) is created by statute. It applies to reports due under section 202(a)(1) and 202(a)(5). See 29 U.S.C. 432(a)(1), (5). The Department proposes to eliminate this exemption for reports due under section 202(a)(2). Further, the portion of the exemption that excludes payments for periods in which such employee engaged in activities other than productive work will also be removed.

Part C of the current instructions contains the following exemptions:

(ii) Bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions.

(iii) Interest on bonds or dividends on stock, provided such interest or dividends are received, and such bonds or stock have been acquired, under circumstances and terms unrelated to the recipient's status in a labor organization and the issuer of such securities is not an enterprise in competition with the employer whose employees your labor organization represents or actively seeks to represent.

The Department proposes to eliminate these two exemptions.

*Hour and Cost Burden Estimates for the Revised Form:* The following table describes the information sought by both the existing form and instructions and the proposed form and instructions, where on each form the particular information is sought, if applicable, and the amount of time estimated for completion of each item of information. The time estimates include the additional time burdens associated with the Department's proposed eliminated and curtailed administrative exemptions, and the proposed definitions.

| Burden description | Current form | Proposed form | Time |
|---|---|---|---|
| Maintaining and gathering records ........... | N/A ............................................... | N/A ............................................... | 10 minutes. |
| Reading the instructions to determine whether filer must complete the form. | N/A ............................................... | N/A ............................................... | 15 minutes. |
| Additional reading of the instructions to determine how to complete the form. | N/A ............................................... | N/A ............................................... | 30 minutes. |
| Reporting LM–30 file number .................. | Item 1 ............................................ | Item 1 ............................................ | 30 seconds. |
| Reporting covered fiscal year .................. | Item 2 ............................................ | Item 2 ............................................ | 30 seconds. |
| Reporting filer's name, address, and contact information. | Item 3 ............................................ | Item 3, A through I .................................. In addition to the information sought on the existing form, the proposed form seeks filer's e-mail address and full middle name. | 2 minutes. |
| Reporting name, file number, and address of filer's union or unions. | Item 4 ............................................ | Item 4, A through E Proposed form provides continuation page in which to report this information for an additional union. | 2 minutes. |

| Burden description | Current form | Proposed form | Time |
|---|---|---|---|
| Reporting position in union ...................... | Item 5 ............................................. | Item 4, F through H .................................. In addition to the information sought on the existing form, the proposed form asks whether filer is an officer or employee and whether filer is with the union at end of reporting period. In addition, the proposed form provides continuation page in which to report this information for an additional union. | 1 minute. |
| Reporting name, trade name, and address of (1) an employer whose employees the union represents or is actively seeking to represent, (2) a business that deals with such an employer, or the union, or a trust in which the union is interested, or (3) any employer or labor relations consultant. | Item 6 or Item 8 or Item 13 ..................... | Schedule 1 ............................................... In addition to the information sought on the existing form, the proposed form asks for a contact name, telephone number, web site address, state of incorporation or registration, state business ID number, and whether filer has an association with the business, employer, or labor relations consultant (called a payer on the proposed form) at the end of reporting period. | 5 minutes. |
| Reporting the employer, union, or trust that the business deals with. | Item 9a (referring back to Item 4) or Item 9b/9c and Item 10. | Schedule 2, Items A and B ..................... The proposed form requires less information than the existing form by requiring only name and file number or zip code rather than complete address information for employers and trusts. | 1 minute. |
| Reporting the nature of the dealings between the employer, union, or trust and the business. | Item 11a ..................................................... | Schedule 2, Item C ................................... | 3 minutes. |
| Reporting the value of the dealings between the employer, union, or trust and the business. | Item 11b ..................................................... | Schedule 2, Item D ................................... In addition to the information sought on the existing form, the proposed form requires a total of the values. | 3 minutes. |
| Reporting the nature of the interest held by the filer, the payment, income, or loan received by the filer, or the transactions and arrangements engaged by the filer. | Item 7a or Item 12a or Item 14a ............. | Schedule 3, Items A through D ............... In addition to the information sought on the existing form, the proposed form calls for the relevant reporting section, date of the financial matter, and whether person involved in the financial transaction was the officer, employee, spouse, or minor child. | 4 minutes. |
| Reporting the value of the interest held by the filer, the payment, income or loan received by the filer, or the transactions and arrangements engaged by the filer. | Item 7b or Item 12b or Item 14b ............. | Schedule 3, Item E .................................. In addition to the information sought on the existing form, the proposed form requires a total of the values. | 2 minutes. |
| Signature, date and telephone number .... | Item 5 ........................................................ | Item 5 ........................................................ | 1 minute. |
| Completing payer summary schedule ...... | N/A ............................................................ | Beyond the information sought on the existing form, the proposed form requires listing each payer, which of four classifications describes the payer (employer, business, etc.), the total value from Schedule 3, Item E, and the total of the values for all payers. | 5 minutes. |
| Checking responses ................................... | N/A ............................................................ | N/A ............................................................ | 5 minutes. |
| Total Burden Hour Estimate Per Filer | ................................................................. | ................................................................. | 90 minutes. |

The recordkeeping estimate of ten minutes reflects that the majority of financial books and records required to complete the report are those that respondents would maintain in the normal course of conducting business, personal, and union affairs, and thus should only take two minutes to maintain and gather. The other eight minutes has been estimated to be necessary to maintain and gather the books and records that would not ordinarily be maintained, including those concerning the dealings between a business and the filer's union, a trust in which the filer's union is interested, or an employee whose employees the union represents or is actively seeking to represent.

These figures also assume that the use of an electronic form, which is more efficient than completion of a form by hand, will reduce the burden. In addition, burden is decreased by the proposed revised Form LM–30's elimination of multiple form filings

from the same filer for the same fiscal year resulting from the current form's inadequate provision for those filers who are officers and/or employees of more than one relevant labor organization.

The Department estimates that the clarification of the Form LM–30, the defined terms, the addition of examples that illustrate reportable and nonreportable transactions, and the removal of the administrative exemptions will increase the number of

individuals who file the Form LM–30. Using the best data available, the Department estimates that there are 204,634 union officers and employees. Further, based on the submittal of approximately 61 reports annually, the Department estimates a current filing rate of 0.03% (61 / 204,634 × 100 = 0.03%). Due to the reform proposed herein, as well as increased compliance assistance and enforcement initiatives, the Department estimates that the filing rate will increase to approximately 1%, or 2,046 reports filed annually. Thus, the annual reporting and recordkeeping hour burden for all filers will be 184,140 minutes (90 × 2,046 = 184,140) or 3,069 hours (184,140 / 60 = 3,069). The Department believes this estimate is consistent with the opinion of some stakeholders that relatively few union officers and employees would be engaged in covered transactions. The Department's own research also revealed little concrete evidence of the number of union officers and employees that would have to file. The Department acknowledges the considerable uncertainty in this estimate and requests comment on the number of reports that should be filed under the current requirements and that may be filed as a result of the new requirements.

Using FY 2003 data taken from annual financial reports filed by labor organizations, the Department estimates that the average annual salary earned by union officers and employees is $17,596. This data does not, however, permit the derivation of an hourly wage, as the number of part-time officers and employees is unknown, and employees who receive in the aggregate $10,000 or less are not reported. Assuming the $21.85 mean hourly earnings of those engaged in white collar occupations (based on National Compensation Survey: Occupational Wages in the United States, July 2003, Bureau of Labor Statistics, U.S. Department of Labor, August 2004), the Department estimates that the annual reporting and recordkeeping cost burden for all filers will be $ 67,058 (3,069 × 21.85), or $32.78 per filer (67,058 / 2,046).

In addition, the Department estimates that all union officers and employees will spend 15 minutes reading the revised form and instructions to determine whether they are required to file a report. By deducting the 2,046 estimated filers whose preliminary review of the form has already been counted from the estimated 204,634 union officers and employees, 202,588 officers and employees remain who will review the form but determine that they are not required to file a report. The annual reporting and recordkeeping

hour burden for these officers and employees will be 3,038,820 minutes (15 × 202,588 = 3,038,820) or 50,647 hours (3,038,820 / 60 = 50,647). Using the $21.85 hourly wage, the Department estimates that the annual reporting and recordkeeping cost burden for non-filing union officers and employees will be $1,106,637 (50,647 × 21.85 = 1,106,637), or $5.46 per non-filing union officer or employee (1,106,637 / 202,588 = $5.46).

The resulting total annual reporting and recordkeeping hour burden will be 53,716 (50,647 + 3,069 = 53,716). The total annual reporting and recordkeeping cost burden will be $1,173,695 (53,716 × 21.85 = 1,173,695).

### G. Executive Order 13045 (Protection of Children From Environmental Health Risks and Safety Risks)

In accordance with Executive Order 13045, the Department has evaluated the environmental safety and health effects of the rule on children. The Department has determined that the final rule will have no effect on children.

### H. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)

The Department has reviewed this rule in accordance with Executive Order 13175, and has determined that it does not have "tribal implications." The rule does not "have substantial direct effects on one or more Indian tribes, on the relationship between the Federal government and Indian tribes, or on the distribution of power and responsibilities between the Federal government and Indian tribes."

### I. Executive Order 12630 (Governmental Actions and Interference With Constitutionally Protected Property Rights)

This rule is not subject to Executive Order 12630, Governmental Actions and Interference with Constitutionally Protected Property Rights, because it does not involve implementation of a policy with takings implications.

### J. Executive Order 12988 (Civil Justice Reform)

This regulation has been drafted and reviewed in accordance with Executive Order 12988, Civil Justice Reform, and will not unduly burden the Federal court system. The regulation has been written so as to minimize litigation and provide a clear legal standard for affected conduct, and has been reviewed carefully to eliminate drafting errors and ambiguities.

### K. Environmental Impact Assessment

The Department has reviewed the final rule in accordance with the requirements of the National Environmental Policy Act (NEPA) of 1969 (42 U.S.C. 4321 *et seq.*), the regulations of the Council on Environmental Quality (40 U.S.C. part 1500), and the Department's NEPA procedures (29 CFR part 11). The final rule will not have a significant impact on the quality of the human environment, and, thus, the Department has not conducted an environmental assessment or an environmental impact statement.

### L. Executive Order 13211 (Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use)

This rule is not subject to Executive Order 13211, because it will not have a significant adverse effect on the supply, distribution, or use of energy.

### Text of Proposed Rule

In consideration of the foregoing, the Office of Labor-Management Standards, Employment Standards Administration, Department of Labor hereby proposes to amend part 404 of title 29 of the Code of Federal Regulations as set forth below.

## PART 404—LABOR ORGANIZATION OFFICER AND EMPLOYEE REPORTS

1. The authority citation for part 404 is revised to read as follows:

**Authority:** Secs. 202, 207, 208, 73 Stat. 525, 529 (29 U.S.C. 432, 437, 438); Secretary's Order No. 4–2001, 66 FR 29656 (May 31, 2001).

### § 404.1    [Amended]

2. Section 404.1 is amended by:

a. Redesignating existing paragraph (b) as new paragraph (h) and adding a new sentence at the end;

b. Add a new paragraph (b);

c. Redesignating existing paragraph (c) as new paragraph (g) and by adding new text at the end;

d. Redesignating existing paragraph (d) as new paragraph (c);

e. Redesignating existing paragraph (a) as new paragraph (d);

f. Adding a new paragraph (a);

g. Adding paragraphs (e), (f), (i) and (j).

The additions and revision read as follows:

### § 404.1    Definitions.

(a) *Benefit with monetary value* means anything of value, tangible or intangible, including any interest in personal or real property, gift, insurance, retirement,

pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind.

(b) *Dealing* means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade with another individual or entity.

\*     \*     \*     \*     \*

(e) *Income* means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards.

(f) *Labor organization* means a labor organization under 29 CFR 401.9 and includes the local, intermediate, or national or international labor organization that employed the filer of the Form LM–30, or in which the filer held office, during the reporting period, and any parent or subordinate labor organization.

(g) \* \* \* within the meaning of any law of the United States relating to the employment of employees.

(h) \* \* \* An officer is (1) a person identified as an officer by the constitution and bylaws of the labor organization;

(2) Any person authorized to perform the functions of president, vice president, secretary, or treasurer;

(3) Any person who in fact has executive or policy-making authority or responsibility; and

(4) A member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

(i) *Minor child* means a son, daughter, stepson, or stepdaughter under 21 years of age.

(j) *Trust in which a labor organization is interested* means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

**§ 404.4   [Removed and reserved]**

3. Section 404.4 is removed and reserved.

**§ 404.7   [Amended]**

4. Section 404.7 is revised to read as follows:

**§ 404.7   Maintenance and retention of records.**

Every person required to file any report under this part shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Office of Labor-Management Standards may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, financial and investment statements, contracts, correspondence, and applicable resolutions, in electronic and paper format, and any electronic programs by which they are maintained, available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.

Signed at Washington, DC this 19th day of August, 2005.

**Victoria A. Lipnic,**

*Assistant Secretary for Employment Standards.*

**Don Todd,**

*Deputy Assistant Secretary for Labor-Management Programs.*

BILLING CODE 4510–CP–P

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF LABOR-MANAGEMENT STANDARDS
WASHINGTON DC 20210

FORM APPROVED
OFFICE OF MANAGEMENT AND
BUDGET No. XXXX-XXXX
EXPIRES XX-XX-XXXX

# FORM LM-30 LABOR ORGANIZATION
# OFFICER AND EMPLOYEE ANNUAL REPORT

This report is mandated under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

## PLEASE READ THE INSTRUCTIONS CAREFULLY BEFORE PREPARING THE REPORT.

**For Official Use Only**

E

**1. LM-30 FILE NUMBER:**

□□□ — □□□

**2. PERIOD COVERED:**

|  | MONTH | DAY | YEAR |
|---|---|---|---|
| FROM | □□ / | □□ / | □□□□ |
| THROUGH | □□ / | □□ / | □□□□ |

**3. CONTACT INFORMATION OF REPORTING PERSON:**

| A. FIRST NAME | B. MIDDLE NAME | C. LAST NAME |
|---|---|---|

| D. MAILING ADDRESS (LINE 1) |
|---|

| E. MAILING ADDRESS (LINE 2) |
|---|

| F. CITY | G. STATE OR COUNTRY | H. ZIP CODE |
|---|---|---|

| I. E-MAIL ADDRESS |
|---|

**4. LABOR ORGANIZATION IDENTIFYING INFORMATION:**

| A. NAME |
|---|

| B. MAILING ADDRESS (LINE 1) |
|---|

| C. MAILING ADDRESS (LINE 2) |
|---|

| D. CITY, STATE, ZIP |
|---|

| E. FILE NUMBER |
|---|

F. OFFICER □    EMPLOYEE □

| G. REPORTING PERSONS OFFICIAL/PROFESSIONAL TITLE |
|---|

H. WITH UNION AT END OF REPORTING PERIOD?    YES □

## PAYER SUMMARY SCHEDULE

| A. NAME | B. VALUE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| TOTAL FROM CONTINUATION PAGES (IF ANY) | |
| TOTAL FROM ALL PAYERS | |

THE UNDERSIGNED DECLARES, UNDER PENALTY OF PERJURY AND OTHER APPLICABLE PENALTIES OF LAW, THAT ALL OF THE INFORMATION SUBMITTED IN THIS REPORT (INCLUDING THE INFORMATION CONTAINED IN ANY ACCOMPANYING DOCUMENTS) HAS BEEN EXAMINED BY THE SIGNATORY AND IS, TO THE BEST OF THE UNDERSIGNED'S KNOWLEDGE AND BELIEF, TRUE, CORRECT AND COMPLETE.

**5. SIGNED:** _____    ON _____ / _____ / _____    ( _____ ) _____

DATE    TELEPHONE

FORM LM-30 (REVISED 2005)    PAGE 1 OF 2

# PAYER DETAIL PAGE

LM-30 FILE NUMBER: ☐☐☐ — ☐☐☐

PAYER: _____

TOTAL NUMBER OF PAYERS: _____

## SCHEDULE 1 - PAYER IDENTIFYING INFORMATION

| A. LEGAL NAME OF PAYER | | | I. TELEPHONE NUMBER |
|---|---|---|---|
| B. CONTACT FIRST NAME | C. CONTACT MIDDLE NAME | D. CONTACT LAST NAME | J. WEB SITE ADDRESS |
| E. MAILING ADDRESS | | | K. STATE OF INCORPORATION/REGISTRATION |
| F. CITY | G. STATE | H. ZIP CODE | L. STATE BUSINESS ID# |
| M. DID YOU HAVE AN ASSOCIATION WITH THE PAYER AT THE END OF THE REPORTING PERIOD? | | | YES: ☐    NO: ☐ |

## SCHEDULE 2 - FILER'S INTEREST IN, PAYMENTS OR LOANS FROM, OR TRANSACTIONS OR ARRANGEMENT WITH THE PAY

| A. DATE | B. O/E/S/C | C. SUBSECTION(S) | D. DESCRIPTION OF INTEREST, PAYMENT, LOAN, TRANSACTION, OR ARRANGEMENT | E. VALUE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL FROM CONTINUATION PAGES (IF ANY) | |
| | | | TOTAL VALUATION OF PAYMENTS, LOANS AND INTERESTS | |

## SCHEDULE 3 - PAYER'S DEALINGS WITH UNION(S), TRUST(S), OR EMPLOYER(S)

| A. NAME OF UNION, TRUST, OR EMPLOYER | B. U/T/E | C. FILE NUMBER | D. DESCRIPTION OF DEALINGS | E. VALUE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL FROM CONTINUATION PAGES (IF ANY) | |
| | | | TOTAL VALUE OF DEALINGS | |

FORM LM-30 (REVISED 2005)

PAGE 2 OF 2

# LABOR ORGANIZATIONS IN WHICH THE REPORTING PERSON IS AN OFFICER OR EMPLOYEE - CONTINUATION PAGE

**LM-30 FILE NUMBER** ☐☐☐ — ☐☐☐

**4. LABOR ORGANIZATION IDENTIFYING INFORMATION:**

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY, STATE, ZIP

E. OFFICER OR EMPLOYEE?

F. OFFICIAL TITLE OF REPORTING PERSON

G. FILE NUMBER

H. WITH UNION AT END OF REPORTING PERIOD? YES ☐   No ☐

**4. LABOR ORGANIZATION IDENTIFYING INFORMATION:**

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY, STATE, ZIP

E. OFFICER OR EMPLOYEE?

F. OFFICIAL TITLE OF REPORTING PERSON

G. FILE NUMBER

H. WITH UNION AT END OF REPORTING PERIOD? YES ☐   No ☐

**4. LABOR ORGANIZATION IDENTIFYING INFORMATION:**

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY, STATE, ZIP

E. OFFICER OR EMPLOYEE?

F. OFFICIAL TITLE OF REPORTING PERSON

G. FILE NUMBER

H. WITH UNION AT END OF REPORTING PERIOD? YES ☐   No ☐

**4. LABOR ORGANIZATION IDENTIFYING INFORMATION:**

A. NAME

B. MAILING ADDRESS (LINE 1)

C. MAILING ADDRESS (LINE 2)

D. CITY, STATE, ZIP

E. OFFICER OR EMPLOYEE?

F. OFFICIAL TITLE OF REPORTING PERSON

G. FILE NUMBER

H. WITH UNION AT END OF REPORTING PERIOD? YES ☐   No ☐

FORM LM-30 (REVISED 2005)

CONTINUATION PAGE

# PAYER SUMMARY SCHEDULE - CONTINUATION PAGE

LM-30 FILE NUMBER  ☐☐☐ — ☐☐☐

| | A. PAYER NAME | C. VALUE |
|---|---|---|
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| 25. | | |
| 26. | | |
| 27. | | |
| 28. | | |
| 29. | | |
| 30. | | |
| 31. | | |
| 32. | | |
| 33. | | |
| 34. | | |
| | | TOTAL FROM THIS PAGE |

CONTINUATION PAGE

FORM LM-30 (REVISED 2005)

# SCHEDULE 2 - FILER'S INTEREST IN, PAYMENTS OR LOANS FROM, OR TRANSACTIONS OR ARRANGEMENT WITH THE PAYER - CONTINUATION PAGE

LM-30 FILE NUMBER ☐☐☐ — ☐☐☐

PAYER NUMBER: _____

| A. DATE | B. O/E/S/C | C. UBSECTION( | D. DESCRIPTION OF REPORTABLE INTEREST | E. VALUE |
|---------|-----------|---------------|---------------------------------------|----------|
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               |                                       |          |
|         |           |               | TOTAL FROM THIS PAGE                  |          |

CONTINUATION PAGE

FORM LM-30 (REVISED 2005)

# SCHEDULE 3 - PAYER'S DEALINGS WITH UNION(S), TRUST(S), OR EMPLOYER(S) - CONTINUATION PAGE

LM-30 FILE NUMBER   ☐☐☐ — ☐☐☐

PAYER NUMBER: ____

| A. NAME OF UNION, TRUST, OR EMPLOYER | B. U/T/E | C. FILE NUMBER | D. DESCRIPTION OF DEALINGS | E. VALUE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | TOTAL FROM THIS PAGE |

CONTINUATION PAGE

FORM LM-30 (REVISED 2005)

# ADDITIONAL INFORMATION SCHEDULE

LM-30 FILE NUMBER: ☐☐☐ — ☐☐☐

| A.<br>SCHEDULE/ITEM | B.<br>ADDITIONAL INFORMATION |
|---|---|
|  |  |

CONTINUATION PAGE

FORM LM-30 (REVISED 2005)

Public reporting burden for this collection of information is estimated to average 90 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. Reporting of this information is mandatory and is required by the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), for the purpose of public disclosure. As this is public information, there are no assurances of confidentiality. If you have any comments regarding this estimate or any other aspect of this information including suggestions for reducing this burden, please send them to the U.S. Department of Labor, Employment Standards Administration, Office of Labor-Management Standards, Division of Interpretations and Standards, Room N-5605, 200 Constitution Avenue, NW, Washington, DC 20210.

## INSTRUCTIONS FOR
# FORM LM-30
# LABOR ORGANIZATION OFFICER AND EMPLOYEE REPORT
### GENERAL INSTRUCTIONS

## I. WHY FILE

The Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA or Act), requires public disclosure of certain financial transactions and financial interests of labor organization officers and employees and their spouses and minor children. *See* 29 C.F.R. 404.1-404.9 (reports by officers and employees of labor organizations). The purpose of disclosure is to publicly identify an actual or potential conflict between the personal financial interests of a union officer or employee (sometimes referred to as a *filer* in these instructions) and his or her obligations to the union and its members. *Labor organization, labor organization officer, labor organization employee,* and other important terms are defined below.

The LMRDA includes a comprehensive statement of the basic rights of union members, including equal voting rights, freedom of speech and assembly, and other basic safeguards for union democracy, among other protections; establishes financial reporting and disclosure requirements for unions, union officers and employees, employers, and labor relations consultants; regulates union trusteeships; details procedural requirements for the conduct of union elections; and establishes a fiduciary duty on union officers, employees, and other representatives.

Pursuant to Section 202 of the LMRDA, and subject to certain exceptions, every labor organization officer or employee (other than an employee performing exclusively clerical or custodial services), who has, directly or indirectly, held any legal or equitable interest in, received any payments from, or engaged in any transactions or arrangements (including loans) with certain businesses or employers or labor relations consultants during the fiscal year must file a detailed report with the Secretary of Labor (Secretary). *See* Part II of these instructions for a detailed discussion of the types of financial matters that must be reported. No report need be filed unless the filer, or filer's spouse or minor child, held a covered interest, received a covered payment, or engaged in a covered transaction or arrangement during the reporting period.

The Department's Office of Labor-Management Standards (OLMS) has developed a comprehensive program to assist officers, employees, and members of labor organizations with LMRDA compliance, including the completion of the Form LM-30. Much of the information is available on the OLMS web site: www.olms.dol.gov. For additional contact information, *see* the final page of these instructions.

The Secretary, under the authority of the LMRDA, has prescribed the filing of the Labor Organization Officer and Employee Report, Form LM-30, for officers and employees of labor organizations to satisfy their reporting obligation. The reporting requirements of the LMRDA and of the regulations and forms issued under the Act relate only to the disclosure of specified transactions and interests. The reporting requirements do not address whether such transactions and interests are lawful or unlawful. The fact that a particular transaction or interest is or is not required to be reported is not indicative of whether it is or is not subject to any legal prohibition; this must be determined by provisions of law other than those prescribing the reports. Failure to report a covered interest or transaction may subject the filer to civil or criminal penalties, or both. *See* Part VI of these instructions.

## II. WHO MUST FILE AND WHAT MUST BE REPORTED

You must file Form LM-30 if at any time during your past fiscal year:

(1) You were an officer or employee of a labor organization (other than an employee performing exclusively clerical or custodial services) as defined by the LMRDA, and

(2) You or your spouse or your minor child, directly or indirectly, held any legal or equitable interest, received any payments, or engaged in any transactions or arrangements (including loans) of the types described in the six subsections of Section 202 of the LMRDA.

As discussed in detail below, and subject to certain exceptions, reportable interests, payments, transactions and arrangements include:

(1) Payments or benefits from, or interests in, an employer whose employees your union represents or is actively seeking to represent

(2) Transactions involving interests in, or loans to or from, an employer whose employees your union represents or is actively seeking to represent

(3) Interests in, income from, or transactions with a business a substantial part of which consists of dealing with an employer whose employees your union represents or is actively seeking to represent

(4) Interests in, income from, or transactions with, a business a substantial part of which consists of dealing with your union or a trust in which your union is interested

(5) Transactions or arrangements with an employer whose employees your union represents or is actively seeking to represent

(6) Payments of money or other thing of value from any employer or labor relations consultant to an employer.

Interests held by, payments received by, and transactions and arrangements involving a minor child must be reported until the child turns 21. If the child reaches the age of 21 during the fiscal year, disclosable matters must be reported for that portion of the fiscal year before the child's 21st birthday. If you are divorced from your spouse during the fiscal year, disclosable interests and transactions must be reported for that portion of the fiscal year prior to the divorce.

In order to complete the form, you must report your own covered holdings and transactions and make reasonable efforts to report the covered holdings and transactions of your spouse and minor child and must consult them or their financial adviser before completing the form.

You do not have to report any sporadic or occasional gifts, gratuities, or loans of less than $25 in value, given under circumstances or terms unrelated to the recipient's status in a labor organization.

### DEFINITIONS

For the limited purposes of completing Form LM-30, the following definitions apply:

*Actively seeking to represent* means that a labor organization has taken steps to become the bargaining representative of the employees of an employer, including but not limited to:

- Sending organizers to an employer's facility;
- Placing an individual in a position as an employee of an employer that is the subject of an organizing

drive and paying that individual subsidies to assist in the union's organizing activities;
- Circulating a petition for representation among employees;
- Soliciting employees to sign membership cards;
- Handing out leaflets;
- Picketing; or
- Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of it employees), or otherwise committing personnel or financial resources to seek representation of employees working for the employer.

*Arrangement* means any agreement or understanding, tacit or express, or any plan or undertaking, commercial or personal, by which the filer, spouse, or minor child will obtain a benefit, directly or indirectly, with an actual or potential monetary value.

Note on the definition:  The term "arrangement" encompasses both personal and business transactions, including an unwritten understanding.  For example, if an employer's representative during the reporting period solicits a union officer to accept a job with the employer, the filer must report the solicitation, unless the filer rejects the offer.  A standing job offer must be reported because it carries the potential of monetary value to the filer.  Another example of a situation requiring a report would be one in which a covered employer provides insider information about a stock or other investment opportunity, unless the filer rejects the advice and takes no steps to act on it.

*Benefit with monetary value* means anything of value, tangible or intangible, including any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind.  *See income.*

*Bona fide employee* is an individual who performs work for, and subject to the control of, the employer.

Note on the definition:  A payment received as a bona fide employee includes wages and employment benefits received for work performed for, and subject to the control of, the employer, as well as compensation for work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law. Compensation received under a "union-leave," or "no-docking" policy is not received as a bona fide employee. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals

to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay. Union-leave and no-docking payments are not received as a bona fide employee of the employer; they are received as a representative or employee of the union and thus, such payments must be reported.

*Bona fide investment* means personal assets of an individual held to generate profit not acquired by improper means or as a gift from an employer, a business that deals with the filer's union or a trust in which the filer's union is interested, a business a substantial part of which consists of dealing with an employer whose employees the filer's union represents or is actively seeking to represent, or a labor relations consultant to an employer. *See publicly traded securities*.

*Dealing* means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade.

*Directly or indirectly* means by any course, avenue, or method. *Directly* encompasses holdings and transactions in which the filer, spouse, or minor child receives a payment or other benefit without the intervention or involvement of another party. *Indirectly* includes any payment or benefit which is intended for the filer, spouse, or minor child or on whose behalf a transaction or arrangement is undertaken, even though the interest is held by a third party, or was received through a third party.

<u>Note on the definition</u>: Filers must disclose any benefits received by them (or their spouse or minor child) from a third party where the third party is acting on the behalf, or at the behest, of an employer or business where the benefit would have to be reported if made by it directly to the filer (or their spouse or minor child).

*Filer/Reporting Person/You* means any officer or employee of a labor organization who is required to file Form LM-30.

<u>Note on the definition</u>: These terms are used synonymously and interchangeably throughout the instructions and when referring to reportable interests, income, arrangements or transactions these terms include interests, income, arrangements or transactions involving the union officer's or employee's spouse or minor child.

*Income* means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honoraria, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, prizes, or awards. *See benefit with monetary value*.

*Labor organization* means the local, intermediate, or national or international labor organization that employed the filer, or in which the filer held office during the reporting period, and any parent or subordinate labor organization of the filer's labor organization.

*Labor organization employee* means any individual (other than an individual performing exclusively custodial or clerical services) employed by a labor organization within the meaning of any law of the United States relating to the employment of employees.

<u>Note on the definition</u>: An individual who is paid by the employer to perform union work, either under a "union leave" or "no docking" policy, is an employee of the union for reporting purposes if the individual performs services for, and under the control of, the union. *See* discussion above, under the definition of *bona fide employee*. A hired individual is an employee of the union if the union has the right to control the manner and means by which the work product is accomplished. Among the other factors relevant to this inquiry are the skill required to perform the job; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the union and the individual; whether the union has the right to assign additional projects to the individual; the extent of the individual's discretion over when and how long to work; the method of payment; the individual's role in hiring and paying assistants; whether the work is part of the individual's regular business; the provision of employee benefits; and the tax treatment of the individual.

*Labor organization officer* means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body. An officer is 1) a person identified as an officer by the constitution and bylaws of the labor organization; 2) any person authorized to perform the functions of president, vice president, secretary, or treasurer; 3) any person who in fact has executive or policy-making authority or responsibility; and 4) a member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

<u>Note on the definition</u>: Under this definition, an officer thus includes a trustee appointed to oversee the union. A steward may not be identified in the union constitution as an officer, but may perform executive duties, and thus be an officer.

*Legal or equitable interest* means any property or benefit, tangible or intangible, that has an actual or potential

monetary value for the filer, spouse, or minor child without regard to whether the filer, spouse, or minor child holds possession or title to the interest. *See* definition of *income* and *benefit with monetary value*.

*Minor child* means a son, daughter, stepson, or stepdaughter less than 21 years of age.

*Payer* means:

1) An employer whose employees the filer's labor organization represents or is actively seeking to represent;

2) A business a substantial part of which consists of dealing with an employer whose employees the filer's labor organization represents or is actively seeking to represent;

3) A business that deals with the filer's labor organization or a trust in which the labor organization is interested; or

4) Any employer or any person who acts as a labor relations consultant to an employer.

*Publicly traded securities* means bona fide investments in 1) securities traded on a registered national securities exchange under the Securities Exchange Act of 1934, 2) in shares in an investment company registered under the Investment Company Act of 1940, or 3) in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, and income derived from such securities. The American Stock Exchange, Boston Stock Exchange, Chicago Board Options Exchange, Chicago Stock Exchange, International Securities Exchange, National Stock Exchange (formerly the Cincinnati Stock Exchange), New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange are registered with the Securities and Exchange Commission (SEC) under the Securities Exchange Act of 1934. The NASDAQ stock market is not a registered national securities exchange. As registration status may change, the filer should seek current information.

<u>Note on the definition</u>: Public investment companies comprise certain mutual funds, closed end funds, and unit investment trusts. Interstate public utility holding companies are engaged, through subsidiaries, in the electric utility business or in the retail distribution of natural or manufactured gas. A filer may determine whether an exchange is registered with the SEC by making inquiries with the exchange or by consulting the SEC. A list of registered exchanges is maintained by the SEC on its web site. A filer may determine whether an investment company or public utility holding company is registered with the SEC by making inquiries to the

companies, checking any prospectus, or consulting the SEC. A list of registered public utility companies is maintained by the SEC on its web site. The SEC maintains a web site with general information about securities and how the public may contact the Commission for assistance: www.sec.gov.

*Substantial part* means 5% or more. Where a business's receipts from an employer whose employees the filer's labor organization represents or is actively seeking to represent constitute 5% or more of its annual receipts, a substantial part of the business consists of dealing with this labor organization.

*Trust in which a labor organization is interested* means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

There are additional selected LMRDA definitions at the end of these instructions.

Each of the six statutory subsections is discussed below, with statutory exceptions and examples.

[A1] *Payments or Benefits from, or Holdings in, an Employer Whose Employees Your Union Represents or is Actively Seeking to Represent*

You must complete Form LM-30 if you or your spouse or your minor child, directly or indirectly, held a stock, bond, security, or other interest, legal or equitable, in, or derived any income or any other benefit with monetary value (including reimbursed expenses) from, an employer whose employees your labor organization represents or is actively seeking to represent.

**Exceptions**

You are not required to report:

- Payments and benefits received as a bona fide employee of the employer. *See* definition of *bona fide employee.*
- Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. *See* definition of *publicly traded securities.*

- Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. *See* definition of *publicly traded securities.*

## Example 1

You are a union officer and truck driver who is paid for five days of work by the employer, even though you only drive a truck one day a week and spend the rest of the week handling union member grievances or other union-related work. You must report the income and benefits received from the employer for the time spent performing union work under this subsection.

## Example 2

You are an officer of a union that represents Widget Company employees. To help prepare for your retirement, you purchase 5,000 shares of Widget Company stock over a registered stock exchange. You need not report the shares under this subsection, under the exception for bona fide investments in publicly traded securities.

## Example 3

You are an officer of a union that represents Widget Company employees. Your wife owns 5,000 shares of Widget Company stock that Widget's CEO gave her on Mother's Day two years ago. This stock is traded on a registered stock exchange. You must report the shares under this subsection because the holding of this interest is reportable regardless of when it was obtained and, as a gift, the exception for bona fide investments in publicly traded securities does not apply.

## Example 4

You are a full-time officer of a union that represents employees of several different employers. One of the employers pays your expenses on a trip with management officials to a plant in another part of the country to view some new equipment that the employer is considering purchasing. You must report the travel expenses under this subsection.

## Example 5

You are an employee of a union that represents actors. You own a production company whose employees are represented by your union. You must report your interests in the production company under this subsection.

## Example 6

You are an employee of a union and your spouse works as a producer for a dinner theater that employs actors represented by your labor organization. Your spouse works 40 to 50 hours a week, producing shows and is paid a yearly salary. You do not have to report these earnings under this subsection because the payments are received as a bona fide employee of the theater company.

## Example 7

You are a union officer and you receive payments under an ERISA qualified pension plan. The payments relate to your past employment for an employer whose employees your labor organization represents. These payments are received as a bona fide employee of the employer, and you do not have to report these payments under this subsection.

**A2** *Transactions Involving Loans from and Holdings in an Employer Whose Employees Your Union Represents or is Actively Seeking to Represent*

You must complete Form LM-30 if you or your spouse or your minor child, directly or indirectly, engaged in any transaction involving any stock, bond, security, or loan to or from, or other legal or equitable interest in, the business of an employer whose employees your labor organization represents or is actively seeking to represent.

## *Exception*

You are not required to report:

- Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. *See* definition of *publicly traded securities.*
- Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. *See* definition of *publicly traded securities.*

**Special Note:** **A2** covers situations where a union officer or employee or his or her spouse or minor child held an interest during the reporting year but sold, transferred or otherwise liquidated it prior to the end of the fiscal year. Such an interest must be reported under this subsection.

**Example 1**

You are a union officer and after the beginning of the fiscal year, you are allowed to participate in the purchase of stock options at a preferred rate for a new business enterprise launched by the employer.  Three weeks before the end of your fiscal year, you exercise the options to purchase the stock and then immediately sell it to realize a gain of $25,000.  This transaction must be reported under this subsection even though you no longer own the stock.

**Example 2**

You are a union employee and your minor child receives 100 shares of stock as a high school graduation gift from an employer whose employees your union represents.  She immediately sells it to assist with college expenses.  Both transactions, the receipt and the sale, must be reported under this subsection.

**Example 3**

You are a union officer, and like all employees of the employer whose members your union represents, you hold an ownership interest in the business of the employer pursuant to an investment plan in which all employees participate.  This is a payment or benefit received as a bona fide employee and the interest is not reportable under section **A1**.  In this fiscal year, you sell this interest to the employer.  The sales transaction is reportable under section **A2**.

**Example 4**

You are a union officer and your spouse receives a loan from an employer whose employees your union represents.  The loan must be reported under this subsection.

**Example 5**

You are a union employee.  Your spouse is a partner of a package delivery company.  The company receives a loan from Easy Credit Limited that was arranged with the assistance of an employer whose employees are represented by your union.  The loan must be reported under this subsection.

**A3** *Holdings in or Transactions with a Business that Deals with an Employer Whose Employees Your Union Represents or is Actively Seeking to Represent*

You must complete Form LM-30 if you, your spouse or your minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees your labor organization represents or is actively seeking to represent.

***Exception***

You are not required to report:

- Holdings of, transactions in, or income from, bona fide investments in publicly traded securities.  *See definition of publicly traded securities.*
- Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization.  Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial.  *See definition of publicly traded securities.*

**Example 1**

You are a union officer.  You own a small machine parts business.  The employer of the employees your union represents purchased a large quantity of machine parts from your business.  The employer's purchases represented 10% of the total receipts of your machine parts business that year.  You must report, under this subsection, your interest in the machine parts business and the dealings between the business and the employer.

**Example 2**

You are an officer of an international union.  Your wife owns an accounting firm and last year 20% of the receipts of her firm were from an employer whose employees are represented by a local union that is subordinate to your international union.  You must report, under this subsection, your wife's interest in the accounting firm and the dealings between her business and the employer.

**Example 3**

You are a union officer and part owner of a copier supply company.  Your union represents employees of employers A, B, and C.  Last year 3% of the company's receipts were from employer A, 2% were from employer B, and 4% were from employer C.  You must report under this subsection because a total of 9% of the company's receipts was from employers whose employees your labor organization represents.  You must report your interests in the copier supply company, and its dealings with each of the employers.

**Example 4**

You are the business manager of a local union that represents stage technicians. You have a business supplying lighting and other equipment to companies producing shows and conventions within the jurisdiction of your local. These companies employ members of your union, and 5% or more of your business is derived from these companies. You must report, under this subsection, your interest in your business and its dealings with the companies that hire the union members.

**Example 5**

You are the president of a union that represents employees of a trucking company. In addition to his full time job, your spouse moonlighted part-time last year and earned $9,000 cleaning business offices on Sundays. Once a month, the trucking company paid your spouse $80 to clean its office space, for an annual total of $960, about 10% of his company's business. You must report the $9,000 in income under this subsection, as well as the dealings between the cleaning business and the trucking company.

**Example 6**

You are an employee of a union that has a collective bargaining agreement with trade show contractors. You were a seasonal employee of a company that received 5% of its receipts last year from leasing fork lifts to these contractors. You must report, under this subsection, your income and other benefits with monetary value (including reimbursed expenses) received from the company and the dealings between the company and the contractors.

**Example 7**

You are the treasurer of a union that has a collective bargaining agreement with trade show contractors. You are the owner of a company that gets 100% of its income from providing laborers to those contractors for handling empty crates. You must report, under this subsection, your ownership interest in the company and its dealings with the trade show contractors.

**Example 8**

You are a union employee. Your spouse is an employee of a law firm that received 10% of its income last year from an employer whose employees your union represents. You must report, under this subsection, your spouse's income and other benefits with monetary value (including reimbursed expenses) received from the law firm, and the dealing between the law firm and the employer.

**A4** *Holdings in or Transactions with a Business that Deals with Your Union or a Trust in which Your Union is Interested*

You must complete Form LM–30 if you or your spouse or your minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from, a business any part of which consists of buying from, selling or leasing to, or otherwise dealing with, your labor organization or a trust in which your labor organization is interested.

***Exception***

You are not required to report:

• Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. *See* definition of *publicly traded securities.*

• Holdings of, transactions in, or income from, bona fide investments in securities that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. *See* definition of *publicly traded securities.*

**Example 1**

You are an officer of a district council. Your spouse owns and operates a small catering business. Your union purchases catering services from your spouse's business during the fiscal year. You must report, under this subsection, your spouse's ownership interest in the catering business, and its dealings with the union.

**Example 2**

You are a union officer. You work part time for a business that did maintenance work on the heating and air conditioning system at the union hall. You must report, under this subsection, your income and other benefits with monetary value (including reimbursed expenses) received from the maintenance business, and its dealings with the union.

**Example 3**

You are a business manager of a local union. You work on a contract basis for a plumbing supply

company that sold tools and other supplies to the union and its training funds. You must report your income and other benefits with monetary value (including reimbursed expenses) received from the plumbing supply company under this subsection, and the dealings between the supply company, and the union and the training funds.

## Example 4

You are an officer of a national union. You and your spouse own a printing company that prints the union newsletters for a local union of the same national union. You must report, under this subsection, your and your spouse's ownership interest in the printing company and its dealing with the union.

## Example 5

You are an officer of a joint board and run a snow plowing business. The joint board is subordinate to an international union. The international union contracted with the business to plow the parking lot of its headquarters. You must report your interest in the snow plowing business under this subsection, in addition to the business's interest with the international union.

## Example 6

You are the president of a local union and a partner in a company that was hired to resurface the union's parking lot. You must report, under this subsection, your interest in the business and its dealings with the union.

## Example 7

You are an employee of a national union. Your wife works for a travel agency that handles all the travel arrangements by officers and employees of the national union. In addition to your wife's income and other benefits with monetary value (including reimbursed expenses) received from the travel agency, she also receives rebates from hotels for bookings made for the union. You must report your wife's interest in the travel agency, her income from that business, and the value of the rebates she received under this subsection, as well as the dealings between the travel agency and the union.

## Example 8

You are the president of a local union and your 19-year old son works for a business that produces customized t-shirts, caps, and jackets. Your local union buys logo items from his business. You must report your son's

income and other benefits with monetary value (including reimbursed expenses) received from this business under this subsection, and the dealing between the business and the union.

## Example 9

You are a business representative of a local union that represents shipyard workers. You and two other business representatives own a company that does medical testing of local members, which is paid for by a health benefit plan that is a trust in which your local is interested. You must report your interest in the medical testing company under this subsection, and the dealings between the testing company and the health benefit plan.

## Example 10

You are an employee of a union. Each year your union holds an annual workers' summer school at a private university whose space and services are rented by the union. You go to the summer school as an instructor and bring your wife and two minor children. At no extra charge to you, the university provides accommodations for you, your wife, and minor children, rather than the single room typically provided instructors. The use of the additional space and its fair market value must be reported under this subsection, in addition to the dealings between the university and the union.

## Example 11

You are the president of a local union and own a building, which has numerous tenants, including your local. The ownership and income received from the operation of the building and the dealings between you and the union must be reported under this subsection.

## Example 12

You are a national union president and a trustee of a jointly administered health care trust that insures union members through a health insurance company. Premiums for insurance coverage of union members are paid by the trust to the health insurance company. You are a member of the board of directors of the health insurance company, which pays you an annual fee and reimburses expenses for your attendance at board meetings. In your capacity as a trustee of the health care trust, you recuse yourself from all decisions concerning the health insurance company. As the health insurance company is doing business with a trust in which your union is interested, you must report your annual fee and reimbursed expenses under this subsection. The dealings between the health insurance company and the trust must also be reported.

**Example 13**

You are an employee of a national union and your spouse works for a law firm that represents a local union that is affiliated with your national union. You must report, under this subsection, your spouse's income and other benefits with monetary value (including reimbursed expenses) received from the law firm, and the dealings between the law firm and the local union.

**Example 14**

You are a director of a registered investment company that offers investment opportunities to unions or trusts in which unions are interested. Your union has invested several thousand dollars in fixed income or equity funds managed by the company. You receive no gratuities, compensation, or reimbursement for your duties as a director, but you are insured against personal liability for your actions as a director under a policy paid for by the company. The investment company paid for this insurance coverage. You must report the payment under this subsection, and the dealings between the investment company and the union.

**A5** *Transactions or Arrangements with an Employer Whose Employees Your Union Represents or is Actively Seeking to Represent*

You must complete Form LM-30 if you or your spouse or your minor child had any direct or indirect business transaction or arrangement with any employer whose employees your labor organization represents or is actively seeking to represent.

*Exceptions*

You are not required to report:

- Payments and benefits received as a bona fide employee of the employer. *See* definition of *bona fide employee.*
- Purchases and sales of goods or services at prices generally available to any employee of the employer.
- Holdings of, transactions in, or income from, bona fide investments in publicly traded securities. *See* definition of *publicly traded securities.*
- Holdings of, transactions in, or income from, bona fide investments in securities

that are not publicly traded provided any such holding, or transaction, or income is of insubstantial value or amount and occurs under terms unrelated to your status in a labor organization. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security shall be considered insubstantial. *See* definition of *publicly traded securities.*

**Special Note:** You must report special discounts, special rates and other special treatment that you or your spouse or your minor child receives from an employer whose employees your labor organization represents or is actively seeking to represent. *See* definitions of *labor organization* and *actively seeking to represent.* A filer who purchases an item at a reduced price generally available to employees of the employer must nevertheless report the discount, and may not claim the exemption, unless the filer is an employee of the employer providing the discount.

**Example 1**

You are an officer of an international union affiliated with a local union that represents employees at an automobile plant. The employer permits you to participate in an executive purchase plan under which management executives are permitted to purchase vehicles produced by the employer at a discount and at a lower interest rate. The transaction must be reported under this subsection.

**Example 2**

You are an employee of a union that represents employees at Acme Warehouse. At your request, Acme allows your neighbor to store his company's inventory at a rate below the customary storage rate. Your neighbor, in turn, shows his gratitude by allowing you to use his luxury box at a sporting event. You must report this arrangement.

**A6** *Payments of Money or Other Thing of Value from Any Employer or Labor Relations Consultant*

You must file Form LM-30 if you or your spouse or your minor child received, directly or indirectly, any payment of money or other thing of value (including reimbursed expenses) from any employer or any labor relations consultant to an employer.

The types of payments that must be reported under this subsection include, but are not limited to, any payment from an employer or a labor relations consultant working for an employer for the following purposes:

- Not to organize employees

*Federal Register* / Vol. 70, No. 166 / Monday, August 29, 2005 / Proposed Rules    **51217**

- To influence employees in any way with respect to their rights to organize
- To take any action with respect to the status of employees or others as members of a labor organization; and
- To take any action with respect to bargaining or dealing with employers whose employees your organization represents or seeks to represent.

**Special Note:**  If you received a payment or other thing of value, including reimbursed expenses, from an employer whose employees your union represents or actively seeks to represent, or a business that consists in substantial part of dealing with such an employer, or a business that has any dealings with your union, the payment should be reported under sections A1 - A5. Section A6 covers payments and other things of value, including reimbursed expenses, from businesses and employers that are not covered by the more specific provisions of sections A1 – A5.  Thus, for example, if a transaction concerns a payment to you from the employer whose employees your labor organization represents or actively seeks to represent, or a business that deals with such an employer or your labor organization, the payment should be reported under the appropriate subsection in sections A1 – A5.

### Exception

You are not required to report:

Payments of the kinds referred to in Labor Management Relations Act (LMRA) section 302(c), summarized below:

(1) any money or other thing of value payable by an employer to
  a) an employee acting openly for the employer in matters of labor relations or personnel administration, or
  b) any officer or employee of a labor organization who also is an employee or former employee of such employer, as compensation for or by reason of, his service as an employee of such employer;
(2) money or other thing of value payable in satisfaction of a judgment, arbitral award, settlement or release of any claim in the absence of fraud or duress;
(3) with respect to the sale or purchase of an item at the prevailing market price in the regular course of business;
(4) with respect to deductions in payment of labor union dues from wages by written assignment;
(5) with respect to money or other thing of value paid to a trust fund established by the representative of an employer's employees for the sole benefit of these

employees, their families and dependents for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance;
(6) with respect to money or other thing of value paid by any employer to a trust fund established by the representative of the employer's employees for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs;
(7) with respect to money or other thing of value paid by any employer to an individual or pooled trust fund for providing scholarships for the benefit of employees, families, and dependents, child care centers, or financial assistance for employee housing;
(8) with respect to money or other thing of value paid by any employer to a trust for defraying the costs of legal services; or
(9) with respect to money or other thing of value paid by any employer to a labor-management committee.

### Example 1
You are a union officer and an attorney. Employers whose employees your labor organization does not represent or actively seek to represent often hire your law firm.  One of those employers gives you a special gift of a three-week all-expense-paid trip to France as a reward for winning a major lawsuit.  You must report the trip and its value under this subsection.

### Example 2
You are a union officer and you receive payments under an ERISA qualified pension plan.  The payments relate to your employment for an employer whose employees your labor organization does not represent or actively seek to represent.  You do not have to report these payments.

### Example 3
You are an officer of a national union.  Your spouse is hired as a senior executive of an employer on the understanding that your union will not seek to organize that employer.  You must report all the income and benefits your spouse receives from the employer under this subsection.

### Example 4
You are a local union president.  An employer outside of the jurisdiction of your local offers your 20-year old daughter a paid summer internship on the understanding that you will seek to have your members go on strike against an employer who is one of their competitors.  You must report all the

benefits your daughter receives as part of the internship under this subsection.

## III. WHEN TO FILE

You must file Form LM-30 within 90 days after the end of your fiscal year. If, however, you were an officer or employee for only a portion of the fiscal year, you may limit this report to that portion of the fiscal year.

## IV. WHERE TO FILE

You must mail the completed Form LM-30 to the following address:

U.S. Department of Labor
Employment Standards Administration
Office of Labor-Management Standards
200 Constitution Avenue, NW, Room N-5616
Washington, DC 20210

## V. PUBLIC DISCLOSURE

Pursuant to the LMRDA, the U.S. Department of Labor is required to make all submitted reports available for public inspection. Union officer and employee reports for the year 2000 and later may be viewed and downloaded from the Office of Labor-Management Standards (OLMS) Web site at http://www.union-reports.dol.gov. Copies of reports can also be ordered at the same Web site. Form LM-30 reports may also be examined at, and copies purchased from, the OLMS Public Disclosure Room at the address listed in Part IV of these instructions.

## VI. OFFICER OR EMPLOYEE RESPONSIBILITIES AND PENALTIES

*The labor organization officer or employee required to file Form LM-30 must sign the completed report and is personally responsible for its filing and accuracy.* Under the LMRDA, this individual is subject to criminal penalties for willful failure to file a required report and/or for false reporting. False reporting includes making any false statement or misrepresentation of a material fact while knowing it to be false, or for knowingly failing to disclose a material fact in a required report or in the information required to be contained in it or in any information required to be submitted with it.

The reporting labor organization officer or employee is also subject to civil prosecution for violations of the filing requirements. Section 210 of the LMRDA (29 U.S.C. 440) provides that "whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil

action for such relief (including injunctions) as may be appropriate."

The officers and employees responsible for filing Form LM-30 are also subject to criminal penalties for false reporting and perjury under Sections 1001 of Title 18, 1746 of Title 28, and 1621 of Title 18 of the United States Code.

You, your spouse, and minor child and any individuals or entities associated with the covered interests and transactions may be required to provide additional information to the Department concerning reported or reportable interests.

## VII. RECORDKEEPING

The labor organization officer or employee required to file Form LM-30 is responsible for maintaining records in the electronic or paper format used by the filer, spouse, or minor child that must provide in sufficient detail the information and data necessary to verify the accuracy and completeness of the report. The records must be retained for at least 5 years after the date the report is filed. Any record necessary to verify, explain, or clarify the report must be retained, including, but not limited to, vouchers, worksheets, receipts, applicable resolutions, and any electronic programs used to complete, read, and print the report and the underlying records.

## VIII. COMPLETING FORM LM-30

*Read the instructions carefully*

*OLMS encourages all filers to complete Form LM-30 electronically. Form LM-30 is available on the OLMS Web site at www.olms.dol.gov. You can complete the form electronically or print a copy and complete it manually.*

**Information Entry.** If you are not completing the report online, entries should be typed or clearly printed in black ink. Do not use a pencil or any other color ink.

**Entering Dollars.** In all items dealing with monetary values, report amounts in dollars only; do not enter cents. Round cents to the nearest dollar. Enter a single "0" in the space for reporting dollars if you have nothing to report.

**Continuation Pages.** If you are completing this report in paper format and there is not enough space to report all the required information and amounts, print and use the continuation pages available online. Copies of these pages may also be obtained from any OLMS office.

Enter the requested identifying information at the top of each continuation page. Totals from any continuation pages must be entered on the line provided in the schedules.

# FORM LM-30 PAGE 1, ITEMS 1-5

1. **LM-30 FILE NUMBER** — Enter the five-digit file number that OLMS assigned you if you have previously filed Form LM-30. If you have never previously filed Form LM-30, leave Item 1 blank. OLMS will notify you of your assigned file number, which should be used on all future reports.

2. **PERIOD COVERED** — Enter the beginning and ending dates of the fiscal year covered by this report. Normally these dates will be identical to the dates for which you file Federal income tax returns. Your report should never cover more than a 12-month period. For example, if your 12-month fiscal year begins on January 1 and ends on December 31, do not enter a date beyond the 12-month period, such as January 1 to January 1; this is an invalid date entry. Where an officer or employee designates a new fiscal year before the end of the previously defined fiscal year, the officer or employee must file reports both for the partial year, and for the one-year period beginning on the date of the change in the fiscal year.

3. **CONTACT INFORMATION OF REPORTING PERSON** — Enter the following contact information:
   **A – C.** Your full name (first, middle, last name).
   **D – H.** Your complete address where mail should be sent including any building and room number.
   **I.** Your e-mail address. If you do not have an e-mail address, enter "none" in the space provided.

4. **LABOR ORGANIZATION IDENTIFYING INFORMATION** —
   **A — D.** Enter the full name of your labor organization including local number, if any. Enter the complete business address of the labor organization where mail should be sent including any building and room number.
   **E.** Enter your labor organization's OLMS file number. If you cannot obtain the file number, go to http://www.union-reports.dol.gov or contact the nearest OLMS field office listed at the end of these instructions.
   **F.** Specify your status in the labor organization by checking the appropriate box indicating whether you are an officer or an employee.
   **G.** State your official or professional title with the labor organization. Official titles include, but are not limited to, president, vice-president, secretary, treasurer. Professional titles include, but are not limited to, business agent, bookkeeper, office secretary, shop steward, etc.
   **H.** Check "Yes" if you were an officer or employee of the labor organization at the end of the reporting period. Check "No" if you were no longer an officer or employee.

5. **SIGNATURE** — Sign and date the completed Form LM-30. Enter the telephone number you use to conduct official business. You do not have to report a private unlisted telephone number.

# GENERAL INSTRUCTIONS FOR PAYER INFORMATION

## PAYER SUMMARY SCHEDULE

BEFORE COMPLETING THIS SUMMARY SCHEDULE, COMPLETE A PAYER DETAIL PAGE FOR EACH PAYER FROM WHICH YOU OR YOUR SPOUSE OR YOUR MINOR CHILD RECEIVED A REPORTABLE PAYMENT OR LOAN, ENGAGED IN A REPORTABLE TRANSACTION OR ARRANGEMENT, OR IN WHICH A REPORTABLE INTEREST IS HELD.

**A. Name** — Enter the legal name of each Payer as it appears in Schedule 1, Item A on the Payer Detail Page. If you are completing this report in paper format and you need additional space to complete this item, enter the additional information on the Payer Summary Schedule Continuation Page.

**B. Value** — Enter the total amount received directly or indirectly from the Payer, or the value of the interest held in the Payer, during the fiscal year. This is the total from Schedule 3, Column E of the Payer Detail Page for this Payer.

## PAYER DETAIL PAGE

You must complete a Payer Detail Page for each Payer from whom you received a reportable payment, loan, or interest, or in which you held a reportable interest, or with whom you engaged in a reportable transaction or arrangement, as described in Part II of these instructions. At the top of each Payer Detail Page enter your file number, the number of the Payer, which should correspond with its listing in the Payer Summary Schedule, and the total number of Payers. The form does not require the reporting of any personally identifiable information relating to you, your spouse, or minor child, except as explicitly noted. Do not include information such as social security or loan numbers.

## Schedule 1
*Payer Identifying Information*

**A. Legal Name of Payer.** Enter the legal name of the Payer including any alias, trade name, or "Doing Business As" designation, if applicable.

**B-D. Contact Name.** Enter the full name (first, middle, last name) of the contact person at the Payer to whom mail should be sent.

**E.-H. Mailing Address.** Enter the complete address where mail should be sent including any building and room number.

**I. Telephone Number.** Enter the telephone number of the contact person at the Payer, including the area code.

**J. Web site Address.** Enter the web site address of the Payer. If the Payer does not have a web site, enter "none."

**K. State of Incorporation/Registration.** Enter the state where the Payer is incorporated or the state where the Payer's registered agent is located.

**L. State Business ID Number.** Enter the business ID number of the Payer.

**M. Association with Payer at End of Reporting Period.** Indicate whether a continuing business or financial relationship existed between you (or your spouse or your minor child) and the Payer at the end of the reporting period. For example, if the Payer is a business in which you had an interest at the end of the reporting period, check "yes." If, for example, the Payer was an employer with whom you have no further relationship, check "no."

## Schedule 2

*Filer's Interests In, Payments or Loans From, or Transactions or Arrangements with the Payer*

**A. Date.** Enter the date each payment, or loan was received, or each transaction was completed. If the reportable event is an arrangement, enter the date the arrangement was made. The date of interests or other holdings should be the date of receipt of the interest.

**B. Officer or Employee, Spouse, or Minor Child.** State whether the payment, loan, transaction, arrangement or interest was paid to, engaged in, or held by, the "O" (officer), "E" (employee), "S" (spouse) or "C" (minor child).

**C. Subsection(s).** *Before* completing this Column, carefully read sections $\boxed{\text{A1}}$ through $\boxed{\text{A6}}$, the exceptions, and the related examples in Part II of these instructions. (*See also, LMRDA Section 202 (a)(1)-(a)(6) [29 USC 432(a)(1)-(a)(6)]).* In this Column, enter the section, $\boxed{\text{A1}}$, $\boxed{\text{A2}}$, $\boxed{\text{A3}}$, $\boxed{\text{A4}}$, $\boxed{\text{A5}}$ or $\boxed{\text{A6}}$, under which the payment, loan, or interest is reported. For example, if you are reporting a $500 payment your minor child received for entertaining at an employee picnic for a company whose employees your union represents, you would mark "$\boxed{\text{A1}}$" in this Column. Generally only one section should be listed; however, if you received income or other benefits from a business that dealt both with an employer whose employees your union represents and with your union itself, you would enter both "$\boxed{\text{A3}}$" and "$\boxed{\text{A4}}$."

**D. Description of Interest, Payment, Loan, Transaction or Arrangement.** Give a detailed description of the interest, payment, loan, transaction, or arrangement.

*Interest.* For each interest held, identify the nature of the interest (*e.g.,* common stock, preferred stock, bonds, options, etc.) Give the total number of shares or other units held during the fiscal year. State the total cost of the acquired interest, and the manner by which you (or your spouse or your minor child) acquired the interest (*i.e.,* employee stock purchase plan, purchase on an over-the-counter market, gift, etc.) If the interest was disposed of during the fiscal year, describe the manner by which you (or your spouse or minor child) disposed of the interest (*e.g.,* sale on market, gift, exchange, etc.)

*Payment or Income.* Identify the nature of the payment, income, or benefit of monetary value (*e.g.,* continuing use of an automobile for personal purposes, gift of a computer, payments for services not excluded above).

*Loan.* Identify the terms and conditions of the loan. Include the dollar value of the remaining obligation, if any as of the end of the fiscal year (*e.g.,* unpaid balance of a loan, rentals due under the lease, amount due under a contract, etc.)

*Transaction* Identify the nature of the transaction, the property involved (e.g. stock, bonds, rental of property located at X address), the terms and conditions of the transaction (e.g. discount purchase of goods, sale and lease back one year, etc), and names and addresses of intermediate parties involved in any indirect transactions.

*Arrangement* Identify the nature of the arrangement and provide sufficient detail to identify the date, persons involved, and information as to conditions, if any, of the arrangement and the anticipated date on which the benefit will be obtained.

**E. Value.** This section should be completed as indicated in Schedule 2, Part D.

## Schedule 3
*Payer's Dealings with Union(s), Trust(s), or Employer(s)*

Only filers who entered section $\boxed{\text{A3}}$ or $\boxed{\text{A4}}$, in Schedule 2, Column C, are required to complete Schedule 3.

**A. Name of Union, Trust, or Employer.** If the Payer has engaged in buying from, selling or leasing to, or otherwise dealing with your union, with a trust in which your union is interested, or with an employer whose employees your union represents or is actively seeking to represent, enter the legal name of each such union, trust, or employer.

**B. Union, Trust, or Employer.** Indicate whether the entity listed in Item A is a union ("U"), trust ("T"), or employer ("E").

**C. File Number or Address.** If the union, trust, or employer has filed reports with OLMS, enter its file number, if known. If you do not have a file number for the union, trust, or employer, enter its complete address in the Additional Information Schedule.

**D. Description of Dealings.** Describe in detail the nature of the purchases, sales, leases, or other dealings between the Payer and the union, trust, or employer whose employees your union represents or actively seeks to represent. For example, if the Payer and Union A arranged a payroll service in the amount of $45,000 for union members, you might describe the dealing as follows: "One payment for payroll services for Union A members." Unclear and nonspecific descriptions will result in a deficient report. If you need additional space to describe the business dealings, use the continuation pages.

**E. Value.** Enter the exact value of the purchase, sale, lease, or other dealings between the business and the union, trust, or employer whose employees the union represents or is actively seeking to represent, if known or easily obtainable by the filer, spouse, or minor child; otherwise, enter a good faith estimate of the fair market value and explain the basis for the estimate in the space provided. The fair market value may be determined by:

- The purchase price
- Recent appraisal
- Assessed value for tax purposes, adjusted to reflect market value if the assessed value is computed at less than 100% of that market value
- The year end book value of non-publicly traded stock, the year-end exchange rate of corporate stock, or the face value of corporate bonds or comparable securities
- The net worth of a business partnership or business venture
- The equity value of an individually-owned business or any other recognized indication of value (such as the sale price on the stock exchange at the time of the report or, for transactions, the sale price on the stock exchange at the time of the sale.

If the value is not known and cannot be estimated, enter N/A and explain the situation on the Additional Information Schedule. Enter the total from any continuation pages in the space provided and then total Column E.

## Additional Information Schedule

**A. Schedule/Item.** Enter the schedule or item to which the additional information applies.

**B. Additional Information.** Enter the additional information for each schedule and item listed in Column A.

# SELECTED SECTIONS AND DEFINITIONS FROM THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA) AND THE LABOR MANAGEMENT RELATIONS ACT, 1947, AS AMENDED    (LMRA)

### LMRDA § 3 [29 U.S.C. §402]. Definitions

For the purposes of titles I, II, III, IV, V (except section 505), and VI of this Act-

(a) "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

(b) "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

(c) "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, as amended, or the Railway Labor Act, as amended.

(d) "Person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Code, or receivers.

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) "Employee" means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act.

(g) "Labor dispute" includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(h) "Trusteeship" means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws.

(i) "Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it -

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body.

(k) "Secret ballot" means the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.

(l) "Trust in which a labor organization is interested" means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or

more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

(m) "Labor relations consultant" means any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities.

(n) "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.[ ...]

## LMRDA § 202 [29 U.S.C. §432].  Report of Officers and Employees of Labor Organizations

### (a) Filing; contents of report

Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

(1) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;
(2) any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;
(3) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;
(4) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;
(5) any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of

business at prices generally available to any employee of such employer; and
(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in Section 186(c) of this title.

### (b) Report of certain bona fide investments

The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) of this section shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934 [15 U.S.C. §78a et seq.], in shares in an investment company registered under the Investment Company Act of 1940 [15 U.S.C. 80a-1et seq.], or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935 [15 U.S.C.A. §79 et seq.], or to report any income derived therefrom.

### (c) Exemption from filing requirement

Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) of this section unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

## LMRA §302(c) [29 USCS § 186(c)].  Exceptions.

The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital

care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (7) with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, (B) child care centers for preschool and school age dependents of employees, or (C) financial assistance for employee housing: Provided, That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: Provided further, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (8) with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their families, and dependents for counsel or plan of their choice: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: Provided further, That no such legal services shall be furnished: (A) to initiate any proceedings directed (i) against any such employer or its officers or agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under the National Labor Relations Act, as amended [29 USCS §§ 151-158, 159-169], or this Act; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor-Management Reporting and Disclosure Act of 1959; or (9) with respect to money or other things of value paid by an employer to a plant, area or industrywide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978. )

## LMRA § 501 [29 U.S.C. 501]. Fiduciary responsibility of officers of labor organizations

### (a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

### (b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

### (c) Embezzlement of assets; penalty

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

### *If You Need Assistance*

The Office of Labor-Management Standards has field offices located in the following cities to assist you if you have any questions concerning LMRDA reporting requirements.

| | | |
|---|---|---|
| Atlanta, GA | Guaynabo, PR | New Orleans, LA |
| Birmingham, AL | Honolulu, HI | New York, NY |
| Boston, MA | Houston, TX | Newark (Iselin), NJ |
| Buffalo, NY | Kansas City, MO | Philadelphia, PA |
| Chicago, IL | Las Vegas, NV | Pittsburgh, PA |
| Cincinnati, OH | Los Angeles, CA | St. Louis, MO |
| Cleveland, OH | Miami (Ft. Lauderdale), FL | San Francisco, CA |
| Dallas, TX | Milwaukee, WI | Seattle, WA |
| Denver, CO | Minneapolis, MN | Tampa, FL |
| Detroit, MI | Nashville, TN | Washington, DC |
| Grand Rapids, MI | New Haven, CT | |

Consult local telephone directory listings under United States Government, Labor Department, Office of Labor- Management Standards, for the address and telephone number of the nearest field office. Copies of labor organization annual financial reports, employer reports, labor relations consultant reports, and union officer and employee reports filed for the year 2000 and after can be viewed and printed at http://www.union-reports.dol.gov.

Copies of reports for the year 1999 and earlier can be ordered through the web site. Information about OLMS, including key personnel and telephone numbers, compliance assistance materials, the text of the LMRDA, and related Federal Register and Code of Federal Regulations (CFR) documents, is also available on the Internet at: http://www.olms.dol.gov.

For questions on Form LM-30 and/or the instructions, call the Department of Labor's toll-free number at: 1-866-4-USA-DOL (1-866-487-2365) or e-mail olms-public@dol.gov.

If you would like to receive via email periodic updates from the Office of Labor-Management Standards, including information about the LM forms, enforcement results, and compliance assistance programs, you may subscribe to the OLMS Mailing List from the OLMS web site: http://www.olms.dol.gov.

[FR Doc. 05–16907 Filed 8–24–05; 8:45 am]

**BILLING CODE 4510–CP–C**

# Exhibit 5



# U.S. Department of Labor

**Employment Standards
Administration
Office of Labor-Management Standards**

*www.dol.gov/esa*

Search / A-Z Index

Find It!: By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By
Location

**March 17, 2008**    DOL Home > ESA > OLMS > Revised LM-30 Page > Revised LM-30 FAQs

# Revised Form LM-30 - Labor Organization Officer and Employee Report

# Frequently Asked Questions

Note: The information in these Frequently Asked Questions (FAQs) applies to the revised
Form LM-30 which must be filed by a labor organization officer or employee for reports
covering any of his or her fiscal years that began on or after August 16, 2007. The
current Form LM-30 may be filed for reports covering any fiscal year beginning before
that date. For information concerning the reporting requirements for the current Form
LM-30 send a message to olms-public@dol.gov, call the DOL Help Line at 1-866-487-
2365, or contact the nearest OLMS field office, which can be located at
http://www.dol.gov/esa/contacts/olms/lmskeyp.htm.

---

## A. Introduction

## Q1. Who must file Form LM-30?

A. As described in more detail in the Form LM-30 instructions and throughout these
FAQs, Labor Organization Officer and Employee Report Form LM-30 must be filed by any
person who meets the following conditions during the fiscal year:

   (1) Is an officer or employee of a labor organization (other than an employee
   performing exclusively clerical or custodial services) as defined by the Labor-
   Management Reporting and Disclosure Act (LMRDA), and
   (2) The official or the official's spouse or minor child, directly or indirectly, held any
   legal or equitable interest in, received any payments or benefits with monetary value
   from, or engaged in any transactions or arrangements (including loans) with:
   a) employers whose employees the official's labor organization represents or actively
   seeks to represent, or
   b) certain other categories of employers as described in FAQ 45 through FAQ 56
   below, or
   c) businesses that make sales to, or otherwise have dealings with, the official's labor

organizations with a trust in which the labor organization is interested, or with an employer whose employees the labor organization represents or is actively seeking to represent as discussed below in FAQ 32.

## Q2. Does a labor organization officer or employee have to report payments received by, interests held by, or transactions and arrangements involving, the official's spouse or minor child?

A2. Yes, a labor organization officer or employee must report payments received by, interests held by, and transactions and arrangements involving, the official's spouse or minor child. "Minor child" means a son, daughter, stepson, or stepdaughter less than 21 years of age. Payments received by, interests held by, and transactions and arrangements involving, a minor child must be reported until the child turns 21. If the child reaches the age of 21 during the fiscal year, matters must be reported for that portion of the fiscal year before the child's 21st birthday. If a labor organization officer or employee is divorced during the fiscal year, interests and transactions for the spouse must be reported for that portion of the fiscal year prior to the divorce.

## Q3. Must a labor organization officer or employee report payments that otherwise are required to be reported on a Form LM-30 but which are subsequently repaid by the recipient within the same fiscal year?

A3. No. Labor organization officers and employees need not report gifts that are rejected and returned and payments that are repaid. The same rule applies to hospitality items, such as meals, beverages, vacations, etc. The items are not reportable if reimbursement, as described below, is made. The recipient must reimburse the employer, business, or labor relations consultant for the gift, payment, or hospitality in the same fiscal year in which it was received. If the payment is made near the end of the fiscal year, reimbursement may be made in the next fiscal year, so long is it is done promptly. Where timely reimbursement is not made, the payment must be reported, although the filer may note that reimbursement was made.

Cash payments not promptly reimbursed must include interest on the payments, or the forgone interest will be reportable as a gift. Similarly, a gift of a car or a boat, for example, must be returned with compensation for its use at the fair market rate; any diminution in value or the forgone compensation must be reported as a gift.

In particular cases concerning serious conflicts of interest or attempts by labor organization officials to circumvent or evade the filing requirements, the Department may, by specific request, require reports of payments and gifts, etc., despite return or reimbursement. For example, a series of numerous, high-value payments made by an employer to a labor organization official must be reported on the Form LM-30 (by the labor organization officer or employee) even where each payment is promptly reimbursed, to avoid the nondisclosure of the substantial value that is conferred on an individual who has even short-term use of very large amounts of money.

## B. Who is an Officer or Employee of a Labor Organization?

## Q4. How is "labor organization officer" defined for purposes of Form LM-30?

A4. A labor organization officer is (1) a person identified as an officer by the constitution and bylaws of the labor organization; (2) any person authorized to perform the functions of president, vice president, secretary, or treasurer; (3) any person who in fact has executive or policy-making authority or responsibility; and (4) a member of a group identified as an executive board or a body which is vested with functions normally performed by an executive board.

**Q5. Does the Department consider a trustee appointed by a national or international labor organization to administer a local labor organization in trusteeship to be an officer or an employee of the local?**

A5. Generally being a trustee of a labor organization in trusteeship does not make one an officer of the labor organization. However, depending on the circumstances, such a trustee may be an employee of the local and therefore subject to the Form LM-30 reporting requirements. Further, again depending on the circumstances, the trustee may be an officer and/or employee of another labor organization and on that basis also would be subject to the Form LM-30 reporting requirements.

**Q6. How is a "labor organization employee" defined for purposes of Form LM-30?**

A6. Labor organization employee means any individual (other than an individual performing exclusively clerical or custodial services) employed by a labor organization within the meaning of any law of the United States relating to the employment of employees.

**Q7. What are clerical and custodial services?**

A7. If individuals employed by a labor organization are performing exclusively clerical or custodial services, they do not have to file Form LM-30. Clerical services are those involving typing, filing, bookkeeping, data entry, note-taking, or similar duties lacking decision-making authority. Custodial services are those associated with janitorial or routine maintenance tasks.

**Q8. Our local's secretary maintains the membership list, types, files, and answers phones, but also collects cash dues, prints checks when authorized and approved by certain officers, and enters data into the local's computerized financial system. Because she handles money, she is bonded. Is she an "employee" for purposes of filing a Form LM-30?**

A8. The secretary in question is a clerical employee for purposes of Section 202 of the LMRDA and is therefore not required to file a Form LM-30. Maintaining the membership list, typing, filing, data entry, and answering phones are within the applicable definitions of "clerical." While the remaining two duties of printing checks and collecting dues involve handling labor organization funds, as presented, they are clerical in nature and they do not evidence decision-making authority or discretion with labor organization finances, as the secretary may only issue checks when authorized by appropriate labor organization officials. The collection of dues is similarly the ordinary work of a clerk.

In determining whether the secretary is performing exclusively clerical duties for the purpose of filing a Form LM-30, it is irrelevant whether the secretary is bonded. It is longstanding OLMS policy that clerical employees collecting dues must be bonded with respect to that portion of the dues paid in cash.

## Q9. Is an individual hired by a labor organization as an independent contractor a labor organization employee?

A9. No. Form LM-30 only applies to labor organization employees; it does not apply to independent contractors. If needed, the Department will provide guidance to assist individuals unsure of their status as employees or independent contractors.

## Q10. When determining whether an individual is an employee or an independent contractor does the Department use the same rules that the IRS uses to make this determination?

A10. The Department uses similar rules to those of the IRS, the National Labor Relations Board, and the courts for distinguishing between employees and independent contractors. The Department will look at the facts in each case to determine the proper classification.

## Q11. I am a part-time steward. I punch out to perform labor organization business. I am reimbursed by the local for my lost pay. Am I considered an employee of the labor organization and, if so, am I required to report these payments?

A11. While performing work on the local's behalf, a steward who is paid lost time serves as an employee of the local. Because the local labor organization is making the payments, there is no Form LM-30 reporting obligation for the lost-time pay. If a steward is paid by the employer for this time, however, the steward may have to report the payments. See FAQ 40 through 43 for information on reporting obligations for stewards who receive no-docking or union leave payments.

## Q12. Are federal sector labor organization officers and employees covered by the Form LM-30 reporting provisions?

A12. No, officers and employees of labor organizations representing solely federal employees are not covered by Form LM-30 reporting requirements.

## *C. Reportable payments, interests, holdings, etc.*

## Q13. How does the Department define "benefit with monetary value?"

A13. "Benefit with monetary value" means anything of value, tangible or intangible. It includes any interest in personal or real property, gift, insurance, retirement, pension, license, copyright, forbearance, bequest or other form of inheritance, office, options, agreement for employment or property, or property of any kind.

## Q14. What is a "bona fide investment"?

A14. A "bona fide investment" means personal assets of an individual held to generate profit that were not acquired by improper means or as a gift from any of the following: (1) an employer, (2) a business that deals with the filer's labor organization or a trust in which the filer's labor organization is interested, (3) a business a substantial part of which consists of dealing with an employer whose employees the filer's labor organization represents or is actively seeking to represent, or (4) a labor relations consultant to an employer. (see FAQ 47 for a definition of a trust in which a labor organization is interested/section 3(l) trust; see also FAQ 26 for information regarding reporting exceptions for bona fide investments).

## Q15. What is the Department's definition of "directly or indirectly?"

A15. Directly or indirectly refers to any course, avenue, or method. Directly encompasses holdings and transactions in which the labor organization officer or employee, spouse, or minor child receives a payment or other benefit without the intervention or involvement of another party. Indirectly includes any payment or benefit which is intended for the labor organization officer or employee, spouse, or minor child or on whose behalf a transaction or arrangement is undertaken, even though the interest is held by a third party, or was received through a third party.

## Q16. I am employed by XYZ Widgets and also serve as the president of the local labor organization representing XYZ Widgets employees. During a recent conversation with the XYZ Widgets human resources manager, I mentioned that I am placing my 15 year-old daughter in a private school. Shortly thereafter, XYZ Widget Company sent me a check for $1,000 with a note saying "Good luck with the new school!" Must I report the check?

A16. Yes. A labor organization officer who directly receives a gift, which is not a payment received as a bona fide employee, from an employer whose employees the officer's labor organization represents or is actively seeking to represent, must report the payment.

## Q17. Same facts as above. What if I do not receive the check, but instead, my daughter receives a scholarship from the school made possible by a donation by the XYZ Widget Company earmarked for her?

A17. The scholarship must be reported as it is an indirect benefit with monetary value. Labor organization officers and employees must disclose any benefits received by them (or their spouse or minor child) from a third party where the third party is acting on behalf, or at the behest, of an employer or business that would have to report the benefit if they provided it directly to them (or their spouse or minor child).

## Q18. What if my employer makes regular contributions to a local college for scholarships for all employees' children who attend the school and my 18 year-old child receives one of these scholarships? If I am a labor organization official, must I still report my child's scholarship?

A18. The scholarship would not be reportable if it was a benefit received as a bona fide employee. If the scholarship was available only to the children of labor organization officers, it would not be received as a bona fide employee, but would rather be an

## Q19. What is the scope of "income"?

A19. Income means all income from whatever source derived, including, but not limited to, compensation for services, fees, commissions, wages, salaries, interest, rents, royalties, copyrights, licenses, dividends, annuities, honorarium, income and interest from insurance and endowment contracts, capital gains, discharge of indebtedness, share of partnership income, bequests or other forms of inheritance, and gifts, prizes or awards.

## Q20. What is a "legal or equitable interest?"

A20. "Legal or equitable interest" means any property or benefit, tangible or intangible, which has an actual or potential monetary value for the filer, spouse, or minor child without regard to whether the filer, spouse, or minor child holds possession or title to the interest. For example, if a labor organization officer and spouse jointly own an accounting business that provides tax services to a number of clients, including the officer's labor organization or an employer whose employees the labor organization represents or is actively seeking to represent, the officer holds a legal interest in the company providing the services. Similarly, if a labor organization officer forms a tax preparation business with two partners and puts his or her share of the business in their spouse's name and the business prepares tax returns and LM reports for the officer's labor organization, the officer holds an equitable interest in a business that deals with his or her labor organization.

## Q21. I am the treasurer of Local 227, and I am a candidate in the race for county treasurer. I have received campaign contributions from my employer, an employer with which Local 227 has a collective bargaining agreement. The contributions were made payable to me but earmarked for use in my campaign. Am I required to report these contributions?

A21. Yes. Political contributions to a labor organization officer or employee are payments of the type required to be reported on Form LM-30 if they are received from an employer or business that meets any of the conditions set forth in Item 6 or Item 7 of Form LM-30.

## Q22. Must I report political contributions from an employer whose employees my labor organization represents that are made to my campaign fund for county treasurer rather than directly to me?

A22. Yes. Such a contribution to a labor organization officer's or employee's campaign fund is an indirect payment to the official and must be reported if it is received from an employer or business that meets any of the conditions set forth in Item 6 or Item 7 of Form LM-30.

## Q23. The employer whose employees my labor organization represents contributes to a PAC that was established by my political party to support candidates campaigning for local office. As a local candidate, I have received

**monies from this fund. Must I report monies received from my party's PAC?**

A23. No. Where PACs established by political parties support multiple candidates and contributions to them cannot be earmarked for the support of a particular candidate, contributions received from such PAC funds are not required to be reported on Form LM-30.

### D. Reporting Exceptions in General/Scope of Labor Organization

### Q24. Is there a de minimis exception where I don't have to report payments under a certain amount?

A24. Yes. While the LMRDA does not include a de minimis level, the Department has historically not required reports of payments or gifts of insubstantial value. For purposes of Form LM-30, labor organization officers and employees do not have to report any payments or gifts totaling $250 or less from any one source. Payments or gifts valued at $20 or less do not need to be included in determining whether the $250 threshold has been met. For example, if a labor organization officer or employee receives from an employer two gifts worth $20 each and two restaurant meals worth $150 each, the official need only keep records of the restaurant meals, and report the receipt of this $300 value. However, a series of payments or gifts designed to circumvent the $20 threshold must be reported.

### Q25. I am an officer of a labor organization and was appointed a trustee of a pension plan. I attended a reception sponsored by a service provider at a convention of representatives of union and non-union plans. The reception was open to all convention attendees. Must I report the value of the reception?

A25. Labor organization officers and employees do not have to include the benefits, such as food and entertainment, received while in attendance at one or two widely-attended receptions, meetings, or gatherings in a single fiscal year for which an employer or business has spent $125 or less per attendee per gathering. Also, the value of those gatherings does not have to be included in determining whether the $250 threshold has been met. However, if an officer or employee attends three or more such widely-attended gatherings provided by an employer or business, the value of all such events must be counted. Also, if the benefit received for a single gathering exceeds $125, the officer or employee must include the value of the gathering in determining whether the $250 threshold has been met.

A gathering is widely attended if a large number of persons are in attendance and the attendees include labor organization officers and employees and a substantial number of individuals with no relationship to a labor organization or a section 3(l) trust of the union (see FAQ 47 for a definition of a trust in which a labor organization is interested/section 3(l) trust). For a gathering to qualify as widely attended, those with a relationship to a labor organization must be treated the same as others when the employer or business advertises or distributes invitations for the event and must be treated alike at the event.

### Q26. Are there any other general reporting exceptions?

A26. Yes, there are two other general reporting exceptions that relate to bona fide investments and apply to most but not all of the Form LM-30 reporting requirements. (See the definition of "bona fide investment" at FAQ 14). First, under certain circumstances, labor organization officers and employees are not required to report holdings of, transactions in, or income from, bona fide investments in (1) securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934 (including the American Stock Exchange, Boston Stock Exchange, Chicago Board Options Exchange, Chicago Stock Exchange, International Securities Exchange, NASDAQ, National Stock Exchange, New York Stock Exchange, Pacific Exchange, and Philadelphia Stock Exchange); (2) shares in an investment company registered under the Investment Company Act of 1940, or (3) securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935.

Second, holdings of, transactions in, or income from, bona fide investments in securities other than those described above that are of insubstantial value or amount and occur under terms unrelated to a person's status in a labor organization are not required to be reported. Holdings or transactions involving $1,000 or less and receipt of income of $100 or less in any one security are considered to be insubstantial.

**Q27. For the purposes of Form LM-30 reporting, what is the scope of "labor organization" in reference to an officer or employee of a labor organization?**

A27. Labor organization means the local, intermediate, or national or international labor organization that employed the official, or in which the official held office, during the reporting period, and, in the case of a national or international labor organization officer or an intermediate labor organization officer, any subordinate labor organization of the officer's labor organization. Item 6 of Form LM-30 identifies the relationships between employers and "your labor organization" or "your union" that trigger a reporting requirement. Item 7 of the Form LM-30 identifies the direct and indirect relationships between a business (such as a goods vendor or a service provider) and "your labor organization" that trigger a reporting requirement. The terms "your labor organization" and "your union" mean:

- a. For officers and employees of a local labor organization
  The local labor organization.
- b. For officers of an international or national labor organization
  The national or international labor organization and all of its affiliated intermediate bodies and all of its affiliated local labor organizations

But note: A national or international union officer does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouse or minor child as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

- c. For employees of a national or international labor organization
  The national or international labor organization.

▪ d. For officers of intermediate bodies
   The intermediate body and all of its affiliated local labor organizations.

But note: An officer of an intermediate body does not have to report payments from or interests in businesses that deal with employers represented by, or actively being organized by, any lower level of the officer's labor organization. Such officers are also not required to report payments and other financial benefits received by their spouses or minor children as bona fide employees of a business or employer involved with a lower level of the officer's labor organization.

▪ e. For employees of an intermediate body
   The intermediate body.

## E. Reportable Relationships with Employers

## Q28. How is "employer" defined by the LMRDA?

A28. The LMRDA defines an "employer" as any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

## Q29. Must I report payments from every employer?

A29. No. Generally, a labor organization officer or employee must only report payments from the following employers or labor relations consultants to such employers:

▪ An employer whose employees the official's labor organization represents or is actively seeking to represent; or
▪ An employer in competition with an employer whose employees the official's labor organization represents or is actively seeking to represent; or
▪ An employer that is a trust in which the official's labor organization is interested as defined in section 3(l) of the LMRDA (see FAQ 47); or
▪ An employer that is a non-profit organization that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations or contributions from the official's labor organization; or
▪ An employer that is a labor organization that (1) has employees the official's labor organization represents or is actively seeking to represent, (2) has employees in the same occupation as those represented by the official's labor organization; (3) claims jurisdiction over work that is also claimed by the official's labor organization; (4) is a party to or will be affected by any proceeding in which the official has voting authority or other ability to influence the outcome of the proceeding; or (5) has made a payment to the official for the purpose of influencing the outcome of an internal union

- An employer that has made a payment to the official for any of the following purposes: (1) not to organize employees; (2) to influence employees in any way with respect to their rights to organize; (3) to take any action with respect to the status of employees or others as members of a labor organization; (4) to take any action with respect to bargaining or dealing with employers whose employees the official's labor organization represents or is actively seeking to represent; or (5) to influence the outcome of an internal union election; or
- An employer whose interests are in actual or potential conflict with the interests of the official's labor organization or the official's duties to the labor organization.

## *An employer whose employees the official's labor organization represents or is actively seeking to represent*

**Q30. What types of payments, interests, transactions and arrangements from an employer whose employees my labor organization represents or is actively seeking to represent must I report?**

A30. A labor organization officer or employee must complete Form LM-30 if the official or the official's spouse or minor child, directly or indirectly:

- Held a stock, bond, security, or other interest, legal or equitable, in such an employer; or
- Derived any income or any other benefit with monetary value (including reimbursed expenses) from such an employer; or
- Received a loan from, or made a loan to, such an employer; or
- Engaged in any other business transaction or arrangement with such an employer that was not a purchase or sale of goods or services in the regular course of business at prices generally available to any employee of the employer.

See the instructions for revised Form LM-30 for examples of these payments, interests, transactions and arrangements.

**Q31. Must I report wages I receive as an employee of the employer with which my labor organization has a collective bargaining agreement?**

A31. No. Payments and benefits received as a bona fide employee of the employer for past or present services are not reportable. A payment received as a bona fide employee includes wages and employment fringe benefits, as well as compensation for work previously performed, such as payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law.

**Q32. What constitutes Actively Seeking to Represent?**

A32. Actively seeking to represent means that a labor organization has taken steps during the labor organization officer's or employee's fiscal year to become the bargaining

representative of the employees of an employer, including but not limited to:

- Sending organizers to an employer's facility;
- Placing an individual in a position as an employee of an employer that is the subject of an organizing drive and paying that individual subsidies to assist in the labor organization's organizing activities;
- Handing out leaflets;
- Circulating a petition for representation among employees;
- Soliciting employees to sign membership cards;
- Demanding recognition or bargaining rights or obtaining or requesting an employer to enter into a neutrality agreement (whereby the employer agrees not to take a position for or against union representation of its employees), or otherwise committing labor or financial resources to seek representation of employees working for the employer.

Note: Where an officer's or employee's labor organization has taken any of the foregoing steps, the official is required to report a payment or interest received, or transaction conducted, during that reporting period.

**Q33. Our labor organization is picketing a clothing retailer solely for the purpose of alerting the public that the retailer is selling goods that are made by children working in oppressive conditions in violation of accepted international standards. Does the Department consider this kind of picketing to mean that our labor organization is "actively seeking to represent" the clothing retailer?**

A33. Based on the information presented, no. Leafleting or picketing that is wholly without the object of organizing the employees of a targeted employer, such as purely "informational" or "area standards" picketing, will not alone trigger a reporting obligation.

**Q34. A labor organization has sent a "salt" (an individual who obtains employment with a non-unionized employer with the objective of organizing the workforce) to an employer. Are the wages paid by the employer to the "salt" reportable?**

A34. No. The "salt" would not be required to report his or her bona fide wages.

**Q35. I am a labor organization officer and run a cleaning business on the side. I just found out that my labor organization has "salted" one of the employers I have a cleaning contract with. This contract accounts for roughly half of my business. Now that my labor organization is seeking to represent this employer, I am probably required to report the contract; however, filing this information would disclose the organizing efforts. Am I still obligated to file a report?**

A35. Yes. The Department recognizes that some organizing activities are initiated without notice to the public or an employer, but there would appear to be few, if any, situations, where the disclosure of a reported interest on the Form LM-30 would be the first open acknowledgment of the labor organization's active efforts to represent employees. Form LM-30 must be filed 90 days after the end of the fiscal year during which the payment occurred, so the employer would likely be aware of the organizing

**Q36. What situations constitute an arrangement?**

A36. Arrangement means any agreement or understanding, tacit or express, or any plan or undertaking, commercial or personal, by which the filer, spouse, or minor child will obtain a benefit, directly or indirectly, with an actual or potential monetary value. The term "arrangement" is very broad and covers both personal and business transactions, including an unwritten understanding. For example, if during the reporting period an employer's representative offered a union officer a job with the employer, the officer must report the offer unless he or she rejected it. A standing job offer must be reported because it carries the potential of monetary value to the filer.

**Q37. What exceptions exist for reporting payments, interests, transactions and arrangements with employers whose employees my labor organization represents or is actively seeking to represent?**

A37. There are four exceptions for reporting payments, interests, transactions and arrangements with employers whose employees a labor organization officer's or employee's labor organization represents or is actively seeking to represent: (1) The bona fide investment in registered securities exception (see FAQ 26); (2) the $1,000 threshold for non-registered securities (see FAQ 26); (3) the de minimis threshold/widely-attended gathering exception (see FAQ 24 and 25); and (4) payments and other benefits received as a bona fide employee of such employer (see FAQ 31).

**Q38. What is a bona fide employee?**

A38. A bona fide employee is an individual who performs work for, and subject to the control of, the employer.

**Q39. Does the bona fide employee exception apply to all payments, interests, transactions and arrangements with employers whose employees my labor organization represents or is actively seeking to represent?**

A39. No. This exception does not apply to loans or to transactions involving interests in such employers. For example, if the employer has a program in which bona fide employees may sell their stock in the company, this exception would not apply.

**Q40. How does the bona fide employee exception apply to payments received as a result of a "union leave" or "no-docking" arrangement with the employer?**

A40. Compensation received under a "union-leave," or "no-docking" policy is not received as a bona fide employee of the employer making the payment. Under a union-leave policy, the employer continues the pay and benefits of an individual who works full time for a union. Under a no-docking policy, the employer permits individuals to devote portions of their workday or workweek to union business, such as processing grievances, with no loss of pay. Such payments are received as an employee of the labor organization and thus, such payment must be reported by the labor organization officer or employee unless they (1) totaled 250 or fewer hours during the filer's fiscal year and

(2) were paid pursuant to a bona fide collective bargaining agreement. If a filer must report payments for union-leave or no-docking arrangements, the filer must enter the actual amount of compensation received for each hour of union work. If union-leave or no-docking payments are received from multiple employers, each such payment is to be considered separately to determine if the 250-hour threshold has been met (see FAQ 42).

**Q41. What if I receive payments under a union leave or no-docking policy that is simply a longstanding practice and not in the collective bargaining agreement?**

A41. If the union-leave or no-docking policy does not appear in the collective bargaining agreement, the 250-hour threshold does not apply. In that situation, employer payments for all time spent performing union business during company time must be reported.

**Q42. Our labor organization has multiple bargaining units with a number of different employers. However, each unit does not have their own steward. Rather, one steward will perform services on behalf of several units. Our labor organization has negotiated no-docking provisions with all signatory employers. How would a steward report payments under either provision from multiple employers? Does the 250-hour threshold apply to each separate employer, or does time from each employer accumulate together?**

A42. If union leave or no-docking payments are received from multiple employers, each such employer is to be considered separately to determine if the 250-hour threshold has been met. For example, if Steward Allen receives no-docking payments from employers B, C, and D, Allen should count the number of hours of union work funded by each separate employer to determine if the 250-hour threshold has been exceeded: all hours paid by B would be calculated independently, as would C and D. If Allen worked 300 hours for B, 400 hours for C, and 100 hours for D, Allen would file a Form LM-30 reporting the hours worked for B and for C, but not the hours worked for D.

**Q43. The instructions to the revised Form LM-30 state that "[f]or purposes of Form LM-30, stewards receiving union-leave/no-docking payments from an employer . . . are considered employees of the labor organization." (note to D4 of instructions). Would a steward who receives union-leave/no-docking payments have to report a loan from an employer whose employees are represented by the steward's union, even if the union-leave/no-docking payments are not reportable because of the 250 hour threshold?**

A43. No. Union stewards receiving union-leave/no-docking payments from an employer while performing duties under the direction and control of the union are considered employees of the labor organization under the Form LM-30 final rule. However, because there has been some confusion over the application of the 250 hour threshold for reporting, the following guidance is provided. A union steward who receives 250 or fewer hours of union-leave or no-docking payments from the employer pursuant to a bona fide collective bargaining agreement will not be required to file a Form LM-30. A union steward who receives 250 or fewer hours of union-leave or no-docking payments from the employer that are not paid pursuant to a bona fide collective bargaining agreement

will be required to only report those union-leave/no-docking payments on Form LM-30. A union steward who receives more than 250 hours of union-leave or no-docking payments from the employer will be required to report the union-leave or no-docking payments as well as any other payments required to be reported on Form LM-30. This guidance is applicable only to union stewards who would be considered to be employees of the union due solely to union work performed under a union-leave or no-docking policy. Stewards who would be considered union employees for other reasons, such as direct salaries or lost-time payments from the union, are not covered by this guidance.

**Q44. I am an officer of an international labor organization and a member of the board of directors of an employer whose employees my labor organization represents. Am I required to report the directors' fees and reimbursed expenses I receive?**

A44. Yes, these payments must be reported.

## *Payments of money or other thing of value from certain other employers or labor relations consultants to such employers.*

**Q45. Besides payments from employers whose employees the labor organization represents or is actively seeking to represent, what types of other employers must labor organization officers and employees report payments from?**

A45. Labor organization officers and employees must report payments of money or other things of value (including reimbursed expenses) from the following types of employers and labor relations consultants to such employers:

- An employer in competition with an employer whose employees their labor organization represents or is actively seeking to represent;
- An employer that is a trust in which their labor organization is interested;
- An employer that is a not-for-profit organization that receives or is actively and directly soliciting (other than by mass mail, telephone bank, or mass media) money, donations, or contributions from their labor organization; or
- An employer that is a labor organization and meets certain other conditions (see FAQ 48); or
- An employer that has interests in actual or potential conflict with the interests of an official's labor organization or the official's duties to the labor organization.

See page 6 of the instructions for revised Form LM-30 for examples of payments from these types of employers.

**Q46. Are there any exceptions to the reporting of payments from the types of employers listed above?**

A46. Yes. A labor organization officer or employee does not have to report:

- Bona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit

institutions, if such loans, interests or dividends are based upon the financial institution's own criteria and made on terms unrelated to the official's status in a labor organization. Note: this exception does not apply to national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions that constitute a "trust in which [the official's] labor organization is interested";

- Pension, health, or other benefit payments to the official or the official's spouse or minor child from a trust that are provided pursuant to a written specific agreement covering such payments;
- Payments from the official's labor organization or from a labor organization affiliated with the official's labor organization;
- Payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947 (LMRA). These include the following types of payments:

  - money paid by employers to their employees as compensation for, or by reason of, service as an employee;

  - in satisfaction of a court or administrative judgment, or in settlement of a dispute;

  - with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business;

  - with respect to money deducted from the wages of employees in payment of union dues;

  - with respect to money paid to certain health and welfare trust funds or labor management committees.

- Payments that meet or are below the $250 de minimis exemption/widely-attended gathering exemption (see FAQ 24 and 25).

## Q47. How do I know if a trust is one in which my labor organization is interested?

A47. A trust in which a labor organization is interested means a trust or other fund or organization (1) which was created or established by the labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by the labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.

## Q48. Under what circumstances do I need to report payments from a labor organization, other than my own, which is an employer?

A48. A labor organization officer or employee must report payments from a labor organization that:

- has employees the official's labor organization represents or is actively seeking to represent;

- has employees in the same occupation as those represented by the official's labor organization;
- claims jurisdiction over work that is also claimed by the official's labor organization;
- is a party to or will be affected by any proceeding in which the official has voting authority or other ability to influence the outcome of the proceeding; or
- has made a payment to the official for the purpose of influencing the outcome of an internal union election.

## Q49. Must a labor organization official report payments from a labor organization that is affiliated with the labor organization in which the officer or employee serves?

A49. As a general rule, no. Reports are not required for payments received from a labor organization that is affiliated with the official's labor organization, such as a local, intermediate, or national or international or other parent body. For example, an officer of XYZ Local 1 would not report a payment received from either an XYZ regional council, another XYZ local, or the XYZ international, even if all of these entities were employers. Similarly, an XYZ international officer would not report a payment from an XYZ local. An exception would be a payment to influence an internal union election. See FAQ 57.

## Q50. I am an officer of International Labor Organization A. Our employees are represented by Local 1 of International Labor Organization B. Local 1 employs a business agent and a secretarial staff. I provided sporting event tickets valued at over $250 to the business agent of Local 1. Must the business agent report the tickets?

A50. Yes. A labor organization official must report payments from a labor organization if that labor organization is an employer whose employees the official's labor organization represents.

## Q51. I am an officer of ABC Local 1, which represents workers in widget manufacturing. Officials of DEF Local 2, which also represents workers in widget manufacturing, frequently provide me with meals and entertainment, totaling in excess of $250 during the fiscal year. DEF Local 2, which employs a small clerical staff, has recently tried to organize employers whose employees we already represent. Must I report the meals and entertainment?

A51. Yes. A labor organization official must report payments from a labor organization other than his or her own if that labor organization is an employer and claims jurisdiction over work that is also claimed by the official's labor organization.

## Q52. What if DEF Local 2 has not tried to organize or gain recognition by employers whose employees we already represent. Must I still report the meals and entertainment?

A52. Yes. A Union official must report payments from a labor organization other than his or her own if that labor organization is an employer and claims jurisdiction over work that is also claimed by the official's labor organization. It is not necessary that the other labor organization have taken steps to try to organize employees represented by the

**Q53. I am an officer of International Labor Organization A and will be voting on whether to merge with International Labor Organization B. Representatives of International Labor Organization B are allowing me use of a union-owned apartment near their headquarters over the next several weeks prior to the vote so that I can become familiar with their staff and location. Must I report the use of the apartment?**

A53. Yes. A labor organization official must report payments from a labor organization that is an employer and is a party to or will be affected by any proceeding concerning a matter in which the official has voting authority or other ability to influence the outcome of the matter.

**Q54. I am a labor organization president and a trustee of a Taft-Hartley pension fund in which my labor organization is interested. The pension fund utilizes a third-party administrator to run the fund and does not have any employees. Do I need to report the fee that I receive from the fund as compensation for my services?**

A. No. A labor organization officer or employee who is a trustee of a trust that is not an employer (see FAQ 28) does not have to report the value of the fees or reimbursed expenses received for services as a trustee.

**Q55. I am a labor organization president and a trustee of a Taft-Hartley pension fund in which my labor organization is interested. The pension fund is administered by a staff of employees. Do I need to report the fee that I receive from the fund as compensation for my services?**

A55. Yes. A labor organization officer or employee must report payments, including reimbursed expenses, from a trust in which the official's labor organization is interested for the official's service as a trustee if the trust is an employer (see FAQ 28 for the definition of employer). In the unusual situation where a trustee is considered an employee of the trust, the payments would be exempt under the bona fide employee exception (see FAQ 46).

**Q56. I am a labor organization officer running for a local public office. Employers in the industry organized by my labor organization and the employer whose employees my labor organization represents, make contributions. Am I required to report these campaign contributions?**

A56. Yes. Such contributions must be reported, unless the de minimis or another exemption is applicable. Even if the payments are made to a separate campaign fund, the payments must be reported as an "indirect" payment to the labor organization officer or employee.

*Payments of money or other thing of value from any employer*

# *(or labor relations consultant to any employer) for improper purposes.*

**Q57. What are the improper purposes for which any payment of money or other thing of value from any employer (or labor relations consultant to any employer) must be reported?**

A57. The improper purposes for payments to labor organization officers and employees are:

(1) Not to organize employees;
(2) To influence employees in any way with respect to their right to organize;
(3) To take any action with respect to the status of employees or others as members of a labor organization;
(4) To take any action with respect to bargaining or dealing with employers whose employees the officer's or employee's labor organization represents or is actively seeking to represent; or
(5) To influence the outcome of an internal union election.

See pages 6 and 7 of the <u>instructions for revised Form LM-30</u> for examples of these improper payments.

**Q58. Are there any exceptions for reporting these types of payments?**

A58. No, these types of payments must always be reported.

## *F. Reportable Relationships with Businesses*

**Q59. What is a "business"?**

A59. For purposes of Form LM-30, "business" refers to a vendor of goods or provider of services. A payment from a business may be required to be reported, whether or not the business meets the definition of an "employer."

**Q60. When is a labor organization officer or employee required to file Form LM-30 for payments received from, and interests held in, businesses?**

A60. Labor organization officers or employees must file Form LM-30 if they or their spouse or minor child, directly or indirectly, held an interest in, or received any income or other benefit with monetary value (including reimbursed expenses) from a business that meets any of the following conditions:

- A substantial part of its business consists of buying or selling or otherwise dealing with an employer whose employees the official's labor organization represents or is actively seeking to represent; or
- Any part of its business consists of buying or selling or otherwise dealing with the official's labor organization; or
- Any part of its business consists of buying or selling or otherwise dealing with a trust in which the official's labor organization is interested.

See pages 8 and 9 of the instructions for revised Form LM-30 for examples of payments from these types of businesses.

## Q61. Are there any exceptions for reporting payments from or interests in businesses?

A61. Yes, there are three exceptions for reporting payments and interests from businesses: (1) The bona fide investment in registered securities exception (see FAQ 26); (2) the $1,000 threshold for non-registered securities (see FAQ 26); and (3) the de minimis threshold/widely-attended gathering exception (see FAQ 24 and 25).

## Q62. What amount of business qualifies as a "substantial part"?

A62. Substantial part means 10% or more. Where a business's receipts from an employer whose employees the officer's or employee's labor organization represents or is actively seeking to represent constitute 10% or more of its annual receipts, a substantial part of the business consists of dealing with this employer.

## Q63. How do I know if a vendor's dealings with an employer whose employees my labor organization represents or is actively seeking to represent are 10% or more if I do not have an ownership interest? For example, during the fiscal year I received sporting event tickets valued at over $300 from a vendor, but I have no idea if the vendor's business with my employer accounts for 10% or more of its receipts.

A63. If a labor organization official does not know the amount of business dealings between the vendor and his or her employer, the official should request such information in writing from the vendor. If the vendor refuses to provide the information, the official should contact OLMS for assistance. In the meanwhile, the official should make a good faith estimate, based on the information reasonably available, whether the 10% threshold has been met. If such estimate exceeds the 10% threshold, then the official should file the report and explain that the vendor failed to provide requested information. If the estimate yields a figure less than 10%, no report is required, but the official should retain the written request for information he or she presented to the vendor and any work sheet used to arrive at the less-than-10% figure. Under these circumstances, absent collusion or bad faith, the labor organization officer or employee need not be concerned with criminal or civil enforcement, despite his or her inability to report this required information.

## Q64. What constitutes "dealing"?

A64. "Dealing" means to engage in a transaction (bargain, sell, purchase, agree, contract) or to in any way traffic or trade, including solicitation for business.

## Q65. Dealing includes the solicitation for business. What level of business interest qualifies as solicitation?

A65. The term "traffic or trade" includes not only financial transactions that have occurred but also the act of soliciting for business. Thus, for example, potential vendors

or service providers attempting to win business with a labor organization will be considered to be "dealing" with the labor organization to the same extent as vendors who are already doing business with the labor organization. Potential vendors must engage in the active and direct solicitation of business (other than by mass mail, telephone bank, or mass media). A business that merely passively advertises its services generally and would provide services consumed by, for example, a labor organization would not meet this test. The potential vendor must be actively seeking the commercial relationship. Under certain circumstances, the payment itself will be evidence of the solicitation of business, such as a potential vendor who treats a labor organization official to a golf outing and dinner to discuss the vendor's products.

**Q66. A benefit manager who is seeking our labor organization's business provided me and several other officers with dinner, a golf outing, and tickets to a sporting event (totaling over $250). Must we report these items even though the benefit manager is only seeking our business?**

A66. Yes. The dinner, golf outing, and sporting event tickets must be reported. Potential vendors or service providers engaging in active and direct solicitation of a labor organization or a trust in which the labor organization is interested in an attempt at winning business with the labor organization or trust will be considered to be "dealing" with the labor organization to the same extent as vendors who are already doing business with the labor organization. Members deserve to know if the labor organization's purchases of goods and services were based on merit rather than the financial interest of the labor organization officers.

**Q67. Are Form LM-30 reports required for payments received from attorneys who are designated legal counsel?**

A67. Yes. Labor organization officers and employees must report payments and benefits received from an attorney who is an employer and who is or seeks to become a designated legal counsel for the labor organization. A designated legal counsel is a lawyer recommended by the labor organization to its members for representation in workers' compensation, personal injury, or other matters. Labor organization members have the right to evaluate whether a lawyer's presence on a list of designated legal counsel is based on merit rather than a financial relationship between the lawyer and labor organization officials.

**Q68. I am a labor organization officer. As a side job, my brother-in-law and I started a computer service and repair company. We recently received a contract from Company A, one of the employers whose employees my labor organization represents. How do I determine whether my company deals "in substantial part" with the employer?**

A68. The labor organization official should tabulate all the business's receipts from the employer whose employees the official's labor organization represents or is actively seeking to represent. This total should then be compared to the business's overall receipts to determine if revenue from the employer in question amounts to 10% or more of the business's overall receipts. If so, the business deals in substantial part with the employer, and the labor organization official is subject to the Form LM-30 requirements.

## Q69. I received a payment from a company that does a small amount of business with my labor organization. Must I report the payment?

A69. Yes. A business any part of which consists of buying or selling or otherwise dealing with an officer's or employee's labor organization or a trust in which that labor organization is interested will trigger the reporting requirements. The statute requires that payment to an official by businesses dealing or seeking to deal with the official's labor organization or the labor organization's trust be reported regardless of the percentage of overall receipts the dealing represents.

### *G. Payments from Financial Institutions*

## Q70. What loans and other payments from financial institutions do not have to be reported on the Form LM-30?

A70. The Form LM-30 instructions describe four broad types of relationships between a labor organization officer or employee and an employer or business (see FAQ 28 ("employer") and FAQ 59 ("business")). The type of relationship determines what is reportable and which exemptions may apply. A financial institution is treated the same way as other employers or businesses for Form LM-30 reporting purposes except as follows:

- The Department is not requiring union officials to report credit card transactions (including unpaid balances) and interest and dividends paid on savings accounts, checking accounts or certificates of deposit if the payments and transactions are based upon the financial institution's own criteria and made on terms unrelated to the official's status in the labor organization.
- There is an administrative exemption specifically applicable to loans and payments by a financial institution that is an employer where an official's labor organization does not represent the institution's employees and is not actively seeking to represent them. But see FAQ 59 (noting that a labor organization official's reporting obligation for payments from a "business" is distinct from its status as an "employer"). Bona fide loans from national or state banks, credit unions, savings and loan associations, insurance companies, or other bona fide credit institutions are not required to be reported if they are based upon the financial institution's own criteria and made on terms unrelated to the official's status in the labor organization. This administrative exemption does not apply where the financial institution is a trust in which the labor organization is interested.

## Q71. Is my home loan reportable on Form LM-30?

A71. If the financial institution from which you receive your loan is an employer whose employees your labor organization represents or is actively seeking to represent then the home loan is reportable. The home loan is also reportable if the financial institution is a trust in which your labor organization is interested. Finally, the home loan is reportable if the financial institution is 1) a business that buys from, sells or otherwise deals with your labor organization, 2) a business that buys from, sells or otherwise deals with a trust in which your labor organization is interested, or 3) a business a substantial part of which (10% or more) consists of buying from, selling to or otherwise dealing with an employer

whose employees your labor organization represents or is actively seeking to represent.

**Q72. I receive a home loan from a bank that does not deal with my labor organization, any trust in which my labor organization is interested, or my employer. The loan was not made for any of the improper purposes listed in FAQ 57. Must I report the home loan if it is based upon the bank's own criteria and made on terms unrelated to my status in a labor organization?**

A72. No.

**Q73. What if the value of my transactions, interest, and dividends from a financial institution do not reach the de minimis threshold, even though that financial institution deals with the labor organization of which I am an officer?**

A73. If the de minimis threshold for an otherwise reportable payment or holding is not reached, no report is necessary.

### *H. Civil and Criminal Liability*

**Q74. As a labor organization officer or employee, what are my responsibilities regarding the accuracy of a submitted Form LM-30 and what are the penalties for a violation of these responsibilities?**

A74. The labor organization officer or employee required to file Form LM-30 must sign the completed report and is personally responsible for its filing and accuracy. Under the LMRDA, this individual is subject to criminal penalties for willful failure to file a required report and for false reporting. False reporting includes making any false statement or misrepresentation of a material fact while knowing it to be false, or for knowingly failing to disclose a material fact in a required report or in the information required to be contained in it or in any information required to be submitted with it.

The reporting labor organization officer or employee is also subject to civil prosecution for violations of the filing requirements. Section 210 of the LMRDA (29 U.S.C. 440) provides that "whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate."

The officers and employees responsible for filing Form LM-30 are also subject to criminal penalties for false reporting and perjury under Sections 1001 of Title 18, 1746 of Title 28, and 1621 of Title 18 of the United States Code.

### **Q75. If a report must be filed, does that mean a crime has been committed?**

A75. No. The reporting requirements do not control whether a financial relationship is lawful or unlawful, and the legality of any financial relationship does not affect whether it must be reported. Although some payments from employers to labor organizations and labor organization officers constitute a crime, not all such payments do. Willful violations of section 302(a) and (b) of the LMRA are subject to criminal prosecution only by the Department of Justice, not the Department of Labor.

This guidance at times discusses the language of section 302(c) of the LMRA because "payments of the kind referred to in section 302(c)" need not, in certain circumstances, be reported on the Form LM-30. When determining whether a payment is reportable, the guidance does not interpret the provisions of section 302(c), and conclusions reached by the Department of Labor regarding payments of the kind referred to in section 302(c) would not bind the Department of Justice in carrying out its criminal enforcement responsibilities.

## I. Completing Form LM-30

## Q76. Is there a corresponding form to be filed by employers who make payments?

A76. Yes. Employers must file annual reports to disclose certain specified financial dealings with their employees, labor organizations, labor organization agents, and labor relations consultants. Employer Report, Form LM-10, must be filed by employers to disclose:

- Payments or other financial arrangements (other than those permitted under section 302(c) of the Labor Management Relations Act, 1947, and payments and loans by banks and similar institutions) which were made to any labor organization, its officers, or its employees;
- Payments to any of their employees for the purpose of causing them to persuade other employees with respect to their bargaining and representation rights, unless the other employees are told about these payments before or at the same time they are made;
- Payments for the purpose of interfering with employees in the exercise of their bargaining and representation rights, or obtaining information on employee or union activities in connection with labor disputes involving their company; and
- Agreements or arrangements (and payments made under these agreements or arrangements) with a labor relations consultant or any other person for the purpose of persuading employees with respect to their bargaining and representation rights, or for obtaining information concerning employee activities in a labor dispute involving their company.

## Q77. How do I get a copy of Form LM-30?

A77. A blank fillable Form LM-30 can be downloaded from the OLMS Web site at www.olms.dol.gov. The revised Form LM-30 must be filed by a labor organization officer or employee for reports covering any of his or her fiscal years that began on or after August 16, 2007. The current Form LM-30 may be filed for reports covering any fiscal year that began before that date.

## Q78. Do I complete a separate revised Form LM-30 for each employer or business with which I had reportable activity?

A78. No. A labor organization officer or employee should only file one Form LM-30 for a fiscal year. The official must complete Part A (Items 1 - 7 and Item 8, the signature line). The official must also complete a separate Part B (Schedules 1 - 4), in accordance

with the instructions to the form, for each employer or labor relations consultant for which he or she answered "yes" in Item 6 and for each business for which he or she answered "yes" in Item 7. Schedules 1 and 2 must be completed on every Part B; Schedule 3 is only applicable to payments from an employer or labor relations consultant to an employer; and Schedule 4 is only applicable to payments from businesses.

## Q79. How do I obtain a file number, which is required in Item 1 of Form LM-30?

A79. The Office of Labor-Management Standards (OLMS) assigns a file number for each reporting officer or employee. If this is the filer's first time submitting Form LM-30, Item 1 should be left blank. The filer will be notified of the assigned file number.

## Q80. When is Form LM-30 due?

A80. Form LM-30 must be filed within 90 days after the end of the filer's fiscal year. If, however, the filer was a labor organization officer or employee for only a portion of the fiscal year, the report may be limited to that portion of the fiscal year.

## Q81. Can I use the calendar year as my fiscal year?

A81. Yes, normally a labor organization officer or employee files a personal tax return on a calendar year basis and uses the calendar year as his or her fiscal year.

## Q82. What if my Form LM-30 is filed late or I fail to file it? What are the ramifications? Are there any monetary penalties?

A82. The LMRDA does not authorize civil monetary penalties for the late filing of any required report, including the Form LM-30. However, it does authorize the Department of Labor to initiate a civil action in order to compel the filing of any required report and provides for criminal penalties for willfully failing to file a required report or submitting a false report.

## Q83. Where do I file my report?

A83. The completed Form LM-30 should be sent to the following address:

U.S. Department of Labor
Employment Standards Administration
Office of Labor-Management Standards
200 Constitution Avenue, NW, Room N-5616
Washington, DC 20210

## Q84. Does the Form LM-30 become a public document like the Form LM-2, available for inspection by anyone?

A84. Yes. All reports required to be filed with OLMS under the LMRDA are public information. Therefore, it is not necessary to make a request under the Freedom of Information Act (FOIA) to obtain copies of Form LM-30 reports. Anyone can view and print Form LM-30 reports for the year 2000 and later at www.unionreports.gov. Also,

earlier reports can be ordered at this website. Form LM-30 reports may also be examined, and copies purchased, at the OLMS Public Disclosure Room at:

U.S. Department of Labor
Office of Labor-Management Standards
Room N-1519
200 Constitution Avenue, NW
Washington, DC 20210

## Q85. What if reporting a transaction on Form LM-30 would violate a confidentiality clause?

A85. There is no exemption for confidentiality clauses in the LMRDA. The only confidentiality recognized by the LMRDA is that of attorney-client privilege, contained in Section 204 of the LMRDA, which states that "nothing contained in this Act shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of this Act any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship." 29 U.S.C. 434. If a labor organization officer or employee believes that completing Form LM-30 will result in the disclosure of sensitive, confidential or proprietary information that could cause substantial harm to the official's business, professional, or other interests, the issue should be discussed with OLMS prior to the filing of the report.

## Q86. If a labor organization officer filed a Form LM-30 for the previous year, is the officer required to file a blank form in subsequent years if no transaction occurs that is required to be reported?

A86. No. If a labor organization officer or employee does not have any interest, payment, transaction or arrangement during a fiscal year that is required to be reported, no report is required. This is so even if the official engages in activities that would otherwise be reported, but are exempted due to the $250 de minimis threshold or any other exception. A report with no transaction listed (that is, a blank report) should never be filed.

## Q87. How do I file an amended Form LM-30?

A87. Complete the form in its entirety and write "Amended" at the top of Page 1.

## Q88. As a labor organization officer, what are my responsibilities regarding recordkeeping for the Form LM-30?

A88. The labor organization officer or employee required to file Form LM-30 is responsible for maintaining records on the matters required to be reported that will provide in sufficient detail the necessary basic information and data from which the documents may be verified, explained or clarified, and checked for accuracy and completeness. These records include vouchers, worksheets, receipts, financial and investment statements, contracts, correspondence, and any applicable resolutions, in their original electronic and paper formats, and any electronic programs by which they

are maintained. Records must be kept available for examination for a period of not less than five years after the filing of the Form LM-30.

Last Updated: 10/18/07

⊙ **Back to Top**                    **www.dol.gov/esa**                    **www.dol.gov**

═══════════════════════════════════════════════════════════════

**Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

═══════════════════════════════════════════════════════════════

**U.S. Department of Labor**                              **1-866-4-USA-DOL**
Frances Perkins Building                              TTY: 1-877-889-5627
200 Constitution Avenue, NW                              **Contact Us**
Washington, DC 20210

# Exhibit 6

U.S. Department of Labor
Office of Labor-Management
Standards
Washington, DC 20210

# FORM LM-10
## EMPLOYER REPORT

Form approved
Office of Management
and Budget
No. 1215-0188
Expires 11-30-2009

This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

For Official Use Only

E

**READ THE INSTRUCTIONS CAREFULLY BEFORE PREPARING THIS REPORT**

### Part A

| 1. File Number E- | 2. Fiscal Year Covered | Month/Day/Year (mm/dd/yyyy) From: / / | Through: | Month/Day/Year (mm/dd/yyyy) / / |
|---|---|---|---|---|

3. Name and address of Reporting Employer (inc. trade name, if any).

Employer

Trade Name

Attention To

Title

Mailing Address

P.O. Box, Bldg., Room No., if any

Street

City

State                                ZIP Code + 4

4. Name and address of President or corresponding principal officer, if different from address in Item 3.

Name

P.O. Box, Building and Room Number, If any

Street

City

State                                ZIP Code + 4

5. Any other address where records necessary to verify this report will be available for examination.

Name

Title

Organization

P.O. Box, Building and Room Number, If any

Street

City

State                                ZIP Code + 4

6. Indicate by checking the appropriate box or boxes where records necessary to verify this report will be available for examination.

☐ Address in Item 3

☐ Address in Item 4

☐ Address in Item 5

7. Type of organization.

☐ Corporation   ☐ Partnership   ☐ Individual   ☐ Other (specify)

### Signatures

Each of the undersigned, duly authorized officers of the above employer declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including the information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned's knowledge and belief, true, correct, and complete. *(See Section VIII on penalties in the instructions.)*

13. Signed _____  President (if other title, see instructions)

Title  President

On ____ / ____ / ____        _____
         Date                          Telephone Number

14. Signed _____  Treasurer (if other title, see instructions)

Title  Treasurer

On ____ / ____ / ____        _____
         Date                          Telephone Number

Part A, Continued

| Name of Reporting Employer: | File Number E- |
|---|---|

---

**8. Type of Reportable Activity Engaged In By Employer**

*Read the following questions and the accompanying instructions carefully, taking into consideration the exclusions listed in the instructions for these items, and check either "Yes" or "No" for each item. For each item that is answered "Yes", you must attach a Part B which appears on Page 3. Complete a separate Part B for each "Yes" answer to any of Items 8.a. through 8.f. Also, if the answer is "Yes" for more than one person or organization, complete a separate Part B for each person or organization. If you answer "Yes", enter the number of Part Bs that are submitted for that item in the line indicated.*

**DURING THE FISCAL YEAR COVERED BY THIS REPORT:**

If "Yes", number of Part Bs attached

8.a. Did you make or promise or agree to make, directly or indirectly, any payment or loan of money or other thing of value (including reimbursed expenses) to any labor organization or to any officer, agent, shop steward, or other representative or employee of any labor organization?   YES ☐   NO ☐

8.b. Did you make, directly or indirectly, any payment (including reimbursed expenses) to any of your employees, or to any group or committee of your employees, for the purpose of causing them to persuade other employees to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing without previously or at the same time disclosing such payment to all such other employees?   YES ☐   NO ☐

8.c. Did you make any expenditure where an object thereof, directly or indirectly, was to interfere with, restrain, or coerce employees in the right to organize and bargain collectively through representatives of their own choosing?   YES ☐   NO ☐

8.d. Did you make any expenditure where an object thereof, directly or indirectly, was to obtain information concerning the activities of employees or of a labor organization in connection with a labor dispute in which you were involved?   YES ☐   NO ☐

8.e. Did you make any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertook activities where an object thereof, directly or indirectly, was to persuade employees to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or did you make any payment (including reimbursed expenses) pursuant to such an agreement or arrangement?   YES ☐   NO ☐

8.f. Did you make any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertook activities where an object thereof, directly or indirectly, was to furnish you with information concerning activities of employees or of a labor organization in connection with a labor dispute in which you were involved; or did you make any payment pursuant to such agreement or arrangement?   YES ☐   NO ☐

**TOTAL NUMBER OF PART Bs FOR THIS REPORT IS      0**

Form LM-10 - Part A (2003), Continued

Part B

| Name of Reporting Employer: | File Number E- |
|---|---|

| Check Item Number (from Page 2) to which this Part B applies | ITEM 8.a ☐ | ITEM 8.b ☐ | ITEM 8.c ☐ | ITEM 8.d ☐ | ITEM 8.e ☐ | ITEM 8.f ☐ |
|---|---|---|---|---|---|---|

9.a. ☐ Agreement    ☐ Payment    ☐ Both

9.c. Position In labor organization or with employer (if an independent labor consultant, so state).

9.b. Name and address of person with whom or through whom a separate agreement was made or to whom payments were made.

Name

P.O. Box, Building and Room Number, if any

Street

City

State                          ZIP Code + 4

9.d. Name and address of firm or labor organization with whom employed or affiliated.

Organization

P.O. Box, Building and Room Number, if any

Street

City

State                          ZIP Code + 4

10.a. Date of the promise, agreement, or arrangement pursuant to which payments or expenditures were agreed to or made.

10.b. The promise, agreement, or arrangement was:

☐ Oral    ☐ Written*    ☐ Both

(*Written agreements entered into during the fiscal year must be attached.)

| 11.a. Date of each payment or expenditure ( mm/dd/yyyy ). | 11.b. Amount of each payment or expenditure | 11.c. Kind of each payment or expenditure (Specify whether payment or loan, and whether in cash or property) |
|---|---|---|
| | | |

12. Explain fully the circumstances of all payments, including the terms of any oral agreement or understanding pursuant to which they were made.

Form LM-10 - Part B (2003)

Page 3 of 3

# Exhibit 7

Public reporting burden for this collection of information is estimated to average 35 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. Reporting of this information is mandatory and is required by the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), for the purpose of public disclosure. As this is public information, there are no assurances of confidentiality. If you have any comments regarding this estimate or any other aspect of this information collection, including suggestions for reducing this burden, please send them to the U.S. Department of Labor, Employment Standards Administration, Office of Labor-Management Standards, Division of Interpretations and Standards, Room N-5605, 200 Constitution Avenue, NW, Washington, DC 20210.

**DO NOT SEND YOUR COMPLETED FORM LM-10 TO THE ABOVE ADDRESS.**

# INSTRUCTIONS FOR FORM LM-10
# EMPLOYER REPORT

## GENERAL INSTRUCTIONS

### I.  WHY FILE

The Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), requires public disclosure of specific financial transactions or arrangements made between an employer **and** one or more of the following: a labor organization, union official, employee, or labor relations consultant. Pursuant to Section 203(a) of the LMRDA, every employer who has engaged in any such transaction or arrangement during the fiscal year must file a detailed report with the Secretary of Labor. The Secretary, under the authority of the LMRDA, has prescribed the filing of the Employer Report, Form LM-10, for employers to satisfy this reporting requirement.

These reporting requirements of the LMRDA and of the regulations and forms issued under the Act only relate to the disclosure of specified payments.  The reporting requirements do not address whether specific payments, transactions, or arrangements are lawful or unlawful. The fact that a particular payment, transaction, or arrangement is or is not required to be reported does not indicate whether it is or is not subject to any legal prohibition.

### II.  WHO MUST FILE

Any employer, as defined by the LMRDA, who has engaged in certain financial transactions or arrangements, of the type described in Section 203(a) of the Act, with any labor organization, union official, employee or labor relations consultant, **or** who has made expenditures for certain objects relating to activities of employees or a union, must file a Form LM-10. An employer required to file must complete only one Form LM-10 each fiscal year that covers all instances of reportable activity even if activity occurs at multiple locations.

**NOTE:**  *Selected definitions from the LMRDA follow these instructions.*

### III.  WHAT MUST BE REPORTED

The types of financial transactions, arrangements, or expenditures which must be reported are set forth in Form LM-10. The LMRDA states that every employer involved in any such transaction or arrangement during the fiscal year must file a detailed report with the Secretary of Labor indicating the following: (1) the date of each arrangement and the date and amount of each transaction; (2) the name, address, and position of the person with whom the agreement or transaction was made; and (3) a full explanation of the circumstances of all payments made, including the terms of any agreement or understanding pursuant to which they were made.

Form LM-10 is divided into two parts, Part A and Part B. Item 8 of Part A contains six questions pertaining to reportable employer activities. Before completing any portion of the report, review these questions thoroughly and answer them, taking into account the exclusions listed in the instructions for Item 8. If the answer to each of these questions is **NO**, do not file this report. However, if the answer to any of these questions is **YES**, taking into account the applicable exclusions, complete Part A and complete a separate Part B for each **YES** answer. Also, if any of the **YES** answers applies to more than one person or organization, complete a separate Part B for each person or organization.

**Special Reports.** In addition to this report, the Secretary may require employers subject to the LMRDA to submit special reports on relevant information, including but not necessarily confined to reports involving specifically

identified personnel on particular matters referred to in the second paragraph of the instructions for Item 8.a.

While Section 203 of the LMRDA does not amend, or modify, the rights protected by Section 8(c) of the National Labor Relations Act, as amended (NLRA), the LMRDA contains no provision exempting the activities protected by that section from the reporting requirements. Therefore, you must report activities of the type set forth in Item 8, since the LMRDA requires such reports, regardless of whether the activities are protected by Section 8(c) of the NLRA. Note, however, that the information you are required to report in response to Item 8.c does not include expenditures relating exclusively to matters protected by Section 8(c) of the NLRA, because the definition in Section 203(g) of the LMRDA of the term "interfere with, restrain, or coerce," which is used in Item 8.c, does not cover such matters.

**NOTE:** *The text of NLRA Section 8(c) is set forth following these instructions.*

## IV.  WHO MUST SIGN THE REPORT

Both the president and the treasurer, or the corresponding principal officers, of the reporting employer must sign the completed Form LM-10.  A report from a sole proprietor need only bear one signature.

## V.  WHEN TO FILE

Each employer, as defined in the LMRDA, who has engaged in any of the transactions or arrangements described in the form and instructions must file Form LM-10 *within 90 days* after the end of the employer's fiscal year.

## VI.  WHERE TO FILE

The completed Form LM-10 and any additional pages must be mailed to the following address:

> U.S. Department of Labor
> Employment Standards Administration
> Office of Labor-Management Standards
> 200 Constitution Avenue, NW, Room N-5616
> Washington, DC 20210

## VII.  PUBLIC DISCLOSURE

Pursuant to the LMRDA, the U.S. Department of Labor is required to make all submitted reports available for public inspection.  You may examine the Form LM-10 reports at, and purchase copies from, the OLMS Public Disclosure Room at the address listed in Section VI, or at the OLMS field office in whose jurisdiction the reporting organization is located.  At the end of these instructions is a list of OLMS field offices.

Also, in the Internet Public Disclosure Room at http://www.union-reports.dol.gov, you may view and print copies of employer reports, beginning with the year 2000.  You may also purchase copies of employer reports from the Internet Public Disclosure Room for 15 cents per page. Requests for 30 or fewer pages are provided free of charge.

## VIII.  OFFICER RESPONSIBILITIES AND PENALTIES

The president and treasurer or corresponding principal officers of the reporting employer required to sign Form LM-10, are personally responsible for its filing and accuracy.  Under the LMRDA, these individuals are subject to criminal penalties for willful failure to file a required report and/or for false reporting. False reporting includes making any false statement or misrepresentation of a material fact while knowing it to be false, or for knowingly failing to disclose a material fact in a required report or in the information required to be contained in it or in any information required to be submitted with it.

The reporting employer and officers required to sign Form LM-10 are also subject to civil prosecution for violations of the filing requirements.  Section 210 of the LMRDA provides that, "whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate."

## IX.  RECORDKEEPING

The individuals required to file Form LM-10 are responsible for maintaining records which will provide in sufficient detail the information and data necessary to verify the accuracy and completeness of the report.  You must retain the records for at least 5 years after the date you filed the report. You must retain any record necessary to verify, explain, or clarify the report including, but not limited to, vouchers, worksheets, receipts, and applicable resolutions.

## X.  COMPLETING FORM LM-10

*Read the instructions carefully before completing Form LM-10.*

**Information Entry.**  Entries on the report should be typed or clearly printed in black ink.  Do not use a pencil or any other color ink.

**Entering Dollars. I**n all Items dealing with monetary values, report amounts in dollars only; do not enter cents.  Round cents to the nearest dollar. Enter a single "0" in the boxes for reporting dollars if the employer has nothing to report.

**Additional Pages.** If you need additional space to complete an Item, include the additional information on a separate letter-size (8.5 x 11) page(s), indicating the number of the item to which the information applies. Print clearly at the top of each attached page the following information: (1) full name of the reporting employer, (2) its 5-digit file number as reported in Item 1, if available; and (3) the ending date of the reporting period as reported in Item 2. All attachments must be labeled sequentially 1 of __, 2 of __, etc.

## PART A (ITEMS 1 – 8)

**1. FILE NUMBER**—Enter the five-digit file number assigned by OLMS for the reporting employer. Employers who filed a From LM-10 prior to October 2003 received four-digit file numbers. OLMS has now expanded file numbers to five digits. Place a zero in front of your old four-digit file number to meet the new format requirement. For example, if your old file number was 1234, enter 01234 in Item 1 of this year's report. If you have never previously filed Form LM-10, leave Item 1 blank.

**2. FISCAL YEAR**—Enter the beginning and ending dates of the fiscal year covered in this report. The report must not cover more than a 12-month period. For example, if the reporting employer's 12-month fiscal year begins on January 1 and ends on December 31, do not enter a date beyond the 12-month period, such as January 1 to January 1; this is an invalid date entry.

**3. NAME AND MAILING ADDRESS**—Enter the full legal name of the reporting employer, a trade or commercial name, if applicable (such as a d/b/a or "doing business as" name), the name and title of the person to whom mail should be directed, and the complete address where mail should be sent and received, including any building and room number.

**4. NAME AND ADDRESS OF PRINCIPAL OFFICER**—Enter the name and business address of the president or corresponding principal officer if it is different from the address in Item 3.

**5. ANY OTHER ADDRESS WHERE RECORDS ARE AVAILABLE**—If you maintain any of the records necessary to verify this report at an address different from the addresses listed in Items 3 or 4, enter the appropriate name and address in Item 5.

**6. WHERE RECORDS ARE AVAILABLE**—Select the appropriate box(es) where the records necessary to verify this report are available for examination.

**7. TYPE OF ORGANIZATION**—Select the appropriate box which describes the reporting employer. If none of the choices apply, specify the type of reporting employer filing this report.

**8. TYPE OF REPORTABLE ACTIVITY ENGAGED IN BY EMPLOYER**—Read each question carefully, then read the exclusions listed below for each question. Select the appropriate **YES** or **NO** box next to each question; do not leave both boxes blank. If the answer to any of these questions is **YES**, indicate the number of Part Bs necessary for completing that question. With each question, complete a separate Part B for every person or organization with whom a reportable agreement was made as indicated by a **YES** answer. For example, if you answer Item 8.e **YES**, and you had agreements with two different labor relations consultants during the fiscal year, then you would complete two Part Bs for that question.

**8.a.** In answering Item 8.a, **exclude** the following: (1) Payments of the kind referred to in Section 302(c) of the Labor Management Relations Act, 1947, as amended (LMRA); **and** (2) Payments or loans made in the regular course of business as a national or state bank, credit union, insurance company, savings and loan association, or other credit institution. (The text of Section 302(c) of the LMRA is set forth below.)

None of the following require a **YES** answer: (a) payments made in the regular course of business to a class of persons determined without regard to whether they are, or are identified with, labor organizations and whose relationship to labor organizations is not ordinarily known to or readily ascertainable by the payer, for example, interest on bonds and dividends on stock issued by the reporting employer; (b) loans made to employees under circumstances and terms unrelated to the employees' status in a labor organization; (c) payments made to any regular employee as wages or other compensation for service as a regular employee of the employer, or by reason of his service as an employee of such employer, for periods during regular working hours in which such employee engages in activities other than productive work, if the payments for such periods of time are: (1) required by law or a bona fide collective bargaining agreement, or (2) made pursuant to a custom or practice under such a collective agreement, or (3) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization; (d) initiation fees and assessments

9 3

paid to labor organizations and deducted from the wages of employees pursuant to individual assignments meeting the terms specified in paragraph (4) of Section 302(c) of the LMRA; (e) sporadic or occasional gifts, gratuities, or favors of insubstantial value, given under circumstances and terms unrelated to the recipients' status in a labor organization; for example, traditional Christmas gifts.

**8.b.** In answering Item *8.b,* *exclude* expenditures made to any regular officer, supervisor, or employee as compensation for services as a regular officer, supervisor, or employee.

**8.c.** In answering Item *8.c,* *exclude* expenditures relating exclusively to matters protected by Section 8(c) of the National Labor Relations Act, as amended (NLRA).

> **NOTE:** *The definition set forth in Section 203(g) of the LMRDA for the term "interfere with, restrain, or coerce" excludes matters protected by Section 8(c) of the NLRA. Therefore, expenditures related exclusively to such matters protected by Section 8(c) are not required to be reported in this question. (The text of Section 8(c) of the NLRA is set forth below.)*

**8.d.** In answering Item *8.d,* *exclude* the following: (1) Information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding; **and** (2) Expenditures made to any regular officer, supervisor, or employee as compensation for service as a regular officer, supervisor, or employee.

**8.e.** In answering Item *8.e,* *exclude* agreements or arrangements covering services related exclusively to the following: (1) giving you advice; **or** (2) agreeing to represent you before any court proceeding, administrative agency, or tribunal of arbitration; **or** (3) engaging in collective bargaining on your behalf with respect to wages, hours, or other terms or conditions of employment or negotiating an agreement or any question arising thereunder.

If an agreement or arrangement covering the listed services also covers other activities referred to in the initial question, the exclusion does not apply and the information required for the entire agreement must be reported.

**8.f.** In answering Item *8.f,* *exclude* agreements or arrangements for obtaining information solely for use in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding.

**PART B (ITEMS 9 – 12)**

You must submit a separate Part B for each **YES** answer in Item 8 and for each separate reportable transaction as described in Section III of these instructions. At the top of Part B, check the appropriate Item number box to which this Part B applies.

## 9. AGREEMENT OR PAYMENT

**9.a.** Check the appropriate box describing whether this Part B covers an agreement, a payment, or both.

**9.b.** Enter the name and complete mailing address of the individual with whom you made a reportable agreement or to whom payments were made. Enter the name and address of the firm or organization in Item 9.d.

**9.c.** Give the position (or title) of each person listed in Item 9.b. as follows:

♦ If the answer to Item 8.a. in Part A is YES, indicate the position in the labor organization of each person listed in Item 9.b.

♦ If the answer to Item 8.b. in Part A is **YES,** identify the position in the reporting firm of each person listed in Item 9b.

♦ If the answer to Item 8.c. **or** Item 8.d. in Part A is **YES,** indicate the position in the firm or labor organization of each person listed in Item 9.b.

♦ If the answer to Item 8.e. **or** Item 8.f. in Part A is **YES,** indicate the position of each person in a firm or the occupation of each person listed in Item 9.b.

**9.d.** Enter the full name and address of the firm, group, or labor organization to whom payments were made, with whom the agreement or arrangement was made, or with whom the person listed in Item 9.b. was employed or affiliated

## 10. DATE AND NATURE OF PROMISE, AGREEMENT, OR ARRANGEMENT

**10.a.** If you agreed or promised to make payments **or** if you actually made payments during the fiscal year pursuant to a promise, agreement, or arrangement, indicate the date on which either the promise was made or the agreement or arrangement was entered into. If the payments listed in Item 11 are unrelated to an agreement or arrangement, enter **NONE** in this section.

**10.b.** Indicate whether the promise, agreement, or arrangement was oral, written, or both. Attach a copy of any written agreement entered into during the fiscal year covered in this report.

## 11. PAYMENT OR EXPENDITURE

**11.a.** Enter the date of each payment referred to in Item 9.

**11.b.** If the form of payment was cash, enter the U.S. dollar amount of each payment made during the fiscal year. If the form of payment was property, provide the market value in U.S. dollars of the property at the time of the transfer.

**11.c.** Indicate whether the payment was either a remuneration, gift, or loan. Specify the method of payment (for example, cash, check, or securities, or other property).

**12. CIRCUMSTANCES OF ALL PAYMENTS—** Provide a full explanation identifying the purpose and circumstances of the payments, promises, agreements, or arrangements included in the report. Your explanation must contain a detailed account of services rendered or promised in exchange for promises **or** payments you have already made or agreed to make. Your explanation must fully outline the conditions and terms of all listed agreements.

In addition to the above, you must indicate whether the payments or promises reported specifically benefited the person or persons listed in Item 9.b, or the firm, group, or labor organization named in Item 9.d. If you made payments, promises, or agreements through a person or persons not shown above, you must provide the full name and address of such person or persons. Your explanation must clearly indicate why you must report the payment, promise, or agreement. Any incomplete responses or unclear explanations will render this report deficient. If you need additional space to complete Item 12, see Section X (Completing Form LM-10).

## SIGNATURES

**13-14. SIGNATURES—**The completed Form LM-10 which is filed with OLMS must be signed by both the president and treasurer, or corresponding principal officers, of the reporting employer. A report from a sole proprietor need only bear **one** signature which you should enter in Item 13. Otherwise, this report must bear **two (2)** signatures.

If the report is signed by an officer other than the president and/or treasurer, so indicate in Items 13 and/or 14 by (1) crossing out the pre-printed officer title(s) and (2) inserting the appropriate officer title(s). You must have original signatures on the Form LM-10 filed with OLMS; stamped or mechanical signatures are unacceptable.

Enter the telephone number used by the signatories to conduct official business. You do not have to report a private, unlisted telephone number.

**SELECTED DEFINITIONS FROM THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA)**

SEC. 3. For the purposes of titles I, II, III, IV, V except section 505), and VI of this Act-

(a) "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

(b) "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

(c) "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, as amended, or the Railway Labor Act, as amended.

(d) "Person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Code, or receivers.

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce

(1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or

(2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) "Employee" means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act.

(g) "Labor dispute" includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of

employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(h) Not applicable.

(i) "Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it--

    (1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or

    (2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees or an employer or employers engaged in an industry affecting commerce; or

    (3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2) ; or

    (4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

    (5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body.

(k) Not applicable.

(l) Not applicable.

(m) "Labor relations consultant" means any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities.

(n) "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

(o) Not applicable.

(p) Not applicable.

(q) "Officer, agent, shop steward, or other representative," when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried non-supervisory professional staff, stenographic, and service personnel.

## NATIONAL LABOR RELATIONS ACT, AS AMENDED

Section 8. "(c) The expressing of any views, argument, or opinion or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

## RELATED PROVISIONS OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, AS AMENDED (LMRDA)

**Report of Employers**

Sec. 203.

(a) Every employer who in any fiscal year made--

    (1) any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefore, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except

        (a) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution and

        (b) payments of the kind referred to in section 302 (c) of the Labor Management Relations Act, 1947, as amended;

    (2) any payment (including reimbursed expenses) to any of his employees, or any group or committee of such employees, for the purpose of causing such employee or group or committee of employees to persuade other employees to exercise or not to exercise, or as the manner of exercising, the right to organize

and bargain collectively through representatives of their own choosing unless such payments were contemporaneously or previously disclosed to such other employees;

(3) any expenditure, during the fiscal year, where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing, or is to obtain information concerning the activities of employees, or a labor organization in connection with a labor dispute involving such employer, except for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

(4) any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing, or undertakes to supply such employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding; or

(5) any payment (including reimbursed expenses) pursuant to an agreement or arrangement described in subdivision(4);

shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agreement, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.

(b) Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly-

(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

shall file within thirty days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

(d) Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) unless he was a party to an agreement or arrangement of the kind described therein.

(e) Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as

compensation for service as a regular officer, supervisor, or employee of such employer.

(f) Nothing contained in this section shall be construed as an amendment to, or modification of the rights protected by, section 8 (c) of the National Labor Relations Act, as amended.

(g) The term "interfere with, restrain, or coerce" as used in this section means interference, restraint, and coercion which, if done with respect to the exercise of rights guaranteed in section 7 of the National Labor Relations Act, as amended, would, under section 8(a) of such Act, constitute an unfair labor practice.

## SECTION 302(c) OF THE LABOR MANAGEMENT RELATIONS ACT, 1947, AS AMENDED

"(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, which-ever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits

or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event of the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of pro-viding pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; or (6) with respect to money or other thing of value paid by any employer to a trust fund established by such a representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (7) with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, or (B) child care centers for preschool and school age dependents of employees: Provided, That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: Provided further, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (8) with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their families, and dependents for counsel or plan of their choice: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: Provided further, That no such legal services shall be furnished: (A) to initiate any proceeding directed (i) against any such employer or its officers or

agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under the National Labor Relations Act, as amended, or this Act; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor-Management Reporting and Disclosure Act of 1959; or (9) with respect to money or other things of value paid by an employer to a plant, area or industry-wide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978."

### If You Need Assistance

The Office of Labor-Management Standards has field offices located in the following cities to assist you if you have any questions concerning LMRDA and CSRA reporting requirements.

Atlanta, GA
Birmingham, AL
Boston, MA
Buffalo, NY
Chicago, IL
Cincinnati, OH
Cleveland, OH
Dallas, TX
Denver, CO
Detroit, MI
Grand Rapids, MI
Guaynabo, PR
Honolulu, HI
Houston, TX
Kansas City, MO
Los Angeles, CA
Miami (Ft. Lauderdale), FL
Milwaukee, WI
Minneapolis, MN
Nashville, TN
New Haven, CT
New Orleans, LA
New York, NY
Newark (Iselin), NJ
Philadelphia, PA
Pittsburgh, PA
St. Louis, MO
San Francisco, CA
Seattle, WA
Tampa, FL
Washington, DC

Consult local telephone directory listings under United States Government, Labor Department, Office of Labor-

Management Standards, for the address and telephone number of the nearest field office.

Copies of labor organization annual financial reports, employer reports, and labor relations consultant reports filed for the year 2000 and after can be viewed and printed at http://www.union-reports.dol.gov. Copies of reports for the year 1999 and earlier can be ordered through the website.

Information about OLMS, including key personnel and telephone numbers, compliance assistance materials, the text of the LMRDA, and related Federal Register and Code of Federal Regulations (CFR) documents, is also available on the Internet at:

**http://www.olms.dol.gov**

9

# Exhibit 8

# U. S. DEPARTMENT OF LABOR

### LABOR-MANAGEMENT SERVICES ADMINISTRATION

# OFFICE OF LABOR-MANAGEMENT STANDARDS ENFORCEMENT

# LMRDA INTERPRETATIVE MANUAL

001

# INTRODUCTION

This Manual has been prepared for the use of employees of the Office of Labor-Management Standards Enforcement, whose responsibilites relate to administration of the Labor-Management Reporting and Disclosure Act of 1959. It is available to the public in accordance with Public Law 90-23 which amends section 3 of the Administrative Procedure Act to provide that administrative manuals or instructions to staff which affect members of the public shall be available for inspection.

The Manual will be maintained in looseleaf form in order to facilitate the incorporation of additions and changes in the materials. Each item is keyed to a specific subject of the law. Appropriate court decisions and other administrative materials which affect or relate to provisions of the Act are also keyed into the codification scheme.

The Manual may be used by authorized office personnel as a basis for dealing with situations similar to those in the entries. Care should be taken, however, in attempting to apply an interpretation to a given fact situation, to assure that the facts justify such application. In answering inquiries, orally or (where authorized) in writing, office personnel should follow the language used in the Manual as closely as possible. Doubtful situations should be referred, through appropriate channels, to the Division of Program Standards.

# UNION OFFICER AND EMPLOYEE REPORTS
## IN GENERAL

240

### 240.001 LMRDA, SECTION 202

(a) Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

(1) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or

otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) The provisions of paragraphs (1), (2), (3), (4), and (5) of sub-

240.001  contd.

section (a)  shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities  exchange under the  Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940, or in securities of a  public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Nothing  contained  in  this section shall  be construed to require any officer or employee of a labor organization to file a report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

240.002  SEE 29 CFR 404

240.100  FORM OF REPORT; SPECIAL REPORTS

See 29 CFR 404.3, 404.4.

240.200  UNION OFFICERS BASED OUTSIDE THE UNITED STATES

While  the  Department takes the position that the reporting provisions  of the LMRDA are limited to "activities of persons or organizations within the territorial juris-

diction of the United States," its application in any particular case will depend on whether there is a substantial relationship between the transactions in question and United States property or interests which are the objects of the Act's protection.

For example, there would ordinarily not be sufficient relationship to require reporting where an officer of a foreign local has a financial interest in a  foreign company with which the local deals, although the officer may on occasion perform official union business in the United States such as attending an international conference or convention. However, a foreign member of an international executive board, who participates in the board's meetings in the United States, may well be required to  report otherwise  reportable holdings in a United States company with which the international deals, even though his principal office is in a foreign country.

In other words, each case would require evaluation of the substantiality of the official's contacts with the United States and of the impact on United States interests.

241

# WHO MUST FILE

241.002

For definitions of "labor organization officer," "labor organization employee," see 29 CFR 404.1.

### ATTORNEY-CLIENT COMMUNICATIONS

Nothing contained in this part shall be construed to require an attorney who is a member in good standing of the bar of any State to include in any report required to be filed pursuant to the provisions of section 202(a) of the Act and of this part any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

29 CFR 404.5

### 241.005   USE OF FORM LM-30 PRIOR ACTIVITIES

A former union officer who engaged in activities clearly reportable under section 202 prior to the issuance of Form LM-30, and who did not report such activities until after the issuance of that form, is required to report on Form LM-30.

The regulations governing reporting by union officers and employees (29 CFR Part 404) require reports to be made on Form LM-30 which is incorporated by reference into the regulations. Thus, insofar as Form LM-30 requires reporting of matters reportable under LMRDA since its passage, it cannot be said that the form is being given retroactive application. Reports of the activities in question were required to be made at the end of the fiscal year in which such activities were undertaken and only the _manner_ in which they are to be reported has been changed.

### 241.100   INTERNATIONAL OFFICER WITH INCOME FROM BUSINESS DEALING WITH LOCAL UNION

Section 202(a)(3) of the Act requires reports from "every officer of a labor organization" of income derived from "any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent." An international union officer must report his income from such a business even though he is not an officer of the local which represents the employees of the business, and even though his duties as an international officer do not include representation activities.

**241.200**

WHO MUST FILE, contd.

### 241.200  TRUSTEES

The trustee appointed by a superior labor organization to administer or supervise a subordinate labor organization which has been placed in trusteeship is subject to the reporting requirements of section 202.

### 241.300  APPLICATION TO MEMBERS

Reports are required only from those "officers" and "employees" of labor organizations who have engaged in any of the activities specified in section 202(a) of the Act. Activities specified therein need not be reported if undertaken by a member of the labor organization, provided, the member is neither an officer nor an employee of the union.

### 241.400  SELF-INCRIMINATION

Reports required of union officers or union employees under section 202(a) of LMRDA must be submitted notwithstanding the fact that the information required to be included in the report may disclose a violation of section 302 of the Taft-Hartley Act (section 302 contains a criminal provision). It has been argued that the requirement to file such a report infringes on the 5th Amendment to the Constitution of the United States.

While the constitutionality of this provision of the Act has not yet been tested in the courts, there are a number of court decisions concerning similar provisions in other laws in which the constitutionality has been upheld. On the basis of these decisions, it is anticipated that the courts will

similarly uphold the constitutionality of section 202 of the LMRDA. By way of example it has been held that the privilege which exists as to private papers cannot be maintained in relation to records required by law to be kept (Shapiro v. U.S., 335 U.S. 1), even though the intention of the law is to make the records available for enforcement purposes (U.S. v. Darby, 312 U.S. 100). This doctrine extends to reports which are required by law, as well as to records (Pulford v. U.S, 155 F. 2d 944, Communist Party of the U.S. v. Subversive Activities Control Board, 361 U.S. 115). A more comprehensive treatment of this question can be found in (among other works) "The Georgetown Law Journal," Vol. 48, No.2 (Winter 1959) and in Davis' "Treatise on Administrative Law," Vol.1, section 3.07 through 3.09.

### 241.500  FRANCHISED AGENTS

Franchised agents of the American Guild of Variety Artists (AGVA) who act only as representatives of artist and entertainers in dealing with employers in the entertainment field would have no duty to report the payments made to AGVA for the franchise under section 203 of the Act. Franchised agents when acting as such would not be employees within the meaning of section 203 or within the meaning of that definition in the Act. The agent's interest in representing the artist is opposed to that of the employer. The success of the agent depends upon the bargain he can strike on behalf of the artist. His income is derived from commissions on earnings of his clients. Thus, it cannot be fairly concluded that agents, insofar as they are acting



241.500

## WHO MUST FILE, contd.

241.500 contd.

in that capacity alone, are employers subject to the reporting requirements of section 203 of the Act.

However, a different conclusion would be warranted in those cases where franchised agents not only act as representatives of artists but also act as producers of package shows, etc. Clearly, when acting as a producer, the agent would be an employer within the meaning of the Act and reports would be required under section 203(a)(l) for the payments made to AGVA in the form of a franchise fee. Such payments do not seem to fall within the exceptions contained in section 203(a)(l). (But payments made by them as producers into the AGVA welfare trust fund or the AGVA sick and relief fund would seem to fall within the exceptions contained in section 302(c)(5) of the LMRA, and consequently would not have to be reported under section 203(a)(l).)

The question may be asked whether a franchised agent may be considered an "... agent . . . or other representative" of AGVA within the meaning of section 3(q) and therefore come within the reporting requirements of section 202. It should be pointed out that section 202 of the Act does not employ the terms "agent" or "representative"; it refers to "officers" and "employees" of a labor organization. In our opinion, a person independently engaged in the business of representing professional entertainers is not an "employee" or "officer" of the union to which the entertainer may belong by reason of his contractual duty to observe the conditions laid down in the union's

standard form of contract for the protection and benefit of his clients.

## 241.600  DEPENDENCE ON EMPLOYER OBLIGATION TO REPORT

The fact that employers are excepted from reporting certain transactions with union officers and employees by virtue of section 203(a) does not in any way affect the obligation of the union officers and employees to report such transactions, where the applicable provision of section 202 does not provide a pertinent exception.

## *241.700  "DE MINIMIS"

We should all take cognizance of the "de minimus non curat lex" doctrine. This means that courts will not find persons guilty of acts involving trivial sums of money. The instructions for Form LM-30 provide that union officers or employees "do not have to report any sporadic or occasional gifts, gratuities, or loans of insubstantial value, given under circumstances unrelated to the recipient's status in a labor organization." Previous examples of "de minimis" situations were when an employer picked up the lunch tab when he and a union officer ate together or when an employer gave a union officer a Christmas gift of nominal value. A car was given as an example of a gift that would require a report. In order to provide more guidance on this issue, OLMS has determined that anything

03/2005

241.700

241.700 contd.

with a value of $25 or less will be considered "de minimis" and therefore not reportable if it is given under circumstances unrelated to the recipient's status in a labor organization as discussed below in Manual Entry 241.710.

*241.710  UNRELATED TO LABOR ORGANIZATION STATUS

A "de minimis" gift must be given under circumstances unrelated to the recipient's status in a labor organization in order to be subject to the exemption from reporting. For example, if an employer frequently provides a catered lunch during long meetings with various groups, a union officer would not have to report the receipt of such a lunch if it has a value of $25 or less. See Manual Entry 253.061 and 253.081.

241.750  UNION OFFICERS BASED OUTSIDE THE UNITED STATES

See Manual Entry 240.200.

# TIME AND PLACE TO FILE
# UNION OFFICER AND EMPLOYEE REPORTS

**242.001  LMRDA, SECTION 207(b)**

Each person required to file a report under section 201(b), 202, 203(a), or the second sentence of 203(b) shall file such report within ninety days after the end of each of its fiscal years; except that where such person is subject to section 201(b), 202, 203(a), or the second sentence of 203(b) as the case may be, for only a portion of such a fiscal year (because the date of enactment of this Act occurs during such person's fiscal year or such person becomes subject to this Act during its fiscal year) such person may consider that portion as the entire fiscal year in making such report.

**242.002  SEE 29 CFR 404.1, 404.2**

**242.005  FISCAL YEAR**

See 29 CFR 404.1 and Manual Entries 214 ff.

243

# BENEFIT FROM EMPLOYER OF UNION MEMBERS

### 243.001   LMRDA, SECTION 202(a)(1)

. . . any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer; . . .

### 243.005   PAYMENTS UNDER INCENTIVE PLAN

Payments made under an incentive plan which is contained in the collective bargaining agreement and which contemplates the payment of additional compensation to employees who through additional effort obtain new accounts for the employer would not be reportable by the union officer-employees who received such additional compensation, since such payments are received for work as a bona fide employee of such employer.

### 243.100   COMPANY PICNIC

For many years it had been the custom of Company X to sponsor an annual picnic for its employees. After the company was organized by Union Y, the union decided that it would co-sponsor the picnic and share the expenses equally with the company. The cost of the picnic for the 200 employees of the company was $3,000.

No report would be required pursuant to section 202 from a union officer who attends this picnic. Even if the union officer was not an employee of the company, the value, such as food, beverage, etc., of what he received there would be insignificant.

It is to be noted, however, that the Secretary of Labor may require special reports in situations of the nature described above if he so desires.

### 243.200   NEGOTIATING EXPENSES

Company A and Union B are attempting to negotiate production standards related to the operation of new equipment. The company, through its plant officers, invites several union representatives who are employees to visit other plants of the company with a view to observing the new equipment in operation. It was believed that when the union representatives viewed the new equipment in operation they would have a more adequate factual basis for negotiating a production standard with Company A. The company paid the union representatives their regular wages and their actual expenses for travel and hotel accommodations (one night's lodging).

Under these circumstances, no labor officer reports are required from the union representatives because the payment of bona fide expenses by the company in connection with collective bargaining and negotiations are considered to come within the scope of regular wages.

This principle would <u>not</u> apply to a union officer who is <u>not</u> an employee of the employer.



BENEFIT FROM EMPLOYER OF UNION MEMBERS, contd

## 243.300  FREE ACCOMMODATIONS

A union officer who received complimentary hotel accommodations from a hotel which employed members of the union which he represents is deemed to have received a "benefit with monetary value" within the meaning of section 202(a)(1) and is required to report thereon.

## 243.400  POLITICAL CONTRIBUTIONS

Where an employer contributes to the campaign fund of one of his employees who is running for local public office and that employee is also an officer of the labor organization which represents the employees in collective bargaining with the employer, the employer is required to file a report of the payment pursuant to section 203(a)(1) of the Act. The union officer is also required to report the payment in question by virtue of section 202(a)(1).

The legality of an employer's contributions to the campaign fund of one of that employer's employees who is also a union officer, requires consideration of section 505 of the Act which amends section 302 of the Labor Management Relations Act, for which the Department of Labor is not assigned responsibility.

Contributions by a corporation, or a labor organization to a person campaigning for _Federal_ office are made criminal offenses under 18 U. S.C. 610 and it is also a crime for

a candidate for a Federal office to receive such contributions.

## 243.500  BONA FIDE INVESTMENTS

Bona fide investments in stocks "traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934" are excluded from the reporting requirements of section 202(a) of the Act by section 202(b). For example, this exclusion does not apply to:

(1)  Stocks traded on an unregistered exchange.

(2)  Stocks traded only on an organized foreign exchange.

(3)  A gift of stock, regardless of where the stock is traded.

(4)  Stock held in a private "closed" family corporation.

The exclusion _does_ apply, however, to bona fide investments ("purchases") made by a union official in the stock of a company whose employees he represents, provided that the stock is traded on a registered exchange, such as the New York Stock Exchange. Likewise, the income from such stocks is not required to be reported.

## 243.510  STOCKS TRADED OVER THE COUNTER

If a union official holds stock in a corporation traded over the counter and his union has a contract with that corporation, he would be required to file a report since the reporting exemption in section 202(b) applied only to se-

243.510

## BENEFIT FROM EMPLOYER OF UNION MEMBERS, contd.

243.510  contd.

curities traded on a securities exchange registered under the Securities Exchange Act of 1934.

### 243.511

President A of Local 100 is a regular production employee of the B Corporation. The stock of B Corporation is traded over the counter, that is, it is not traded on a regulated exchange. Assume that President A got his stock, now worth $8,000 and which brings him a dividend income of $600 a year, through many years of purchases under the B Corporation stock purchase plan available to all employees. Under section 202(a)(1) a report is required from President A. The requirement of a report does not imply that the act or behavior or agreement to be reported is illegal. It means that the Congress decided that the reporting of the interest and public disclosure of the report are desirable in accomplishing the objectives of LMRDA.

### 243.520  EMPLOYEE STOCK PURCHASE PLANS

Where an employer whose stock is traded on a national securities exchange has an employee stock purchase plan by which all employees including labor union officials who are employees may purchase the employer's stock at a discount from the market price, no reports are required with regard to these purchases and holding of the employer's stock by labor organization officers for the reason that they come within the exception of section 202 (b) of the Act and section 302(c) of the Labor Management Relations Act, 1947, as amended (payments to a union officer "as compensation

for, or by reason of, his service as an employee of such employer").

### 243.522

An officer of a union who participates in an employee stock plan authorizing a regular deduction from his pay check, to be applied to the purchase of government bonds, and under which the employer, whose employees the union represents or is actively seeking to represent, contributes one-fourth as much to buy company stock for the employee must be reported under section 202 (a)(1) and (2) of the Act, in the absence of an applicable exemption. Such a report would have to list and describe the officer's holdings of, and transactions in, this stock for the preceding fiscal year, whether acquired under the Plan or not. However, the exemption contained in section 202(b) could apply. That section provides that 202(a)(1) and (2) shall not be construed to require any such officer or employee of a labor organization to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934

### 243.600  FREE USE OF HUNTING LODGE

QUESTION: I am the president and business agent of my local. We have a collective bargaining agreement w... the CDE Company. The CDE Company has a private lodge on a lake in the Adirondack Mountains in New York for the use of its officers. As the families of the Corporation's officers were not using



BENEFIT FROM EMPLOYER OF UNION MEMBERS, contd.

243.600   contd.

the lodge before July, I
was offered  the  use of
the facilities for  a 2-
week period in late June.
Do I have to report  un-
der these circumstances?

ANSWER:     Yes.  This  is a gift of
more than nominal  value
and consequently  is re-
quired  to  be  reported
pursuant to section  202
(a)(1) of the Act.

244

# TRANSACTION WITH EMPLOYER
# OF UNION MEMBERS

### 244.001  LMRDA, SECTION 202(a)(2)

. . . any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent; . . .

### 244.100  LOANS

It is clear that loans in excess of a minimal amount must be reported by an officer or employee of a union which represents, or is actively seeking to represent, the employees of the employer who makes the loan. Although subsections (1) and (6) of section 202(a) contain exceptions which might be construed to apply to such loans, subsection (2) of section 202(a) specifically covers such loans and does not contain any exceptions; there appears to be no basis for the exclusion of such loans from the reporting requirements contained in that paragraph.

### 244.120  "DE MINIMIS" LOANS

Congress intended that union officers report loan arrangements with their employers that pose conflicts of interest - for example, a 40 year, 2 percent loan in the amount of $20,000 so that the officer could buy a home, would pose a reportable conflict. However, loans of inconsequential amount made available to all employees of the employer in question on a basis unrelated to their status as union officers need not be reported.

### 244.150  CASH ADVANCES

A cash advance would not be considered a loan if at the time the advance is made to the employee-union officer, he had already rendered services to the employer the value of which exceeded the amount of the cash advance. It would seem that the employee was equitably entitled to the money advanced and consequently had not, in fact, received a loan.

### 244.170  EMPLOYER AS A GUARANTOR OF LOAN

See Manual Entry 253.041.

# BENEFIT FROM BUSINESS WHICH DEALS WITH EMPLOYER OF UNION MEMBERS

### 245.001  LMRDA, SECTION 202(a)(3)

. . . any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent . . .

### 245.005  STOCKHOLDER IN MUSIC PUBLISHING FIRM

When an officer of a musician's union holds stock and is an officer in music publishing firms whose income is derived from record companies which engage in collective bargaining with the musician's union, reports may be required if a substantial part of the business of the music publishing firms consists of dealing with record companies whose employees the union represents or is actively seeking to represent.

### 245.100  LEASING TRUCKS TO EMPLOYER

Where a collective bargaining agreement between a local of newspaper truck drivers and the employer provides that each member-employee of the union may lease a truck to the employer at X dollars

per day of use, and an officer of the union who is a regular driver-employee of the employer leases his truck to the employer, no report under section 202(a)(3) of the Act is required for the reason that the leasing arrangement amounts to an incidental benefit of the employment relationship.

### 245.200  SUBSTANTIALITY OF DEALING

Union Officers A and B of a local union are co-owners of a building corporation. The corporation, through intermediaries who are regular meat wholesalers, sold meat to employers who bargain with the local union. In 1962, some 80% of the corporation's business of approximately $100,000 was with such employers. Both A and B owe reports for the year 1962 with regard to their interest in and their income from the building corporation pursuant to section 202(a)(3), since both the interest and the income are "derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent."

### 245.300  BUSINESS AGENT - SIDE EMPLOYMENT

If a union business agent were to take a job with an employer (and thereby receive income), and the employer's business consisted in substantial part of buying from,



245.300

BENEFIT FROM BUSINESS WHICH DEALS WITH EMPLOYER OF UNION MEMBERS, contd.

245.300  contd.

selling to, or otherwise dealing with other employers whose employees the labor organization with which the business agent is affiliated represents or is actively seeking to represent, a report would be required from the business agent. This would be so even though the primary employer does not himself employ anyone who is a member of the labor organization with which the business agent is affiliated and the labor organization does not represent and is not actively seeking to represent employees of the primary employer, and even though the business agent's job with the primary employer would not put him into contact with employees of any of the companies with which the primary employer deals and he will have no responsibility for activities in labor relations matters.

245.400  EQUIPMENT RENTING

If an officer or employee of Union X rents theatrical equipment to groups staging amateur plays, and such groups employ persons represented by Union X, the officer or employee renting the equipment must file a report pursuant to section 202(a)(3). The amateur group is the employer, and the renting of equipment is a business, a substantial part of which is carried on with employers whose employees Union X represents.

Opinion 9/16/60

245.500  REPAIR BUSINESS

Mr. A, Secretary-Treasurer and Business Agent of a union, is also the owner, along with his wife and minor child, of a small corporation whose major business activity is the repair of motion picture projection equipment used in theatres and the sale of new equipment to these same theatres. He is considered one of the most competent repairmen in the area where he resides. Certain members of his union alleged that he had been delinquent in getting wage raises for them for the reason that he was more concerned with having good personal business relations with the theatres with which he would have to bargain to secure wage raises for the members of his union. This union official is required to file a full report of his income from the corporation as well as that of his wife and minor child.



# BENEFIT FROM BUSINESS
# WHICH DEALS WITH UNION

## 246.001  LMRDA, SECTION 202(a)(4)

. . . any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasong directly or indirectly to, or otherwise dealing with such labor organization; . . .

## 246.005  MEMBER OF PARTNERSHIP DEALING WITH UNION

A and B are employees of an international union in a professional capacity and also have interests in a partnership which is under contract to render the same type of professional services to the union. The union has reported the persons concerned as employees who perform services other than those which are exclusively clerical or custodial in nature. If each of the persons referred to is in fact an employee of the labor organization, section 202(a)(4) would be applicable, since by virtue of his connection with a partnership which performs professional services pursuant to a contract with the labor organization, there is an "interest, legal or equitable, which he. . .directly or indirectly held in . . . a business any part of which consists of . . .dealing with such labor organization." In addition, such persons no doubt also derived income and benefits with monetary value from the partnership which deals with their union employer. In such instances, the employee is required to file a report with the Office.

## 246.100  DISPENSING MACHINES

Where a business agent for a union makes a deal with the union and employer whereby dispensing machines are installed in the plant and the profits are split among the agent, the union and the employer, the agent is required to report any profits which he derives from the transaction under section 202(a)(4) and 202(a)(5).

## 246.200  INTEREST MAY BE AS CREDITOR

Union Officer A of a local union had a one-third ownership interest (worth $8,000) in an insurance agency, a legal entity which is independent of the local and not a "subsidiary organization" thereof. Union Officer B, of the same local, was a creditor of the insurance agency by virtue of a loan of $10,000, secured by a 5% interest bearing note, made to the agency in 1959. During the years 1960 to 1962, while the note was still outstanding and interest payments were received by Officer B in the amount of $500 per annum, the agency "wrote" the automobile insurance policies for the local.

Section 202(a)(4) requires a report from a union officer who has an interest in an entity which does any business with the union of which he is an officer.

Therefore, reports are required from both union officers. The language of section 202(a)(4) is broad enough to render a distinction between a creditor or owner interest "academic."

246.250

BENEFIT FROM BUSINESS WHICH DEALS WITH UNION, contd.

### 246.250  INCOME FROM BUSINESS DEALING WITH TRUST

A union officer or employee is required to report income he receives from a business any part of whose buying and selling activities are with a <u>trust in which his labor organization is interested.</u> While This type of situation is not specifically covered in LMRDA, by 29 CFR 404.2, we are requiring union officers and employees to file reports as to their income or interest in a business, any of the activities of which are with the trust in which their labor organization is interested.

### 246.300  OFFICER AS WHOLESALER

When a local union establishes a gasoline station for the purpose of providing discounts for its members, and the president of the local union purchases wholesale gasoline with his own money, which he then sells to the union at a profit to himself, he is required under section 202(a)(4) of the LMRDA to file reports on these transactions with the union.

### 246.400  GRATUITIES FROM HOTEL WHERE CONVENTION HELD

Union officers who receive complimentary hotel rooms and other gratuities of substantial value from the hotel at which the union holds its convention are required to report pursuant to section 202 (a)(4).

While the furnishing of complimentary rooms by hotels to officials of organizations which hold conventions at their establishments is a common practice, reports under section 202(a)(4) nevertheless are required from the union officers so that the union members may be aware of substantial gratuities received by their representatives by virtue of their positions in the labor organization, and to disclose any possible conflict of interest situation between such officials and the employers which sell to or otherwise deal with the union.

### 246.500  "SUBSIDIARY ORGANIZATION" AS BUSINESS

Where a labor organization has a "subsidiary organization" as defined in Article X of the Instructions for the Preparation of LM-2, and where the officers of the labor organization are also officers of the "subsidiary organization," and where, further, there is full and complete disclosure of the activities of the "subsidiary organization" by the labor organization in accordance with the special instructions for "subsidiary organizations" in Article XI, it will not be necessary for the officers of the labor organization to file union officer reports pursuant to section 202(a) of the Act for the income, etc., received from the "subsidiary" since examination of the LM-2 filed by the labor organization will disclose to the members and the public the full income, expense, and allowances received by the union officer from the labor organization itself and its "subsidiary organization."

### 246.600  INCOME AS EMPLOYEE OF INSURANCE COMPANY

A union officer, who is an employee of an insurance company from which the union welfare fund pro-



BENEFIT FROM BUSINESS WHICH DEALS WITH UNION, contd.

246.600 contd.

cures insurance, is required to report that money which he receives as an employee of the insurance company, inasmuch as he derives income from a business which sells to or otherwise deals with a labor organization of which he is an officer.

### 246.605   EMPLOYEE OF UNION
ATTORNEY

A union president who works part-time for the union's attorney, keeping the union's books and filing necessary reports, and who receives half of the attorney's retainer from him as compensation, is required to file a report under section 202(a)(4) since the attorney operates a business (practice of law) which deals with the union and the union president receives income from that business. It is immaterial that motions passed by the executive board of the union and the membership indicate that this arrangement was known.

### 246.700   "DE MINIMIS" STOCKHOLDING,
INTEREST OR INCOME

An employee of a labor organization purchased, in an "Over-the-Counter" transaction in 1963, $400 worth of a common stock of a business which supplies his labor organization with more than one million dollars annually in goods and services. This employee occupies a position which requires him to make policy recommendations to officers of the labor organization regarding the purchase of such goods and services.

No report would ordinarily be required of the union employee under these circumstances (even though Over-the-Counter securities

do not come within the exception from union officer and employee reporting in section 202(b)) if (1) his total holdings, including the $400 purchase, had a prevailing market price of $1,000 or less, (2) the holdings were unrelated to the employee's status in the labor organization, and (3) he received income of $100 or less from the stock during 1963. This type of transaction comes within the terms of exclusion in Item (ii) of the Instructions relating to Part A of the LM-30.

It should be noted, however, that special reports may be required by this Office pursuant to the provisions of section 404.4 of the Regulations (29 CFR 404.4) on any matter, including matters expressly excluded by the Instructions to the form.

### 246.800   EMPLOYEE OF CREDIT UNION

If a credit union grants loans to a labor union, a report would be required from an officer of that labor union who is also an employee of the credit union. However, no report would be required merely because the credit union grants loans to members of the labor union.

There is nothing in the nature of the purposes or policies of a credit union which would appear to be adverse to the interests of a related labor union. However, it is conceivable that because of peculiar circumstances an employee of the credit union might find that his duty to the credit union conflicts with the duty he owes to his labor organization as its elected officer or employee. It might also be possible that a person could abuse his position with the credit union in such a way as to violate his duty of trust in relation to the labor organization.

# BUSINESS TRANSACTION WITH EMPLOYER OF UNION MEMBERS

### 247.001  LMRDA, SECTION 202(a)(5)

...any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and....

### 247.005  UNION OFFICER AS EMPLOYEE OF PENSION FUND

When a union officer is paid by the employer for services rendered in the capacity of a secretary to a pension fund, both the union officer and the employer are required to report the transaction.

### 247.100  DISPENSING MACHINES

See Manual Entry 246.100.

### 247.200  OPERATING A SIDE BUSINESS

The business agent of a local union has a side business which consists of repairing motion picture equipment and selling new equipment to the theatre operators who are the employers of the members of the union which the business agent represents. The transactions with the employers are a substantial part of the business agent's side business. He is required to file reports of his interest in and the income from that business under section 202(a)(3) of the Act (for which there is no statutory exception). On the other hand, the employers need not report under section 203(a)(1) since their purchases of equipment and their payments to the business agent for repairs are at the prevailing market price in the regular course of business.

### 247.300  DISCOUNTS AVAILABLE TO ALL EMPLOYEES

Section 202(a)(5) is designed to pick up any direct or indirect business transactions between the union officer (or his wife or minor child) and the employer whose employees the union officer's organization represents. Here there are two very important statutory exceptions, namely, payments of bona fide wages to the union officer for regular work performed, and purchases and sales of goods or services in the regular course of business at prices generally available to any employee of the employer. The second exception to reporting under section 202(a)(5) may be illustrated by this situation. An automobile manufacturer, in order to promote the sale of its cars to its own employees, offers any regular employee a car at a 20% discount. President A of the local that has collective bargaining relations with this automobile manufacturer buys a car at the 20% discount; President A is a regular employee on the assembly line. Since President A is a regular employee, no report of the discount given to him by the employer need be made since the same discount is available to all employees. On the other hand, if President A were not an employee, a report would be required.

# PAYMENT RECEIVED FROM ANY EMPLOYER OR CONSULTANT

## 248.001  LMRDA, SECTION 202(a)(6)

. . . any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

## 248.005  SCOPE OF SECTION

Section 202(a)(6) is designed for those situations which pose conflict of interest problems which are not covered in the previous five sections of 202. The Committee Reports supply this example:

Union Officer C accepts a payment from employer K with the understanding that C's union will not attempt to organize the K firm plant.

Normally it would be expected that C's union would attempt to organize that plant. This transaction, which is reportable under 202(a)(6) of LMRDA by the union officer, (and by the employer under 203(a)(1)) is one that is also indictable under section 302(a) of the Taft-Hartley Act.

A union officer must report under section 202(a)(6), if he receives any payment by way of dividends or otherwise from a firm which is competitive to one which has collective bargaining agreements with his own union.

Conflict of interest reporting under section 202(a)(6) does not require an employer who manufactures sweaters in California to report a wedding gift of $1,000 he has given to his son-in-law who is the Business Agent of a Machinist Union in Pittsburgh for the reason that, in the absence of any other factors, no conflict of interest situation is posed. The key issue of the problem lies in whether the payment (received by the union officer) poses a "conflict of interest" in the responsibilities of the union officer to his members to whom he owes fiduciary responsibilities as a union officer to represent them with undivided loyalty.

A payment by an employer to an ordinary member of the union who is not an officer would not be reportable. Similarly, if the maker of the payment does not meet the definition of employer, no report would be required by the union officer even if the payment he received was clearly one that poses a conflict of interest situation.

Exceptions: In 202(a)(6) of the Act note the reference to section 302(c) of Taft-Hartley. Union officers will be particularly concerned with subsections 1 and 3 thereof. Note that the language of those subsections has been incorporated specifically in various of the first five subsections of 202 (a). By far the most important one is the bona fide regular employee exception: Where an employer pays a union officer wages for work performed, no report is required. The difficulties stem from those released or lost time situations. For example, where a union officer is responsible for handling grievances for the union in his plant, the contract between the union and the employer may provide in many instances that this officer shall be excused from his regular work to handle the grievances and shall be paid his regular wages while handling the grievances. Such a situa-

**248.005**

## PAYMENT RECEIVED FROM ANY EMPLOYER OR CONSULTANT, contd.

**248.005 contd.**

tion will not normally require reports from the union officer or the employer on the theory that the employee officer is being paid for work performed of value to the employer who is interested in seeing to it that grievances are immediately adjusted.

### 248.100 TRANSACTION WITH PRESIDENT OF EMPLOYER ACTING IN INDIVIDUAL CAPACITY

Under the New York State Labor and Management Improper Practices Act, Section 723, a union officer is precluded from having any financial interest in any business of an employer whose employees his labor organization represents. Pursuant thereto Union Officer A sold his stock interest in X Corporation to Y, President of X Corporation. Y purchased the stock in his individual capacity. Y owns 30% of the X Corporation's stock (the 30% includes the stock secured from A). The purchase agreement between A and Y calls for an initial payment on execution of the agreement and the balance payable in five equal annual installments. Under these circumstances both A and Y are required to file reports of this transaction; A under section 202(a)(6), and Y under section 203(a)(1). Notwithstanding the fact that Y purchased stock in his own individual capacity, he is considered an employer under section 3(e) of the Act. 1/

At the same time Mrs. B, wife of Union Officer B (who is also an officer of the union which bargains with the X Corporation), also sold her stock interest in X Corporation to Y in his individual capacity. Payments are on the same terms as

the transaction involving A and Y. Under these circumstances, Union Officer B is required to report pursuant to section 202(a)(6) with regard to the payments received by his wife from Y. On the other hand, Y is not required to report under 203(a)(1) the payments made to the wife of Union Officer B. 2/

**NOTE 1:** A key official of a corporation will be considered to be an employer within the meaning of section 3(e) of the Act if he has the responsibility for any aspect of the employer-employee relationship of the corporate employer, albeit he is dealing in his "individual" capacity with a union officer.

**NOTE 2:** Under section 202(a)(6) a union officer must report any payments received by his wife or minor child, whereas, under section 203 (a)(1) an employer need report only payments made to a union officer and is not required to report payments to a union officer's wife <u>unless</u> the wife is a mere conduit for the transmission of funds to the union officer.

### 248.200 PAYMENT OF WAGES FOR WORK NOT PERFORMED

Members of a local were paid wages by X Department Store for a project on which they did no work but on which they would have been employed had not the store inadvertently employed a non-union contractor. Payment of the funds was made by the store to the union ste-



248.20

PAYMENT RECEIVED FROM ANY EMPLOYER OR CONSULTANT, contd.

248.200  contd.

ward for  disbursement  to the mem-
bers of the local.

Section 202(a)(6) requires every
"officer" or "employee" of a labor
organization to file a report list-
ing  any  payment of money which he
received  from any employer  except
payments of the kind referred to in
section 302(c) of LMRA.  Therefore,
the  union  steward  is  required to
report  the receipt of this payment
if he is an "officer" or "employee"
of the  labor  organization  within
the meaning of those  terms as they
are  defined  in  sections 3(f) and
3(n) of LMRDA.  Further,  any offi-
cer  of the union who received pay-
ments from  the store through   the
union  steward would be required to
file a report.

X Department Store  is  required
to  report  the payment pursuant to
section  203(a)(1).  Since the pay-
ment  in  question was a payment of
wages  for work  not  performed, it
cannot  be said to come  within the
regular  wage  exception in section
302(c) of LMRA.

248.300  PAYMENTS TO JOINT
         APPRENTICESHIP COMMITTEE

Payments by employers to a Joint
Apprenticeship  Training  Program ,
which  has  been created  under the
conditions set forth in section 302
(c)(6)  of  the Labor Management Re-
lations Act  (section 505 of LMRDA)
are  not  required  to be  reported
under section 202(a)(6) of LMRDA by
a  union  officer  serving  as  the
union representative on such a com-
mittee.
See also Manual Entry 253.805.

# EMPLOYER REPORTING IN GENERAL

**250.001  LMRDA, SECTION 203**

(a) Every employer who in any fiscal year made--

(1) any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses),or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except (A) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution and (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended;

(2) any payment (including reimbursed expenses) to any of his employees, or any group or committee of such employees, for the purpose of causing such employee or group or committee of employees to persuade other employees to exercise or not to exercise, or as the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing unless such payments were contemporaneously or previously disclosed to such other employees;

(3) any expenditure, during the fiscal year, where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing, or is to obtain information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

(4) any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing, or undertakes to supply such employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding; or

(5) any payment (including reimbursed expenses) pursuant to an agreement or arrangement described in subdivision (4); shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agreement, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.

\* \* \* \* \*

250.001

EMPLOYER REPORTING IN GENERAL, contd.

## 250.001  contd.

(d) Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) unless he was a party to an agreement or arrangement of the kind described therein.

(e) Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.

## 250.002  SEE 29 CFR 405

## 250.010  EFFECTIVE DATE

Sections 201, 202, and 203 became effective immediately upon the date of enactment, September 14, 1959. Section 207, which is titled "Effective Date," merely specifies the period within which reports required under those sections must be filed.

## 250.100  ATTORNEY

An attorney who meets the definition of employer (see Manual Entry 030.440) and makes a loan of money to a labor organization would be required to file an employer report under section 203(a)(1).

## 250.200  CORPORATE OFFICERS

A manager or a president of a corporation may be required to report under section 203 payments to a union officer, even if the payment involves an activity "individual" in nature and not on behalf of the corporate employer, as for example, the sale at half the true and fair market value of his home to a union officer of the union which represents the employees his corporate firm employs.

## 250.300  FRANCHISED AGENTS OF AGVA

See Manual Entry 030.450.




# EMPLOYER REPORTS: WHO MUST REPORT

See Manual Entry 250 ff. for statutory provisions; 030.400 for definition of "Employer."

251.002  SEE 29 CFR 405.1(b), 405.7, 405.8

251.005  NONUNION EMPLOYER

The fact that none of an employer's employees are union members does not except him from the reporting requirements of this section, if otherwise he would be required to report.

251.100  SELF-INCRIMINATION

Reports required of employers under section 203(a) of LMRDA must be submitted notwithstanding the fact that the information required to be included in the report may disclose a violation of section 302 of the Taft-Hartley Act (section 302 contains a criminal provision). It has been argued that the requirement to file such a report infringes on the 5th amendment to the Constitution of the United States.

NOTE:  For a discussion of the constitutionality of the Reporting requirements, see Manual Entry 241.400.

252

# WHEN AND WHERE TO FILE EMPLOYER REPORTS



### 252.001  LMRDA, SECTION 207(b)

Each person required to file a report under section 201(b), 202, 203(a), or the second sentence of 203(b) shall file such report within ninety days after the end of each of its fiscal years; except that where such person is subject to section 201(b), 202, 203(a), or the second sentence of 203(b), as the case may be, for only a portion of such a fiscal year (because the date of enactment of this Act occurs during such person's fiscal year or such person becomes subject to this Act during its fiscal year) such person may consider that portion as the entire fiscal year in making such report.

### 252.002  SEE 29 CFR 405.1, 405.2, 405.3, 405.4, 405.5.

### 252.005  DUE DATE

The Act requires that employer reports be submitted within 90 days after the end of an employer's fiscal year so as to include information on all reportable payments and agreements or arrangements which occurred during the year. If certain arrangements are subject to the reporting requirements, reports should be submitted after the end of every fiscal year in which such an arrangement was made and also after every year in which payments were made pursuant to such an arrangement. At the same time, the employer would report any other payments or agreements or arrangements required by the form.

# PAYMENTS TO UNIONS-OFFICERS-ETC.

253.001  LMRDA, SECTION 203(a)(1)

... any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except (A) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution and (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended; ...

253.005  PAYMENT FOR WORK NOT PERFORMED

See Manual Entry 248.200.

253.007  EMPLOYER-MEMBER PAYING DUES

Although there is no mention in section 302(c) of the LMRA of dues paid to a union by an employer who is a member of the union, such payments need not be reported by the employer under section 203(a)(1) of the LMRDA. It has previously been held that employers may join or retain membership in a union so long as they were not required to do so. Obviously, the right to join includes the obligation to pay dues. Further, while the dues are paid by employers, they are paid by them in the capacity of union members and not in the capacity of employers. However, if the union's constitution establishes __higher__ dues for employers, these dues would have to be reported, since the payments are required from them as __employers__ and not as members.

253.010  REIMBURSEMENT OF EMPLOYEES FOR WORK PERMIT COSTS

An employer imported a number of men from local unions of a national union outside the jurisdiction of the local affiliate of that national to work on a special project within that local's jurisdiction. Under the constitution and bylaws of the national union, such workmen were required to pay a charge for a work permit in the jurisdiction of the local where work was secured. The imported workmen paid the work permit fee to the local and obtained receipts which were subsequently turned over to the employer who reimbursed the men for this expense.

In the absence of evidence showing that such an arrangement was a scheme to achieve an indirect payment by an employer to a union, the reimbursement of the men by the employer of the cost of a work permit is consistent with a legitimate effort by an employer to make it more attractive for specialized employees to work for him away from their own home base.

253.020  PRESIDENT OF EMPLOYER ACTING IN INDIVIDUAL CAPACITY

Under the New York State Labor and Management Improper Practices Act, section 723, a union officer is precluded from having any financial interest in any business of an employer whose employees his labor organization represents. Pursuant

**253.020**



### PAYMENTS TO UNIONS, OFFICERS, ETC., contd.

**253.020  contd.**

thereto, Union Officer A sold his stock interest in X Corporation to Y, President of X Corporation. Y purchased the stock in his individual capacity. Y owns 30% of the X Corporation's stock (the 30% includes the stock secured from A). The purchase agreement between A and Y calls for an initial payment on execution of the agreement and the balance payable in five equal annual installments. Under these circumstances, both A and Y are required to file reports of this transaction; Y is required to report under section 203(a)(1). Notwithstanding the fact that Y purchased stock in his own individual capacity, he is considered an employer under section 3(e) of the Act. 1/

At the same time Mrs. B, wife of Union Officer B (who is also an officer of the union which bargains with the X Corporation), also sold her stock interest in X Corporation to Y in his individual capacity. Y is not required to report under 203(a)(1) the payments made to the wife of Union Officer B. 2/

**NOTE 1:**  A key official of a corporation will be held to be an employer within the meaning of section 3(e) of the Act if he has the responsibility for any aspect of the employer-employee relationship of the corporate employer, albeit he is dealing in his "individual" capacity with a union officer.

**NOTE 2:**  Under the specific language of section 203(a)(1) an employer need report only payments made to a union officer and is not required to report payments to a union officer's wife unless the wife is a mere conduit for the transmission of funds to the union officer.

### 253.030  POLITICAL CONTRIBUTIONS

See Manual Entry 243.400.

### 253.040  LOANS TO EMPLOYEES

Employers are not required to report loans made to employees under circumstances and terms unrelated to the employees' status in a labor organization, unless the Secretary, in particular cases, requires the submission of a special report on such information. Whether a particular loan meets the condition set forth above is, of course, a question of fact to be determined in each case on the basis of the pertinent circumstances. The size and terms of a particular loan, especially in relation to the size and terms of loans actually made to other employees, would be significant circumstances in making this determination.

### 253.041  EMPLOYER AS GUARANTOR OF OFFICER LOAN

An employer who guarantees payment of a bank loan made to a labor organization representative is required to report this since it constitutes an "other thing of value" to the recipient within the meaning of section 203(a)(1). It would correspondingly be required to be reported by a recipient labor organization officer or employee under section 202 of the Act.

PAYMENTS TO UNIONS, OFFICERS, ETC., contd.

## 253.045  ADVANCES

An advance on salary offered to all employees is not reportable by the employer since it may be regarded as a payment of the kind referred to in section 302(c)(1) of the LMRA, 1947, in that it is payable to an officer of a labor organization by reason of his service as an employee of said employer. Further, Instructions to LM-10, Employer Report, Part B, makes the following exception:

"(b) Loans made to employees under circumstances and terms unrelated to the employees' status in a labor organization."

## 253.050  UNION MEMBERS WHO CONTRACT WORK

Members of local unions who are classified as contractors (journeymen who as members in good standing work with the tools of the trade and request the privilege to contract work) are employers in addition to being members. As employers they are required to file reports with the Office regarding the payments in excess of regular dues which they make to their local union for the privileges of contracting and working at the same time. Such payments are not among those excluded from the Act under section 302(c).

## 253.060  NEGOTIATING EXPENSES

Company A and Union B are attempting to negotiate production standards related to the operation of new equipment. The company, through its plant officers, invites several union representatives to visit other plants of the company with a view to observing the new equipment in operation. It was believed that when the union representatives viewed the new equipment in operation they would have a more adequate factual basis for negotiating a production standard with Company A. The company paid the union representatives their regular wages and their actual expenses for travel and hotel accommodations (one night's lodging).

Under these circumstances, no employer report is required from the company and no labor officer reports are required from the union representatives because the payment of bona fide expenses by the company in connection with collective bargaining and negotiations are considered to come within the scope of the regular wage exception referred to in section 302(c) of the LMRA, 1947, as amended.

But see Manual Entry 243.200.

## 253.061  MEALS FOR BARGAINING COMMITTEE

The practice of an employer, who pays for meals of a five-man bargaining committee of an independent local on the occasion of its meeting several times a year with the employer's management committee to discuss matters under the collec-

253.061

253.061  contd.

tive bargaining agreement, is not reportable under section 203(a)(1) of the Act in view of Item (e) of the boxed exclusionary language of Part B of Form LM-10 (sporadic or occasional gifts or gratuities) if the practice involves an insubstantial cost per recipient and amounts to occasional acts of hospitality which the employer extends to other groups with which it meets to discuss matters of mutual interest.

### 253.062  COMPLIMENTARY ROOMS TO UNION OFFICERS

Hotels which furnish complimentary rooms to union officers as such during a convention are required to file reports under section 203(a)(1) notwithstanding the exception in section 302(c)(3) of the Taft-Hartley Act, as amended. While the furnishing of complimentary rooms by hotels to officials of organizations which hold conventions at their establishments is a common practice, where rooms are made available without charge or at a substantial "discount" because the men involved are officers of the union dealing with the hotel, reports are required from both parties.

### 253.070  ADVERTISING IN UNION LITERATURE

Expenditures for employer advertisements in union souvenir journals paid to a labor organization should be treated as "sporadic and insubstantial." Where such payments are made to a banquet group or committee composed of employees

of the employer, such payments need not be reported unless the purpose is to persuade the employees in relation to their collective bargaining rights.

253.071

29 CFR 405.5 by reference to Form LM-10 specifically excludes from the reporting requirements certain sporadic or occasional gifts, gratuities or favors of insubstantial value. Advertisement in a testimonial booklet would not need to be reported unless its purpose, directly or indirectly, is to influence employees in relation to their collective bargaining rights.

### 253.072  SOLICITING PAID ADVERTISEMENTS FROM EMPLOYER

There is nothing in the LMRDA of 1959 which would affect the legality of a union's continuation of its practice of soliciting paid advertisements from employers for insertion in a souvenir journal in connection with its annual dinner.

### 253.080  CONTRIBUTIONS TO UNION APPRENTICESHIP PROGRAM

The furnishing by an employer of several hundred dollars worth of steel every three or four years on the request of the union for use in the union's apprenticeship training program can be considered a "sporadic or occasional gift... of insubstantial value" within the meaning of exception (e) in the large box on Part B of the LM-10 form. Therefore, no report of such a gift is required.



253.081

PAYMENTS TO UNIONS, OFFICERS, ETC., contd.

### 253.081  TO IMPROVE LABOR-MANAGEMENT RELATIONS

Occasional acts of hospitality which are designed solely to further sound labor-management relations, which involve an insubstantial cost for each person invited, and which the company extends in similar fashion to other groups with which it meets on matters of mutual interest need not be reported.

### 253.082  EMPLOYEE RECREATION

Employer payments to a fund for the purposes of conducting a bowling league, picnic, clambake or Christmas party is not prohibited under the Act. Neither is a report required from the employer; such payments fall within the exception noted in the large box in Part B of the LM-10 which states that "sporadic or occasional gifts, gratuities, or favors of insubstantial value, given under circumstances and terms unrelated to the recipients' status in a labor organization (e.g., traditional Christmas gifts)," need not be reported.

### 253.083  EMPLOYEE PICNIC

For many years it had been the custom of Company X to sponsor an annual picnic for its employees. After the company was organized by Union Y, the union decided that it would co-sponsor the picnic and share the expenses equally with the company. The cost of the picnic for the 200 employees of the company was $3,000.

Under these circumstances no report is required from the company pursuant to section 203 of LMRDA under either the past or the present practice because the payment involved (at most $15.00 per employee and his family) is, in effect, a gift or additional wages of insubstantial value given under circumstances unrelated to the recipient's status in a labor organization. This is one of the administrative exceptions to the reporting requirements of LMRDA granted by the Secretary of Labor.

### 253.090  DIVIDENDS TO LABOR ORGANIZATION

Payments of dividends to labor organizations which are stockholders of the corporation need not be reported, notwithstanding the fact that the corporation is on notice that the dividend payment is to a labor organization.

### * 253.091  PAYMENTS TO SUBSIDIARY OF A LABOR ORGANIZATION

An employer made a payment to a Building Corporation which was a subsidiary of a local labor organization as reparation for a violation of the collective bargaining agreement. The violation involved the employer's breach of a contract provision prohibiting the use of prefabricated materials. Since the reparation payment made to the subsidiary of the local did not fall within the exceptions set forth in section 302(c), Labor Management Relations Act, 1947, as amended, it is required to be reported by the employer under section 203(a)(1) of the LMRDA.

253.100

# PAYMENTS EXCEPTED UNDER TAFT-HARTLEY IN GENERAL

### 253.101  LMRDA, SECTION 203(a)(1)

. . .and (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended;. . .

### 253.106

The LMRDA of 1959 does not place with this Department any final authority to construe the provisions of law which are amended by section 505 of the Act. Such authority is left, as before, in the courts having jurisdiction to decide questions arising in the criminal proceedings and civil actions contemplated by subsections (d) and (e) of section 302 of the LMRA, 1947, as amended. To the extent the provisions of this section as amended by the new law have a bearing on the Department's responsibilities under Title II of the Reporting and Disclosure Act we may, of course, have to reach certain conclusions as to their meaning. We have not issued any official interpretations of these provisions for purposes of Title II. Furthermore, the Department of Labor is not in a position to advise as to the view the Department of Justice might take in carrying out that Department's responsibilities for the enforcement of the criminal sanctions provided in section 302(d) of the Taft-Hartley Act.

### 253.107

Although it will no doubt have occasion to consider the meaning of section 302(c) in determining whether particular transactions are reportable under section 202(a)(6) and 203(a)(1) of the LMRDA, the Department of Labor has no administrative or enforcement responsibilities with respect to the prohibitions contained in section 302 of the Taft-Hartley Act. Violations of that section are subject to injunctive restraint in the Federal district courts upon the petition of any interested party and the Attorney General can institute criminal proceedings for willful violations.

253.200

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:

# PAYMENTS TO EMPLOYEE-CONSULTANT ACTING OPENLY



### 253.201  LMRA, SECTION 302(c)

The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration . . . .

# REGULAR WAGE EXCEPTION

## 253.301  LMRA, SECTION 302(c)(1)

. . .or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; . . .

## 253.305  EXCEPTION FOR REGULAR PAYMENTS TO EMPLOYEES

The explanation and instructions in the form for the Employer Report set forth that certain payments are not required to be reported under section 203(a) unless the Secretary, in particular cases, requires the submission of a special report thereon. Among the payments not required to be reported are:

Payments made to any regular employee as wages or other compensation for service as a regular employee of the employer, or by reason of his service as an employee of such employer, for periods during regular working hours in which such employee engages in activities other than productive work, if the payments for such periods of time are: (1) required by law or a bona fide collective bargaining agreement, or (2) made pursuant to a custom or practice under such a collective agreement, or (3) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization.

Part A, LM-10
But see Manual Entries 254.100, 255.200 and 266.100.

## 253.320  CHIEF STEWARD'S PAY

When a chief steward performs no productive work for the company during the regularly scheduled 40-hour work week, and the amount of payment is based upon the job classification held prior to his election as chief steward, and such payments are made pursuant to practices of long standing established in conjunction with collective bargaining agreements, such payments would fall within the exclusionary language of section (c) in the second box in Part B of LM-10, and thus would not need to be reported.

## 253.321

An employee who is paid at the rate of a forty-hour productive week, but whose entire function is that of a chief steward who hears and investigates grievances, would not need to have payments to him reported under section 203(a) of the Act.

## 253.322  RELEASED TIME PAYMENTS

Pursuant to a collective bargaining agreement with the employer, wages are to be paid the president of a local labor organization in his capacity as "chief steward." As such, his activities performed on company time consist of the investigation of grievances and their processing. The officer in question does not handle other union business during his period of employment with the employer. Under such circumstances, no report of payments made to the officer is required of the employer on Form

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
REGULAR WAGE EXCEPTION, contd.

253.322  contd.

LM-10 (see the large box in Part B) and no report need be filed by the union officer pursuant to section 202 of the Act (see section 302(c), LMRA, 1947, as amended).

253.323  ADDITIONAL PAY TO SHOP STEWARDS

The legality of a clause in a collective bargaining agreement which provides that "shop stewards shall receive $2.00 per week in addition to their regular wage while they shall hold such office," remains the same as before the LMRDA was enacted.

Such payments are not required to be reported under the Act since they are excluded by the language in (c) of the large box shown in Part B of the LM-10, Employer Report Form.

253.330  PAYMENT FOR DEFERRED VACATION

A bus driver for the X Tramway Corporation was elected to the office of Division President of one of the divisions of his union.  He took a leave of absence from the corporation as of January 1, 1963 to devote full time to his new duties.  He now raises a question concerning the reportability of a payment by the corporation to him of $268.00 which he earned in 1962 under a corporation policy which allows employees to draw vacation pay for vacation earned but not taken during the previous year. The money thus accumulated is not paid to the employee until the next calendar year.

Since the payment in question is a payment by an employer to a union officer, it would constitute a violation of section 302(a) of LMRA unless it can be considered to come within one of the exceptions contained in section 302(c) thereof. Section 302(c) states that the provisions of section 302 shall not be applicable to any money payable by an employer to any officer of a labor organization who is also an employee or former employee of such employer "as compensation for, or by reason of his service as an employee of such employer." Since it appears to have been the policy of the employer in this case to allow all employees to take a money payment in lieu of a vacation, the payment to the Division President appears to come within the terms of section 302(c)(1) and is therefore exempted from the reporting requirements of section 202(a)(6) and section 203(a)(1) by the terms of those sections.

253.340  INCENTIVE PLAN PAYMENTS

Payments made under an incentive plan which is contained in the collective bargaining agreement and which contemplates the payment of additional compensation to employees who through additional effort obtain new accounts for the employer come within the purview of section 302(c)(1) of LMRA and would therefore not be reportable by the employer under section 203(a)(1) of LMRDA in the absence of other factors.  Similarly, such payments would not be reportable by the union officer-employees who received such additional compensation.

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
REGULAR WAGE EXCEPTION, contd.

### 253.350  CHRISTMAS BONUSES

Christmas bonuses which are based on a certain percentage of earnings, and which are payable on a uniform basis to all employees without regard to their relationship to a union or their status therein, fall within exceptions provided in section 203(a)(1)(B) of the Act (section 302(c)(1) of the LMRA).

### 253.360  GROUP INSURANCE

Under collective bargaining agreements where an employee selected to represent the union is granted leave of absence without pay for this purpose and during this leave the employee's rights are preserved for him, including the provision for group insurance for the employee and his dependents in the same amount and in the same manner as is provided for active employees, no LM-10 report is required with regard to these payments pursuant to section 203(a) of the Act.

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
# PAYMENTS OF DISPUTED CLAIMS

## 253.401  LMRA, SECTION 302(c)(2)

. . .with respect to the payment
or delivery  of  any money or other
thing of value in satisfaction of a
judgment of any court or a decision
or award of an arbitrator or impar-
tial chairman or in compromise, ad-
justment, settlement, or release of
any claim, complaint, grievance, or
dispute in the absence  of fraud or
duress; . . .

253.500

# SALES AND PURCHASES AT MARKET PRICES

### 253.501  LMRA, SECTION 302(c)(3)

. . .with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of busines; . . .

### 253.505  STOCK PURCHASE PLAN

Where an employer has a stock purchase plan under which all employees may purchase stock at a discount, no reports are due from the employer with regard to the benefit given union officers who are regular employees since the "benefit" is deemed to be additional compensation within the meaning of section 302(c)(1) of Taft-Hartley.

# DUES DEDUCTED FROM WAGES

## 253.601   LMRA, SECTION 302(c)(4)

. . . with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; . . .

## 253.605   CHECKOFF NEGOTIATED BY SUPERIOR BODY

Where a superior labor organization, such as a District Lodge of Machinists, negotiates a collective bargaining agreement with an employer under which there is a bona fide dues checkoff agreement which on its face meets the terms and conditions of section 302(c)(4) of the LMRA, 1947, as amended, no employer report, pursuant to section 203(a)(1) of the LMRDA, is required where by direction of the District Lodge the dues are sent directly to the local lodge in which the employees of the employer are members, even though the local lodge does not negotiate the agreement.

## 253.610   REPORTABLE DUES PAYMENTS

If payments of employees' union dues are made by an employer in accordance with section 302(c)(4) of the LMRA, the employer is exempted from the reporting requirements of section 203(a)(1) of the LMRDA with respect to such payments. Otherwise, e.g., if the payments are made from the employer's own funds or if they are made without an assignment meeting the statutory requirements, a report is necessary and should be made in such detail

as is prescribed by section 203(a) of the LMRDA.

## 253.625   "DUES" INCLUDES INITIATION FEES AND ASSESSMENTS

The Department of Justice has taken the position that "initiation fees and assessments, being incidents of membership, should be considered as falling within the classification of membership dues" as that term is used in section 302 (c)(4) of the LMRA. (Memorandum of Assistant Attorney General to Assistant Solicitor General, May 13, 1948, 22 LRRM 46)

NOTE: In view of this opinion, no reports are required under section 203 of LMRDA of the payment of initiation fees or assessments by an employer to a union under a valid checkoff arrangement in writing providing for the payment of "membership dues."

## 253.630   ASSESSMENTS

A checkoff arrangement for assessments which parallels the requirements for the checkoff of membership dues would not be considered improper. That is, where "the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner," a checkoff of assessments would be proper.

## 253.640   EMPLOYER DEDUCTION OF SUPERVISOR DUES

An employer is required by section 203(a)(1) of the LMRDA to report union dues deducted for super-

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
DUES DEDUCTED FROM WAGES, contd.

**253.640  contd.**

visors formerly covered by a col-
lective bargaining agreement and
remitted to the union, unless such
payment could be regarded as a pay-
ment "of the kind referred to in
section 302(c) of the LMRA, 1947, as
amended." The only portion of that
exemption which would have any ap-
plicability in such an instance is
section 302(c)(4) exempting "money
deducted from the wages of employ-
ees in payment of membership dues
in a labor organization," subject
to a provision that the deduction
be authorized by the employee by
written assignment.

In making such a determination
it would be necessary to consider
the broad definition of "employee"
in section 3(f) of LMRDA as "any
individual employed by an employer,"
and the more restricted definition
in section 2(3) of the LMRA, which
expressly excludes from that cate-
gory "any individual employed as a
supervisor." When section 302(c)(4)
is placed in the setting of the
LMRDA, and absent the considerations
which motivated Congress to exclude
supervisors from the definition of
"employee" in drafting the LMRA,
our view is that the broader defi-
nition of "employee" in section 3(f)
of the LMRDA appropriately applies
to the 302(c)(4) exemption as it is
adopted by the LMRDA. Consequently,
reporting would not be required of
payments to unions for deductions
from supervisors' wages for member-
ship in the union.

**253.641  EMPLOYER-MEMBER**
**PAYING DUES**

See Manual Entry 253.007.

**253.650  DUES DEDUCTIONS FROM**
**PENSION PAYMENTS**

The deduction of union dues from
pension payments to retired employ-
ees who are union members is not
prohibited by section 302(a) of the
Labor Management Relations Act and
would not have to be reported under
section 203 of the LMRDA, if such
deductions are made pursuant to a
collective bargaining agreement and
have been voluntarily authorized in
writing.

# PAYMENTS TO WELFARE AND PENSION TRUST

## 253.701  LMRA, SECTION 302(c)(5)

. . . with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event of the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principle office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities . . .

## 253.705  SCOPE OF PROVISION

Section 505 of the LMRDA, 1959, amends section 302(c) of the LMRA, 1947, as amended, to provide, in part, the conditions under which contributions by an employer to a union health and welfare fund can be made. Included are requirements that the payments into the fund be held in trust for the benefit of employees and their families; that the detailed basis on which the payments are to be made is specified in a written agreement between the employee representative and the employer; and that employees and employers are equally represented, together with neutral persons selected by them, in administration of the fund. The Secretary of Labor does not have the authority to enforce (nor normally to investigate) those sections of the Act which are amendments to the LMRA, 1947, as amended.

253.705

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
PAYMENTS TO WELFARE AND PENSION TRUST, contd

### 253.706   PAYMENTS TO PLANS NOT MEETING STATUTORY CONDITIONS

Where an employer makes payments to a union or jointly administered pension, vacation, or welfare plan created subsequent to the enactment of the Taft-Hartley Act which does <u>not</u> meet the conditions set forth in section 302(c)(5) and (6) of that Act, such payments are considered payments to a "labor organization or officer, agent, shop steward or other representative, or employee of any labor organization" and must be reported on Schedule B of Form LM-10, the Employer Reporting Form, pursuant to section 203(a)(1) of the LMRDA.

### 253.710   TRUSTEES SELECTED BY UNIONS AND EMPLOYER ASSOCIATIONS

In a situation where unions and employer associations, in the building trades industry, establish a trust fund pursuant to a collective bargaining agreement which is administered by trustees selected by the unions and the employer associations in accordance with section 302(c)(5) of LMRA, a question was raised as to the reportability (under section 203 of LMRDA) of payments made to such fund by an independent employer who enters into a similar agreement with the same unions under which his contributions are accepted by the trustees and administered for his employees without such employer having any voice in the selection of the management trustees of little control over the trustees' actions.

The point in question was answered in a case brought under the LMRA. In the Case of <u>United Marine Division, ILA Local 333, AFL</u> v. Es-

sex Transportation Co., 216 F. 2d 410, the U. S. Court of Appeals for the Third Circuit rendered a decision which in substance was as follows:

Where a welfare fund, established by agreement between a union and an employer's association, is operated by trustees chosen by the contracting parties, a promise, if any, by an employer, who is not a member of the employers' association, to make payments to trustees of the fund is not a promise to make payment to representatives of any of the employer's employees within the meaning of the statute prohibiting employers from making such payments.

The union brought suit in the District Court to compel the Essex Transportation Company to make payments, per oral agreement, to trustees of a welfare fund for employees. The defendant contended that if the agreement was made, it was insufficient to hold them liable for payments because of the provisions of section 302, LMRA. In reversing the District Court's judgment which had been in favor of the defendant, the Court of Appeals said, "The promise alleged was to pay these trustees. These trustees were not, in our judgment, representatives of the employees. They were trustees of a welfare fund."

In view of the Third Circuit decision, it would appear that no reports are required under section 203 of the LMRDA where payments have been made to trust funds under similar conditions.





PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:
PAYMENTS TO WELFARE AND PENSION TRUST, contd.

## 253.720   DIRECT PAYMENTS TO UNION

A group of independent retail stores joined together as an informal organization of employers. These employers individually make payments to a local representing their employees for employee health and welfare benefits. Part of this money is used to pay the premium on an insurance policy for employee benefits and the remainder is retained by the local to defray the expense of administering the program.

The payments in question are payments to a labor organization and are therefore within the scope of section 203(a)(1) unless they are the kind referred to in section 302(c) of the LMRA. While it is true that section 302(c)(5) of LMRA exempts money paid to a trust fund established under certain conditions for the purpose of providing employee health and welfare benefits, the payments in question are not being made to a trust fund, but are paid directly to the local which uses part of the money to pay the cost of an insurance policy for employee benefits.

Under such circumstances, each employer making payments to the local must report these payments. The amount to be reported is the entire amount which each employer pays the local and not just the difference which the local uses to defray the cost of administering the program.

## 253.730   PURPOSE OF EMPLOYER'S PAYMENTS

Sections 302(c)(5) and (6) require that the employer's payments must be used exclusively for certain specified purposes. It is not sufficient that the disbursements be, "directly related to the welfare of the union membership"; they must have one of the particular purposes specified in the statute.

## 253.750   PAYMENT TO UNION OFFICER BY EMPLOYER FOR PENSION FUND

When a union officer is paid by the employer for services rendered in the capacity of a Secretary to a pension fund, both the union officer and the employer are required to report the transaction.

## 253.760   PAYMENT TO TRUST FOR LOST TIME

Form LM-10 states that payments to a trust fund for periods of "lost time" are not required to be reported if they are either required by law or a bona fide collective bargaining agreement, or made pursuant to a custom or practice under such a collective bargaining agreement.

## 253.770   USE OF WELFARE FUND MONEY

On appeal by the trustees of a jointly administered trust from an injunction granted by the District Court to the Kroger Company to prevent the trustees from making certain expenditures of fund monies, the Court of Appeals reversed the District Court insofar as the lower court held that coverage under a section 302(c)(5) trust could not be extended to allow retired employees of employers, employees of the trust, and officers and employees of the union to participate as beneficiaries under the trust. The Court held that persons within these categories may participate as beneficiaries under the trust: Provided, That (1) the retired employ-



253.770

253.770   contd.

ees were covered by the trust while actively employed; and (2) the union (whose officers and employees may participate only if the union contributes to the fund for them as an employer) may not participate in the selection of employer trustees.

In regard to employees of the trust itself, the Court held that their coverage is not improper even though the expense of their participation is effected by an internal book transfer from surplus since it does not infringe on other contributing employers' contributions "any more than a cash wage and does not make the trust any less a contributor." The Court also excluded the trust from participation in the selection of employer trustees. Blassie, et al v. Kroger Co., (U.S. C.A., 8th Cir., April 25, 1965), 345 F. 2d 58, 59 LRRM 2034, 51 L.C. 19, 659, reversing in part, Kroger v. Blassie (U.S.D.C., E.D., Mo., 1964) 225 F. Supp. 300, 55 LRRM 2224, 48 L.C. 18,692.

NOTE:   The Court of Appeals sustained the District Court's holding that (1) the acquisition and development of land to be used primarily for recreation purposes and (2) the operation of a pharmacy where drugs and medicines were available at discount prices to persons not covered under the trust, were not proper purposes on which to expend trust funds.

# PAYMENTS TO A FRINGE BENEFIT TRUST

## 253.801  LMRA, SECTION 302(c)(6)

. . . with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: <u>Provided</u>, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds. . .

## 253.805  PAYMENTS TO JOINT APPRENTICESHIP COMMITTEE

Payments by employers to a Joint Apprenticeship Training Program, which has been created under the conditions set forth in section 302 (c)(6) of the Labor Management Relations Act (section 505 of LMRDA), are <u>not</u> required to be reported under section 203(a)(1) of LMRDA. See also Manual Entry 248.300.

5/73

253.900

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:

# SCHOLARSHIP OR CHILD CARE CENTER TRUST

\* 253.900  LMRA, SECTION 302(c)(7)

...with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, or (B) child care centers for preschool and school age dependents of employees: _Provided_, That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: _Provided_  _further_, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds.

(Note.  Section 302(c) of the LMRA was amended by Public Law 91-86 on October 14, 1969, to add subsection 7 set forth above in Manual Entry 253.900.)

5/73

253.950

PAYMENTS EXCEPTED UNDER TAFT-HARTLEY:

# PAYMENTS TO LEGAL SERVICES TRUST

**\* 253.950  LMRA, SECTION 302(c)(8)**

... with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their families, and dependents for counsel or plan of their choice: <u>Provided</u>, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: <u>Provided further</u>, That no such legal services shall be furnished: (A) to initiate any proceeding directed (i) against any such employer or its officers or agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under the National Labor Relations Act, as amended, or this Act; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor-Management Reporting and Disclosure Act of 1959.

(Note.  Section 302(c) of the LMRA was amended by Public Law 93-95 on August 15, 1973, to add subsection 8, set forth above in Manual Entry 253.950.)

# PAYMENTS TO EMPLOYEES

## 254.001   LMRDA, SECTION 203(a)(2)

... any payment (including reimbursed expenses) to any of his employees, or any group or committee of such employees, for the purpose of causing such employee or group or committee of employees to persuade other employees to exercise or not to exercise, or as the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing unless such payments were contemporaneously or previously disclosed to such other employees; ...

### LMRDA, SECTION 203(e)

Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.

See REGULAR WAGE EXCEPTION, Manual Entries 253.300 ff.

## 254.005   EMPLOYER ASSISTANCE TO "GRIEVANCE COMMITTEE"

Where in connection with an organizational drive run by a national union to organize the employees of a particular employer, there is established a "Grievance Committee" to which the employer furnishes assistance by permitting production workers to cease their normal duties and engage in electioneering during regular working hours in favor of the "Grievance Committee" as against the "outside union", a re-port is required of the employer under section 203(a)(2) _if_ the employer does not make a contemporaneous disclosure in some affirmative way that he is allowing the previously mentioned production workers to leave their normal work in order to "electioneer" for the "Grievance Committee."

## 254.100   NONEXEMPT PAYMENTS

The exemption in section 203(e) applies only to expenditures made for services which are performed by employees in the regular and ordinary course of their employment. Such _may_ be the case, depending on the particular circumstances, for payments falling under section 203(a)(2) or expenditures falling under the second part of section 203(a)(3). For example, where an employer prepares a message to his employees which attempts to persuade employees as to the manner of exercising their right to organize, and the employer then has the message conveyed to all plant employees through his labor relations director who is a regular staff member, no report would be due under section 203(a)(2) because the director would be performing as a regular employee within the meaning of section 203(e). However, if the employer called in one of his old and trusted employees who was a drill press operator for example, and asked him (without disclosing the assignment to other employees) to persuade his fellow employees as to their right to organize, then a report would be due from the employer under 203(a)(2).

Although possibilities for exempt payments under 203(e) may apply as indicated above, expenditures falling under the first part of section 203(a)(3) are by definition

254.100

## PAYMENTS TO EMPLOYEES, contd.

254.100  contd.

outside the terms of the section 203(e) exemption.

### 254.200  FURNISHING STRIKEBREAKERS

The mere furnishing of replacements for strikers is not itself sufficient to require reporting. If the object of the replacements is solely to keep the business going, then the arrangement would probably not come within section 203(a)(4) and 203(b), even though the replacements might incidentally have persuasive effect. The duties performed or assigned could be evidentiary. If the duties were limited to those of the persons replaced, that could be an indication of a purpose other than persuasion; but if they in fact included violence, missionary work and the like, this could be an indication that the original arrangement was within the reporting requirement.

However, the employer would have to report under 203(a)(2), regardless of the original "object" of the arrangement for the furnishing of the men, if the men were in fact used to do missionary work or otherwise to persuade the employees to abandon the union or the strike, unless the fact that they were being paid for such duties were contemporaneously disclosed to the employees.

### 254.300  INDUSTRIAL RELATIONS COUNSELOR

Several parts of the employer report form contain an exclusion for payments and expenditures made to a regular officer, supervisor or employee as compensation for service as a regular officer, supervisor or employee. Accordingly, an

employer will not be required to report in those parts payments made to an industrial relations counselor in his capacity as full-time director of industrial relations