UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:08-cv-00069-CKK |
| | ) |
| ELAINE L. CHAO, | ) |
| | ) |
| Defendant. | ) |

_____)

**ERRATA**

Plaintiff requests that the Court accept for filing the attached corrected motion and memorandum of points and authorities. Plaintiff recently discovered that the version filed on March 19 contained a defective table of contents and authorities, in that each of the page references was off by four pages. To avoid confusion and to make the memorandum easier for the court to use, Plaintiff is submitting the attached motion and memorandum with corrected page references. No other changes have been made to the March 19 filing.

DATED: May 9, 2008                    Respectfully submitted,

                             /s/ Leon Dayan
                            LEON DAYAN
                            (D.C. Bar # 444144)
                            LAURENCE GOLD
                            (D.C. Bar # 116020)

805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

/s/ Jonathan P. Hiatt
JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR    )
AND CONGRESS OF INDUSTRIAL      )
ORGANIZATIONS,                  )
                                )
                     Plaintiff, )
                                )
v.                              )    Civil Action No. 1:08-cv-00069-CKK
                                )
ELAINE L. CHAO,                 )
                                )
                    Defendant.  )
_____)


PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") hereby moves for summary judgment pursuant to Fed.R.Civ.P. 56 and requests that the Court to enter a judgment holding unlawful and setting aside the final rule entitled "Labor Organization Officer and Employee Report, Form LM-30" and issued by defendant Secretary of Labor on July 2, 2007, 72 Fed. Reg. 36106 (amending 29 C.F.R. Part 404).

This motion is supported by a Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and by a Statement of Material Facts as to Which There is No Genuine Dispute.

As developed in plaintiff's Memorandum of Points and Authorities, summary judgment is appropriate here because plaintiff challenges the rule on legal grounds and

there are no disputed facts.  In this regard, plaintiff contends that the 2007 Form LM-30

rule is invalid and should be vacated on the ground that it is not consistent with § 202 of

the Labor Management Reporting and Disclosure Act which governs what union officers

and employees are required to report on that form.  In addition, plaintiff contends that one

aspect of the rule was adopted without compliance with the Administrative Procedures

Act's notice and comment procedures and that  another aspect of the rule is not supported

by a reasoned explanation and is thus arbitrary and capricious.

> Respectfully submitted,


> /s/_____
> JONATHAN P. HIATT
> (D.C. Bar # 427856)
> JAMES B. COPPESS
> (D.C. Bar # 347427)
> DEBORAH GREENFIELD
> (D.C. Bar #  358317)
> 815 Sixteenth Street, NW
> Washington, DC  20006
> (202) 637-5337
>
> /s/_____
> LEON DAYAN
> (D.C. Bar # 444144)
> LAURENCE GOLD
> (D.C. Bar # 116020)
> 805 Fifteenth Street, NW
> Washington, DC 20005
> (202) 842-2600
>
> *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR    )
AND CONGRESS OF INDUSTRIAL      )
ORGANIZATIONS,                  )
                                )
                 Plaintiff,     )
                                )
v.                              )    Civil Action No. 1:08-cv-00069-CKK
                                )
ELAINE L. CHAO,                 )
                                )
                 Defendant.     )
_____)


STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO DISPUTE IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


1.  Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of national and international labor organizations.  Complaint ¶ 4.

2.  Defendant Elaine L. Chao is the United States Secretary of Labor ("Secretary").  *See* http://www.dol.gov/_sec/aboutosec/chao.htm.

3.  On July 2, 2007, the Secretary published in the Federal Register a final rule entitled "Labor Organization Officer and Employee Report, Form LM-30." 72 Fed. Reg. 36106.  A copy of that final rule is available at:

http://www.dol.gov/esa/regs/compliance/olms/RevisedLM-30FinalRule07-3155.pdf and is attached as Exhibit 1.

4.   Plaintiff AFL-CIO is a "labor organization" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. §§ 401 *et seq.* Plaintiff's officers and employees are therefore subject to the labor organization officer and employee reporting requirements established by the final rule. Complaint ¶ 5.

5.   Plaintiff AFL-CIO's member national and international labor unions and many of those unions' affiliated local unions are "labor organizations" within the meaning of the LMRDA. These labor organizations' officers and employees are therefore subject to the labor organization officer and employee reporting requirements established by the final rule. Complaint ¶ 6.

6.   Exhibit 2 is a copy of the Department of Labor Form LM-30 Labor Organization Officer Employee Report that was in effect from 1963 through the end of 2007 (for union officers/employees who file their federal tax returns on a calendar year basis). This version of Form LM-30 is available at:

http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-30p.pdf. Exhibit 3 is a copy of the Instructions for that Form LM-30. These Instructions are available at:

http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-30_Instructions.pdf.

7.   Exhibit 4 is a copy of the Secretary's August 19, 2005 Notice of Proposed Rulemaking entitled "Labor Organization Officer and Employee Reports; Proposed Rules" and published at 70 Fed. Reg. 51166.

8.   Exhibit 5 is a copy of document entitled "Revised Form LM-30 – Labor Organization Officer and Employee Report; Frequently Asked Questions." This

document was first posted on the website of the Department of Labor's Office of Labor-Management Standards on October 2, 2007.  This document is available at:

http://www.dol.gov/esa/regs/compliance/olms/RevisedLM30_FAQ.htm.

 9.  Exhibit 6 is a copy of the Department of Labor Form LM-10 Employer Report which is available at: http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/lm-10p.pdf.  Exhibit 7 is a copy of the Instructions for the Form LM-10 which are available at: http://www.dol.gov/esa/regs/compliance/olms/GPEA_Forms/LM-10 instructions.pdf.

 10.  Exhibit 8 are excerpts from the *LMRDA Interpretative Manual* issued by the Department of Labor Office of Labor-Management Standards.

<div style="margin-left:40%">

Respectfully submitted,


*/s/*_____
JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337


*/s/*_____
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR          )
AND CONGRESS OF INDUSTRIAL            )
ORGANIZATIONS,                        )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )   Civil Action No. 1:08-cv-00069-CKK
                                      )
ELAINE L. CHAO,                       )
                                      )
                    Defendant.        )
_____)


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

LAURENCE GOLD
(D.C. Bar # 116020)
LEON DAYAN
(D.C. Bar # 444144)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 5

STATUTORY PROVISIONS ............................................................................. 6

STATEMENT ...................................................................................................... 6

ARGUMENT ....................................................................................................... 9

I.    THE STRUCTURE AND PURPOSE OF LMRDA § 202 AND THE
      SECRETARY'S AUTHORITY TO PRESCRIBE REPORTING FORMS
      UNDER THAT STATUTE ...................................................................... 10

II.   THE SECRETARY'S 2007 REVISIONS TO THE FORM LM-30 ARE IN
      CRITICAL RESPECTS CONTRARY TO LAW ...................................... 13

      A.    The Form LM-30 Coverage to Shop Stewards and the Requirement
            that Shop Stewards and Other Union Representatives Report the
            Portion of Their Regularly Pay and Benefits Attributable to Periods
            During Which They Engage in Representational Activities ........... 13

            1.    Treating Shop Stewards as "Employees of a Labor
                  Organization" .................................................................... 15

            2.    "Payments and Other Benefits Received as a Bona Fide
                  Employee" ........................................................................ 19

      B.    Bona Fide Loans to Union Officer/Employees from "Businesses"
            Covered By LMRDA § 202(a)(3) & (4) ......................................... 23

            1.    LMRDA § 202(a)(3) & (4) Cannot be Read to Require
                  Reporting Bona Fide Loans to Union Officers/Employees
                  from Covered "Businesses" ............................................... 23

            2.    The Secretary's Revisions of the Form LM-30 to Require
                  Reporting "Bona Fide Loans" from "Businesses" Were
                  Made Without Notice and Comment in Violation of the
                  APA .................................................................................. 27

i

TABLE OF CONTENTS (Continued)

C. The Requirement to Report on Receipts from Charities, Other Labor Organizations and Union-Trusts that are Not "Employers" Within the Meaning of LMRDA § 202 ...................................................... 29

   1. LMRDA § 202(a)(6) Is Not a Catch-All Provision Requiring Reporting on Any Situation the Secretary Deems to Have the Potential to Pose a Conflict of Interest .......... 29

   2. No Explanation for Exempting Union-Sponsored Credit Unions from the Reporting Exemption for Bona Fide Loans ............................................................................... 36

III. THE PROPER REMEDY ...................................................... 38

CONCLUSION ............................................................................. 39

STATUTORY APPENDIX ............................................................ a1

TABLE OF AUTHORITIES

CASES                                                                                        Page

    *Action on Smoking and Health v. CAB*, 713 F.2d 795 (D.C. Cir. 1983) ......................... 39

\*  *AFL-CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) ............................................... 12, 13, 39

    *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ..................... 38

    *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046
        (2d Cir. 1986) .................................................................................................. 22

\*  *Communications Workers v. Bell Atlantic Network Services, Inc.*, 670 F.Supp. 416
        (D.D.C. 1987) ............................................................................................. 14, 21, 22

\*  *Dean v. American Fed. of Government Employees, Local 476*, 509 F.Supp.2d 39
        (D.D.C. 2007) ........................................................................................................ 17, 18

    *Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71 (8th Cir. 1990) ................. 17

    *International Harvester Co.*, 1 War Labor Rep. 112 (1942) ...................................... 13, 14

    *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*,
        463 U.S. 29 (1983) ................................................................................................ 36

    *NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849 (5th Cir. 1986) ..................................... 22

    *Ventimiglia v. United States*, 242 F.2d 620 (4th Cir. 1957) ............................................. 34


STATUTES

5 U.S.C. § 553(b) ............................................................................................................... 28

5 U.S.C. § 702 .................................................................................................................... 5

_____

\*  Authorities chiefly relied upon are marked with an asterisk.

TABLE OF AUTHORITIES (Continued)

5 U.S.C. § 704 ................................................................................................ 5

5 U.S.C. § 706(2)(A) ..................................................................................... 38

5 U.S.C. § 706(2)(A)(2) ................................................................................ 36

29 U.S.C. § 158(a)(2) .................................................................................... 13

29 U.S.C. § 402(q) ........................................................................................ 18

29 U.S.C. § 402(n) ........................................................................................ 15

29 U.S.C. § 432 ............................................................................................... 6

29 U.S.C. § 432(a) ........................................................................................ 15

29 U.S.C. § 432(a)(1) ............................................................................. 11, 19

29 U.S.C. § 432(a)(2) .................................................................................... 11

29 U.S.C. § 432(a)(3) ............................................................................. 12, 25

29 U.S.C. § 432(a)(4) ............................................................................. 12, 25

29 U.S.C. § 432(a)(5) ............................................................................. 11, 19

29 U.S.C. § 432(a)(6) ............................................................................. 12, 29

29 U.S.C. § 433(a)(1) .................................................................................... 22

29 U.S.C. § 438 ............................................................................................. 12

29 U.S.C. § 501(a) ........................................................................................ 18

29 U.S.C. § 501(b) ........................................................................................ 18

29 U.S.C. § 502(a) ........................................................................................ 18

TABLE OF AUTHORITIES (Continued)

29 U.S.C. § 529 ............................................................................................................ 18

29 U.S.C. § 657(a) ........................................................................................................ 15

29 U.S.C. § 657(e) ........................................................................................................ 15

45 U.S.C. § 152 Fourth ................................................................................................. 13

REGULATORY MATERIALS

"Labor Organization Officer and Employee Report, Form LM-30," 72 Fed. Reg. 36106
   (July 2, 2,007) ...................................................................................................... passim

"Labor Organization Officer and Employee Reports; Proposed Rules," 70 Fed. Reg.
   51166 (August 29, 2005) ............................................................................................ 28

U.S. Department of Labor, *LMRDA Interpretative Manual* § 248.005 .......................... 29

MISCELLANEOUS

National Credit Union Administration, *Examiners Guide*, available at
   http://ncua.gov/GuidesManuals/examiners_guide/examguide.html ............................ 38

NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of
   1959* ................................................................................................................... passim

U.S. Department of Labor, *Collective Bargaining Clauses: Company Pat for Time Spent
   on Union Business*, Bulletin No. 1266 (Oct. 1959) ...................................................... 18

U.S. Department of Labor, *Legislative History of the Labor-Management Reporting and
   Disclosure Act of 1959, Titles I-IV* ............................................................................ 32

Wendell Fountain, *The Credit Union World: Theory, Process, Practice* 208
   (2007) ....................................................................................................................... 37

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

This is an action for review of agency rulemaking under the Administrative

Procedure Act ("APA").  Plaintiff American Federation of Labor and Congress of

Industrial Organizations ("AFL-CIO"), a federation of national and international labor

organizations, asks this Court to enter summary judgment holding unlawful and setting

aside the final rule entitled "Labor Organization Officer and Employee Report, Form

LM-30" and issued by defendant Secretary of Labor on July 2, 2007, 72 Fed. Reg. 36106

(amending 29 C.F.R. Part 404).

This Court has authority under APA § 10(a) & (c) to review the defendant

Secretary of Labor's issuance of a final rule.  5 U.S.C. §§ 702 and 704.  The AFL-CIO

and its member unions are "labor organizations" within the meaning of the Labor

Management Reporting and Disclosure Act ("LMRDA"), and the officers and employees

of the AFL-CIO and of its member unions and their local affiliates are subject to the

challenged rule.  The AFL-CIO thus has standing to seek review of the rule on behalf of

itself and its member unions.  5 U.S.C. § 702.

Summary judgment is appropriate here because plaintiff challenges the rule on

legal grounds and there are no disputed facts.  In this regard, plaintiff contends that the

2007 Form LM-30 rule is invalid and should be vacated on the ground that it is

inconsistent with LMRDA § 202 which governs what union officers and employees are

required to report on that form.  In addition, plaintiff contends that one aspect of the rule

was adopted without compliance with the Administrative Procedures Act's notice and comment procedures and that another aspect of the rule is not supported by the reasoned explanation the APA requires and is thus arbitrary and capricious.

## STATUTORY PROVISIONS

The relevant provisions of the following statutes are set forth in the Statutory Appendix to this Memorandum: the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. §§ 401 *et seq.* (Sections 2(n), 202, 203, & 208); the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §§ 141 *et seq.* (Section 302);  and the Administrative Procedure Act of 1946, as amended ("APA"), 5 U.S.C. §§ 551 *et seq.* (Sections 4(b) & 10(e)).

## STATEMENT

LMRDA § 202(a) provides that "[e]very officer of a labor organization and every employee of a labor organization . . . shall file with the Secretary a signed report listing and describing for his preceding year" specified financial interests, receipts and transactions that Congress found create potential conflicts of interest.  29 U.S.C. § 432. As the Secretary recognized in issuing the final rule, the point of LMRDA § 202 is to "require disclosure of any personal gain which an officer or employee may be securing at the expense of the union members" by "hold[ing] a questionable interest or . . . engag[ing] in a questionable transaction."  72 Fed. Reg. at 36112(2) (citation and quotation marks omitted).[1]  In essence, "what must be reported are holdings of interest in

---

[1]  In citations to the Federal Register, the number in parentheses indicates the relevant column on the cited page.

or the receipt of economic benefits from employers who deal or might deal with such union official's union, or holdings in or benefits from enterprises which do business with such union official's union." *Id*. at 36112(3) (citation omitted; indented in original).

For the first fifty years of the LMRDA, the Secretary of Labor required that union officers and employees do their § 202 reporting on a simple two-page form, known as the "Form LM-30," elaborated through a straightforward five-page set of instructions. Exhibit 2 ("Original Form LM-30"). Then, on July 2, 2007, the Secretary published a final rule substantially revising the Form LM-30, increasing the form from two pages to nine pages and extending the instructions to twenty-two pages, in the process vastly expanding *both* the number of individuals expected to file *and* the range of transactions and receipts to be reported. *See* "Labor Organization Officer and Employee Report, Form LM-30," 72 Fed. Reg. 36106, 36160-90.[2] On October 2, 2007, the Department of Labor added to those instructions by posting on its website answers to 88 Frequently Asked Questions that substantially modified the reporting requirements as stated in the July 2007 rule. Exhibit 5 ("Form LM-30 FAQs").[3]

---

[2] Citations to the revised Form LM-30 and its Instructions are to the Federal Register pages announcing the 2007 final rule.

[3] On December 20, 2007, the Office of Management and Budget assigned a control number to the revised Form LM-30, thereby allowing the form to go into effect under the Paperwork Reduction Act. The revised Form LM-30 covers interests held and payments or financial benefits received on or after January 1, 2008. Reports using the revised Form LM-30 will be due on March 31, 2009.

This lawsuit challenges the following five aspects of the 2007 modifications to the Form LM-30 that have no predicate in the reporting regime Congress provided for in LMRDA § 202:

(i) the expansion of the § 202 term "employees of a labor organization" to include shop stewards and other on-the-job union representatives – who are on their regular employer's payroll but *not* on their union's payroll – whom their employers allow to perform union representational functions during their regular work time, such as meeting with employer representatives over contractual grievances or participating in shop floor safety inspections, without having their regular pay docked;

(ii) the treatment of a union representative's continued receipt of regular pay or benefits from his regular employer for time spent performing union representational functions as outside the category of payments "received as a bona fide employee of such employer" that are exempt from reporting under LMRDA § 202(a)(1) & (5);

(iii) the treatment of "bona fide loans" – i.e., loans from a national or state bank, credit union, savings or loan association or other bona fide financial institution that are based on the financial institution's own neutral criteria and made on terms unrelated to the borrower's status as a labor organization officer or employee – as reportable under LMRDA § 202(a)(3) & (4) if the financial institution: (a) deals with the borrower's labor organization or a trust in which that labor organization is

interested, or (b) does a substantial part of its business with employers whose employees the labor organization represents or seeks to represent;

(iv) the treatment of entities, including trusts, charities and other labor organizations, whose employees are not of a type that the union officer/employee's labor organization could be expected to seek to represent as "employers" covered by § 202(a)(6); and

(v) the treatment of "bona fide loans" from a credit union – i.e., loans that are based on the credit union's own neutral criteria and made on terms unrelated to the borrower's status as a labor organization officer or employee – as reportable under LMRDA § 202(a)(6) if the credit union is a trust in which the union officer/employee's labor organization is interested.

LMRDA § 202 does not provide for – and does not authorize the Secretary to provide for – these five Form LM-30 reporting requirements.  In addition, the requirement  to report "bona fide loans" from businesses that deal with the filer's union or with union-represented employers (point (iii) above) was adopted by the Secretary without complying with the APA notice and comment procedures, and the requirement to report "bona fide loans" from union-sponsored credit unions (point (v) above) was adopted without providing the reasoned explanation for that requirement mandated by the APA.

## ARGUMENT

The Secretary of Labor's Form LM-30 reporting requirements must be faithful to the reporting regime Congress spelled out in LMRDA § 202.  In the argument that

follows, we therefore begin with a brief overview of LMRDA § 202 and the reporting

requirements that statutory provision imposes on union officers and employees.  We then

turn to the particular aspects of the Secretary's 2007 revisions to the Form LM-30 that we

challenge as contrary to law.  Finally, we discuss the appropriate relief for the Secretary's

actions in revising the Form LM-30 in a manner that is contrary to law.

I.  THE STRUCTURE AND PURPOSE OF LMRDA § 202 AND THE
SECRETARY'S AUTHORITY TO PRESCRIBE REPORTING FORMS UNDER
THAT STATUTE.

LMRDA § 202 is Congress's response to the problem posed by union officers and

employees "[p]laying both sides of the street, using union office for personal financial

advantage, [and engaging in] undercover deals, and other conflicts of interest [that]

corrupt, and thereby undermine and weaken the labor movement." S. Rep. No. 187, 86th

Cong., 1st Sess. 14 (April 14, 1959), reprinted in NLRB, *Legislative History of the*

*Labor-Management Reporting and Disclosure Act of 1959*, vol. 1, p. 410 (cited as "[vol.]

Leg. Hist. [page]").  The Senate report described that response as follows:

"The committee bill attacks the problem by requiring union officers and

employees to file reports with the Secretary of Labor disclosing to union members

and the general public any investments or transactions in which their personal

financial interests may conflict with their duties to the members.  The bill requires

only the disclosure of conflicts of interest as defined therein.  The other

investments of union officials and their other sources of income are left private

because they are not matters of public concern.  No union officer or employee is

obliged to file a report unless he holds a questionable interest in or has engaged in

a questionable transaction.  The bill is drawn broadly enough, however, to require

disclosure of any personal gain which an officer or employee may be securing at

the expense of the union members."  Sen. Rep. No. 187, pp. 14-15; 1 Leg. Hist

410-411.

As Professor Archibald Cox, who took a leading role in drafting the conflict-of-interest

reporting provision, explained, "The conflicts of interest which the bill requires a union

official to disclose are, with minor exceptions, the very same conflicts of interest which

the [AFL-CIO] codes of ethical practice declare incompatible with the essential ethical

practices of the trade union movement." Hearings on S. 505 before the Subcommittee on

Labor of the Senate Committee on Labor and Public Welfare, 86th Cong., 1st Sess., p.

123 (1959) (hereafter "1959 Sen. Hearings").  *See* 72 Fed. Reg. at 36129 (noting Cox's

"pivotal role in drafting the legislation").

    In statutory terms, LMRDA § 202(a) carefully delineates "six specified

transactions" which must be reported on the ground that they "might constitute a conflict

of interest."  2 Leg. Hist. 1259(3) (Sen. Kennedy).  *See also id*. at 1283(2) ("6 classes of

'conflict of interest' transactions or holdings") & 1825(3) ("six specific types of business

transactions between a union official and an employer which constitute a conflict-of-

interest transaction").

    Subsections (a)(1), (2) and (5) cover the core "labor relations" conflict-of-interest

situations by requiring union officers/employees to report financial interests in, receipts

from or transactions with "employers" where the officer/employee's union "represents or

is actively seeking to represent" the employer's employees.  29 U.S.C. § 432(a)(1), (2) &

(5).  To complete the coverage of "labor relations" conflict-of-interest situations, subsection (a)(6) requires reports of payments to union officers/employees from "employers" who operate in the same labor market as other employers whose employees the union represents. 29 U.S.C. § 432(a)(6).

Subsections (a)(3) and (4) cover "commercial" conflict-of-interest situations by requiring union officers and employees to report financial interests in or receipts from "businesses" which sell or lease goods or services to or engage in like commercial transactions with the filer's union or with employers whose employees the union represents. 29 U.S.C. § 432(a)(3) & (4).

LMRDA § 208 grants the Secretary the authority to "prescrib[e] the form and publication of reports required to be filed under [§ 202]." 29 U.S.C. § 438.[4]  Thus, the Secretary's prescription of the report form must faithfully implement the reporting requirements spelled out in the provisions of § 202.  In other words, the Secretary's Form LM-30 reporting regime must be "based on a permissible construction of [§ 202] in light of its language, structure, and purpose." *AFL-CIO v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005) (citations and quotation marks omitted). As we now demonstrate, in all the following respects the Secretary's 2007 changes to the Form LM-30 and its instructions

---

[4]    LMRDA § 208 also grants the Secretary the authority to issue "such other reasonable rules and regulations . . . as he may find necessary to prevent the circumvention or evasion of such reporting requirements."  29 U.S.C. § 438.  The Secretary has *not* claimed the reporting requirements challenged in this lawsuit are "necessary to prevent the circumvention or evasion of [the LMRDA § 202] reporting requirements."

are not "based" on the carefully delimited conflict-of-interest reporting requirements enacted by Congress in § 202 and thus "exceed[] the Secretary's authority." *Id.* at 391.

## II.  THE SECRETARY'S 2007 REVISIONS TO THE FORM LM-30 ARE IN CRITICAL RESPECTS CONTRARY TO LAW.

A.  The Form LM-30 Coverage of Shop Stewards and the Requirement that Shop Stewards and Other Union Representatives Report the Portion of Their Regular Pay and Benefits Attributable to Periods During Which They Engage in Representational Activities.

As the Secretary correctly observes, "the practice whereby a union official employed by an employer would receive his or her regular compensation while engaged in contract administration on behalf of the union was commonplace at the time the LMRDA was enacted."  72 Fed. Reg. at 36126(2).  The practice of allowing employees to engage in union representational activities, such as meeting on grievances, during their regular work time without loss of their regular pay has long been expressly permitted by both the National Labor Relations Act and the Railway Labor Act.  *See* 29 U.S.C. § 158(a)(2) ("an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay"); 45 U.S.C. § 152 Fourth ("nothing in this Act shall be construed to prohibit a carrier from permitting . . . local representatives of employees from conferring with management during working hours without loss of time").   During World War II, moreover, the War Labor Board routinely ordered that collective bargaining agreements provide that "[u]nion representatives who are employees shall not lose pay during the time spent in handling grievances within the plant," on the understanding that this encouraged "the practice of quickly investigating and promptly disposing of grievances."  *International Harvester Co*., 1 War Labor Rep.

112, 114 & 122 (1942).  And, from that time on, collective bargaining agreements have commonly provided that employees may take a leave of absence from active employment to carry out union representational activities while continuing to receive their regular pay or regular benefits from the employer during that period of leave.  *See Communications Workers v. Bell Atlantic Network Services, Inc.*, 670 F.Supp. 416 (D.D.C. 1987).

Against that background, the original Form LM-30 – i.e., the form prescribed by the Secretary shortly after the enactment of the LMRDA and in force continuously ever since – recognized that the portion of an employee's regular pay and benefits attributable to time spent during his regular work time on union representational activities is "not reportable."  72 Fed. Reg. at 36124(3).  In contrast, the revised Form LM-30 adopted in 2007 treats such pay and benefits as reportable.  *Id*. at 36142.  To reach that result, the Secretary first had to expand the LM-30 universe of "employees of a labor organization" to include individuals, such as shop stewards, who are on their employer's payroll but not on their union's payroll, who are allowed by their employers to perform representational tasks during their regular work time with no loss in their regular pay and benefits.  *Id*. at 36144.  In addition, the Secretary had to remove from § 202's reporting exception for pay "received as a bona fide employee" the portion of an employee's regular pay and benefits that is attributable to the portion of his regular work time spent on union representational activities or to periods of union leave.  *Id*. at 36142.  Neither of those distinct but related steps is legally tenable.

1.  Treating Shop Stewards as "Employees of a Labor Organization."

LMRDA § 202(a)'s reporting requirements apply to two classes of individuals: i) "officer[s] of a labor organization," and ii) "employee[s] of a labor organization." 29 U.S.C. § 432(a).[5]  The revised Form LM-30 instructions provide that "[a]n individual who is paid *by the employer* to perform union work, either under a 'union-leave' or 'no-docking' policy, is an employee of the union for reporting purposes if the individual performs services for, and under the control of, the union." 72 Fed. Reg. at 36144(1) (emphasis added).  The instructions make clear that this includes individuals whose "employer permits [them] to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay." *Id*. at 36142(2).  The instructions specify that, "[f]or purposes of Form LM-30, stewards" who are allowed by their employer to process grievances during their regular work time without loss of their regular pay "are considered employees of the labor organization." *Id*. at 36144(1).[6]

Treating individuals, such as shop stewards, who are *not* on their union's payroll, as "employees of a labor organization" sweeps tens of thousands of rank and file union

---

[5]  The statutory term "officer" encompasses only persons who perform "executive functions," such as the union's "president, vice president, secretary, treasurer" and "any member of its executive board or similar governing body" and does not encompass "shop stewards." 29 U.S.C. § 402(n).

[6]  We use the term "shop stewards" as short-hand for those employees who are permitted by their employers to perform on-the-job union representation.  However, the revised Form LM-30 would apply to a myriad of union representatives in addition to shop stewards, including, for example, employee representatives accompanying inspectors from the Occupational Safety and Heath Administration.  *See* 29 U.S.C. § 657 (a) & (e) (mandating that "authorized employee representatives" shall be allowed to accompany OSHA inspectors "during regular working hours").

members within the Form LM-30 universe.  Once treated as "employees of a labor

organization" for Form LM-30 purposes, these individuals are obliged to report not only

the amount of their regular pay and benefits attributable the portion of their regular work

time spent on union representational activities but all other interests and receipts that are

covered by the Form LM-30.[7]

The Secretary cites no legal authority in support of the proposition that shop

stewards who are not on their labor organization's payroll can nevertheless be treated as

"employees of a labor organization" on the ground that their employers allow them to

engage in union representational activities, such as grievance handling, during their

regularly scheduled work time without any loss of their regular pay or benefits.  72 Fed.

Reg. at 36144.  That is hardly surprising, for the proposition flies in the face of the well-

---

[7]  The Secretary has attempted to ameliorate the impact of covering shop stewards
by issuing the following after-the-fact guidance that creates reporting exceptions that do
not even purport to have a basis in § 202:

"A union steward who receives 250 or fewer hours of union-leave or no-docking
payments from the employer pursuant to a bona fide collective bargaining
agreement will not be required to file a Form LM-30.  A union steward who
receives 250 or fewer hours of union-leave or no-docking payments from the
employer that are not paid pursuant to a bona fide collective bargaining agreement
will be required to only report those union leave/no docking payments on Form
LM-30."  Form LM-30 FAQ 43.

Given the Secretary's position that shop stewards are properly treated as "employees of a
labor organization," it is difficult to discern the statutory basis for setting up a tiered
reporting structure that frees some stewards – those who spend fewer than 250 work
hours on grievance handling under an express no-docking agreement –  from *any* LM-30
reporting obligation and allows other stewards – those who spend fewer than 250 work
hours on grievance handling pursuant to a practice that is not memorialized in the written
agreement – to report *only* the value of their paid worktime (but not other clearly
reportable receipts, such as the employer loans covered by subsection (a)(2)).

established rule that "[c]ompensation by the putative employer to the putative employee

. . . is an essential condition to the existence of an employer-employee relationship."

*Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990).  This

Court recently applied that rule in holding that shop stewards who are not on their

union's payroll cannot be deemed union employees for purposes of determining whether

the union is covered by Title VII of the Civil Rights Act. *Dean v. American Fed. of*

*Government Employees, Local 476*, 509 F.Supp.2d 39 (D.D.C. 2007).

In *Dean*, this Court held that shop stewards who are not on their union's payroll

and who are allowed by their employer to use a portion of their regularly scheduled work

time without any loss of their regular pay "for handling grievances and other complaints,

attending meetings, and other representational functions" are *not* employees of their local

union. 509 F.Supp.2d at 47.  In so ruling, the Court rejected the argument that the local

union's "stewards should be considered the local's 'employees' because they are paid by

[their employer] for doing union work under [the collective bargaining] contract."  *Id*. at

53.  The Court found that "the fact that the Local does not compensate its officers and

stewards conclusively demonstrates that they are not employees" of the local union, *id*. at

54, reasoning as follows:

> "Central to the meaning of the words employer and employee . . . is the idea of
>
> compensation in exchange for services: an employer is someone who pays,
>
> directly or indirectly, wages or a salary or other compensation to the person who
>
> provides services  – that person being the employee. Compensation is an essential
>
> condition to the existence of an employer-employee relationship. Without

17

compensation, no combination of other factors will suffice to establish the

relationship." *Ibid.* (citations, quotation marks and brackets omitted).

The holding in *Dean* squarely refutes the Secretary's basis for extending the Form LM-30

reporting requirement to shop stewards who are not on their union's payroll.

There is nothing in the text of the LMRDA that gives any indication whatsoever

that Congress used the term "employee of a labor organization" in § 202 in any but its

normal sense of a "person" to whom the labor organization pays "compensation in

exchange for services." *Dean*, 509 F.Supp.2d at 54. Indeed, the LMRDA's overall

structure and its legislative history makes it quite plain that the § 202(a) term "employee

of a labor organization" is not used in some eccentric sense that would include "shop

stewards" who are not on their union's payroll.

As the Secretary has observed, the LMRDA Congress was well aware that the

labor relations system it was regulating included "shop stewards" who were allowed by

their employers to handle grievances during their regular work time without any loss of

their regular pay. 72 Fed. Reg. at 36126(2). *See* U.S. Dep't of Labor, *Collective

Bargaining Clauses:  Company Pay for Time Spent on Union Business*, Bulletin No.

1266, Table 1, p. 3 (October 1959). And, where it was relevant to its regulatory purpose,

Congress made express reference to "shop stewards" in the text of the LMRDA. *See* 29

U.S.C. §§ 402(q), 501(a) & (b), 502(a) & 529. Against that background, it is highly

significant that LMRDA § 202 does *not* impose its reporting obligations on "shop

stewards" either in terms or through some specially-crafted definition of "employee of a

labor organization."

In sum, individuals who are on their employer's payroll but not on their union's payroll do not become "employees of a labor organization" within the meaning of LMRDA § 202 by virtue of being allowed by their employers to devote portions of their regular work time to union representational activities with no loss of their regular pay. The Secretary's revised Form LM-30 treating such individuals as "employees of a labor organization" is therefore contrary to law.

  2. "Payments and Other Benefits Received as a Bona Fide Employee."

LMRDA § 202(a)(1) & (5) requires labor organization officers and employees to report payments that he or his spouse or minor child received from an employer whose employees the labor organization represents or is actively seeking to represent, "*except payments and other benefits received as a bona fide employee of such employer*." 29 U.S.C. § 432(a)(1) & (5) (emphasis added).

From the first, the Secretary has recognized that the phrase "payments and other benefits received as a bona fide employee of [the] employer" includes "payments for periods in which such employee engaged in activities other than productive work, if the payments for such period of time are: (a) required by law or a bona fide collective bargaining agreement, or (b) made pursuant to a custom or practice under such a collective bargaining agreement, or (c) made pursuant to a policy, custom, or practice with respect to employment in the establishment which the employer has adopted without regard to any holding by such employee of a position with a labor organization." Original Form LM-30 Instructions Part A exclusion (iv) to Items 6 and 7, pp. 3-4 (Exhibit 3).

Repudiating that well-established position, the revised Form LM-30 provides that "[c]ompensation received under a 'union-leave,' or 'no-docking policy'" – i.e., a policy where "the employer continues the pay and benefits of an individual who works full time for a union" or "permits individuals to devote portions of their day or workweek to union business, such as processing grievances, with no loss of pay" – "is not received as a bona fide employee of the employer making the payment." 72 Fed. Reg. at 36178. And on that basis, the revised Form LM-30 requires union officers/employees to report the portion of their regular compensation that is attributable to time their employers allow them to spend on representational activities. *Ibid*.[8]

The Secretary's revised Form LM-30 reporting requirements regarding compensation received pursuant to employer "union leave" and "no docking" policies cannot be squared with the unequivocal statutory exemption from § 202 reporting for "payments and other benefits received as a bona fide employee." In the first place, an employee who is on an employer's payroll because he was employed to perform services for the employer in return for compensation is a "bona fide employee of such employer." And, the regular pay and benefits that employee receives from his employer are received by virtue of the fact that the employee is a "bona fide employee of such employer" with an established rate of periodic compensation. This is so even when the employee receives his regular pay and benefits for a period during which the employee is released

---

[8] The Secretary has indicated that, to comply with this reporting requirement, all such union officers/employees, including the shop stewards she erroneously classifies as union employees, must "keep[] a log of the amount of time expended" on representational activities, such as grievance handling, to calculate the portion of their regular pay and benefits that is attributable to that time. 72 Fed. Reg. at 36127(2).

by his employer from performing active service for the employer.  It is beyond dispute, for example, that pay and benefits that continue at their regular rate during such periods of employer-granted leave as leave for illness or jury duty are pay and benefits received from the employer by virtue of the recipient's status as "a bona fide employee of such employer."  And, the same is true of pay and benefits that continue at their regular rate during portions of the employee's regular work time when he is allowed by the employer to engage in union representation and during periods of union leave.

The Secretary's entire rationale for her position is that the statutory term "payments . . . received as a bona fide employee" is limited to "payment[s] for activities performed on the payer-employer's behalf."  72 Fed. Reg. at 36126(3).  But this flies in the face of the statutory language.  Subsections (a)(1) and (5) exempt from reporting *all* "payments and other benefits received as a bona fide employee," and not, as the Secretary would have it, only "payments for activities performed on the payer-employer's behalf."  That is as it has to be, for on the Secretary's view, employer payments to employees at their regular rate during periods of sick leave or jury duty would *not* be "payments . . . received as a bona fide employee of such employer," and such payments are clearly not reportable.

The Secretary's rationale is squarely rejected by a line of cases construing LMRA § 302(c)(1), which permits "employer payments to union officials where payment is made 'by reason of' service as an employee."  *Bell Atlantic*, 670 F.Supp. at 422.  These cases hold that all "compensation occasioned by the fact that the employee has performed or will perform work for the employer" – including compensation that "is not payment

21

directly for that work" – is compensation received "by reason of his service as an employee of such employer." *Id*. at 422, quoting  *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046, 1049 (2d Cir. 1986).[9]  As these courts have observed, "an employer's payment to [an employee who is also a union official], pursuant to a no-docking provision in a collective bargaining agreement, for time off to permit him to tend to union duties . . . is not . . . different in kind from the employer's granting of such benefits as sick leave, military leave, or jury leave to its employees." *Id*. at 423, quoting *BASF Wyandotte*, 791 F.2d at 1049.  These cases are particularly on point with regard to the proper reading of the LMRDA § 202(a)(1) & (5) reporting exception, for the courts' conclusion that LMRA § 302(c)(1) permits employers to make "no docking" and "union leave" payments to employees who are also union officials rests on the determination that such payments during an employer-granted period of leave from active service are payments to a "bona fide employee." *BASF Wyandotte*, 791 F.2d at 1050; *NLRB v. BASF Wyandotte Corp*., 798 F.2d 849, 856 n. 4 (5th Cir. 1986).

---

[9]    The Secretary acknowledges that "[m]ost courts that have considered the question have found that . . . section 302(c)(1) . . . allow[s] an employer to grant a bona fide employee who is a union official paid time off in order that he may attend to union duties."  72 Fed. Reg. at 36126(2) (citation and quotation marks omitted).  The Secretary herself has adopted this interpretation of LMRA § 302(c) in defining the employer reporting requirements under LMRDA § 203(a).  That provision generally requires employers to report payments to union officials but exempts "payments of the kind referred to in section 302(c) of the Labor Management Reporting Act, 1947, as amended."  29 U.S.C. § 433(a)(1).  The Secretary has determined that union-leave and no-docking payments to union officials come within this exemption from employer reporting under LMRDA § 203(a).  *See* LM-10 Instructions Part A, Item 8 a, p. 3 (Exhibit 7).

In sum, the pay and benefits that an employee continues to receive at his regular rate for periods his employer allows him to spend on union representational activities are "payments and other benefits received as a bona fide employee of such employer" that are exempt from reporting under LMRDA § 202(a)(1) & (5).  The revised Form LM-30's requirement that such pay and benefits be reported is thus contrary to law.

B.  Bona Fide Loans to Union Officer/Employees from "Businesses" Covered By LMRDA § 202(a)(3) & (4).

1.  LMRDA § 202(a)(3) & (4) Cannot be Read to Require Reporting Bona Fide Loans to Union Officers/Employees from Covered "Businesses."

The revised Form LM-30 adopted by the Secretary in 2007 imposes on union officers/employees a requirement to report "bona fide loans" – defined as loans that "are based upon the financial institution's own criteria and made on terms unrelated to the official's status in the labor organization" – where:

the lending "financial institution is 1) a business that buys from, sells or otherwise deals with your labor organization, 2) a business that buys from, sells or otherwise deals with a trust in which your labor organization is interested, or 3) a business a substantial part of which (10% or more) consists of buying from, selling to or otherwise dealing with an employer whose employees your labor organization represents or is actively seeking to represent." Form LM-30 FAQs 70 & 71.

See 72 Fed. Reg. at 36161 (Item 7) (asking whether the union officer/employee "made loans to or received loans from, a business") & 36183(1) (instruction for Item 7).[10]  For

_____

[10] The Secretary has advised that "[i]f a labor organization official does not know the amount of business dealings between [a financial institution] and [union-represented]

23

each such loan, the union officer/employee must "[i]dentify the terms and conditions of the loan [and] include the dollar value of the remaining obligation, if any, as of the end of the fiscal year." 72 Fed. Reg. at 36184. Officers of national and intermediate labor organizations must also report on bona fide loans from financial institutions that deal with affiliated local unions. Form LM-30 FAQ 27.

As the Secretary herself observes, "[l]oans [made in] the regular course of business with a bona fide financial institution are among the most common financial transactions undertaken by individuals." 72 Fed. Reg. at 36118(2). Nonetheless, the revised Form LM-30 requires union officers/employees to report the "terms and conditions," including the outstanding balance, of: a home mortgage loan procured by the officer/employee on the open market and on terms available to any consumer; a student loan procured by her son through his college financial aid office; credit extended by an automobile manufacturer on the purchase of her family automobile; and many other personal loans and financial transactions having nothing to do with her union post. What is more, the officer/employee must continue to report on each such loan as long as there is any "remaining obligation." The only condition is that the lending institution must do some minimal business with either the union or a union trust fund or some substantial business with employers of union-represented employees.

---

employer[s], the official should request such information in writing from the [financial institution]." Form LM-30 FAQ 63. "If the [financial institution] refuses to provide the information, the official should contact OLMS [the Department of Labor section responsible for Form LM-30 reports] for assistance," and "[i]n the meanwhile, the official should make a good faith estimate, based on the information reasonably available, whether the 10% threshold has been met." *Ibid*.

It is too plain for argument that such loans are not "incompatible with the essential ethical practices of the trade union movement," 1959 Sen. Hearings 123, and thus are not among the "questionable transaction[s]" that LMRDA § 202 is intended to expose, S. Rep. No. 187, p. 15, 1 Leg. Hist. 411. To the contrary, bona fide home mortgages and student loans from bona fide financial institutions are precisely the sort of "private" financial matter that Congress stated it did *not* intend to expose by enacting LMRDA § 202. *Ibid.*[11]

It is, therefore, not surprising that LMRDA § 202(a)(3) & (4) – which covers union officer/employee "interests" in and receipts from "businesses" that deal with the officer/employee's labor organization or with employers whose employees that labor organization represents or seeks to represent – provides *no* predicate for the Secretary's requirement to report "bona fide loans." 29 U.S.C. § 432(a)(3) & (4). Subsections (a)(3) and (4) do not state any requirement that union officers/employees report "loans" from the covered "businesses." Rather, what those subsections state is that union officers/employees must report any financial "interest" held in or "any income or any other benefit with monetary value" derived from, each such "business." 29 U.S.C. § 432(a)(3) & (4). And, a person who receives a "bona fide loan" from a financial institution does *not* thereby gain a financial "interest" in, nor does he derive any "income" or "benefit with monetary value" from, the lending institution. The granting of

---

[11]  Indeed, without any explanation, the Secretary has announced that "the Department is not requiring union officials to report credit card transactions (including unpaid balances)" under the "bona fide loans" reporting requirement. Form LM-30 FAQ 70.

a "bona fide loan" is an arm's length commercial transaction in which the lender provides the loaned funds for the borrower's use and the borrower compensates the lender for the full monetary value of that use.  A bona fide loan from a financial institution thus no more grants the borrower "income" or "other benefit with monetary value" than would the lease of an automobile at market rates.

A comparison of subsection (a)(1) and subsection (a)(2) – covering "employers" whose employees a union officer/employee's labor organization represents or seeks to represent – confirms that the phrase "any income or any other benefit with monetary value" does *not* encompass "bona fide loans."  Subsection (a)(1) – like subsections (a)(3) and (4) which apply to "business" interests and receipts – uses the phrase "any income or any other benefit with monetary value" to describe the reportable receipts from a covered "employer."  Subsection (a)(2) then adds a requirement to report "any . . . loan" from such an employer.  The (a)(2) requirement to report "any . . . loan" from a covered "employer" would be redundant if employer loans, including "bona fide loans," were already covered by the (a)(1) requirement to report "any income or any other benefit with monetary value" from such an employer.[12]  Significantly, there is no "loan" reporting requirement

---

[12]  The LMRDA amendments to § 302 of the Labor Management Relations Act further confirm this point.  Prior to the 1959 amendments, LMRA § 302 made it "unlawful for any employer to pay or deliver . . . any money or other thing of value to any representative of his employees."  2 Leg. Hist. 1885 (indicating LMRDA changes to LMRA § 302).  The 1959 amendments added the word "lend," making it "unlawful for any employer to pay, *lend*, or deliver . . . any money or other thing of value."  *Ibid.* (emphasis in original).  It thus could not be more clear that the 1959 Congress did *not* consider a bona fide loan to constitute the delivery of "money or other thing of value" to the borrower.

with respect to covered "businesses" similar to that stated in (a)(2) for covered "employers."

Given the critical textual difference between subsections (a)(1) & (2) and subsections (a)(3) & (4), for the first fifty years of the LMRDA the Secretary recognized in the original Form LM-30 that the LMRDA treats "employer" loans differently than "business" loans. The instructions to the original form made clear that "*any loan* to or from the [covered] employer" must be reported in Part A as one of the "transactions" with an employer whose employees the union officer/employee's labor organization represents or seeks to represent. Original Form LM-30 Instructions Item 7(b), p. 4 (emphasis added). In contrast, the instructions for Part B, where interests in and receipts from "businesses" are to be reported, did *not* provide for the reporting of "any loan to or from the [covered business]." *Id.* Item 12, p. 5 (incorporating by reference "Item 7(a) and (c)" from the instructions for Part A but *not* incorporating Item 7(b)).

The original Form LM-30 reflects the correct understanding that the LMRDA § 202(a)(3) & (4) requirement to report "any income or any other benefit with monetary value" from covered "businesses" does *not* entail a requirement to report "bona fide loans." The revised Form LM-30 requirement to report "bona fide loans" from covered "businesses" is thus contrary to law.

> 2. The Secretary's Revisions of the Form LM-30 to Require Reporting "Bona Fide Loans" from "Businesses" Were Made Without Notice and Comment in Violation of the APA.

In addition to exceeding the Secretary's statutory authority under LMRDA § 202(a)(3) & (4), the changes to the Form LM-30 regarding loans from "businesses" were

adopted without following the APA notice and comment procedures, 5 U.S.C. § 553(b), and without any explanation.

As we noted above, the original Form LM-30 drew a distinction between "employer" loans and "business" loans, by providing that "any . . . loan" from a union-represented "employer" be reported but not providing that any loan from a "business" be reported.  *Compare* Original Form LM-30 Instructions Item 7, p. 4 *with id*.  Item 12, p. 5.  The Secretary's 2005 proposal to revise the Form LM-30 maintained this distinction by expressly providing that "loans from . . . an employer whose employees your union represents or is actively seeking to represent" are reportable under subsection (a)(2), while not similarly providing for the reporting of "loans" from the "businesses" covered by subsections (a)(3) & (4).  *Compare* 70 Fed. Reg. 51166, 51188(1) (Aug. 19, 2005) *with id.* at 51189-91.

By contrast with the original Form LM-30 and with the Secretary's 2005 proposal to change that form, the revised Form LM-30 adopted by the Secretary's 2007 rule treats as reportable, without qualification, all "loans from[] a business" that deals with a union officer/employee's union or with a trust in which the union is interested or in substantial amount with employers whose employees the union represents or seeks to represent.  72 Fed. Reg. at 36161 (revised Form LM-30 Part A Item 7).  *See also id*. at 36183 ("if you, your spouse, or minor child . . . received loans from[] a business . . . that meets any of the conditions listed").  In issuing the 2007 final rule, the Secretary did not even note, much less give any explanation for, her decision to change course by henceforth treating "any loans" from "businesses" as reportable under subsections (a)(3) & (4).  By proceeding in

28

this way, the Secretary not only acted beyond her statutory authority under the LMRDA but also violated the APA's requirement for notice and comment rulemaking.

### C. The Requirement to Report on Receipts from Charities, Other Labor Organizations and Union-Trusts that are Not "Employers" Within the Meaning of LMRDA § 202.

#### 1. LMRDA § 202(a)(6) Is Not a Catch-All Provision Requiring Reporting on Any Situation the Secretary Deems to Have the Potential to Pose a Conflict of Interest.

LMRDA § 202(a)(6) requires reporting "any payment of money or other thing of value . . . received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer" except for payments of the type exempted from the prohibition contained in LMRA § 302(c).  29 U.S.C. § 432(a)(6).   Subsection (a)(6) thus completes the treatment of "labor relations" conflicts of interest begun in subsections (a)(1), (2) & (5) by requiring the reporting of payments to union officers/employees by employers who operate in the same labor market as other employers whose employees the union represents or is actively seeking to represent, i.e., payments by employers who are potential organizing targets of the union.  *See* U.S. Department of Labor, *LMRDA Interpretative Manual* § 248.005 ("A union officer must report under section 202(a)(6), if he receives any payment by way of dividends or otherwise from a firm which is competitive to one which has collective bargaining agreements with his own union.").  That is the only tenable reading of subsection (a)(6) that accords with its text, its statutory context, and its legislative history.

As the Secretary correctly recognizes, the term "any employer" as used in subsection (a)(6) does not mean "any entity that employs one or more employees."  As

29

she has explained, to so read (a)(6) would render "redundant . . . the previous five subsections" and would extend the reach of § 202(a) so far beyond the carefully delineated conflict-of-interest situations that "union officials would have to disclose virtually all their financial affairs" – clearly something that "Congress did not intend." 72 Fed. Reg. at 36129(2).

Nonetheless, the revised Form LM-30 – based on the Secretary's reading of § 202(a)(6) to cover any "such interests in or payments by employers" as "have the evident potential to pose a conflict between the official's own financial interests and the official's duty to his or her union," 72 Fed. Reg. at 36129(1) – provides that union officers/employees are to report payments from the following types of entity:

(i)  "an employer that is a trust in which the filer's labor organization is interested;"

(ii) "an employer that is a non-profit organization that receives or is actively and directly soliciting . . . money, donations, or contributions from the filer's labor organization;" or

(iii) "an employer that is a labor union that . . . has employees in the same occupation as those represented by the filer's union[,] claims jurisdiction over work that is also claimed by the filer's union[,] is a party to or will be affected by any proceeding in which the filer has voting authority or other ability to influence the outcome of the proceeding[,] or . . . has made a payment to the filer for the purpose of influencing the outcome of an internal union election." *Id*. at 36128(2).

Section 202(a)(6) cannot be read to grant the Secretary a standardless authority to require that union officers/employees report on any payments the Secretary deems to have the "potential to pose a conflict," just so long as the payment comes from an entity that has one or more employees.

Two aspects of the statutory text indicate that subsection (a)(6) is a delimited "labor relations" conflict-of-interest provision that supplements the delimited  subsection (a)(1), (2) & (5) "labor relations" conflict-of-interest provisions and is not a catch-all provision.  First, § 202(a)(6) focuses on labor relations situations by singling out for coverage "any person who acts as a *labor relations* consultant to an employer" rather than "any person who acts as a consultant to an employer," the formulation that would have been used if the provision were intended to have a broader reach.  Second, § 202(a)(6) singles out for exception "payments of the kinds referred to in § 302(c) of the Labor Management Relations Act, 1947, as amended," and LMRA § 302 is a provision that delineates proper and improper employer payments to union officers/employees in the labor relations context.

The legislative evolution of the provision enacted as LMRDA § 202(a)(6) and the legislative explanation of that subsection as it was revised by the Senate Labor Committee confirm that the subsection is a delimited "labor relations" conflict-of-interest provision that supplements the subsection (a)(1), (2) & (5) "labor relations" conflict-of-interest provisions and not a more general catch-all provision.

LMRDA § 202(a) is based on § 102(a) in the 1958 Kennedy-Ives bill and § 102(a) in the 1959 Kennedy-Ervin bill.  Section 102(a)(6) of the Kennedy-Ives bill, as it was

reported by the Senate Labor Committee and as it passed the Senate in 1958, required the

reporting of "any payment received directly or indirectly from any employer or any

person who acts as a labor relations expert, adviser, or consultant to an employer pursuant

to any agreement or arrangement by which the officer or employee is to influence or

affect employees in the exercise of rights guaranteed by section 7 of the National Labor

Relations Act, as amended, and the Railway Labor Act, as amended."  S. 3974 §

102(a)(6), 85th Cong., 2d Sess. (1958) reprinted in U.S. Department of Labor, *Legislative*

*History of the Labor-Management Reporting & Disclosure Act of 1959, Titles I-IV*

("LMRDA Leg. Hist."), p. 470.  As the 1958 Senate Report explained, "The purpose of

this paragraph, among other things, is to reach the union official who may receive a

payment from an employer not to organize the employees."  S. Rep. No.1684, 85th

Cong., 2d Sess., p. 19 (1958); LMRDA Leg. Hist. 392.

This version of § 102(a)(6) –  the version that received the most thorough

consideration in the Senate – was clearly a "labor relations" conflict-of-interest provision

aimed at payments to a union officer/employee by an employer whose employees the

union would be apt to have an interest in organizing.

The wording of § 102(a)(6) in the Kennedy-Ervin bill introduced at the beginning

of the 86th Congress was identical to the wording of that subsection in the 1958 bill.  S.

505 § 102(a)(6) , 86th Cong., 1st Sess. (1959); 1 Leg. Hist. 37-38.  Subsection 102(a)(6)

of the 1959 bill was then reworked during the Senate Labor Committee deliberations at

the suggestion of Senator Goldwater.  S. Rep. No. 187, p. 90; 1 Leg. Hist. 486.  As a

result of that amendment, § 102(a)(6) took the form in which it was ultimately enacted as LMRDA § 202(a)(6).

Senator Goldwater explained that the purpose of the change he requested was to make the employer payment's "objective" irrelevant to whether the payment was reportable. 2 Leg. Hist. 1846(1).   It is noteworthy in this regard that prior to that amendment, § 202(a)(6) was the only subpart of § 202 that did not define a reportable conflict-of-interest situation but rather made reporting turn on the purpose of the payment in question.

In suggesting that § 202(a)(6) be redrafted to follow the form of the other § 202(a) conflict-of-interest provisions, Senator Goldwater gave no indication that his purpose was to transform subsection (a)(6) from a delimited labor relations conflict-of-interest provision into a general catch-all not tied in any way to "labor relations" conflict-of-interest situations.  To the contrary, Senator Goldwater explained that the union officer/employee reporting requirements that emerged from the Senate Labor Committee in 1959 were directed only at financial interests or transactions with employers "which would constitute a conflict-of-interest," i.e., "holdings of interest in or the receipt of economic benefits from employers who deal or might deal with such union official's union." 2 Leg. Hist. 1846(1).

Not surprisingly, then, the 1959 Senate Report on § 102(a)(6) as amended by the Committee, like the 1958 Senate Report on § 102(a)(6) as originally drafted, described this provision as intended to "reach the union official who may receive a payment from an employer not to organize the employees."  S. Rep. No. 187, p. 16; 1 Leg. Hist. 412.

This description of § 102(a)(6)'s reach echoes the Report's earlier description of the bill's amendments to LMRA § 302 for the purpose of "clos[ing] the loopholes" revealed by the McClellan committee.  S. Rep. No. 187, p. 13; 1 Leg. Hist. 409.  The following portion of that description is pertinent:

> "*Ventimiglia v. United States* (242 F.2d 620 (4th Cir. 1957)), illustrates one inadequacy of the present law in respect of union representatives.  The employer had a nonunion construction job underway when the business agent of the local roofers' union objected.  Eventually, the business agent agreed to issue working permits to the nonunion employees in return for monthly payments of $100.  The court set aside a conviction under section 302 on the ground that neither the roofers' union nor the business agent was technically a 'representative' of any of the employer's employees.  The committee bill corrects this defect by adding a new subdivision proscribing payments to any labor organization, or any officer or employee, which is seeking to represent or would admit to membership any of the employees of the employer."  *Ibid*.

The prohibition on employer payments to a labor organization that "seeks to represent . . . any of the employees of such employer" added to LMRA § 302(a) by the Kennedy-Ervin bill directly corresponds to the reporting requirement for employer payments to an officer or employee of a labor organization that "is actively seeking to represent" the employees of such employer in  LMRDA § 202(a)(1), (2) & (5).  And, by the same token, the prohibition on employer payments to a labor organization that "would admit to membership . . . any of the employees of such employer" added to LMRA §

302(a) corresponds to the reporting requirement for "any payment . . . from any employer or any person who acts as a labor relations consultant to an employer" in LMRDA § 202(a)(6). Thus, as Senator Morse noted on the floor of the Senate, "Payments of the type described in section 202(a)(6) are also made criminal offenses under section 302(b) of the Taft Hartley Act, as amended." 2 Leg. Hist. 1415(2). The correspondence between LMRA § 302 and LMRDA § 202(a)(6) is underscored by the fact that the latter expressly incorporates the exceptions of the former by "except[ing] payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended."

The foregoing makes it entirely clear that LMRDA § 202(a)(6) was intended to round out the "labor relations" conflict-of-interest reporting requirements of subsections (a)(1), (2) & (5) by requiring the reporting of payments to a union officer/employee by any employer whose employees the filer's union "would admit to membership," even if the union neither "represents" nor is "actively seeking to represent" those employees. In other words, that subsection covers payments "from employers who . . . might deal with such union official's union," 2 Leg. Hist. 1846(1), including most particularly "a payment from an employer not to organize the employees," S. Rep. No. 187, p. 16, 1 Leg. Hist. 412.

The revised Form LM-30's treatment of entities, such as charities, other labor organizations and trusts, who are not potential organizing targets of the union officer/employee's labor organization is, therefore, contrary to law.

2.  No Explanation for Exempting Union-Sponsored Credit Unions from
the Reporting Exemption for Bona Fide Loans.

Part C of the original Form LM-30 – where payments covered by subsection (a)(6) are reported – contained an exception for "[b]ona fide loans, interest or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions."  Original Form LM-30 Instructions, Part C, exception (ii), p. 5.   Under the revised Form LM-30, this exception does not apply to bona fide loans from a financial institution that is "a 'trust in which your labor organization is interested.'"  72 Fed. Reg. at 36173(2).  In other words, the revised Form LM-30 would require union officers/employees to report "bona fide loans" from any credit union which their union has sponsored in whole or in part.

As we just demonstrated, the Secretary lacks authority to require "trust" reporting under subsection (a)(6).  But even assuming that the Secretary did have authority to treat "trusts," including union-sponsored credit unions, as "employers" covered by subsection (a)(6), the Secretary has failed to "articulate a satisfactory explanation for [her] action," *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983), in excluding union-sponsored credit unions from the "bona fide loan" exemption generally applicable to entities covered by that subsection.  The Secretary's limitation of the "bona fide loan" exemption is, therefore, "arbitrary [and] capricious."  5 U.S.C. § 706(2)(A)(2).

It is common for labor unions to set up credit unions for the purpose of allowing their members to pool their resources and thereby ensure access to credit.  Indeed, "credit

unions originally gained a foothold in the U.S. through labor unions." Wendell Fountain, *The Credit Union World: Theory, Process, Practice* 208 (2007). Under the revised Form LM-30, union officers/employees would have to report all personal loans granted to them or to members of their immediate family by credit unions sponsored by their unions.

To justify this sweeping reporting requirement, the Secretary cites a single "situation where a credit union controlled by a local union made 61% of its loans to four of its loan officers, three of whom were officers of the local." 72 Fed. Reg. at 36118(3). The Secretary asserts that "[i]f the officials had been required to report these loans, the members would have learned that their credit union was making loans for reasons related to union status, not on a borrower's ability to repay the debt." *Ibid.* That justification fails to withstand scrutiny.

In the first place, the loans described in this example do *not* meet the Secretary's definition of "bona fide loans." The Secretary has defined "bona fide loans" as loans that "are based upon the financial institution's own criteria and *made on terms unrelated to the official's status in the labor organization*." Form LM-30 FAQ 70 (emphasis added). The loans in the example were supposedly made "for reasons *related to union status*." 72 Fed. Reg. at 36118(3) (emphasis added). Thus, on the Secretary's own terms, the example has nothing to do with the "bona fide loan" exception.

Second, reporting these loans on a Form LM-30 would have disclosed virtually nothing about the credit union's loan practices, much less its reasons for granting the loans. Each local union officer's Form LM-30 would disclose only the amount and terms of his individual loan. Even taken together, the Form LM-30 reports of these local

union officers would not have disclosed what portion of the credit union's loans went to them.  Nor would the reports have disclosed that the local union officers were also credit union loan officers.

Finally, the Secretary completely ignores the fact that credit unions are regulated entities and subject to inspections that are designed to ensure that loan officers do not abuse their positions in the manner suggested by the example.  Indeed, credit union examiners are specifically instructed to pay particular attention to "loans to insiders" – i.e., loans to credit union "officers, directors, committee members, employees, and members of their immediate families" – to ensure that such loans meet the applicable legal standards.  National Credit Union Administration, *Examiners Guide*, p. 10A-1, available at: http://ncua.gov/GuidesManuals/examiners_guide/examguide.html.

In sum, the "insider loan" problem cited by the Secretary fails to provide a reasoned explanation for her decision to exclude union-sponsored credit union loans from the "bona fide loan" exception to reporting payments covered by subsection (a)(6).

III.  THE PROPER REMEDY.

The Administrative Procedure Act provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious . . . or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  As we have shown above, the Secretary's adoption of the revised Form LM-30 was in excess of her authority under the LMRDA.  Accordingly, the appropriate remedy is to vacate the rule adopting the revised Form LM-30.  *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001).  That is the remedy found appropriate by the District of Columbia

Circuit when the court of appeals determined that the Secretary exceeded her authority by adopting the Form T-1 requiring general trust reporting by unions, and it is the appropriate remedy here.  *AFL-CIO v. Chao, supra*, 409 F.3d at 391.  Vacating the rule is a particularly appropriate remedy here, since vacatur would have "the effect of reinstating the rules previously in force," *Action on Smoking and Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983), thereby allowing LM-30 reporting to continue uninterrupted on the original form.

<div align="center">CONCLUSION</div>

The 2007 Form LM-30 rule should be vacated.

Respectfully submitted,

 /s/ Leon Dayan
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

/s/ Jonathan P. Hiatt
JONATHAN P. HIATT
(D.C. Bar # 427856)
JAMES B. COPPESS
(D.C. Bar # 347427)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337

*Attorneys for Plaintiff*

STATUTORY APPENDIX

LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959

**Sec. 3.  Definitions** (29 U.S.C. § 402)

For purposes of titles, I, II, III, IV, V (except section 505), and VI of this Act –

*** 

(n)  "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

**Sec. 202. Report of Officers and Employees of Labor Organizations** (29 U.S.C. § 432)

(a) Filing; contents of report. Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year--

(1) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;

(2) any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(3) any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;

(4) any stock, bond, security, or other interest, legal or equitable,

which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;

(5) any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose employees his organization represents or is actively seeking to represent, except work performed and payments and benefits received as a bona fide employee of such employer and except purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer; and

(6) any payment of money or other thing of value (including reimbursed expenses) which he or his spouse or minor child received directly or indirectly from any employer or any person who acts as a labor relations consultant to an employer, except payments of the kinds referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended.

(b) Report of certain bona fide investments. The provisions of paragraphs (1), (2), (3), (4), and (5) of subsection (a) shall not be construed to require any such officer or employee to report his bona fide investments in securities traded on a securities exchange registered as a national securities exchange under the Securities Exchange Act of 1934, in shares in an investment company registered under the Investment Company Act of 1940 or in securities of a public utility holding company registered under the Public Utility Holding Company Act of 1935, or to report any income derived therefrom.

(c) Exemption from filing requirement. Nothing contained in this section shall be construed to require any officer or employee of a labor organization to file a report under subsection (a) unless he or his spouse or minor child holds or has held an interest, has received income or any other benefit with monetary value or a loan, or has engaged in a transaction described therein.

## Sec. 203. Report of Employers (29 U.S.C. § 433)

(a) Filing and contents of report of payments, loans, promises, agreements, or arrangements. Every employer who in any fiscal year made--

(1) any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except (A) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or

other credit institution and (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended;

\*\*\*

**Sec. 208. Rules and Regulations** (29 U.S.C. § 438)

The Secretary shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under this title and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion of such reporting requirements. \*\*\*

LABOR MANAGEMENT RELATIONS ACT OF 1947

**Sec. 302.  Restrictions on Payments to Employee Representatives** (29 U.S.C. § 186)

(a) Payment or lending, etc., of money by employer or agent to employees, representatives, or labor organizations. It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value--

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

\* \* \*

(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer;***

## ADMINISTRATIVE PROCEDURE ACT OF 1946

**Sec. 4.  Rule Making** (5 U.S.C. § 553)

***

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.  The notice shall include—

>(1) a statement of the time, place, and nature of public rule making proceedings;

>(2) reference to the legal authority under which the rule is proposed; and

>(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

>(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

>(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.  When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**Sec. 10(e).  Scope of Review** (5 U.S.C. § 706)

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall –
>
> <div align="center">***</div>
>
> > (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
> >
> > > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > >
> > > <div align="center">***</div>
> > >
> > > (D) without observance of procedure required by law;
> > >
> > > <div align="center">***</div>
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.