UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR                )
AND CONGRESS OF INDUSTRIAL                     )
ORGANIZATIONS,                                            )
                                                                        )
                                        Plaintiff,                   )
                                                                        )
v.                                                                       )    Civil Action No. 1:08-cv-00069-CKK
                                                                        )
ELAINE L. CHAO,                                            )
                                                                        )
                                        Defendant.              )
_____)


MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

                                        JAMES B. COPPESS
                                        (D.C. Bar # 347427)
                                        JONATHAN P. HIATT
                                        (D.C. Bar # 427856)
                                        DEBORAH GREENFIELD
                                        (D.C. Bar #  358317)
                                        815 Sixteenth Street, NW
                                        Washington, DC  20006
                                        (202) 637-5337

                                        LEON DAYAN
                                        (D.C. Bar # 444144)
                                        LAURENCE GOLD
                                        (D.C. Bar # 116020)
                                        805 Fifteenth Street, NW
                                        Washington, DC 20005
                                        (202) 842-2600

                                        *Attorneys for Plaintiff*

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

    1. "Employees of a Labor Organization" ...........................................................3

    2. "Payments and Other Benefits Received as a Bona Fide Employee" ...........................6

    3. Bona Fide Loans from "Businesses" Covered by LMRDA § 202(a)(3) & (4) ...........11

    4. The Conflicts of Interest Covered by LMRDA § 202(a)(6) ..........................................18

    5. Bona Fide Loans from Union-Sponsored Credit Unions ..............................................21

    6. The Appropriate Remedy ..............................................................................22

CONCLUSION ......................................................................................................23

TABLE OF AUTHORITIES

CASES                                                                                   Page

*AFL-CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) ...................................................3, 23

*BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046
   (2d Cir. 1986) ............................................................................................7, 8, 9, 10

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ...........................5

\*   *Dean v. American Fed. of Government Employees, Local 476*, 509 F.Supp.2d 39
   (D.D.C. 2007) ........................................................................................................3, 4, 5

\*   *Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71 (8th Cir. 1990) ............3, 4

*Iron Workers v. Bechtel Power Corp.*, 634 F.2d 258 (6th Cir. 1981) ...........................9

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*,
   463 U.S. 29 (1983) ....................................................................................................22

*Musicians Federation v. Wittstein*, 379 U.S. 171 (1965) ............................................2

*Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992) ...........................5

*NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849 (5th Cir. 1986) ...............................7, 8

*Wirtz v. Hotel Employees*, 391 U.S. 492 (1968) ........................................................1

*Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463 (1968) .........................1


STATUTES

5 U.S.C. § 7131(d)(1) ..................................................................................................11

29 U.S.C. § 158(a)(2) ..................................................................................................11

29 U.S.C. § 402(n) ......................................................................................................3

29 U.S.C. § 432(a) ......................................................................................................3

_____
\*  Authorities chiefly relied upon are marked with an asterisk.

TABLE OF AUTHORITIES (Continued)

29 U.S.C. § 432(a)(1) ...........................................................................................6, 11, 14

29 U.S.C. § 432(a)(2) ...............................................................................................11, 14

29 U.S.C. § 432(a)(5) .....................................................................................................6

29 U.S.C. § 432(b) .........................................................................................................15

29 U.S.C. § 432(c) .........................................................................................................14

29 U.S.C. § 433(a)(1) ......................................................................................................7

45 U.S.C. § 152 Fourth ..................................................................................................11

## REGULATORY MATERIALS

"Labor Organization Officer and Employee Report, Form LM-30," 72 Fed. Reg. 36106
   (July 2, 2,007) ...................................................................................................... *passim*

U.S. Department of Labor, *LMRDA Interpretative Manual* ...........................................19

## MISCELLANEOUS

*Black's Law Dictionary* (1990) .......................................................................................5

Interim Report of the Select committee on Improper Activities in the Labor or
   Management Field, S. Rep. No. 1417, 85th Cong., 2d Sess. 445 (1958) ............................15, 20

NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of
   1959* ..................................................................................................................2, 14, 19

U.S. Department of Labor, *Legislative History of the Labor-Management Reporting and
   Disclosure Act of 1959, Titles I-IV* ...................................................................................19, 20

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


INTRODUCTION

As the Government correctly observes, in applying the provisions of the Labor

Management Reporting and Disclosure Act, "it is important to follow the Supreme

Court's admonition that proper construction of the LMRDA 'frequently requires

consideration of its wording against the background of its legislative history and in light

of the general objectives Congress sought to achieve.'"  Gov. Mem. Opp. 21, quoting

*Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 468 (1968).  And, as the

Supreme Court has observed, the basic objective that the LMRDA Congress sought to

achieve is "to protect the rights of rank-and-file members to participate fully in the

operation of their union." *Wirtz v. Hotel Employees*, 391 U.S. 492, 497 (1968).

Against that background, it is very much to the point here that the Secretary of

Labor's 2007 Form LM-30 rule cuts against that objective and does so without

significantly advancing any of the LMRDA's other objectives.  Indeed, the onerous and

pointless reporting requirements imposed on rank and file union members by the

Secretary's 2007 rule are calculated to "substantially deplete the ranks of those who

might run [for or be appointed to union posts]."  *Hotel Employees*, 391 U.S. at 499.

The 2007 rule expands the Form LM-30 reporting requirements  to include the

terms and outstanding balances of officers' and employees'  home mortgage loans, of

their children's student loans and of other bona fide loans granted on terms generally

available to the public.  And, the rule requires union members who are allowed by their employer to spend time on union representational activities during their regular paid work day not only to report on their bona fide personal loans but also to carefully log every minute of the day spent on union representational activities and report on the portion of their regular pay and benefits attributable to that time.

Requiring rank and file union members to report and have posted on the internet such personal financial information has nothing to do with exposing "questionable interest[s]" or "questionable transaction[s]."  S. Rep. No. 187, 86th Cong., 1st Sess. 15 (April 14, 1959), reprinted in NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959*, vol. 1, p. 411 (cited as "[vol.] Leg. Hist. [page]").  What it has everything to do with is imposing a pointless bureaucratic burden on rank and file members who make the mistake of engaging in the sort of "full and active participation . . . in the affairs of the[ir] union" the LMRDA was intended to foster.  *Musicians Federation v. Wittstein*, 379 U.S. 171, 182-183 (1965).  With regard to such barriers to rank and file union participation, the correct view under the LMRDA is most certainly *not* "the more the merrier."  Gov. Mem. Opp. 35 (citation and quotation marks omitted).

As we now show, the Government's summary judgment brief serves only to confirm that in the critical respects challenged here the 2007 Form LM-30 rule cannot be defended either "in light of the general objectives Congress sought to achieve" by enacting LMRDA § 202 or by a "close construction of the words" of that provision.  Gov. Mem. Opp. 21 (quotation marks and citations omitted).  Thus, in these respects, the rule

is not "based on a permissible construction of [§ 202] in light of its language, structure, and purpose." *AFL-CIO v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005)(citations and quotation marks omitted).

ARGUMENT

1.  "Employees of a Labor Organization."

By its terms, LMRDA § 202(a) and its reporting requirements apply to only two delimited classes: i) "officer[s] of a labor organization;" and ii) "employee[s] of a labor organization."  29 U.S.C. § 432(a).

The term "officer" is defined by the statute and encompasses not all those holding union posts but only those holding certain posts, such as president or vice president, that carry the authority to perform "executive functions" and members of the union's "executive board or similar governing body."  29 U.S.C. § 402(n).

The term "employee of a labor organization" is not defined in the statute.  But, as we showed in our opening brief, AFL-CIO SJ Mem. 18-19, the term "employee" has a well-established meaning in the law generally, under which "[c]ompensation by the putative employer to the putative employee . . . is an essential condition to the existence of an employer-employee relationship." *Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990).  This Court, for example, applied that well-established meaning of "employee" in *Dean v. American Fed. of Government Employees, Local 476*, 509 F.Supp.2d 39, 53-56 (D.D.C. 2007), a Title VII case, to rule that a local union's shop stewards who are not compensated by their local are *not* employees of the local.  And, there is nothing in the text of the LMRDA or its legislative history that suggests Congress

intended the LMRDA term "employee of a labor organization" to have some other, eccentric meaning.

Against the foregoing, the Government defends the 2007 Form LM-30 rule's definition of "employee of a labor organization" to include individuals who are *not* compensated by the union with the following categorical assertion: "'compensation by the putative employer' is [not] a necessary prerequisite for the existence of an employer-employee relationship," it is "the element of 'control' [that] is the critical factor in determining whether an individual is an employee of a particular employer." Gov. Mem. Opp. 17. That defense fails completely.

First, the Government erroneously dismisses *Graves* and *Dean* as precedents "confined exclusively to the Title VII context" that do not state any generally applicable principles regarding the determination of an employer-employee relationship. Gov. Mem. Opp. 17-18.[1] To the contrary, both cases stand for proposition that "[c]ompensation is an essential condition to the existence of an employer-employee relationship," so that "[w]ithout compensation, no combination of other factors will suffice to establish the relationship." *Dean*, 509 F.Supp.2d at 54 (citation and quotation marks omitted). *Accord Graves*, 907 F.2d at 73.

---

[1] The Government would have it that *Dean* was "merely applying the 'payroll method' test" under Title VII. Gov. Mem. Opp. 17-18. But, as the *Dean* opinion makes clear, that test is concerned with determining who, *on any particular day*, counts as an employee and not with determining whether an employer-employee relationship has been formed. 509 F.Supp.2d at 52-53. The portion of the *Dean* decision on which we rely, *id*. at 54-56, applied general principles in ruling that "evidence" that "stewards are compensated by the Local, rather than by [their employer] . . . [is] an essential condition to the existence of an employer-employee relationship" between the Local and the stewards, *id*. at 56.

Second, the cases cited by the Government demonstrate, *not* that "'control' is the critical factor," Gov. Mem. Opp. 17, but that *both* compensation *and* control are necessary to the employer-employee relationship.   Those cases frame the question as "whether a *hired party*" is subject to "the *hiring party's* right to control the manner and means by which the product is accomplished."  *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (emphasis added), quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989).   And, in the employment context, "hire" means precisely "to arrange for the labor or services of another *for a stipulated compensation*." *Black's Law Dictionary* 729 (1990)(emphasis added).  Thus, as this Court concluded in *Dean*, "indicia" of control become relevant only "after concluding that the [putative employees] . . . received compensation from the [putative employer] for their services."  509 F.Supp. 2d at 54.

Virtually every union member who performs tasks on behalf of the union does so under the union's "control" in the sense that the member can be relieved of his responsibilities or his actions can be countermanded if the union concludes he has acted inconsistently with its goals.  The shop stewards, bargaining committee members, safety representatives and the myriad other unpaid union members who are willing to be active in their union that the Secretary's 2007 rule treats as labor organization employees are under no more control than that.  But, as the Government acknowledges, under a "control" test, all such union members would "constitute 'employees' of the labor organization by virtue of their performance of duties on behalf of the union and under the union's control."  Gov. Mem. Opp. 20.  In short, the "control" test would sweep within

LMRDA § 202(a) virtually every active member of the union.  That is clearly *not* what Congress intended when it specifically restricted LMRDA § 202(a)'s coverage to "officer[s] of a labor organization" and "employee[s] of a labor organization."

   2.  "Payments and Other Benefits Received as a Bona Fide Employee."

   LMRDA § 202(a)(1) & (5) requires a labor organization officer or employee to report payments that he or a member of his immediate family receives from an employer whose employees the labor organization represents or is actively seeking to represent, "*except payments and other benefits received as a bona fide employee of such employer*." 29 U.S.C. § 432(a)(1) & (5) (emphasis added).

   In the 2007 Form LM-30 rule, the Secretary takes the position that the regular pay received from his employer by an employee who is properly classified as a "bona fide employee of such employer" that is attributable to time the employee spent on "union duties" is *not* pay "received as a bona fide employee of such employer" for purposes of the § 202(a)(1) & (5) reporting exceptions.  The Government – while defending that position –  acknowledges that "the Secretary's construction of the statutory text [is] not the most natural."  Gov. Mem. Opp. 23.  But, the Secretary's construction is not merely "[un]natural," it is incoherent.  And, the Government's argument that the Secretary is free to proceed as she has because the LMRDA does not "define[] the term 'bona fide employee'" is a *non sequitur.*

   As to incoherence, the "received as a bona fide employee" exception to LMRDA § 202(a)(1) & (5) is phrased very much like the Labor Management Relations Act § 302(c)(1) exception allowing otherwise prohibited employer payments to union

representatives so long as the payments are received "as compensation for, or by reason

of, [the employee's] service as an employee of such employer."   The Secretary has both

acknowledged that "section 302(c)(1) . . . allow[s] an employer to grant a bona fide

employee who is a union official paid time off in order that he may attend to union

duties."  72 Fed. Reg. 36106, 36126(2) (July 2, 2007),[2] and adopted this interpretation of

LMRA § 302(c) in defining the employer reporting requirements under LMRDA §

203(a).  In the latter regard, the Secretary has determined that such union-leave and no-

docking payments by employers to their bona fide employees come within the exemption

to the LMRDA § 203(a)  requirement that employers report payments to union officials

for "payments of the kind referred to in section 302(c) of the Labor Management

Reporting Act, 1947, as amended."  29 U.S.C. § 433(a)(1).  *See* AFL-CIO Exhibit 7, LM-

10 Instructions Part A, Item 8 a, p. 3.

Consistent with her construction of § 203(a), the Secretary had previously taken

the position that regular pay from the employer received by such a "bona fide employee"

attributable to time spent on "union duties" was "received as a bona fide employee of

such employer," within the meaning of § 202(a)(1) & (5), and was equally exempt from

both the LM-30 reporting requirement and the LM-10 reporting requirement.  *See* AFL-

CIO Exhibit 3, LM-30 Instructions Part A exclusion (iv) to Items 6 and 7, pp. 3-4.

With the adoption of the 2007 Form LM-30 rule, the Secretary now at one and the

same time takes the position that a bona fide employee's continued receipt of his regular

---

[2]  Quoting *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d 1046, 1050 (2d Cir. 1986), and citing *NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849, 856 n. 4 (5th Cir. 1986).

7

pay for time spent on union activities *is* exempt from employer Form LM-10 reporting under LMRDA § 203(a) *and* the position that the continued receipt of such regular pay *is not* exempt from employee Form LM-30 reporting under LMRDA § 202(a).  In other words, the Secretary's current position is that employer payments received by a "bona fide employee" "as compensation for, or by reason of, his service as an employee of such employer," within the meaning of LMRA § 302(c)(1) as incorporated by reference into LMRDA § 203(a)(1), are *not* employer "payments . . . received as a bona fide employee of such employer," within the meaning of LMRDA § 202(a)(1) & (5).  These internally inconsistent positions render the Secretary's reading of these sections completely incoherent.

The Secretary's asserted freedom to "define[] the term 'bona fide employee,'" Gov. Mem. Opp. 21, does not grant her leave to adopt inconsistent positions on what payments are "received as a bona fide employee."  The Secretary's 2007 Form LM-30 rule does not essay some novel definition of "bona fide employee."  To the contrary, the rule accepts the definition in the LMRA § 302(c) cases – i.e., "a 'bona fide' employee" is one who has been "assigned [to perform] meaningful work for the employer" as opposed to having been merely "put on an employee payroll." *NLRB v. BASF Wyandotte Corp.*, 798 F.2d at 856 n. 4.[3]

---

[3]  *Accord BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d at 1050 ("an official would not be a bona fide 'employee' within the meaning of the statute" where "an employer simply . . . put [him] on its payroll while assigning him no work").

What the 2007 Form LM-30 rule does is adopt an untenable definition of what pay is "received as a bona fide employee." The Secretary's new found view is that the only pay an employee receives by virtue of his status as a "bona fide employee" are "payment[s] for activities performed on the payer-employer's behalf." 72 Fed. Reg. at 36126(3). That is an indefensible reading of the phrase "received as a bona fide employee."

In the LMRA § 302(c)(1) context, the courts have rejected this "focus[] . . . on whether the activities to be engaged in during the paid period directly benefit the employer [rather] than on whether they are engaged in by one who is a bona fide employee of the payor" on the ground that many employer payments unquestionably "received as a bona fide employee" are for employee activities that are direct services to the employer:

> "To the extent that fringe benefits consist of payments to an employee for any period of time in which he is not doing the employer's work, such as vacation, or sick time, or military leave, the activities engaged in are plainly not direct services to the employer. Thus, on sick leave, the employee seeks to recover his own health; on jury leave, he seeks to serve his community; on military leave, he seeks to serve his country. While indirectly the employer may be benefited, the

---

*Reinforcing Iron Workers v. Bechtel Power Corp.*, 634 F.2d 258 (6th Cir. 1981), cited at Gov. Mem. Opp. 18 & 24-25, involved "an employer's payments to persons . . . who were not its employees" in the sense of having performed work for the employer and thus presents an instance of payments that were received by someone who was *not* a "bona fide employee." *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d at 1054.

employee's activity during these periods is not service to the employer." *BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union*, 791 F.2d at 1049.

The Government's counter to this reasoning – by arguing that "sick leave, jury duty, and vacation time is available to all employees" and that "compensation for sick leave and vacation time are benefits undoubtedly granted in exchange for work performed for the employer," Gov. Mem. Opp. 24 – is an utter failure. Sick leave, military leave, and jury leave are *not* "available to all employees;" they are available only to employees who become ill or who serve in the military or on a jury. Moreover, sick leave and vacation time *may* – or *may not* – be calculated on the basis of "work performed,"[4] while military leave and jury duty leave are *never* calculated on the basis of "work performed" for the employer.

In the end, the Government abandons any attempt to defend the Secretary's new reading of the § 202(a)(1) & (5) exception as a permissible interpretation of the statutory text in favor of the policy argument that requiring employees to report the portion of their regular pay and benefits attributable to time spent on union representational activities will "force disclosure of a wide range of financial transactions posing potential conflict of interest concerns, notwithstanding their legality, for the purposes of enlightening union members, deterring fraud and self-dealing, and fostering union autonomy." Gov. Mem. Opp. 25. That policy argument has no footing.

---

[4] Employers can and do allow sick leave on an as-need basis and treat vacation leave as fully accruing at the *beginning* of each work year.

There is no discernable "potential conflict of interest" caused by an employee's continued receipt of his regular pay for time spent on union representational activities, much less a risk of "fraud and self-dealing." Indeed, this practice is expressly permitted by *all* of the federal labor statutes.[5] And, the suggestion that imposing onerous record keeping and reporting requirements on employees who are willing to act as shop stewards, bargaining committee members or safety representatives will "foster union autonomy" turns logic on its head.

3. Bona Fide Loans from "Businesses" Covered by LMRDA § 202(a)(3) & (4).

With respect to receipts from covered "employers," labor organization officers and employees are required to report *both* "any income or any other benefit with monetary value" *and* "any loan," regardless of whether the loan constitutes "income or any other benefit with monetary value." 29 U.S.C. § 432(a)(1) & (2). In contrast, with respect to receipts from covered "businesses," officers and employees are only required to report "any income or any other benefit with monetary value." 29 U.S.C. § 432(a)(2) (emphasis added).

In light of the clear distinction drawn by the statutory language, for the first fifty years, the instructions to the Form LM-30 required officers and employees to report "*any*

---

[5] *See* 5 U.S.C. § 7131(d)(1) ("any employee representing an exclusive representative . . . shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest"); 29 U.S.C. § 158(a)(2) ("an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay"); 45 U.S.C. § 152 Fourth ("nothing in this Act shall be construed to prohibit a carrier from permitting . . . local representatives of employees from conferring with management during working hours without loss of time").

loan to or from the [covered] employer" but did not require the reporting of "any loan" from covered "businesses."   *Compare* AFL-CIO Exhibit 3, Form LM-30 Instructions Item 7(b), p.4 (emphasis added) *with id*. Item 12, p. 5 (incorporating by reference "Item 7(a) and (c)" in the instructions for "employer" reporting but *not* incorporating Item 7(b)).

In defiance of the statutory language, the 2007 Form LM-30 rule now requires labor organization officers and employees to report all "loans" from covered "businesses."  72 Fed. Reg. at 36161 (revised Form LM-30 Part A Item 7 & 36183 (instruction regarding "loans from[] a business").   And, the Secretary has made clear that this new requirement to report all "loans" from "businesses" extends to "bona fide loans," which she defines as those "based upon the financial institution's own criteria and made on terms unrelated to the official's status in the labor organization."  AFL-CIO Exhibit 5, Form LM-30 FAQs 70 & 71.[6]  In announcing the 2007 rule, the Secretary did not acknowledge this substantive addition to the Form LM-30 reporting requirements, much less articulate a statutory basis for requiring the reporting of "bona fide loans" from covered "businesses."

(a)  The Government's brief unsuccessfully seeks to fill the void in the Secretary's explanation of the 2007 rule by asserting that "[t]he term 'any other benefit with

---

[6]   The Government repeatedly criticizes us for treating the Form LM-30 Frequently Asked Questions posted on the Department of Labor's website (AFL-CIO Exhibit 5) as reflecting the Secretary's interpretation of the 2007 Form LM-30 rule.  *See* Gov. Mem. Opp. 19 n. 6 & 398 n. 21.  But the Government does not deny that the Form LM-30 FAQs do, in fact, state the Secretary's interpretation of the rule.

monetary value' . . . is capacious and easily encompasses [bona fide] loans." Gov. Mem. Opp. 37. This is so, says the Government, because the "use" of loaned funds has a "monetary value" reflected in the market price for the loan, i.e., the interest charged by the lender. *Id*. at 37 n. 18.

On the Government's theory, any commodity sold or leased on the market constitutes a "benefit with monetary value" that is reflected in its market price. Thus, on that theory, officers and employees would be required to report any over-the-counter purchase they make from any business that also deals with the labor organization. In other words, officers and employees would have to report the value of electrical power or natural gas purchased at market prices from the public utilities serving the labor organization; they would have to report the value of items purchased at market prices from retail establishments that also sell to the labor organization; and they would have to report the rental value of automobiles leased at market prices from companies that also lease to the labor organization.

All that being so, it is hardly surprising that the Secretary has never embraced any such reading of the statutory phrase "benefit with monetary value" and has never required labor organization officers and employees to report the monetary value of goods and services purchased or leased at market rates from "businesses."

Of equal moment, the statutory language of the LMRDA itself and the LMRDA amendments to LMRA § 302 make it clear that Congress did not consider a bona fide loan to constitute a "benefit with monetary value." In the first place, if any and all loans are encompassed within the phrase "benefit with monetary value," it would have been

unnecessary for Congress, after first specifying in § 202(a)(1) that any "benefit with monetary value" from a covered "employer" is reportable, to further specify in § 202(a)(2) that "any loan" from a covered "employer" is also reportable.  29 U.S.C. § 432(a)(1) & (2).  *See also* 29 U.S.C. § 432(c) (treating "any other benefit with monetary value" and "a loan" as distinct  categories).  Moreover, if bona fide loans constitute a "benefit with monetary value," it would have been unnecessary for the LMRDA Congress to amend LMRA § 302 to make it unlawful for an employer to "lend" – in addition to "pay" or "deliver" – "any money or other thing of value" to any union representative.  2 Leg. Hist. 1885  *See* AFL-CIO SJ Mem. 26 n. 12.

    To be sure, the Government suggests that the express requirement to report "any loan" from a covered "employer" might have been intended "to ensure that all loans be disclosed in the event 'bona fide' loans were considered to fall within the (a)(1) exception as a 'payment[] . . . [or] other benefit[] . . . received as a bona fide employee.'"  Gov. Mem. Opp. 37.  However, employer loans are not granted as an employee benefit, and there is no indication that the LMRDA Congress thought they were.  The Government's further suggestion that the LMRDA amendments to LMRA § 302 prohibiting "lend[ing]" "any money or other thing of value" was necessary because it was "not generally understood that 'pay' or 'deliver' would include making a loan," Gov. Mem. Opp. 38 n. 20, gets it nowhere, for it is equally "not generally understood that ['any income or any

other benefit with monetary value . . . derived from [a] business'] would include [receiving a bona fide] loan."[7]

The Government correctly observes that "the McClellan Report disclosed irregularities regarding loans to . . . labor organization officials . . . in situations where a financial institution wished to curry favor with an official to become or remain a repository of the union's funds." Gov. Mem. Opp. 34. But that sound point adds nothing to the Government's claim that the phrase "benefit with monetary value" includes bona fide loans. The irregularities disclosed by the McClellan Report involved "highly improper business relationships" in which the union officials received "loans at unusually low rates of interest." Interim Report of the Select Committee on Improper Activities in the Labor or Management Field, S. Rep. No. 1417, 85th Cong., 2d Sess. 445 (1958). Indeed, the McClellan Report emphasized that the problem with the loans in question was that they were made on terms *not* available to members of the general public. *See, e.g., id.* at 77 ("I don't think anybody else could have borrowed money at that rate," not "any ordinary, normal customer.").

---

[7] The Government notes that LMRDA § 202(a)(3) & (4) "also require[s] the reporting of any income and purchases and sales of securities – which one could reasonably argue are just as private and just as pedestrian" as bona fide loans. Gov. Mem. Opp. 38-39. The receipt of income from or the holding of an interest in a "business" that deals with the union creates the potential for conflicts of interest that do not arise with respect to open market transactions with such businesses. The receipt of income or holding of an interest in a business creates an incentive to deal with the business in a way favorable to it that does not arise from simple commercial transactions with a business. Confirming that this was the LMRDA Congress's view is the exception of open-market securities transactions on national exchanges from § 202(a)'s reporting requirements. 29 U.S.C. § 432(b).

Such "improper business relationships" – whether they take the form of a loan at below-market rates granted to a labor organization officer or employee based on his union status or some other purchase or lease by an officer or employee at a special, below-market price based on his status – plainly constitute a reportable "benefit with monetary value."   Such transactions are not equal exchanges in terms of "monetary value" and do confer a net "monetary" gain on one of the parties.  In contrast, a bona fide loan at market rates available to the general public – in common with all other bona fide transactions at the market price – does *not* bestow such a net monetary gain on one of the parties and does *not* constitute a "benefit with monetary value."

Try as it may, then, the Government simply cannot articulate any statutory basis for the new requirement to report "bona fide loans" from covered "businesses."

(b)  Even putting the foregoing aside, this change in the Form LM-30 is legally defective in that it was adopted without following the notice and comment procedure required by the Administrative Procedures Act.  AFL-CIO SJ Mem. 27-29.  The Government's response is to deny that there was any change at all, pointing to an example added to the "general instructions" in 2003 that indicates that "a loan from a business" may be reportable.  Gov. Mem. Opp. 40-41.  *See* AFL-CIO Exhibit 3, Form LM-30 Instructions p. 3.[8]  That will not do.  As we have noted, a loan granted by a

_____

[8]  The instructions to the Form LM-30 in effect from 1963 to 2003 did not contain even this reference to "loans" from covered "businesses."  Gov. Mem. Opp. 40-41.  *See* Exhibit 1 to Defendant's Response to Plaintiff's Statement of Material Facts.  Because the 2003 change was made without notice and comment, Gov. Mem. Opp. 42, it escaped our attention, and in our opening brief we proceeded on the assumption that the Form LM-30 in effect through 2007 had been in effect continuously since the 1963 rulemaking

16

covered "business" at a below-market price is a "benefit with monetary value" and, as

such, has always been reportable.  And, the example cited by the Government did not

purport to define what constitutes a reportable loan from a covered "business."  When the

instructions turned to that subject they drew a clear distinction between loans from

covered "employers" and loans from covered "businesses," treating *all* of the employer

loans as reportable but *not* all of the business loans.  *Compare*  AFL-CIO Exhibit 3, Form

LM-30 Instructions Item 7(b) p. 4 (instruction to report "any loan to or from the

[covered] employer") *with id*. Item 12, p. 5 (omitting that instruction with respect to

covered "businesses").[9]

---

that first created the Form LM-30.  *See* AFL-CIO Statement of Material Facts ¶ 6.  The differences between the 1963 and the 2003 forms have no relevance to the issues in this case.

[9]  In addition to flatly denying any change, the Government argues that the requirement to report "bona fide loans" from "businesses" under LMRDA § 202(a)(3) & (4) was a logical outgrowth of the Secretary's proposal to do away with the "bona fide loan" exception under LMRDA § 202(a)(6).  Gov. Mem. Opp. 43-46.  But the Secretary herself has said that the § 202(a)(6) exception has nothing to do with whatever requirements there may be to reports loans under other subsections.  72 Fed. Reg. at 36118(3).

In the latter regard, the Secretary observed that the "bona fide loan" exception to reporting "payments" from other "employers" under LMRDA § 202(a)(6) did not apply "[w]here the financial institution is an employer whose employees the filer's union represents or is actively seeking to represent" or " a business that buys, sells, leases or otherwise deals with the union, a trust in which the union is interested, or in substantial part with the employer of the union members."  72 Fed. Reg. at 36118(3).  The reason that the "bona fide loan" exception has no relevance to either of these two categories is that *any* loan, including a bona fide loan, from a covered "employer" is reportable and *no* bona fide loan from a covered "business" is reportable.  A "bona fide loan exception" for other employers was necessary because LMRDA § 202(a)(6) covers "any payment of money" and thus could be read to reach a "payment of money" dispersing funds pursuant to a bona fide loan agreement.

4.  The Conflicts of Interest Covered by LMRDA § 202(a)(6).

LMRDA § 202(a)(6) – by its terms and read against the background of its legislative history – requires labor organization officers and employees to report payments from "employers" and their "labor relations consultants" that create potential labor relations conflicts of interest.  Nevertheless, in the 2007 Form LM-30 rule, the Secretary has read § 202(a)(6) as authorizing her to require officers and employees to report three categories of payments that create no potential labor relations conflicts of interest so long as the payor happens to have one or more employees.

The Government's main defense of the Secretary's action is that "LMRDA § 202(a)(6) is the broadest provision of § 202 . . . requiring reporting of *all* payments by *any* employer regardless of the existence or nature or a relationship between the employer and the filer's union."  Gov. Mem. Opp. 26 (emphasis added).  But that is *not* and has *never* been the Secretary's reading of § 202(a)(6).  Indeed, the Secretary has rejected that reading of § 202(a)(6) on the grounds that it would render "redundant . . . the previous five subsections" and would extend the reach of § 202(a) so far beyond the carefully delineated conflict-of-interest situations that "union officials would have to disclose virtually all their financial affairs" – results the Secretary correct concluded "Congress did not intend."  72 Fed. Reg. at 36129(2).  In this regard, the Secretary observed that the literal reading of § 202(a)(6) advanced by the Government would "require a union official to report *all* employment compensation paid by *any* employer to his or her spouse or minor child."  *Ibid*. (emphasis added).

18

The Secretary has consistently recognized that "Section 202(a)(6) is designed for those situations which pose conflict of interest problems which are not covered in the previous five sections of 202." AFL-CIO Exhibit 8, U.S. Department of Labor, *LMRDA Interpretative Manual* § 248.001. And, as the examples given in the *LMRDA Interpretative Manual* demonstrate, over the years, the Secretary has identified the "conflict of interest problems" covered by § 202(a)(6) as those that potentially involve some facet of the "employer's" labor relations. *See id*. §§ 248.005, 248.100 & 248.200. *Pace* Gov. Mem. Opp. 29 n. 12.

Indeed, as we stressed in our opening brief, the simple fact that § 202(a)(6) applies to payments from "any employer or any person who acts as a labor relations consultant to an employer" – rather than from "businesses" – makes it manifest that the section's point is to require reporting of potential labor relations conflicts of interest. That is the reason the provision specifies that the payor be an "employer" or an employer's "labor relations consultant." And, that is the reason § 202(a)(6) incorporates the exceptions to LMRA § 302, a provision addressed to labor relations conflicts of interest. As we also stressed in our opening brief for the reasons reviewed in the margin, this is the only reading of § 202(a)(6) that is consistent with its legislative history.[10]

_____

[10] As passed by the Senate in 1958 and as reintroduced by its sponsors in 1959, that provision applied only to employer payments intended "to influence or affect employees in the exercise of rights guaranteed by section 7 of the National Labor Relations Act, as amended, and the Railway Labor Act, as amended." S. 3974 § 102(a)(6), 85th Cong., 2d Sess. (1958) reprinted in U.S. Department of Labor, *Legislative History of the Labor-Management Reporting & Disclosure Act of 1959, Titles I-IV* ("LMRDA Leg. Hist."), p. 470; S. 505 § 102(a)(6) , 86th Cong., 1st Sess. (1959); 1 Leg. Hist. 37-38. The section was changed at the request of Senator Goldwater in order to

Against all this, the 2007 Form LM-30 rule rests on the premise that § 202(a)(6) authorizes the Secretary to require reporting payments that create any type of potential conflict of interests that the Secretary may perceive just so long as the entity making the payment happens to have one or more employees  On this interpretation, the Secretary treats: a charity that solicits contributions from a labor organization as covered by § 202(a)(6) if it has employees but not covered if it has no employees; a union-related trust as covered if it has employees but not covered if it has no employees; and a rival labor organization as covered if it has employees but not covered if it has no employees. There is no apparent reason – and the Secretary certainly does not venture to offer one – why Congress would have drawn this line between entities that do and entities that do not have employees, since the potential conflicts cited by the Secretary in justifying coverage of charities, trusts and labor organizations have nothing whatsoever to do with whether they have any employees.

In sum, there is no basis for reading LMRDA § 202(a)(6), as the Secretary does, to reach any potential conflicts of interest involving any entity that happens to have one or more employees, much less for reading that provision, as the Government does, to reach

---

make the "objective" of the employer's payment irrelevant.  2 Leg. Hist. 1846(1).  But even after the change, Senator Goldwater continued to describe the section as reaching only "holdings of interest in or the receipt of economic benefits from *employers who deal or might deal with such union official's union*."  *Ibid*. (emphasis added).  And, the 1959 Senate Report described the reach of the amended subsection (a)(6) in terms identical to those used by the 1958 Senate Report in describing its forerunner.  *Compare* S. Rep. No. 187, p. 16; 1 Leg. Hist. 412 (subsection (a)(6) "reach[es] the union official who may receive a payment from an employer not to organize the employees") *with* S. Rep. No.1684, 85th Cong., 2d Sess., p. 19 (1958), LMRDA Leg. Hist. 392 (same).

"all payments by any employer regardless of the existence . . . of a relationship between the employer and the filer's union."  Gov. Mem. Opp. 26.  Rather, that subsection must be read, as the Secretary had previously read it, to reach only potential labor relations conflicts of interest not covered by the other "employer" subsections of LMRDA § 202(a).

     5.  Bona Fide Loans from Union-Sponsored Credit Unions.

     The 2007 rule requires labor organization officers and employees to report the terms of all loans from union-sponsored credit unions, including bona fide loans granted on the credit union's own criteria and on terms unrelated to the borrower's union status. Previously, the Secretary had exempted such bona fide credit union loans from Form LM-30 reporting.

     The effect of this new requirement is that the cost of assuming a union post – including, in the Secretary's view, such non-"officer" positions as shop steward, bargaining committee member or safety representative – is that the terms of any credit union loan will be posted on the internet.  For most people, that is tantamount to foreclosing credit union loans altogether.

     To justify this onerous condition on union participation, the Secretary pointed to a single instance "where a credit union controlled by a local union made 61% of its loans to four of its loan officers, three of whom were officers of the local" and did so "for reasons related to union status, not on a borrower's ability to repay the debt." 72 Fed. Reg. at 36118(3).  In our opening brief, we noted that this single occurrence did not justify excluding union-sponsored credit unions from the "bona fide loan" reporting exception,

for, among other reasons, the loans in the Secretary's example were *not* "bona fide

loans." AFL-CIO SJ Mem. 37. The Secretary defines "bona fide loans" as loans that

"are based upon the financial institution's own criteria and *made on terms unrelated to

the official's status in the labor organization*." AFL-CIO Exhibit 5, Form LM-30 FAQ 70

(emphasis added). And, the loans in the cited situation were, by the Secretary's own

description, made "for reasons related to union status." 72 Fed. Reg. at 36118(3).

     The Government responds by offering a new definition of "bona fide loans" in

place of the Secretary's definition. According to the Government, a "bona fide loan" is

"[a] loan that . . . represents a disbursement to another in return for a promise to repay, . .

. made with a genuine intent by the lender to collect and the borrower to repay." Gov.

Mem. Opp. 32. The fact that the Government's definition of "bona fide loans" does not

match the Secretary's definition is sufficient in itself to undermine this response. But it is

worth noting that the loans cited by the Secretary would not meet even the Government's

more lax definition of "bona fide loans," since they were given without regard to the

"borrower's ability to repay the debt." 72 Fed. Reg. at 36118(3).

     The requirement to report credit union loans – in addition to being beyond the

reach of § 202(a)(6) – is thus completely lacking "a satisfactory explanation." *Motor

Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S.

29, 43 (1983).

     6. The Appropriate Remedy.

     In our opening brief we suggested that, were the Court to find that the Secretary's

adoption of the revised Form LM-30 was in excess of her authority, the proper remedial

22

course would be that of the D.C. Circuit in *AFL-CIO v. Chao*, 409 F.3d at 391, i.e., vacation of the 2007 rule.  AFL-CIO SJ Mem. 38-39.  The Government responds that merely "remand[ing] the affected portion of the Rule to the Secretary for further action" would be the appropriate remedy.  Gov. Mem. Opp. 45.  That is clearly inadequate relief.

If portions of the Form LM-30 are contrary to law, the entire form needs to be removed from circulation.  Potential Form LM-30 filers are cautioned by the form's instructions that they may be "subject to criminal penalties . . . for knowingly failing to disclose a material fact in a required report."  72 Fed. Reg. at 36181(2).  Therefore, as long as the current form is in circulation, filers will feel compelled to complete all parts of the form following all parts of the instructions, including the legally invalid parts.

As we noted, and as the Government does not contest, vacating the 2007 Form LM-30 rule will have the effect of reinstating the previous, lawful Form LM-30.  AFL-CIO SJ Mem. 39.  Therefore, vacation of the rule will allow Form LM-30 reporting to continue in the same manner it has for the last fifty years, while the Secretary determines how to respond to this Court's rulings.

<div align="center">CONCLUSION</div>

The 2007 Form LM-30 rule should be vacated.

<div style="margin-left: 40%;">Respectfully submitted,</div>

<div style="margin-left: 40%;">

/s/ _____

JAMES B. COPPESS
(D.C. Bar # 347427)
JONATHAN P. HIATT
(D.C. Bar # 427856)

</div>

<div align="center">23</div>

DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337


/s/_____
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR    )
AND CONGRESS OF INDUSTRIAL       )
ORGANIZATIONS,                             )
                                                    )
                            Plaintiff,            )
                                                    )
v.                                                  )    Civil Action No. 1:08-cv-00069-CKK
                                                    )
                                                    )
ELAINE L. CHAO,                          )
                                                    )
                            Defendant.        )
_____)

PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS

Plaintiff American Federation of Labor and Congress of Industrial Organizations

("AFL-CIO") responds to the Statement of Material Facts submitted in support of the

Defendant's Motion for Summary Judgment as follows.

Paragraphs 1-8 of the Defendant's Statement of Material Facts are admitted.

Paragraph 9 is denied. The Secretary's prior interpretation of LMRDA § 202(a) as

reflected in the previously promulgated Form LM-30 (AFL-CIO Exhibits 2 & 3) and in

her prior guidance (AFL-CIO Exhibit 8) and her present interpretation of LMRDA §

203(a) as reflected in the present Form LM-10 (AFL-CIO Exhibits 6 & 7) are relevant to

the proper interpretation of the statute. In addition, the Secretary's contemporaneous

interpretation of the 2007 Form LM-30 rule (AFL-CIO Exhibit 5) is relevant to the

meaning of that rule.   *See* Defendant's Response to Plaintiff's Statement of Material

Facts. ¶s 8-10.

Respectfully submitted,


/s/_____
JAMES B. COPPESS
(D.C. Bar # 347427)
JONATHAN P. HIATT
(D.C. Bar # 427856)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
815 Sixteenth Street, NW
Washington, DC  20006
(202) 637-5337


/s/_____
LEON DAYAN
(D.C. Bar # 444144)
LAURENCE GOLD
(D.C. Bar # 116020)
805 Fifteenth Street, NW
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*