**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:08-cv-00069 (CKK) |
| ELAINE L. CHAO, Secretary, United States Department of Labor, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      The Secretary's Determination That "Labor Organization
        Employee" Includes Individuals Performing Work On Behalf
        Of, And Under the Control Of, The Labor Organization
        Notwithstanding That Payment For Such Work Is Made By
        The Employer Is Amply Grounded In Precedent And Entitled
        To Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Plaintiff Has Failed To Demonstrate That § 302(c) Of The
        LMRA Must Be Interpreted Identically To § 202(a)(1) Of The
        LMRDA, Such That Union-Leave And No-Docking Payments
        Must Be Deemed To Fall Within The LMRDA's Reporting
        Exception For Payments Received As A "Bona Fide Employee"
        Of The Employer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    Plaintiff Has Adduced Nothing To Show That LMRDA § 202(a)(6)
        Is Limited To Disclosure Of "Labor Relations" Conflicts Of Interest.. . . . . . . . 13

IV.     Plaintiff Has Failed To Show That the Secretary's Explanation for
        Limiting The Bona Fide Loan Administrative Exception To LMRDA
        § 202(a)(6) So As To Require Reporting Of Loans From Trusts In
        Which Labor Organizations Hold An Interest Lacks A Rational Basis.. . . . . . . 15

V.      Plaintiff's Argument That LMRDA § 202(a)(3) And (a)(4) Permit
        Reporting Of Loans, But Not Bona Fide Loans, Is Demonstrably
        Incorrect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.      Plaintiff Fails To Challenge That The Secretary's Interpretation
                Of "Benefit With Monetary Value" Is An Interpretative Rule. . . . . . . . . 21

        B.      Plaintiff Has Failed to Counter the Secretary's Alternative
                Showing That The Requirement To Report Loans Obtained
                From Businesses Under § 202(a)(3) And (a)(4) Is A
                Logical Outgrowth Of The Proposed Rule. . . . . . . . . . . . . . . . . . . . . . 22

VI.     The Appropriate Remedy Is Remand.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>PAGE(S)</u>

*<u>AFL-CIO v. Chao</u>, 409 F.3d 377 (D.D.C. 2005). ................................................................... 3, 15

<u>Barnhart v. Walton</u>, 535 U.S. 212 (2002). ............................................................................... 3, 15

*<u>Chevron U.S.A., Inc. v. NRDC</u>, 467 U.S. 837 (1984). ......................................................... *passim*

<u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730 (1989). ..................................... 5, 6

<u>Daggitt v. United Food & Commercial Workers Union</u>,
    245 F. 3d 981 (8th Cir. 2001). ........................................................................................... 4

*<u>Dean v. American Federation of Government Employees, Local 476</u>,
    509 F. Supp. 2d 39 (D.D.C. 2007). ................................................................................ 3-7

<u>ExxonMobil Gas Mktg. Co. v. FERC</u>, 297 F.3d 1071 (D.C. Cir. 2002). ..................................... 2

<u>Formula v. Heckler</u>, 779 F.2d 743 (D.C. Cir. 1985). ................................................................. 17

<u>Girouard v. United States</u>, 328 U.S. 61 (1946). ....................................................................... 20

<u>Jones v. United States</u>, 527 U.S. 373 (1999). ........................................................................... 21

<u>Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.</u>, 463 U.S. 29 (1983). ................. 2

<u>NLRB v. BASF Wyanodotte Corp.</u>, 798 F.2d 849 (5th Cir. 1986). ...................................... 10, 11

<u>Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision</u>,
    271 F. Supp. 2d 264 (D.D.C. 2003). ............................................................................... 15

<u>Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision</u>,
    373 F.3d 1355 (D.C. Cir. 2004). ..................................................................................... 12

*<u>Nationwide Mutual Insurance Co. v. Darden</u>, 503 U.S. 318 (1992). ....................................... 5, 6

<u>Spirides v. Reinhardt</u>, 613 F.2d 826 (D.C. Cir. 1979). ........................................................ 4, 5, 6

## <u>STATUTES</u>

29 U.S.C. § 432. ............................................................................................................... *passim*

29 U.S.C. § 433. ................................................................................................... *passim*

29 U.S.C. §402(f). .................................................................................................. 3

The Labor-Management Reporting and Disclosure Act,
     29 U.S.C. §§ 401-531. ...................................................................... 1

The Labor-Management Relations Act, § 302. ..................................... 8-11

## REGULATIONS

72 Fed. Reg. 36106. .............................................................................. *passim*

## OTHER

Black's Law Dictionary. ......................................................................... 6

Ballantine Law Dictionary. .................................................................... 6

## INTRODUCTION

The Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531 ("LMRDA" or "Act") is prophylactic legislation intended, in part, to bring to light a wide variety of financial transactions and arrangements – whether proper or improper – that pose potential conflicts of interest arising from the relationships between unions, their officers and employees, employers, and businesses. Recognizing the privacy interests implicated in enacting a broad reporting regime, Congress nonetheless declared public disclosure of certain facially legitimate transactions necessary to deter and detect fraud and inappropriate behavior undertaken at the expense of union members, and to permit union members to meaningfully govern the affairs of their labor organizations.

As the product of a multitude of hearings, fact-finding, debate, and compromise, the statutory language employed in the LMRDA often lends itself to several permissible interpretations. Nothing in Plaintiff's Opposition & Reply Memorandum (hereinafter "Plaintiff's opposition") undermines the Secretary's showing that the reporting obligations imposed by the Form LM-30 Final Rule fall squarely within the confines of § 202 of the LMRDA, 29 U.S.C. § 432, advance the purposes animating the Act, and accord with the Act's legislative history. This is outcome determinative. While some of the positions taken by Plaintiff may constitute a reasonable reading of the statutory language, Plaintiff points to nothing that *demands* acceptance of the interpretations it endorses. A straightforward application of *Chevron* principles thus requires that the Secretary's interpretations contained in the Form LM-30 be afforded substantial deference and upheld.

Contrary to Congress' explicit objectives, Plaintiff uniformly takes positions that would hide critical financial information of labor organization officers and employees from union members, the Secretary, and the public. By highlighting the "accepted" or "legitimate" characteristics of some of the transactions and arrangements captured by the Form LM-30, Plaintiff refuses to accept the fundamental rationale of the LMRDA: that the reporting of transactions and arrangements beyond those that are illegal or improper is vital to achieving the Act's goals of eliminating and deterring unlawful and inappropriate practices, and encouraging informed union self-governance. In addition, Plaintiff's

speculation as to the burdens attending compliance with the Form LM-30, as well as the increased number of filers expected under the Final Rule are exaggerated, unsupported by anything in the record (or otherwise), and irrelevant to the legal issue of whether the Final Rule is a valid exercise of the Secretary's statutory authority.[1]  *See* Pl.'s Opp'n at 1.  In particular, Plaintiff's accusation that the Final Rule is "calculated to substantially deplete the ranks of those who might run for or be appointed to union posts," *id.*, is baseless.  To the contrary, the Form LM-30 is designed to enable union members to self-govern in an enlightened manner and to expose potential conflicts of interest of union officers and employees that may impact performance of duties owed to the union and its members.

Finally, Plaintiff fails to mount any challenge to the Secretary's characterization of the bona fide loan reporting requirement under LMRDA § 202(a)(3) and (a)(4) as an interpretive rule exempt from the Administrative Procedure Act's ("APA") notice-and-comment requirement.  And with respect to its challenge to the Secretary's decision to require reporting of loans from credit union trusts under § 202(a)(6), Plaintiff does nothing other than recycle the unpersuasive arguments used in its opening brief.

Quite simply, it is the Secretary – not Plaintiff – that is tasked with the responsibility and authority for resolving ambiguities in the LMRDA.  *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43, 866 (1984).  Plaintiff is not at liberty to substitute its views for those of the Secretary.  *See id.*; *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002).  As the Form LM-30 represents a reasonable interpretation of broad and ambiguous statutory language, the Secretary's Motion for Summary Judgment should be granted.

## ARGUMENT

I.    *The Secretary's Determination That "Labor Organization Employee" Includes Individuals Performing Work On Behalf Of, And Under the Control Of, The Labor Organization Notwithstanding That Payment For Such Work Is Made By The Employer Is Amply Grounded*

---

[1]To the extent Plaintiff is claiming that the Final Rule is either unnecessary or burdensome, this efficacy challenge would be subject to the arbitrary and capricious standard of review.  *See, e.g.*, *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  In any event, Plaintiff failed to allege any such claims in its Complaint.

*In Precedent And Entitled To Deference.*

Plaintiff admits that the LMRDA does not define the phrase "employee of a labor organization." Pl.'s Opp'n at 3.[2]  Construing this ambiguity, as the Secretary explained in her opening brief, the Final Rule adopts a control based test to determine whether an individual is "employed" by a labor organization such that s/he is its "employee." *See* Def.'s Br. at 15-20.   In support of her analysis, the Secretary observed that the control based test for employment relationships is grounded in the common law and legal dictionaries, and further explained that under this test, an individual performing union work pursuant to a "union-leave" or "no-docking" policy is an employee of the labor organization because that individual "performs services for, and under the control of" the union during those times. *Id*. Because the Secretary's interpretation easily passes the minimal standard of permissibility required for *Chevron* deference, it must be sustained. *See Barnhart v. Walton*, 535 U.S. 212, 218 (2002); *AFL-CIO v. Chao*, 409 F.3d 377, 381 (D.D.C. 2005).

Plaintiff's contention that "compensation" is an essential component of an employer-employee relationship – no matter what the circumstances – is simply wrong.  Pl.'s Opp'n at 3-5.   As demonstrated below, Plaintiff arrives at this result only by distorting precedent and avoiding altogether other authorities cited by the Secretary.  The control based test, far from being "eccentric," Pl.'s Opp'n at 4, is well-established, having been recognized by a number of authorities, including the Supreme Court.

First, Plaintiff misinterprets the Court's opinion in *Dean v. American Federation of Government Employees, Local 476*, 509 F. Supp. 2d 39 (D.D.C. 2007), as standing for the proposition that in *all* circumstances, "[w]ithout compensation, no combination of other factors will suffice to establish the [employer-employee] relationship."  Pl.'s Opp'n at 4.  But the Court's opinion makes plain that it did not intend for this conclusion to apply beyond the Title VII context. The relevant issue confronting of

_____

[2]As noted in the Secretary's opening brief, the LMRDA defines "employee" expansively to mean an "individual employed by an employer."  29 U.S.C. § 402(f).  *See* Def.'s Br. at 16.

the Court in *Dean* was whether the local union met "the *statutory definition* of 'employer' subject to suit under Title VII because it had less than fifteen employees at all relevant times." *See* 509 F. Supp. 2d at 41 (emphasis added). To answer this question, the Court turned to Supreme Court precedent instructing lower courts that in Title VII cases, the "payroll method" test applies to determine the existence of an employment relationship. *Id*. at 52. Nevertheless, at the plaintiff's urging, the Court looked beyond a strict application of the "payroll method" test to consider "other indicia of an employment relationship," as the court did in *Daggitt v. United Food & Commercial Workers Union*, 245 F. 3d 981 (8th Cir. 2001), another Title VII case. *Id.* at 54. In so doing, the Court expressly noted that *Daggitt* considered factors other than compensation only after deciding that the union stewards in that case received compensation from the local union for their services, and quoted *Daggitt* as follows:

> Central to the meaning of [the words employer and employee *in the context of Title VII*] is the idea of compensation in exchange for services: . . . . Compensation is an 'essential condition of the existence of an employer-employee relationship.' Without compensation, no other combination of factors will suffice to establish the relationship.

*Id.* at 54 (quoting *Daggitt*, 245 F.3d at 987) (brackets in original and emphasis added). The Court went on to conclude that "[b]ased on *Daggitt*, it appears that the fact that the Local does not compensate its officers and stewards conclusively demonstrates that the [sic] they are not employees *for purposes of Title VII*." *Id.* (emphasis added).

Plaintiff quotes only the last sentence of the above block quote to support its argument that compensation must be present to find an employer-employee relationship for *all* intents and purposes. *See* Pl.'s Opp'n at 4. But this is misleading. The Court's actual, and entire, discussion makes clear that its holding was limited carefully to the Title VII context, in accord with the Supreme Court's admonition that courts look to the source of compensation in identifying an "employment relationship" in adjudicating Title VII cases. Indeed, the *Dean* Court's recognition of the alternative test for adjudicating "employee" status promulgated by the D.C. Circuit in *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979), bolsters the validity of the Secretary's position. *Dean*, 509 F. Supp. 2d at 54-56.

4

The *Spirides* test involves "'consideration of all the circumstances surrounding the work relationship.'" *Id.* at 54 (quoting *Spirides*, 613 F.2d at 831). Significantly, under this test, "'no one factor is determinative . . . [but] the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review.'" *Id.* (quoting *Spirides*, 613 F.2d at 831); *see also* Def.'s Br. at 17. The Court found, however, that the *Spirides* test was not the appropriate one to apply for determining the presence of an employment relationship under Title VII, and that the union stewards did not meet the *Spirides* test in any event. *Id.* at 54-56.

Second, the Supreme Court's opinion in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992), eminently does *not* indicate that "both compensation and control are necessary" to an employer-employee relationship, as Plaintiff claims. Pl.'s Br. at 5. Plaintiff couches the question before the *Darden* Court as "whether a hired party" is subject to "the hiring party's right to control the manner and means by which the product is accomplished," *id.*, and then – relying on Black's Law Dictionary's definition of the word "hire" – bootstraps the conclusion that compensation is a necessary prerequisite of an employer-employee relationship. This effort, however, is belied by the Court's opinion. In actuality, the *Darden* Court sought to "construe the meaning of 'employee' where the statute [ERISA] does not helpfully define it." *Id.* at 322. As the Secretary discussed in her memorandum, the Court ascribed the conventional master-servant relationship as informed by common law agency doctrine to the term "employee," which includes factors such as

> 'the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.'

*Darden*, 503 U.S. at 323-24 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989)). In using the word "hire" in the course of describing the common law agency doctrine, the *Reid* Court expressly stated its intention that "hiring party" means "the party who claims ownership of

the copyright by virtue of the work for hire doctrine," *Reid*, 490 U.S. at 739 n.6 – *not*, as Plaintiff represents, Black's Law Dictionary's denotation, *see* Pl.'s Br. at 5.  Indeed, the Court explicitly rejected the proposition that "employee" be defined as referring only to "formal, salaried employees," reasoning that the Copyright Act of 1976 does not state "formal" or "salaried."  490 U.S. at 743 n.8.  In addition, one of the relevant factors cited by the Court to ascertain "employee" status – "the hired party's role in *hiring and paying* assistants," *Darden*, 503 U.S. at 523-24 (emphasis added) – undercuts the notion that the Court intended "hire" to incorporate necessarily an element of compensation.  Finally, and most importantly, the *Darden* Court confirmed the Secretary's position with its instruction that "the common law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . *all* the incidents of the relationship must be assessed and weighed *with no one factor being decisive.*'"  *Id.* at 324 (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. at 258) (emphasis added); *see also Reid*, 490 U.S. at 752 (instructing that "[n]o one of these factors is determinative").

Third, Plaintiff makes no attempt to distinguish other authorities cited by the Secretary in support of her position, such as *Spirides v. Reinhardt*, Black's Law Dictionary's definition of "employee" and "employer-employee relationship," and Ballantine Law Dictionary's definition of "employee."  *See* Pl.'s Opp'n at 3-6; Def.'s Br. at 17.  As a result, even if Plaintiff accurately characterized the cases discussed above – which it did not – the Secretary's construction of "labor organization employee" remains valid because it is undeniably supported by these additional authorities.

Finally, Plaintiff mounts no challenge to the Secretary's determination that union stewards operate under the union's control in the course of performing union work.  Instead, Plaintiff remarks that "[v]irtually every union member who performs tasks on behalf of the union does so under the union's 'control' in the sense that the member can be relieved of his responsibilities or his actions can be countermanded if the union concludes he has acted inconsistently with its goals."  Pl.'s Opp'n at 5; *see Dean*, 509 F. Supp. 2d at 55-56 ("'[T]he *Daggitt* court found that 'control over the termination and hiring of stewards is enough, in these circumstances, to find that the union had a measure of control

6

over the manner and means by which the stewards performed their duties.'" (quoting *Daggitt*, 245 F.3d at 988-89)).  Plaintiff suggests – without citation or support – that the "control" test would "sweep within LMRDA § 202(a) virtually every active member of the union."  Pl.'s Opp'n at 5-6.  In fact, however, the Final Rule merely announces the control test as the standard for ascertaining whether an individual is an "employee" of his/her labor organization, and explains that under this test, an individual paid by an employer to perform union work pursuant to a "union-leave" or "no-docking" policy is an employee of the labor organization.  *See* Def.'s Br. at 15-20.[3]  Moreover, Plaintiff's argument does not bear on the reasonableness of the Secretary's construction of "employee."

Plaintiff has not shown that the sweeping and ambiguous definition Congress attached to "employee" requires any particular construction, nor otherwise undermined the Secretary's decision to adopt a control based test for determining whether an individual constitutes an "employee" of the labor organization.  As a result, the Secretary's decision must be sustained.

II.     *Plaintiff Has Failed To Demonstrate That § 302(c) Of The LMRA Must Be Interpreted Identically To § 202(a)(1) Of The LMRDA, Such That Union-Leave And No-Docking Payments Must Be Deemed To Fall Within The LMRDA's Reporting Exception For Payments Received As A "Bona Fide Employee" Of The Employer.*

In her opening brief, the Secretary observed that § 202(a)(1) of the LMRDA exempts labor organization officers and employees from disclosing "payments and other benefits received as a bona fide employee" of an employer whose employees their labor organization represents or is actively

---

[3]Because the union steward position is the most common illustration of an individual meeting the Form LM-30 control based test, it is used as an example in the Form LM-30 Instructions.  *See* Form LM-30 Instructions, Definitions, D.11, D.4.  Although other individuals performing work for the union while remaining on the employer's payroll may be subject to the reporting obligation, this determination will depend upon the particular facts of each situation and cannot, as Plaintiff suggests, be based simply on the title of an individual's position.  *See* Pl.'s Opp'n at 5, 11.  It should be noted, however, that individuals subject to coverage will have available the 250-hour filing threshold; this threshold will limit the number of individuals possibly affected by the reporting obligation.  *See* 72 Fed. Reg. at 36127, 36178.  Considered against this backdrop, Plaintiff's claim that the "test would sweep within [§ 202(a)'s coverage] virtually every active member of the union," Pl.'s Opp'n at 5-6, is baseless.

seeking to represent.  *See* Def.'s Br. at 20.  The Final Rule construed this ambiguous and undefined exemption to mean payments attributable to work "perform[ed] . . . for, and subject to the control of, the employer."  *Id.* (quoting 72 Fed. Reg. 36106, 36125 (July 2, 2007)).  The Secretary explained that under this definition, "[c]ompensation received under a 'union-leave,' or 'no-docking' policy is not received as a bona fide employee of the employer making the payment," because those payments are not provided in exchange for work performed for, and under the control of the employer, but rather are received during times when the individual acts "as a representative or employee of the union."  *Id.* (quoting 72 Fed. Reg. at 36124-5).  Although Plaintiff contends that the Secretary's construction is "incoherent," Pl.'s Opp'n at 6, none of its arguments withstand scrutiny.

Plaintiff attempts to equate the "bona fide employee" exemption of LMRDA § 202(a)(1) with the Labor Management Relations Act ("LMRA") § 302(c)(1) exception to the prohibition of employer payments to union representatives for payments provided "as compensation for, or by reason of, [the employee's service] as an employee of such employer."  Plaintiff then proceeds to argue that because some courts have upheld the legality of union-leave and/or no-docking payments as within the scope of the latter exception, they must also be excepted from reporting under the former.  Pl.'s Opp'n at 6-7.

This purported analogy fails.  As an initial matter, contrary to Plaintiff's claim, the statutory language of LMRDA § 202(a) is not in any way similar to the language Congress used in LMRA § 302(c)(1).  As a result, that union-leave and no-docking payments may fall within the exception announced by LMRA § 302(c)(1) says nothing about whether they may constitute "payments . . . received as a bona fide employee," § 202(a).  This result is not surprising given the different purposes served by these provisions.  While § 202(a) is intended to force disclosure of a wide variety of financial transactions and arrangements to deter and eliminate misconduct and to enlighten union members as to the potential conflicts of interest faced by their officials, LMRA § 302(c)(1) is directed towards determining the *legality* of certain employer payments.  Thus, the determination of some – but not all – courts and the Secretary that LMRA § 302(c)(1) *permits* an employer to grant a union representative

8

paid time off to perform union duties is simply not germane to the issue of whether union-leave and no-docking payments are reportable under LMRDA § 202(a)(1). *See* Pl.'s Opp'n at 6-7; *see also id.* at 9 (conflating *legality* of employer union-leave and no-docking payments with *non-reportability* of those payments under LMRDA § 202(a)(1)); Def.'s Br. at 24-25. There is no basis to assume that payments are not reportable simply because they are legal. Plaintiff fails to grasp the foundational principle that Congress designed the LMRDA to capture a much broader range of transactions than those simply considered unlawful. *See* Def.'s Br. at 25 (citing pertinent legislative history). There is nothing "incoherent" about a regime that permits certain employer payments to be made but requires that they be disclosed.

Plaintiff points out that the Secretary's construction requires union officers and employees to report union-leave and no-docking payments, without imposing the same obligation on employers. *See* Pl.'s Opp'n at 7-8. But in citing this disparity as evidence of the Secretary's "incoherence," Plaintiff ignores the differences between LMRDA § 202(a) and § 203(a), and mistakenly assumes that Congress intended the reporting regimes to be identical. Again, Congress' decision to craft different language in the respective statutory provisions belies this assumption. In contrast to § 202(a), § 203(a), which governs employer reports, requires disclosure of any "payment . . . of money . . . to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except . . . (B) payments of the kind referred to in section 302(c) of the Labor Management Relations Act, 1947, as amended." Moreover, the existence of various distinctions between what employers are required to report under LMRDA § 203(a), and what labor organization officers and employees are required to report under LMRDA § 202 disproves Plaintiff's theory that Congress intended perfect complementary reporting. For instance, § 203(a) contains an explicit reporting exemption for "payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution." As noted in the Secretary's opening brief and below, Congress created no such exception in § 202. Moreover, while § 203 does not require

9

employers to disclose payments made to a labor organization official's spouse or minor child, § 202 requires the labor organization official to disclose these same payments.  In addition, § 203(a) requires employers to disclose payments to an agent of a labor organization who is not an officer or employee of the labor organization, but this category of agents are not required to file any reports under § 202. And if an employer makes a payment to a clerical or custodial employee of a labor organization, the employer will be required to report such payment pursuant to § 203(a)(1), but such employee has no reporting obligation under § 202.

In a further effort to force identical interpretation of two statutory provisions containing different language and promoting different purposes, Plaintiff next inaccurately asserts that the Final Rule "accepts the definition [of bona fide employee] in the LMRA § 302(c) cases – i.e., 'a 'bona fide' employee' is one who has been 'assigned [to perform] meaningful work for the employer' as opposed to having been merely 'put on an employee payroll.'"  Pl.'s Opp'n at 8 (quoting *NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849, 856 n.4 (5th Cir. 1986)).

Once again, Plaintiff is mistaken.  As a threshold matter, Plaintiff ignores the significant fact that the term "bona fide employee" does not appear in LMRA § 302(c).  It is misleading to rely on a court's casual use of that term in construing LMRA § 302(c) for guidance on how Congress intended it be construed in LMRDA § 202.  Plaintiff also mischaracterizes the Final Rule by failing to note that it expressly defines "bona fide employee" as "an individual who performs work for, and subject to the control of, the employer."[4]  Furthermore, and contrary to Plaintiff's implication, the court in *NLRB v.*

_____

[4]The Final Rule further explains that "[a] payment received as a bona fide employee includes wages and employment benefits received for work performed for, and subject to the control of, the employer making the payment, as well as compensation for work previously performed, such as earned or accrued wages, payments or benefits received under a bona fide health, welfare, pension, vacation, training or other benefit plan, leave for jury duty, and all payments required by law."  72 Fed. Reg. at 36142; *see also id.* at 36124-26.  Moreover, "[c]ompensation received under a 'union-leave,' or 'no-docking' policy is not received as a bona fide employee of the employer making the payment," because those payments are not provided in exchange for work performed for, and under the control of, the employer, but rather are received

10

*BASF Wyandotte Corp.* did not purport to define the contours of "bona fide employee," generally or as employed in LMRDA § 202(a)(1).  Rather, the court examined whether union-leave and no-docking payments were illegal under LMRA § 302(c), and in so doing, it made the commonsense observation that "[a] union official put on an employee payroll but assigned no meaningful work for the employer would not amount to a 'bona fide employee,' and payments to him would violate § 302."  *NLRB v. BASF Wyanodotte Corp.*, 798 F.2d at 856 n.4 (citing *BASF Wyandotte Corp. v. Local 227, Int'l Chem. Workers Union*, 791 F.2d 1046, 1050 (2d Cir. 1986)).  The court merely provided one obvious example of a situation where a labor organization official would not be considered a "bona fide employee" of an employer pursuant to its own general understanding of the term.  Notably, Plaintiff does not assert that the undefined phrase "payments . . . received as a bona fide employee" is either so specific, or so broad on its face, as to be incapable of excluding payments received for work done on behalf of an entity other than the employer.

Plaintiff is also mistaken in attempting to equate union-leave and no-docking payments with so-called "fringe benefits" to show that "payments . . . received as a bona fide employee," must be interpreted identically to the LMRA § 302(c) exception to the prohibition of employer payments for payments made "as compensation for, or by reason of service as an employee of such employer," so as to include union-leave and no-docking payments.  *See* Pl.'s Opp'n at 9-10.  Plaintiff overlooks the fundamental distinctions between union-leave and no-docking payments on the one hand, and fringe benefits such as sick leave and vacation leave on the other.  *See* Def.'s Br. at 23-24. First, unlike union-leave and no-docking payments, which are received as a result of the union steward's work on behalf of the labor organization, fringe benefits are quite logically made available to employees in exchange for work done for and under the control of their regular employer.  For this reason, that the employee is not actually performing work for her employer during the time she is on sick or vacation leave is

---

during times when the individual acts "as a representative or employee of the union."  72 Fed. Reg. at 36124-5.

11

inapposite. *See* Pl.'s Opp'n at 9-10. Unlike "fringe benefits," union-leave and no-docking payments alone are made in exchange for work done by a union steward in her capacity as an employee of the labor organization, under the control of the labor organization, and for the labor organization – not the employer making the payment. Second, although certain threshold conditions may need to take place before certain fringe benefits take effect – *e.g.* that an employee wants to take a vacation or falls ill – generally *all* employees have the opportunity to fulfill the conditions precedent necessary to avail themselves of these fringe benefits. In contrast, union-leave and no-docking payments are available *only* to the union steward who owes fiduciary duties to union members. In short, union-leave and no-docking payments are different in kind than fringe benefits, and these material differences undercut any argument that they too must be considered "payments . . . received as a bona fide employee," LMRDA § 202(a)(1).

Finally, Plaintiff's attack on the Secretary's policy decision to require disclosure of union-leave and no-docking payments is misdirected. *See* Pl.'s Opp'n at 10-11. As head of the Department of Labor, the Secretary – not Plaintiff – is expressly tasked with construing statutory ambiguities in light of legislative objectives and her experience. If Plaintiff disagrees with the Secretary's policy choices, its remedy lies with appeals to Congress. But in any event, it is plain that the Secretary's decision to compel disclosure of these payments is sound policy. In light of the recognition by courts, commentators, Form LM-30 commenters, and the Secretary that union-leave and no-docking payments pose serious potential conflicts of interest, *see* Def.'s Br. at 21-23, Plaintiff's failure to discern any potential conflicts is, at best, short-sighted. *See* Pl.'s Opp'n at 11.

In short, while Plaintiff characterizes as "incoherent" the Secretary's construction of the undefined phrase "payments and other benefits received as a bona fide employee," LMRDA § 202(a), nothing in its opposition actually lends any validity to this charge.[5] In fact, as demonstrated in her

---

[5]That the Secretary's position represents a change from her previous position is irrelevant. *See Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1360

opening brief, *see* Def.'s Br. at 20-26, the Secretary's construction is reasonable, well-supported, and entitled to *Chevron* deference.

III.    *Plaintiff Has Adduced Nothing To Show That LMRDA § 202(a)(6) Is Limited To Disclosure Of "Labor Relations" Conflicts Of Interest.*

Plaintiff's attempt to insert a "labor relations conflict of interest" restriction into LMRDA § 202(a)(6) must fail as patently inconsistent with the statutory language.  Further, its position gains no support from, let alone is compelled by, the legislative history.  As the Secretary set forth in her opening brief, LMRDA § 202(a)(6) is the broadest provision of § 202.  Nonetheless, she has exercised her discretion in narrowing its reach, consistent with the purposes of the LMRDA. The Final Rule mandates reporting only of payments that, by virtue of the employer's relationship with the filer's union and/or an employer whose employees the union represents or would seek to represent, have the evident potential to pose a conflict between the union official's own financial interests and his/her duties to his union and its members.  *See* Def.'s Br. at 26-27 (detailing mandated disclosures); *id.* at 26-30.

That Plaintiff would construe the statutory language differently than the Secretary's interpretation, as a "labor relations" conflict of interest provision is irrelevant.  The Secretary's interpretation falls squarely within § 202(a)(6)'s requirement that labor organization officials report payments made from "any employer," and she has carefully curtailed the reporting requirement to capture specified discrete situations that raise conflict of interest concerns.  There is no restriction – either in the statute or the legislative history – that limits the Secretary's authority to require reporting only of "labor relations" conflicts of interest.  Tellingly, Plaintiff does not challenge the Secretary's identification of particular arrangements posing potential conflicts of interest that union member have a right to know about or the  Secretary's observation that nothing in the legislative history undercuts

_____

(D.C. Cir. 2004).  Plaintiff does not argue that her change lacks a reasonable basis, and as demonstrated above and in her opening brief, the Secretary's decision to require reporting of union-leave and no-docking payments will cause reporting of important arrangements that raise serious conflict of interest concerns.

her interpretation.  Instead, Plaintiff merely repeats its argument that Congress initially proposed a provision that applied only to employer payments intended "to influence or affect employees in the exercise of right guaranteed by section 7 of the National Labor Relations Act."  Pl.'s Opp'n at 19 n.10 (internal quotation marks omitted).  But as the Secretary stated in her opening brief, that Congress began with a narrow provision addressing Plaintiff's primary concern, yet passed the exceptionally broad provision at issue here, further buttresses her interpretation.  *See* Def.'s Br. at 29 & n.14.

Highlighting the weakness of its argument, Plaintiff misstates the position taken by the Secretary in her brief.  The Secretary did *not* state that subsection (a)(6) necessarily "'requir[es] reporting of *all* payments made by *any* employer regardless of the existence or nature of a relationship between the employer and the filer's union.'"  Pl.'s Opp'n. at 18 (quoting Def.'s Br. at 26).  As its context makes plain, the Secretary observed that while subsection (a)(6) *could* be read in this manner, and she initially proposed doing so, she ultimately chose to construe it more narrowly in accord with the LMRDA's objectives.  *See* Def.'s Br. at 26.  Indeed, the Secretary also recognized that "[t]he power to require reporting of 'any' payment, § 202(a)(6), from any employer necessarily includes the power to require disclosure of a subset of payments informed by the purposes of the Act."  Def.'s Br. at 28.

Finally, Plaintiff accuses the Secretary of drawing an untenable distinction between entities who have employees and those that do not.  *See* Pl.'s Opp'n at 20.  But it is Congress – not the Secretary – that has created this distinction, *see* 29 U.S.C. § 402(e) (defining "employer" as "an employer within the meaning of any law of the United States relating to the employment of any employees" who is "engaged in an industry affecting commerce"), and the Secretary is powerless to compel otherwise.  Thus, she is not required to explain, as Plaintiff suggests, *see* Pl.'s Opp'n at 20, why reporting should be required of the former class of entities but not the latter.

In seeking to unduly restrain the reporting requirement imposed by LMRDA § 202(a)(6) to "labor relations" conflicts of interest, Plaintiff's proffer amounts to nothing more than a strained alternative reading of the statutory provision.  But because this alternative reading is not compelled by

the statute, Plaintiff's proffer is of no consequence. *See Barnhart*, 535 U.S. at 218; *Chao*, 409 F.3d at 381. Undoubtedly, the Secretary's decision to require reporting of transactions with employers in specifically defined circumstances that pose potential conflicts of interest is a reasonable exercise of her discretion and well within the bounds of a permissible construction of Congressional intent.

IV.    *Plaintiff Has Failed To Show That the Secretary's Explanation for Limiting The Bona Fide Loan Administrative Exception To LMRDA § 202(a)(6) So As To Require Reporting Of Loans From Trusts In Which Labor Organizations Hold An Interest Lacks A Rational Basis.*

Section 202(a)(6) mandates disclosure of "any payment of money or other thing of value" from "any employer" to require disclosure of payments that may impact a union official's duties to the union and its members. As discussed below, unlike the provisions governing employer reports, 29 U.S.C. § 433, there is no statutory exception for loan reporting by labor organization officials. *See supra* Part V; Def's Br. at 34. Nonetheless, the Secretary created a purely administrative exception for reporting "bona fide loans, interest, or dividends from national or state banks, credit unions, savings or loan associations, insurance companies, or other bona fide credit institutions," under this subsection. However, as discussed in the Proposed Rule, the Secretary proposed a slight modification of this exception upon discovering that a credit union controlled by a local union made 61% of its loans to four of its loan officers, three of whom served as officers of the local union. This prompted the revision of the loan reporting exception to mandate disclosure of loans from financial institutions "that constitute a trust in which [the union officer's or employee's] labor organization is interested." *See* Def.'s Br. at 30 (quoting 72 Fed. Reg. at 36118); *id.* at 31-32. Plaintiff does not challenge the Secretary's statutory authority to require reporting of these "bona fide" loans, but contends that the Secretary's modification of her administrative exception is "arbitrary and capricious." But Plaintiff, doing little more than recycling its argument, has failed to show that the Secretary's reform does not "conform to certain minimal standards of rationality." *Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision*, 271 F. Supp. 2d 264, 269 (D.D.C. 2003).

Plaintiff characterizes the Secretary's decision to craft a narrow exception to the administrative

15

"bona fide" loan reporting exception as "tantamount to foreclosing credit union loans altogether." Pl.'s Opp'n at 21. Even putting aside its failure to offer any record proof for this statement, Plaintiff fails to furnish any explanation of how this undermines the Secretary's stated rationale for reforming the administrative exception. Instead, Plaintiff merely reiterates its conclusory argument that the example cited by the Secretary in support of her revision does not justify the change. *See* Pl.'s Opp'n at 21-22. Plaintiff mounts no response to the Secretary's reason for stating that the labor organization officials involved in her example may not have been required to report the loans under the prior reporting regime. *See* Def.'s Br. at 32; Pl.'s Opp'n at 21-22. Nor does Plaintiff address the fundamental point that the potential conflict of interest lies not necessarily in the initial terms of the loan, but rather the relationship between the labor organization, the labor organization official, and the credit union trust. As the Secretary articulated in her opening brief, this financial arrangement creates opportunities for the lender or employer to offer incentives (or threaten disincentives) that personally benefit or disadvantage the union official. *See* Def.'s Br. at 32; Pl.'s Opp'n at 21-22. Plaintiff also fails to rebut the Secretary's observation that even if the loans described in her example would have been reported under the prior regulatory regime, her example highlights the danger of leaving the determination of what counts as a "bona fide" loan to union officials and employees. *See* Def.'s Br. at 32; Pl.'s Opp' at 21-22. As noted, the Secretary's modification of the § 202(a)(6) administrative exception fully comports with Congress' expectation, consistent with the Act's character as prophylactic legislation, that wholly legitimate transactions would be reported. *See* Def.'s Br. at 32-34. Finally, Plaintiff offers no response to the Secretary's observation that the statutory structure additionally demonstrates the reasonableness of her revision. *Id.* at 34-35.

Plaintiff's assertion that the Government created a "new definition" of "bona fide loans in place of the Secretary's definition" is incorrect. Pl.'s Br. at 22. The Secretary's common-sense description of a "bona fide loan" as "[a] loan that . . . represents a disbursement to another in return for a promise to repay, . . . made with a genuine intent by the lender to collect and the borrower to repay," Def.'s Br.

16

at 32, is merely a different way to convey the key concept underlying "bona fide loans" – that they are the product of an arms-length transaction. This concept undergirds the Secretary's description as well.[6] Thus, this attempt to undermine the rationality of the Secretary's decision to require reporting of "bona fide" loans furnished by credit union trusts is easily dismissed.

The arbitrary and capricious standard is narrow. Even a decision of "less than ideal clarity" must be upheld "'if the agency's path may reasonably be discerned.'" *Formula v. Heckler*, 779 F.2d 743, 760 (D.C. Cir. 1985) (citation omitted). As confirmed by Plaintiff's inability to counter the Secretary's reasons supporting modification of the administrative bona fide loan reporting exception to § 202(a)(6), the Secretary's determination clearly satisfies this standard.

V.     *Plaintiff's Argument That LMRDA § 202(a)(3) And (a)(4) Permit Reporting Of Loans, But Not Bona Fide Loans, Is Demonstrably Incorrect.*[7]

Section 202(a)(3) and (a)(4) together compel disclosure of, *inter alia*, "any income or any other benefit with monetary value" derived from any business that either deals in substantial part with the employer whose employees the official's union represents or is actively seeking to represent, or deals at all with the official's union. Plaintiff's contention that the undeniably ambiguous and capacious phrase "benefit with monetary value" can be read to encompass loans, but cannot permissibly be read to include bona fide loans, as the Secretary posits, is wrong.

It is difficult, if not impossible, to reconcile Plaintiff's tacit acceptance of the Secretary's legal authority to compel reporting of bona fide loans under § 202(a)(6), *see* Pl.'s Opp'n at 21-22, which provides for reporting of "any payment of money or other thing of value," and its recognition of the Secretary's power to mandate loan reporting under § 202(a)(3) and (a)(4), *see id.* at 13, 16, with its

---

[6]The definition relied upon by Plaintiff appears in the Form LM-30 FAQs, which are not properly part of the record. *See* Def.'s Br. at 19 n.6. The Secretary makes reference to it here solely in response to Plaintiff's argument.

[7]As noted in the Secretary's opening brief, Plaintiff did not specifically move for summary judgment on the claim that the Secretary's decision to require reporting of "bona fide" loans under § 202(a)(3) and (a)(4) is arbitrary and capricious. *See* Def.'s Br. at 36 n.17.

argument that the Secretary is powerless to require reporting of bona fide loans under the latter provisions.  Indeed, Plaintiff's own positions belie its charge that the Secretary "has never embraced any such reading of the phrase 'benefit with monetary value,'" Pl.'s Br. at 13.  Nor does Plaintiff attempt to reconcile Congress' decision to enact an explicit exception for loan reporting by employers that are financial institutions, *see* § 203(a), with the lack of any comparable statutory exception for labor organization officers and employees.

Rather, Plaintiff asks the Court to disregard the self-evident proposition that a bona fide loan constitutes a "benefit with monetary value" because, pursuant to the Secretary's rationale, "any commodity sold or leased on the market constitutes a 'benefit with monetary value' that is reflected in its market price," including *e.g.*, "any over-the-counter purchase . . . from any business that also deals with the labor organization," "the value of electrical power . . . purchased from the public utilities serving the labor organization," and "the value of items purchased from retail establishments that also sell to the labor organization." Pl.'s Opp'n at 13.  This is fanciful. Unlike many of Plaintiff's examples, loans involve a long-term, continuing relationship between the parties.  As articulated in the Secretary's opening brief, unless these loans are disclosed, union members will not know of their existence and will be unable to detect whether terms are subsequently altered and whether any such modifications impact the union official's performance of duties owed to union members.  *See* Def.'s Br. at 39-40.  Once again, whether loans may be entered into on "bona fide" terms is not the correct question; the LMRDA's objectives and legislative history make clear that Congress did not intend to limit reporting to particularly identified, largely illegal problems, but sought to compel reporting of a wide range of transactions based on the interrelationships of the parties to the transaction.  *See id.* at 38-39.

Accordingly,  LMRDA § 202 demands the reporting of many payments and transactions that are "bona fide" or have "no monetary value" insofar as they are *quid pro quo* exchanges, as defined by Plaintiff.  *See* Pl.'s Br. at 16.  For example, any "stock, bond, security, or other interest, legal or equitable, . . . and any income" received from businesses meeting the conditions prescribed in §

18

202(a)(3) and (a)(4) must be disclosed.[8]  Thus, an officer of a labor organization who receives an annual salary from a business that deals with the officer's labor organization would have to report the annual income and dealings; a labor organization officer who owns a building with numerous tenants, including the labor organization, would have to report his/her ownership interest and income received from the operation of the building, as well as the dealings with the union.  *See* Form LM-30, Instructions, Reportable Payments and Interests from Businesses, Examples 10 & 14.  When Congress thought it necessary to exempt "bona fide" transactions from reporting, it did so explicitly.  For instance, Congress excepted "purchases and sales of goods or services in the regular course of business at prices generally available to any employee of such employer," from reporting under § 202(a)(5), and excepted "*certain* bona fide investments" from reporting under all the subsections, § 202(b) (emphasis added).  Nowhere did Congress except bona fide loans from disclosure.

More importantly, that some parallels may be drawn between bona fide loans and other everyday transactions is irrelevant.  The Secretary's limitation of the reporting requirement to loans demonstrates her sound judgment and refutes the charge that her approach would require union officials to report any and all over-the-counter purchases from a business that also conducts business with the official's union. In this case, the appropriate focus to adjudge the validity of the Secretary's actions is what she has done, not what she has not done.

Plaintiff next retreats to its argument that the Secretary's construction of "benefit with monetary value" would render some reporting under LMRDA § 202(a)(2) redundant.  Pl's Opp'n at 13.  This argument remains unconvincing, and in no way demonstrates that the Secretary's interpretation is

---

[8]Plaintiff claims that the "receipt of income from or the holding of an interest in a 'business' that deals with the union creates the potential for conflicts of interest that do not arise with respect to open market transactions with such businesses."  Pl.'s Opp'n at 15 n.7.  However, it fails to explain why this is so.  The incentive of a business to curry favor or threaten a labor organization official (or vice versa) derives from the relationship between the business and labor organization or employer; it does not hinge exclusively on the nature of the transaction between the business and labor organization official.

19

somehow impermissible. *See* Def.'s Br. at 37-38. Plaintiff's sole counter to the Secretary's analysis – to summarily and baldly assert that "employer loans are not granted as an employee benefit, and there is no indication that the LMRDA Congress thought they were," Pl.'s Opp'n at 14, is speculative and unavailing. It is axiomatic that inferring Congressional intent from silence in the legislative history is a dangerous endeavor.[9] *See, e.g.*, *Girouard v. United States*, 328 U.S. 61, 69 (1946). Moreover, it is evident that Congress can choose to *prescribe* disclosure of all loans, including bona fide loans, in one context – § 202(a)(2) – but vest the Secretary with *discretion* to require this reporting in a different context – § 202(a)(3) and (a)(4). Indeed, while Congress may have expressed no specific intent one way or the other on whether the phrase "benefit with monetary value" also encompasses bona fide loans, the uncontested fact is that the legislative history is replete with examples of labor organization officials engaging in unlawful activities involving loans and the complicity of financial institutions, and Congress' concern about loanmaking activities. *See* Def.'s Br. at 34-35, 38; Pl.'s Opp'n at 15. Although these examples focus on loans containing questionable terms at the outset, Plaintiff overlooks Congress' admonition that what makes a particular transaction "questionable," and a "potential conflict of interest" under the LMRDA is not necessarily the initial terms of the transaction, but rather the relationship among the parties to that transaction, which may impact either initial or subsequent terms. *See* Def.'s Br. at 39 (discussing legislative history). All this, along with the unchallenged fact that the Secretary has the legal authority to require reporting of bona fide loans under § 202(a)(6), strongly suggests that Congress – at the very least – intended to grant the Secretary the authority to interpret this capacious phrase in the manner announced.

In any event, the placement of the phrase "benefit with monetary value" – "and any income or any other benefit with monetary value (including reimbursed expenses)" in § 202(a)(3), (a)(4) – bolsters the Secretary's interpretation of "benefit with monetary value" as including *all* loans. The drafting of

---

[9]Indeed, the Secretary can just as easily argue that there is no indication in the legislative history that Congress believed employer loans were not considered an employer benefit.

this clause indicates that Congress considered "income" as a type of "benefit with monetary value." *See, e.g.*, *Jones v. United States*, 527 U.S. 373, 389 (1999) (discussing canon of *noscitur a sociis*). Presumably, income negotiated at arms-length does not "bestow a net monetary gain" on either of the parties to the transaction. Pl.'s Opp'n at 16. Yet income must be disclosed. Similarly, "reimbursed expenses" would not "bestow a net monetary gain" on either party, but Congress nonetheless demands that they be reported. In short, so-called "equal exchanges," Pl.'s Opp'n at 16, are reportable as "benefit[s] with monetary value." Thus, Plaintiff's assertion that "benefit with monetary value" must be read to exclude bona fide loans because they constitute "equal exchanges" is incorrect.

Remarkably, Plaintiff continues with its approach of ignoring *Chevron* and its progeny, and imputing a clarity to the statutory language that simply is not there. In the face of the broad and ambiguous character of the phrase "benefit with monetary value," legislative history evincing concern with lending relationships between certain financial institutions and union officials, the prophylactic nature of the LMRDA, and the Act's underlying policy favoring disclosure, Plaintiff's argument that LMRDA § 202(a)(3) and (a)(4) *must* be read as permitting reporting of loans – but not bona fide loans – is meritless. The Secretary's interpretation of § 202(a)(3) and (a)(4) is plainly a permissible exercise of her discretion.[10]

A.    *Plaintiff Fails To Challenge That The Secretary's Interpretation Of "Benefit With Monetary Value" Is An Interpretative Rule.*

Plaintiff puts forward no response to the Secretary's assertion that the § 202(a)(3) and (a)(4) loan reporting requirement is an interpretive rule exempt from notice-and-comment requirements. For this reason alone, summary judgment should be granted to the Secretary on Plaintiff's claim that the Secretary failed to abide by notice-and-comment procedures in promulgating this aspect of the Final

---

[10]Plaintiff misstates the Secretary's objection to its reliance on the Form LM-30 FAQs. *See* Pl.'s Opp'n at 12 n.6. Whether or not the FAQ posting reflects the Secretary's interpretation of the Final Rule is not in issue; rather, the Secretary challenges Plaintiff's reliance on *any* extra-record material as manifestly contrary to the basic rules of record review.

Rule.

In its opposition, Plaintiff merely reiterates its view that only "improper" loans are reportable, and faults the Secretary for not explaining more fully "what constitutes a reportable loan," Pl.'s Opp'n at 17, in the Form LM-30 (2003) Instructions.  The Form LM-30 General Instructions (2003) included as an example of a reportable loan one obtained from a business satisfying the LMRDA § 202(a)(3) and (a)(4) threshold statutory conditions, but did not provide such an example in the specific Part B instructions.  *See* Def.'s Br. at 41.  This asserted shortcoming, however, is inapposite to the issue at hand.  As set forth in the Secretary's opening brief, the Secretary cited the inclusion of this example in the Form LM-30 (2003) General Instructions as evidence that the Final Rule's reminder that the bona fide loan administrative exception was not intended to create any new obligations under the Act, but rather was intended to clarify the duty already created by these provisions.  *See* Def.'s Br. at 41-42. Conspicuously absent from Plaintiff's opposition brief is any dispute with the Secretary's analysis or conclusion that this portion of the Final Rule is accurately characterized as interpretive.

B.     *Plaintiff Has Failed to Counter the Secretary's Alternative Showing That The Requirement To Report Loans Obtained From Businesses Under § 202(a)(3) And (a)(4) Is A Logical Outgrowth Of The Proposed Rule.*

Plaintiff's challenge to the Secretary's assertion that the Final Rule's mandate that labor organization officials disclose bona fide loans from businesses pursuant to § 202(a)(3) and (a)(4) is a "logical outgrowth" of the Proposed Rule is relegated to a single footnote.  *See* Pl.'s Opp'n at 17 n.9. It argues that a statement in the Final Rule that the § 202(a)(6) bona fide loan administrative exception is inapplicable to other provisions means that this aspect of the Final Rule could not have been a logical outgrowth of the Proposed Rule.  *Id.*

It is difficult to discern how this statement is at all pertinent to whether the Proposed Rule provided adequate notice to the public such that they should have anticipated the possibility of having to report loans from businesses under § 202(a)(3) and (a)(4), and thus reasonably should have filed comments on the issue during the notice-and-comment period.  *See* Def.'s Br. at 43 (citing *First Am.*

22

*Discount Corp. v. Commodity Futures Trading Comm'n*, 222 F.3d 1008 (D.C. Cir. 2000)). In this case, the public had notice that the Secretary proposed disclosure of bona fide loans from financial institutions – whether the financial institution is considered a "business" dealing with the union, or deemed an "employer." *See* Def.'s Br. at 43-44. The receipt of comments expressing concerns associated with having to report bona fide loans from financial institutions confirms this point. *See id.* at 44.

In addition, Plaintiff argues that the Secretary observed that the § 202(a)(6) bona fide loan administrative exception has no relevance to loan reporting under § 202(a)(3) and (a)(4) because "no bona fide loan from a covered 'business' is reportable." Pl.'s Opp'n at 17 n.9 (citing 72 Fed. Reg. at 36118(3)). This is fabricated. As the Secretary has explained time and again, the bona fide loan administrative exception is inapplicable to § 202(a)(3) and (a)(4) because she interprets those provisions as including a requirement to report *all* loans, including bona fide loans.

## VI.    *The Appropriate Remedy Is Remand*.

The Form LM-30 is a multifaceted rule, most portions of which are untouched in this lawsuit. *See* Def.'s Br. at 10-13. It is plain that if the Court finds any of the challenged aspects of the Final Rule unlawful, the appropriate remedy is to remand the affected portion(s) to the Agency. Def.'s Br. at 45. Indeed, the limited parts of the Final Rule challenged by Plaintiff are easily severable from the remaining portions. Plaintiff's argument that the Court should order vacatur, rather than remand, rests exclusively on the unfounded presumption that the Secretary will fail to inform the public of the obligations of labor organization officers and employees in light of the Court's rulings. *See* Pl.'s Opp'n. at 23. The accusation that the Secretary would act improperly by keeping the public ignorant of any rulings by the Court denying enforcement of particular aspects of the LMRDA is not well taken. The Secretary has no interest in mandating unlawful disclosures, and of course will act reasonably to clarify the obligations of labor organization officials if the Court rules in Plaintiff's favor on any of its claims. In any event, it is clear that the Court has the authority to issue instructions addressing Plaintiff's

concern on remand if it believes such instructions are necessary.  Accordingly, if any of Plaintiff's challenges are sustained, the appropriate remedy is a remand.

## CONCLUSION

For the foregoing reasons, Defendant's Cross Motion for Summary Judgment should be granted, and Plaintiff's Motion For Summary Judgment should be denied.

DATED: June 24, 2008                    Respectfully submitted,

                                        GREGORY G. KATSAS
                                        Assistant Attorney General

                                        JEFFREY A. TAYLOR
                                        United States Attorney

                                        SUSAN RUDY
                                        Assistant Branch Director, Civil Division, Federal Programs Branch

                                         /s/ Tara M. La Morte
                                        TARA M. La MORTE
                                        Trial Attorney
                                        Civil Division, Federal Programs Branch
                                        United States Department of Justice
                                        20 Massachusetts Ave., N.W., Room 7326
                                        Washington, D.C.  20530
                                        Telephone:  (202) 514-1275
                                        Facsimile:  (202) 616-8202
                                        Email: tara.lamorte@usdoj.gov

                                        *Attorneys for Defendant*